UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SMILEDIRECTCLUB, INC., DAVID KATZMAN, KYLE WAILES, STEVEN KATZMAN, JORDAN KATZMAN, ALEXANDER FENKELL, RICHARD SCHNALL, SUSAN GREENSPON RAMMELT, J.P. MORGAN SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., BOFA SECURITIES, INC., JEFFERIES LLC, UBS SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, GUGGENHEIM SECURITIES, LLC, STIFEL, NICOLAUS & COMPANY, INCORPORATED, WILLIAM BLAIR & COMPANY, L.L.C., and LOOP CAPITAL MARKETS LLC,<br><br>Defendants, | Case No.:<br><br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Adam Franchi ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by SmileDirectClub, Inc. ("SmileDirectClub" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and

1

media reports issued by and disseminated by SmileDirectClub; and (c) review of other publicly available information concerning SmileDirectClub.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired SmileDirectClub Class A common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's September 2019 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2. On September 13, 2019, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 58.5 million shares of Class A common stock at a price of $23.00 per share. The Company received proceeds of approximately $1.27 billion from the Offering, net of underwriting discounts and commissions.

3. On September 24, 2019, a class action complaint was filed by dentists, orthodontists, and consumers against SmileDirectClub, alleging false advertising, fraud, negligence, and unfair and deceptive trade practices. The complaint disputed the accuracy of several statements in the Registration Statement and highlighted that the Company is subject to litigation for operating as a dentist without proper licensing in several states, as well as other litigation.

4. On this news, the Company's share price fell $1.47, or nearly 9%, to close at $15.68 per share on September 24, 2019, on unusually heavy trading volume. The price stock continued to decline over the next two trading sessions by $2.74, or over 17%, to close at $12.94 per share on September 26, 2019, on unusually heavy trading volume.

5. The Company's stock would close on October 21, 2019 at $9.13 per share, a 60% decline from the $23 per share IPO price.

6. The Registration Statement was false and misleading and omitted to state material adverse facts. Specifically, Defendants failed to disclose to investors: (1) that administrative personnel, rather than licensed doctors, provided treatment to the Company's customers and monitored their progress; (2) that, as a result, the Company's practices did not qualify as teledentistry under applicable standards; (3) that, as a result, the Company was subject to regulatory scrutiny for the unlicensed practice of dentistry; (4) that the efficacy of the Company's treatment was overstated; (5) that the Company had concealed these deceptive marketing practices prior to the IPO; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

10. Venue is proper in this district because the Company is headquartered in this district and because the violations of law complained of herein substantially occurred in this district,

including the preparation and dissemination of the materially false and misleading Registration Statement complained of herein.

## PARTIES

11. Plaintiff, as set forth in the attached Certification, acquired SmileDirectClub securities at artificially inflated prices in the IPO and was damaged upon the revelation of the alleged corrective disclosures.

12. Defendant SmileDirectClub is incorporated under the laws of Delaware with its principal executive offices located in Nashville, Tennessee. SmileDirectClub's Class A common stock trades on the NASDAQ exchange under the symbol "SDC."

13. Defendant David Katzman was, at all relevant times, the Chief Executive Officer and Chairman of the Board of Directors of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

14. Defendant Kyle Wailes ("Wailes") was, at all relevant times, the Chief Financial Officer of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

15. Defendant Steven Katzman was, at all relevant times, the Chief Operating Officer and a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16. Defendant Jordan Katzman was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant Alexander Fenkell ("Fenkell") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18. Defendant Richard Schnall ("Schnall") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19. Defendant Susan Greenspon Rammelt ("Rammelt") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20. Defendants David Katzman, Wailes, Steven Katzman, Jordan Katzman, Fenkell, Schnall, and Rammelt are collectively referred to hereinafter as the "Individual Defendants."

21. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO.

22. Defendant Citigroup Global Markets Inc. ("Citigroup") served as an underwriter for the Company's IPO.

23. Defendant BofA Securities, Inc. ("BofA") served as an underwriter for the Company's IPO.

24. Defendant Jefferies LLC ("Jefferies") served as an underwriter for the Company's IPO.

25. Defendant UBS Securities LLC ("UBS") served as an underwriter for the Company's IPO.

26. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter for the Company's IPO.

27. Defendant Guggenheim Securities, LLC ("Guggenheim") served as an underwriter for the Company's IPO.

28. Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") served as an underwriter for the Company's IPO.

29. Defendant William Blair & Company, L.L.C. ("William Blair") served as an underwriter for the Company's IPO.

30. Defendant Loop Capital Markets LLC ("Loop Capital") served as an underwriter for the Company's IPO.

31. Defendants J.P. Morgan, Citigroup, BofA, Jefferies, UBS, Credit Suisse, Guggenheim, Stifel, William Blair, and Loop Capital are collectively referred to hereinafter as the "Underwriter Defendants."

