UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SMILEDIRECTCLUB, INC., DAVID KATZMAN, KYLE WAILES, STEVEN KATZMAN, JORDAN KATZMAN, ALEXANDER FENKELL, RICHARD SCHNALL, SUSAN GREENSPON RAMMELT, J.P. MORGAN SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., BOFA SECURITIES, INC., JEFFERIES LLC, UBS SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, GUGGENHEIM SECURITIES, LLC, STIFEL, NICOLAUS & COMPANY, INCORPORATED, WILLIAM BLAIR & COMPANY, L.L.C., and LOOP CAPITAL MARKETS LLC,<br><br>Defendants, | No. 3:19-cv-00962<br><br><u>CLASS ACTION</u><br><br>Judge Eli J. Richardson<br><br>Magistrate Judge Jeffery S. Frensley<br><br><u>ORAL ARGUMENT REQUESTED</u> |
| BARRY GINSBERG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SMILEDIRECTCLUB, INC., DAVID KATZMAN, KYLE WAILES, STEVEN KATZMAN, ALEXANDER FENKELL, J.P. MORGAN SECURITIES, INC., CITIGROUP GLOBAL MARKETS INC., BOFA | Case No. 3:19-cv-01040<br><br>Judge Eli J. Richardson<br><br>Magistrate Judge Jeffery S. Frensley |

SECURITIES, INC., JEFFERIES LLC, UBS SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, and CAMELOT VENTURE GROUP,

           Defendants.

| | |
|---|---|
| RICHARD ANDRE, Individually and On Behalf of All Others Similarly Situated, <br><br>         Plaintiff, <br><br>     v. <br><br> SMILEDIRECTCLUB, INC., DAVID KATZMAN, KYLE WAILES, STEVEN KATZMAN, JORDAN KATZMAN, ALEXANDER FENKELL, RICHARD SCHNALL, SUSAN GREENSPON RAMMELT, J.P. MORGAN SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., BOFA SECURITIES, INC., JEFFERIES LLC, UBS SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, GUGGENHEIM SECURITIES, LLC, STIFEL, NICOLAUS & COMPANY, INCORPORATED, WILLIAM BLAIR & COMPANY, L.L.C., and LOOP CAPITAL MARKETS LLC, <br><br>         Defendants. | Case No. 3:19-cv-01057 <br><br> Judge Eli J. Richardson <br><br> Magistrate Judge Barbara D. Holmes |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF GRANITE POINT FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, <u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND.............................................................................................. 4

ARGUMENT...................................................................................................................... 5

I.     THE ACTIONS SHOULD BE CONSOLIDATED ............................................. 5

II.    GRANITE POINT SHOULD BE APPOINTED LEAD PLAINTIFF ............................ 6

     A.     The PSLRA Standard for Appointing Lead Plaintiff............................................. 6

     B.     Granite Point Is the "Most Adequate Plaintiff" ........................................................ 7

          1.     Granite Point's Motion Is Timely ................................................................. 7

          2.     Granite Point Has a Substantial Financial Interest .................................... 8

          3.     Granite Point Satisfies Rule 23's Typicality and Adequacy
               Requirements ................................................................................................. 9

               a.     Granite Point's Claims Are Typical of Those of the Class............. 9

               b.     Granite Point Satisfies the Adequacy Requirement of
                    Rule 23 ......................................................................................... 10

          4.     Granite Point Is Precisely the Type of Lead Plaintiff Congress
               Envisioned When It Passed the PSLRA .................................................. 11

III.     GRANITE POINT'S SELECTION OF LEAD COUNSEL MERITS APPROVAL ....... 12

CONCLUSION.................................................................................................................. 13

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Bailey v. Esperion Therapeutics, Inc.*,
  No. 18-11438, 2018 WL 4509531 (E.D. Mich. Sept. 20, 2018)................................................8

*Beattie v. Century Tel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) ..........................................................................................9

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)...........................................................................................12

*French v. CBL & Assocs. Props., Inc.*,
  No. 1:16-cv-165-TWP-CHS, 2016 WL 7668501 (E.D. Tenn. Sept. 26, 2016)........................5

