# Exhibit I

FILED

MAR 0 6 2019

ARTHUR BERGMAN, J.S.C

| | |
|---|---|
| SCOTT D. GALKIN, D.M.D. and NEW JERSEY DENTAL ASSOCIATION<br><br>Plaintiffs,<br><br>vs.<br><br>SMILEDIRECTCLUB, LLC., DANNY LEEDS, D.D.S., ROBERT M. DEROSSO, D.M.D. AND ISAAC V. PERLE, D.M.D.<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: MIDDLESEX COUNTY<br><br>DOCKET NO. MID-C-19-19<br><br>CIVIL ACTION<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

1. Before the Court are the following motions: (a) Plaintiffs' second Motion for Summary Judgment, and (b) Defendants' Motion for Summary Judgment, and Based on the submitted briefs, evidentiary record, and oral arguments, the Court hereby:

(a) denies Plaintiffs' second Motion for Summary Judgment in its entirety, and (b) grants Defendants' Motion for Summary Judgment in its entirety.

## FINDINGS OF FACT

2. The Court summarizes its key findings of facts below:

3. Plaintiff New Jersey Dental Association (the "NJDA") is a not-for-profit corporation whose members include active dentists in the State of New Jersey. Plaintiff Dr. Scott Galkin is a member of the NJDA and is a licensed dentist in New Jersey

4. Defendant SmileDirectClub ("SDC") is a dental support organization ("DSO") that provides non-clinical administrative support services, including its teledentistry platform. In April 2018, non-party Smile of New Jersey, PA ("Smile of NJ") contracted with SDC to receive non-

1

clinical administrative support services. Defendant Dr. Danny Leeds is the owner and manager of Smile of NJ and a contractor of Smile of NJ. Dr. Isaac Perle is an independent contractor of Smile of NJ. Drs. Leeds and Perle are licensed dentists in New Jersey.

5. On January 28, 2019, Plaintiffs filed a declaratory judgment action against Defendants. Plaintiffs alleged that SDC violated New Jersey regulations prohibiting the corporate practice of dentistry. Plaintiffs also alleged that Drs. Leeds and Perle aided and abetted the corporate practice of dentistry.

## Dr. Leeds and Perle Treatment of Patients Through Teledentistry

6. SDC provides dentists who utilize SDC's DSO services and teledentistry platform the option of treating patients with mild to moderate malocclusions through teledentistry. Teledentistry involves the remote treatment of patients by dentists and orthodontists as opposed to in-person visits. SDC's teledentistry platform enables dentists and orthodontists to provide remote clinical care. Dr. Leeds and Dr. Perle treat patients residing in New Jersey using SDC's online platform.

7. Potential patients with mild to moderate malocclusion begin the process of seeking treatment by either visiting a SmileShop or requesting a doctor-prescribed impression kit. Potential patients who visit a SmileShop fill out forms regarding their medical and dental history,

2

identify their chief complaint, and execute their informed consent. At the SmileShop, a technician takes a series of photographs using a sophisticated camera that creates a 3-D scan of the potential patient's teeth and gums and takes multiple traditional photographs of the potential patient's teeth and gums. Potential patients who request a doctor-prescribed impression kit, create an impression of their teeth and take photographs of their teeth and gums based on the instructions provided with the impression kits. These potential patients likewise complete forms regarding their medical and dental history, identify their chief concern, and execute their informed consent.

8.     The information gathered from potential patients at a SmileShop or submitted by potential patients who request a doctor-prescribed impression kit, are transmitted to a laboratory owned and operated by one of SDC's affiliated entities. Technicians at the laboratory create 3-D scans of the potential patient's teeth if he/she provided an impression. Highly trained lab technicians then prepare draft treatment plans for the potential patients based on the 3-D scans and other information provided by the potential patients. The potential patient's draft treatment plans, 3-D scans, photographs, medical history, dental history and chief complaint are then made available to Smile of NJ dentists and orthodontists ("Smile of NJ Doctors") through SDC's teledentistry platform. Dentists and orthodontists who are licensed in New Jersey and are affiliated with Smile of NJ treat patients residing in New Jersey when using the SDC teledentistry platform and SDC's other non-clinical administrative support services.

