UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ADAM FRANCHI, Individually and on     :
Behalf of All Others Similarly Situated,     :   Consolidated Case No. 19-cv-962
    :
                  Plaintiff,     :   Judge Eli J. Richardson
       vs.     :
    :   Magistrate Judge Jeffrey S. Frensley
SMILEDIRECTCLUB, INC., et al.,     :
    :
                Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................................1

ARGUMENT ...................................................................................................................................2

      A.     Plaintiffs Do Not Allege Any Misrepresentation Regarding
             SmileDirectClub's Revenue, Gross Profits or Adjusted EBITDA ..........................2

      B.     The Offering Documents Did Not
             Misrepresent Member Care or Satisfaction ............................................................6

      C.     The Offering Documents Disclosed the
             Company's Legal and Regulatory Risks...................................................................9

CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                **Page(s)**

*Bondali v. Yum! Brands, Inc.*,
    620 F. App'x 483 (6th Cir. 2015) ...............................................................................................8

*In re Burlington Coat Factory Securities Litigation*,
    114 F.3d 1410 (3d Cir. 1997)....................................................................................................3

*California Public Employees' Retirement System v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004).....................................................................................................2

*City of Monroe Employees Retirement System v. Bridgestone Corp.*,
    399 F.3d 651 (6th Cir. 2005) ...................................................................................................8

*In re Coty Inc. Securities Litigation*,
    No. 14-cv-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)..................................6

*Cozzarelli v. Inspire Pharmaceuticals Inc.*,
    549 F.3d 618 (4th Cir. 2008) ...................................................................................................2

*Dailey v. Medlock*,
    551 F. App'x 841 (6th Cir. 2014) ............................................................................................6

*DeMaria v. Andersen*,
    318 F.3d 170 (2d Cir. 2003)......................................................................................................3

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005).................................................................................................................1

*In re Envision Healthcare Corp. Securities Litigation*,
    No. 3:17-cv-01112, 2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019).............................3, 9

*In re Facebook, Inc., IPO Securities & Derivative Litigation*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013)......................................................................................5

*In re Ford Motor Co. Securities Litigation*,
    381 F.3d 563 (6th Cir. 2004) ...................................................................................................7

*Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.*,
    No. 3:09-00882, 2011 WL 1335803 (M.D. Tenn. Mar. 31, 2011)......................................8

*Glassman v. Computervision Corp.*,
    90 F.3d 617 (1st Cir. 1996)......................................................................................................4

*Grae v. Corrections Corp. of America*,
    No. 3:16-cv-2267, 2017 WL 6442145 (M.D. Tenn. Dec. 18, 2017) ................................3, 9

Case 3:19-cv-00962    Document 79    Filed 05/07/20    Page 3 of 17 PageID #: 1453

*Helwig v. Vencor, Inc.*,
    251 F.3d 540 (6th Cir. 2001) ........................................................................................3, 10

*Kapps v. Torch Offshore, Inc.*,
    379 F.3d 207 (5th Cir. 2004) ...............................................................................................6

*Litwin v. Blackstone Group, L.P.*,
    634 F.3d 706 (2d Cir. 2011)..................................................................................................5

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)................................................................................................................9

*Melder v. Morris*,
    27 F.3d 1097 (5th Cir. 1994) ...............................................................................................7

*Miller v. Champion Enterprises Inc.*,
    346 F.3d 660 (6th Cir. 2003) ...............................................................................................9

*Milman v. Box Hill Systems Corp.*,
    72 F. Supp. 2d 220 (S.D.N.Y. 1999)....................................................................................5

*Panther Partners Inc. v. Ikanos Communications, Inc.*,
    681 F.3d 114 (2d Cir. 2012)..................................................................................................5

*Pension Fund Group v. Tempur-Pedic International, Inc.*,
    614 F. App'x 237 (6th Cir. 2015) .....................................................................................7, 9

*In re Ply Gem Holdings, Inc. Securities Litigation*,
    No. 14-CV-3577 (JPO), 2016 WL 5339541 (S.D.N.Y. Sept. 23, 2016) .............................5

