UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ADAM FRANCHI, Individually and on     :
Behalf of All Others Similarly Situated,    :   Consolidated Case No. 19-cv-962

                      :

               Plaintiff,   :   Judge Eli J. Richardson

      vs.                    :

                      :   Magistrate Judge Jeffery S. Frensley

SMILEDIRECTCLUB, INC., et al.,      :

                      :

           Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
# JOINT MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................. ii

I.     PLAINTIFFS FAIL TO ALLEGE ANY MISREPRESENTATION OR OMISSION .......1

       A.     The Offering Documents Did Not Misrepresent
              SDC's Revenue, Gross Profit or Adjusted EBITDA .................................................1

       B.     The Offering Documents Did Not Misrepresent
              Member Care or Satisfaction .....................................................................................4

       C.     The Offering Documents Did Not Misrepresent
              SDC's Regulatory and Legal Challenges ...................................................................6

II.    PLAINTIFFS DO NOT HAVE ANY COGNIZABLE LOSS ...........................................7

III.   PLAINTIFFS FAIL TO ALLEGE SCIENTER .................................................................9

CONCLUSION..................................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bailey v. Esperion Therapeutics, Inc.*,
    No. 18-11438, 2019 WL 3296235 (E.D. Mich. Feb. 19, 2019)..........................................10

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
    506 F. App'x 32 (2d Cir. 2012) ..........................................................................................2

*Bondali v. Yum! Brands, Inc.*,
    620 F. App'x 483 (6th Cir. 2015) ........................................................................................5

*In re Burlington Coat Factory Securities Litigation*,
    114 F.3d 1410 (3d Cir. 1997)..............................................................................................2

*In re Centerline Holding Co. Securities Litigation*,
    380 F. App'x 91 (2d Cir. 2010) ...........................................................................................9

*City of Monroe Employees Retirement System v. Bridgestone Corp.*,
    399 F.3d 651 (6th Cir. 2005) ...............................................................................................5

*Dailey v. Medlock,*
    551 F. App'x 841 (6th Cir. 2014) ........................................................................................3

*DeMaria v. Andersen*,
    318 F.3d 170 (2d Cir. 2003)................................................................................................2

*In re Envision Healthcare Corp. Securities Litigation*,
    No. 3:17-cv-01112, 2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019)..................................7

*In re EveryWare Global, Inc. Securities Litigation*,
    175 F. Supp. 3d, 837 (S.D. Ohio 2016), aff'd sub nom, IBEW Local No. 58
    Annuity Fund v. EveryWare Global, Inc.*, 849 F3d. 325 (6th Cir. 2017)..........................10

*In re Facebook, Inc., IPO Securities & Derivative Litigation*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013)..................................................................................4

*In re Ford Motor Co Securities Litigation*,
    381 F.3d 563 (6th Cir 2004) ................................................................................................5

*Galkin v. SmileDirectClub, LLC*,
    No. A-2867-19, 2021 WL 2391591 (N.J. App. Div. June 11, 2021)...................................4

*Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.*,
    No. 3:09-00882, 2011 WL 1335803 (M.D. Tenn. Mar. 31, 2011) ......................................5

ii

*Grae v. Corrections Corp. of America*,
No. 3:16-cv-2267, 2017 WL 6442145 (M.D. Tenn. Dec. 18, 2017) ...............................2, 6

*Halford v. AtriCure, Inc.*,
No. 1:08CV867, 2010 WL 8973625 (S.D. Ohio Mar. 29, 2010) ........................................8

*Helwig v. Vencor, Inc.*,
251 F.3d 540 (6th Cir. 2001) .........................................................................................2, 7

*J & R Mktg., SEP v. Gen. Motors Corp.*,
549 F.3d 384 (6th Cir. 2008) ..............................................................................................3

*Kyrstek v. Ruby Tuesday, Inc.*,
No. 3:14-cv-01119, 2016 WL 1274447 (M.D. Tenn. Mar. 31, 2016)...............................10

*Louisiana School Employees' Retirement System v. Ernst & Young, LLP*,
622 F.3d 471 (6th Cir. 2010) ..............................................................................................9

*Litwin v. Blackstone Group, L.P.*,
634 F.3d 706 (2d Cir. 2011)................................................................................................4

*Milman v. Box Hill Systems Corp.*,
72 F. Supp. 2d 220 (S.D.N.Y. 1999)...................................................................................4

