# EXHIBIT C

# IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE
## TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, PART IV

IN RE: SMILEDIRECTCLUB, INC.,     )
SECURITIES LITIGATION         )
                                            )
                                            )   Lead Case No. 19-1169-IV
                                            )
                                            )   CLASS ACTION
                                            )
This Document Relates to:         )
                                            )
ALL ACTIONS.                 )

## ORDER ON CLASS CERTIFICATION

This is a securities class action on behalf of all purchasers of SmileDirectClub, Inc. ("SmileDirect" or "Company") Class A common stock that was issued pursuant and/or traceable to the Company's Registration Statement and Prospectus ("the Offering Documents") filed with the U.S. Securities and Exchange Commission ("SEC") in connection with the Company's September 12, 2019 initial public stock offering ("IPO"). Plaintiffs allege that the Offering Documents violate Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("the Securities Act"). On October 2, 2020, Plaintiffs moved for class certification.

Pursuant to Tenn. R. Civ. P. 23.01 and 23.02(3), Plaintiffs Brittany Vang and Matthew G. Mancour (collectively, "Plaintiffs") move to 1) certify a class of all persons who purchased or acquired common stock pursuant or traceable to the Registration Statement and Prospectus issued in connection with SmileDirect's September 12, 2019 initial public offering; 2) appoint Plaintiffs as Class Representatives; and 3) appoint Co-Lead Counsel, Scott+Scott Attorneys at Law LLP ("Scott+Scott") and Barrett Johnston Martin & Garrison, LLC ("Barrett Johnston") as Class Counsel. Plaintiffs' motion came before the Court for hearing by teleconference on Friday, March 26, 2021.

# I. Proposed Class Definition

Plaintiffs seek certification over all claims alleged in the Complaint. Plaintiffs seek certification of the following class: all persons who purchased or acquired common stock pursuant or traceable to the Registration Statement and Prospectus issued in connection with SmileDirect's September 12, 2019 initial public offering ("the Class"). Excluded from the Class are Defendants themselves, any person, firm, trust, corporation, or entity related to or affiliated with the Defendants, and any person employed by the Davidson County Chancery Court.

# II. Statement of Facts Common to the Class

The Complaint brings identical Securities Act claims on behalf of the numerous class of investors who purchased or acquired SmileDirect common stock pursuant or traceable to the same allegedly materially untrue and misleading Offering Documents. SmileDirect is a self-described teledentistry company that sells direct-to-consumer clear orthodontic aligners that cost up to 60% less than traditional orthodontic treatments. In September 2019, SmileDirect undertook a successful IPO allegedly pursuant to materially untrue and misleading Offering Documents. Shortly following the IPO, however, SmileDirect's stock dropped 50% from its IPO price in just two months, and investors allegedly suffered substantial losses as a result.

The Complaint alleges that the Offering Documents presented the Company's state-of-the-art teledentistry platform that supposedly provided users of SmileDirect's orthodontic aligners with continuous treatment and oversight by a treating doctor, when, Plaintiffs allege, no licensed medical professional was meaningfully involved at any stage of a SmileDirect patient's treatment. Further, the Complaint alleges that the Offering Documents failed to disclose then-existing regulatory and investigative obstacles to the

2

Company's business model, such as existing lawsuits, proposed legislation, and ongoing regulatory investigations concerning SmileDirect. In addition, the Complaint alleges that the Offering Documents claimed high customer satisfaction ratings, when, in fact, SmileDirect had received hundreds of customer complaints. Lastly, the Complaint alleges that the Offering Documents failed to disclose that the company was on the verge of reporting historically large losses for the quarter in which it conducted the IPO.

### III. Standard

"In order to promote effective enforcement of the federal securities laws, courts have long recognized and adopted a liberal construction of Rule 23 in securities actions seeking class action treatment." *Ockerman v. May Zima & Co.*, No. 3-85-1190, 1986 WL 36296, at *5 (M.D. Tenn. Dec. 22, 1986). "[T]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing the class action." *Id.* (quoting *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968), *cert. denied*, 394 U.S. 928 (1969)).

