UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ADAM FRANCHI, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   vs.<br><br>SMILEDIRECTCLUB, INC., et al.,<br><br>          Defendants. | Civil Action No. 3:19-cv-00962<br>**(Consolidated)**<br><br>CLASS ACTION<br><br>Judge Eli J. Richardson<br>Magistrate Judge Jeffery S. Frensley<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

- 1 -

**TABLE OF CONTENTS**

|  |  |  | Page |
|---|---|---|---|

I.    INTRODUCTION ...................................................................................................1

II.   THE PROPOSED CLASS REPRESENTATIVES...................................................2

III.  ARGUMENT..........................................................................................................3

       A.     The Proposed Class Satisfies the Requirements of Rule 23(a)......................3

              1.     The Class Is Sufficiently Numerous..................................................4

              2.     Questions of Law and Fact Are Common to the Class.......................5

              3.     The Proposed Class Representatives' Claims Are Typical................5

              4.     Plaintiffs Will Adequately and Fairly Protect the Interests of the Class ............6

       B.     The Proposed Class Satisfies the Requirements of Rule 23(b)(3) .................8

              1.     Common Factual and Legal Questions Predominate..................8

                      a.     Plaintiffs Are Entitled to a Presumption of Reliance Pursuant to *Basic*...................9

                           (1)    The *Cammer* Factors...........................................10

                           (2)    The *Krogman* Factors ........................................12

                      b.     Plaintiffs Are Entitled to a Presumption of Reliance Pursuant to *Affiliated Ute*...................13

               2.     This Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Class's Claims....................14

IV.  CONCLUSION.....................................................................................................15

4864-8227-4407.v1

**TABLE OF AUTHORITIES**

Page

**CASES**

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972)..................................................................................2, 13, 14

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................3, 8

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)......................................................................................8, 13

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..................................................................................2, 3, 9

*Bond v. Clover Health Invs., Corp.*,
  2023 WL 1999859 (M.D. Tenn. Feb. 14, 2023)..........................................3, 11

*Bovee v. Coopers & Lybrand*,
  216 F.R.D. 596 (S.D. Ohio 2003) .......................................................................5

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*,
  843 F.3d 1119 (6th Cir. 2016) ............................................................................8

*Burges v. Bancorpsouth, Inc.*,
  2017 WL 2772122 (M.D. Tenn. June 26, 2017)......................................4, 10, 13, 14

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989) ................................................................10, 11

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) ........................................................................10

*Cassell v. Vanderbilt Univ.*,
  2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) .................................................5

*Castillo v. Envoy Corp.*,
  206 F.R.D. 464 (M.D. Tenn. 2002) .................................................................1, 3

*Cosby v. KPMG, LLP*,
  2021 WL 1828114 (E.D. Tenn. May 7, 2021)...................................................13

*Dougherty v. Esperion Therapeutics, Inc.*,
  2020 WL 6793326 (E.D. Mich. Nov. 19, 2020)................................................12

4864-8227-4407.v1

*Golden City Emps.' Ret. Sys. v. Psychiatric Sols. Inc.*,
2012 WL 1071281 (M.D. Tenn. Mar. 29, 2012) ...................................................................14

*Grae v. Corr. Corp. of Am.*,
330 F.R.D. 481 (M.D. Tenn. 2019) ...............................................................................3, 4, 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014).....................................................................................................9, 12, 13

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983).....................................................................................................................3

*In re Accredo Health, Inc. Sec. Litig.*,
2006 WL 1716910 (W.D. Tenn. Apr. 19, 2006)..........................................................10

*In re Direct Gen. Corp.*,
2006 WL 2265472 (M.D. Tenn. Aug. 8, 2006) ...........................................................4

*In re DVI Inc. Sec. Litig.*,
249 F.R.D. 196 (E.D. Pa. 2008),
*aff'd*, 639 F.3d 623 (3d Cir. 2011) ........................................................................10

*In re FirstEnergy Corp. Sec. Litig.*,
2023 WL 2709373 (S.D. Ohio Mar. 30, 2023).....................................................3, 13

*In re Lendingclub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) ..................................................................14

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................6

*In re SmileDirectClub, Inc. Sec. Litig.*,
2022 WL 818950 (Tenn. Ct. App. Mar. 18, 2022) ..............................................14

*In re SmileDirectClub, Inc. Sec. Litig.*,
No. 19-1169-IV (Tenn. Ch. Ct. Feb. 10, 2020) ...................................................15

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) .................................................................................3

*In re Xcelera.com Sec. Litig.*,
430 F.3d 503 (1st Cir. 2005)...................................................................................10

*Indiana Pub. Ret. Sys. v. AAC Holdings, Inc.*,
2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023).......................................................5, 6, 7, 9

4864-8227-4407.v1

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001) ...............................................................................10, 12, 13

