# EXHIBIT 18

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**SECURITIES EXCHANGE ACT OF 1934**
Release No. 95923 / September 27, 2022

**ADMINISTRATIVE PROCEEDING**
File No. 3-21168

|  |
|---|
| **In the Matter of** <br><br>     **Jefferies LLC** <br><br> **Respondent.** |

**ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, PURSUANT TO SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER**

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act") against Jefferies LLC ("Respondent" or "Jefferies").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement ("Offer") that the Commission has determined to accept. Respondent admits the facts set forth in Section III below, acknowledges that its conduct violated the federal securities laws, admits the Commission's jurisdiction over it and the subject matter of these proceedings, and consents to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

**III.**

On the basis of this Order and Respondent's Offer, the Commission finds[1] that

---

[1]    The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

### **Summary**

1.      The federal securities laws impose recordkeeping requirements on broker-dealers to ensure that they responsibly discharge their crucial role in our markets.  The Commission has long said that compliance with these requirements is essential to investor protection and the Commission's efforts to further its mandate of protecting investors, maintaining fair, orderly, and efficient markets, and facilitating capital formation.

2.      These proceedings arise out of the widespread and longstanding failure of Jefferies employees throughout the firm, including at senior levels, to adhere to certain of these essential requirements and the firm's own policies.  Using their personal devices, these employees communicated both internally and externally by personal text messages or other text messaging platforms such as WhatsApp ("off-channel communications").

3.      From at least January 2018 to September 2021, Jefferies employees sent and received off-channel communications that related to the business of the broker-dealer operated by Jefferies.  Respondent did not maintain or preserve the substantial majority of these written communications. The failure was firm-wide, and involved employees at all levels of authority. As a result, Jefferies violated Section 17(a) of the Exchange Act and Rule 17a-4(b)(4) thereunder.

4.      Jefferies' supervisors, who were responsible for preventing this misconduct among junior employees, routinely communicated off-channel using their personal devices.  In fact, dozens of managing directors across the firm and senior supervisors responsible for implementing Jefferies' policies and procedures, and for overseeing employees' compliance with those policies and procedures, themselves failed to comply with firm policies by communicating using non-firm approved methods on their personal devices about the firm's broker-dealer business.

5.      Jefferies' widespread failure to implement its policies and procedures that prohibit such communications led to its failure to reasonably supervise its employees within the meaning of Section 15(b)(4)(E) of the Exchange Act.

6.      During the time period that Respondent failed to maintain and preserve off-channel communications its employees sent and received related to the broker-dealer's business, Jefferies received and responded to Commission subpoenas for documents and records requests in numerous Commission investigations.  As a result, Jefferies' recordkeeping failures likely impacted the Commission's ability to carry out its regulatory functions and investigate violations of the federal securities laws across these investigations.

7.      Commission staff uncovered Jefferies' misconduct after commencing a risk-based initiative to investigate the use of off-channel and unpreserved communications at broker-dealers.  Jefferies has initiated a review of its recordkeeping failures and begun a program of remediation.  As set forth in the Undertakings below, Jefferies will retain a compliance

consultant to review and assess the firm's remedial steps relating to Jefferies' recordkeeping practices, policies and procedures, related supervisory practices, and employment actions.

## Respondent

8.      Respondent is a Delaware limited liability company with its principal office in New York, New York and is registered with the Commission as a broker-dealer.

## Recordkeeping Requirements under the Exchange Act

9.      Section 17(a)(1) of the Exchange Act authorizes the Commission to issue rules requiring broker-dealers to make and keep for prescribed periods, and furnish copies of, such records as necessary or appropriate in the public interest, for the protection of investors or otherwise in furtherance of the purposes of the Exchange Act.

10.     The Commission adopted Rule 17a-4 pursuant to this authority.  Rule 17a-4 specifies the manner and length of time that the records created in accordance with other Commission rules, and certain other records produced by broker-dealers, must be maintained and produced promptly to Commission representatives.  The rules adopted under Section 17(a)(1) of the Exchange Act, including Rule 17a-4(b)(4), require that broker-dealers preserve in an easily accessible place, originals of all communications received and copies of all communications sent relating to the firm's business as such.  These rules impose minimum recordkeeping requirements that are based on standards a prudent broker-dealer should follow in the normal course of business.

