# EXHIBIT 20

| | |
|---|---|
| ADAM FRANCHI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SMILEDIRECTCLUB, INC., et al.,<br><br>Defendants. | Civil Action No. 3:19-cv-00962<br>**(Consolidated)**<br><br><u>CLASS ACTION</u><br><br>Judge Eli J. Richardson<br>Magistrate Judge Jeffery S. Frensley<br><br>PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO THE UNDERWRITER DEFENDANTS |

1199SEIU Health Care Employees Pension Fund and Bucks County Employees Retirement System (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby request pursuant to Federal Rules of Civil Procedure 26 and 34 that defendants J.P. Morgan Securities LLC, Citigroup Global Markets Inc., BofA Securities, Inc., UBS Securities LLC, Jefferies LLC, Credit Suisse Securities (USA) LLC, Guggenheim Securities, LLC, Stifel, Nicolaus & Company, Incorporated, William Blair & Company, L.L.C. and Loop Capital Markets LLC, within 30 days of service hereof, produce for inspection and copying the documents described herein. Production shall be made in accordance with Federal Rule of Civil Procedure 24(b) at the offices of Robbins Geller Rudman & Dowd LLP, 414 Union Street, Suite 900, Nashville, Tennessee 37219, or at such other time and place as the parties mutually agree.

## I.    DEFINITIONS

Unless stated otherwise, the terms set forth below are defined as follows:

- 1 -

4865-0839-8147.v1

1. "AAO" refers to the American Association of Orthodontics, including its various state chapters and subchapters.

2. "Action" refers to this lawsuit, captioned above.

3. "ADA" refers to the American Dental Association.

4. "Answer" means the Underwriter Defendants' Answer to Plaintiffs' Amended Consolidated Complaint (ECF 118), filed on November 14, 2022.

5. "BBB" refers to the Better Business Bureau.

6. "Camelot" refers to defendant Camelot Venture Group the private investment group founded and controlled by defendant David Katzman and the largest shareholder of SDC and the managing member of the entity that controls SDC.

7. "Communication" or "communications" means emails, text messages, letters, chat logs, recordings, or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise), including any attachments thereto.

8. "Complaint" means the Amended Consolidated Complaint for Violations of the Federal Securities Laws (ECF 85), filed on March 30, 2021. All "¶¶__" references are cites to paragraphs therein.

9. "Concerning" means referring to, relating to, describing, evidencing, or constituting.

10. "Customer Complaint" means any complaint or expression of concern from an actual or prospective customer of SDC concerning the conduct of any SDC employee, SDC sales tactics, or the Medical Care provided by SDC, including at any Smile Direct Facility. This term encompasses all complaints and expressions of concern made directly to SDC and all complaints and expressions of concern made to any third party, including the BBB.

11. "DBC" refers to the Dental Board of California.

- 2 -

12. "Defendants" refers to the SDC Defendants (defined below), defendant Camelot, and the Underwriter Defendants (defined below).

13. "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

14. "DOJ" refers to the United States Department of Justice.

15. "EBITDA" refers to earnings before interest, taxes, depreciation and amortization.

16. "Electronically stored information" or "ESI" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including any word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "email," operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file or file fragment. "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

- 3 -

17.    "Employee" refers to any person who at any time acted or purported to act on your behalf or under your supervision, direction, or control, including, without limitation, past and current directors, officers, dentists, orthodontists, doctors, principals, partners, executives, analysts, investment bankers, consultants, advisors, representatives, sales people, agents, trustees, independent contractors, assigns, businesses, or similar persons.

18.    "Ernst & Young" refers to Ernst & Young LLP, including its employees, agents, accountants, advisors, or other persons occupying similar positions or performing similar functions.

19.    "FDA" refers to the United States Food and Drug Administration.

20.    "Financial Metrics" refers to SDC's revenue, gross profit, and adjusted EBITDA growth trends portrayed in the Registration Statement as alleged in ¶¶44-54 of the Complaint.

21.    "Identify," with respect to documents, means to give, to the extent known, the: (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

22.    "Identify," with respect to persons, means to give, to the extent known, the person's full name, present or last known address, present or last known email address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the information of that person.

23.    "Individual Defendants" refers to David Katzman, Kyle Wailes, Steven Katzman, Alexander Fenkell, Jordan Katzman, Susan Greenspon Rammelt, and Richard Schnall.

