UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ADAM FRANCHI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> SMILEDIRECTCLUB, INC., et al., <br><br> Defendants. | Civil Action No. 3:19-cv-00962 **(Consolidated)** <br><br> <u>CLASS ACTION</u> <br><br> Judge Eli J. Richardson <br> Magistrate Judge Jeffery S. Frensley <br><br> UNDERWRITER DEFENDANTS' RESPONSE TO PLAINTIFFS' IMPROPER "NOTICE OF SUPPLEMENTAL EVIDENCE" |

In June, Plaintiffs filed a Joint Discovery Dispute Statement seeking an unprecedented order requiring the Underwriter Defendants[1] to procure sworn declarations from current and former employees about their use of personal devices for text messaging. (Joint Statement, ECF No. 138, at 8.) Plaintiffs also want an order requiring "discovery from the investment professionals who prepared [research analyst] reports on behalf of the Analyst Underwriter Defendants" (*id.* at 11), even though Plaintiffs did not point to any additional information relevant to their claims that such discovery would reveal. Since then, in addition to the more than 39,000 documents that the Underwriter Defendants already have produced to them, Plaintiffs have also spent 15 hours of on-the-record time deposing the two lead underwriters, J.P. Morgan Securities LLC ("JPM") and Citigroup Global Markets Inc. ("Citi"), pursuant to Rule

---

[1] As explained in the Joint Discovery Dispute Statement, the Underwriter Defendants have a limited role in this case: They are named as defendants only in a subset of Plaintiffs' claims focused exclusively on statements made by SDC—not the Underwriter Defendants—by virtue of a statutory provision that renders them jointly and severally liable in certain limited circumstances. (*See* Joint Statement at 14, 17–18.)

30(b)(6). Those documents and depositions confirm that (1) the primary modes of communication for the persons most involved in the day-to-day for SmileDirectClub, Inc.'s ("SDC") initial public offering ("IPO") were emails, telephone calls and in-person meetings, while text messaging was limited to logistical issues or discussions that were memorialized in emails, and (2) there is not a shred of evidence that *any* relevant information has been deleted, destroyed, or otherwise improperly withheld from Plaintiffs, completely undercutting any argument that Plaintiffs' unprecedented request is somehow justified by their unsupported allegations of "spoliation." Moreover, the documents include materials concerning the role of research analysts in SDC's IPO, and the witnesses for both banks testified about the analysts' roles.

Apparently unsatisfied, and without meeting and conferring in advance, Plaintiffs filed an unauthorized 6-page sur-reply styled as a mere "Notice of Supplemental Evidence" (ECF No. 149) ("Notice"). In that Notice, Plaintiffs assert that further discovery "is sorely needed" on the use of text messages and "other off-channel communications," and that additional discovery from research analysts is needed. (Notice at 2.) It is not. Plaintiffs grossly mischaracterize the testimony and other evidence that has been provided by the Underwriter Defendants to date. They also ignore the Underwriter Defendants' offer to meet and confer on targeted searches of research analyst documents—which has now happened, leading to an agreement in principle. Thus, the research analyst issue raised in the Joint Discovery Dispute Statement and the Notice is now moot.

The Court should deny Plaintiffs' remaining request for needless, burdensome and unprecedented discovery about texting or other "off-channel" communications, and allow the Parties to move forward with depositions in the coming weeks.

**A.** **There Is No Evidence that the Underwriter Defendants Were Engaged in Substantive Text Messaging Concerning the SDC IPO, and Plaintiffs' Speculation of "Spoliation" Has Been Disproven.**

Plaintiffs' assertion that JPM and Citi provided testimony that bankers were using text messages to communicate relevant substantive information that has not otherwise been disclosed is baseless. There is no evidence that any relevant information was not retained or produced, and Plaintiffs' request for declarations concerning irrelevant communication channels could not possibly be proportional to the needs of the case in light of the burden and expense that would be required to prepare them.

