# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SMILEDIRECTCLUB, INC., *et al.*,[1] | ) Case No. 23-90786 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (I) DISMISSING THE DEBTORS' CHAPTER 11 CASES,
## (II) APPROVING PROCEDURES FOR DISMISSAL AND DISTRIBUTION OF
## THE DEBTORS' REMAINING ASSETS, AND (III) GRANTING RELATED RELIEF

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within 21 days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within 21 days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on January 18, 2024, at 2:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "Judge Lopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SmileDirectClub. The location of Debtor SmileDirectClub, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1530 Antioch Pike, Antioch, Tennessee.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

### Relief Requested

1. The Debtor seeks entry of an order, substantially in the form attached hereto (the "Dismissal Order"), (a) dismissing the chapter 11 cases immediately upon the Debtors' filing of the Notice of Dismissal (as defined below), (b) approving procedures for dismissal and distribution of the Debtors' remaining assets, and (c) granting related relief.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 305(a), and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code").

### Background

5. On September 29, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On October 2, 2023, the Court entered an order [Docket No. 28] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure

---

[2] The facts and circumstances supporting this Motion are set forth in the *Declaration of Troy Crawford, Chief Financial Officer of SmileDirectClub, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 4] (the "First Day Declaration"), incorporated by reference herein. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration, the DIP Motion (as defined herein), or the Final DIP Order (as defined herein), as applicable.

(the "Bankruptcy Rules").   The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 13, 2023, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") [Docket No. 138].  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

### The Chapter 11 Cases

6.      The Debtors commenced these chapter 11 cases to pursue a value-maximizing going-concern transaction.   Immediately after the Petition Date, the Debtors launched an approximately 65-day marketing process—which followed a multi-month prepetition process to assess various financing or restructuring alternatives—for the sale of the Debtors' equity under a plan of reorganization, or for any other restructuring transactions that parties wished to propose, in partnership with the Founders or otherwise.  The Debtors conducted the marketing process with the assistance of their investment banker, Centerview Partners LLC ("Centerview"), and oversight by the special committee of the board of directors of SmileDirectClub, Inc. (the "Special Committee").  The Special Committee is comprised of disinterested and independent directors Alex Dimitrief, Linda Williams, and Edward W. Ward, III.  The board of directors of SmileDirectClub Inc. delegated to the Special Committee the exclusive authority (without any further approval by the board or any other directors) to review, develop, investigate, negotiate, and approve binding entry into a potential amendment, modification, refinancing or restructuring of the applicable debt obligations owed by the Debtors.

7.      As more fully described in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing (a) the Sale of the Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, (b) the Debtors' Entry Into and Performance Under the Bill of Sale, and*

*(c) the Rejection of Certain Executory Contracts and (II) Granting Related Relief* (the "Sale Motion"), filed substantially contemporaneously herewith, Centerview's comprehensive and wide-reaching marketing process included outreach to 104 parties. Thirty of those parties executed non-disclosure agreements and obtained access to a virtual dataroom with extensive diligence materials. Seven of the NDA parties held virtual or in-person meetings with members of the Debtors' management team, and four submitted non-binding letters of intent. The Creditors Committee, through its financial advisor Alvarez & Marsal North America, LLC, provided input on the outreach list and had access to the proposals and marketing process information in real time as the marketing process progressed. Unfortunately, despite the Debtors and their advisors' extensive efforts, no actionable third-party sale or other restructuring transaction came to fruition.

8.        Once it became clear that no viable going-concern path existed, on December 8, 2023, the Debtors commenced a swift wind-down of their global operations to maximize and preserve value for their estates. As a result, the Debtors' business is no longer operating, and the Debtors made the difficult decision to terminate their workforce. At the outset of these chapter 11 cases, the Debtors made clear that if they were unable to implement a transaction to preserve the business as a going concern, they would instead pursue an orderly liquidation of their estates. While the Debtors hoped to implement a wind-down of their estates through a chapter 11 liquidating plan, the Debtors do not believe they are, or will be, able to satisfy the applicable confirmation requirements, including in relation to outstanding Administrative Claims[3] (which are

---

3        "Administrative Claim" means a Claim for costs and expenses of administration of the estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the estates and operating the businesses of the Debtors; and (b) all fees and charges assessed against the estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930. The holders of Administrative Claims are the "Administrative Claimants."

listed on the schedule attached to the Dismissal Order as <u>Exhibit 1</u> based on the Debtors' books and records) and prepetition Priority Claims.[4]

9.      In light of this difficult reality, the Debtors, acting at the direction of the Special Committee, engaged in arm's-length negotiations with the DIP Lenders and the Creditors Committee regarding a transaction that would maximize value for all stakeholders by (a) concluding these chapter 11 cases expeditiously without undue delay or the incurrence of significant additional expenses and (b) providing for near-term, meaningful distributions to the Administrative Claimants and the potential for further distributions to lower-priority unsecured creditors.  To that end, the Debtors, the DIP Lenders, and the Creditors Committee have agreed to the following settlement construct:

