UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ADAM FRANCHI, Individually and on Behalf of All Others Similarly Situated, ) | Civil Action No. 3:19-cv-00962 **(Consolidated)** |
| Plaintiff, ) | CLASS ACTION |
| vs. ) | Judge Eli J. Richardson |
| | Magistrate Judge Jeffery S. Frensley |
| SMILEDIRECTCLUB, INC., et al., ) | |
| Defendants. ) | SUPPLEMENTAL JOINT DISCOVERY DISPUTE STATEMENT |

Pursuant to the Court's February 26, 2025 Order (ECF 190) granting Plaintiffs' Motion to Ascertain Status of Pending Request for a Discovery Conference (ECF 186), the parties submit this Supplemental Joint Discovery Dispute Statement.[1]

## I. Plaintiffs' Position

### A. The Status of the Dispute Since the Parties Filed the Request for Discovery Conference

The parties filed their Request for Discovery Conference on September 9, 2024. ECF 184 (the "Request"). Since that time, there have been a number of developments and substantial briefing regarding the questions at issue in the Request.

First, in the Request, Defendants[2] requested that "the Court issue a briefing schedule so that these novel issues can be resolved on a more complete record and with the opinion of the

---

[1]  "Plaintiffs" are 1199SEIU Health Care Employees Pension Fund and Bucks County Employees Retirement System.

[2] "Defendants" are David Katzman, Kyle Wailes, Steven Katzman, Susan Greenspon Rammelt, Richard Schnall, Alexander Fenkell, Jordan Katzman, and Camelot Venture Group.

- 1 -

Bankruptcy Court." ECF 184 at 4. In light of Defendants' position, Plaintiffs sought the opinion of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") in the Chapter 7 bankruptcy proceedings captioned *In re SmileDirectClub, Inc., et al.*, No. 4:23-90786 (CML) (Bankr. S.D. Tex.) (the "Bankruptcy Case" or "*SDC Bankruptcy*") by filing an Emergency Motion for Order Confirming Chapter 7 Trustee is Authorized and Empowered to Waive the Debtors' Attorney/Client Privileges. *See id.*, ECF 920 ("the Emergency Motion").[3] Following substantial briefing[4] the Bankruptcy Court held a hearing and declined to rule on Plaintiffs' Emergency Motion. *See* Declaration of Christopher M. Wood in Support of Plaintiffs' Position in Supplemental Joint Discovery Dispute Statement, Ex. A at 38-39.

Second, in connection with Plaintiffs' Emergency Motion, the Individual Defendants served abusive and improper discovery on counsel for Plaintiffs, as well as several other non-parties, purportedly seeking information relevant to the Emergency Motion.[5] On December 6, 2024, counsel for Plaintiffs filed a Motion to Quash Subpoena, or in the Alternative, Motion for Protective Order in the Middle District of Tennessee in the proceeding captioned *In re Subpoena to Robbins Geller Rudman & Dowd LLP*, No. 3:24-mc-00017 (M.D. Tenn.) ("*In re RGRD*"). *See id.*, ECF 1 (the "Motion to Quash"). The Motion to Quash was granted (*id.*, ECF 8), following which the Individual Defendants filed a motion for reconsideration (*id.*, ECF 11), which is currently pending before Judge Newbern. Briefing on the Motion to Quash as well as the Individual Defendants' motion for

---

[3] The Chapter 7 trustee (the "Trustee") was appointed to control SmileDirectClub, Inc.'s ("SDC") liquidation.

[4] *E.g.*, *id.*, ECF 920, 961, 962.

[5] The "Individual Defendants" refers collectively to defendants David Katzman, Kyle Wailes, Steven Katzman, Richard Schnall, Susan Greenspon Rammelt, and Camelot Venture Group.

- 2 -

reconsideration and Plaintiffs' response, contains significant background and arguments relevant to the matters at issue here. *Id.*, ECF 1-3, 11-12, 16-17.

Finally, in the Bankruptcy Case, the Individual Defendants and/or the DIP agent[6] made several relevant arguments in their briefing opposing the Trustee's application to retain Orrick, Herrington & Sutcliffe LLP to prosecute claims against the Individual Defendants on behalf of SDC's estate. Specifically, they argued that: (i) the Trustee improperly gained access to SDC's pre-bankruptcy documents hosted by Consilio, LLC (the "Documents"); (ii) the Trustee improperly allowed Plaintiffs access to the Documents; and (iii) the scope of the Trustee's privilege waiver did not extend to certain unidentified documents. *E.g.*, *SDC Bankruptcy*, ECF 972, ¶¶2, 23-30; *id*. ECF 976, ¶¶9-22, 32, 45-55. The Individual Defendants' contentions were at least implicitly rejected by the Bankruptcy Court, which approved Orrick's retention over the Individual Defendants' strenuous objections. *Id.*, ECF 1019.

In short, while much ink has been spilled on this topic in multiple jurisdictions, no Court has concluded that the Trustee's privilege waiver was improper, nor that the Trustee lacked the ability to provide Plaintiffs access to the Documents.

