# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| IN RE: | § | CASE NO. 23-90786-7 |
| | § | HOUSTON, TEXAS |
| SMILE DIRECT CLUB, INC., | § | FRIDAY, |
| ET AL, | § | DECEMBER 20, 2024 |
| DEBTORS. | § | 3:01 P.M. TO 3:48 P.M. |

**STATUS CONFERENCE (VIA ZOOM)**

BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                    SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: ZILDE COMPEAN

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

Case 3:19-cv-00962    Document 194-1    Filed 03/14/25    Page 2 of 41 PageID #: 4749

**APPEARANCES (VIA ZOOM):**

FOR THE INDIVIDUAL DEFENDANTS
IN THE UNDERLYING SECURITIES
CASE:                              BENESCH FRIEDLANDER COPLAN &
                                   ARONOFF
                                   David Rammelt, Esq.
                                   71 S. Wacker Drive, Ste. 1600
                                   Chicago, IL  60606
                                   312-212-4958

                                   BENESCH FRIEDLANDER COPLAN &
                                   ARONOFF
                                   Andrew G. Fiorella, Esq.
                                   127 Public Square, Ste. 4900
                                   Cleveland, OH  44144
                                   216-363-4500

FOR ALLISON BYMAN,
CHAPTER 7 TRUSTEE:                 PORTER HEDGES, LLP
                                   Aaron Power, Esq.
                                   Joshua W. Wolfshohl, Esq.
                                   1000 Main, 36th Fl.
                                   Houston, TX  77002
                                   713-226-6000

FOR THE SECURITIES LITIGATION
PLAINTIFFS:                        ROBBINS GELLER RUDMAN &
                                   DOWD, LLP
                                   Christopher Wood, Esq.
                                   200 31st Avenue North
                                   Nashville, TN  36203
                                   615-244-2203

                                   LOWENSTEIN SANDLER, LLP
                                   Michael Etkin, Esq.
                                   One Lowenstein Drive
                                   Roseland, NJ  07068
                                   973-597-2312

FOR THE DIP AGENT:                 DLA PIPER
                                   Ben Winger, Esq.
                                   444 West Lake Street
                                   Suite 900
                                   Chicago, IL  60606-0089
                                   312-368-4000

**APPEARANCES (CONT'D - VIA ZOOM):**

FOR SECURITIES DEFENDANTS,
ALEX FENKELL AND JORDAN
KATZMAN:                      GIBSON DUNN & CRUTCHER, LLP
                              Michael Kahn, Esq.
                              One Embarcadero Center
                              Suite 2600
                              San Francisco, CA  94111-3715
                              415-393-8316


(Please also see Electronic Appearances.)

**HOUSTON, TEXAS; FRIDAY, DECEMBER 20, 2024; 3:01 P.M.**

THE COURT: Okay. Good afternoon, everyone. And before I forget, I wish everyone a Happy Holiday.

I'm going to call a Status Conference in 23-90786, SmileDirect.

Why don't I take appearances in the courtroom and then I'll take appearances from folks on the line?

MR. RAMMELT: David Rammelt, Your Honor, on behalf of individual Defendants in the shareholder litigation in the underlying case.

THE COURT: Okay. Good afternoon. If you could just close to the mic? I just want to make sure we can hear you. Thank you.

MR. RAMMELT: Yes, Your Honor. David Rammelt on behalf of the individual Defendants in the underlying Securities case.

THE COURT: Good afternoon.

MR. RAMMELT: This is my partner, Andrew Fiorella.

THE COURT: Good afternoon, Mr. Fiorella.

MR. POWER: Aaron Power and Josh Wolfshohl from Porter Hedges on behalf of Allison Byman, the Chapter 7 Trustee, who is present with us today.

THE COURT: Okay. Good afternoon.

MR. POWER: Good afternoon, Your Honor.

THE COURT: If you wish to make an appearance on

the line, please hit five star and I will unmute your line. I'll just go in the order in which I see them.

A 615 number?

Well, here is a -- here's the 615 number.

MR. WOOD: Good afternoon, Your Honor. This is Christopher Wood from Robbins Geller Rudman & Dowd on behalf of the Securities Plaintiffs, Your Honor.

THE COURT: Good afternoon.

There is a 973 number?

MR. ETKIN: Yes, Your Honor. Michael Etkin. Good morning. Good to see you.

THE COURT: Good afternoon.

And here's a --

MR. ETKIN: Bankruptcy counsel for the Plaintiffs in the Securities litigation.

THE COURT: Okay. And here is a 202 number.

MR. WINGER: Good afternoon, Judge. Ben Winger from DLA Piper on behalf of the DIP Agent. I'm joined by my partner, Dale Cassel (phonetic).

THE COURT: Okay. Good afternoon.

Anyone else wish to make an appearance, please hit five star and I will unmute your line.

(No audible response.)

THE COURT: Okay. I guess I ought to set the table, and there's a motion filed on -- it was in like --

Case 3:19-cv-00962   Document 194-1   Filed 03/14/25   Page 6 of 41 PageID #: 4753

kind of November, early November, asking to confirm that the Chapter 7 Trustee was authorized and empowered to waive the attorney-client privilege and it was filed by the -- what I'll call the "Securities Party Plaintiffs." Subsequently there, there was a motion -- I think the hearing may have been adjourned, there were a few objections filed to it.