**SUBSTANTIVE ALLEGATIONS**

32. According to its public filings, SmileDirectClub purports to be the "first direct-to-consumer medtech platform for transforming smiles" that manufactures, markets, and sells clear aligner treatments.

33. On September 9, 2019, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on September 11, 2019.

34. On September 13, 2019, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 58.5 million shares of Class A common stock at a price of $23.00 per share. The Company received proceeds of approximately $1.27 billion from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used for employee incentive bonuses, certain equity arrangements, and general corporate purposes.

6

35. The Registration Statement contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

36. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

37. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

38. The Company claimed that a "treating doctor" assesses and monitors customers' progress and that the "teledentistry platform" allows doctors to interact with patients without in-person visits. The Registration Statement further stated, in relevant part:

> Our member journey starts with two convenient options: a member books an appointment to take a free, in-person 3D oral image at any of our over 300 retail stores ("SmileShops") across the U.S., Puerto Rico, Canada, Australia, and the U.K., or orders an easy-to-use doctor prescribed impression kit online, which we mail directly to their door. Using the image or impression, we create a draft custom treatment plan that demonstrates how the member's teeth will move during treatment. Next, via SmileCheck, a state licensed doctor within our network reviews and approves the member's clinical information and treatment plan. If the member is a good candidate for clear aligners and decides to purchase, ***the treating doctor prescribes custom-made clear aligners, which we then manufacture and ship directly to the member.*** In addition, the member has the opportunity to review a 3D rendering of how their teeth will move during treatment as part of their purchase decision. ***SmileCheck is also used by the treating doctor to monitor the member's progress and enables seamless communication with the member over the course of treatment.*** Upon completion of treatment, a majority of our members purchase retainers every six months to prevent their teeth from relapsing to their original position.

(Emphases added.)

39. Regarding advertising, the Company stated in the Registration Statement:

7

> ***We are subject to consumer protection laws that regulate our marketing practices and prohibit unfair or deceptive acts or practices. Our actual or perceived failure to comply with such obligations could harm our business, and changes in such regulations or laws could require us to modify our products or marketing or advertising efforts.*** In connection with the marketing or advertisement of our products and services, we could be the target of claims relating to false, misleading, deceptive, or otherwise noncompliant advertising or marketing practices, including under the auspices of the FTC and state consumer protection statutes. If we rely on third parties to provide any marketing and advertising of our products and services, we could be liable for, or face reputational harm as a result of, their marketing practices if, for example, they fail to comply with applicable statutory and regulatory requirements. If we are found to have breached any consumer protection, advertising, unfair competition, or other laws or regulations, we may be subject to enforcement actions that require us to change our marketing and business practices in a manner which may negatively impact us. This could also result in litigation, fines, penalties, and adverse publicity that could cause reputational harm and loss of member trust, which could have an adverse effect on our business.

(Emphases added.)

40. Regarding pending litigation, the Company stated in the Registration Statement: The Company "periodically receive[s] communications from state and federal regulatory and similar agencies inquiring about the nature of [its] business activities, licensing of professionals providing services, and similar matters. Such matters are routinely concluded with no financial or operational impact on [SmileDirectClub]. Currently there are no actions with any agency that are expected to have a material adverse effect on [the Company's] business, results of operations, and financial condition."

41. The Registration Statement was materially false and misleading and omitted to state: (1) that administrative personnel, rather than licensed doctors, provided treatment to the Company's customers and monitored their progress; (2) that, as a result, the Company's practices did not qualify as teledentistry under applicable standards; (3) that, as a result, the Company was subject to regulatory scrutiny for the unlicensed practice of dentistry; (4) that the efficacy of the Company's treatment was overstated; (5) that the Company had concealed these

8

deceptive marketing practices prior to the IPO; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

## The Truth Emerges

42. On September 24, 2019, a class action complaint was filed by dentists, orthodontists, and consumers against SmileDirectClub, alleging false advertising, fraud, negligence, and unfair and deceptive trade practices (the "Complaint"). The Complaint disputed the accuracy of several statements in the Registration Statement and highlighted that the Company is subject to litigation for operating as a dentist without proper licensing in several states, as well as other litigation.

43. The Complaint disputed that "a treating doctor monitors a member's progress," stating that "SmileDirect members do not even know the identity of the dentists who are involved in their case (to the extent that they are involved)" and that "no patient-doctor relationship is ever actually established." Additionally, the Complaint alleged that communications between the Company and customers are handled by unlicensed administrative personnel, rather than a "treating doctor" as the Company claims.