*In re Regions Morgan Keegan Closed–End Fund Litig.*,
  No. 07–02830, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) .........................................5, 9

*Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014).................................................................................11

*St. Clair Cty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*,
  No. 3:18-cv-00988, 2019 WL 494129 (M.D. Tenn. Jan. 9, 2019) ...............................6, 7, 8, 9

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*,
  No. 3:09-00882, 2010 WL 1790763 (M.D. Tenn. Apr. 30, 2010) ................................. *passim*

*Ross v. Abercrombie & Fitch Co.*,
  257 F.R.D. 435 (S.D. Ohio 2009) .....................................................................................9

**Rules & Statutes**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Fed. R. Civ. P. 42...........................................................................................................5, 6

15 U.S.C. §§ 77z-1 *et seq.* ...................................................................................... *passim*

15 U.S.C. § 78u-4 *et seq* ......................................................................................... *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
 No. 04-cv-08141 (S.D.N.Y.)................................................................................................12

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
 No. 08-md-01963 (S.D.N.Y.) ..............................................................................................12

*In re Fannie Mae 2008 Sec. Litig.*,
 No. 08-cv-07831 (S.D.N.Y.)................................................................................................13

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
 No. 09-md-02027 (S.D.N.Y.) ..............................................................................................13

*In re Prothena Corp. plc Sec. Litig.*,
 No. 18-cv-06425 (S.D.N.Y.)................................................................................................12

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ......................3, 11, 12

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679.....................................................3

Case 3:19-cv-00962   Document 25   Filed 12/02/19   Page 5 of 22 PageID #: 244

Proposed Lead Plaintiff Granite Point Capital 8 Dragons China Opportunities Fund, Granite Point Capital Master Fund, LP, Granite Point Capital Scorpion Focused Ideas Fund, and Granite Point Capital Panacea Global Healthcare Fund (together, "Granite Point"), respectfully submits this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B) and Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its Motion for the entry of an Order: (i) consolidating the above-captioned actions (the "Action");[1] (ii) appointing Granite Point as Lead Plaintiff; (iii) approving Granite Point's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and Spragens Law PLC ("Spragens Law") as Liaison Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.[2]

## PRELIMINARY STATEMENT

Granite Point—a sophisticated institutional investor with standing to pursue all claims against Defendants—respectfully submits that it should be appointed Lead Plaintiff on behalf of

---

[1] The *Andre* Action, which was the first-filed case, was originally filed in the Eastern District of Michigan on October 2, 2019, and was subsequently transferred to Middle District of Tennessee on November 18, 2019, and assigned the docket number listed above. Likewise, the *Ginsburg* Action was originally filed in the Southern District of New York on October 23, 2019, and was subsequently transferred to the Middle District of Tennessee on November 18, 2019, and assigned the docket number listed above.

[2] Local Rule 7.01(a)(1) requires a party seeking a motion to confer with opposing counsel to ascertain whether or not the relief requested in the motion is opposed. The PSLRA permits any "purported class member . . . including any motion by a class member who is not individually named as a plaintiff in the complaint" to file a motion for appointment as lead plaintiff. 15 U.S.C. §§ 77z-1(a)(3)(B)(i); 78u-4(a)(3)(B)(i). As a result, Granite Point cannot determine which other parties, if any, will also seek appointment as Lead Plaintiff until after the deadline expires on December 2, 2019. Accordingly, a conference under Local Rule 7.01(a)(1) could not resolve the lead plaintiff motion required to be filed under the PSLRA. Granite Point's counsel, therefore, respectfully requests that compliance with Local Rule 7.01(a)(1) be waived in this narrow instance.

all persons or entities who: (a) purchased or otherwise acquired SmileDirectClub, Inc. ("SmileDirectClub" or the "Company") Class A common stock between September 8, 2019 through October 2, 2019, inclusive (the "Class Period"); and/or (b) pursuant or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with SmileDirectClub's September 2019 initial public offering ("IPO"), and who were damaged as a result of Defendants' alleged violations of the securities laws (the "Class"). The Action alleges violations of the Exchange Act and the Securities Act against the Company, certain of its executive officers, and the underwriters of the IPO (collectively, the "Defendants").