9.     Smile of NJ Doctors review the information provided regarding each potential patient to determine whether he or she has mild to moderate malocclusion, and, if so, whether the potential patient is a viable candidate for treatment using doctor-directed, remote clear aligner therapy. Smile of NJ Doctors may also request additional information or documentation from potential patients, including but not limited, to radiographs or periodontal clearance, before making

3

a determination. If Smile of NJ Doctors determine that the patient has mild to moderate malocclusion and is a viable candidate for SDC clear aligner therapy using a remote teledentistry platform, they review and modify the draft treatment plan as necessary in their sole clinical judgment. The finalized treatment plan is then sent to the patient for their review and approval. Upon that approval by the patient to proceed with treatment, the Smile of NJ Doctor issues a prescription for the manufacturing of the clear aligners and has SDC source such manufacturing from an FDA-approved and certified manufacturer. The Smile of NJ Doctors remain in contact with their patients during the entire course of treatment, with check-ins, using the SDC teledentistry platform, for the fitting of the first set of aligners and every 90 days thereafter, or more frequently if requested or desired by either the patient or the Smile of NJ Doctor.

10. Smile of NJ Doctors direct and control all clinical aspects of the clear aligner therapy throughout this process. Smile of NJ Doctors are under no obligation to treat any patients referred to them by SDC or to prescribe clear aligner therapy for the treatment of mild to moderate malocclusion.

11. SDC performs non-clinical administrative functions and provides a teledentistry platform to facilitate the provision of clear aligner therapy by Smile of NJ Doctors to their patients, including, but not limited to, assisting with the collection of information of the potential patients, referring potential patients for subsequent review by Smile of NJ Doctors, billing and collection, marketing, sourcing clear aligners to fill prescriptions placed by Smile of NJ Doctors, and sourcing the shipment of clear aligners, at the direction of Smile of NJ Doctors, to their patients.

### Contractual Relationship Between SDC and Smile of NJ

12. Smile of NJ entered into a series of contracts with an SDC affiliate relating to the treatment of patients through teledentistry and the non-clinical administrative support services and

4

teledentistry platform that SDC provides. Dr. Leeds signed the contracts on behalf of Smile of NJ. Steven Katzman, SDC's Chief Operating Officer, signed the contracts on behalf of SDC.

13. Smile of NJ and an SDC affiliate entered into a Management Services Agreement ("MSA") dated April 1, 2018. The MSA outlines the non-clinical, administrative support services that SDC would provide to SDC. The MSA also provides that Smile of NJ would be solely responsible for all clinical aspects of the assessment and diagnosis of patients as well as the treatment of patients with clear aligner therapy and that SDC would have no role in the clinical decisions and treatment of patients. The MSA further provides that Smile of NJ will pay SDC for the non- clinical, administrative support services it provides.

14. Smile of NJ and an SDC affiliate also entered into a Supply Agreement dated April 1, 2018. The Supply Agreement outlines the sourcing of certain products by SDC for Smile of NJ. The Supply Agreement provides that Smile of NJ will pay SDC for the sourcing of these products.

15. Smile of NJ and an SDC affiliate also entered into a Sublicense Agreement dated April 1, 2018. The Sublicense Agreement outlines Smile of NJ's right to use certain intellectual property owned by SDC. The Sublicense Agreement provides that Smile of NJ will pay SDC for the use of its brands and marks.

5

16. Smile of NJ, Dr. Leeds, and an SDC affiliate entered into a Succession Agreement dated April 1, 2018. The Succession Agreement outlines the process for Dr. Leeds to sell his ownership interest in Smile of NJ following a "Succession Event." The Succession Agreement requires that any subsequent owner of Smile of NJ is a dentist or orthodontist licensed in New Jersey. There has never been a Succession Event. Dr. Leeds is the sole owner of Smile of NJ.