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
    683 F.3d 239 (6th Cir. 2012) ...............................................................................................7

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
    697 F.3d 869 (9th Cir. 2012) ...............................................................................................2

*Schuh v. HCA Holdings, Inc.*,
    947 F. Supp. 2d 882 (M.D. Tenn. 2013)...........................................................................4, 6

*Stadnick v. Vivint Solar, Inc.*,
    861 F.3d 31 (2d Cir. 2017)................................................................................................1, 3

*Tuchman v. DSC Communications Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ...............................................................................................8

*Weiner v. Tivity Health, Inc.*,
    365 F. Supp. 3d 900 (M.D. Tenn. 2019)..............................................................................9

*Winslow v. BancorpSouth, Inc.*,
 No. 3:10-00463, 2011 WL 7090820 (M.D. Tenn. Apr. 26, 2011) ....................................10

*Zwick Partners, LP v. Quorum Health Corp.*,
 No. 3:16-cv-2475, 2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018) ................................10

**Regulations**

17 C.F.R. § 229.303(a)(3)(ii) ....................................................................................................5

17 C.F.R. § 210.3–12(a).............................................................................................................4

iv

<u>**PRELIMINARY STATEMENT**</u>

Plaintiffs' Opposition (ECF No. 75) confirms that this Action is based on nothing more than Plaintiffs' subjective disagreement with SmileDirectClub's business model—which they do not seem to understand—and their disappointment with the Company's stock performance.[1] But the federal securities laws are not an insurance policy against market losses. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

In an effort to manufacture a securities violation, the Opposition mischaracterizes (or ignores) SmileDirectClub's extensive disclosures in the Offering Documents. For example, Plaintiffs argue the Offering Documents' accurate disclosure of historical growth was misleading because they did not also disclose purported declines in revenue and gross profit for the quarter in progress at the time of the IPO. But there were no such declines—both metrics actually *increased* compared to the same quarter of the prior year. In any event, the Offering Documents expressly warned that quarterly result could fluctuate, the Company may not achieve profitability and growth typically slows in the third quarter relative to other quarters. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 39 (2d Cir. 2017).

Similarly, Plaintiffs argue that the Offering Documents' supposed descriptions of the Company's "standard of care" and member satisfaction were misleading based on complaints submitted to the Better Business Bureau. But the Offering Documents made no representation about any "standard of care" because SmileDirectClub does not provide dental care; dentists do. As the Offering Documents explained, SmileDirectClub is a dental support organization that provides a suite of *non-clinical administrative support* services that enables the dentists with whom the Company contracts to provide remote care to patients via a teledentistry platform.

---

[1] Capitalized terms have the meaning ascribed in Opening Brief, filed March 23, 2020 (ECF No. 73), and all exhibits were submitted with the Declaration of Elizabeth Gonser, dated March 23, 2020 (ECF No. 74).

Moreover, the "thousands" of complaints on which Plaintiffs rely amount to *less than one quarter of one percent* of SmileDirectClub's more than 700,000 members at the time of the IPO. Such complaints are unremarkable for a business of SmileDirectClub's size and do not give rise to a plausible inference that any statement in the Offering Documents was false or misleading.

Finally, Plaintiffs argue that the Offering Documents' extensive disclosures about the Company's legal and regulatory risk were misleading because they supposedly warned only that such risks may materialize in the future. But that is not what the Offering Documents said. Rather, they expressly disclosed that the Company was currently facing "*ongoing*" legal and regulatory challenges and provided specific examples. Nothing more was required.

Accordingly, as demonstrated below and in the Opening Brief, the Consolidated Complaint should be dismissed in its entirety with prejudice.

## ARGUMENT

**A.  Plaintiffs Do Not Allege Any Misrepresentation Regarding SmileDirectClub's Revenue, Gross Profits or Adjusted EBITDA**

The Opposition fails to rebut any of the multiple independent reasons that Plaintiffs' claims regarding revenue, gross profit and Adjusted EBITDA for the quarter in progress at the time of the IPO fail. (*See* Br. at 13-16.)[2] First, contrary to the Plaintiffs' argument (Opp. at 11), and as their own cases recognize, accurate historical data is not misleading if later results vary.