*In re Netflix, Inc. Securities Litigation*,
No. C04-2978 FMS, 2005 WL 1562858 (N.D. Cal. June 28, 2005) ...................................6

*Norfolk County Retirement System v. Community Health Systems, Inc.*,
877 F.3d 687 (6th Cir. 2017) ..............................................................................................8

*Panther Partners Inc. v. Ikanos Communications, Inc.*,
681 F.3d 114 (2d Cir. 2012)................................................................................................4

*Pittman v. Unum Group*,
No. 1:18-CV-000128-DCLC, 2020 WL 2846929 (E.D. Tenn. June 1, 2020)
*aff'd*, 2021 WL 2646065 (6th Cir. June 28, 2021).........................................................4, 9

*In re Ply Gem Holdings, Inc. Securities Litigation*,
No. 14-CV-3577 (JPO), 2016 WL 5339541 (S.D.N.Y. Sept. 23, 2016) ............................4

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012) ..............................................................................................4

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ..............................................................................................6

*Schuh v. HCA Holdings, Inc.*,
947 F. Supp. 2d 882 (M.D. Tenn. 2013)..............................................................................3

*SmileDirectClub, Inc. v. NBCUniversal Media LLC*,
No. 20C1054 (Cir. Ct. Davidson Cnty. filed May 18, 2020)................................................9

*In re Sofamor Danek Group, Inc.*,
123 F.3d 394 (6th Cir. 1997) ................................................................................................2

*Stadnick v. Vivint Solar, Inc.*,
861 F.3d 31 (2d Cir. 2017).....................................................................................................2

*Stein v. U.S. Xpress Enterprises, Inc.*,
No. 1:19-cv-98, 2020 WL 3584800 (E.D. Tenn. June 30, 2020) .........................................1

*Tuchman v. DSC Communications Corp.*,
14 F.3d 1061 (5th Cir. 1994) ................................................................................................5

*Weiner v. Tivity Health, Inc.*,
365 F. Supp. 3d 900 (M.D. Tenn. 2019)...............................................................................7

*Winslow v. BancorpSouth, Inc.*,
No. 3:10-00463, 2011 WL 7090820 (M.D. Tenn. Apr. 26, 2011) .......................................7

*Zwick Partners, LP v. Quorum Health Corp.*,
No. 3:16-cv-2475, 2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018) ....................................7

Case 3:19-cv-00962    Document 95    Filed 07/19/21    Page 5 of 17 PageID #: 2625

Plaintiffs' Opposition (ECF No. 93) ("Opp.") underscores that the Amended Consolidated Complaint fails to state a claim for multiple reasons.[1]

## I.   PLAINTIFFS FAIL TO ALLEGE ANY MISREPRESENTATION OR OMISSION[2]

### A.   The Offering Documents Did Not Misrepresent SDC's Revenue, Gross Profit or Adjusted EBITDA

Plaintiffs contend the Offering Documents misrepresented SDC's revenue, gross profit and Adjusted EBITDA as growing during the quarter in progress at the time of the IPO, but they cannot identify any statement in the Offering Documents actually making such a representation. Rather, the Opposition confirms that the sole basis for this claim is a graphic in the introductory pages of the Offering Documents that includes "accelerating growth" among SDC's "strengths":



(Ex. B, Prospectus, at 8.)

---

[1]   Capitalized terms have the meaning ascribed in Defendants' Memorandum of Law in Support of their Joint Motion to Dismiss (ECF No. 91) ("Opening Brief" or "Br."). Exhibits were submitted with the Declaration of Elizabeth Gonser, dated May 14, 2021 (ECF No. 92).

[2]   As demonstrated in the Opening Brief, Plaintiffs Securities Act and Exchange Act claims both "sound in fraud" as they are based on the same allegations that SDC intentionally concealed information and misrepresented its business in the Offering Documents. "A blanket disavowal in the complaint that [Securities Act] claims do not allege fraud . . . is insufficient to rescue them from the requirements of Rule 9(b)." *Stein v. U.S. Xpress Enters., Inc.*, No. 1:19-cv-98, 2020 WL 3584800, at *7 (E.D. Tenn. June 30, 2020).