"The party seeking the class certification bears the burden of proof." *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996). While some courts have determined that suits alleging violations of the securities laws, particularly those brought pursuant to Sections 11 and 12(a)(2), are especially amendable to class action resolution, before certifying a class, a Court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met. *Cosby v. KPMG, LLP*, No. 3:16-CV-121-TAV-DCP, 2020 WL 3548379, at *5 (E.D. Tenn. June 29, 2020)(citations omitted).

"Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the application of the class action device." *Ockerman*, 1986 WL 36296,

at *5 (citation and internal quotations omitted). "[T]he determination of whether an action should proceed as a class action is a matter which is left to the sound discretion of the trial judge." *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 637 (Tenn. 1996). If reasonable judicial minds could differ as to the decision's soundness, then the decision must stand. *See White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

## IV. <u>Discussion</u>

Rule 23 of the Tennessee Rules of Civil Procedure governs class actions. In pertinent part, Rule 23 directs that a class may be certified for litigation of claims where:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Tenn. R. Civ. P. 23.01. Once Plaintiffs have satisfied each of the four prerequisites of Rule 23.01, they must then establish that the proposed class action meets at least one of the three categories set forth in Rule 23.02. Here, Plaintiffs move for class certification under Rule 23.02(3), which provides:

> An action may be maintainable as a class action if the prerequisites of 23.01 are satisfied, and in addition:
>
> * * *
>
> (3) the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

4

Tenn. R. Civ. P. 23.02(3). Once these prerequisites are met, a Court may certify the suit as a class action without examining the underlying merits of the claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).

### A. Rule 23.01

As stated above, Plaintiffs seek certification over all claims alleged in the Complaint. Plaintiffs' proposed class definition is: all persons who purchased or acquired common stock pursuant or traceable to the Registration Statement and Prospectus issued in connection with SmileDirect's September 12, 2019 initial public offering. The Class is defined to exclude: Defendants themselves, any person, firm, trust, corporation, or entity related to or affiliated with the Defendants, and any person employed by the Davidson County Chancery Court.

### i. Numerosity

The numerosity requirement of Rule 23.01 requires that a class be "so numerous that joinder of all members is impracticable." Tenn. R. Civ. P. 23.01(1). Impracticability does not mean impossibility, but merely difficulty or inconvenience. *See Ockerman*, 1986 WL 36296, at *4 (internal quotation and citation omitted). "Plaintiff need not establish the exact size of the class, but merely show that because of its size or other factors, [joinder] of all members is impractical." *Id.*

When class size reaches substantial proportions, the impracticability of joinder requirement is usually satisfied by the number alone. *See In re Am. Med. Sys. Inc.*, 75 F.3d at 1079. "Thus, when the number of class members exceeds forty, the numerosity requirement is generally deemed satisfied." *Wofford v. M.J. Edwards & Sons Funeral Home, Inc.*, 528 S.W.3d 524, 528 (Tenn. Ct. App. 2017)(citing *Ham v. Swift Transp. Co., Inc.*, 275 F.R.D. 475 (W.D. Tenn. 2011)). "Other factors to consider include the need to

5

avoid a multiplicity of actions and the interests of judicial economy." *Id.* Plaintiffs have the burden of establishing the number of the members of the class and also that joinder is not practicable. *See Albriton v. Hartsville Gas Co.*, 655 S.W.2d 153, 155 (Tenn. Ct. App. 1983)(citing *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970)).

Plaintiffs assert that the Class here consists of all persons who purchased or acquired the 58.5 million shares of SmileDirect common stock pursuant or traceable to the IPO and the allegedly materially untrue or misleading Offering Documents. Although the exact number of Class members has yet to be determined, based on the millions of shares issued and their trading on the NASDAQ exchange, Class members likely number in the thousands and are geographically dispersed. Joinder of parties so numerous and widespread would be burdensome, expensive, and impracticable to both the parties and judicial system. Accordingly, Rule 23.01(1) is satisfied here. *See Grae v. Corrections Corp. of Am.*, 330 F.R.D. 481, 501 (M.D. Tenn. 2019)("Whatever the total number of plaintiffs, it is plain that they are too numerous for joinder to be practicable.").