*McCool v. AHS Mgmt. Co., Inc.*,
2023 WL 2729161 (M.D. Tenn. Mar. 30, 2023) ...................................................................5

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)..............................................................................................................3

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
501 F.3d 592 (6th Cir. 2007) ...............................................................................................8

*Ross v. Abercrombie & Fitch Co.*,
257 F.R.D. 435 (S.D. Ohio 2009) .........................................................................................4

*Schuh v. HCA Holdings, Inc.*,
No. 3:11-cv-01033 (M.D. Tenn. Apr. 11, 2016)...................................................................7

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
2022 WL 4598044 (M.D. Tenn. Sept. 30, 2022).........................................................3, 6, 13, 14

*Stein v. U.S. Xpress Enters.*,
2021 WL 1410035 (E.D. Tenn. Feb. 12, 2021) ...........................................................3, 4, 6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)..............................................................................................................3

*Weiner v. Tivity Health, Inc.*,
334 F.R.D. 123 (M.D. Tenn. 2020) ............................................................................4, 6, 10

*Willis v. Big Lots, Inc.*,
2017 WL 1074048 (S.D. Ohio Mar. 17, 2017)...................................................................12

*Willis v. Big Lots, Inc.*,
242 F. Supp. 3d 634 (S.D. Ohio 2017) ...........................................................................5, 11

*Yost v. First Horizon Nat'l Corp.*,
2011 WL 2182262 (W.D. Tenn. June 3, 2011) ....................................................................6

*Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532 (6th Cir. 2012) ...............................................................................................7

4864-8227-4407.v1

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
 §77k...................................................................................................................................6
 §77l(a)(2) ........................................................................................................................6
 §77o...................................................................................................................................6

15 U.S.C.
 §78j(b)...........................................................................................................................2, 6
 §78t(a) ..........................................................................................................................5, 6

Federal Rules of Civil Procedure
 Rule 10b-5........................................................................................................................9
 Rule 23(a)..................................................................................................................1, 3, 4
 Rule 23(a)(1) ....................................................................................................................4
 Rule 23(a)(2) ....................................................................................................................5
 Rule 23(a)(4) .................................................................................................................6, 7
 Rule 23(b) .........................................................................................................................3
 Rule 23(b)(3)............................................................................................... *passim*

4864-8227-4407.v1

Lead Plaintiff 1199SEIU Health Care Employees Pension Fund ("1199SEIU") and plaintiff Bucks County Employees Retirement System ("Bucks County," and together with 1199SEIU, "Plaintiffs") submit this Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (the "Motion").

## I. INTRODUCTION

Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure ("Rule"), Plaintiffs seek certification of the following "Class":

> All persons who purchased or otherwise acquired the Class A common stock of SmileDirectClub, Inc. between September 12, 2019 and March 12, 2020, inclusive (the "Class Period"). Excluded from the Class are Defendants and members of their respective families, any entity of which any of them has a controlling interest, and the legal representatives, heirs, predecessors, successors, or assigns of any of them (collectively, the "Excluded Parties").[1]

Courts have consistently recognized that "class actions are the most favorable means of adjudicating federal securities" actions. *Castillo v. Envoy Corp.*, 206 F.R.D. 464, 474 (M.D. Tenn. 2002). This action is no exception and is ideally suited to class treatment as thousands of SDC investors (including Plaintiffs, the proposed "Class Representatives") were damaged by Defendants' conduct in the same manner and Plaintiffs satisfy the requirements of Rule 23(a) and (b)(3).

First, the four requisite elements of Rule 23(a) are readily established here: (1) *Numerosity* – thousands of investors acquired millions of shares of SDC common stock during the Class Period; (2) *Commonality and Typicality* – Defendants' alleged violations of the federal securities laws injured the proposed Class Representatives and absent Class members in the same manner – Defendants engaged in the same scheme, issued the same false and misleading statements, and omitted the same material facts

---

[1] "Defendants" are, collectively, David Katzman, Kyle Wailes, Steven Katzman, Jordan Katzman, Alexander Fenkell, Richard Schnall, Susan Greenspon Rammelt, J.P. Morgan Securities LLC, Citigroup Global Markets, Inc., BofA Securities Inc., UBS Securities LLC, Jefferies LLC, Credit Suisse Securities (USA) LLC, Guggenheim Securities, LLC, Stifel, Nicolaus & Company, Incorporated, William Blair & Company, LLC, Loop Capital Markets LLC, Camelot Venture Group, and SmileDirectClub, Inc. ("SDC" or the "Company"). David Katzman and Kyle Wailes are the "Individual Exchange Act Defendants."