11.     The Commission previously has stated that these and other recordkeeping requirements "are an integral part of the investor protection function of the Commission, and other securities regulators, in that the preserved records are the primary means of monitoring compliance with applicable securities laws, including antifraud provisions and financial responsibility standards."  Commission Guidance to Broker-Dealers on the Use of Electronic Storage Media under the Electronic Signatures in Global and National Commerce Act of 2000 with Respect to Rule 17a-4(f), 17 C.F.R. Part 241, Exchange Act Rel. No. 44238 (May 1, 2001).

## Jefferies' Policies and Procedures

12.     Jefferies maintained certain policies and procedures designed to ensure the retention of business-related records, including electronic communications, in compliance with the relevant recordkeeping provisions.

13.     Jefferies employees were advised that the use of unapproved electronic communications methods, including on their personal devices, was not permitted, and they should not use personal email, chats or text applications for business purposes, or forward work-related communications to their personal devices.

14.     Messages sent through Jefferies-approved communications methods were monitored, subject to review, and, when appropriate, archived.  Messages sent through

3

unapproved communications methods, such as WhatsApp and those sent from unapproved applications on personal devices, were not monitored, subject to review or archived.

15. Firm policies were designed to address supervisors' supervision of employees' training in the firm's communications policies and adherence to Jefferies' books and recordkeeping requirements. Supervisory policies noted that electronic communications were subject to surveillance by the firm. Jefferies had procedures for all employees, including supervisors, requiring annual self-attestation of compliance.

16. Jefferies, however, failed to implement a system of follow-up and review to determine that supervisors were reasonably following the firm's policies. While permitting employees to use approved communications methods, including on personal phones, for business communications, Jefferies failed to implement sufficient monitoring to assure that its recordkeeping and communications policies were being followed.

### Jefferies' Recordkeeping Failures Across Its Brokerage Business

17. In September 2021, the Commission staff commenced a risk-based initiative to investigate whether broker-dealers were properly retaining business-related messages sent and received on personal devices. Jefferies cooperated with the investigation by gathering communications from the personal devices of a broad array of senior and other broker-dealer personnel. These personnel included senior leadership, investment bankers, and debt and equity traders.

18. The Commission staff's investigation uncovered pervasive off-channel communications at all seniority levels of Jefferies' broker-dealer. The staff requested off-channel communications data from a sampling of approximately 30 broker-dealer personnel and found that nearly all of the individuals had engaged in at least some level of off-channel communications. Overall, these personnel sent and received tens of thousands of off-channel communications, involving other Jefferies personnel, Jefferies' broker-dealer customers, and other participants in the securities industry. Within Jefferies, significant numbers of managing directors, trading desk heads, and industry group heads participated in off-channel communications.

19. From at least January 2018 through September 2021, tens of thousands of messages were sent and received that concerned the broker-dealer's business, including investment strategy, discussions of investment banking client meetings, and communications about market color, analysis, or events.

20. For example, a managing director with a global firm-wide leadership role in Jefferies' investment bank sent and received thousands of off-channel business-related messages to Jefferies colleagues, investment banking clients, and personnel at other financial services firms. Within Jefferies, this managing director routinely communicated with other managing directors and junior employees, under their supervision.

4

21.     From at least January 2018 through September 2021, this senior investment banker sent and received thousands of off-channel text messages. The messages concerned, among other things, the broker-dealer's business, including investment strategy, discussions of investment banking client meetings, and communications about market color, analysis, or events in the capital markets.

22.     In addition, from at least January 2018 through September 2021, a Jefferies managing director and trading desk head texted, including the use of WhatsApp and Signal messaging platforms, with at least 90 Jefferies colleagues in various areas of the broker-dealer including with product and desk heads, and junior members of trading desks.  The managing director also texted with numerous third-parties, who were market participants at other broker-dealers and investment advisers.