24.    "IPO" refers to SDC's September 12, 2019 initial public offering of SDC Class A common stock, pursuant to the Registration Statement filed by SDC on Form S-1 with the SEC on May 3, 2019, and, including subsequent amendments, declared effective September 11, 2019.

- 4 -

25. "Medical Care" refers to the care or advice any SDC employee provided to any SDC customer or patient concerning any medical issue, including issues concerning health, dentistry, and orthodontics.

26. "Medical Incidents" refers to any instance where a customer suffered, potentially suffered, or reported having suffered or potentially suffered, any medical or dental injury, however minor, following the use of SDC's products or Medical Care provided by SDC, including from any Medical Professional employed by, working at the direction of, or pursuant to any agreement with, SDC.

27. "Meeting" refers to the contemporaneous presence or communication of any persons (including by telephone or any other electronic means) for any purpose, whether such presence was by chance or prearranged, formal or informal, or occurred in connection with some other activity.

28. "Person" or "persons" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

29. "Policy" or "policies" means any rule, procedure, practice or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, that was recognized or followed, explicitly or implicitly, including any practice memoranda or manuals.

30. "Registration Statement" refers to SDC's registration statement and prospectus filed on September 12, 2019 with the SEC and as amended declared effective on or about September 11, 2019.

31. "Regulatory Agency" refers to any governmental or regulatory agency, including, but not limited to, the DOJ, the SEC (defined below), any United States Attorney, any Attorney General, any District Attorney, and the investigative or enforcement arm of any medical or dental organization or non-profit organization, including the ADA, AAO, DBC, and BBB.

4865-0839-8147.v1

32. "SDC" refers to SmileDirectClub, Inc., any of its direct or indirect subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, present and former officers, directors, employees (defined below), agents, accountants, and advisors, and all other persons acting or purporting to act on its behalf.

33. "SDC Defendants" refers to SDC and the Individual Defendants.

34. "Security" or "securities" refers to any note, stock, treasury stock, bond, preferred unit, debenture, certificate or other evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit or any certificate of interest or participation in, receipt for or warrant or right to subscribe to or purchase any of the foregoing.

35. "SEC" refers to the United States Securities and Exchange Commission.

36. "Smile Direct Facility" refers to any location from which SDC conducted business or provided service or care to its customers, including SDC's headquarters, SDC's "Smile Shops," locations from which Medical Professionals provided Medical Care, and other retail locations.

37. "Underwriter Defendant(s)" refers to J.P. Morgan Securities LLC, Citigroup Global Markets Inc., BofA Securities, Inc., UBS Securities LLC, Jefferies LLC, Credit Suisse Securities (USA) LLC, Guggenheim Securities, LLC, Stifel, Nicolaus & Company, Incorporated, William Blair & Company, L.L.C. and Loop Capital Markets LLC, including their employees, agents, accountants, advisors, or other persons occupying similar positions or performing similar functions.

38. "You" or "your" means the person or entity responding to these requests, as well as each of your respective employees, agents, representatives, attorneys, accountants, and/or any other person acting under your direction or control.

- 6 -

## II. INSTRUCTIONS

1. In responding to these requests, you shall produce responsive documents and electronic data that are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of your respective partners, directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives. A document or electronic data is within your control if you have the right to secure the document or electronic data or a copy of the document or electronic data from another person having possession or custody of the document or electronic data.

2. You are required to produce for inspection and copying original documents and electronic data as they are kept in the usual course of business in their original folders, binders, covers, and containers or facsimile thereof, or, with respect to electronic data, in their native format as explained in more detail below. In the case of documents that were already produced pursuant to federal, state, or local governmental or administrative investigations, those documents may be produced in the same manner as they were previously produced by you. If the original is not in your custody, you are required to provide a copy thereof, and all non-identical copies which differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

3. Your response must either state that inspection and related activities will be permitted as requested, or state with specificity the grounds for objecting to the request, including the reasons for the objections. Where you are objecting to a request, you must state whether any responsive materials are being withheld on the basis of that objection. Where you are objecting to only part of the request, you must state with specificity which part of the request you are objecting to, and permit inspection of the rest.