*First*, testimony from JPM's representative, Neil Dalal, did not reveal *any* "improper communications during the SDC IPO," as Plaintiffs claim (Notice at 2), let alone that any relevant and unique information about the IPO exists but has not been produced. Rather, Mr. Dalal, who was a core member of the investment banking team working on the SDC IPO, testified that texting was not used for substantive deal communications. Plaintiffs attempt to cherry-pick phrases from his deposition, but Mr. Dalal's testimony could not have been clearer. He stated:

> **A.** So, generally in this matter, the vast majority of communication -- when I say "this matter," I mean Smile Direct Club IPO -- **the vast majority of communication was on approved channels, which is generally email for JP Morgan, as well as virtual data rooms that we go back and forth on, as well as phone calls. There was limited use of text messages, which was largely limited to logistical matters or to affirm or -- yeah, affirm what was already written in the email, which is consistent with my personal use as well.**
>
> **Q.** When you say "a vast majority of communications are through approved channels, and that is consistent with your use of those channels," **that mean [sic] sometimes you use text messaging to talk about business, right?**
>
> **A. No.** What I was referring to is that for this specific matter, the vast majority of communication was via approved channels. I said "communication," not business communication, but any communication. **That communication that was not through approved channels was largely logistical or affirming what was already in an approved channel.**
>
> . . .

**Q.** So there were communications through unapproved channels.

**A.** As I just said, those communications were generally logistical in nature or affirming what was already in an email.

**Q.** You also said they were "largely limited" to logistical text messages in nature. That means they weren't exclusively limited to that; were they?

**A.** Because the other piece was affirming what was in an email.

**Q. It's your understanding that the only time text messaging or any unapproved channel of communication was ever used in connection with the SDC IPO was one of those two categories, either logistics or confirming something that was already stated in an email?**

**A. That is my understanding, yes.**

(Ex. 1 (Dalal Tr.) at 419:6–421:8.)

Mr. Dalal also confirmed that JPM's settlement with the SEC regarding historical record-keeping practices for communications on employees' personal devices, which formed the basis for Plaintiffs' request for text-related declarations, had nothing to do with JPM's work on the SDC IPO. (*Id.* at 424:5–427:11.) And when Plaintiffs showed Mr. Dalal a document that they claimed showed JPM employees conducting IPO business using text messages, Mr. Dalal confirmed that the texting was on "logistical" matters. (*Id.* at 430:17–431:17 ("**Q.** Then this is about non-substantive communications, right? **A.** This is logistical.").) Moreover, Mr. Dalal also confirmed that JPM has document retention policies in place that require all documents relating to the SDC IPO to be retained. (*Id.* at 413:24–414:9; *see also id.* at 386:24–387:15 ("Q. Did you review any documents that indicated there may be missing documents? A. No. I did not.").)

*Second*, the testimony of Citi's representative about the use of text messaging with respect to the SDC IPO was entirely consistent, but notably absent from Plaintiffs' "Notice." Jordan Termine, another investment banker who worked on the SDC IPO, confirmed that the Citi team did not engage in text messaging on substantive matters in connection with that transaction.

When asked about his understanding with respect to Citi's policy or practice for "text messaging, personal e-mails and other chat services," Mr. Termine testified that using texting or personal email was "not allowed under most circumstances," except that "[f]or logistical and other kind of minor uses it's permitted." (Ex. 2 (Termine Tr.) at 115:8–116:21.)  Mr. Termine further testified that the Citi team followed that practice for the SDC IPO and that "no one used . . . personal devices in connection with this" IPO.  (*Id.* at 124:13–18.)  When Plaintiffs showed Mr. Termine an email that happened to mention the word "text," Mr. Termine confirmed that was an example of permitted texts on logistical matters:

> **Q.** Okay.  And so then Kevin Gallagher says "I will text on the side to see if this is convenience to us or just something else."  So Kevin Gallagher is talking about texting Kyle Wailes on the side, right?
>
> **A.** Yes.  He appears to be texting him regarding a logistical matter, which as I mentioned is permitted.
>
> . . .
>
> **Q.** So what leads you to believe this a just a logistical matter?
>
> **A.** They're talking about logistics for most of the e-mail chain.
>
> . . .
>
> **Q.** How is a meeting between a head person at Citibank and a head person at SDC a logistical matter?
>
> **A.** Well, it needs to be scheduled, so time and place, and where that's scheduled, I consider to be logistical.  My interpretation of this would be that he's not planning to go through the entire content of the meeting they're looking to set up over text. It appears that over text, he's looking to confirm logistics.