- **Asset Sale.**  As further described in the Sale Motion, the Debtors will sell substantially all the assets of their estates, other than the Specified Claims (as defined below) and the cash in the Funded Reserve Account on account of the Carve Out (each as defined in the Final DIP Order), to Cluster Holdco LLC, free and clear of all liens, claims, encumbrances, and other interests.  As consideration for the sale, the DIP Lenders will provide, in accordance with the Sale Order and each as defined in the Sale Motion: (a) a credit bid of their approximately $28 million in DIP claims, in full and final satisfaction thereof; (b) Cash Consideration in an amount of at least $4.65 million and up to $7.65 million; and (c) the establishment and funding of the Creditor Trust to investigate and potentially prosecute the Specified Claims up to and limited in all respects by available insurance (collectively, the "<u>Sale Consideration</u>").

- **Distributions.**  After entry of the Dismissal Order and upon closing of the Asset Sale, the Initial Cash Consideration[5] and the Specified Claims will be transferred to and vest in a Creditor Trust established by the Dismissal Order. The Creditor Trust will distribute the Initial Cash Consideration immediately to outstanding Administrative Claimants on a *pro rata* basis according to the column titled "**Allowed Claim Amount**" in <u>Exhibit 1</u> attached to

---

[4]   "<u>Priority Claim</u>" means a claim entitled to priority in right of payment under section 507 of the Bankruptcy Code other than an Administrative Claim.

[5]   For the purposes of this Motion, the term "<u>Initial Cash Consideration</u>" shall mean the Cash Consideration in the amount of $4.65 million, net of the $650,000 payable to Centerview as a Transaction Fee in accordance with the *Order Authorizing the Retention and Employment of Centerview Partners LLC as Investment Banker for the Debtors and Debtors in Possession Effective as of the Petition Date* [Docket No. 190].

the Dismissal Order. **Accordingly, claimants who believe they have unpaid Administrative Claims against the Debtors should review Exhibit 1 to the Dismissal Order and must object to the Motion if they believe that they (a) should be included therein or (b) are owed a different amount than the amount listed therein.** Other available consideration, including proceeds of insurance available following the successful prosecution of the Specified Claims (if any) and proceeds from the sale of the Hard Assets[6] and the Select Assets[7] in an amount not to exceed $3 million in the aggregate, will be contributed to the Creditor Trust and distributed, as soon as reasonably practicable after such cash becomes available, in accordance with the priority scheme set forth in sections 507 and 726 of the Bankruptcy Code.

- **Dismissal.** Pursuant to the Dismissal Order, these chapter 11 cases will be dismissed immediately upon the Debtors' filing of the Notice of Dismissal in accordance with the procedures set forth herein.

A copy of the agreed terms governing the settlement as between the Debtors, the Creditors Committee, and the DIP Lenders is attached hereto as **Exhibit A** (the "Global Settlement" and "Global Settlement Terms," as applicable). The Creditors Committee has expressed its support of the Global Settlement Terms to the Debtors and the DIP Lenders, and the DIP Lenders have relied on such support in entering into the Global Settlement and supporting the relief requested herein.

10. The Debtors estimate that Administrative Claims total approximately $17.5 million. The proposed settlement provides for a meaningful, near-term distribution to Administrative Claimants, with the potential for additional distributions to the Debtors' creditors depending on the outcome of any Specified Claims pursued by the Creditor Trust and further liquidation efforts up to $3 million. The Administrative Claimants are expected to recover at least

---

[6] The term "Hard Assets" shall mean (A) the Debtors' retail oral care inventory—namely, teeth whitening products, water flossers and cleaning, and toothbrushes, (B) manufacturing equipment, (C) 3D printers, and (D) iTero scanners.

[7] The term "Select Assets" shall mean (A) cash reserves in respect of company credit cards, (B) cash collateral securing that certain Australian letter of credit, (C) cash collateral securing that certain surety bond by and among SmileDirectClub, LLC and Philadelphia Indemnity Insurance Co. (120), No. PB11740200404, and (D) note receivable in the face amount of approximately $1,990,000 due to the Debtors from a non-Insider prospective partner obligor which was issued to facilitate the prospective partner's purchase of real property for its dental practice.

6

approximately 22.8% on account of their Administrative Claims based on the initial distribution resulting from the Global Settlement, with potential significant upside stemming from available D&O insurance and proceeds from the sale of the Hard Assets and Select Assets. Alternatively, if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, it is likely that no recovery would be provided to any creditors other than the DIP Lenders. As described herein and in the Sale Motion, the Debtors, with the assistance of Centerview, conducted a fulsome marketing process that ultimately did not result in any actionable bids that would provide sufficient consideration to satisfy the Debtors' obligations under the DIP Facility or provide a recovery to holders of unsecured claims against the Debtors. The marketing process serves as a market check for the value of the Debtors' assets and that process demonstrates that no alternatives are available to provide a meaningful recovery to the Debtors' estates. Moreover, the pursuit of potential estate claims and causes of action against the Debtors' directors and officers resulting in recovery in excess of the DIP Facility and other Sale Consideration is highly speculative. Further, this Motion seeks relief consistent with the Bankruptcy Codes' priority rules.