### B.       Plaintiffs' Access to the Documents

Plaintiffs had limited access to a portion of the Documents at the end of July 2024. Wood Decl., Ex. B, ¶6.

However, the vast majority of the Documents have not been reviewed by Plaintiffs. Rather, shortly after receiving access to the Documents, Plaintiffs agreed with the Individual Defendants that Plaintiffs would not continue to review the Documents, but would instead present this dispute to the

---

[6]   The "DIP Agent" refers to Cluster Holdco LLC, in its capacity as administrative agent and collateral agent for the Debtors' DIP facility.

4912-9583-3384.v1

Court for resolution.  *See* ECF 184 at 3.  Plaintiffs have not reviewed or otherwise accessed the Documents since such time.

### C. Current Status of the Database

Plaintiffs received a copy of the database on a physical media from the Trustee in October 2024.  Wood Decl., Ex. B, ¶8.  Plaintiffs have not accessed that physical media to date, but could access the data promptly by loading the database onto a review platform.

Plaintiffs understand that at least the Individual Defendants have had access to the database since its creation several years ago, and continue to have access to the database today.[7]

Plaintiffs do not believe that the data is in any danger of becoming unavailable.

### D. The Existence and Viability of Privileges or Other Protections Over the Documents

The Individual Defendants have repeatedly claimed that the database contains privileged documents.  However, in the *eight months* since being made aware that both Plaintiffs and the Trustee had access to the Documents, the Individual Defendants never once identified a single privileged document, nor sought to claw-back a single document, despite having had access to the database the entire time.  As explained below, the Individual Defendants have failed to establish that the Documents are subject to any privilege because the Documents, and any associated privilege, belong to SDC, and any such privileges that might once have existed has been waived by the Trustee.[8]

Preliminarily, the Documents are books and records of SDC, *not* the Individual Defendants. The book and records were hosted by Consilio pursuant to a contract entered into by SDC, not the

---

[7]  Plaintiffs understand that the Individual Defendants lost access to the database for several months following SDC's bankruptcy filing, but were somehow able to regain access to the database toward the beginning of 2024 despite the fact that the database did not belong to them.

[8]  Unless otherwise noted, all emphasis is added and citations are omitted.

- 4 -

Individual Defendants (or their counsel).  *See generally* Wood Decl., Ex. C.[9]  Moreover, SDC's former General Counsel, Susan Greenspon Rammelt, admitted to the Trustee that the Documents belong to SDC.  *See SDC Bankruptcy*, ECF 976 at 22 ("A.: My position would be that all of the documents within Consilio are the debtors' records. . . .  Q.: How do you know that it's the debtors' account?  A.: That's what was represented to me by Susan Rammelt when I took over the case.") (quoting the deposition transcript of SDC's Trustee Allison D. Byman).

Because the Documents are SDC's book and records, the Individual Defendants do not have any privilege claims to assert, and even if they once did, such claims have been waived.

First, as employees of SDC, the Individual Defendants had no reasonable expectation of privacy, and thus no privilege rights, as to the Documents.  *See In re Royce Homes, LP*, 449 B.R. 709, 724 (Bankr. S.D. Tex. 2011) ("the party invoking the attorney-client privilege must have had a reasonable expectation of confidentiality or privacy").  SDC's data policy, consistent with many company policies, explicitly stated that "[u]sers should be aware that the data they create on the corporate systems ***remains the property of SmileDirectClub*** and that they should have ***no expectation of privacy*** with respect to any activity on such system and all such activity is subject to monitoring."  Wood Decl., Ex. D at 37 of 41.[10]

The "particular language of a company's policy regarding the treatment of e-mail and other electronically stored information on company computers is 'critically important in determining whether an employee has a reasonable expectation of privacy in such materials.'"  *United States ex rel. Ray v. GSD&M Idea City LLC*, 2012 WL 12925016, at *4 (N.D. Tex. May 15, 2012) (citing *In re Rsrv. Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 164 (S.D.N.Y. 2011)).  When, as here, a

---

[9]  Consilio purchased Legility, LLC in 2021 and assumed Legility's obligations under the contract.

[10]  The 2019 version of SDC's Team Member Handbook produced in this action (SDC_CSL_0007668) contains identical language.

4912-9583-3384.v1

company policy "warns employees that their email communications will be automatically saved and are subject to review [by the company]," it weighs heavily in favor of finding that employees waived privilege as to all materials on their employer's systems. *Id.*; *see also Royce Homes*, 449 B.R. at 740 ("[T]hird parties undeniably had access to [an employee's] emails by virtue of their mere placement on the [company's] server . . . [where the company] could monitor [the employee's] e-mails at any time."). In other words, the Documents were never privileged as to the Individual Defendants to begin with.

Second, to the extent SDC had any privilege claims with respect to the Documents, such claims were expressly waived by the Trustee prior to the time the Trustee provided Plaintiffs with access to the Documents.