There was then a subsequent application to employ Orrick. I had to read that one carefully because my last -- I denied an application to employ Orrick and then that one, I think is on appeal, so I can't talk about that one, so maybe I'll talk about this one.

Then there was a request for an adjournment of the hearing and quite frankly, I just kept learning more stuff through the papers that told me that I didn't know as much as I thought I knew about what's been going on over here in the last six months. So I decided to hold this Status Conference, not because anyone swayed me in any way, just I kind of think needed to get a little smarter.

I held a couple of hearings in connection with a DIP or a request for a change to the DIP, but none of this stuff kind of came up in connection with those hearings. So I decided to just hold a Status Conference to understand -- and at the same time, the Trustee wasn't the one requesting the relief and I didn't -- I needed to have an opportunity to hear from the Trustee, which now I've heard from her.

So maybe I'll start with the -- I don't even know where to start. Well, I'll start by unmuting -- having a -- unmuting a 650 line. I apologize.

MR. KAHN: No problem, Your Honor. This is Michael Kahn from Gibson Dunn.

I represent the interested parties and Defendants in the Securities case, Alex Fenkell and Jordan Katzman.

THE COURT: Oh, okay. Good afternoon.

So maybe I ought to start, I've read the motion. Maybe I ought to start with the Securities Defendant, just kind of tell me what your understanding -- what are you -- I've read the papers.

MR. RAMMELT: Okay, Your Honor.

THE COURT: But maybe we can kind of help crystalize for me. Today I'm not ruling on anything. Today is just a Status Conference. But today we will pick a day to hold the motion. I just wanted to make sure I picked the right day that we can all kind of come together. Okay?

MR. RAMMELT: All right. Thank you, Your Honor.

So in part, we're not sure entirely why we are here. We do not disagree --

(Laughter)

THE COURT: That makes two of then.

MR. RAMMELT: -- yeah. We do not disagree and in fact, we offered to stipulate to the proposition that the

Trustee has the ability to waive the privilege as to the Debtor. We would concede that and we think the remaining issues, which I'll describe, are issues that were already raised before Judge Eli Thomson in the Middle District of Tennessee. He is the Federal Judge, Your Honor, that is presiding over the underlying Securities case.

The issue that will be before him involves joint privilege and to fully understand I think you need to understand the Consilio Database because that is the collection of documents to which the Securities Plaintiffs were given access, and we believe they ought not to have been.

The Consilio Database is a cloud-based database that holds 2.2 million documents. The database was created by my firm. It is a litigation database. It is a compilation of some of the company's records, but this database was created for a series of lawsuits in which both the Debtor and the individual Defendants were involved -- one of which is the Securities -- the underlying Securities case where my clients, Mr. Kline's clients, who are former officers and directors of SmileDirectClub, are Defendants in that case.

And SmileDirectClub, one of the Debtors, is actually still a party to that case, as far as I know. Obviously it's been stayed as to that party, but

Case 3:19-cv-00962    Document 194-1    Filed 03/14/25    Page 9 of 41 PageID #: 4756

SmileDirectClub has not been dismissed and therefore, is a Defendant in that Securities case.

The Consilio Database, as I mentioned, contains 2.2 million documents. Over a million of those -- close to a million and a half documents have never been reviewed for attorney-client privilege. Those documents were collected for litigation by counsel, by us. In some cases where the litigation went forward, like the Securities case, we did review those for privilege and made privilege determinations in accordance with the Protective Order that's been entered in the Tennessee District Court.

Fewer -- well, we believe about one and a half million documents from that database have never been reviewed for privilege. And we believe that within those are documents that have -- that are privilege and a privilege that belongs both to the Debtor, to SmileDirectClub, as well as to the individual Defendants. And so they both hold a joint privilege or a common interest privilege in those documents.

That is the issue that is before Judge Richardson and we are awaiting to have him enter a briefing schedule on that motion --

THE COURT: Can you articulate for me the exact issue that you think has been teed up in front that judge?

MR. RAMMELT: So the exact issue is: Did the

Trustee have authority to allow the Securities Plaintiffs to access the entire database, which necessarily meant that they were able to access documents that had not been reviewed, some of which contain privilege, but also that contain documents that were privileged -- specifically privileged marked as such --

THE COURT: You're giving me spin. I just wanted to know this particular -- yeah.

MR. RAMMELT: Yeah, yeah. And what happened is --

THE COURT: Well, let me tee up because --

MR. RAMMELT: Yes, Your Honor.

THE COURT: -- so that issue is getting teed up in front of the court and you're waiting on a briefing schedule, then the motion got filed here for me to make the call?

MR. RAMMELT: Correct.

THE COURT: Okay. So my understanding, based upon what I read and, again, this isn't evidence, this is just stuff that I've read and I want to make sure that I understand.