44. Moreover, the Company claims that its customers are served by "teledentistry," but the Complaint alleges that that SmileDirectClub's practices do not meet the American Dental Association's standard for "teledentistry" because its "'affiliated dentists' do not interact directly or even indirectly with customers." Furthermore, the Company claims its products can address "bite issues" but, according to the Complaint, SmileDirectClub's aligners "will only address alignment and will not correct any existing bite issue."

45. As a result of these and other marketing practices, the Company was subject to various lawsuits, as identified in the Complaint:

- At least 40 state claims filed by the relevant state affiliate of the American Association of Orthodontists alleging, in a substantiated fashion, that SmileDirect is illegally operating as a dentist without proper licensing in the subject state. Indeed, a Federal District Court in Georgia recently found that SmileDirect was in fact illegally operating as a dentist in connection with its ordinary course practices.

- A lengthy, detailed and substantiated Citizen Petition filed by the American Dental Association with the federal Food and Drug Administration alleging in a detailed and substantiated fashion that SmileDirect is in continuing violation of the FD&C Act because it is selling plastic aligners that it manufactures in Tennessee (a) without a valid prescription and (b) without having had such aligners approved pursuant to a 510(k) clearance procedure.

- A complaint filed by the American Dental Association with the Federal Trade Commission ("FTC") requesting that the FTC investigate numerous false and misleading claims made by SmileDirect to fraudulently entice customers to purchase its products and services. The ADA's detailed lengthy complaint alleges that SmileDirect has made false and misleading claims and engages in unfair and deceptive practices within the meaning of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

- Thousands of substantiated, serious customer complaints with respect to the efficacy of the SmileDirect aligner treatment and injuries suffered with respect thereto. Among these thousands of complaints are complaints that the product did not work, that the product came in a broken fashion, and that the product made consumers' teeth "worse" and, in certain instances, substantially worse:

- "Product made my teeth worse with spacing and gaps. Did not work as described and was led to believe it would get fixed ... After five months and four aligners and a cracked tooth and numerous attempts to talk to customers service to fix my issues all of which led nowhere."

- "Please don't do this to yourself - especially if you're just trying to save money ... A few months closer to the seventh month, my crown and implant - which was super expensive to get done – came off together. When I called them about this, they kept making me email people ... I am here months later with about the same smile as before, $1700 down the drain, and my crown and implant not intact."

46. Moreover, the Complaint alleges that the Company and its officers engaged in efforts to cover up such criticism prior to the IPO. According to the Complaint, "dentists, orthodontists, and other parties have received a barrage of 'cease and desist' letters from SmileDirect's counsel threatening lawsuits and threatening the filing of ethical complaints with regulators against such professionals who have merely voiced legitimate, substantiated opinions regarding the clear inadequacy of the SmileDirect Program."

47. On this news, the Company's share price fell $1.47, or nearly 9%, to close at $15.68 per share on September 24, 2019, on unusually heavy trading volume. The price stock continued to decline over the next two trading sessions by $2.74, or over 17%, to close at $12.94 per share on September 26, 2019, on unusually heavy trading volume.

48. The Company's stock would close on October 21, 2019 at $9.13 per share, a 60% decline from the $23 per share IPO price.

**CLASS ACTION ALLEGATIONS**

49. Plaintiff brings this action on his own behalf and as a class action, on behalf of all stockholders of SmileDirectClub, except Defendants herein and any person, firm, trust,

11

corporation, or other entity related to or affiliated with any of the Defendants, who are threatened with injury arising from Defendants' actions as is described more fully below (the "Class").

50. This action is properly maintainable as a class action.

51. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of SmileDirectClub shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by SmileDirectClub or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

52. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

53. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

- Whether the federal securities laws were violated by Defendants' acts as alleged herein;
- Whether the Registration Statement and Prospectus contained materially false and misleading statements and omissions; and
- To what extent Plaintiff and members of the Class have sustained damages and the proper measure of damage.

54. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

55. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

56. Plaintiff anticipates that there will be no difficulty in the management of this litigation as a class action. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

57. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

### FIRST CAUSE OF ACTION

### Violations of §11 of the Securities Act
### Against All Defendants

58. Plaintiff repeats and realleges each and every allegation contained above, as if fully set forth herein.

59. This Cause of Action is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants. This is a non-fraud cause of action. Plaintiff does not assert that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.

60. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

61. The defendants named in the Cause of Action are strictly liable to plaintiff and the Class for the misstatements and omissions.

62. None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

63. By reason of the conduct alleged herein, each of these defendants violated, and/or controlled a person who violated, §11 of the Securities Act.