The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. §§ 77z-1(a)(3)(B)(i); 78u-4(a)(3)(B)(i). In that regard, the Court must determine which movant has the "largest financial interest" in the relief sought by the Class, and also whether such movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I); 78u-4(a)(3)(B)(iii)(I).

For the reasons discussed herein, Granite Point respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff. Granite Point incurred Exchange Act losses of *$495,551.73* on its Class Period transactions in SmileDirectClub Class A common stock, and Securities Act losses of *$294,192.25* on its purchases of SmileDirectClub Class A common stock pursuant and/or traceable to the IPO, both as calculated on a last-in-first-out ("LIFO") basis.[3] Accordingly, Granite Point has a substantial financial

---

[3] A copy of the Certification of Granite Point, signed by C. David Bushley, as Principal and Chief Operating Officer of Granite Point Capital Management, L.P. ("Certification"), is attached as Exhibit A to the Declaration of John Spragens (the "Spragens Decl."). The Certification sets forth all transactions of Granite Point in SmileDirectClub Class A common stock during the

2

interest in directing this litigation and recovering losses attributable to Defendants' violations of federal securities laws—an interest believed to be greater than that of any other qualified movant.

In addition to asserting a substantial financial interest in this litigation, Granite Point also meets the typicality and adequacy requirements of Rule 23 because: (i) it has standing to pursue all claims against Defendants, which claims arise from the same course of events as those of the other Class members; (ii) it relies on similar legal theories to prove Defendants' liability; and (iii) it has retained experienced counsel and is committed to vigorously prosecuting the Action. Furthermore, the PSLRA's legislative history shows that a sophisticated institutional investor like Granite Point is precisely the type of investor that Congress intended to empower to lead securities class action litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at 6 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685; *see also Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-00882, 2010 WL 1790763, at *3 (M.D. Tenn. Apr. 30, 2010) ("[T]he PSLRA's legislative history reflects a Congressional intention to favor institutional investors that have the greater financial resources and experience to satisfy their fiduciary duties to the class members.") (collecting cases).

Finally, pursuant to the PSLRA, Granite Point respectfully requests that the Court approve the selection of Labaton Sucharow as Lead Counsel for the Class and Spragens Law as Liaison Counsel to the Class. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(v); 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Labaton Sucharow is a nationally recognized securities class action firm

---

Class Period. In addition, a table reflecting the calculation of financial losses sustained by Granite Point on its relevant transactions in SmileDirectClub Class A common stock ("Loss Analysis") is attached as Exhibit B to the Spragens Decl.

3

that has recovered billions of dollars for the benefit of injured investors, and has the expertise and resources necessary to handle litigation of this complexity and scale.

Accordingly, Granite Point respectfully requests that the Court appoint it as Lead Plaintiff for the Class and approve its choice of Lead Counsel.

## FACTUAL BACKGROUND

SmileDirectClub was founded in 2014 and is headquartered in Nashville, Tennessee. The Company manufactures, markets, and sells clear dental aligner treatments through its website and over 300 brick-and-mortar retail locations.

On September 9, 2019, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on September 11, 2019.

On September 13, 2019, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 58.5 million shares of Class A common stock at a price of $23.00 per share. The Company received proceeds of approximately $1.27 billion from the IPO, net of underwriting discounts and commissions.

On September 24, 2019, a class action lawsuit was filed in the Middle District of Tennessee by dentists, orthodontists, and consumers against the Company and certain of its officers and directors for false advertising, fraud, negligence, and unfair and deceptive trade practices. The complaint alleges, *inter alia*, that inaccurate statements were made in the Registration Statement and that the Company is subject to litigation for operating as a dentist without proper licensing in several states, among other litigation.

4

On this news, the price of SmileDirectClub Class A common stock fell by $1.47, or nearly 9 percent, closing at $15.68 per share on September 24, 2019, on unusually high trading volume. The price continued to decline over the next two trading sessions to close at $14.51 on September 25, 2019, and $12.94 on September 26, 2019, on unusually high trading volume. The cumulative decline as a result of this disclosure was $4.21.