17. The Succession Agreement prevents SDC from taking control or ownership of Smile of NJ because the owner of Smile of NJ must be a dentist or orthodontist licensed in NJ.. Although there has never been a Succession Event, if there were a Succession Event to occur, SDC cannot take control of Smile NJ. Contractual Relationship Between Smile of NJ, Dr. Leeds, and Dr. Perle

18. Smile of NJ, Dr. Leeds, and Dr. Perle entered a series of agreements outlining their respective contractual relationships. Dr. Leeds signed each of these agreements on behalf of Smile of NJ and as the owner of Smile of NJ. SDC is not a party to any of these agreements.

19. Smile of NJ and Dr. Leeds entered into an Employment Agreement (Practice Owner) dated April 1, 2018. The Employment Agreement (Practice Owner) outlines Dr. Leeds' responsibilities as the owner of Smile of NJ. The Employment Agreement (Practice Owner) provides that Smile of NJ will pay Dr. Leeds for his services as the practice owner.

20. Smile of NJ and Dr. Leeds entered into an additional Employment Agreement (Practice Employee) dated April 1, 2018. This second Employment Agreement (Practice Owner) outlines Dr. Leeds' responsibilities as a dentist employed by Smile of NJ and provides that Smile of NJ will pay Dr. Leeds for performing the responsibilities of a "Dentist" employed by Smile of NJ. This Employment Agreement (Practice Employee) provides that Smile of NJ will pay Dr. Leeds for each patient he treats.

6

21. Smile of NJ and Dr. Perle entered into a Professional Services Agreement dated September 5, 2018. The Professional Services Agreement outlines Dr. Perle's responsibilities and rights as an independent contractor of Smile of NJ. The Professional Services Agreement provides that Smile of NJ will pay Dr. Perle for each patient he treats.

22. The agreements between Smile of NJ, Dr. Leeds, and Dr. Perle do not provide SDC any control over Smile of NJ, do not allow SDC to control any aspect of clinical decisions, clinical care, patient treatment, and do not permit SDC to infringe upon the professional and clinical judgment of Dr. Leeds, Dr. Perle, or any other dentist or orthodontist employed by or contracting with Smile of NJ. To the contrary, the Employment Agreement (Practice Owner) confirms that Dr. Leeds, as the owner of Smile of NJ, is responsible for general oversight of the practice and performance of dental services. The contractual relationships created by these agreements between Smile of NJ, Dr. Leeds and Dr. Perle do not amount to SDC engaging in the corporate practice of dentistry.

### Marketing Pursuant to Management Services Agreement

23. The MSA requires SDC to provide marketing services. The marketing services provided by SDC include (a) marketing and advertising materials inclusive of all media, including internet-based advertising, (b) the placing of advertisements or articles in magazines, newspapers, other publications and any and all media, and (c) internet lead generation.

24. One of the marketing services provided by SDC pursuant to the Management Services Agreement is the maintenance of a website at www.smiledirectclub.com (the "SDC Website"). The SDC Website states that the treatment received by individuals who choose to use SDC's online teledentistry platform is doctor-direct and doctor-controlled. The SDC Website also states that the dentists and orthodontists who treat patients using SDC's online teledentistry platform are not employed by SDC or otherwise controlled by SDC.

7

## CONCLUSIONS OF LAW

25. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46–2(c). When the moving party satisfies its burden of proof, the burden shifts to the non-moving party to present evidence that there is a genuine issue for trial. "The non-moving party may not satisfy its burden by merely making allegations or denials in its pleading, but must produce sufficient evidence to reasonably support a verdict in its favor." Investors Bank v. Torres, 457 N.J. Super. 53, 64 (2018).

26. Applying this standard, the Court finds that none of the theories advanced by Plaintiffs to establish that SDC is violating New Jersey regulations governing the practice of dentistry are supported by the evidentiary record. Nor does the evidentiary record provide any support for Plaintiffs claims that Drs. Leeds and Perle are "aiding and abetting" the corporate practice of dentistry. Each of Plaintiffs' theories are addressed below.

### SDC Does Not Practice Dentistry

27. The evidentiary record does not support a finding that SDC is engaging in the corporate practice of dentistry by providing non-clinical administrative support services, including its teledentistry platform, to Smile of NJ or the Smile of NJ Doctors. The actions taken by SDC, either directly or through its subsidiaries, do not constitute the practice of dentistry. The treatment of patients is directed and controlled by licensed New Jersey dentists or orthodontists like Dr. Leeds and Dr. Perle.