---

[2] As an initial matter, the gravamen of Plaintiffs' claims is that the Company supposedly concealed adverse financial information and misrepresented its business. While these allegations have no merit, they plainly sound in fraud and thus are subject to Rule 9(b). Plaintiffs' contention that their claims are based on a "failure to exercise reasonable care" is based on pure boilerplate devoid of any factual content. (*See* Opp. at 9 (citing Compl. ¶¶ 51-52, 57-58).) Although the Sixth Circuit has not addressed whether a boilerplate disclaimer of fraud allows Plaintiffs to evade Rule 9(b), other Circuits have squarely rejected that contention. *See, e.g.*, *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 885–86 (9th Cir. 2012); *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008); *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004).

2

*See In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-cv-01112, 2019 WL 6168254, at \*9 (M.D. Tenn. Nov. 19, 2019) ("[Accurate] reports of historical income and EBITDA growth are not themselves actionable statements."). That is because "an accurate report of past successes does not contain an implicit representation that the trend is going to continue, and hence does not, in and of itself, obligate the company to update the public as to the state of the quarter in progress." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1432 (3d Cir. 1997).

Similarly, the Offering Documents did not misrepresent the Company's "accelerating growth." (*See* Opp. at 10.) Plaintiffs refer to a single graphic that lists "accelerating growth" among the Company's "key strengths," along with "control of our destiny" and "compelling unit economics." (Ex. B at 8.) No reasonable investor could interpret this graphic—which does not reference any particular metric, calculation or time frame—as a guarantee about revenue, gross profit or Adjusted EBITDA for the quarter in progress. Moreover, Plaintiffs continue to ignore that the Offering Documents specifically cautioned that the Company "expects [its] future quarterly . . . operating results to fluctuate," (*id.* at 25), "ha[s] a history of net losses and . . . may not achieve or maintain profitability in the future," (*id.* at 11), and that "***the third quarter has historically tended to have less growth relative to other quarters***," (*id.* at 118 (emphasis added)). While the Sixth Circuit has not addressed nondisclosure of quarter-in-progress results in connection with an IPO, the Second Circuit has repeatedly rejected such claims. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 39 (2d Cir. 2017); *DeMaria v. Andersen*, 318 F.3d 170, 181-82 (2d Cir. 2003). Plaintiffs ignore these cases, which are squarely on point.[3]

---

[3] Instead, Plaintiffs claim Defendants "fail[] to reckon with" *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001) and *Grae v. Corrections Corp. of America*, No. 3:16-cv-2267, 2017 WL 6442145 (M.D. Tenn. Dec. 18, 2017). (Opp. at 10-11.) But neither case involved Securities Act claims, an IPO or quarter-in-progress results.

3

In any event, contrary to Plaintiffs' suggestion, there was no trend reversal. Revenue and gross profit *increased* by 50.54% and 65.83%, respectively, in Q3 2019 compared to Q3 2018. (*See* Ex. C at 4.) Plaintiffs ignore these increases and focus exclusively on the changes from the prior quarter, but the relevant comparison is year-over-year, not quarter-to-quarter. *See Schuh v. HCA Holdings, Inc.*, 947 F. Supp. 2d 882, 888 (M.D. Tenn. 2013) (dismissing claim that positive Medicaid revenue trend disclosed in Registration Statement "had abruptly halted" and turned downward because "there was no downward trend . . . compared to the same quarter in 2010").[4]

With respect to Adjusted EBITDA, although it declined year-over-year in Q3 2019, this was not a reversal of any prior trend, as Adjusted EBITDA had fluctuated significantly:



Although all of this data was disclosed in the Offering Documents (Ex. B at 90), Plaintiffs conveniently omit Q1 2017 through Q3 2018, presumably because those quarters do not fit (and, in fact, conclusively refute) Plaintiffs' claimed "trend." (*See* Opp. at 3; Compl. ¶ 29.)