This general reference to "accelerating growth" cannot be read as a representation that SDC's revenue, gross profit and Adjusted EBITDA were growing during the ongoing third quarter—particularly in light of the Offering Documents' express warnings that SDC "expects [its] future quarterly . . . operating results to fluctuate," (*id.* at 25), "ha[s] a history of net losses and . . . may not achieve or maintain profitability in the future," (*id.* at 11), and that "the *third quarter has historically tended to have less growth relative to other quarters*," (*id.* at 118 (emphasis added)). *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 39 (2d Cir. 2017); *DeMaria v. Andersen*, 318 F.3d 170, 181 (2d Cir. 2003). Plaintiffs stress that the Offering Documents disclosed growth in certain financial metrics in prior quarters, but they do not contend any of that historical data was false. "It is well settled . . . that an accurate report of past successes does not contain an implicit representation that the trend is going to continue, and hence does not, in and of itself, obligate the company to update the public as to the state of the quarter in progress." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1432 (3d Cir. 1997).

Plaintiffs respond that "Defendants simply ignore the well-established 'rule against half-truths, or statements that are misleading by omission,'" citing the Second Circuit. (Opp. at 9.) But that same court has clarified that "[w]hatever the scope of the responsibility not to make statements that constitute 'half-truths,' that surely does not apply to the reporting of unmanipulated corporate earnings." *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 38 (2d Cir. 2012) (citing *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 401 n.3 (6th Cir. 1997) (securities claim "cannot be premised upon a company's disclosure of accurate historical data.")). SDC's accurate historical results are not misleading half-truths.[3]

---

[3] Plaintiffs claim that Defendants "fail[] to reckon with" *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001), and *Grae v. Corrections Corp. of America*, No. 3:16-cv-2267, 2017 WL

Plaintiffs' effort to establish an affirmative disclosure obligation under Item 303 is likewise meritless. (Opp. at 10.) In addition to the fact that Plaintiffs do not even allege anything more than a change over a single quarter that ended *after* the IPO, which is not a "trend" by any measure, Item 303 also requires *actual knowledge* of the trend. *J & R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 392 (6th Cir. 2008). Plaintiffs' only allegation in support of actual knowledge is a conclusory assertion that SDC supposedly "closely tracked" revenue, gross profit and Adjusted EBITDA. (Opp. at 12.) This is apparently based on the Offering Documents' disclosure that "Adjusted EBITDA would be among the measures used by our management team to evaluate our operating performance and make day-to-day operating decisions." (Ex. B, Prospectus, at 23; *see also* AC ¶¶ 6, 54.) But the fact that management uses quarterly Adjusted EBITDA to make day-to-day operating decisions does not imply that management monitors Adjusted EBITDA on a daily basis. Plaintiffs do not allege any facts showing this complex accounting metric is even capable of being tracked in real time, much less that anyone at SDC actually did so.[4] (*See* Ex. B, Prospectus, at 23 (defining Adjusted EBITDA as "net loss before provision for income tax expense, interest expense, depreciation and amortization, and loss on disposal of property, plant and equipment, adjusted to remove derivative fair value adjustments, loss on extinguishment of debt, foreign currency adjustments, and equity-based compensation").) Nor do Plaintiffs allege what Adjusted EBITDA was at the time of the IPO. Absent all of these allegations, Plaintiffs' Item 303 claim fails. *See Dailey v.*

6442145 (M.D. Tenn. Dec. 18, 2017). (Opp. at 8-9.) But both cases are inapposite as neither addressed disclosure of quarter-in-progress results.

[4] This distinguishes *Schuh v. HCA Holdings, Inc.*, 947 F. Supp. 2d 882 (M.D. Tenn. 2013), where defendants *admitted* the undisclosed metric could be tracked in real time and an internal investigation revealed unlawful procedures "had been inflating [the company's] key revenue metrics." *See id.* at 893. Even with such allegations—far more than Plaintiffs allege here—Judge Sharp held the claim "barely survive[d] dismissal." *Id.* at 890, 892.