### ii. **Commonality**

Rule 23.01(2) requires questions of law or fact that are common to the class. "[T]he commonality test is qualitative rather than quantitative." *Wofford*, 528 S.W.3d at 528 (citation omitted). "To demonstrate commonality, the plaintiffs' claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012)(citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011)).

6

"Where a common course of wrongful conduct is alleged, commonality is most easily demonstrated." *Id.* (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)). "A common nucleus of facts is usually enough to satisfy the commonality requirement of Rule 23.01(2)." *Id.* at 529 (citation omitted). Separate issues of law and fact regarding damages do not negate class action certification. *See Meighan*, 924 S.W.2d at 637.

Here, the alleged misrepresentations in the Offering Documents relate to all investors and the existence and materiality of any misrepresentation presents a common issue. Stated differently, the falsity or misleading nature of Defendants' alleged statements are common questions. Moreover, the central issues in this case - whether the Offering Documents contain untrue or misleading statements; whether those statements are material; and whether, as a result of those statements, Defendants violated the Securities Act – as well as the common damages formula set forth in the Securities Act, involve questions of law or fact common to Plaintiffs and all Class members. Rule 23.01(2) is satisfied here.

### iii. Typicality

Rule 23.01(3) requires proof that Plaintiffs' claims are typical of class members' claims. This test "limit[s] the class claims to those fairly encompassed by the named plaintiffs' claims." *In re Am. Med. Sys. Inc.*, 75 F.3d at 1082 (citation and quotation omitted). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Id.* "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same

7

legal theory." *Id.* "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Id.*

Defendants claim that both Mr. Mancour's and Ms. Vang's Section 11 claims are subject to dismissal based on negative causation. They allege the following purported corrective disclosures: 1) the Ciccio false advertising lawsuit filed on September 24, 2019; 2) enactment of new teledentistry legislation in California on October 14, 2019; 3) a lawsuit filed by the Company against the California Dental Board on October 17, 2019; and 4) the release of the Company's Q3 2019 earnings on November 12, 2019. Thus, Defendants argue, any investors who sold their shares before September 24, 2019 are in-and-out traders who cannot recover based on any of the alleged misrepresentations.

Loss causation is the "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Ohio Pub. Emp. Ret. Sys. v. Federal Home Loan Mortg. Corp.*, 830 F.3d 376, 384 (6th Cir. 2016). A plaintiff does not need to prove loss causation at the class certification stage. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011). Loss causation "addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock." *Id.* While "Plaintiffs must prove that portion of the price fall that they seek in damages is directly attributable to the misrepresentation, so that they do not recover a windfall, . . . they do not need to prove it at the certification stage." *Weiner v. Livity Health, Inc.*, No. 3:17-cv-01469, 2020 WL 467783, at *4 (M.D. Tenn. Jan. 29. 2020).

8

"Individual differences regarding the purchasing and selling of stock during the proposed class period [do] not destroy the typicality requirement." *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 456 (S.D. Ohio 2009). "All purchasers of stock during a class period share a common interest in showing that the stock was unlawfully inflated." *Id.*

Defendants also argue that because neither Mr. Mancour nor Ms. Vang bought their shares directly from any Defendant in the IPO, both Mr. Mancour and Ms. Vang are subject to standing challenges to bring a Section 12(a)(2) claim, which also renders them atypical of the purported Class. "In order to have standing under § 12(a)(2), . . . plaintiffs must have purchased securities directly from the defendants." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 141 (2d Cir. 2013). "[C]laims under Section 12(a)(2) may [not] be brought by those who . . . purchased securities in a 'secondary market.'" *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16-17 (2d Cir. 2009)(quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 578 (1995)). However, "[a] single class can contain plaintiffs who have section 11 claims and section 12(a)(2) claims where the same course of conduct gives rise to liability under both sections." *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 166 (S.D.N.Y. 2011). Thus, Mr. Mancour and Ms. Vang can represent class members with Section 12(a)(2) claims even if they only have Section 11 claims. *See id.* (permitting named Plaintiff to represent class members with Section 12(a)(2) claims despite the fact that it only has Section 11 claims and did not purchase from an underwriter).