4864-8227-4407.v1

when communicating to all investors (¶¶44-63, 92-95); and (3) *Adequacy* – the proposed Class Representatives have participated in discovery in this action, engaged qualified counsel, and are committed to prosecuting this action on behalf of the Class.[2]

Second, the prerequisites for certification under Rule 23(b)(3) are also met. Questions central to all of Plaintiffs' claims – including whether Defendants made false statements of material facts or omitted material facts necessary to make their statements not misleading – will be answered on a class-wide basis. Similarly, Plaintiffs' and the Class's claims under §10(b) Exchange Act involve common questions of scienter, as well as reliance, which can be presumed for all Class members under the fraud-on-the-market theory of reliance set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and/or under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). Accordingly, common questions will predominate over individual ones. Finally, a class action promotes judicial economy and is undoubtedly the superior method to resolve the claims of the thousands of geographically dispersed investors that were similarly harmed by Defendants' conduct. Accordingly, Plaintiffs' Motion should be granted.

## II. THE PROPOSED CLASS REPRESENTATIVES

On January 27, 2020, 1199SEIU was appointed as Lead Plaintiff. ECF 68. 1199SEIU is a multi-employer Taft-Hartley defined benefit plan providing benefits to working and retired healthcare industry workers and their families in New York City and surrounding areas. ¶24. 1199SEIU purchased or otherwise acquired more than 88,000 shares of SDC common stock during the proposed Class Period.[3]

Bucks County is a single-employer retirement system established on January 1, 1942 that offers

---

[2] All "¶_" or "¶¶_" references herein are to the Amended Consolidated Complaint for Violations of the Federal Securities laws (ECF 85) (the "Complaint"). Additionally, all capitalized terms used in this Memorandum that are not otherwise defined herein have the same meaning as set forth in the Complaint.

[3] *See* Declaration of Gabriel Ristorucci, attached as Exhibit A to the Declaration of Christopher M. Wood in Support of Plaintiffs' Motion ("Wood Decl."), filed concurrently herewith. All "Ex. _" citations herein are to exhibits attached to the Wood Decl.

- 2 -

pension and retirement plans to public employees and retirees of Bucks County, Pennsylvania. ¶87. Bucks County purchased or otherwise acquired more than 14,000 shares of SDC common stock during the proposed Class Period. *See* Declaration of Amy Fitzpatrick, attached as Exhibit B to the Wood Decl.

The proposed Class Representatives have expended time and effort in informing themselves about and monitoring this case, and have worked with counsel to vigorously prosecute this action on behalf of the Class. Ex. A, ¶¶5-6; Ex. B, ¶¶5-6.

## III. ARGUMENT

Class actions are widely considered to be the most favorable means of adjudicating federal securities claims. *See Castillo*, 206 F.R.D. at 474; *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313-14, 320 (2007). Indeed, the Supreme Court[4] and courts within the Sixth Circuit[5] overwhelmingly find that, in securities actions, class treatment is the appropriate way to vindicate investors' rights.

A class action is appropriate where the movant has established the prerequisites of Rule 23(a) and that the action also falls within one of the categories set forth in Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013). For the reasons discussed below, Plaintiffs have made the requisite showing and the Court should certify the Class.

### A. The Proposed Class Satisfies the Requirements of Rule 23(a)

Rule 23(a) establishes four requisite elements for class certification:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

---

[4] *E.g.*, *Basic*, 485 U.S. at 229-30, 249-50; *Tellabs*, 551 U.S. at 313-14, 320; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 380 n.10 (1983); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970).

[5] *E.g.*, *Bond v. Clover Health Invs., Corp.*, 2023 WL 1999859, at *14 (M.D. Tenn. Feb. 14, 2023); *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2022 WL 4598044, at *1 (M.D. Tenn. Sept. 30, 2022); *In re FirstEnergy Corp. Sec. Litig.*, 2023 WL 2709373, at *24 (S.D. Ohio Mar. 30, 2023); *Stein v. U.S. Xpress Enters.*, 2021 WL 1410035 (E.D. Tenn. Feb. 12, 2021); *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481 (M.D. Tenn. 2019).

4864-8227-4407.v1

representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 128 (M.D. Tenn. 2020) (citing Fed. R. Civ. P. 23(a)). Here, the proposed Class meets each of these requirements.

### 1. The Class Is Sufficiently Numerous

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." Rather than a "strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Burges v. Bancorpsouth, Inc.*, 2017 WL 2772122, at \*2 (M.D. Tenn. June 26, 2017); *see also Grae*, 330 F.R.D. at 501 ("'[T]he exact number of class members need not be pleaded or proved' for a class to be certified.").[6] Indeed, "[n]umerosity is generally assumed to have been met in class action suits involving nationally traded securities." *In re Direct Gen. Corp.*, 2006 WL 2265472, at \*2 (M.D. Tenn. Aug. 8, 2006).