23.     Overall, the voluminous off-channel messages uncovered by the Staff's risk-based initiative reflect extensive discussion between and among senior-level Jefferies executives and employees, customers, investment banking clients, third-party advisers, and other market participants about debt and equity underwriting and trading issues.

### Jefferies' Failure to Preserve Required Records Potentially Compromised and Delayed Commission Matters

24.     Between January 2018 and September 2021, Jefferies received and responded to Commission subpoenas for documents and records requests in numerous Commission investigations.  By failing to maintain and preserve required records relating to its broker-dealer business, Jefferies likely deprived the Commission of these off-channel communications in various investigations.

### Jefferies' Violations and Failure to Supervise

25.     As a result of the conduct described above, Jefferies willfully[2] violated Section 17(a) of the Exchange Act and Rule 17a-4(b)(4) thereunder, which require broker-dealers to preserve for at least three years originals of all communications received and copies of all communications sent relating to its business as such.

26.     As a result of the conduct described above, Jefferies failed reasonably to supervise its employees with a view to preventing or detecting certain of its employees' aiding and abetting violations of Section 17(a) of the Exchange Act and Rule 17a-4(b)(4) thereunder, within the meaning of Section 15(b)(4)(E) of the Exchange Act.

---

[2]     "Willfully," for purposes of imposing relief under Section 15(b) of the Exchange Act "'means no more than that the person charged with the duty knows what he is doing.'" *Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir 2000) (quoting *Hughes v. SEC*, 174 F.2d 969, 977 (D.C. Cir. 1949)).

## Jefferies' Remedial Efforts

27.     In determining to accept the Offer, the Commission considered remedial acts promptly undertaken by Jefferies and cooperation afforded the Commission staff.

## Undertakings

28.     Prior to this action, Jefferies enhanced its policies and procedures, and increased training concerning the use of approved communications methods, including on personal devices, and began implementing significant changes to the technology available to employees. In addition, Jefferies has undertaken to:

29.     Compliance Consultant.

a. Jefferies shall retain, within thirty (30) days of the entry of this Order, the services of a compliance consultant ("Compliance Consultant") that is not unacceptable to the Commission staff.  Prior to the entry of this Order, Jefferies retained the services of a consultant to address the issues described in this Order. The Compliance Consultant may be the same consultant previously engaged by Jefferies.  The Compliance Consultant's compensation and expenses shall be borne exclusively by Jefferies.

b. Jefferies will oversee the work of the Compliance Consultant.

c. Jefferies shall provide to the Commission staff, within sixty (60) days of the entry of this Order, a copy of the engagement letter detailing the Compliance Consultant's responsibilities, which shall include a comprehensive compliance review as described below. Jefferies shall require that, within ninety (90) days of the date of the engagement letter, the Compliance Consultant conduct:

i. A comprehensive review of Jefferies' supervisory, compliance, and other policies and procedures designed to ensure that Jefferies' electronic communications, including those found on personal electronic devices, including without limitation, cellular phones ("Personal Devices"), are preserved in accordance with the requirements of the federal securities laws.

ii. A comprehensive review of training conducted by Jefferies to ensure personnel are complying with the requirements regarding the preservation of electronic communications, including those found on Personal Devices, in accordance with the requirements of the federal securities laws, including by ensuring that Jefferies personnel certify in writing on a quarterly basis that they are complying with preservation requirements.

iii. An assessment of the surveillance program measures implemented by Jefferies to ensure compliance, on an ongoing basis, with the requirements found in the federal securities laws to preserve electronic communications, including those found on Personal Devices.