- 7 -

4.      If a document, electronic data, or information is withheld pursuant to a claim of privilege, as to each such withheld document or information state the following:

(a)      The privilege claimed;

(b)      A precise statement of the facts upon which said claim of privilege is based, including sufficient information to evaluate the nature or validity of the privilege claimed;

(c)      The following information describing each purportedly privileged document: (i) the name(s) of the author(s); (ii) the name(s) of the sender(s); (iii) the name(s) of the person(s) to whom the document and copies, if any, were sent; (iv) the job title of each individual identified in (i), (ii), and (iii) above; (v) a brief description of the nature and subject matter of the document; and (vi) the nature of the privilege;

(d)      A precise description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

5.      If a portion of any document or electronic data responsive to these requests is withheld under claim of privilege, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.      You are to produce each document requested herein in its entirety, with attachments and enclosures without deletion or excision (except as qualified by Instruction Nos. 4 and 5 above) regardless of whether you consider the entire document to be relevant or responsive to the requests. All pages now stapled or fastened together should be produced, stapled, or fastened together, and each document that you cannot legibly copy should be produced in its original form.  Documents not otherwise responsive to any of the discovery requests herein must be produced if such documents mention, discuss, refer to, or explain the documents which are called for by these requests, or if such

- 8 -

documents are attached to documents called for by these requests and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials. Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the document or group of documents.

7. Whenever a document or electronic data is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

8. If a document responsive to these requests was at any time in your possession, custody, or control, but is no longer available for production, as to each such document, state the following information:

      (a)      Whether the document is missing or lost;

      (b)      Whether it has been destroyed;

      (c)      Whether the document has been transferred or delivered to another person and, if so, at whose request;

      (d)      Whether the document has been otherwise disposed of; and

      (e)      A precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

9. If in responding to these requests you claim any ambiguity in interpreting a request or a definition or instruction applicable thereto, such a claim shall not be utilized by you as a basis for refusing to produce responsive documents, but set forth as part of your response to the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

4865-0839-8147.v1

10. Whenever necessary to bring within the scope of a request a response that might otherwise be construed to be outside of its scope:

(a) The use of a verb in any tense shall be construed as the use of the verb in all other tenses;

(b) The use of the word in its singular form shall be deemed to include within its use the plural form as well, and vice versa;

(c) The use of the words "any," or "all" shall be construed to include within their use "any," "some," "each," or "all"; and

(d) The words "and" and "or" shall be construed either conjunctively or disjunctively as necessary.

11. For each request to which you are providing documents, your response must identify the particular responsive documents by Bates number.

12. Plaintiffs' First Set of Requests for Production of Documents to the Underwriter Defendants is continuing in nature and requires supplemental responses to the extent permitted by Federal Rule of Civil Procedure 26(e).

13. In accordance with Federal Rule of Civil Procedure 26(b)(5), if any responsive documents are withheld on a claim of privilege, that claim must be expressly made and any withheld materials described in such a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the claim.

## III. PRODUCTION OF HARD COPY DOCUMENTS – FORMAT

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be

- 10 -

merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV. PRODUCTION OF ESI

1. Format: Electronically stored information ("ESI") should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, audio and video files, photo or graphic images, and documents with tracked changes reflected in the metadata, which should be produced in native format. If an original document contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs should show any and all text and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages should include the BCC line.

2. Format – Native Files: If a document is produced in native format, a single-page, Bates stamped image slip sheet stating the document has been produced in native format should also be provided, with the exception of PowerPoint presentations. PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the

- 11 -

NATIVELINK field.  To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.      De-Duplication: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Removal of near-duplicate documents and email thread suppression is not acceptable.  De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field should list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document.  Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents should be produced prior to substantial completion of the document production.

4.      Technology Assisted Review: Predictive coding/technology-assisted-review shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

5.      Metadata: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.

- 12 -

6.      For ESI other than email and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

7.      Embedded Objects: Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved.  The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

8.      Attachments: If any part of an email or its attachments is responsive, the entire email and attachments should be produced, except any attachments that must be withheld or redacted on the basis of privilege.  The parties should meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. The attachments should be produced sequentially after the parent email.  The parties shall use their best efforts to collect and produce documents that are links in emails, including, but not limited to, Google G Suite, Microsoft O365, etc.  documents extracted from links shall be populated with the BegAttach and EndAttach metadata fields to show the family relationship.