(*Id.* at 119:18–120:25.)

Third, Plaintiffs' complaints that Messrs. Dalal and Termine were not properly prepared to testify about document retention or text messaging are wholly unsupported.  Mr. Dalal spent at least eight hours over two days with counsel preparing for testimony on the 23 topics Plaintiffs identified.  (Ex. 1 (Dalal Tr.) at 374:12–376:18.)  To prepare to testify on the use of text

messaging or other "personal" communications (*see* Pls.' Ex. 2 at 20 (Topic No. 21)), Mr. Dalal explained that he was aware of those practices and his own usage, and "was educated by Sullivan [&] Cromwell and internal counsel as to what other folks said on the IPO team" regarding their communication practices. (Ex. 1 (Dalal Tr.) at 418:18–421:8.) Based on that knowledge, Mr. Dalal testified that he did not engage in substantive off-channel text messaging on the SDC IPO and that counsel had confirmed that other members of the JPM deal team did not do so either. (*Id.* at 419:6–421:8.) Specifically, Mr. Dalal stated:

> **Q.** Then as to topic 21, how can you be sure or how do you know that others on the team weren't using these unapproved channels?
>
> **A.** So. I guess two answers to your question. I know my use of unapproved channels in relation specifically to Smile Direct Club IPO, which I already described. And then my understanding is that internal counsel and Sullivan and Cromwell asked the other folks who worked on the Smile Direct Club IPO as to their use, and they relayed to me that their use was consistent to mine as it relates to this specific transaction, so that is how I know.

(*Id.* at 429:7-21.)

Similarly, Mr. Termine spent nearly two full days preparing with counsel for his deposition, and confirmed that he had personal knowledge of Citi's policies and practices with respect to use of text messaging. (Ex. 2 (Termine Tr.) at 15:18–16:21.) Mr. Termine also had personal knowledge of the efforts to confirm whether other relevant Citi employees used text messaging to conduct business relating to SDC's IPO because he recalled Citi's in-house counsel asking him and his colleagues on the deal. In particular, in response to a question "[a]sking us to confirm whether or not we used texts on this IPO," "[i]f memory serves, I believe everyone replied no, that they had not." (*Id.* at 123:5–125:22; *see also* 124:16-22 ("I recall that you know, no one used, you know, personal devices in connection with this. That's my recollection.").)

Plaintiffs assert that Messrs. Dalal and Termine should have personally contacted "all members of the SDC IPO team who still work at the company to learn whether each

individual" used texts or other personal communication channels to conduct work on the SDC IPO. (Notice at 4 (quoting Pls.' Ex. 4 at 1).) It is unclear what such additional contact would have achieved when that precise effort was undertaken by counsel, other than needlessly to waste bank employees' time. Rule 30(b)(6) requires that a corporate representative be prepared to testify about matters that "are reasonably available," which "may include information transmitted from the party's attorneys." *United States ex rel. Fry* v. *Health Alliance of Greater Cincinnati*, 2009 WL 10679614, at *2 (S.D. Ohio Sept. 14, 2009); *see also Severn Peanut Co.* v. *Industrial Fumigant Co.*, 2013 WL 5348434, at *1 (E.D.N.C. Sept. 23, 2013) (information "reasonably available to the corporation" includes "facts passed on to the employee by corporate lawyers"); *Great Am. Ins. Co. of N.Y.* v. *Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 541 (D. Nev. 2008) (same). Both Messrs. Dalal and Termine have day jobs, and counsel had "already confirmed with each of the relevant custodians that are still employed by their respective banks that they did not engage in substantive communications relating to their work on the SDC IPO outside of their respective firms' normal channels (*i.e.*, emails or internal messaging systems that are already being searched)." (Joint Statement at 16.) There is nothing more to discover.