11.     Therefore, the Debtors request approval of the Motion and entry of the Dismissal Order.

**Procedures for Dismissal and Distribution of Remaining Assets**

12.     The Debtors propose the following process to distribute their remaining assets to creditors and dismiss the chapter 11 cases.

13.     Upon the satisfaction of each of the below requirements, the Debtors shall file a notice with the Court that the following conditions have been satisfied (the "Notice of Dismissal"):

> (a)     The Court shall have entered the order approving the Sale Motion (the "Sale Order") authorizing the sale of the Debtors' remaining assets, other than the assets reserved for the Creditor Trust and the Carve Out pursuant to the Global Settlement, to the Purchaser, and the Asset Sale shall have closed.

(b)     Pursuant to the Global Settlement and the Dismissal Order, a trust shall have been established (the "Creditor Trust"), and be funded with (a) the Initial Cash Consideration and (b) the Specified Claims in accordance with (i) the following guidelines and (ii) an agreement governing, among other things, the retention and duties of the Creditor Trustee and the terms of the Creditor Trust, which shall be reasonably acceptable to the Debtors, the DIP Lenders, and the Committee (the "Creditor Trust Agreement"), the form of which is attached to the Dismissal Order as Exhibit 3:

    (i)     the Creditors Committee shall have appointed a trustee of the Creditor Trust pursuant to the Global Settlement Terms (the "Creditor Trustee") and such Creditor Trustee shall have standing to pursue the Specified Claims (as defined below);

    (ii)     the Creditor Trust shall be established with no objective to continue or engage in the conduct of a trade or business other than (a) the pursuit of certain purported fiduciary duties claims and causes of action against the Debtors' current Chief Executive Officer, David Katzman, the Debtors' current Chief Financial Officer, Troy Crawford, the Debtors' former Chief Financial Officer, Kyle Wailes, and the Debtors' Chief Clinical Officer, Dr. Jeff Sulitzer (such claims and causes of action, the "Specified Claims"); *provided* that the Creditor Trust's recovery on the Specified Claims, if any, shall be limited in all respects by amounts available under the Debtors' directors and officers' insurance policies (the "D&O Policies"); *provided*, *further*, that to the extent proceeds under the D&O Policies become exhausted, the Creditor Trustee shall no longer be permitted to pursue litigation on account of the Specified Claims; *provided*, *further*, for the avoidance of doubt, the Creditor Trustee shall not collect on or execute on, or attempt to collect or execute on, any assets available to the individuals identified in the foregoing clause (a) in relation to the Specified Claims other than amounts available under the D&O Policies, pursuant to the Debtor Release as defined in the Sale Motion and to be approved via the Sale Order; and (b) to distribute proceeds of the Creditor Trust to the Debtors' creditors as set forth below; and

    (iii)     the distribution of the proceeds of the Creditor Trust shall be as follows:

        (A)     all available cash from the Initial Cash Consideration (subject to the terms set forth in the Creditor Trust Agreement); and

        (B)     the remaining proceeds as they become available and subject to the terms of the Creditor Trust Agreement, first on a *pro rata* basis to satisfy the remaining portion of the Administrative Claims and next on a *pro rata* basis in

8

accordance with the priorities set forth in sections 507 and 726 of the Bankruptcy Code based on the claim amounts listed in the Debtors' schedules and statements.

(c)    The Debtors shall have (i) filed any outstanding monthly operating reports, including the report for the month in which the case is to be closed and (ii) paid all quarterly fees due and owing in the chapter 11 cases to the U.S. Trustee pursuant to 28 U.S.C. § 1930, including those for the quarter in which the case is to be closed.

(d)    The Debtors shall have transferred the funds reserved in connection with the Carve Out[8] from the Funded Reserve Account, as approved and defined in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Authorizing the Use of Cash Collateral, and (IV) Modifying the Automatic Stay* [Docket No. 296] (the "Final DIP Order") to an interest-bearing escrow account maintained in trust solely for Kroll Restructuring Administration LLC ("Kroll") and the Retained Professionals[9] (the "Professional Fee Escrow Account").[10]

(e)    In accordance with paragraph 3 of the Dismissal Order, all Retained Professionals shall have filed final fee applications no later than January 12, 2024, and orders shall have been entered by the Court on each application. If any objections are filed and unresolved, the Court shall hold a hearing on the final fee applications on or around February 7, 2024, or as soon as practicable thereafter, subject to the Court's availability.  As soon as reasonably practicable thereafter, Kroll's fees and the Retained Professionals' approved fees and expenses shall have been paid from the Professional Fee Escrow Account, in each case up to the amounts set forth on Exhibit 2 to the Dismissal Order; *provided, however*, that to the extent the designated amount of any Retained Professional exceeds the aggregate amount of fees and expenses approved by the Court for such Retained Professional, such excess amount shall be available to satisfy the approved fees and expenses of Kroll and the other Retained Professionals on a *pro rata* basis.