When a corporate entity commences a Chapter 7 case, or a Chapter 11 case is converted to a Chapter 7 case such as happened here, it is "the trustee of a corporation in bankruptcy [that] has the power to waive the corporation's attorney-client privilege." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 358 (1985). The *Weintraub* court reasoned that control of a corporation's attorney/client privilege in bankruptcy belongs to the party having the most analogous duties to the solvent's corporation's officers and directors. *See id.* at 351; *see also e.g.*, *In re Hechinger Inv. Co. of Del.*, 285 B.R. 601, 611 (Bankr. D. Del. 2002) ("*Weintraub* stands for the proposition that the power to exercise the attorney-client privilege in bankruptcy proceedings passes to the bankruptcy trustee."); *United States v. Campbell*, 73 F.3d 44, 47 (5th Cir. 1996) ("we conclude that the district court did not err in holding that Cage, as the bankruptcy trustee of the debtor-Partnership, had the authority to waive the attorney-client privilege on behalf of the Partnership").

- 6 -

Thus, in early June of 2024, to resolve certain discovery issues and avoid any costly litigation with respect to the Documents,[11] the Trustee waived all potentially applicable attorney/client privileges with respect to the Documents. Wood Decl., Ex. D, ¶¶12-15. This includes any privilege SDC might once have shared with the Individual Defendants, which was waived when the parties become adverse, as happened here. *See Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 213 B.R. 433, 439 (Bankr. S.D.N.Y. 1997) (concluding that any joint privilege was waived when trustee began investigating claims).

Even if any applicable privilege had not been waived by the Trustee, the Individual Defendants would bear the burden of establishing this purported privilege. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) ("The burden of establishing the existence of the privilege rests with the person asserting it."). However, in the almost nine months since they were informed of the Trustee's waiver, and despite their own access to the Documents, the Individual Defendants never ***identified or clawed back a single document subject to any privilege***.

This failure independently establishes waiver as it is "'behavior by [the Individual Defendants] . . . that is inconsistent with the continued maintenance of that privilege.'" *LifeBio, Inc.*

---

[11] The unresolved discovery disputes concerned thousands of relevant documents. SDC produced privilege logs that spanned 77,000 entries, many of which lack any valid legal basis for withholding the information. For example, in violation of the parties' Stipulated Protective Order (ECF 131), SDC meticulously redacted the names and identifiers of the dentists who purportedly provided treatment to SDC's customers, impeding Plaintiffs' efforts to contact or depose these crucial individuals. This deficiency alone impacted at least 2,189 documents. SDC separately redacted or withheld at least 1,081 documents on the basis that they contained "Protected Content," which is not a privilege recognized in any jurisdiction. SDC withheld thousands of more documents where privilege was either waived or never established, including 9,751 documents that included third-parties; 3,041 documents where no attorneys appeared to be present; and 231 documents where SDC failed to provide any basis for their redactions whatsoever. Wood Decl., Ex. E. In other instances, SDC appears to have withheld highly relevant documents without recording them on a privilege log at all. Plaintiffs have obtained several documents from third parties that originated from SDC and hit upon the parties' agreed-upon search terms and custodians, but were not produced. Many of these documents were used in depositions in other cases, which demonstrates that SDC knew about them but simply decided not to produce them. Wood Decl., Ex. F.

4912-9583-3384.v1

*v. Eva Garland Consulting, LLC*, 672 F. Supp. 3d 512, 517 (S.D. Ohio 2023); *see also In re Grand Jury (Impounded)*, 138 F.3d 978, 982 (3d Cir. 1998) ("While we cannot set an exact time within which such a motion must be made, we hold that the district court did not abuse its discretion in holding that Capano waived the privilege as we are satisfied that Capano acted unreasonably in waiting nearly four months to seek a judicial vindication of his assertion of the privilege."); *United States v. de la Jara*, 973 F.2d 746, 749-50 (9th Cir. 1992) (finding that the defendant's failure to act within six months of a letter's seizure by the government waived attorney-client privilege).

While the Individual Defendants have made conclusory assertions concerning the alleged existence of privileged documents, case law is clear that "[b]lanket assertions of protection under either the attorney-client privilege or work product protection are ineffective to preserve these protection." *Pravak v. Meyer Eye Grp., PLC*, 2009 WL 10664851, at \*5 (W.D. Tenn. Oct. 22, 2009); *see also Shields v. UNUM Provident Corp.*, 2007 WL 764298, at \*8 (S.D. Ohio Mar. 9, 2007) (same). This is because "[s]uch assertions disable the court and the adversary party from testing the merits of the claim of privilege." *Wyndham Vacation Ownership, Inc. v. Vacation Transfers Unlimited, LLC*, 2020 WL 134132, at \*3 (M.D. Tenn. Jan. 10, 2020); *see also In re Grand Jury Proceedings, John Doe (Arnold Weiner, Doe's Att'y)*, 754 F.2d 154, 155 (6th Cir. 1985) (stating the "propriety of non-disclosure . . . could be determined only on the basis of particularized determinations"); *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002) ("Blanket assertions are 'extremely disfavored'" and "[a] party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted.").