It appears that -- at least if I understood it correctly, but I want you to correct me, or someone, just kind of -- the Consilio Database was at one point kind of -- well, I don't want to get into the whole whether it was rejected, open, or any of that stuff.

Case 3:19-cv-00962    Document 194-1    Filed 03/14/25    Page 11 of 41 PageID #: 4758

MR. RAMMELT: Right.

THE COURT: But is there a copy of the database floating somewhere that you think -- like the Orrick folks copied or is it all --

MR. RAMMELT: We don't know. That's why we started discovery approximately ten days ago and the Trustee, Allison, was kind enough with the help of Aaron to arrange a deposition. We started learning some answers to questions, but we do not know exactly what was reviewed, by whom, what was copied, the Plaintiffs --

THE COURT: Do you know whether the act -- it was just kind of an access, like a password was provided and then folks got a chance to review it?

MR. RAMMELT: That's what we believe. That's what we believe. It's cloud based, so no one is holding them -- like, it's not on our servers. It is on Consilio's servers.

THE COURT: Okay. So someone may have been provided access to the Consilio, but then how would Ms. Byman know then what got reviewed and what didn't get reviewed?

MR. RAMMELT: Well, precisely, she doesn't. And so the issue that really is in dispute was: Did under these circumstances -- these particular circumstances, was she authorized to turn over access to the full 2.2 million documents in a litigation database, some of which were

Case 3:19-cv-00962    Document 194-1    Filed 03/14/25    Page 12 of 41 PageID #: 4759

already subject to a Protective Order, to adversaries in pending litigation somewhere else?

We don't dispute generally that a Trustee has authority to access the books and records. That's an unremarkable proposition. The issue here is in this specific case, because of the nature of the Consilio Database, because of the fact that the only people that have ever paid for access to that database are my clients and the insurance company that's covered that, because it meant access to privilege -- documents that were privileged and protected by a Protective Order in Tennessee.

All of these together create fact issues that we need to get to the bottom of and the reason is we believe the Securities Plaintiffs, they approached -- eight months ago, Your Honor, they approached the Trustee and asked to access documents that they knew were privileged and had been redacted in our case.

And instead of coming to us and asking for a meet-and-confer, or abiding by the Federal Rules of Civil Procedure, or requesting that we de-designate classifications, or filing a motion with Judge Richardson in Tennessee, instead they went straight to the Trustee and said, "We'd like to access these documents that are privileged in our case."

And so, it is whether under the circumstances the

Case 3:19-cv-00962    Document 194-1    Filed 03/14/25    Page 13 of 41 PageID #: 4760

Trustee had the authority to grant access to these Plaintiffs that are adversaries in separate litigation where there are individuals that hold a privilege, that's an issue that should be decided by Judge Richardson and that we believe will be teed up and is teed up in front of Judge Richardson.

THE COURT: Let me hear from the Plaintiffs, any party who filed the motion.

MR. RAMMELT: Thank you, Your Honor.

THE COURT: Thank you.

MR. WOOD: Good afternoon, Your Honor. Christopher Wood on behalf of the Plaintiffs.

THE COURT: Good afternoon.

MR. WOOD: First of all, Your Honor, I do want to -- we filed a lot of paper and I apologize for that.

You know, we believe that there's a straightforward piece as the Trustee's response laid out, but at the same time, we wanted to make sure that Your Honor had the background of how it got into this situation, particularly in light of the individual Security Defendants' response, which we didn't think really gave the appropriate context.

And so from our perspective, these are simple questions that this Court should answer without the need for any additional discovery. Perhaps even without the need for

Case 3:19-cv-00962    Document 194-1    Filed 03/14/25    Page 14 of 41 PageID #: 4761

additional hearing. But that first question, which is obviously in dispute because the DIP Agent and the individual Defendants dispute it, is whether the books and records at issue are even property of the estate. We think that's a straightforward legal question and not something that's really where there are facts in dispute.

The second question about whether the Trustee waived the privilege, it appears is not disputed. Even, I would respectfully submit, Your Honor, with respect to joint privilege, it's very clear that the Trustee can waive that, as well, where the Trustee starts investigating claims against the individual Defendants.

And lastly, whether the Trustee can provide access to books and records in her possession, custody and control to another party to resolve a discovery dispute, we think is a simple question that should be resolved in this Court (glitch in the audio) and is not something where additional discovery is necessary.

Your Honor, just to kind of continue where Mr. Rammelt left off, I mean, I think it's quite an accusation to make that counsel intentionally tried to invade these Defendants' privilege. It's simply not true and no discovery, I would submit, is required to show that.

These Defendants have had access to this database for years. They had a brief pause in access when the

Case 3:19-cv-00962    Document 194-1    Filed 03/14/25    Page 15 of 41 PageID #: 4762

company filed for bankruptcy. They then regained access. They've never identified a single document, Your Honor -- one single document that is covered by a privilege that the Trustee couldn't waive -- not one.

And when they talk -- when Mr. Rammelt talks about the Plaintiffs trying to go behind his back to get access to documents that were marked as privilege, the Trustee waived the privilege. That's her right to do that. And so those documents were no longer privileged and should have been and were required to be produced in our case.