64. Plaintiff acquired SmileDirectClub common stock pursuant or traceable to the IPO.

65. Plaintiff and the Class have sustained damages. The value of SmileDirectClub common stock has declined substantially subsequent to and due to these defendants' violations.

66. At the time of their purchases of SmileDirectClub common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein. Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that Plaintiff commenced this action. Less than three years has elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time Plaintiff commenced this action.

## SECOND CAUSE OF ACTION

### For Violations of §12(a)(2) of the Securities Act Against All Defendants

67. Plaintiff repeats and re-alleges each and every allegation contained above, as if fully set forth herein.

68. This Cause of Action is brought pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), against all defendants. This is a non-fraud cause of action. Plaintiff does not

14

assert that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.  The defendants named in this Cause of Action sold SmileDirectClub stock or were directly involved in the sale of SmileDirectClub stock by approving statements made in the Prospectus and roadshow that encouraged investment in the IPO, and in so doing were motivated by a desire to serve their own financial interests or the interests of the pre-IPO owners of SmileDirectClub stock.

69. By means of the defective Prospectus and other conduct alleged herein, SmileDirectClub, the Individual Defendants, and the Underwriter Defendants promoted and sold SmileDirectClub common stock to Plaintiff and other members of the Class.  The defendants named in this Cause of Action were sellers, offerors and/or solicitors of purchasers of the SmileDirectClub stock offered pursuant to the Offering.  Defendants issued, caused to be issued and/or signed the Registration Statement issued in connection with the Offering.  The Prospectus was used to induce investors, such as Plaintiff and the other members of the Class, to purchase SmileDirectClub shares.

70. The Prospectus and roadshow communications contained untrue statements of material fact, and/or concealed or failed to disclose material facts, as detailed above.  The defendants named in this Cause of Action owed Plaintiff and the other members of the Class who purchased SmileDirectClub common stock pursuant to the Prospectus, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statement contained therein not misleading.  These defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

71.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired SmileDirectClub common stock.

72.     By reason of the conduct alleged herein, these defendants violated §12(a)(2) of the Securities Act.  As a direct and proximate result of such violation, Plaintiff and the other members of the Class who purchased SmileDirectClub common stock pursuant to the Prospectus sustained substantial damages in connection with their purchases of the stock.  Accordingly, Plaintiff and the other members of the Class who hold the common stock issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their common stock to defendants sued herein.  Class members who have sold their common stock seek damages to the extent permitted by law.

**THIRD CAUSE OF ACTION**
**For Violations of §15 of the Securities Act Against All Defendants Except the Underwriter Defendants**

73.     Plaintiff repeats and re-alleges each and every allegation contained above, as if fully set forth herein.

74.     This Cause of Action is brought pursuant to §15 of the Securities Act, against all defendants except the Underwriter Defendants.

75.     The Individual Defendants were each control persons of SmileDirectClub by virtue of their positions as directors and/or senior officers of SmileDirectClub.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of SmileDirectClub.

76.     SmileDirectClub and the Individual Defendants each were critical to effecting the IPO, based on their signing or authorization of the signing of the Registration Statement, by voting

16

Case 3:19-cv-00962   Document 1   Filed 10/29/19   Page 16 of 20 PageID #: 16

(including voting their shares) to execute the IPO, and having otherwise directed through their authority the process leading to execution of the IPO.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 29, 2019

        s/ Wade B. Cowan
Wade B. Cowan (TN Sup. Ct. No. 09403)
85 White Bridge Road, Suite 300
Nashville, TN 37205
Telephone: 615-256-8125
Facsimile:  615-242-7853
wcowan@dhhrplc.com

**THE WEISER LAW FIRM, P.C.**
Christopher L. Nelson
James M. Ficaro
22 Cassatt Avenue
Berwyn, PA 19312
Telephone:  (610) 225-2677

Facsimile: (610) 408-8062
cln@weiserlawfirm.com
jmf@weiserlawfirm.com

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Dr., Ste. 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305

## CERTIFICATION OF PLAINTIFF

I, Adam Franchi ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1. Plaintiff has reviewed the complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary. I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4. Plaintiff's purchase and sale transactions in the SmileDirectClub, Inc. (NASDAQ: SDC) security that is the subject of this action during the class period is/are as follows:

PURCHASES

| Buy Date | Shares | Price per Share |
|---|---|---|
| 9/12/19 | 60 | $17.4579 |
| | | |
| | | |
| | | |

SALES

| Sell Date | Shares | Price per Share |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

*Please list additional transactions on separate sheet of paper, if necessary.*

5. Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6. During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of October, 2019.

*Adam Franchi*
_____
Adam Franchi