## ARGUMENT

## I.     THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter [is] filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §§ 77z-1(a)(3)(B)(ii); 78u-4(a)(3)(B)(ii); *see also Psychiatric Sols., Inc.*, 2010 WL 1790763, at *2 ("[T]he Court *shall not make* [the determination of the most adequate plaintiff] *until after the decision on the motion to consolidate is rendered*.") (emphasis in original) (citation omitted).

Consolidation pursuant to Rule 42(a) is appropriate when actions "involve common questions of law or fact." *French v. CBL & Assocs. Props., Inc.*, No. 1:16-cv-165-TWP-CHS, 2016 WL 7668501, at *1 (E.D. Tenn. Sept. 26, 2016); *see also In re Regions Morgan Keegan Closed–End Fund Litig.*, No. 07–02830, 2010 WL 5173851, at *14 (W.D. Tenn. Dec. 15, 2010). "[C]onsolidation is particularly appropriate in securities class action litigation." *CBL & Assocs. Props., Inc.*, 2016 WL 7668501, at *1.  "[D]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation" *Id.* (quoting *In re Gen. Elec. Sec. Litig.*, No. 09 civ. 1951(DC), 2009 WL 2259502, at *2 (S.D.N.Y. July 29, 2009)).

5

The above-captioned actions are well-suited for consolidation. The complaint filed in each of the above-captioned actions alleges that Defendants violated the federal securities laws. Each action sets forth nearly identical allegations relating to similar parties, transactions, and events—primarily Defendants' inaccurate statements in SmileDirectClub's Registration Statement. Because consolidation will promote judicial efficiency and conserve the resources of the Class and all other parties, consolidation is appropriate pursuant to Rule 42(a). Accordingly, Granite Point respectfully requests that the Court consolidate the above-captioned actions, and any other subsequently-filed action.

## II.      GRANITE POINT SHOULD BE APPOINTED LEAD PLAINTIFF

Granite Point respectfully submits that it should be appointed Lead Plaintiff because it filed the instant motion in a timely manner, has a substantial financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23.

### A.      The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Securities or Exchange Acts] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. §§ 77z-1(a)(1); 78u-4(a)(l); *see also* 15 U.S.C. §§ 77z-1(a)(3)(B); 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff); *St. Clair Cty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, No. 3:18-cv-00988, 2019 WL 494129, at *2–3 (M.D. Tenn. Jan. 9, 2019) (discussing step-by-step procedure for appointing lead plaintiff).

First, both Section 27(a)(3)(A)(i) of the Securities Act and Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specify that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire

6

> service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. §§ 77z-1(a)(3)(A)(i); 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as Lead Plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. §§ 77z-1(a)(3)(B)(i); 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (i) filed a complaint or timely filed a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I); 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II); 78u-4(a)(3)(B)(iii)(II); *see also Acadia Healthcare Co.*, 2019 WL 494129, at *2. Under the framework established by the PSLRA, Granite Point is the most adequate plaintiff and should be appointed Lead Plaintiff.

### B. Granite Point Is the "Most Adequate Plaintiff"

#### 1. Granite Point's Motion Is Timely

Granite Point filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to the PSLRA, the plaintiff in the *Andre* Action, the first-filed action, caused notice regarding the pending nature of this case to be published on *BusinessWire,* a widely-circulated, national,

business-oriented news wire service, on October 2, 2019. *See Andre* Action Notice, Spragens Decl., Ex. C. Therefore, under PSLRA lead plaintiff procedure, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty days after publication of the notice, *i.e.*, on or before December 2, 2019. Further, the plaintiff in the *Ginseberg* Action caused additional notice to be published on October 24, 2019 through *BusinessWire*, noting the addition of Exchange Act claims, and reiterating the December 2, 2019, lead plaintiff deadline. *See Ginsberg* Action Notice, Spragens Decl., Ex. D.