28. Plaintiffs argued that the SDC Website demonstrates that SDC is engaged in the practice of dentistry. Neither the SDC Website nor the remainder of the evidentiary record supports this conclusion. The SDC Website makes it clear that the treatment of patients is

8

performed by licensed dentists, and the SDC Website also makes it clear that SDC provides non-clinical administrative support services, including the teledentistry platform.

**SDC Does Not Control Smile of NJ**

29.    The evidentiary record does not support a finding that SDC is engaging in the corporate practice of dentistry by controlling Smile of NJ, Dr. Leeds or Dr. Perle or any other Smile of NJ Doctor. New Jersey law generally recognizes three concepts that suggest control by one individual or entity over another: agency, piercing of the corporate veil, and the corporate-sham doctrine. None of those concepts apply here.

30.    *Agency.* In New Jersey, an agency relationship is created "when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *N.J. Lawyers' Fund for Client Protection v. Stewart Title Guar. Co.*, 203 N.J. 208, 220, 1 A.3d 632, 639 (2010) (citing Restatement (Third) of Agency § 1.01 (2006)) (internal quotation marks omitted). By contrast, an independent contractor is "characterized by the attributes of self-employment and self-determination in the economic and professional sense." *Rokos v. State, Dep't of Treasury*, 236 N.J. Super. 174, 564 A.2d 1217, 1220 (App. Div. 1989)). Independent contractors' actions cannot be imputed to the person or entity hiring them because the employer lacks the right to control the manner in which the work is to be done. *Baldasarre v. Butler*, 132 N.J. 278, 291 (2010), (citing *Prosser and Keeton on Torts*, § 71).

31.    The evidentiary record does not support a finding that Smile of NJ operates as SDC's agent. Smile of NJ pays SDC to perform non-clinical administrative support services, including its teledentistry platform, as well as making payments to SDC pursuant to supply and licensing agreements. None of the contracts between Smile of NJ and SDC indicates that SDC has assented to or consents to Smile of NJ acting on SDC's behalf; and, the evidentiary record

9

does not show an understanding between Smile of NJ and SDC different from that of the contractual relationship.

32. ***Corporate Veil.*** In New Jersey, "courts may pierce the corporate veil by finding that a subsidiary was 'a mere instrumentality of the parent corporation.'" *State, Dep't of Envt'l Prot. v. Ventron Corp.*, 94 N.J. 473, 500-01, 468 A.2d 150, 164-65 (1983) (citation omitted). But courts pierce the veil and impose liability on the parent only when (a) "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent," and (b) the parent "has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." *Id.* Alternatively, veil-piercing can be appropriate "where the corporation's principals have misused the entity to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." *Richardson v. UN Empress Props., LLC*, LEXIS 751, *10 (App. Div. 2010).

33. The record does not include any evidence justifying the piercing of a corporate veil. Smile of NJ is not a subsidiary of SDC. Nor is there any evidence that SDC is a "principal" of Smile of NJ. Dr. Leeds is the sole owner of Smile of NJ. Moreover, the contract between SDC and Smile of NJ state that SDC does not and shall not exercise control over Smile of NJ; and, the evidentiary record is devoid of any instance where SDC exercised control over Smile of NJ.

34. ***Corporate Sham.*** In *Allstate*, the court found that the defendant violated the applicable statute because its corporate structure violated the Board standards by allowing a chiropractor, i.e., a non-doctor, to effectively control an entire medical practice including patients' care. *Allstate Ins. Co. v. Northfield Medical Center, P.C.*, 228 N.J. 596, 614-615 (App. Div. 2017). The *Allstate* court concluded that the medical practice was a "sham" primarily for three reasons; none of which apply here.