Plaintiffs' arguments regarding Item 303 of Regulation S-K are also meritless. (*See* Opp. at 12-13.) Most fundamentally, Regulation S-K does not govern when quarterly financial results must be disclosed in connection with an IPO; Regulation S-X does. *See* 17 C.F.R. § 210.3–

---

[4] For example, quarter-to-quarter comparisons ignore the seasonal fluctuations disclosed in the Offering Documents. (Ex. B at 117-18.) *See Glassman v. Computervision Corp.*, 90 F.3d 617, 631–32 (1st Cir. 1996) (where prospectus disclosed "cyclical variations in quarterly results, with . . . third quarter results typically being lower," "the meaningful comparison of . . . third quarter 1992 booking numbers is to those of the third quarter of 1991").

12(a). Item 303, on the other hand, governs disclosure of "known trends or uncertainties . . . that the registrant reasonably expects will have a material . . . unfavorable impact on . . . revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(3)(ii). On its face, this does not require disclosure of trends in quarterly results themselves.[5]

Plaintiffs miss the point by arguing that Item 303 "requires an issuer to disclose the full extent to which adverse trends were expected to affect their business." (Opp. at 13.) Plaintiffs fail to allege any adverse trend in the first place, let alone the extent to which such trend was known and reasonably expected to materially and adversely affect the Company's business.[6] Plaintiffs refer to increased sales and marketing and legal expenses, but do not and cannot contend that these increases had any impact on revenue or gross profit. (Opp. at 14.) In any event, the Offering Documents disclosed these increasing expenses. (Ex. B at 84, 88, 90.)[7]

Similarly, Plaintiffs' general observation that an intra-quarter trend could develop for some types of data in some industries is beside the point. (Opp. at 12.) Quarterly revenue, gross profit and Adjusted EBITDA, by definition, can only be calculated at the end of the quarter. *See*

---

[5]  Plaintiffs' cases are not to the contrary, as they involved failure to disclose trends and events that **caused** a change in quarterly results. *See, e.g.*, *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 122 (2d Cir. 2012) (product defect that would likely result in return of 72% of sales); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 513 (S.D.N.Y. 2013) (trend of increasing mobile users was negatively impacting social network company's revenues); *Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 231 (S.D.N.Y. 1999) (loss of key customers caused a material decline in sales).

[6]  The cases Plaintiffs cite only prove the point. *See, e.g.*, *Litwin v. Blackstone Grp. L.P.*, 634 F.3d 706, 719 (2d Cir. 2011) (company failed to disclose expected impact of deteriorating subprime mortgage on its real estate investments); *In re Ply Gem Holdings, Inc. Sec. Litig.*, No. 14-CV-3577 (JPO), 2016 WL 5339541, at *6 (S.D.N.Y. Sept. 23, 2016) (manufacturer failed to disclose expected impact of shift in sales to more low-margin products).

[7]  Moreover, while Plaintiffs note that legal expenses doubled from Q2 2019 to Q3 2019, they do not allege how much those expenses were, nor do they allege any facts suggesting the increase had or was expected to have a materially adverse impact on Adjusted EBITDA.

5

*Dailey v. Medlock*, 551 F. App'x 841, 846 (6th Cir. 2014) ("One cannot disclose an event which has not yet occurred."); *see also Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 221 (5th Cir. 2004) ("[D]ata concerning a quarter that is in progress is necessarily incomplete."). Indeed, standing alone, even an increase or decrease in a single quarter is nothing more than a snapshot in time—just as likely to be an aberration as the start of a trend.