3

*Medlock*, 551F. App'x 841, 846 (6th Cir. 2014) (dismissing Item 303 claim because, "[w]hile plaintiffs make an assertion of such actual knowledge . . ., the FAC itself alleges no facts . . . to support that contention."); *Pittman v. Unum Grp.*, No. 1:18-CV-000128-DCLC, 2020 WL 2846929, at *22 (E.D. Tenn. June 1, 2020) (same where "[t]he Complaint does not allege facts that anyone at [the Company] had identified an adverse trend as of 4Q2016, as required, to constitute a 'known' trend or uncertainty."), *aff'd*, 2021 WL 2646065 (6th Cir. June 28, 2021).[5]

### B. The Offering Documents Did Not Misrepresent Member Care or Satisfaction

Plaintiffs mischaracterize the Offering Documents, claiming they stated that SDC provides "excellent clinical care" and "professional-level service." (Opp. at 14.) To the contrary, they actually state that SDC "*provid[es] convenient access*" to care that is provided by *licensed dentists and orthodontists*. (Ex. B at 2, 124.) Plaintiffs cannot state a securities claim based on a misreading of SDC's disclosures. *See Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 253-54 (6th Cir. 2012).[6]

---

[5] Additionally, Item 303 applies only to underlying trends and uncertainties that are expected to impact financial performance, not to financial results themselves. (Br. at 16.) Plaintiffs cite no cases to the contrary and do not allege any undisclosed trend that allegedly curtailed SDC's growth. *See, e.g.*, *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 122 (2d Cir. 2012) (product defect that would likely result in return of 72% of sales); *Litwin v. Blackstone Grp. L.P.*, 634 F.3d 706, 719 (2d Cir. 2011) (expected impact of deteriorating subprime mortgage on defendant's real estate investments); *In re Ply Gem Holdings, Inc. Sec. Litig.*, No. 14-CV-3577 (JPO), 2016 WL 5339541, at *6 (S.D.N.Y. Sept. 23, 2016) (expected impact of shift in sales to more low-margin products); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 513 (S.D.N.Y. 2013) (trend of increasing mobile users' negative impact on Facebook's revenues); *Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 231 (S.D.N.Y. 1999) (loss of key customers causing material decline in sales).

[6] Plaintiffs' assertion that SDC is engaged in the "unlicensed practice of dentistry" (Opp. at 6) was squarely rejected in the *Galkin* action, which was recently affirmed. *Galkin v. SmileDirectClub, LLC*, No. A-2867-19, 2021 WL 2391591, *11-12 (N.J. App. Div. June 11, 2021) ("SDC is not engaged in dentistry"). Contrary to Plaintiffs' argument that this is a factual dispute (Opp. at 20), whether SDC is engaged in dentistry is a legal question and one that has been definitively resolved on the merits at summary judgment.

4

In any event, the challenged descriptions are inactionable because they "lack[] a standard against which a reasonable investor could expect them to be pegged." *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 671 (6th Cir. 2005). This distinguishes *Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.*, No. 3:09-00882, 2011 WL 1335803 (M.D. Tenn. Mar. 31, 2011), where defendant's claims about its quality of care were "subject to empirical testing" and allegedly objectively false in light of, among other things, 52 violations found by Texas regulators and multiple published reports finding defendant had twice as many patient-care deficiencies as its competitors and the fewest number of nurses. *Id.* at *48-49. In stark contrast, Plaintiffs here do not allege any empirical data that contradicts SDC's descriptions of the care customers receive from their treating dentists. Nor do Plaintiffs allege any factual basis—much less independent corroborating reports or regulatory violations—to support their claims that "SDC's teledentistry model could not provide the standard of care necessary to move a customer's teeth safely" and that doctors had no "meaningful contact with customers." (Opp. at 14.) In addition to being false (*see* Br. at 19 n.11), these conclusory allegations fail to state a claim. *See Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 490 (6th Cir. 2015); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1070 (5th Cir. 1994).[7]

That some, even "thousands," of customers allegedly encountered issues during the course of their treatment does not undermine any statements in the Offering Documents. (*See*

---

[7] Plaintiffs argue that "neither [*Bondali* nor *Tuchman*] suggests statements about a company's most important product are inactionable." (Opp. at 15 n.6.) But the test is not whether a statement is about a company's most important product. It is whether the statement can be evaluated with a concrete, objective standard. *Bridgestone Corp.*, 399 F.3d at 671. The Sixth Circuit has repeatedly held statements to be immaterial or puffery despite being about the company's main product. *See, e.g.*, *id.* (Bridgestone's statements about quality and safety of its tires inactionable); *In re Ford Motor Co Sec. Litig.*, 381 F.3d 563, 571 (6th Cir 2004) (Ford's statements about quality and safety of its cars inactionable).