The Court finds that Defendants' standing argument does not defeat class certification. For purposes of class certification, the common question of whether the Offering Documents were materially misleading predominates over any secondary

9

tracing issues that might be encountered later in the litigation. The typicality requirement of Rule 23.01 is met here.

### iv. **Adequacy of Representation**

"The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)(citations and internal quotations omitted). The Court looks to two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citation omitted). The Court also "reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000).

The purpose of the requirement that class representatives fairly and adequately protect the interests of the class is to protect the legal rights of absent class members. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). Because all members of a class are bound by the *res judicata* effect of the judgment, a principal factor in determining the appropriateness of class certification is "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Mersay v. First Republic Corp.*, 43 F.R.D. 465, 470 (S.D.N.Y. 1968). Class representatives are inadequate if their "participation is so

minimal that they virtually have abdicated to their attorneys the conduct of the case."
*Kirkpatrick*, 827 F.2d at 728.

Defendants argue that Ms. Vang's and Mr. Mancour's deposition testimony demonstrates that they lack basic knowledge about the issues and have no meaningful control over the litigation. However,

> Plaintiffs, as laypersons, cannot be reasonably expected to understand the deeper legal intricacies of this matter. But they plainly understand that they are suing because the Offering Documents allegedly contained misrepresented or omitted material information. They also plainly intend to see Defendants' alleged wrongs righted and have already expended considerable time and energy in services of that end. Rule 23 requires no more.

*Stein v. U.S. Xpress Enters., Inc.*, No. 1:19-cv-98, Mem. Op., Dkt. 134 at 15 (E.D. Tenn. Feb. 21, 2020); *see also In re Sadia, S.A. Secs. Litig.,* 269 F.R.D. 298, 310 (S.D.N.Y. 2010)("[W]hile neither [class] representative . . . demonstrated a deep understanding of [the] litigation," the representatives had "the requisite basic awareness of the facts of the case and a willingness to satisfy [their] obligations to absent Class members"); *Morris v. Wachovia Secs., Inc.,* 223 F.R.D. 284, 296 (E.D. Va. 2004)("In a complex lawsuit . . . the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.").

Here, Plaintiffs' interests are aligned with those of the Class. Plaintiffs purchased SmileDirect stock pursuant or traceable to the Offering Documents that allegedly contained materially untrue and misleading statements; thus, all members of the proposed class allege claims arising from the same wrongful conduct that are based on the same legal theories as Plaintiffs' claims. Furthermore, there are no ascertainable conflicts between Plaintiffs and the Class. Plaintiffs have demonstrated their commitment to pursue this action and to maximizing a recovery on behalf of all Class members. Lastly,

11

Plaintiffs' counsel are highly qualified, widely experienced in securities class actions, and competent to conduct the proposed litigation. The adequacy requirement of Rule 23.01 is satisfied here.

## B. Rule 23.02

In addition to meeting the requirements of Rule 23.01, a class must satisfy one of the categories of Rule 23.02. Here, Plaintiffs move for class certification under Rule 23.02(3). To satisfy the requirements of Rule 23.02(3), Plaintiffs must prove that common questions predominate and that a class action is a superior way to resolve the controversy.

### i. Predominance

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011)(citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007)). "[T]he fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Beattie*, 511 F.3d at 564 (citation and internal quotations omitted). "While the commonality element of [Rule 23.02] requires showing one question of law or fact common to the class, a [Rule 23.02(3)] class must show that common questions will *predominate* over individual ones." *Young*, 693 F.3d at 543 (emphasis in original).