Throughout the Class Period, SDC common stock traded on the NASDAQ – "the largest single venue of liquidity for trading U.S.-listed cash equities." *See* Expert Report of W. Scott Dalrymple, CFA ("Dalrymple Rpt."), ¶25 (attached as Exhibit C to the Wood Decl.). The average weekly trading volume for SDC stock during the Class Period was approximately 40.2 million shares, or 38.8% per week. *Id.*, ¶30. Based on this volume of trading, it is reasonable to conclude that thousands of geographically-dispersed individuals purchased or otherwise acquired SDC common stock during the Class Period, and that joinder of all Class members is impracticable. *See Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009) (numerosity satisfied where average daily trading volume was 1.8 million shares); *see also U.S. Xpress Enters.*, 2021 WL 1410035, at \*4 (numerosity satisfied where more than 16.6 million shares traded). Lastly, at least 92 financial institutions owned SDC common stock during the Class Period, further demonstrating the numerosity of the proposed Class. Dalrymple Rpt., ¶39. In short, because "[t]his case

---

[6] Citations are omitted and emphasis is added throughout unless otherwise indicated.

4864-8227-4407.v1

Case 3:19-cv-00962    Document 136    Filed 06/05/23    Page 10 of 25 PageID #: 3133

involves the sale of millions of stock, and Plaintiffs estimate that the number of purchasers is likely to be 'in the thousands,'" numerosity is satisfied. *McCool v. AHS Mgmt. Co., Inc.*, 2023 WL 2729161, at *2 (M.D. Tenn. Mar. 30, 2023).

### 2. Questions of Law and Fact Are Common to the Class

Rule 23(a)(2) requires there be "questions of law or fact common to the class." "What matters to the commonality requirement of class certification is the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640, at *4 (M.D. Tenn. Oct. 23, 2018). "[C]ourts have repeatedly found [the commonality] requirement satisfied in securities actions." *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 645 (S.D. Ohio 2017).

Here, Plaintiffs' claims easily clear the low threshold for commonality, as their claims raise "paradigmatic common questions of law in a securities" action. *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 609 (S.D. Ohio 2003). These include, *inter alia*, whether Defendants made materially false or misleading statements or omissions to investors regarding: (1) SDC's financial metrics and growth (¶¶44-54, 93); (2) the standard of care provided to SDC's customers (¶¶58-59); and (3) the legislative and regulatory risks facing the Company (¶¶60-62). With respect to Plaintiffs' Exchange Act claims, these will also include, *inter alia*, whether: (1) Defendants acted with scienter (¶¶96-122); (2) Defendants' misrepresentations and omissions caused the putative Class to suffer damages (¶¶123-157); and (3) the Individual Exchange Act Defendants were "control persons" within the meaning of §20(a) of the Exchange Act (¶¶170-176). Because all Class members' claims depend on the answers to these common questions, commonality is established. *See Indiana Pub. Ret. Sys. v. AAC Holdings, Inc.*, 2023 WL 2592134, at *9 (M.D. Tenn. Feb. 24, 2023).

### 3. The Proposed Class Representatives' Claims Are Typical

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that

- 5 -

gives rise to the claims of other class members and if [its] claims are based on the same legal theory." *Grae*, 330 F.R.D. at 501. "[A] plaintiff's burden to establish typicality is not onerous." *Yost v. First Horizon Nat'l Corp.*, 2011 WL 2182262, at *8 (W.D. Tenn. June 3, 2011).

Plaintiffs' claims are typical of the proposed Class as they arise out of the same course of conduct – specifically, that Defendants artificially inflated SDC's share prices by misrepresenting and omitting material information concerning its business practices, regulatory environment, and financial results. *See AAC*, 2023 WL 2592134, at *10. Further, Plaintiffs and "the putative class have suffered from losses from the same course of conduct and share identical interests in holding Defendants accountable and maximizing the recovery of the Class." *Id.* As courts consistently recognize, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). Thus, proving Plaintiffs' claims – including those for alleged violations of §§10(b) and 20(a) of the Exchange Act and §§11, 12(a)(2), and 15 of the Securities Act – will simultaneously prove the Class's claims. *See Weiner*, 334 F.R.D. at 128 (typicality established where "[i]n short, 'as go the claim of the named plaintiff, so go the claims of the class'"); *U.S. Xpress*, 2021 WL 1410035, at *6 (proposed class representatives' claims were typical and "driven by the same factual underpinnings as the Securities Act claims of the proposed class because they derive from the same alleged misrepresentations and/or omissions"). Thus, typicality is satisfied. *Acadia*, 2022 WL 4598044, at *3; *AAC*, 2023 WL 2592134, at *10.

### 4. Plaintiffs Will Adequately and Fairly Protect the Interests of the Class

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." To establish adequacy: (i) "'the representative must have common interests with unnamed members of the class'"; and (ii) "'it must appear that the representatives will vigorously prosecute the

- 6 -

interests of the class through qualified counsel.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012). Plaintiffs clearly satisfy both prongs of Rule 23(a)(4)'s adequacy test.