6

iv. An assessment of the technological solutions that Jefferies has begun implementing to meet the record retention requirements of the federal securities laws, including an assessment of the likelihood that Jefferies personnel will use the technological solutions going forward and a review of the measures employed by Jefferies to track employee usage of new technological solutions.

v. An assessment of the measures used by the firm to prevent the use of unauthorized communications methods for business communications by employees. This assessment should include, but not be limited to, a review of the firm's policies and procedures to ascertain if they provide for any significant technology and/or behavioral restrictions that help prevent the risk of the use of unapproved communications methods on Personal Devices (e.g., trading floor restrictions).

vi. A review of Jefferies' electronic communications surveillance routines to ensure that electronic communications through approved communications methods found on Personal Devices are incorporated into Jefferies' overall communications surveillance program.

vii. A comprehensive review of the framework adopted by Jefferies to address instances of non-compliance by Jefferies employees with Jefferies' policies and procedures concerning the use of Personal Devices to communicate about Jefferies business in the past. This review shall include a survey of how Jefferies determined which employees failed to comply with Jefferies policies and procedures, the corrective action carried out, an evaluation of who violated policies and why, what penalties were imposed, and whether penalties were handed out consistently across business lines and seniority levels.

d. Jefferies shall require that, within forty-five (45) days after completion of the review set forth in sub-paragraphs c.i. through c.vii. above, the Compliance Consultant shall submit a detailed written report of its findings to Jefferies and to the Commission staff (the "Report"). Jefferies shall require that the Report include a description of the review performed, the names of the individuals who performed the review, the conclusions reached, the Compliance Consultant's recommendations for changes in or improvements to Jefferies' policies and procedures, and a summary of the plan for implementing the recommended changes in or improvements to Jefferies' policies and procedures.

e. Jefferies shall adopt all recommendations contained in the Report within ninety (90) days of the date of the Report; provided, however, that within forty-five (45) days after the date of Report, Jefferies shall advise the Compliance Consultant and the Commission staff in writing of any recommendations that Jefferies considers to be unduly burdensome, impractical, or inappropriate. With respect to any recommendation that Jefferies considers unduly burdensome, impractical, or inappropriate, Jefferies need

7

not adopt such recommendation at that time, but shall propose in writing an alternative policy, procedure, or disclosure designed to achieve the same objective or purpose.

f. As to any recommendation concerning Jefferies' policies or procedures on which Jefferies and the Compliance Consultant do not agree, Jefferies and the Compliance Consultant shall attempt in good faith to reach an agreement within sixty (60) days after the date of the Report. Within fifteen (15) days after the conclusion of the discussion and evaluation by Jefferies and the Compliance Consultant, Jefferies shall require that the Compliance Consultant inform Jefferies and the Commission staff in writing of the Compliance Consultant's final determination concerning any recommendation that Jefferies considers to be unduly burdensome, impractical, or inappropriate. Jefferies shall abide by the determinations of the Compliance Consultant and, within sixty (60) days after final agreement between Jefferies and the Compliance Consultant or final determination by the Compliance Consultant, whichever occurs first, Jefferies shall adopt and implement all of the recommendations that the Compliance Consultant deems appropriate.

g. Jefferies shall cooperate fully with the Compliance Consultant and shall provide the Compliance Consultant with access to such of Jefferies' files, books, records, and personnel as are reasonably requested by the Compliance Consultant for review.

h. Jefferies shall not have the authority to terminate the Compliance Consultant or substitute another compliance consultant for the initial Compliance Consultant, without the prior written approval of the Commission staff. Jefferies shall compensate the Compliance Consultant and persons engaged to assist the Compliance Consultant for services rendered under this Order at their reasonable and customary rates.

i. Jefferies shall require the Compliance Consultant to enter into an agreement that provides that for the period of engagement and for a period of two years from completion of the engagement, the Compliance Consultant shall not enter into any employment, consultant, attorney-client, auditing, or other professional relationship with Jefferies, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity. The agreement shall also provide that the Compliance Consultant will require that any firm with which he/she is affiliated or of which he/she is a member, and any person engaged to assist the Compliance Consultant in performance of his/her duties under this Order shall not, without prior written consent of the Commission staff, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Jefferies, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity as such for the period of the engagement and for a period of two years after the engagement.

j. The Report and related written communications of the Compliance Consultant will likely include confidential financial, proprietary, competitive business or commercial information. Public disclosure of the reports could discourage cooperation, impede pending or potential government investigations or undermine the objectives of the reporting requirement. For these reasons, among others, the reports and the contents thereof are

8

intended to remain and shall remain non-public, except (1) pursuant to court order, (2) as agreed to by the parties in writing, (3) to the extent that the Commission determines in its sole discretion that disclosure would be in furtherance of the Commission's discharge of its duties and responsibilities, or (4) is otherwise required by law.