9.      Compressed File Types: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

10.      Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production.  Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

- 13 -

11.     Exception Report: The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type and the file location.

12.     Encryption: To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

13.     Redactions: If documents that the parties have agreed to produce in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

## V.     RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from January 1, 2018 to the date of production (the "Relevant Period"), and shall include documents and information that relate to such period, even if dated, prepared, generated, used, published or received outside of the Relevant Period.  If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## VI.     DOCUMENTS REQUESTED

REQUEST FOR PRODUCTION NO. 1:

Documents constituting any insurance policies, indemnification agreements, hold harmless agreements, director and officer policies, error and omissions policies, or general liability policies between you and any other Defendant.

4865-0839-8147.v1

<u>REQUEST FOR PRODUCTION NO. 2</u>:

Your document retention policies and documents concerning the preservation, search for, collection, maintenance, destruction, or alteration of documents and ESI, including all documents or communications concerning changes to, compliance with, violations of, or deviations from such policies.

<u>REQUEST FOR PRODUCTION NO. 3</u>:

All documents and communications concerning any litigation hold instituted for this Action, and any other litigation holds in place during the Relevant Period.

<u>REQUEST FOR PRODUCTION NO. 4</u>:

All organizational charts and employee directories sufficient to identify the names and positions of each individual employed by or affiliated with you that was involved in the IPO, including: (a) the role that each individual played; and (b) any group email or distribution list(s).

<u>REQUEST FOR PRODUCTION NO. 5</u>:

All documents concerning SDC, including analysts' reports, analysts' recommendations, analysts' notes, first calls, research reports, memoranda, studies, opinions, ratings, valuations, presentations, PowerPoints, earnings models, or other documents and drafts thereof.

<u>REQUEST FOR PRODUCTION NO. 6</u>:

All documents and communications concerning any media, news, or television investigations into SDC or any Smile Direct Facility, including any media, news, or television reports, or any publications concerning the Medical Care provided by SDC, including publications from *Lifehacker*, *The New York Times*, NBC Nightly News, *Hindenburg Research*, *Reuters*, and *Dow Jones Institutional News*.

4865-0839-8147.v1

<u>REQUEST FOR PRODUCTION NO. 7</u>:

All documents and communications concerning Medical Incidents.

<u>REQUEST FOR PRODUCTION NO. 8</u>:

All documents and communications concerning Customer Complaints.

<u>REQUEST FOR PRODUCTION NO. 9</u>:

All documents and communications concerning any meetings you attended relating to SDC, including all minutes (with all exhibits, attachments, agenda, or other documents) of such meetings.

<u>REQUEST FOR PRODUCTION NO. 10</u>:

Documents related to any inquiries by a Regulatory Agency concerning the statements in SDC's Registration Statement, and any other matters, including: (1) all communications between you or any other Defendant and a Regulatory Agency; (2) all documents provided to a Regulatory Agency by you or any of the Defendants; and (3) all documents related to any interviews, testimony, or statements provided to a Regulatory Agency.

<u>REQUEST FOR PRODUCTION NO. 11</u>:

Documents related to any communications with the SEC concerning the IPO, including communications related to any draft Registration Statement(s).

<u>REQUEST FOR PRODUCTION NO. 12</u>:

Documents related to any disagreement among any of the Defendants concerning any conclusion, statement, observation, disclosure, or non-disclosure in any document filed with the SEC by SDC in connection with the IPO.

- 16 -

<u>REQUEST FOR PRODUCTION NO. 13</u>:

All communications with or concerning the SDC Defendants, including all emails, text messages, or records of phone calls to or from any representative of SDC, or an actual or potential investor in SDC.

<u>REQUEST FOR PRODUCTION NO. 14</u>:

All documents and communications concerning any potential or actual offering of any SDC security, including any communications between you and any representative of SDC or any Underwriter Defendants relating to any potential or actual offering of any SDC security, your actual or contemplated role as an underwriter or placement agent of any offering of any SDC security and/or any actual or contemplated underwriter fees, discounts, and/or commissions associated with any offering of any SDC security.

<u>REQUEST FOR PRODUCTION NO. 15</u>:

All documents and communications concerning your transactions in SDC's securities, or other security derivative of, referencing, or otherwise based upon an SDC security.