In short, Plaintiffs' request for additional discovery about text messaging in the form of compelled declarations from each of the 14 current and former employees of the Underwriter Defendants that are document custodians in this action, which have no relevance whatsoever to the issues in the case, is an effort to harass and should be denied. As explained in the Joint Statement, the burden and expense that preparing these declarations would involve is considerable, as each of the requested declarants would potentially need individual counsel, and the declarations would require dozens of hours of the employees' and their attorneys' time. Plaintiffs cannot point to any substantive information contained in text messages that has not

already been produced.  Nor is there a shred of evidence of spoliation of anything relevant to this case, which was the original (now wholly disproven) justification for Plaintiffs' request for compelled sworn declarations on that topic.  As such, Plaintiffs' request is not even remotely proportional to the needs of the case.  For the same reasons, Plaintiffs fail to show that their request for further discovery concerning the Underwriter Defendants' preservation policies (*see* Joint Statement at 7; Notice at 2) is justified.

> **B.  Plaintiffs' Request for Additional Discovery About Research Analysts' Tangential Involvement in the SDC IPO Is Now Moot.**

In the Notice, Plaintiffs contend that discovery to date has somehow demonstrated the need for additional information about research analysts' work prior to and after the IPO.  In reality, Plaintiffs already have documents related to the research analysts' interaction with both SDC and the investment bankers for the Underwriter Defendants who worked on the IPO.  And both bankers that have been deposed testified about the research analysts' roles in the IPO.[2]  It remains unclear what more Plaintiffs need or expect to find from additional searches for documents.

---

[2]  Contrary to Plaintiffs' assertions (*see* Notice at 5 n.4), the bankers' testimony was that all communications between the underwriters' IPO teams and research analysts were entirely consistent with FINRA Rule 2241(b)(2)(G).  That rule requires FINRA members to "establish information barriers or other institutional safeguards reasonably designed to ensure that research analysts are insulated from the review, pressure or oversight by persons engaged in investment banking services activities."  The deposition testimony makes clear that such safeguards were in place here.  For example, Mr. Termine of Citi explained that "investment bankers are not allowed to directly communicate with the research department unless someone from compliance is chaperoning the call and making sure that the conversation stays focused on diligence and business issues."  (Ex. 2 (Termine Tr.) at 158:3–158:22.)  And written interactions between JPM's and Citi's investment bankers responsible for the SDC IPO and analysts were monitored by the banks' compliance function, and passed through a "Control Room."  (*See id.* at 26:6–27:20, 35:7–16; Ex. 1 (Dalal Tr.) at 317:10–318:10.)

-8-

Nonetheless, in an effort to further compromise, and consistent with their prior offers, the Underwriter Defendants have offered a targeted search of additional research analyst documents related to Plaintiffs' allegations that SDC's offering documents should have contained additional disclosures about SDC's performance in the third quarter of 2019. Plaintiffs initially ignored Defendants' request to meet and confer and filed the Notice before responding to that request. But the Parties have since discussed, and the Underwriter Defendants have now agreed in principle to conduct a tailored search of ten additional document custodians, for a limited time period, using additional search terms. This should resolve Plaintiffs' request for additional discovery from analysts.

*    *    *

For the reasons explained in the Joint Statement, document discovery had already demonstrated that Plaintiffs' requests are unreasonable and seek irrelevant information. Deposition testimony has now confirmed this. Plaintiffs' requests for additional discovery in the Joint Statement should be denied.