---

[8]    On December 11, 2023, the DIP Agent filed the *Notice of Event(s) of Default under DIP Credit Facility and Carve Out Trigger Notice* [Docket No. 449], pursuant to which the Carve Out Trigger Notice was given and Post-Carve Out Trigger Notice Cap was invoked.

[9]    "Retained Professionals" means (a) Kirkland & Ellis LLP, (b) Jackson Walker LLP, (c) Centerview Partners, LLC, (d) FTI Consulting, Inc., (e) PricewaterhouseCoopers LLP, (f) Paul Hastings LLP, and (g) Alvarez & Marsal North America, LLC.

[10]    For the avoidance of doubt, such funds shall not be considered property of the Debtors' estates.

14.     Upon the Debtors' filing of the Notice of Dismissal after the completion of each condition precedent above, the following shall be deemed to occur effective immediately:

(a)     Each of the Debtors' chapter 11 cases shall be dismissed.

(b)     Without the need for further action on the part of this Court and without the need for further corporate action or action of the boards of directors or shareholders of the Debtors, except as otherwise provided in the Sale Order, each of the Debtors shall be dissolved and shall cease to exist for all purposes and shall be deemed to have been fully and finally dissolved for all purposes under applicable state law without the necessity of any further filing or actions to be taken by or on behalf of the dissolved Debtors, including the payment of any taxes or fees in order to cause such dissolution; *provided* that the Debtors are authorized to file a certificate of dissolution, cancellation, or other applicable notice as may be required in the jurisdiction of formation of each Debtor.

(c)     The existing boards of directors of each of the Debtors and each sub-committee thereof, including the Special Committee, shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, shareholders, and members, and any and all remaining officers, directors, managers, or managing members, shall be dismissed without any further action required on the part of any such Debtors, the shareholders of each Debtor, the officers and directors of each Debtor, or the members of each Debtor.

(d)     The retention of each of the Retained Professionals shall terminate, without the need for further action on the part of this Court, the Debtors, or such professionals. Upon such termination, the Retained Professionals shall have no further obligation to advise the Debtors in connection with the chapter 11 cases or future developments that may have a bearing on the chapter 11 cases.

(e)     The *Order (I) Setting the Bar Date for Filing Proofs of Claim (II) Setting the Rejection Damages Bar Date and the Amended Schedules Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Notice of Bar Dates* shall remain in full force and effect. Moreover, the Debtors' liability for claims entitled to administrative expense priority under Section 503(b)(1)-(8) shall be fixed at the amounts listed on the schedule attached to the Dismissal Order as Exhibit 1. Any person or entity that holds an administrative expense claim not listed on Exhibit 1 to the Dismissal Order shall be forever barred, estopped, and enjoined from asserting such administrative expense claim against the Debtors or the Creditor Trust.

10

(f)     Without limiting the Global Settlement Terms in any respect, each Exculpated Party[11] shall be exculpated from any Cause of Action,[12] whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, existing or hereafter arising, in law, equity, contract, tort or otherwise, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their estates, these chapter 11 cases, any restructuring transactions, the subject matter of, or the transactions or events giving rise to, any claim against or interest in the Debtors, the restructuring of any claim against, or interest in the Debtors, during the chapter 11 cases, the negotiation, formulation, preparation, or consummation of the sale of the Debtors' assets, including but limited to the sale described in the Sale Motion, any restructuring transactions, or the financing contemplated in the DIP Motion and related documents and orders, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the date on which the Debtors file the Notice of Dismissal, except for Causes of Action related to any act or omission that constitutes actual fraud, willful misconduct, or gross negligence, as determined by a final, non-appealable order of a court of competent jurisdiction.

15.     The Debtors request that notwithstanding anything in the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules") to the contrary, including, without limitation, section 349 of the Bankruptcy Code, all prior orders, findings, releases, stipulations, settlements, rulings, orders and judgments of this Court made during the course of the chapter 11 cases, including, without

---

[11]     The "Exculpated Parties" means collectively, and in each case in its capacity as such: (a) the Debtors; (b) the independent directors or managers of any Debtor; and (c) the Creditors Committee and each member of the Creditors Committee, solely in their respective capacities as such.

[12]     "Cause of Action" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws), including any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, any claim pursuant to chapter 5 of the Bankruptcy Code, and any state law fraudulent transfer claim.

11

limitation, the Final DIP Order, the *Order (I) Authorizing (A) the Sale of Debtor SDC Plane, LLC's Aircraft Free and Clear of Liens, Claims, and Encumbrances, (B) the Debtors' Entry Into and Performance Under the Purchase Agreement, and (C) the Payment of Certain Fees and Expenses in Connection Therewith and (III) Granting Related Relief* [Docket No. 150] (the "Aircraft Sale Order"), and the Sale Order, shall remain in full force and effect, shall be unaffected by the dismissal of the Debtors' chapter 11 cases, and are specifically preserved for purposes of finality of judgment and *res judicata.* For the avoidance of doubt, all assets acquired by the DIP Lenders pursuant to the Sale Order shall remain assets of the DIP Lenders in their capacity as the Purchaser (as defined in the Sale Motion) (or a subsequent transferee of the Purchaser) following entry of the Dismissal Order and shall not revest with the Debtor pursuant to section 349(b)(3) of the Bankruptcy Code.