In short, there is no basis to contend, and the Individual Defendants have failed to establish, that the Documents are protected by any applicable privilege that has not be waived.

4912-9583-3384.v1

There is no legitimate basis for the Individual Defendants to claim that Plaintiffs should continue to delay their review of the Documents. The Documents include discovery highly relevant to the claims and defenses in this case. For example, the Documents include previously withheld documents as to which the Trustee indisputably waived SDC's privilege, and must be produced. *See SDC Bankruptcy*, ECF 961, ¶3 ("The parties acknowledge that the Trustee had the right to waive all privileges held by the Debtors and, in fact, waived such privileges."). Furthermore, at the time of SDC's bankruptcy, SDC had failed to fully comply with its discovery obligations – a deficiency which is remedied by the Trustee's production. *See In re RGRD*, ECF 16 at 3-5.

In the eight months since the Individual Defendants were apprised of the Trustee's action, they took no steps to either establish any valid privilege claims, nor suggest an alternative mechanism by which discovery should be completed.

Plaintiffs should complete their review of the Documents. While any potential privilege claims have been waived, the Stipulated Protective Order (ECF 131) nevertheless provides more than adequate mechanisms to allow for the protection of confidential information, personally identifiable information, protected health information, trade secrets, as well as the claw back of privileged information if a privilege is ever substantiated with respect to a specific document. *Id*. at 14.

## II. INDIVIDUAL DEFENDANTS' POSITION

Months after secretly obtaining a copy of the Individual Defendants' litigation database, including every privileged, non-responsive, and unreviewed document collected, Plaintiffs ask this Court for absolution for their actions. The Court should not ratify Plaintiffs' conduct. Shortly after a Trustee was appointed to manage SDC's estate, Plaintiffs persuaded the Trustee to grant them access

to that database and its more than 2.2 million documents – including jointly privileged communications about *this* case and its state parallel and jointly privileged communications with third parties. Plaintiffs did so without abiding by the Protective Order in this case, following the Local Rules for discovery disputes, seeking guidance from the Court, or even telling the Individual Defendants. These extraordinary circumstances raise difficult questions of privilege and litigation fair play.

But the propriety of the Trustee's waiver of SDC's corporate privilege alone does not and cannot resolve those questions. The Trustee freely admitted that she could not – and expressly did not – waive any joint privileges, including privileged communications about this case. [*See* Ex. 1 ("M. Silverstein S.D.N.Y. Decl."), Ex. 7 at 1 (7/12/2024 A. Power E-mail).][12] Furthermore, Judge Lopez, the presiding bankruptcy judge, refused Plaintiffs' attempt to get his blessing that the Trustee by virtue of her role has the authority to grant unfettered access to (a) documents belonging exclusively to third parties like Defendant Camelot Venture Group, or (b) a database created as part of a joint representation. Moreover, the Individual Defendants relied on the joint representation and privilege with their co-defendant SDC for years in this litigation. Plaintiffs cannot invade the Individual Defendants' privileges simply because Plaintiffs convinced one member of the joint representation to walk away from the privilege to avoid spending money on a dispute about its scope without the rest of the group's knowledge or consent.

Plaintiffs seek an unjust tactical advantage in this case, and this Court should not tolerate it. To the extent that Plaintiffs are not immediately ordered to surrender access and to refrain from using any document or information obtained from the database, Plaintiffs' request should be considered only with the benefit of full briefing and oral argument.

---

[12] All exhibits cited in the Individual Defendants' Position are attached to the Declaration of Michael Silverstein in Support of the Individual Defendants' Position.

4912-9583-3384.v1

### A. Abbreviated Factual Background

At all relevant times, SDC and the Individual Defendants presented a joint and common defense in this case. SDC engaged an e-discovery vendor, Consilio, LLC ("Consilio"), to provide data-hosting and other services for this and other cases. [*See id.*, ¶¶5-6.] At the direction of counsel, Consilio collected approximately 1.8 million documents from SDC and Camelot Venture Group. [*Id.*, ¶¶7-8; *see* 3/14/2025 M. Silverstein Decl., ¶3.] Approximately 1 million of those were reviewed, and SDC and the Individual Defendants' joint counsel prepared privilege logs for those responsive documents covered by a privilege. [*Id.*, ¶5.] The privilege logs and document productions made by joint counsel from the common pool of documents were made on behalf of SDC and the Individual Defendants. Approximately 770,000 documents in the database were not reviewed (because they did not hit on targeted search terms). [*Id.*, ¶3.] The last substantial production occurred in August 2023.

On September 29, 2023, SDC filed a Chapter 11 bankruptcy petition. [ECF #157-1.] On January 26, 2024, SDC's bankruptcy was converted from a reorganization to a liquidation. [*See* Order Denying Debtors' Mots., Bcy. Doc. 617.][13] The Bankruptcy Court then appointed a successor trustee (the "Trustee"). (*See* 1/26/24 Minute Entry Not. of Appointment of Successor Trustee, Bcy. Doc.).