There's no point in me going to talk to him about it because they're not his documents. And I think that the Securities Defendants in this case have a hard time admitting and coming to terms of the fact that they no longer control the company and they no longer control the documents, but they're not his documents. They are not his privilege and the fact that they were produced to us was entirely appropriate in light of the discovery disputes that we were having in the case, Your Honor, especially as I laid out in the response we filed two days ago where these Defendants have a history of designating documents as privileged or refusing to produce them when they are not privileged and when they have no basis to refuse to produce them.

Or even when a Federal Judge in our district told

them that these types of documents were not privileged and they redacted them anyway.

And so I think that these accusations that we somehow acted improperly are completely untrue. There's no discovery that needs to be taken in order to resolve that issue. It really just comes down to was to what we've asked the Court to look at, which is the Trustee's power to provide access to the estate documents to resolve a discovery dispute, and I would --

THE COURT: So I want to drill down just a little bit because the Supreme Court has already kind of answered these questions. So what's the question that you're asking me to do, right?

MR. WOOD: Well, let me tell you what the practical problem is, Your Honor.

THE COURT: Okay.

MR. WOOD: We told the -- the Trustee told the Defendants that they had provided access to these documents back in August, and I tried to meet-and-confer. The Defendants for a few weeks apparently didn't feel these meet-and-confer. We eventually met and conferred, but during that time, we agreed to stop looking at these documents and we have not looked at them since that time.

So it's been six months and we're in a holding pattern. We have expert reports due in a month, and we need

some resolution so that we can finish litigating this case.

We filed a request for a discovery conference in front of Judge Richardson, and really it's Magistrate Judge Frensley who deals with the discovery issues in this case. He is very busy I know, and he has yet to set a conference, but these questions that we've raised with Your Honor, we believe are core bankruptcy questions: Who owns the documents? Who owns these documents? We believe it's the estate.

What is the limits on what the Trustee can waive in terms of privilege? We think it's clear, but these are bankruptcy questions that we think Your Honor should answer.

THE COURT: What's the bankruptcy question? That's what I'm trying to get at. What's the bankruptcy question that the Supreme Court has already answered the question whether she could waive the privilege? The question then becomes more: Are these books and records property of the estate, right?

That's going to -- I don't know, what -- tell me what's in it and I'll tell you if it's property of the estate or not. I know she has an interest in -- it's to the extent of whatever interest she has in there, but I don't know -- I don't know what kind of set up you-all had -- or they had, I should say.

I don't know if they set up a document database

with separate folders. And you know, is everything property of the estate because she had log-in access to it? I don't know, but I'm not really sure that answers the real question. Certainly she had access to it, but --

MR. WOOD: Well, Your Honor --

THE COURT: -- she waives the privilege, but -- waives the privilege as to what docs, right? What is -- that's what I'm saying. I don't know and the folks -- I don't see the Orrick people here. My understanding is that Mr. Wolfshohl told them to not communicate with his firm, to communicate with the Orrick people. So I don't really know what happened here.

I don't even have a professional I can call in. It's a little hard for me to -- and it could be my lack of information. In other words, it doesn't feel like a straight call. It feels like I need to kind of know what was in it. You may be right 100 percent.

I just -- you know, I'm kind of coming into this, you know, at the 10-yard line, when everybody --

MR. WOOD: And Your Honor, what I can say -- I don't mean to interrupt. I mean, and the Trustee's counsel can, you know, obviously speak to this, but the Trustee's understanding is that these are estate's documents because that's what SmileDirectClub's general counsel told her when the Trustee was trying to gather the estate's documents and

Case 3:19-cv-00962    Document 194-1    Filed 03/14/25    Page 19 of 41 PageID #: 4766

there's testimony on this and it's in our briefing. SmileDirect's general counsel said that these were the company's documents.

THE COURT: But now it starts to feel like a fact issue, right? None of it feels like discovery. That's what I'm saying.

MR. WOOD: Well, Your Honor, if so, that's not discovery for me and my firm. I don't -- I don't even have --

THE COURT: Oh, I don't doubt that. I don't doubt that. I don't doubt that at all.

MR. WOOD: That's discovery either from the Defendants as to what's there, or from someone else, but it's not me.

THE COURT: I agree.

MR. WOOD: And it's not the discovery that the Defendants are seeking from my firm, which is a list of every document we looked at, which is work product, and really inappropriate to resolve disputes that are at issue.

THE COURT: Well, that's the problem is: How do I answer the question? Because I feel like I'm going to have to -- how do I answer the question as to whether everything was privileged without knowing what you looked at?

MR. WOOD: Well, I don't think you need to know what we looked at, Your Honor, but it would be the

individual Securities Defendants' burden to establish privilege. They haven't identified one document that is privileged in the entire database, so they certainly haven't met that burden.

And there is a clawback provision in the Protective Order in the Federal case already, which everyone signed off on years ago, that provides a process for the Securities Defendants to claw back any document if they actually end up identifying a single document in that database that is covered by a privilege that the Trustee didn't waive.

They can utilized the provisions in the Protective Order in Tennessee and claw those documents back. They have never done that, Your Honor. And we're not asking you to rule on that. They could do that in Tennessee.