Granite Point filed its motion seeking appointment as Lead Plaintiff within this deadline and thus has satisfied the procedural requirements of the PSLRA. *See Acadia Healthcare Co.*, 2019 WL 494129, at \*3 (finding notice requirement satisfied where notice was published in *BusinessWire* the day after the filing of the complaint and movants timely filed motions); *see also Bailey v. Esperion Therapeutics, Inc.*, No. 18-11438, 2018 WL 4509531, at \*1 (E.D. Mich. Sept. 20, 2018) (finding notice requirement satisfied).

### 2. Granite Point Has a Substantial Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii); 78u-4(a)(3)(B)(iii); *see also Acadia Healthcare Co.*, 2019 WL 494129, at \*3; *Esperion Therapeutics*, 2018 WL 4509531, at \*1.

Granite Point incurred Exchange Act losses of ***$495,551.73*** on its Class Period transactions in SmileDirectClub Class A common stock, and Securities Act losses of ***$294,192.25*** on its purchases of SmileDirectClub Class A common stock pursuant and/or traceable to the IPO, both as calculated on LIFO basis. *See* Loss Analysis, Spragens Decl., Ex. B. Accordingly, Granite Point has a substantial financial interest as a qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff." *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii);

8

78u-4(a)(3)(B)(iii); *see also Acadia Healthcare Co.*, 2019 WL 494129, at *2–5) (finding movant with largest financial interest to be "most adequate plaintiff").

### 3. Granite Point Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must make a *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23. *See In re Regions Morgan Keegan Closed-End Fund Litig.*, 2010 WL 5173851, at *5. Here, Granite Point unquestionably satisfies both requirements.

### a. Granite Point's Claims Are Typical of Those of the Class

"In the Sixth Circuit, the test for typicality is whether a named plaintiff's claims 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Psychiatric Sols., Inc.*, 2012 WL 1071281, at *37 (certifying securities class action); *see also Beattie v. Century Tel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (same). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *See Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 444 (S.D. Ohio 2009) (collecting cases).

Granite Point's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Granite Point alleges that Defendants made material misstatements and omissions regarding the statements made in SmileDirectClub's Registration Statement in violation of the federal securities laws. Granite Point, as did all of the members of the Class, purchased SmileDirectClub Class A common stock in the IPO and throughout the Class Period in reliance on Defendants' alleged misstatements and omissions and was damaged thereby. Because Granite Point has standing to pursue all claims against Defendants, which claims arise

9

from the same course of events as do the claims of other Class members, the typicality requirement is satisfied.

### b. Granite Point Satisfies the Adequacy Requirement of Rule 23

Granite Point likewise satisfies the adequacy requirement of Rule 23. The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in this District assess a movant's adequacy based on whether: "(1) the representative[s] . . . have common interests with unnamed members of the class, and (2) it [ ] appear[s] that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Psychiatric Sols., Inc.*, 2012 WL 1071281, at *37 (alteration in original) (internal quotation marks and citation omitted)

Granite Point will fairly and adequately represent the interests of the proposed Class. Granite Point unquestionably has resources sufficient to pursue the Action to a successful conclusion. Granite Point has also retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see infra* Section III, and timely submitted its choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 77z-1 (a)(3)(A)(i)(II) and (B)(v); 78u-4(a)(3)(A)(i)(II) and (B)(v).

Furthermore, no antagonism exists between Granite Point's interests and those of the absent Class members; rather, the interests of Granite Point and Class members are squarely aligned. Granite Point suffered substantial losses due to Defendants' alleged misconduct and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of this action.

Finally, there is no proof that Granite Point is "subject to unique defenses that render

such plaintiff incapable of representing the class," because no such proof exists.  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II); 78u-4(a)(3)(B)(iii)(II).  Accordingly, Granite Point satisfies the adequacy requirement.

### 4. Granite Point Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

In addition to satisfying the requirements of Rule 23, Granite Point—a large, sophisticated institutional investor—is precisely the type of investor Congress envisioned, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").  Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation.  *See id.* at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.  To this end, many courts, including courts in this District, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions.  *See Psychiatric Sols., Inc.*, 2010 WL 1790763, at *3 ("the PSLRA's legislative history reflects a Congressional intention to favor institutional investors"); *see also Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile),* 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (collecting cases and recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs").