35. First, though a licensed medical physician retained legal ownership of the medical

10

corporation, he did not participate in the day-to-day treatment of patients. *Id.* at 607. Here, SDC does not "own" Smile of NJ nor does it employ or otherwise engage the dentists providing treatment to patients. Contrary to the facts in *Allstate*, the New Jersey dentists and orthodontists using SDC's non-clinical administrative support services and teledentistry platform, contract with Smile of NJ, which is owned by licensed New Jersey dentist Dr. Leeds, to pay for SDC's services. These dentists control, direct and oversee the day-to-day treatment of the patients.

36.    Second, the physician holding legal title to the medical corporation in *Allstate* "was a stranger to the medical practice" and "'sold her license to multiple practices utilizing the so-called 'Doc-in-the-Box' structure in New Jersey and many other states." *Id.* at 625. Here, Dr. Leeds holds legal title to Smile of NJ. He is not a "stranger" to the dental profession—he is a dentist. He is a dentist that actively treats patients using SDC's teledentistry platform and non-clinical administrative support services.

37.    Third, the scheme in *Allstate* involved the use of an undated resignation form so that the chiropractor could maintain control of the medical practice by transferring legal title to whomever he wanted. *Id.* at 625. Here, SDC has no mechanism for taking control over patients' treatment or Smile of NJ. Even in the context of a Succession Event under the Succession Agreement, SDC never "takes control" of Smile of NJ. Instead, the Succession Agreement specifically provides that only another licensed New Jersey dentist can become the new owner of Smile of NJ. (SDC000101-000111.)

### The SDC Website Does Not Constitute The Practice Of Dentistry

38.    The evidentiary does not support a finding that SDC's maintenance of the SDC Website violates the Dental Practice Act. The Dental Practices Act—N.J.S.A. 45:6:19—identifies a series of actions that constitute the practice of dentistry and a series of action that do not constitute the practice of dentistry. Plaintiffs' argument focuses on the actions that the Dental Practice Act

11

indicates do not constitute the practice of dentistry.

39. The Dental Practice Act states that the following action does not constitute the practice of dentistry (emphasis added):

> (7) The making of artificial restorations, substitutes, or appliances for correction of disease, loss, deformity, malposition, dislocation, fracture, or injury to the jaws, teeth, lips, gums, cheeks, palate, or cases, models, or from impressions furnished by a licensed and registered dentist, on written prescription only; *provided, that such prosthetic or orthodontic appliances, or the services rendered in the construction, repair, or alteration thereof, shall not be advertised, sold or delivered, directly or indirectly, to the public by the dental technician or dental laboratory as principal or agent.*

40. This provision of the Dental Practice Act does not identify activity that constitutes the practice of dentistry. Instead, this provision indicates that certain manufacturing activity does not constitute the practice of dentistry if (a) the manufacturing is done by pursuant to a written prescription and (b) the activity is not advertised, sold or delivered to the public by a dental technician or dental laboratory as principle or agent. This provision does not indicate that failure to satisfy (a) and (b) means that the manufacturing activity constitutes the practice of dentistry.

41. However, even assuming this provision of the Dental Practice Act identifies activity that may constitute the practice of dentistry, the evidentiary record does not support a finding that SDC violated this provision. The MSA requires that SDC will engage in marketing services as part of its non-clinical administrative activities for Smile of NJ. The record does not include any evidence suggesting that SDC is not fulfilling its contractual obligation to Smile of NJ by maintaining the SDC Website.

42. Moreover, as discussed, the SDC Website makes clear that treatment is directed by the dentists and orthodontists, that the dentists and orthodontists do not work for SDC, and that the dentists and orthodontists contract with SDC to receive non-clinical administrative support services from SDC. Under these circumstances, the record does not support a finding that the SDC Website violates the Dental Practice Act even assuming that the provision discussed above could

12

be interpreted as prohibiting certain types of advertising.

## CONCLUSION

43.    For the reasons discussed above, it is hereby ORDERED that: (1) Plaintiffs' Motion for Summary Judgment is DENIED; (2) Defendants' Motion for Summary Judgment is GRANTED; and (3) the case is otherwise DISMISSED.

IT IS SO ORDERED.

Dated: March 6, 2020

*Arthur Bergman*
HON. ARTHUR BERGMAN, J.S.C.

13