Relatedly, because Item 303 applies only to ***known*** trends, it necessarily cannot be triggered by predictions of quarterly trends based on intra-quarter results. Thus, Plaintiffs' conclusory assertion that the Company supposedly "closely tracked" revenue, adjusted EBITDA and gross profit is irrelevant in addition to being inadequately pled. *See, e.g.*, *Dailey*, 551 F. App'x at 846 ("While plaintiffs make an assertion of such actual knowledge in their appellate brief, the FAC itself alleges no facts . . . to support that contention."); *see also In re Coty Inc. Sec. Litig.*, No. 14-cv-919 (RJS), 2016 WL 1271065, at *7 (S.D.N.Y. Mar. 29, 2016). Indeed, it is particularly implausible that the precise quarterly fluctuations in complex accounting metrics such as Adjusted EBITDA and gross profit were known before the end of the quarter.[8]

**B.      The Offering Documents Did Not Misrepresent Member Care or Satisfaction**

The Opposition also confirms that Plaintiffs' claims regarding SmileDirectClub's supposed "standard of care" and member satisfaction should be dismissed. Contrary to Plaintiffs' suggestion (Opp. at 17), SmileDirectClub never claimed it provides "excellent clinical care" to patients. SmileDirectClub does not provide clinical care. Rather, the Offering

---

[8]   Plaintiffs' reliance on *Schuh* is misplaced. (Opp. at 14.) There, the court sustained an Item 303 claim premised on defendant's failure to disclose declining revenue per admission—an operating metric that could be tracked in real time. *See Schuh*, 947 F. Supp. 2d at 893. Moreover, plaintiffs alleged that an internal investigation "revealed that 'unlawful and highly profitable cardiac procedures had been inflating [the company's] key revenue metrics.'" *Id.* Even with such allegations—far more than Plaintiffs allege here—Judge Sharp emphasized that the claim "barely survive[d] dismissal" "with little room to spare." *Id.* at 890, 892.

Documents stated that the Company's teledentistry platform "allow[s] doctors in our network to focus on what matters most: providing convenient access to excellent clinical care." (Ex. B at 2 (emphasis added).) SmileDirectClub is a dental **support** organization "engaged by [a] network of doctors to provide a suite of **non-clinical** administrative support services." (*Id.* at 124 (emphasis added); *see generally* Ex. I.) The Offering Documents explained this in detail:

> Our network of doctors are licensed to practice dentistry in their respective state and are engaged as employees or independent contractors of various professional corporations. These PCs are owned by independent doctors and are registered to engage in business in their respective states. It is through these PCs that the clinical services for clear aligner therapy are rendered to our members. We enter into a suite of agreements with each of the PCs to provide its DSO [dental support organization] services. In addition, we are also a supplier of the clear aligner products to these PCs and enter into a Supply Agreement with each of the PCs accordingly.

(Ex. B at 124.) Plaintiffs cannot plead a securities claim by mischaracterizing the Offering Documents and then claiming those mischaracterizations are false. *See Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 253-54 (6th Cir. 2012) (affirming dismissal of fraud, negligent-misrepresentation and Kentucky Blue Sky Law claims where plaintiff "completely ignore[d] the express language of the offering documents"); *see also Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994) ("[P]laintiffs fail to base their allegations on statements actually made by [the company], opting instead to selectively distort the company's public statements.").

In any event, statements about "professional-level service" and a focus on "delivering an exceptional member experience" are classic corporate puffery—the exact type of statements the Sixth Circuit has found inactionable. *See, e.g., Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 F. App'x 237, 247 (6th Cir. 2015) ("[Defendant's] statement that the company sells a 'consumer preferred' product is the sort of 'rosy affirmation commonly heard from corporate managers' that we hold immaterial as a matter of law."); *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004) (Ford "is a worldwide leader in automotive safety," has made

7

"quality a top priority," and its "greatest asset is the trust and confidence [of its] customers").

*Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.*, No. 3:09-00882, 2011 WL 1335803 (M.D. Tenn. Mar. 31, 2011) is far from "on point." (Opp. at 18.) First, unlike the statements here, which "lack[] a standard against which a reasonable investor could expect them to be pegged," *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 671 (6th Cir. 2005), the statements in *Garden City* were "subject to empirical testing." *Garden City*, 2011 WL 1335803, at *49. Second, while Plaintiffs here assert that "SDC's teledentistry model could not provide the standard of care necessary to move a customer's teeth safely" (Opp. at 17), they do not allege facts that plausibly support such a sweeping conclusion, unlike plaintiffs in *Garden City* who cited multiple independent reports directly refuting the defendant's statements with hard data. *Garden City*, 2011 WL 1335803, at *48-49.[9]