5

Opp. at 16.)  "Problems and difficulties are the daily work of business people," *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001), and SDC never claimed that 100% of its customers were 100% satisfied.  Plaintiffs' allegation of fewer than 2,000 complaints to the BBB (AC ¶ 144)—approximately 0.24% of SDC's 750,000 customers served at the time, or just 0.006% considering only the 47 complaints about clinical issues (Ex. E, SDC Press Release, at 2)—does not plausibly support an inference that SDC's general statements about member care and satisfaction were materially false or misleading in any way; indeed, it shows the opposite.  *See In re Netflix, Inc. Sec. Litig.*, No. C04-2978 FMS, 2005 WL 1562858, at *7 (N.D. Cal. June 28, 2005) (customer complaints insufficient to allege company had a "failing business model" and "was aware that its service was much worse than represented").[8]

### C.     The Offering Documents Did Not Misrepresent SDC's Regulatory and Legal Challenges

While acknowledging that the Offering Documents disclosed SDC's' "ongoing" legal and regulatory challenges (Ex. B at 37-38), Plaintiffs insist these disclosures "were misleading as they warned investors that legal and regulatory risks 'may impact its business when that risk ha[d] already materialized.'"  (Opp. at 17.)  But Plaintiffs ignore that those very risk disclosures provide specific examples of ongoing regulatory challenges.  (*See, e.g.*, Ex. B at 37-38, 123-24, 128.)  Moreover, Plaintiffs do not allege facts showing any regulatory matters had any undisclosed ***impact*** on SDC's business at the time of the IPO.  For example, Plaintiffs do not allege any facts showing that the California investigation was materially impacting SDC's

---

[8]     Plaintiffs cite no authority requiring a company to disclose individual customer complaints that constitute a miniscule fraction of the company's overall business.  Plaintiffs' cases involving a particular dispute with a major customer are inapposite.  *See, e.g.*, *Grae*, 2017 WL 6442145, at *18 (defendant claimed its "history of quality services had gained it the faith and esteem of its government partners, when, in fact, the perceived low quality of its services was leading one of its most important client relationships to the brink of collapse").

6

business at the time of the IPO.  Similarly, they do not allege any facts showing that the proposed California legislation (AB 1519) had, or was expected to have, a material adverse impact on the Company.  Indeed, Plaintiffs completely ignore—and, tellingly, do not dispute—SDC's 2020 Annual Report, which confirmed that the new rules have "not had any material impact on our operations" in the 14 months since they went into effect.  (Ex. O, 2020 10-K, at 14.)[9]

The Sixth Circuit's decision in *Helwig*, on which Plaintiffs rely, only highlights the absence of sufficient allegations here.  There, it was allegedly misleading for defendants to claim they could not predict the impact of new legislation despite "an internal memorandum detailing the potential impact."  *Helwig*, 251 F.3d at 546.  Further, after the law was passed, the company reassured investors that it remained "comfortable" with prior financial projections, despite an executive admitting internally that "the proposed [] regulations were going to make it difficult for [the company] to make money and stay profitable."  *Id* at 546.  These particularized factual allegations about the expected impact of the regulations are precisely what is missing here.

## II.     PLAINTIFFS DO NOT HAVE ANY COGNIZABLE LOSS

The Opposition does not dispute that neither Plaintiff held any SDC shares when any alleged misrepresentation or omission regarding legal or regulatory challenges was revealed, including when AB 1519 was enacted and when the California dental board investigation was

---

[9]  This distinguishes Plaintiffs' cases, where defendants failed to disclose existing issues impacting their business. S*ee, e.g., Weiner v. Tivity Health, Inc.*, 365 F. Supp. 3d 900, 908 (M.D. Tenn. 2019) (company's second-largest customer had already launched a competing product); *In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-cv-01112, 2019 WL 6168254, at *3, *16 (M.D. Tenn. Nov. 19, 2019) (company was already experiencing revenue decline due to shift from out-of-network to in-network providers); *Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-cv-2475, 2018 WL 2933406, at *7 (M.D. Tenn. Apr. 19, 2018) (defendants knew that future impairments were necessary); *Winslow v. BancorpSouth, Inc.*, No. 3:10-00463, 2011 WL 7090820, at *16-17 (M.D. Tenn. Apr. 26, 2011) (borrowers were already delinquent).

disclosed.[10] (Opp. at 20-23.) Accordingly, any losses that Plaintiffs incurred could not have been caused by these issues, and both the Securities Act and Exchange Act claims based on a failure to disclose legal or regulatory issues should be dismissed.