The determination of "whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc.*, 563 U.S. at 809 (internal quotations omitted). Here, Plaintiffs and the Class bring claims under §§ 11, 12(a)(2), and 15 of the Securities Act. Under those strict

liability statutes, "[i]f a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish [a] *prima facie* case. Liability against the issuer of a security is virtually absolute, even for innocent misstatements." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). "[P]laintiffs bringing claims under sections 11 and 12(a)(2) need not allege scienter, reliance, or loss causation." *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 80 (S.D.N.Y. 2018).

"[S]uits alleging violations of the securities laws, particularly those brought pursuant to Sections 11 and 12(a)(2), are especially amendable to class action resolution." *Cosby*, 2020 WL 3548379, at *5 (citation omitted). Here, the focus centers on Defendants' common course of alleged misconduct, because the claims depend mostly on establishing that certain statements and omissions common to all the offerings were material misrepresentations. While Defendants argue that differences in investor knowledge create insurmountable individual issues, given the many common issues Securities Act claims raise, even if investors have different levels of knowledge concerning the undisclosed information, "it does not follow that these individual [knowledge] issues would be sufficient to overcome the predominance of the common issues." *Public Emp. Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 117 (S.D.N.Y. 2011).

The level of investors' knowledge required at class certification is their "actual knowledge about the [undisclosed] condition." *Katz v. China Century Dragon Media, Inc.*, 287 F.R.D. 575, 586 (C.D. Cal. 2012). Given the difficulty of proving actual knowledge, courts have frequently held that this showing cannot be made absent

13

evidence of "investors who are alleged to have participated in the fraud in question." *In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 312 F.R.D. 332, 349 (S.D.N.Y. 2015).

Secondly, the required scope of actual knowledge at class certification is "widespread knowledge among members of the investing community about [the undisclosed] scheme perpetuated by defendants." *In re SunEdison, Inc. Secs. Litig.*, 329 F.R.D. 124, 141 (S.D.N.Y. 2019). Where knowledge is not widespread among investors, individual questions of investor knowledge cannot "permeate the litigation." *Id.* at 142. If widespread actual knowledge is based on public information, then it creates common, class-wide issues and does not defeat predominance in any event. *See Gaynor v. Miller*, No. 3:15-CV-545-TAV-DCP, No. 3:15-CV-546-TAV-DCP, No. 3:16-CV-232-TAV-DCP, 2018 WL 3751606, at *15 (E.D. Tenn. Aug. 6, 2018); *Facebook*, 312 F.R.D. at 348.

The crux of Plaintiffs' claim is that the Offering Documents contained misstatements and/or omissions of material fact. This issue will predominant over any secondary issues. Moreover, proof of Defendants' alleged misrepresentations and/or omissions are susceptible to generalized proof. *See Cosby*, 2020 WL 3548370, at **33-34. "[T]he fact that damages may have to be ascertained on an individual basis is not sufficient to defeat" predominance or class certification. *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 382 (S.D.N.Y. 2015); *see also Gaynor*, 2018 WL 3751606, at *18 ("Because the statutory formula applies, the individual damages questions are sufficiently reduced that predominance of the common questions, answers, and fact remains."). The common questions of law and fact here predominate over any questions affecting only individual members. The predominance requirement is satisfied here. *See Gaynor*, 2018 WL 3751606, at *14.

14

## ii. Superiority

When certifying a proposed class in accordance with Rule 23.02(3), courts must consider whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Tenn. R. Civ. P. 23.02(3). The superiority requirement asks courts to balance the advantages of a class action against those of alternative available methods of adjudication. "Securities suits easily satisfy the Superiority Requirement of Rule [23.02(3)] because 'the alternatives are either no recourse for thousands of stockholders' or 'a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake.'" *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015)(quoting *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968)).

In considering whether the superiority requirement of Rule 23.02(3) is satisfied, courts consider "the difficulties likely to be encountered in the management of a class action." *Beattie*, 511 F.3d at 567. "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). "Where many individual inquiries are necessary, a class action is not a superior form of adjudication." *Young*, 693 F.3d at 545 (citation omitted). "However, where a threshold issue is common to all class members, class litigation is greatly preferred." *Id.* (citation omitted).