Plaintiffs' interests are neither antagonistic to, nor in conflict with, the interests of the other Class members. To the contrary, Plaintiffs acquired SDC common stock during the Class Period and sustained damages as a result of the same alleged material misrepresentations and omissions as other Class members. *See* Ex. A, ¶4; Ex. B, ¶4.

Plaintiffs have demonstrated a willingness and ability to take an active role in this litigation to protect the interests of the Class members. Ex. A, ¶¶5-8; Ex. B, ¶¶5-8. As set forth in their declarations, Plaintiffs: (i) understand the requirements and responsibilities of serving as Class Representatives; (ii) have reviewed key pleadings in this action; (iii) intend to continue to monitor and review the progress of this litigation; and (iv) intend to continue to work with counsel to maximize the recovery to the Class. *Id.*

Plaintiffs have also demonstrated their adequacy by retaining attorneys with considerable experience in securities class actions. Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), a 200-attorney firm with an office in this District, regularly represents investors in nationwide securities litigation. *See* Ex. D at 1. District courts throughout the country have noted Robbins Geller's reputation for excellence. *See, e.g.*, *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033, Transcript at 12-13 (ECF 567) (M.D. Tenn. Apr. 11, 2016) (Sharp, J.) (in granting final approval of $215 million recovery, the largest securities class action recovery ever in Tennessee, Judge Sharp stated attorneys with Robbins Geller "were gladiators" and "[l]ooking at the benefit obtained, the effort that you had to put into it, [and] the complexity in this case . . . I appreciate the work that you all have done on this"); *Acadia*, 2019 WL 494129, at *6 ("this Court has previously found Robbins Geller to be 'well-qualified' for the task of representing a class in a securities action"); *AAC*, 2023 WL 2592134, at *26 ("In this case, Robbins Geller has done significant work in identifying and investigating the potential claims in the action . . . [and] has extensive experience

- 7 -

and knowledge with securities class actions, to say the least."). Indeed, Robbins Geller is responsible for obtaining each of the three largest securities class action recoveries ever obtained in this District and the largest securities class action recovery in this Circuit. *See* Ex. D at 30-31, 33. In short, Robbins Geller is qualified, experienced, and able to prosecute this action with the proposed Class Representatives on behalf of the Class.

### B. The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

This action also satisfies Rule 23(b)(3)'s requirements that: (1) common questions of law or fact predominate over individual questions; and (2) a class action is superior to alternative methods of resolving the dispute. *See Amchem*, 521 U.S. at 615.

### 1. Common Factual and Legal Questions Predominate

"Predominance is a test readily met in certain cases alleging . . . securities" claims and exists where the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Id*. at 623, 625. Plaintiffs meet the predominance requirement by establishing that ***at least one*** factual or legal question "is at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Plaintiffs "'need not prove that each element of a claim can be established by class wide proof: "What the rule does require is that common questions ***predominate*** over any questions affecting only individual [class] members."'" *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016) (emphasis in original). Nor does "Rule 23(b)(3) require[] a showing that ***questions*** common to the class . . . will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original).

As discussed *supra*, §III.A.2., the Class's claims are all premised on the same factual circumstances. Thus, the Class's claims will be proven through evidence common to the entire Class. Moreover, as described in the Dalrymple Rpt., damages in this case are capable of being measured on a class-wide basis, consistent with Plaintiffs' theory of the case. Dalrymple Rpt., §VII. At this stage of the

- 8 -

4864-8227-4407.v1

litigation, however, "the plaintiffs are not required to prove damages by calculating specific damages figures for each member of the class, but rather they must show that a reliable method is available to prove damages on a class-wide basis." *AAC*, 2023 WL 2592134, at \*21. Plaintiffs have done so. Dalrymple Rpt., §VII. In short, questions of Defendants' class-wide liability and damages predominate over any individualized issues and are fundamental to all Class members' claims.

### a. Plaintiffs Are Entitled to a Presumption of Reliance Pursuant to *Basic*

Predominance is established with respect to reliance for the §10(b) claim as Plaintiffs are entitled to rely on the fraud-on-the-market presumption articulated by the Supreme Court in *Basic*. 485 U.S. 224. The fraud on-the-market theory "holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations'" and that whenever an "investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 263-64, 268 (2014).

To rely on the fraud-on-the-market presumption, a plaintiff must demonstrate: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Id.* "[W]ith the exception of materiality" – which is a question of fact reserved for the jury – the elements of publicity, market efficiency, and market timing "must be satisfied before class certification." *Id.* at 276. Here, there is no dispute the alleged misrepresentations in this case were public (*see* ¶¶42, 44, 50-52, 58, 60-61) or that Plaintiffs traded in SDC common stock between the alleged misrepresentations and the ultimate revelations of the truth (*see* ECF 85). As described in the Dalrymple Rpt., SDC traded in an efficient market. Dalrymple Rpt., §VI.

Indeed, the market for SDC stock was open, active, and efficient throughout the Class Period.