30. <u>One-Year Evaluation</u>. Jefferies shall require the Compliance Consultant to assess Jefferies' program for the preservation, as required under the federal securities laws, of electronic communications, including those found on Personal Devices, commencing one year after submitting the report required by Paragraph 29.d above. Jefferies shall require this review to evaluate Jefferies' progress in the areas described in Paragraph 29.c.i-vii above. After this review, Jefferies shall require the Compliance Consultant to submit a report (the "One Year Report") to Jefferies and the Commission staff and shall ensure that the One Year Report includes an updated assessment of Jefferies' policies and procedures with regard to the preservation of electronic communications (including those found on Personal Devices), training, surveillance programs, and technological solutions implemented in the prior year period.

31. <u>Reporting Discipline Imposed</u>. For two years following the entry of this Order, Jefferies shall notify the Commission staff as follows upon the imposition of any discipline imposed by Jefferies, including, but not limited to, written warnings, loss of any pay, bonus, or incentive compensation, or the termination of employment, with respect to any employee found to have violated Jefferies' policies and procedures concerning the preservation of electronic communications, including those found on Personal Devices: at least 48 hours before the filing of a Form U-5, or within ten (10) days of the imposition of other discipline.

32. <u>Internal Audit</u>. In addition to the Compliance Consultant's review and issuance of the One Year Report, Jefferies will also have its Internal Audit function conduct a separate audit(s) to assess Jefferies' progress in the areas described in Paragraph 29.c.i-vii above. After completion of this audit(s), Jefferies shall ensure that Internal Audit submits a report to Jefferies and the Commission staff.

33. <u>Recordkeeping</u>. Jefferies shall preserve, for a period of not less than six (6) years from the end of the fiscal year last used, the first two (2) years in an easily accessible place, any record of compliance with these undertakings.

34. <u>Deadlines</u>. For good cause shown, the Commission staff may extend any of the procedural dates relating to the undertakings. Deadlines for procedural dates shall be counted in calendar days, except that if the last day falls on a weekend or federal holiday, the next business day shall be considered to be the last day.

35. <u>Certification</u>. Jefferies shall certify, in writing, compliance with the undertakings set forth above. The certification shall identify the undertakings, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. The Commission staff may make reasonable requests for further evidence of compliance, and Respondent agrees to provide such evidence. The certification and supporting material shall be submitted to Thomas P. Smith, Jr., Associate Regional Director, Securities and Exchange Commission, 100 Pearl Street, Suite 20-100, New York, New York 10004-2616, with

9

a copy to the Office of Chief Counsel of the Enforcement Division, no later than sixty (60) days from the date of the completion of the undertakings.

**IV.**

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondent Jefferies' Offer.

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act, it is hereby ORDERED that:

A. Respondent Jefferies cease and desist from committing or causing any violations and any future violations of Section 17(a) of the Exchange Act and Rule 17a-4 thereunder.

B. Respondent Jefferies is censured.

C. Respondent Jefferies shall comply with the undertakings enumerated in paragraphs 29 to 35 above.

D. Respondent Jefferies shall, within 14 days of the entry of this Order, pay a civil money penalty in the amount of $50,000,000 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3). If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. § 3717.

Payment must be made in one of the following ways:

(1) Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2) Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3) Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Jefferies as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Thomas P. Smith, Jr., Associate

10

Regional Director, Securities and Exchange Commission, 100 Pearl Street, Suite 20-100, New York, New York 10004-2616.

       E.      Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondent agrees that in any Related Investor Action, it shall not argue that it is entitled to, nor shall it benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondent agrees that it shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondent by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

       By the Commission.


                           Vanessa A. Countryman
                           Secretary