<u>REQUEST FOR PRODUCTION NO. 16</u>:

All documents and communications concerning any actual or contemplated investment banking, consulting, or advisory services you provided to, on behalf of, or involving any of the SDC Defendants.

<u>REQUEST FOR PRODUCTION NO. 17</u>:

Documents sufficient to identify any fees, expenses, reimbursements, costs, compensation, or other remuneration you received for any investment, banking, consulting, advisory, or any other services to the SDC Defendants, including serving as an underwriter or placement agent for any SDC offering, including, but not limited to, SDC's IPO.

- 17 -

<u>REQUEST FOR PRODUCTION NO. 18</u>

Documents related to any due diligence performed in connection with the IPO, including: (a) communications concerning the IPO or Registration Statement; (b) records of due diligence (including drafts), including any due diligence checklist or bring down document; (c) any questionnaires and their responses, analysis, review, conclusion, recommendation, meeting minutes, note, transcript, memorandum, presentation or other due diligence documentation; and (d) any agendas and calendar invites.

<u>REQUEST FOR PRODUCTION NO. 19</u>

Documents sufficient to show how you conduct due diligence, such as any regulatory or compliance requirements, internal policies, or related materials.

<u>REQUEST FOR PRODUCTION NO. 20</u>:

Documents concerning the pricing of the IPO.

<u>REQUEST FOR PRODUCTION NO. 21</u>:

Documents related to any meetings, conference calls, symposiums, or conferences with investors or potential investors, including, but not limited to, securities analysts, financial analysts, institutional investors, financial investors, brokerage firms, investment bankers, market makers, money managers, or commercial banks, at which SDC was discussed, including any communications, meeting materials, transcripts or recordings, documentation, agenda, minutes, notes, or memoranda.

<u>REQUEST FOR PRODUCTION NO. 22</u>:

Documents sufficient to identify each person you sold SDC common stock to in connection with SDC's IPO.

4865-0839-8147.v1

<u>REQUEST FOR PRODUCTION NO. 23</u>:

All documents and communications concerning any assessment of whether SDC's Registration Statement complied with applicable rules and regulations.

<u>REQUEST FOR PRODUCTION NO. 24</u>:

All documents and communications concerning the drafting and dissemination of the Registration Statement filed in connection with the IPO.

<u>REQUEST FOR PRODUCTION NO. 25</u>:

All documents and communications concerning the statements made in the Registration Statement set forth in ¶¶44, 50-53, 55, 56, 58, 60, and 61 of the Complaint.

<u>REQUEST FOR PRODUCTION NO. 26</u>:

Documents sufficient to show all changes made to the representations in the Registration Statement alleged to be materially false or misleading in ¶¶44-62 of the Complaint, including: (a) draft Registration Statements; and (b) any communications related to the representations in the Registration Statement alleged to be materially false or misleading in ¶¶44-62 of the Complaint.

<u>REQUEST FOR PRODUCTION NO. 27</u>:

Documents and communications related to SDC's Financial Metrics for 2019 and 2020, including: (a) the Financial Metric forecast representations in the Registration Statement (*see* ¶¶44-54 of the Complaint); (b) any communications related to the Financial Metrics included in the Registration Statement; and (c) any revised Financial Metric forecasts.

<u>REQUEST FOR PRODUCTION NO. 28</u>:

All documents and communications concerning your reliance on other professionals, including your auditor Ernst & Young, or other experts in connection with SDC's IPO.

REQUEST FOR PRODUCTION NO. 29:

Documents provided to SDC's board of directors.

REQUEST FOR PRODUCTION NO. 30:

Documents related to Camelot with respect to SDC.

REQUEST FOR PRODUCTION NO. 31:

Documents sufficient to show the reasons the IPO was completed in September 2019.

REQUEST FOR PRODUCTION NO. 32:

Documents relating to any communications with media or the press concerning SDC.

REQUEST FOR PRODUCTION NO. 33:

All documents and communications supporting or relating to any of your Affirmative Defenses set forth in your Answer.

REQUEST FOR PRODUCTION NO. 34:

All documents and communications concerning your options to purchase additional shares in connection with or following the IPO.

REQUEST FOR PRODUCTION NO. 35:

All documents and communications concerning your acquisitions and dispositions of SDC securities.

REQUEST FOR PRODUCTION NO. 36:

All documents and communications concerning your investigation or reviews you conducted that provided reasonable grounds to believe that the statements referenced in the Registration Statement were true, and that there were no misstatements or omissions of material facts necessary to make the statements therein not misleading.