DATED: September 1, 2023

BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, PC
JOHN S. HICKS (TN# 10478)
CHRISTOPHER E. THORSEN (TN# 21049)

*/s/Christopher E. Thorsen*
CHRISTOPHER E. THORSEN

1600 West End Avenue, Suite 2000
Nashville, TN 37203
Telephone: 615/726-5600
615/726-0464 (fax)
jhicks@bakerdonelson.com
cthorsen@bakerdonelson.com

SULLIVAN & CROMWELL LLP
SHARON L. NELLES
ANDREW J. FINN
125 Broad Street
New York, NY 10004
Telephone: 212/558-4000
212/558-3588 (fax)
nelless@sullcrom.com
finna@sullcrom.com

Counsel for Defendants J.P. Morgan Securities
LLC, Citigroup Global Markets Inc., BofA
Securities, Inc., Jefferies LLC, UBS Securities
LLC, Credit Suisse Securities (USA) LLC,
Guggenheim Securities, LLC, Stifel, Nicolaus &
Company, Incorporated, William Blair &
Company, LLC and Loop Capital Markets LLC

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on September 1, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher E. Thorsen
CHRISTOPHER E. THORSEN

1600 West End Avenue, Suite 2000
Nashville, TN  37203
Telephone: 615/726-5600
615/726-0464 (fax)

Email:  cthorsen@bakerdonelson.com

## Mailing Information for a Case 3:19-cv-00962 Franchi v. SmileDirectClub, Inc. et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com

- **Henry Scattergood Bator**
  hbator@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Allyson R. Cady**
  acady@beneschlaw.com

- **Wade B. Cowan**
  wcowan@dhhrplc.com

- **Emily N. Dillingham**
  edillingham@beneschlaw.com

- **James M. Ficaro**
  jmf@weiserlawfirm.com

- **Andrew J. Finn**
  finna@sullcrom.com

- **Andrew Fiorella**
  afiorella@beneschlaw.com

- **Elizabeth O. Gonser**
  egonser@rjfirm.com,sfordice@rjfirm.com

- **Michael C. Griffin**
  michael.griffin@skadden.com

- **John S. Hicks**
  jhicks@bakerdonelson.com,lkroll@bakerdonelson.com,jcalouette@bakerdonelson.com,mbarrass@bakerdonelson.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Stephen Johnson**
  sjohnson@rgrdlaw.com

- **Lewis S. Kahn**
  Lewis.Kahn@ksfcounsel.com

- **Jay B. Kasner**
  jay.kasner@skadden.com

- **Ashley M. Kelly**
  akelly@rgrdlaw.com

- **Phillip Kim**
  pkim@rosenlegal.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Ting H. Liu**
  tliu@rgrdlaw.com

- **MICHAEL J MORSE**
  PKNASHLAW@AOL.COM

- **Richard A. Maniskas**
  rmaniskas@sbtklaw.com

- **E. Powell Miller**
  epm@millerlawpc.com

- **Scott D. Musoff**
  scott.musoff@skadden.com

- **Danielle S. Myers**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Sharon L. Nelles**
  nelless@sullcrom.com

- **Christopher Nelson**
  cln@weiserlawfirm.com

- **Melinda A. Nicholson**
  Melinda.Nicholson@ksfcounsel.com

- **Michael J. Palestina**
  Michael.Palestina@ksfcounsel.com

- **Ira M. Press**
  ipress@kmllp.com

- **Steven Allen Riley**
  sriley@rjfirm.com,dgibby@rjfirm.com

- **Darren J. Robbins**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,ScottS@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com

- **John Tate Spragens**
  john@spragenslaw.com,stacia@spragenslaw.com,spragenslaw@ecf.courtdrive.com

- **Jeffrey J. Stein**
  jstein@rgrdlaw.com,JStein@ecf.courtdrive.com

- **Hannah Stowe**
  hstowe@beneschlaw.com,docket2@beneschlaw.com

- **Tara L. Swafford**
  tara@swaffordlawfirm.com

- **Christopher E. Thorsen**
  cthorsen@bakerdonelson.com,mbarrass@bakerdonelson.com,jcalender@bakerdonelson.com,csanko@bakerdonelson.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,agonzales@ecf.courtdrive.com,CWood@ecf.courtdrive.com,agonzales@rgrdlaw.coom,e_file_sd@rgrdlaw.com,creis@rgrdlaw.com,AKellyRGRL

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)