## Basis for Relief

I.      **The Structured Dismissal Is the Most Efficient, Orderly, and Value-Maximizing Way to Resolve the Chapter 11 Cases.**

B.      **"Cause" Exists Under Section 1112(b) of the Bankruptcy Code to Dismiss the Chapter 11 Cases.**

16.      Section 1112(b)(1) of the Bankruptcy Code provides that, upon the request of a party in interest, absent the court identifying unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, a court "shall" dismiss a chapter 11 bankruptcy case (or convert such case to a case under chapter 7) "for cause."[13] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") changed

---

[13]      11 U.S.C. § 1112(b)(1).

the statutory language with respect to conversion or dismissal from permissive to mandatory.[14] The inquiry is case-specific and must focus on the facts and circumstances of the debtor.[15]

17.      Section 1112(b)(4) of the Bankruptcy Code enumerates grounds for dismissal, including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation"[16]  Some courts have interpreted "'a reasonable likelihood of rehabilitation' to refer to the debtor's ability to restore the viability of its business."[17]  Here, the marketing process demonstrated that no party is willing to continue operating this business as a going concern, and accordingly, the Debtors ceased their operations effective as of December 8, 2023.  Moreover, certain intellectual property and accounts receivable that are necessary for the going concern operation of the Debtors' business belong to non-Debtor affiliate SDC U.S. SmilePay SPV and serve as collateral under the SDC SPV Loan Facility.  The facility has been in default since December 8, 2023, and as a result thereof, the Debtors are unable to access accounts receivable to generate liquidity to continue operations.  Moreover, following consummation of the Asset Sale (as defined in the Sale Motion), the Debtors will have no operations or assets, which will have transferred to the Purchaser or the Creditor Trust, as applicable, pursuant to the Global Settlement.

18.      In addition to the non-exhaustive list of factors in section 1112(b)(4), courts may consider the "totality of the circumstances" in determining whether sufficient cause exists to

---

[14]  *See* H.R. Rep. No. 109-31(I), at 442, *as reprinted in* 2005 U.S.C.C.A.N. 88, 94; *see also In re Gateway Access Sols., Inc.*, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) (stating that the amendments to section 1112 limit the court's discretion to refuse to dismiss a chapter 11 case upon a finding of cause); *accord In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4).").

[15]  *In re TMT Procurement Corp.*, 534 B.R. 912, 917 (Bankr. S.D. Tex. 2015).

[16]  11 U.S.C. § 1112(b)(4)(A).

[17]  *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004) (citations omitted).

dismiss a chapter 11 case.[18]   Courts may find cause exists if a debtor is unable to "effectuate a plan" or where there is not a "reasonable possibility of a successful reorganization within a reasonable period of time."[19]   Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan or carry out" one, or where the core for a workable plan of reorganization does not exist.[20]   Here, given the nature and relative priorities of the remaining claims against the Debtors, the Debtors would be unable to confirm a chapter 11 plan because they cannot satisfy all Administrative Claims and other Priority Claims as required under section 1129(a)(9)(A) of the Bankruptcy Code and have no path for obtaining the consent of each claim holder to confirm a plan where such classes receive less than 100%, as has been done in other cases.   In light of the foregoing, the Debtors, the DIP Lenders, and the Creditors Committee have concluded that the Global Settlement, together with a structured dismissal requested herein, is the best available alternative to bring the chapter 11 cases to a close while providing meaningful, near-term recoveries to Administrative Claimants and preserving value for unsecured creditors.

19.     In order to effectuate such recoveries for Administrative Claimants, attached to the Dismissal Order as Exhibit 1 is a schedule of all known holders of a postpetition administrative expense claim, as well as the outstanding amount of such administrative expense claim according to the Debtors' books and records.   By this Motion, the Debtors are notifying all such holders and

---

[18]   *See In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999) (finding that the factors enumerated in section 1112(b)(4) are "not exhaustive and . . . a court may consider whether other facts and circumstances qualify as 'cause'"); *Gateway Access Sols.*, 374 B.R. at 561 ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'").

[19]   *In re Am. Capital Equip., LLC*, 688 F.3d 145, 162 n.10 (3d Cir. 2012) ("[T]he inability to effectuate a plan remains a viable basis for dismissal.") (internal quotation omitted); *see also In re Bronson*, Nos. AZ-12-1320-MkDJu, 08-00777, 2013 WL 2350791, at *8 (B.A.P. 9th Cir. May 29, 2013) ("[W]hen it becomes apparent to the court that the debtor will not be able to confirm and effectuate a plan within the foreseeable future, the bankruptcy court should . . . dismiss or convert.").