In March 2024, Plaintiffs contacted the Trustee with a purported "discovery dispute" regarding Individual Defendants' joint pre-petition productions. [Ex. 2 (Byman Decl.), ¶12.]

Instead of seeking relief from this Court, on May 15, 2024, Plaintiffs surreptitiously asked the Trustee to waive privilege for specific documents in advance of a deposition. [Ex. 3 at 3-4 (5/15/2024 C. Wood E-mail).] Plaintiffs did not contact the Individual Defendants' counsel. On

---

[13] "Bcy. Doc." refers to the ECF docket in *In re SmileDirectClub, Inc.*, Bankr. Pet. No. 23-90786, Bankr. S.D. Tex.

4912-9583-3384.v1

June 11, 2024, Plaintiffs requested that the Trustee waive privilege for *more* documents in advance of a different deposition. [M. Silverstein S.D.N.Y. Decl., Ex. 2 at 2 (6/11/2024 C. Wood E-Mail).] Though the Individual Defendants objected to this request, the Trustee stated that she "does not and will not instruct Dr. Ackerman [or the witness in the second deposition] to refrain from answering any question on the ground[s] of" privilege. [*See id.*, Ex. 2 at 1 (6/11/2024 A. Fiorella e-mail); *id.*, Ex. 3 at 1 (6/14/2024 N. Poli E-mail).]

The Individual Defendants did not learn until December 5, 2024, that Plaintiffs' counsel approached the Trustee nine months earlier to gain full access to the database. It was not until that date – when the Trustee produced emails with Plaintiffs' counsel dating back to March 2024 – that the Individual Defendants learned that opposing counsel had secretly approached the Trustee to resolve supposed discovery disputes regarding jointly produced and jointly privileged documents.

By the time the Individual Defendants learned this, the Trustee had already given Plaintiffs a complete copy of the jointly-created database – privileged documents included. Plaintiffs first obtained access to Individual Defendants' documents on July 31, 2024. [Ex. 4 ("McKenna Decl."), ¶6).] On October 24, 2024, Plaintiffs received a "stand-alone" copy of a purported "Clean Database." [*Id.*, ¶8.] As far as the Individual Defendants can determine, the "Clean Database" is a complete copy of all 2.2 million documents, including privileged and unreviewed documents – just stripped of litigation counsel's notes on the documents they reviewed in the database.

### B. The Individual Defendants' Responses To The Court's Three Topics

#### 1. First Topic: "The extent to which Plaintiffs have or had access to the disputed documents up to this point."

From as early as July 31, 2024, and no later than October 24, 2024, Plaintiffs have had apparently complete and unrestricted access to all of the documents in the database. [McKenna Decl., ¶¶6, 8.]

- 12 -

The Consilio Database is available to the Individual Defendants, who have paid Consilio for its services and access since March 2024. [M. Silverstein S.D.N.Y. Decl., ¶15.] Individual Defendants do not believe that the data hosted by Consilio is in any danger of being lost. Beyond what the Trustee reluctantly disclosed before the Bankruptcy Court, however, the Individual Defendants have no information about Plaintiffs' access to those documents either before or after the "Clean Database" was created. The Individual Defendants have sought this information, but Plaintiffs' counsel has stonewalled and refused to respond to duly issued subpoenas.

### 3. Topic Three: "[T]he existence and viability of privileges or other protections over the disputed documents."

The facts of this dispute are unusual, perhaps unique, and do not lend themselves to simple resolutions. Although "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications," *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 358 (1985), she may not waive joint privileges, common-interest privileges, or privileges belonging to entities other than the debtors, *see In re Teleglobe Comms. Corp.*, 493 F.3d 345, 363, 366 (3rd Cir. 2007).

### a. The Trustee May Not Resolve "Discovery Disputes" Without the Individual Defendants

As an initial matter, Plaintiffs failed to resolve their alleged discovery dispute with the producing parties. Discovery disputes must be resolved between the requesting parties and the producing parties. *See* L.R. 37.01(a) (requiring "counsel for the *parties*" meet and confer to resolve discovery disputes) (emphasis added). Because the productions, privilege logs, and database itself were made for both SDC and the Individual Defendants, the Trustee could not unilaterally resolve

- 13 -

the discovery dispute with Plaintiffs. Plaintiffs and the Trustee needed permission from the remaining producing parties – permission they never requested and would have been denied.

### b.    The Trustee May Not Unilaterally Waive All Privileges

**The Trustee could not waive documents that are solely privileged as to the Individual Defendants.** Only the holder of attorney/client privilege and work-product protections can waive the privileges. *See Culbertson v. Culbertson*, 393 S.W.3d 678, 684 (Tenn. Ct. App. 2012). Here, the database contains documents that are solely privileged as to the Individual Defendants, so the Trustee had no authority to give access to those documents absent a waiver from the Individual Defendants, the holders of those privileges. The Individual Defendants have not waived, so Plaintiffs' unfettered access is improper.