THE COURT: But how do you -- how do you claw back without knowing what you've seen?

MR. WOOD: Well, no. So the Defendants know what's in there. The Defendants know what's in this database because they've had access to it this whole time. So if they have some specific documents that they want clawed back, they can certainly do that. We --

THE COURT: Oh, yeah. You can -- they can identify -- you know what I'm saying? They can identify your documents X through Z.

MR. WOOD: And they've never -- they've never done it.

THE COURT: But these are the ones that we think you shouldn't be able to use or be able to see, or any kind of stuff.

MR. WOOD: Right, but they actually have to meet their burden first and articulate a specific document that's privileged and they've never done it.

THE COURT: No, no, no. I got it. I got it. No, but I'm saying -- but I think your point is that they should -- they could at least identify if they were going to claw something back, they would be in the position to know what documents they think are privileged and then they still have the right to assert the privilege or, you know, prove -- they've still got to prove it up. But at least they should be able to -- they would be in the position to identify what docs they think are not fair game in the database, if I understand you correctly.

MR. WOOD: That's right, Your Honor. And we -- you know, we stopped looking at these documents very quickly after we got access to them. We have not reviewed the vast majority of what's in there, which is what we feel like we need to do to prosecute our case and we have told these -- there's a lot of documents in there. There's no way we're going to use them on summary judgment or trial. We've told

Case 3:19-cv-00962   Document 194-1   Filed 03/14/25   Page 22 of 41 PageID #: 4769

these folks that we'd be willing to identify for them the specific documents that we think are relevant to our case, you know, for them.

And that they can then look at those and tell us whether they think there's any documents in there which should be clawed back, but there's a mechanism in place in Tennessee to do that. I just think that these threshold questions are these Trustee's documents and the scope of the Trustee's waiver, which apparently Mr. Rammelt said is in dispute with respect to joint privilege, really are bankruptcy questions --

THE COURT: Well, I think -- if I understand him correctly -- and I don't want to put words in your mouth, and I'm not saying I agree or disagree with it. I'm just trying to make sure I articulate it is that even if -- I think you're advancing a legal theory that says something like, if there are two people to a joint privilege, you know, a joint defense agreement or something, and one person decides to kind of back out of it and waive it, that you still have the right to come in and assert whatever rights you have to the docs and it doesn't blow it.

At least I think that's what you're articulating and I'm not saying I agree or disagree. We'll have to figure out -- I don't even know what's -- I guess it's Federal law we're talking here, depending on -- I don't know

Case 3:19-cv-00962   Document 194-1   Filed 03/14/25   Page 23 of 41 PageID #: 4770

much about your lawsuit, but I would need to -- I think that's what you're articulating and I just -- you don't have to stand up -- I think that you're nodding your head, correct?

MR. WOOD: I am.

THE COURT: I think what you're saying is you think you have some rights to come in under that and that you may have waived -- she had the right to waive what she had the right to waive, too, but it may not mean that everything is waived.

MR. WOOD: Precisely.

THE COURT: Okay. Let me -- Mr. Power, maybe I can hear from you. I feel like it's unfair because I think Orrick are probably the right folks to have asked these questions to, but I'll look forward to their application -- the hearing on their application.

MR. POWER: Yeah, I think we're set for mid-January for that.

THE COURT: Well, no, I think I was going to take a little bit more time. I'm going to have to think through -- I think there's a lot of core issues that I'm going to have to unpack and think about as I get into that application, so just from a timing standpoint, mid-January is going to be tough for me. But I'll reach out to folks.

It's nothing. This isn't like a big -- I'm just

Case 3:19-cv-00962   Document 194-1   Filed 03/14/25   Page 24 of 41 PageID #: 4771

24

thinking through a lot of issues. It's going to be more complicated than I thought an application was, and I still don't know how to think through what is on appeal and the other one -- now someone is saying the other one isn't. So I don't know if I can -- well, anyway, just a little stuff to think about, but also kind of the -- at what point does 327 start? I've just got think about this stuff.

But I certainly -- I don't want to leave anyone with any confusion. To the extent Orrick was signed in an agreement, I think it was an attorney-client relationship. I think 327 issues are separate than that, so I don't think anything. I just think I'm going to have to take some time and think through more kind of technical stuff about retention stuff there, which they very well may meet all entirely.

I'm just looking at my schedule and what I've got to crank out over the next couple of weeks.

MR. POWER: One thing --

THE COURT: It's thick.

(Laughter)

MR. POWER: -- we have not talked about, but I'm happy to talk to the Trustee about. I'm not sure that the appeal is really necessary at this point. There's a new application, new terms, and so --

THE COURT: I can't even talk about it. I can't

even talk about it.

MR. POWER: -- understood, but in order to make your life easier maybe I'm going to talk to the Trustee about discussing the deal and let's just go forward on the other ones.

THE COURT: Let me kind of -- I read the papers. Again, the Trustee is not asking for relief here. So where do you think things kind of are at this moment in time with respect to just about anything you've heard?