11

Granite Point is the paradigmatic lead plaintiff as contemplated by the PSLRA. Granite Point's understanding of the responsibilities of a lead plaintiff is based, in part, on its experience serving as lead plaintiff, having successfully resolved a securities class action with Labaton Sucharow serving as co-lead counsel. *See In re Prothena Corp. plc Sec. Litig.*, No. 18-cv-06425 (S.D.N.Y.) (agreed upon settlement of $15.75 million pending final approval of the court).

Accordingly, Granite Point has the sophistication and resources necessary to effectively litigate this matter and supervise Class counsel.

## III.     GRANITE POINT'S SELECTION OF LEAD COUNSEL MERITS APPROVAL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(v); 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class." *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, Granite Point has selected the law firm of Labaton Sucharow to represent the Class. Labaton Sucharow has excelled as lead counsel in numerous actions on behalf of defrauded investors. For example, Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-08141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors; and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-01963 (S.D.N.Y.), in which the Firm served as co-lead counsel. Labaton Sucharow also

served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-02027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members, and secured a $170 million recovery as co-lead counsel in *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-07831 (S.D.N.Y.). Labaton Sucharow presently serves as lead or co-lead counsel in several significant investor class actions. *See* Labaton Sucharow Firm Resume, Spragens Decl., Ex. E.

Likewise, Spragens Law is well qualified to represent the Class as Liaison Counsel. Spragens Law PLC maintains an office in this District and has substantial litigation experience in this court. Thus, the firm is well qualified to represent the Class as Liaison Counsel. *See* Manual For Complex Litigation (Fourth) § 10.221 (2004) (discussing role of liaison counsel and noting that "[l]iaison counsel will usually have offices in the same locality as the court.").

In light of the foregoing, the Court should approve Granite Point's selection of Labaton Sucharow as Lead Counsel for the Class. The Court can be assured that, by approving Granite Point's choice of counsel, the Class will receive the highest caliber of representation.

## CONCLUSION

For the foregoing reasons, Granite Point respectfully requests that the Court grant its motion and enter an Order: (i) consolidating the above-captioned actions; (ii) appointing Granite Point as Lead Plaintiff; (iii) approving Granite Point's selection of Labaton Sucharow as Lead Counsel for the Class and Spragens Law PLC as Liaison Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

13

DATED:  December 2, 2019

Respectfully submitted,

*/s/ John Spragens*
John Spragens (Bar No. 031445)
**SPRAGENS LAW PLC**
1200 16th Ave. S.
Nashville, Tennessee 37212
Telephone:  (615) 983-8900
Facsimile:  (615) 682-8533
john@spragenslaw.com

*Proposed Liaison Counsel for the Class*

Christopher J. Keller
Eric J. Belfi
David J. Schwartz
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
dschwartz@labaton.com
fmcconville@labaton.com

*Counsel for Lead Plaintiff Movant*
*Granite Point, and Proposed*
*Lead Counsel for the Class*

14

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 2, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

Respectfully submitted,

*/s/ John Spragens*
JOHN SPRAGENS

# Mailing Information for a Case 3:19-cv-00962 Franch v. SmileDirectClub, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Wade B. Cowan**
  wcowan@dhhrplc.com

- **James M. Ficaro**
  jmf@weiserlawfirm.com

- **Andrew J. Finn**
  finna@sullcrom.com

- **Inbar R. Gal**
  gali@sullcrom.com

- **Elizabeth O. Gonser**
  egonser@rwjplc.com,nnguyen@rwjplc.com

- **Michael C. Griffin**
  michael.griffin@skadden.com

- **Jay B. Kasner**
  jay.kasner@skadden.com

- **Richard A. Maniskas**
  rmaniskas@sbtklaw.com

- **Scott D. Musoff**
  scott.musoff@skadden.com

- **Sharon L. Nelles**
  nelless@sullcrom.com

- **Christopher Nelson**
  cln@weiserlawfirm.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

Case 3:19-cv-00962   Document 25   Filed 12/02/19   Page 21 of 22 PageID #: 260