Similarly, listing "positive member experience" as one of the Company's strengths and accurately disclosing that reviews on the Company's website average 4.9 out of 5 stars was not misleading simply because certain members allegedly encounter issues with their clear aligner therapy. Plaintiffs continue to ignore that the 1,800 alleged Better Business Bureau complaints on which they rely (Compl. ¶ 36(a))—the vast majority of which were about administrative and billing issues—amount to less than one quarter of one percent of SmileDirectClub's more than

---

[9] Plaintiffs' general allegations that treating dentists' oversight and communication were not "meaningful" enough also fail to plead a securities violation. (Opp. at 17-18.) *See Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 490 (6th Cir. 2015); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1070 (5th Cir. 1994). Plaintiffs try to distinguish *Bondali* and *Tuchman* because "neither case suggests statements that misled shareholders about a company's most important product or service are not actionable" (Opp. at 18 n.8), but this assumes the very thing Plaintiffs are trying to establish: that SmileDirectClub's statements were misleading.

8

700,000 members as of the IPO.  Plaintiffs also ignore that overall the Company currently has an A+ rating from BBB with an average customer rating of four out of five stars.  (Ex. F at 1.)[10]

**C.**     **The Offering Documents Disclosed the Company's Legal and Regulatory Risks**

Finally, the Offering Documents' legal and regulatory risk disclosures were not false or misleading.  First, contrary to Plaintiffs' argument, the Offering Documents did not merely warn that the Company "may" face legal and regulatory challenges in the future.  (Opp. at 20-23.) They disclosed that such challenges were already "ongoing" and likely to continue and provided numerous examples.  (Ex. B at 37-38.)[11]  The Company was not required to identify each and every such matter, including the proposed California legislation or the two-year-old investigation that had not resulted in any enforcement action.  *See Pension Fund Grp.*, 614 F. App'x at 248-49 ("[Defendants] spoke fully when they acknowledged increased competition; they were not required to mention specific competitors to avoid misleading investors."); *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 678 (6th Cir. 2003) (companies are "not required to detail every facet or extent of that risk to have adequately disclosed the nature of the risk").[12]

---

[10]  Far from "[finding] falsity adequately alleged under similar circumstances" (Opp. at 20), Plaintiffs' cases again are inapposite.  *See Grae v. Corr. Corp. of Am.*, No. 3:16-cv-2267, 2017 WL 6442145, at *18 (M.D. Tenn. Dec. 18, 2017) (private prison company claimed its "history of quality services had gained it the faith and esteem of its government partners, when, in fact, the perceived low quality of its services was leading one of its most important client relationships to the brink of collapse"); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46-47 (2011) (pharmaceutical company omitted reports, backed by medical studies, that drug responsible for 70% of company's sales caused loss of smell).

[11]  Plaintiffs argue that, "[r]elying on materials outside of the pleadings, defendants proffer their own narrative and facts regarding a lawsuit against the Company by the New Jersey Dental Association, placing an alternative spin on the Complaint's allegations."  (Opp. at 23.)  The "material outside of the pleadings" was the court's summary judgment decision, which firmly held the Company is ***not*** engaged in the illegal practice of dentistry.  (*See* Ex. I at 8.)

[12]  This distinguishes Plaintiffs' cases, where defendants failed to disclose existing issues.  *See, e.g.*, *Weiner v. Tivity Health, Inc.*, 365 F. Supp. 3d 900, 908 (M.D. Tenn. 2019) (company's second-largest customer had already launched a competing product); *In re Envision*