The Opposition also confirms that Lead Plaintiff SEIU sold all of its shares (and thus could not have suffered any related loss) before any alleged corrective disclosure regarding SDC's financial performance for the third quarter or its level of customer satisfaction. (Opp. at 22.) SEIU concedes that the only alleged corrective disclosure while it held SDC shares was the filing of the *Ciccio* action 12 days after the IPO. (*Id.*) But the *Ciccio* complaint did not reveal any non-public information (an argument the Opposition ignores) and, without more, mere allegations in a complaint do not constitute a corrective disclosure in any event. (Br. at 22 (collecting cases).)[11] Accordingly, SEIU should be dismissed from this action entirely (and with it, all of the Securities Act claims).

Similarly, the Opposition does not dispute that Plaintiff Bucks County cannot allege loss causation in connection with any alleged corrective disclosure that occurred before it first purchased SDC shares on October 24, 2019, including the *Ciccio* action and the short seller report. (*See* Opp. at 22.) Nor can Bucks County allege loss causation based on the three post-

---

[10] This distinguishes *Halford v. AtriCure, Inc.*, No. 1:08CV867, 2010 WL 8973625 (S.D. Ohio Mar. 29, 2010), where plaintiff held shares when a Department of Justice investigation was revealed that triggered a drop in the defendant's share price.

[11] The Sixth Circuit's decision in *Community Health Systems* is not to the contrary. The Circuit acknowledged that "[m]ere allegations in a complaint tend to be less credible," but held that "two aspects of the Tenet complaint set it apart from most complaints": (i) the defendant's CFO "promptly admitted the truth of one of the complaint's core allegations"; and (ii) the complaint contained "expert analyses" from two consulting firms that detailed defendant's previously concealed Medicare fraud. *Norfolk Cty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 877 F.3d 687, 696-97 (6th Cir. 2017) (addressing causation where defendant conceded falsity and scienter). Here, in contrast, SDC fiercely disputes the *Ciccio* complaint, which consists of baseless accusations made by SDC's competitors, not independent expert analyses.

October events it cites—SDC's third and fourth quarter earnings releases and the *NBC Nightly News* report—because none of those disclosures revealed any prior misrepresentation by SDC.[12]

### III. PLAINTIFFS FAIL TO ALLEGE SCIENTER

The Opposition does not dispute that Plaintiffs have not pled any facts from which to infer that the Exchange Act Defendants possessed information contrary to its public filings. It also ignores the fundamental incoherence of a supposed scheme to "conceal" already public or soon-to-be public information, such as proposed legislation, customer reviews on public third-party websites and imminent quarterly financial results. (Br. at 24-25.) Still, Plaintiffs insist their allegations give rise to the requisite strong, compelling inference that SDC, CEO Katzman and CFO Wailes defrauded investors because (i) Katzman and Wailes were familiar with SDC's operations and regulatory landscape; and (ii) Katzman sold a tiny fraction of his interests in SDC back to the Company in connection with the IPO. Both arguments are meritless.

As to Katzman and Wailes' alleged knowledge, the Sixth Circuit recently reiterated that "[t]he fact that executives are intimately familiar with a core component of their business does little to suggest fraudulent intent" and "is not a scienter-bolstering fact." *Pittman v. Unum Grp.*, No. 20-5710, 2021 WL 2646065, at *3 (6th Cir. June 28, 2021).[13] Plaintiffs also ignore that knowledge of allegedly omitted facts—such as the California investigation and AB 1519— provides no support for an inference of scienter without a clear duty to disclose such information. *In re Centerline Holding Co. Sec. Litig.*, 380 F. App'x 91, 93 (2d Cir. 2010). Moreover, as

---

[12] SDC has also sued NBC for its false and misleading reporting. *See SmileDirectClub, Inc. v. NBCUniversal Media LLC*, No. 20C1054 (Cir. Ct. Davidson Cnty. filed May 18, 2020).