Case 3:19-cv-00962   Document 103-3   Filed 09/01/22   Page 16 of 19 PageID #: 2752

The Court has considered counsels' arguments and agrees with Plaintiffs that a class action is the superior method of adjudication. As explained above, Plaintiffs assert that 58.5 million shares of SmileDirect common stock pursuant or traceable to the IPO and the allegedly materially untrue or misleading Offering Documents were purchased. The vast amount of shares, the geographical diversity of the Class members, and the predominant issues in this case warrant a finding that a class action is the superior method of adjudication. Further, the Court does not foresee any management difficulties in maintaining the class action. Accordingly, the Court determines that Plaintiffs have established that a class action is the superior method to adjudicate this case.

### C. Purported Class

Defendants argue that the definition of the purported Class is inadequate. As grounds, Defendants raise the negative causation issue and assert that Class members who sold SmileDirect stock prior to purported corrective disclosures lack damages. As a strict liability statute, the Securities Act sets forth a common statutory damages formula which presumes that losses at the time a security is "sold" result from the defendants' misstatements, irrespective of when that sale occurs. *See* 15 U.S.C. §77k(e); 15 U.S.C. §77l(b); *In re Dynegy, Inc. Secs. Litig.*, 226 F.R.D. 263, 283 (S.D. Tex. 2005). It does not reference corrective disclosures or limit losses to sales that occur after them. *See id.* Consistent with the common statutory damages formula, the proposed Class definition here does not exclude Class members based on the time when they sold their SmileDirect stock.

Defendants also argue that SmileDirect customers should be excluded. While certain Class members might have used SmileDirect's services, there is no proof before the Court that these proposed Class members were privy to any information that would

16

have alerted them to the alleged misstatements and omissions in the Offering Documents. Moreover, Defendants have not alleged any inside information or conversations that would have provided Class members with a higher element of knowledge. The Court certifies the Class as defined by Plaintiffs.

## V. Conclusion

For the foregoing reasons, the Court hereby GRANTS Plaintiffs' motion for class certification. Accordingly, the Court hereby: CERTIFIES this action as a class action pursuant to Rule 23 of the Tennessee Rules of Civil Procedure; CERTIFIES Plaintiffs as representatives of the proposed Class; and APPOINTS Barrett Johnston and Scott+Scott as Class Counsel.

**IT IS SO ORDERED.**

RUSSELL T. PERKINS, CHANCELLOR

cc: Steven A. Riley, Esq.
Milton S. McGee, III, Esq.
Elizabeth O. Gonser, Esq.
Sharon L. Nelles, Esq.
Andrew J. Finn, Esq.
Shane M. Palmer, Esq.
Jay B. Kasner, Esq.
Scott D. Musoff, Esq.
Michael C. Griffin, Esq.
Jerry E. Martin, Esq.
David Garrison, Esq.
Scott P. Tift, Esq.
Seth M. Hyatt, Esq.
Deborah Clark-Weintraub, Esq.
Thomas L. Laughlin, IV, Esq.
Max R. Schwartz, Esq.
Jeffrey P. Jacobson, Esq.
Jonathan M. Zimmerman, Esq.
Gregory Del Gaizo, Esq.
Brian J. Schall, Esq.
James G. Stranch, III, Esq.

17

Joe P. Leniski, Jr., Esq.
Benjamin A. Gastel, Esq.
Paul K. Bramlett, Esq.
Robert P. Bramlett, Esq.
Jeremy A. Liberman, Esq.
J. Alexander Hood, II, Esq.
Patrick V. Dahlstrom, Esq.
Christopher M. Wood, Esq.
Samuel H. Rudman, Esq.
Mary K. Blasy, Esq.
Darren J. Robbins, Esq.
Briand Cochran, Esq.

EMAILED

APR 2 8 2021

18