- 9 -

Courts in this Circuit and others rely principally on the five *Cammer* factors, described below, when assessing market efficiency. *See Tivity*, 334 F.R.D. at 132 (citing *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989)). Courts have also considered the *Krogman* factors, which look to: (1) the company's market capitalization; (2) the stock's bid-ask spread; and (3) the stock's float. *Id.* at 133 n.2 (citing *Krogman v. Sterritt*, 202 F.R.D. 467, 474, 478 (N.D. Tex. 2001)). No single factor is determinative. *Burges*, 2017 WL 2772122, at *8 n.10. As set forth below, these factors establish that SDC common stock traded in an efficient market during the Class Period; thus, Plaintiffs are entitled to rely on the fraud-on-the-market presumption.

### (1) The *Cammer* Factors

**SDC Had a High Average Trading Volume**. An average weekly trading volume in excess of 2% is widely recognized as a sign of an efficient market. *In re Accredo Health, Inc. Sec. Litig.*, 2006 WL 1716910, at *7 n.3 (W.D. Tenn. Apr. 19, 2006). On average, during the Class Period, approximately 40.2 million shares of SDC common stock changed hands each week. Dalrymple Rpt., ¶30. This translated to an average weekly trading volume of 38.8% of shares outstanding (*id.*), supporting a strong presumption of an efficient market.

**A Substantial Number of Securities Analysts Followed the Company**. Analysts facilitate the flow and incorporation of information in the market. *Id*., ¶31. In this case, at least 80 individual analyst reports including detailed analyses of SDC's business and operations were published during the Class Period. *Id*., ¶¶32-33. This widespread analyst coverage of SDC supports a finding of efficiency. *See, e.g.*, *In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 514 (1st Cir. 2005) (one analyst sufficient for finding of market efficiency); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 209-10 (E.D. Pa. 2008) (three analysts sufficient), *aff'd*, 639 F.3d 623 (3d Cir. 2011). Moreover, over 650 media articles about SDC were published during the Class Period (Dalrymple Rpt., ¶34), adding to the rich flow of publicly available information and further supporting a finding of market efficiency. *See Carpenters Pension Tr. Fund of St. Louis v. Barclays*

- 10 -

*PLC*, 310 F.R.D. 69, 92 (S.D.N.Y. 2015) (that "'information concerning Barclays was widely disseminated throughout the Class Period through Bloomberg and other news services'" supported a finding of market efficiency).

**SDC Was Listed on the NASDAQ, and There Were Market Makers for SDC Stock**. SDC's listing on the NASDAQ throughout the Class Period provides further evidence that it traded in an efficient market. *Bond*, 2023 WL 1999859, at *10 (noting the NASDAQ is a "massive, extraordinarily active public securities market[] that normally provide[s] the setting for a finding of market efficiency in a U.S. fraud-on-the-market case"). SDC's listing on the NASDAQ also "ensure[d] there [we]re multiple market makers for each security, indicat[ing] that an ample number of registered firms [we]re available to act as market makers." Dalrymple Rpt., ¶38; *see also Big Lots*, 242 F. Supp. at 654 (that transactions "go through a designated market maker . . . has been found to satisfy this factor"). Moreover, institutional investors owned an average of 74% of SDC's public float over the course of the Class Period. Dalrymple Rpt., ¶42. SDC's listing on the NASDAQ and the broad array of market makers further supports a finding that the market for SDC common stock was efficient.

**SDC Was Eligible to File SEC Form S-3 Registration Statements**. Courts also consider eligibility to file an SEC Form S-3 registration statement in assessing market efficiency. *Cammer*, 771 F. Supp. at 1284 (SEC Form S-3 registration is "'predicated on the Commission's belief that the market operates efficiently for these companies'"). A company must meet certain float and other requirements to be eligible for S-3 registration with the SEC. Dalrymple Rpt., ¶45. Here, "[a]t all points during the Class Period," SDC had the ability to file a Form S-3, providing additional evidence of an efficient market for SDC securities. *Id.*, ¶46.

**SDC's Stock Price Reacted to New, Company-Specific Information**. The fifth *Cammer* factor focuses on whether SDC stock responded to new, company-specific information. *Cammer*, 711 F. Supp. at

- 11 -

1287. To test the responsiveness of SDC's stock price to new information, Plaintiffs' expert performed an event study – analyzing SDC stock price movements on days the Company announced earnings or guidance revisions and comparing those events to other days in the Class Period. Dalrymple Rpt., ¶¶47-70. An event study is "'a generally accepted technique for measuring how a security's price reacts to new, unexpected information about the issuing company.'" *Willis v. Big Lots, Inc.*, 2017 WL 1074048, at *4 n.4 (S.D. Ohio Mar. 17, 2017); *see also Halliburton*, 573 U.S. at 280 (event studies are "regression analyses that seek to show that the market price of the defendant's stock tends to respond to pertinent publicly reported events"). Dalrymple's event study identified a cause-and-effect relationship between the release of new SDC-specific information and the movement in SDC's stock price throughout the Class Period. Dalrymple Rpt., ¶¶55-69.