- 20 -

REQUEST FOR PRODUCTION NO. 37:

All documents and communications contained within the data room or deal file for the IPO.

REQUEST FOR PRODUCTION NO. 38:

All documents identified in your Federal Rule of Civil Procedure 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 39:

To the extent not captured by the above requests, all documents and communications relevant to the Action, without regard to the Relevant Period.

REQUEST FOR PRODUCTION NO. 40:

If any documents or categories of documents responsive to these requests have been previously destroyed such that you are unable to produce them in response to this request, please produce all documents concerning the destruction of such documents, including documents reflecting the date on which responsive materials were destroyed, describing the nature of the documents that were destroyed, or Identifying the actual or potential location or custodian of any copies of destroyed documents.

REQUEST FOR PRODUCTION NO. 41:

All documents and communications produced by any Defendant or third party in the state court action, *In re SmileDirectClub, Inc. Sec. Litig.*, No. 19-1169-IV (Tenn. Ch. Ct.).

DATED: December 15, 2022

ROBBINS GELLER RUDMAN
 & DOWD LLP
CHRISTOPHER M. WOOD, #032977

_____
CHRISTOPHER M. WOOD

- 21 -

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
SCOTT H. SAHAM
JEFFREY J. STEIN
ASHLEY M. KELLY
TING H. LIU
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
scotts@rgrdlaw.com
jstein@rgrdlaw.com
akelly@rgrdlaw.com
tliu@rgrdlaw.com

Lead Counsel for Lead Plaintiff

4865-0839-8147.v1

## DECLARATION OF SERVICE BY EMAIL

I, CASEY REIS, not a party to the within action, hereby declare that on December 15, 2022,

I caused to be served the attached Plaintiffs' First Requests for Production of documents to the

Underwriter Defendants by e-mail on the parties to the within action, addressed as follows:

### COUNSEL FOR DEFENDANTS:

| NAME | FIRM | E-MAIL |
|---|---|---|
| Steven A. Riley<br>Milton S. McGee, III<br>Elizabeth O. Gonser | RILEY & JACOBSON, PLC<br>1906 West End Avenue<br>Nashville, TN 37203<br>Telephone: 615/320-3700 | sriley@rwjplc.com<br>tmcgee@rjfirm.com<br>egonser@rwjplc.com |
| Jay B. Kasner<br>Scott D. Musoff<br>Michael C. Griffin | SKADDEN, ARPS, SLATE,<br>   MEAGHER & FLOM LLP<br>One Manhattan West<br>New York, NY 10001<br>Telephone: 212/735-3000 | jay.kasner@skadden.com<br>scott.musoff@skadden.com<br>michael.griffin@skadden.com |
| John S. Hicks<br>Christopher E. Thorsen | BAKER, DONELSON, BEARMAN,<br>   CALDWELL & BERKOWITZ, PC<br>1600 West End Avenue, Suite 2000<br>Nashville, TN 37203<br>Telephone: 615/726-5600 | jhicks@bakerdonelson.com<br>cthorsen@bakerdonelson.com |
| Sharon L. Nelles<br>Andrew J. Finn | SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, NY 10004<br>Telephone: 212/558-4000 | nelless@sullcrom.com<br>finna@sullcrom.com |

### COUNSEL FOR PLAINTIFFS:

| NAME | FIRM | E-MAIL |
|---|---|---|
| Christopher M. Wood | ROBBINS GELLER RUDMAN<br>   & DOWD LLP<br>414 Union Street, Suite 900<br>Nashville, TN 37219<br>Telephone: 615/244-2203 | cwood@rgrdlaw.com |
| Darren J. Robbins<br>Scott H. Saham<br>Jeffrey J. Stein<br>Ashley M. Kelly<br>Ting H. Liu<br>Stephen Johnson | ROBBINS GELLER RUDMAN<br>   & DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: 619/231-1058 | darrenr@rgrdlaw.com<br>scotts@rgrdlaw.com<br>jstein@rgrdlaw.com<br>akelly@rgrdlaw.com<br>tliu@rgrdlaw.com<br>sjohnson@rgrdlaw.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 15, 2022, at San Diego, California.

s/ Casey Reis<br>
CASEY REIS