[20]   *In re Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993).

providing them with an opportunity to object and be heard if any of them disagree with the proposed amount of these administrative expense claims. The Debtors request that the Court fix the amount of the outstanding administrative expense claims in any order granting this Motion so that the proposed Creditor Trustee may be able to begin making distributions from the Creditor Trust in a timely manner.

**C.    Dismissal is in the Best Interests of Creditors and the Debtor's Estate.**

20.    Once a court determines that cause exists to dismiss a chapter 11 case, the court must also evaluate whether dismissal is in the best interests of the estate and its creditors.[21] Courts have made such a finding where a debtor has nothing to reorganize and the debtor's assets are fixed and liquidated.[22] Here, the outcome of the marketing process for a going-concern transaction demonstrates there is no viable business to reorganize. The assets are fixed, and while they are not yet liquidated, the Global Settlement provides an efficient process for the assets to be delivered to the party with a superior lien on/claim to such assets—the DIP lenders—while simultaneously providing a recovery to holders of Administrative Claims. The value of the Debtors' hard assets is not anticipated to be sufficient to repay the DIP Claims, as demonstrated by the Debtors' extensive postpetition marketing process, and recovery from potential claims and causes of action above and beyond the DIP Facility and other Sale Consideration is inherently speculative.

21.    Dismissal also better serves the estates' and creditors' interests than a conversion to chapter 7. Conversion and appointment of a chapter 7 trustee is unnecessary, would provide no

---

[21]    11 U.S.C. § 1112(b); *see, e.g., In re Superior Siding & Window*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert.").

[22]    *See In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 proceeding based, in part, on the fact that there was "simply nothing to reorganize" and no reason to continue the reorganization).

benefit to creditors, and would likely be detrimental to the estate and creditors because it would impose significant additional administrative costs and further delay distributions, if any, to the Administrative Claimants.  In contrast, the Global Settlement provides $4.0 to $7.0 million of cash to be distributed to holders of Administrative Claims and insulates those creditors from the costs of marshalling and liquidating estate assets to fund a recovery.  The Global Settlement also provides that the Purchaser shall not pursue Chapter 5 avoidance actions against any party.  By filing and serving this motion on the Debtors' full creditor matrix, the Debtors provide notice to holders of unpaid Administrative Claims of the proposed allowed amounts of such claims, and an opportunity to respond.  If the cases are converted to chapter 7, the DIP Lenders will not contribute the Sale Consideration to the Creditor Trust for the benefit of creditors, such that no Administrative Creditors or lower-priority creditors would be guaranteed *any* recovery.  As a result, creditors would likely receive materially lower recoveries (if any) in a conversion than those proposed through the Global Settlement and guaranteed distributions from the Creditor Trust.[23]

**D.**        **The Structured Dismissal is Permissible and Appropriate.**

22.        The proposed structured dismissal is permissible and appropriate.  Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy

---

[23]    Based on the foregoing, cause also exists to dismiss the chapter 11 cases pursuant to section 305(a) of the Bankruptcy Code, which provides that the "court, after notice and a hearing, may dismiss a case under this title . . . at any time if—(1) the interests of creditors and the debtor would be better served by such dismissal or suspension . . ." Whether dismissal is appropriate under this provision "rests in the sound discretion of the Court and must be made on a case-by-case basis." *In re Sky Grp. Int'l, Inc.*, 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989). Many factors are considered in this inquiry, including: (a) the economy and efficiency of administration, (b) whether federal proceedings are necessary to reach a just and equitable solution, (c) whether there is an alternative means of achieving an equitable distribution of assets, and (d) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case.  *In re AMC Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009).

Code]."[24]  The proposed distributions will strictly comply with the priority scheme established by the Bankruptcy Code, including the absolute priority rule and sections 507 and 726 of the Bankruptcy Code, in accordance with the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*[25]

## II.   The Exculpation Provision is Appropriate and Should be Approved.

23.    As part of the dismissal of their chapter 11 cases, the Debtors seek a limited exculpation of certain estate fiduciaries for their work in connection with the chapter 11 cases under section 105(a).  The Debtors submit that such limited exculpation is appropriate under the circumstances.  The Exculpated Parties worked diligently throughout the chapter 11 cases to facilitate the efficient administration of the Debtors' estates and the marketing process with the goal of achieving a value-maximizing going-concern transaction and maximizing distributable value for the estates.  Moreover, there is no suggestion of wrongdoing by any such parties and parties in interest will be provided with notice of, and an opportunity to object to, the proposed exculpation.  Such estate fiduciaries, accordingly, should be protected from potential litigation for actions taken in good faith in connection with the Debtors' chapter 11 cases under the auspices of this Court.  The proposed exculpation is subject to the Debtors' transfer of the Specified Claims to the Creditor Trust and contains a standard carve out to exclude from exculpation actions that are determined to have constituted actual fraud, willful misconduct, or gross negligence.

## III.   The Court Should Provide for Continued Binding Effect of Prior Orders.

24.    Pursuant to section 349(b) of the Bankruptcy Code, the dismissal of a chapter 11 case ordinarily vacates all orders previously entered by the bankruptcy court and restores all parties

---

[24]    11 U.S.C. § 105(a).