Plaintiffs have argued that Individual Defendants have not identified any documents that are privileged only as to the Individual Defendants. This is backwards; Plaintiffs cannot take all of the Individual Defendants' documents, and then ask the Individual Defendants to figure out which are privileged after the fact. In any event, Plaintiffs did obtain documents that are privileged only as to the Individual Defendants, and the Individual Defendants can provide a selection of those documents to the Court for *in camera* review at the Court's request. Plaintiffs should not be surprised that such documents exist. The Database not only contains documents from SDC's servers, but also from Camelot Venture Group's servers. Necessarily, the database contains documents that are privileged only as to Camelot Venture Group. SDC never held any privilege over such documents, so the Trustee could not waive privilege over them.

Insofar as Plaintiffs suggest that those (or any other) privileges were waived merely by placing documents on SDC's servers, they are wrong. When considering that question, courts weigh four factors to determine whether the employee, officer, or director had a reasonable expectation of privacy. *See, e.g.*, *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 256–57 (S.D.N.Y. 2005) ("(1)

- 14 -

does the corporation maintain a policy banning personal . . . use, (2) does the company monitor the . . . computer or e-mail, (3) do third parties have a right of access . . . , and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?"); *Ala. Air. Indus., Inc. v. Boeing Co.*, No.: 2:16-mc-01216-RDP, 2:11-cv- 03577-RDP, 2016 WL 7745029, at *9 (N.D. Ala. Dec. 2, 2016), *r&r adopted*, 2017 WL 134764 (Jan. 13, 2017) (holding that expectation of confidentiality was reasonable when there was no evidence the third party monitored documents and the parties' relationship was "uniquely intertwined"); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK-PSG, 2013 WL 772668, at *5-7 (N.D. Cal. Feb. 28, 2013) (same). The Individual Defendants did not waive privilege under this test.

**The Trustee could not waive joint privileges.** The Trustee herself admitted that she cannot waive any privilege held by the Individual Defendants. [*See* M. Silverstein S.D.N.Y. Decl., Ex. 7 at 1 (7/12/2024 A. Power E-mail).] And with good reason. When a party has a joint or common-interest with a third party, sending documents to that third party does not waive privilege. *See In re Teleglobe Comms. Corp.*, 493 F.3d at 363–64 (recognizing joint-client and common-interest privileges); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 213–15 (Tenn. Ct. App. 2002). Both varieties of joint privilege allow the members to share privileged information with each other without fear of waiver. *See id.*; *In re Teleglobe Comms. Corp.*, 493 F.3d at 362–64. Both varieties of joint privilege also prohibit one party from unilaterally waiving the privilege. *Id.* at 363, 366; *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 248 (4th Cir. 1990) (cited in *Boyd*). Instead, joint privileges cannot be waived without agreement from each party to the privilege. *Id.*; *In re Teleglobe Comms., Corp.*, 493 F.3d at 363.

Here, documents within the database are protected by both joint-client and common-interest privileges. These joint privilege relationships exist between (1) SDC and Individual Defendants, and

- 15 -

(2) SDC, Individual Defendants, and other parties – including the Underwriter Defendants.  The Trustee could not unilaterally waive privilege in either scenario.

***The Trustee cannot waive privileges SDC shares with the Individual Defendants***. The existence of joint privileges between SDC and Individual Defendants cannot be seriously denied. The lowest-hanging fruit are joint-client privilege documents.  The database contains privileged documents relating to cases where SDC and the Individual Defendants shared counsel.  Such cases include, but are not limited to: (1) the putative class action brought against SDC and many of the Individual Defendants by SDC customers and orthodontists, *see Ciccio et al v. SmileDirectClub, LLC et al*, No. 3:19-cv-845 (M.D. Tenn.), (2) a 2015 lawsuit filed by Align Technology, Inc. against SmileCareClub, LLC (SDC's previous name) and Camelot entities, *see Align Technology, Inc.* v. *SmileCareClub, LLC, et al*, No. 5:15-cv-4864 (N.D. Ca.), and (3) this case and the related state securities action.  The Trustee could not waive the attorney/client privilege as to these joint-client documents because "waiving the joint-client privilege requires the consent of all joint clients." *In re Teleglobe Comms. Corp.*, 493 F.3d at 363.

SDC and the Individual Defendants also have a common-interest privilege in documents in the database.  The proponent of the common-interest privilege must show:

> (1) that the otherwise privileged information was disclosed due to actual or anticipated litigation, (2) that the disclosure was made for the purpose of furthering a common interest in the actual or anticipated litigation, (3) that the disclosure was made in a manner not inconsistent with maintaining its confidentiality against adverse parties, and (4) that the person disclosing the information has not otherwise waived the attorney-client privilege for the disclosed information.

*Boyd*, 88 S.W.3d at 214-15.  This privilege covers many documents in the Database.  For example, in the lead-up to SDC's Initial Public Offering, SDC and Individual Defendants sought advice about the IPO process and their legal obligations and risks.