I don't want to get into the -- and I understand Mr. Winger is here, I don't want to get into whether this constitutes DIP collateral and you got to ask for permission.

MR. POWER: Yeah.

THE COURT: I think that's another question for another day. I think there are some more core questions that can be answered.

So just from your position?

MR. POWER: So, you know, we are I think technically a party still, but the Plaintiffs are not pursuing claims against the estate. The estate's claims are -- the claims against the estate are stayed in that suit. They were going to dismiss us without prejudice. I asked for it to be with prejudice. I think that dismissal will still happen at some point.

Case 3:19-cv-00962    Document 194-1    Filed 03/14/25    Page 26 of 41 PageID #: 4773

We're really being dragged into this. We did not want to come here in front of Your Honor on this motion. We didn't file this motion.

What is not in dispute, I think we've established today is pretty clear. The Trustee has the authority to waive and she did waive. That's kind of where we're at.

The next question that Mr. Rammelt is posing and I think Mr. Wood poses it, too, is this idea of the Trustee's authority and then the question that begs is: Whose authority did the Trustee need?

I think Mr. Winger would say that we needed the DIP Lenders' authority and I think Mr. Rammelt would say we needed his client's authority. I don't think anyone is saying we needed your authority, right? This is just ordinary discovery dispute where we're now essentially a third party, right? where we have documents that are relevant to this other lawsuit in Tennessee that we're not participating in.

So our answer is we don't need anybody's authority to respond to discovery. The Trustee, in the ordinary course of her business, waived the privilege, which is her prerogative to do and she attempted to resolve this discovery dispute this way. There was, I think it's 77,000 entries on a privilege log that we were going to have to respond to and defend. And I said we're not -- you know,

that's from Mr. Rammelt and from pre-petition litigation. You know, we're not going to deal with that.

And so, you are correct and everyone is correct. It got turned over to Orrick -- ultimately it got turned over to Orrick because, one, they have a relationship with Consilio and knew the Consilio people, but two, you know, the documents in this database are not relevant to what Mr. Wolfshohl and I are doing in this case, right? They're more relevant to what Orrick would be doing.

So if you have any specific questions about the Consilio setup, I'm happy to try to answer them as best as I can.

THE COURT: No. The question is: If we get past the question of whether the Trustee had authority to waive, the question of whether she actually had authority and I think you're saying, you know, whether she had -- whether just by being a Chapter 7 Trustee, you then have the authority to then go waive. Then the question then becomes: What is the effect of that waiver?

MR. POWER: Correct, and I'm not sure that's a question for this Court, frankly. That seems like whatever the joint privilege issues are, there's no dispute here in Houston that the privilege got waived. No one disputes the scope of that. We are not saying that we waive someone's privilege that we can't waive, right? We can only waive

what the Debtor holds.

So that second question about what is the implication of that? I'm not really sure that's a question for this Court, but as you saw in our pleadings, because of the objection that was filed, we're here. We filed a response because of mostly some concerns about the DIP Lender issue, which we can talk about later.

But that is a real issue for the -- concerns for the Trustee.

THE COURT: Okay. Mr. Aaron, let me just ask you: Are you -- and I'll turn to Mr. Wood in a second -- just are you asking what the -- is there still some kind of a threshold question in your mind, or are we just talking the effect of the waiver?

MR. RAMMELT: No, Your Honor, I think there's still a threshold issue. I mean, in this context, I'm not exactly sure what authority means. I guess it boils down to -- and again, this is a fact issue that we think will be before the Tennessee judge. Are these books and records at all?

THE COURT: Well, no, but I'm saying are you questioning -- maybe let me frame the question a little better.

Are you -- do you question whether the Trustee has the authority to waive the attorney-client privilege on

behalf of the company?

MR. RAMMELT: No, we do not and we would stipulate to that, but what we won't stipulate to is --

THE COURT: Kind of the effect of it, or what you're actually waiving.

MR. RAMMELT: Well, precisely, and so in the Securities case, there were -- I believe it's six officers and directors and then there was SmileDirectClub. And we've been representing all of those or with Gibson Dunn, all of those parties for four years. They're co-Defendants. They have a common interest, a joint interest in defending.

Now the company goes into bankruptcy and the Trustee says, like black letter law we've learned and we don't dispute now -- oh, I can waive it as to the company. But does waiving it to the company mean then it strips the privilege that all of the other Defendants have enjoyed in the case?

And that's the issue where we say she can't and so --

THE COURT: But like as a matter of law, you think.

MR. POWER: As a matter -- right, as a matter of law.

ECHOES: As a matter of law.

MR. POWER: And --

THE COURT: Someone who I think probably has me on speaker.

Mr. Power, it seems to be like your question that we were talking about kind of step two, right, in your analysis?

MR. POWER: Yes, sir.

THE COURT: Okay.

MR. RAMMELT: And then Your Honor raised a good question. I wish this was --

THE COURT: I doubt it.

(Laughter)

MR. RAMMELT: No, no, no, Your Honor.

Right, but I wish it was as easy as being able to look at a 100,000 documents or 77,000 or whatever it was that were privilege in the Tennessee case. I wish it were that easy.