9

Second, Plaintiffs conflate the *existence* of legal and regulatory challenges with the *impact* of such challenges on the Company's business. (Opp. at 21-22.) Plaintiffs allege no facts showing that the California investigation adversely affected the Company's business at the time of the IPO or that the changes allegedly required by the proposed California legislation would have any impact on the Company's bottom line (which it did not). Thus, the Sixth Circuit's decision in *Helwig*, on which Plaintiffs rely, actually supports dismissal. There, a healthcare company allegedly misled investors when it (i) claimed it could not predict the impact of the Balanced Budget Act of 1997 (which slashed Medicare reimbursements), despite "an internal memorandum detailing the potential impact of the legislation," and (ii) reassured investors, seven weeks after the Act was passed, that it remained "comfortable" with prior financial projections, despite a company executive's internal statement nearly four months earlier that significant layoffs were coming because "the proposed Medicare regulations were going to make it difficult for [the company] to make money and stay profitable." *Helwig*, 251 F.3d at 545-56. These admissions that the company not only could, but did, project the new law to have a material adverse impact on its business are precisely the type of allegations missing here.[13]

### CONCLUSION

For these reasons and those in Opening Brief, the Consolidated Complaint should be dismissed in its entirety with prejudice.

---

*Healthcare Corp. Sec. Litig.*, No. 3:17-cv-01112, 2019 WL 6168254, at \*3, \*16 (M.D. Tenn. Nov. 19, 2019) (company was already experiencing revenue decline due to shift from out-of-network to in-network providers); *Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-cv-2475, 2018 WL 2933406, at \*7 (M.D. Tenn. Apr. 19, 2018) (defendants knew that future impairments were necessary); *Winslow v. BancorpSouth, Inc.*, No. 3:10-00463, 2011 WL 7090820, at \*16-17 (M.D. Tenn. Apr. 26, 2011) (borrowers were already delinquent).

[13] Plaintiffs' claims also should be dismissed for lack of causation. (Br. at 25.) The Opposition argues that Defendants fail to meet their burden on this affirmative defense (Opp. at 24), but Defendants do not have to prove why the stock price declined, only that it was not due to the alleged misstatements and omissions.

10

Dated: Nashville, TN
      May 7, 2020

                                        Respectfully submitted,

/s/ Steven A. Riley                     /s/ Scott D. Musoff
Steven A. Riley (TN #6258)              Jay B. Kasner (*pro hac vice*)
Elizabeth O. Gonser (TN #26329)         Scott D. Musoff (*pro hac vice*)
RILEY WARNOCK & JACOBSON, PLC           Michael C. Griffin (*pro hac vice*)
1906 West End Avenue                    SKADDEN, ARPS, SLATE,
Nashville, Tennessee 37203                MEAGHER & FLOM LLP
Telephone: (615) 320-3700               One Manhattan West
Facsimile: (615) 320-3737               New York, New York 10001
sriley@rwjplc.com                       Telephone: (212) 735-3000
egonser@rwjplc.com                      Facsimile: (917) 735-2000

*Counsel for All Defendants*            *Counsel for Defendants SmileDirectClub,
                                        Inc., David Katzman, Kyle Wailes, Steven
                                        Katzman, Jordan Katzman, Alexander
                                        Fenkell, Susan Greenspon Rammelt, Richard
                                        Schnall and Camelot Venture Group*

                                        /s/ Andrew J. Finn
                                        Sharon L. Nelles (*pro hac vice*)
                                        Andrew J. Finn (*pro hac vice*)
                                        SULLIVAN & CROMWELL LLP
                                        125 Broad Street
                                        New York, New York 10004
                                        Telephone: (212) 558-400
                                        Facsimile: (917) 558-3588

                                        *Counsel for Defendants J.P. Morgan
                                        Securities LLC, Citigroup Global Markets
                                        Inc., BofA Securities, Inc., Jefferies LLC, UBS
                                        Securities LLC, Credit Suisse Securities
                                        (USA) LLC, Guggenheim Securities, LLC,
                                        Stifel, Nicolaus & Company, Incorporated,
                                        William Blair & Company, L.L.C. and Loop
                                        Capital Markets LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2020, a true and correct copy of the foregoing document was served via the Court's electronic filing system on:

Christopher M. Wood
Robbins Geller Rudman & Dowd, LLP
414 Union Street, Suite 900
Nashville, TN 37219
cwood@rgrdlaw.com

Darren J. Robbins
Danielle S. Myers
Michael Albert
Robbins Geller Rudman & Dowd, LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
darrenr@rgrdlaw.com
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

/s/ Steven A. Riley