[13] *Accord La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 478–79 (6th Cir. 2010) ("A plaintiff may survive a motion to dismiss only by pleading with particularity facts that give rise to a strong inference that the defendant acted with knowledge or conscious disregard *of the fraud being committed*." (emphasis added)).

shown above, Plaintiffs' conclusory assertion that "SDC, Katzman and Wailes closely tracked SDC's revenue, gross profit and Adjusted EBITDA" falls far short of alleging particularized facts showing actual knowledge of those metrics in real-time as of the IPO. (*See supra* at 3-4.)[14]

With respect to SDC's buyback of approximately 8.9 million shares from Katzman in connection with the IPO (which was disclosed in the Offering Documents), Plaintiffs continue to ignore that Katzman ***retained 87 million shares***. (Ex. B, Prospectus, at 150, 153.) This does not indicate an attempt to capitalize on a fraud in connection with the offering. *See Bailey v. Esperion Therapeutics, Inc.*, No. 18-11438, 2019 WL 3296235, at *4 (E.D. Mich. Feb. 19, 2019). In fact, both Katzman and Wailes ***acquired additional shares*** just days after the IPO, when Plaintiffs claim the price was inflated by their supposed fraud.[15] "The[] purchases of shares [by individual defendants during the class period] undermine any inference of scienter." *In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d, 837, 858 (S.D. Ohio 2016), *aff'd sub nom, IBEW Local No. 58 Annuity Find v. EveryWare Glob., Inc*., 849 F3d. 325 (6th Cir. 2017).[16]

## CONCLUSION

For these reasons and those demonstrated in the Opening Brief, the Amended Consolidated Complaint should be dismissed in its entirety with prejudice.

---

[14] *Kyrstek v. Ruby Tuesday, Inc*., No. 3:14-cv-01119, 2016 WL 1274447 (M.D. Tenn. Mar. 31, 2016), which Plaintiffs cite, did not involve alleged non-disclosure of quarter-in-progress results; rather, it involved defendants' intentional decision not to separately report admittedly known financials for a failing business segment in violation of GAAP.

[15] *See* David B. Katzman, Statement of Changes in Beneficial Ownership (SEC Form 4) (Sept. 17, 2019), https://www.sec.gov/Archives/edgar/data/0001775625/000120919119049971/xslF345X03/doc4.xml (disclosing Katzman's spouse acquired 37,000 shares on Sept. 16, 2019); Kyle Wailes, Statement of Changes in Beneficial Ownership (SEC Form 4) (Sept. 27, 2019), https://www.sec.gov/Archives/edgar/data/0001775625/000120919119051013/xslF345X03/doc4.xml (disclosing Wailes acquired 10,250 shares on Sept. 25, 2019).

[16] Notably, Plaintiffs appear to abandon their suggestion that Wailes' bonus supports an inference of scienter (Compl. ¶ 121); they do not address it in their Opposition.

Dated: Nashville, TN
 July 19, 2021

Respectfully submitted,

/s/ Steven A. Riley
Steven A. Riley (TN #6258)
Elizabeth O. Gonser (TN #26329)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, Tennessee 37203
Telephone: (615) 320-3700
Facsimile: (615) 320-3737
sriley@rwjplc.com
egonser@rwjplc.com


/s/ Scott D. Musoff *w/permission*
Jay B. Kasner (*pro hac vice*)
Scott D. Musoff (*pro hac vice*)
Michael C. Griffin (*pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (917) 735-2000


*Counsel for Defendants SmileDirectClub, Inc., David Katzman, Kyle Wailes, Steven Katzman, Jordan Katzman, Alexander Fenkell, Susan Greenspon Rammelt, Richard Schnall and Camelot Venture Group*

/s/ Christopher E. Thorsen *w/permission*
John S. Hicks (TN #10478)
Christopher E. Thorsen (TN #21049)
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone: (615) 726-5600
Facsimile: (615) 726-0464
jhicks@bakerdonelson.com
cthorsen@bakerdonelson.com


/s/ Andrew J. Finn *w/permission*
Sharon L. Nelles (*pro hac vice*)
Andrew J. Finn (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (917) 558-3588


*Counsel for Defendants J.P. Morgan Securities LLC, Citigroup Global Markets Inc., BofA Securities, Inc., Jefferies LLC, UBS Securities LLC, Credit Suisse Securities (USA) LLC, Guggenheim Securities, LLC, Stifel, Nicolaus & Company, Incorporated, William Blair & Company, L.L.C. and Loop Capital Markets LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2021, a true and correct copy of the foregoing document was served via the Court's electronic filing system on:

Christopher M. Wood
Robbins Geller Rudman & Dowd, LLP
414 Union Street, Suite 900
Nashville, TN 37219
cwood@rgrdlaw.com

Darren J. Robbins
Danielle S. Myers
Michael Albert
Robbins Geller Rudman & Dowd, LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
darrenr@rgrdlaw.com
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

/s/ Steven A. Riley