### (2) The *Krogman* Factors

**SDC Had a Sufficiently Large Market Capitalization**. Courts have considered a large market capitalization to be indicative of market efficiency on the premise that investors have a greater incentive to invest in more highly capitalized corporations. *Krogman*, 202 F.R.D. at 478. Here, SDC's market capitalization exceeded $2.0 billion with no fewer than 382 million Class A and Class B shares outstanding on every trading day. Dalrymple Rpt., ¶73. For the Class A shares at issue in this matter, the market capitalization exceeded $549 million with no fewer than 103 million shares outstanding on every trading day during the Class Period. *Id*. This factor supports a finding of market efficiency. *Id*.

**SDC Stock Had a Narrow Bid-Ask Spread**. A narrow bid-ask spread – *i.e.*, a small difference between the prices at which investors are willing to buy and current stockholders are willing to sell shares – indicates a more efficient market. *Krogman*, 202 F.R.D. at 478. SDC's common stock had a very narrow bid-ask spread, averaging 0.16% during the Class Period (Dalrymple Rpt., ¶76), supporting the finding that SDC traded in an efficient market. *Dougherty v. Esperion Therapeutics, Inc.*, 2020 WL 6793326, at *4 (E.D. Mich. Nov. 19, 2020) (bid-ask spread between .2% and .29% supported finding of market

- 12 -

Case 3:19-cv-00962    Document 136    Filed 06/05/23    Page 18 of 25 PageID #: 3141

efficiency).

**SDC Had a Large Public Float**.  Courts also consider public float – the percentage of shares held by the public, rather than insiders and affiliated entities – in assessing market efficiency.  *Krogman*, 202 F.R.D. at 478.  SDC's public float ranged between 54% and 73.4% of all shares outstanding throughout the Class Period.  Dalrymple Rpt., ¶73.  This factor supports a finding of market efficiency.  *Id*.

**b.  Plaintiffs Are Entitled to a Presumption of Reliance Pursuant to *Affiliated Ute***

With respect to reliance, predominance is also met because Plaintiffs are entitled to a presumption of reliance under *Affiliated Ute*.  Plaintiffs' claims are based, in part, on Defendants' material omissions. Courts within this circuit have applied *Affiliated Ute* to cases characterized as mixed cases of misstatements and omissions.  *See, e.g.*, *Cosby v. KPMG, LLP*, 2021 WL 1828114, at *6 (E.D. Tenn. May 7, 2021); *Burges*, 2017 WL 2772122, at *10; *Acadia*, 2022 WL 4598044, at *8-*9; *In re FirstEnergy Corp. Sec. Litig.*, 2023 WL 2709373, at *19-*20.

Further, in such cases, "positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute*, 406 U.S. at 153-54.  Rather, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [their] decision." *Id*. at 131. Moreover, because materiality itself is a common question, Plaintiffs are not required to prove materiality at the class certification stage.  *Amgen*, 568 U.S. at 467 ("[B]ecause '[t]he question of materiality . . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor,' materiality can be proved through evidence common to the class."); *Halliburton*, 573 U.S. at 281-83 (same).

Here, Plaintiffs allege Defendants concealed from investors the Company's true state of affairs regarding: (1) SDC's financial growth; (2) the standard of care provided to its customers; and (3) regulatory and legislative risks facing the Company.  Accordingly, *Affiliated Ute*'s presumption of reliance also

- 13 -

applies. *See Acadia*, 2022 WL 4598044, at *8 (holding plaintiffs were entitled to the *Affiliated Ute* presumption as defendants' "failure to disclose certain information is what ma[de] the alleged misrepresentations misleading or false"); *see also Burges*, 2017 WL 2772112, at *10 ("the *Affiliated Ute* presumption . . . is not undermined simply because a defendant makes misstatements at the same time it omits material information").

### 2. This Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Class's Claims

Courts have uniformly recognized that a class action is superior to other available methods for the fair and efficient resolution of securities class actions. Under Rule 23(b)(3), consideration of the following factors determines whether the "superiority" requirement is met: (1) the class members' interests in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Here, each factor weighs strongly in favor of class certification.

Most Class members' interests in individually prosecuting separate actions is minimal as the trouble and expense of doing so would be prohibitive when weighed against the potential recoveries. Additionally, the maintenance of a class action in this District ensures an efficient expenditure of resources and consistent rulings on the Class's claims. *See Garden City Emps.' Ret. Sys. v. Psychiatric Sols. Inc.*, 2012 WL 1071281, at *39 (M.D. Tenn. Mar. 29, 2012). This District is also a desirable forum for this class action as SDC is headquartered in this District (¶25) and many of the acts and practices complained of occurred in substantial part in this District (¶16).