[25]    137 S. Ct. 973 (2017).

17

to the prepetition status quo.  Section 349 provides, however, that a bankruptcy court may "for cause, order[] otherwise . . . ."  Through this Motion and the Sale Motion, and the settlements contemplated thereby, the Debtors are actively seeking to sell or transfer their remaining assets for the benefit of their creditors, which settlements could not be effectuated if this Court's existing orders, such as the Final DIP Order, were vacated.  If the proposed settlement and the transactions that have been consummated during the chapter 11 cases, including, among other things, the sale of the Debtors' aircraft, were vacated, the Debtors' extensive efforts to maximize value for their creditors would be for naught and all stakeholders would be put in a materially worse position with no clear path to recovery.  Given the circumstances, ample cause exists to allow all prior orders, findings, releases, stipulations, rulings, and judgments entered by the Court during the chapter 11 cases to be given continued effect, notwithstanding the requested dismissal.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

25.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

### Notice

26.     The Debtors will provide notice of this Motion to all parties listed on the Debtors' creditor matrix and all claimants listed in Exhibit 1 to the Dismissal Order.

The Debtors request that the Court enter the Dismissal Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated:  December 20, 2023

/s/ *Rebecca Blake Chaikin*

| | |
|---|---|
| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Rebecca Blake Chaikin (TX Bar No. 24133055) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Genevieve M. Graham (TX Bar No. 24085340) | 601 Lexington Avenue |
| Emily Meraia (TX Bar No. 24129307) | New York, New York 10022 |
| 1401 McKinney Street, Suite 1900 | Telephone:     (212) 446-4800 |
| Houston, TX 77010 | Facsimile:     (212) 446-4900 |
| Telephone:     (713) 752-4200 | Email:          joshua.sussberg@kirkland.com |
| Facsimile:     (713) 752-4221 | |
| Email:          rchaikin@jw.com | -and- |
|                    ggraham@jw.com | |
|                    emeraia@jw.com | Spencer A. Winters (admitted *pro hac vice*) |

Co-Counsel to the Debtors
and Debtors in Possession

Spencer A. Winters (admitted *pro hac vice*)
Rachael M. Bentley (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          spencer.winters@kirkland.com
                    rachael.bentley@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on December 20, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Rebecca Blake Chaikin*
Rebeca Blake Chaikin

<u>**EXHIBIT A**</u>

**Global Settlement Term Sheet**

| Topic | Agreed Terms |
|---|---|
| **Implementation Process** | 363 sale of substantially all assets to DIP Agent for a combination of credit bid and cash, as set forth herein.  The sale shall be coupled with a structured dismissal, which order shall provide for the establishment and funding of a trust (the "Trust") to monetize certain agreed assets and make distributions to unsecured creditors in accordance with the Bankruptcy Code's priority scheme.<br><br>   -   Outside date of Jan 19, 2024 for entry of sale / dismissal orders<br>   -   Outside date of Jan 26, 2024 for sale closing.  Sale closing is a condition precedent to dismissal.<br><br>All motions, orders, deal documents reasonably acceptable to DIP Agent in its sole discretion.  The agreement forming the Trust, and all terms of motions, orders, and deal documents that adversely impact recoveries of beneficiaries of the Trust (including unsecured creditors and holders of administrative expense claims) will be reasonably acceptable to the Committee in its sole discretion. |
| **Cash Consideration** | -  The cash funded in the "carve out" pursuant to the Final DIP Order shall be an "excluded asset" as part of 363 sale.<br>     o  Upon the sale closing, the Debtors and/or, if there is insufficient available cash in the estate, the DIP Agent shall fund $650,000 in respect of the Amended Centerview Transaction Fee (described below).<br><br>-  On the dismissal date, the DIP Agent shall cause $4,000,000 to be contributed to the Trust (the "Initial Cash Funding"), to fund, along with other consideration received by the Trust, Trust expenses, other payments provided herein  and to make distributions consistent with the Bankruptcy Code's priority scheme.<br><br>-  Within 12 months of the dismissal date, the DIP Agent shall contribute to the Trust up to $3,000,000 from the proceeds of the sale of any of the following "hard assets" on a 50/50 basis:<br>     o  Retail Oral Care Inventory<br>         ▪  Teeth Whitening Products<br>         ▪  Water Flossers and Cleaning<br>         ▪  Toothbrushes<br>     o  Manufacturing Equipment<br>     o  3D Printers<br>     o  iTero Scanners |