- 16 -

Plaintiffs fundamentally misread the case law by asserting that because the Trustee is now seeking to sue the Individual Defendants, that adversity waives their joint privileges. Adversity between former joint clients or members of a common-interest privilege waives privileges they can assert against each other, but not as to third parties. *See In re Teleglobe Comms. Corp.*, 493 F.3d at 366. The whole point of joint privilege is to promote confidential communications without fear of disclosure, but adversity-waiver would make the protection "superfluous." *See In re Crescent Resources, LLC*, 457 B.R. 506, 529–30 (W.D. Tex. 2011). Courts, accordingly, reject attempts to use adversity as a blanket waiver. *See id.*; *In re Equaphor Inc.*, No. 10-20490-BFK, 2012 WL 1682583, at *6 (Bankr. E.D. Va. May 14, 2012). Thus, even though the Trustee may use those documents against the Individual Defendants in any litigation she brings, she was not authorized to disclose those documents to Plaintiffs' counsel here. The joint privileges against disclosure remain intact as to Plaintiffs' counsel and their clients.

***The Trustee cannot waive joint privileges that she and the Individual Defendants share with other parties.*** Plaintiffs' unfettered access to the database endangers not only Individual Defendants' privileges, but other parties' privileges as well. Plaintiffs well know that other parties' privileges are at stake. When Plaintiffs told the Trustee that they believed there were inappropriate privilege assertions, they attached a spreadsheet of particular documents they identified. [*See* Ex. 5 (joint-defense portion of spreadsheet sent by Plaintiffs).] Among those documents were 131 entries asserting common-interest or joint-defense privileges. These entries implicate the privileges of other parties, including, but not limited to, (1) Underwriter Defendants, (2) Dr. Jeffrey Sulitzer, (3) CVS, and (4) dentists who worked with SDC. The Trustee could not unilaterally waive these third parties' privileges.

- 17 -

### c. Reviewing 1.5 million Documents For Privilege Is Not Feasible.

Even if the Court believes that Plaintiffs properly obtained access to the Individual Defendants' database – despite not getting permission from the Individual Defendants – the Court should still bar Plaintiffs from accessing and reviewing these documents. Plaintiffs already have 1,722,586 pages of responsive documents produced by SDC and the Individual Defendants. It is simply unrealistic to inject millions of new documents into this case at this late stage – particularly given that many of them did not even hit on search terms to begin with, and thus are almost certainly irrelevant to this case.

It also would impose an incredible and undue burden on the Individual Defendants to give Plaintiffs access to these documents. Out of the 2.2 million documents in the database, only 421,647 documents are copies of produced documents. [3/14/2024 M. Silverstein Decl., ¶2.] The Individual Defendants would need to review all documents that were not previously reviewed, were marked unresponsive and not reviewed for privilege, and all of the documents on the privilege log, and then "claw back" all privileged documents identified following the review before Plaintiffs could access the database. In other words, the Individual Defendants would have to review approximately 1.5 million documents. [*Id.*, ¶¶3-7.] The Individual Defendants estimate that this exercise would take 30,000 hours of attorney review time, and easily cost over $1.5 million. [*Id.*, ¶¶8-12.] That is precisely the type of "undue burden or expense" that warrants denying the discovery Plaintiffs seek. *See* Fed. R. Civ. P. 26(c); *see Transamaerica Life Ins. Co. v. Moore*, 274 F.R.D. 602, 609 (E.D. Ky. 2011) (denying discovery because "burden associated with this request outweighs any potential benefit").

And this would be for little to no benefit. Plaintiffs recently told this Court that they believe they have sufficient evidence to make their case. [*See* ECF #182 at 20-22.] They offer no legitimate

4912-9583-3384.v1

need for the documents in the Database.  Plaintiffs' desire to go on a fishing expedition by accessing millions of documents – tens of thousands of which, at least, are privileged – does not justify the cost and expense of reviewing those documents for privilege at this stage of the litigation.[14]

### C.      Conclusion

The Individual Defendants respectfully request that the Court order Plaintiffs to surrender access and to refrain from using any document or information obtained from the database, or in the alternative, issue a briefing schedule for Individual Defendants to move for a protective order.

DATED:  March 14, 2025                                Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977


                                            s/Christopher M. Wood
                                        CHRISTOPHER M. WOOD

200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

---

[14]    Plaintiffs have intimated in multiple forums that the Individual Defendants should claw back any documents that they believe are privileged.  [*See, e.g.*, ECF #184 at 3.]  But parties can claw back only what they inadvertently produced.  [*See* ECF #131 at 14.]  Here, the Individual Defendants did not inadvertently produce anything.  Instead, Plaintiffs obtained access to privileged documents without the Individual Defendants' permission.  Besides, Plaintiffs' proposed claw back procedure would simply force the Individual Defendants to review 1.9 million documents for privilege.  This is unduly burdensome.