The problem is -- and why this is an intense fact issue is, we understand they were given access to the whole database, 2.2 million documents.

Now in our case, about between 250 and 300,000 were produced and there's privilege log that relates to those. But there are 1.5 million or more documents that have never been reviewed for privilege. And now the Plaintiffs, we understand the Securities Plaintiffs got access to the whole thing, and we've been trying -- you

know, the Trustee sat down and she sat for a deposition. She, in short, said she's never looked at the Consilio Database. She doesn't know what's in the Consilio Database. The estate has never paid for any access to the Consilio Database.

She doesn't know whether or how privileged documents are segregated in the database. She told us and testified that she cannot waive the privilege as to the individual Defendants, anybody other than the Debtors, and so have Orrick or have the Securities Plaintiffs looked at 1.5 million documents that have never been reviewed for privilege, but which have privilege documents in there, they've been given access to the entire database. That's why we asked for discovery and served a subpoena on their firms, to find out because they've told us we've been looking at stuff and we copied things.

And we need to know what did you look at, when did you look at, what did you copy? What did you have access to?

We deposed Consilio, it was the General Counsel. He said, well, they didn't get access to privilege documents, but he didn't know exactly how that process worked, how they were segregated and whether the privilege documents related to just that collection that have been marked privilege in our case, or whether it's another

Case 3:19-cv-00962    Document 194-1    Filed 03/14/25    Page 32 of 41 PageID #: 4779

1.5 million that may contain -- and we believe would contain, joint privilege protected documents that no one has ever reviewed.

THE COURT: All right. Mr. Wood, let me -- I'll give you a final thought here.

MR. WOOD: Yeah, thank you, Your Honor.

I would just say I think it's also black letter law that when the Trustee becomes adverse to the individual Securities Defendants that happened here, that that waives the privilege by becoming adverse.

The *Stratton Oakmont* case from New York, Your Honor, it's 213 B.R. 433, I believe stands for that proposition. So I think it's very clear that any joint privilege has been waived, as well.

And again, I want to emphasize, Mr. Rammelt keeps talking about privilege, privilege, privilege. He has not identified, Your Honor, a single privilege document in this database, period.

And if you look at the 77,000 entries on the log that they gave us in our case, either every single one of those was waived by the Trustee or the -- or very, very close to every single one of them.

And so there's no evidence in front of Your Honor that there is a single document in that database that has any privilege from any whatsoever and the way to deal with

that, I would submit, is through the clawback agreement in Tennessee. It's not through asking my law firm which documents you looked at. We believe we're entitled to look at the entire thing, all 2.2 million pages, and figure out what's relevant to our case.

And then, we are willing to identify for the Defendants which documents we think are relevant and they can claw them back if they don't want to review the whole thing themselves.

But to be coming in now and saying we need discovery from my firm about what we looked at, when the Defendants have made no effort whatsoever to identify a single document in this database that's privileged, I think is really outrageous, and not the kind of order in which we should be looking at these issues.

THE COURT: That's all right. I'll just give you --

MR. POWER: If I could, Your Honor, just for a minute. I think there is -- we're unfortunately leading down a path where there's a factual issue that doesn't exist.

Mr. Rammelt keeps talking about the Consilio Database and 2.2 million documents, right? Within that database there is more than a dozen -- we'll call them "sub-accounts" for different pieces of litigation. What

Mr. Wood and their firms were given access to is one that is labeled for this litigation. They didn't get all dozen-plus subaccounts that are there. They got access to something that was specifically generated for this one piece of litigation.

So I think we keep talking about what did they look at, is maybe a different question than what did they have access to? We don't need a bunch of discovery of what they had access to, and Mr. Wood is on the phone, I mean, but within that one subaccount, I think Mr. Wood is saying I don't want to talk about which individual document within the subaccount I looked at, as opposed to did I have access to one piece of litigation account, or a dozen?

THE COURT: There could be 2 million --

MR. POWER: But 12 different cases.

THE COURT: Right, but the universe that Mr. Wood's clients may have had access to, is not the entire 12 million. It could be something, 2 million, it could be a subset of that because there are folders and you get access to a particular folder.

MR. POWER: Right. They got 100 percent of the portion of the database that's related to this piece of litigation, but not 100 percent of the entire database.

THE COURT: So here's what become abundantly clear to me -- and I really appreciate taking the time today. If

Case 3:19-cv-00962   Document 194-1   Filed 03/14/25   Page 35 of 41 PageID #: 4782

the parties -- well, if you're not disputing that the Trustee had authority to waive the privilege on behalf of SmileDirect, the company -- I don't want to -- that, I think, would be a bankruptcy issue for me to certainly go there. And I don't think -- I think the Supreme Court is pretty clear on that.

And I'm pretty textural, so I won't read it more or less than what the Supreme Court has already said, and if we're not going into, well then, what did you review, what did you have access to, what did you see? I'm now being -- I'm now kind of in my opinion deciding Tennessee litigation stuff, and I think I would be deciding discovery matters on a time table that will not be -- I assure -- not faster and I think for the education that would be required of me to get up-to-speed and really understand -- I don't know anything about the litigation -- I know that the litigation exists, but I don't have the intricate details and I don't -- I think if you're willing to stipulate that the Trustee had the authority, you know, and I think this is best left for the Tennessee judges to determine in the litigation and let them go there.