That a narrower state court action asserting a subset of the claims at issue here has been certified does not detract from a finding of superiority.[7] *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1187-

---

[7] *See In re SmileDirectClub, Inc. Sec. Litig.*, 2022 WL 818950 (Tenn. Ct. App. Mar. 18, 2022).

- 14 -

88 (N.D. Cal. 2017) (finding superiority satisfied in federal securities action despite narrower state class as "the federal class action remain[ed] the superior forum with respect to maximizing recoverable damages"); *see also* Memorandum in Support of Defendants' Motion to Stay or, In the Alternative, to Dismiss at 14, *In re SmileDirectClub, Inc. Sec. Litig.*, No. 19-1169-IV (Tenn. Ch. Ct. Feb. 10, 2020) (attached as Exhibit E to the Wood Decl.) (Defendants conceding "only the federal court can offer a complete resolution of all shareholder claims arising out of the IPO").

Plaintiffs do not foresee any management difficulties that preclude this action from proceeding as a class action. Consistent with the requirements of Rule 23(b)(3), certification of this action as a class action would not only be superior to other available methods, but appears to be the sole method for fairly and efficiently litigating all of the Class members' claims.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted, 1199SEIU and Bucks County should be appointed Class Representatives, and Robbins Geller should be appointed Class Counsel.

DATED: June 5, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977
HENRY S. BATOR, #040431

s/ CHRISTOPHER M. WOOD
CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com
hbator@rgrdlaw.com

- 15 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
SCOTT H. SAHAM
JEFFREY J. STEIN
ASHLEY M. KELLY
TING H. LIU
STEPHEN JOHNSON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
scotts@rgrdlaw.com
jstein@rgrdlaw.com
akelly@rgrdlaw.com
tliu@rgrdlaw.com
sjohnson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

4864-8227-4407.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on June 5, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ CHRISTOPHER M. WOOD
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
  & DOWD LLP
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)


Email:  cwood@rgrdlaw.com

# Mailing Information for a Case 3:19-cv-00962 Franchi v. SmileDirectClub, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com

- **Henry Scattergood Bator**
  hbator@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Wade B. Cowan**
  wcowan@dhhrplc.com

- **James M. Ficaro**
  jmf@weiserlawfirm.com

- **Andrew J. Finn**
  finna@sullcrom.com

- **Andrew Fiorella**
  afiorella@beneschlaw.com

- **Elizabeth O. Gonser**
  egonser@rjfirm.com,nnguyen@rjfirm.com

- **Michael C. Griffin**
  michael.griffin@skadden.com

- **John S. Hicks**
  jhicks@bakerdonelson.com,lkroll@bakerdonelson.com,jcalouette@bakerdonelson.com,mbarrass@bakerdonelson.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Stephen Johnson**
  sjohnson@rgrdlaw.com

- **Lewis S. Kahn**
  Lewis.Kahn@ksfcounsel.com

- **Jay B. Kasner**
  jay.kasner@skadden.com

- **Ashley M. Kelly**
  akelly@rgrdlaw.com

- **Phillip Kim**
  pkim@rosenlegal.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Ting H. Liu**
  tliu@rgrdlaw.com

- **MICHAEL J MORSE**
  PKNASHLAW@AOL.COM

- **Richard A. Maniskas**
  rmaniskas@sbtklaw.com

- **E. Powell Miller**
  epm@millerlawpc.com

- **Scott D. Musoff**
  scott.musoff@skadden.com

- **Danielle S. Myers**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Sharon L. Nelles**
  nelless@sullcrom.com

- **Christopher Nelson**
  cln@weiserlawfirm.com

- **Melinda A. Nicholson**
  Melinda.Nicholson@ksfcounsel.com

- **Michael J. Palestina**
  Michael.Palestina@ksfcounsel.com

- **Ira M. Press**
  ipress@kmllp.com

- **Steven Allen Riley**
  sriley@rjfirm.com,dgibby@rjfirm.com

- **Darren J. Robbins**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,ScottS@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com

- **John Tate Spragens**
  john@spragenslaw.com,stacia@spragenslaw.com,spragenslaw@ecf.courtdrive.com

- **Jeffrey J. Stein**
  jstein@rgrdlaw.com,JStein@ecf.courtdrive.com

- **Hannah Stowe**
  hstowe@beneschlaw.com,docket2@beneschlaw.com

- **Tara L. Swafford**
  tara@swaffordlawfirm.com

- **Christopher E. Thorsen**
  cthorsen@bakerdonelson.com,mbarrass@bakerdonelson.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,agonzales@ecf.courtdrive.com,CWood@ecf.courtdrive.com,agonzales@rgrdlaw.coom,e_file_sd@rgrdlaw.com,creis@rgrdlaw.com,AKellyRGRI

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)