| | |
|---|---|
| | - If within 12 months from the dismissal date, the DIP Agent shall have not yet contributed $3,000,000 of such proceeds to the Trust, it shall contribute to the Trust additional proceeds from the collection of any of the following "select assets" on a 50/50 basis until it reaches that $3,000,000 amount or such assets are fully monetized:<br><br>    ○ Cash reserves in respect of company credit cards.  The Debtors estimate, as of the date hereof, such current amount to be approximately $7,300,000;<br><br>    ○ Cash collateral securing the Australian letter of credit.  The Debtors estimate, as of the date hereof, such current amount to be approximately $538,000;<br><br>    ○ Cash collateral securing the Surety Bond as referenced in Exhibit 2 of the Debtors' Insurance Motion (Dkt 10) - PB11740200404 Philadelphia Indemnity Insurance Co. (120).  The Debtors estimate, as of the date hereof, such current amount to be approximately $500,000; and<br><br>    ○ Note receivable due to the Debtors from the dentist who, in 2021, entered into a 25-year term loan agreement in the face amount of $1,990,000.00 with SmileDirectClub, LLC to facilitate the prospective partner's purchase of real property for a dental practice.<br><br>With respect to the assets listed above, the DIP Agent may conduct any sales or liquidations of such assets in its sole discretion; *provided* that it shall not do so in bad faith relative to the up to $3,000,000 of funding obligations set forth herein; *provided*, *further*, that any such sales to affiliates of the DIP Lenders or the Purchaser shall be subject to five business days' prior written notice to the Trustee (as defined herein).<br><br>Notwithstanding anything to the contrary herein, the cash contributions to the Trust shall in no event exceed $4,000,000 **plus** up to $3,000,000, in each case as and to the extent set forth herein. |
| **Estate Claims & Causes of Action** | The DIP Agent shall acquire all estate claims and causes of action as part of the sale, except that:<br><br>- D&O fiduciary duty claims, if any, limited solely to the extent of available D&O insurance,[1] against (i) David Katzman, (ii) Troy Crawford, (iii) Kyle Wailes, and (iv) Dr. Jeff Sulitzer shall be contributed to the Trust--for the avoidance of doubt, none of (i) – (iv) shall have any personal liability whatsoever in relation to such claims (nor shall any of their respective personal assets be available to satisfy any such claims) and the Trust's only source of recovery on account of such claims shall be available D&O insurance;  and |

---

[1] The Debtors estimate that, as of the date hereof, the current amount of such available insurance is approximately $24 million.

| | |
|---|---|
| | - Chapter 5 avoidance actions shall not be pursued.<br><br>Without limiting the foregoing consideration in any respect, the sale and/or dismissal order(s) shall provide for customary debtor releases and exculpations for the benefit of the Debtors, the Committee and its members, the DIP Agent, the DIP Lenders, the Prepetition Lender, and each of their respective "Related Parties" to the fullest extent permitted by applicable law. |
| **Amended Centerview Transaction Fee** | $650,000 due and payable upon the closing of the sale described herein.  Centerview shall continue to be paid the "monthly fee" from the carve out pending the sale closing.  Monthly fees shall not be credited against the $650,000.  To be clear, this shall not be paid from the Initial Cash Funding (or any subsequent funding or recovery by the Trust). |
| **Other Matters regarding the Trust** | 1. The trustee of the Trust (the "Trustee") will be chosen by the Committee in consultation with the special committee of the Debtors; *provided*, that the Trustee shall be a competent restructuring professional with relevant experience administering trusts of this nature.<br>2. Notwithstanding anything to the contrary herein, the Trust Agreement shall be acceptable to the Committee in its sole discretion.<br>3. $100,000 will be reserved from the Initial Cash Funding for fees and expenses of the Trustee.<br>4. The Trustee shall be responsible for making all distributions from the Trust to holders of unsecured claims, administrative claims and any fees and expenses in respect thereof (including the reasonable and documented fees and expenses of the Indenture Trustee) upon and after the dismissal date.<br>5. From and following the sale closing, the Purchaser shall provide for the retention of the Debtors' books and records.  Until the earlier of (a) the termination of the Trust, or (b) such time the Trustee notifies the Purchaser in writing that such records are no longer required to be preserved, the Purchaser shall preserve and maintain all of their documents and electronic data related to any claims and causes of action transferred to the Trust, and shall not destroy or otherwise abandon any such documents and records (whether in electronic or paper form) without the express written consent, not to be unreasonably withheld, of the Trustee; *provided*, that the Trust shall be economically responsible for the preservation of any books and records that the Purchaser seeks to destroy or otherwise abandon where the Trustee does not so consent.  Upon reasonable request and at the sole expense of the Trustee, the Purchaser shall provide the Trustee with any books, records, and files that were in the Debtors' possession, custody or control and are related to the claims and causes of action transferred to the Trust.<br>6. With respect to any causes of action that are transferred to the Trust, the Trustee shall stand in the same position as the Debtors with respect to any claim the Debtors may have to an attorney-client privilege, the work-product doctrine or any other privilege in relation to such causes of action, and the Trustee shall succeed to all of the Debtors' rights to preserve, assert |

or waive any such privilege in relation to such causes of action; *provided*, *however*, that the foregoing shall not (a) apply to any attorney-client privilege, the work-product doctrine or any other privilege arising on or after September 7, 2023 in relation to the restructuring or the chapter 11 cases or (b) override the provisions any engagement or retention letters with any of the Debtors' professionals retained under section 327 of the Bankruptcy Code.

7.     None of the DIP Agent, the DIP lenders, or the founders shall receive any payments or distributions from the Trust.