- 19 -

ROBBINS GELLER RUDMAN
 & DOWD LLP
DARREN J. ROBBINS
SCOTT H. SAHAM
JEFFREY J. STEIN
ASHLEY M. KELLY
TING H. LIU
STEPHEN JOHNSON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
scotts@rgrdlaw.com
jstein@rgrdlaw.com
akelly@rgrdlaw.com
tliu@rgrdlaw.com
sjohnson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

DATED: March 14, 2025

BENESCH, FRIEDLANDER, COPLAN
 & ARONOFF LLP
ANDREW G. FIORELLA (*pro hac vice*)
MICHAEL D. MEUTI (*pro hac vice*)
ALLYSON R. CADY (*pro hac vice*)

s/ Andrew G. Fiorella (w/permission)
ANDREW G. FIORELLA

200 Public Square, Suite 2300
Cleveland, OH 44114-2378
Telephone: 216/363-4500
216/363-4588 (fax)
afiorella@beneschlaw.com
acady@beneschlaw.com
mmeuti@beneschlaw.com

*Attorneys for Defendants David Katzman, Kyle Wailes, Steven Katzman, Susan Greenspon Rammelt, Richard Schnall, and Camelot Venture Group*

- 20 -

GIBSON, DUNN & CRUTCHER LLP
BRIAN M. LUTZ (*pro hac vice*)
MICHAEL J. KAHN (*pro hac vice*)

     s/ Michael J. Kahn (w/permission)
       MICHAEL J. KAHN

One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
Telephone:  415/393-8200
415/393-8306 (fax)
blutz@gibsondunn.com
mjkahn@gibsondunn.com

*Attorneys for Defendants Alexander Fenkell and
Jordan Katzman*

- 21 -

4912-9583-3384.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on March 14, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
    & DOWD LLP
200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2203
615/252-3798 (fax)

Email: cwood@rgrdlaw.com

- 22 -

# Mailing Information for a Case 3:19-cv-00962 Franchi v. SmileDirectClub, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Allyson R. Cady**
  acady@beneschlaw.com

- **Wade B. Cowan**
  wcowan@dhhrplc.com

- **James M. Ficaro**
  jmf@weiserlawfirm.com

- **Andrew J. Finn**
  finna@sullcrom.com

- **Andrew Fiorella**
  afiorella@beneschlaw.com

- **Elizabeth O. Gonser**
  egonser@rjfirm.com,dgibby@rjfirm.com,bmoore@rjfirm.com

- **Michael C. Griffin**
  michael.griffin@skadden.com

- **John S. Hicks**
  jhicks@bakerdonelson.com,trutledge@bakerdonelson.com,lkroll@bakerdonelson.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Stephen Johnson**
  SJohnson@rgrdlaw.com

- **Lewis S. Kahn**
  Lewis.Kahn@ksfcounsel.com

- **Michael J. Kahn**
  MJKahn@gibsondunn.com

- **Jay B. Kasner**
  jay.kasner@skadden.com

- **Ashley M Kelly**
  akelly@rgrdlaw.com

- **Phillip Kim**
  pkim@rosenlegal.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com

- **Ting H. Liu**
  tliu@rgrdlaw.com

- **Brian M. Lutz**
  blutz@gibsondunn.com

- **MICHAEL J MORSE**
  PKNASHLAW@AOL.COM

- **Richard A. Maniskas**
  rmaniskas@sbtklaw.com

- **Michael D. Meuti**
  mmeuti@beneschlaw.com,Docket2@Beneschlaw.com,emanzo@beneschlaw.com,rkrueger@beneschlaw.com

- **E. Powell Miller**
  epm@millerlawpc.com

- **Scott D. Musoff**
  scott.musoff@skadden.com

- **Danielle S. Myers**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Sharon L. Nelles**
  nelless@sullcrom.com

- **Christopher Nelson**
  cln@weiserlawfirm.com

- **Melinda A. Nicholson**
  Melinda.Nicholson@ksfcounsel.com

- **Michael J. Palestina**
  Michael.Palestina@ksfcounsel.com

- **Ira M. Press**
  ipress@kmllp.com

- **David Albert Rammelt**
  drammelt@beneschlaw.com,docket@beneschlaw.com,emanzo@beneschlaw.com

- **Steven Allen Riley**
  sriley@rjfirm.com,dgibby@rjfirm.com

- **Darren J. Robbins**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,ScottS@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com

- **Laura Seferian**
  lseferian@beneschlaw.com

- **Michael B. Silverstein**
  msilverstein@beneschlaw.com,Docket2@beneschlaw.com

Case 3:19-cv-00962    Document 193    Filed 03/14/25    Page 24 of 25 PageID #: 4740

- **John Tate Spragens**
  john@spragenslaw.com,spragenslaw@ecf.courtdrive.com,dave@spragenslaw.com

- **Jeffrey J. Stein**
  jstein@rgrdlaw.com,JStein@ecf.courtdrive.com,CSavedra@rgrdlaw.com

- **Tara L. Swafford**
  tara@swaffordlawfirm.com

- **Christopher E. Thorsen**
  cthorsen@bakerdonelson.com,pmontei@bakerdonelson.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,CWood@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)