I don't see this as a property of the estate issue because the question is: What was the effect of the waiver?

And I don't know what kind of agreement you-all had. I'd have to learn about what kind of -- you know, is

Case 3:19-cv-00962    Document 194-1    Filed 03/14/25    Page 36 of 41 PageID #: 4783

there some kind of agreement? Is it just kind of common interest? Is it joint? I have no idea. I think you-all would -- it's going to start to create a host of fact issues in my mind, quite frankly, just to educate me. And I'm not one to kind of decline and shy away from my job, but I think this matter is better resolved by the judge who will ultimately decide all the issues in the case.

I think this is -- but again, if someone is questioning whether she had the authority to quite frankly waive the privilege, I think -- or questioning whether Orrick had the authority to share it, I think that's my wheelhouse.

And if the parties are comfortable -- but not saying she had the authority, Orrick had the authority, now we're just talking about the effects of what it is and you know, do you get to know what they reviewed, not reviewed, what the subset was? I think that's a Tennessee issue. And I mean, I'm more inclined to just not take this matter up to the wisdom of the Court.

But if there's a bankruptcy issue that comes up, I think I would stand ready if the Tennessee court said this is outside of my wheelhouse. Lopez, deal with it. I can deal with the discrete issue and get you an answer pretty quickly, but you're looking February/March before I can even -- well, February -- well, God, I've got -- yeah, no, it's

-- before I could have an evidentiary hearing and think about these issues and then I would want to provide a written decision for another court to understand exactly what I did and why, and the reasons for it.

I think if parties were then going to even think about appellate appeals, I think appeal any decision that I made on these issues, I think it's cleaner having it all in one place.

So -- but I stand ready if there's a bankruptcy issue to take it up. But based upon what I see and what I'm hearing, this is a -- I don't know if it's complicated or not, and I'm certainly not -- and I want to be very clear with any court that is listening to me when they hear what I said, I just think there's not a bankruptcy issue for me to really decide.

That's the reason that I think these matters are able to defer to the judgment and the wisdom in the discovery issues, but I don't want anyone to read into anything that I agreed with any position that the Securities Defendants have advocated today in terms of who did what, or that the Securities Plaintiffs have told me and whether -- what rights parties have, what they've done, not done.

I'm making no findings about any of that. I think that is all best, and that's not -- my judgment is not being -- I'm not being influenced one way or the other on that.

I'm just simply piercing through the bankruptcy issues.

And I think, you know, that may require -- I got it, some -- I guess the Trustee has already been deposed, so I think those issues -- it's not like she's hiding from the access -- providing access and she's got legal counsel, so.

But I stand ready. If the bankruptcy issue is identified and folks want to come here, I'll get you on, but it needs to be a discrete bankruptcy issue, quite frankly. If you aren't agreeing, for example, that the Trustee had the authority to waive the privilege, I would tee that up quickly. But if you're not, then I'm going to let you-all go keep your powder dry and go fight.

MR. RAMMELT: Can I raise one thing that's not rehashing anything we've talked about?

THE COURT: Be careful, you might open it up.

(Laughter)

MR. RAMMELT: It's really --

THE COURT: Might open up door number 3.

MR. RAMMELT: -- the -- for reasons we will explain when the time comes, we did serve subpoenas on the law firms for depositions.

The Plaintiffs' law firms didn't show up, but then afterwards filed motions to quash in a number of courts. We asked them if they would agree to consolidate it here because we obviously took the depositions in connection with

Case 3:19-cv-00962   Document 194-1   Filed 03/14/25   Page 39 of 41 PageID #: 4786

the emergency motion that they filed before this Court.

That said, I don't think this Court needs to decide that issue. I think the underlying issue -- and quite frankly, we weren't sure where we should ask a consolidated court to hear those motions to quash.

THE COURT: Let me just tell you, start with -- put me like down on the list.

(Laughter)

MR. RAMMELT: Yeah, so --

THE COURT: I don't care what you put above the list, but put me somewhere down on the bottom.

MR. RAMMELT: That was going to be my recommendation. We'll try to get those motions to quash and whether discovery is appropriate --

THE COURT: I don't want to take a position on any of that stuff.

MR. RAMMELT: So we'll send it to the Tennessee court.

THE COURT: All right. I'm not telling you to send it there. I'm just telling you, I don't know. I take no position on that, okay?

All right, folks. Thank you very much. Happy Holidays.

(Proceeding concluded at 3:48 p.m.)

**\* \* \* \* \***

*I certify that the foregoing is a correct transcript to the best of my ability produced from the electronic sound recording of the ZOOM/telephonic proceedings in the above-entitled matter.*

*/S/ MARY D. HENRY*

*CERTIFIED BY THE AMERICAN ASSOCIATION OF*

*ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

*JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

*JTT TRANSCRIPT #69469*

*DATE FILED:  JANUARY 3, 2025*