**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re Subpoena Duces Tecum To Scott+Scott Attorneys At Law LLP**<br><br>*Issuing Court Case:*<br><br>*In re: SMILEDIRECTCLUB, INC., et al.* Debtors. | Misc. Case No. 1:24-mc-570<br><br>Underlying Action: United States Bankruptcy Court Southern District of Texas Houston Division<br><br>Chapter 7<br><br>Case No. 23-90786 (CML)<br>(Jointly Administered) |

<u>**DECLARATION OF MICHAEL B. SILVERSTEIN**</u>

I, Michael B. Silverstein, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an attorney at the law firm Benesch, Friedlander, Coplan & Aronoff, litigation counsel for Petitioners David Katzman, Steven Katzman, Kyle Wailes, Richard Schnall, Susan Greenspon Rammelt, and Camelot Venture Group ("Individual Securities Defendants") in the above-captioned case. In those capacities, I have knowledge of the facts set forth herein.

2. I make this declaration in support of Individual Securities Defendants' Opposition to Scott+Scott's Motion to Quash Subpoena Or Alternatively for A Protective Order, and Cross-Motion to Transfer and Compel.

3. My firm is also counsel for the Individual Securities Defendants in *Franchi v. SmileDirectClub, Inc., et al.*, Case No. 3:19-cv-00962 (M.D. Tenn.) (Consol.) ("Federal Case"), and *In re: SmileDirectClub, Inc. Secs. Litig.*, Case No. 19-1169-IV (Tenn. Ch. Ct.) (Consol.) ("State Case") (collectively, "Tennessee Securities Cases"). My firm previously represented SmileDirectClub, Inc. and SmileDirectClub, LLC. Scott+Scott Attorneys at Law LLP ("Scott+Scott") represents the State Plaintiffs in the State Case along with Barrett Johnston Martin

& Garrison, LLC ("Barrett Johnston").  Robbins Geller Rudman & Dowd LLP ("Robbins Geller") represent the Federal Plaintiffs in the Federal Case.

4.     Due to the overlapping nature of the State and Federal Cases, counsel in each case has been cooperating and coordinating discovery.

5.     On February 26, 2019, SmileDirectClub, LLC entered into an agreement with Legility LLC to provide document support services to it and the Individual Securities Defendants related to litigation.  On September 3, 2020, SmileDirectClub, LLC entered into a separate agreement subject to the February 26, 2019 agreement for Legility to provide document review and data management services related to the Securities Cases.  Consilio LLC purchased Legility in 2021, including the agreements with SmileDirectClub, LLC.  For ease of reference, I will refer to them collectively as Consilio.

6.     Pursuant to the September 3, 2020 agreement, Consilio agreed to provide document-review-and-management services for any documents to be reviewed and/or produced in the Tennessee Securities Cases, and to host and store documents Benesch asked it to collect. Consilio provided these services by working with my firm as counsel in the Securities Cases.  The agreement's term lasts until the end of the Tennessee Securities Cases.  SmileDirectClub, LLC paid for these services for both it and the Individual Securities Defendants, pursuant to an indemnification agreement.  The parties also had a joint-defense agreement.

7.     As part of its defense of the Tennessee Securities Cases, Benesch worked with Consilio to identify and copy potentially relevant documents from SmileDirectClub's servers, including without limitation by providing contract attorney reviewers and professional project management.  Benesch worked to identify individuals who worked at SmileDirectClub whose files should be copied, and created search terms to identify which documents from those individuals

- 2 -

should be copied and reviewed.  Consilio also copied gigabytes of documents from Camelot Venture Group at Benesch's direction.

8.    The documents that Benesch asked Consilio to collect are stored on a database named SMDC0001 – Consumer and Securities Class Action ("Database").  The Database houses approximately 2.2 million documents that Benesch requested Consilio collect. 350 gigabytes of those documents were collected from Camelot Venture Group.

9.    Most of the documents in the Database have not been produced.  Many have been labeled as privileged, non-responsive, or have not even been reviewed by an attorney because they contain none of the search terms used to target relevant documents.

10.    SmileDirectClub filed for chapter 11 bankruptcy protection on September 29, 2023, and payments to Consilio ceased.  On December 12, 2023, Consilio informed Benesch that it could not continue to provide services because it had not received any payment for work it completed after the commencement of the bankruptcy proceedings.  Consilio then locked all attorneys out of the Database.

11.    My firm informed counsel in the Tennessee Securities Cases that it no longer had access to the Securities Database, and all parties agreed to pause discovery until access was restored.

12.    Consilio informed Benesch that it could provide services and access to the Database if it received payment of post-petition money owed.

13.    The Individual Securities Defendants—through their insurance policies—began paying Consilio in March 2024.  Consilio restored Benesch's access to the database on March 18, 2024.

14.     Andrew Fiorella, an attorney at Benesch, then informed plaintiffs' counsel in the Tennessee Securities Cases that Benesch's access to the Database had been restored and asked to confer regarding discovery.

15.     The Individual Securities Defendants have been paying Consilio for its services and access to the database since March 2024.

16.     My firm has recently learned through its deposition of the Trustee in the bankruptcy proceedings that around the time that access to the Database was restored, counsel for the State and Federal Plaintiffs began communicating with the Trustee.  My firm was not included in any of these discussions.  Attached hereto as **Exhibit 1** is a true and correct copy of the transcript of the Trustee's deposition, taken December 6, 2024.

17.     On June 11, 2024, counsel for the Federal Plaintiffs, copying Scott+Scott, asked the Trustee's counsel if the Trustee planned to assert or waive attorney/client privilege at an upcoming deposition.  Attached hereto as **Exhibit 2** is a true and correct copy of the June 11, 2024 communication from Chris Wood of Robbins Geller to the Trustee's counsel at Porter Hedges LLP.

18.     Attached hereto as **Exhibit 3** is a true and correct copy of a June 14, 2024 email chain between attorneys at Orrick Herrington & Sutcliffe ("Orrick"), and counsel for the Federal Plaintiffs.  This document was produced by the Trustee to the Individual Securities Defendants.

19.     Attached hereto as **Exhibit 4** is a true and correct copy of a June 14, 2024 email from Chris Wood representing that the Trustee had waived attorney/client privilege.

20.     Attached hereto as **Exhibit 5** is a true and correct copy of an excerpt of the transcript for the deposition of Dr. Marc Ackerman, taken June 15, 2024.  At the deposition, my firm— representing Dr. Ackerman—objected on the basis of privilege belonging to parties besides the Trustee.

- 4 -

21. After the deposition, David Rammelt, an attorney from my firm, communicated with the Trustee's counsel regarding the purported waiver. Attached hereto as **Exhibit 6** is a true and correct copy of a June 15, 2024 email from David Rammelt to the Trustee's counsel.

22. On June 25, 2024, attorneys from my firm had a Zoom conference with the Trustee's counsel.  On this conference, attorneys from my firm told the Trustee's counsel that the Database contained documents protected by privileges solely held by the Individual Securities Defendants and jointly held with SmileDirectClub.  Attorneys from my firm told the Trustee's counsel that the Individual Securities Defendants would not waive those privileges.  The Trustee's counsel stated the Trustee did not intend to waive privileges that the Trustee did not hold.

23. The Trustee's counsel restated this intention on July 12, 2024.  Attached hereto as **Exhibit 7** is a true and correct copy of a July 12, 2024 email from the Trustee's counsel to attorneys at my firm.

24. My firm has recently learned through the deposition of Consilio that a law firm purporting to represent the Trustee, Orrick, entered into a contract with Consilio in late July 2024 for access to the Database.  Attached hereto as **Exhibit 8** is a true and correct copy of the transcript of the Consilio's deposition, taken December 9, 2024.

25. On August 14, 2024, the Trustee's counsel informed attorneys at my firm that the Trustee had given counsel for the State and Federal Cases access to the Database.  Attached hereto as **Exhibit 9** is a true and correct copy of an August 14, 2024 email from Trustee's counsel to David Rammelt.

26. After the Individual Securities Defendants learned of this access to the Database, attorneys from my firm met and conferred with counsel for the State and Federal Plaintiffs.  The Federal Plaintiffs and Individual Securities Defendants subsequently filed a request for a discovery

conference on this issue in the Federal Case.  The conference has not been scheduled yet.  The State Plaintiffs also requested a conference in the State Case, but later withdrew the request.

27.    After the State and Federal Plaintiffs filed the Emergency Motion, my firm engaged with their counsel in order to negotiate an agreed order.  Attached hereto as **Exhibit 10** is a true and correct copy of the email chain between attorneys from my firm and counsel for the State and Federal Plaintiffs regarding this agreed order.

28.    On behalf of the Individual Securities Defendants, I served discovery upon Robbins Geller, Scott+Scott, and Barrett Johnston on November 26, 2024.  Attached hereto as **Exhibit 11** is a true and correct copy of an email chain between attorneys at my firm and State and Federal Plaintiffs' counsel regarding their subpoenas.  The Individual Securities Defendants noticed similar discovery requests to the Trustee and Consilio.

29.    After Robbins Geller, Scott+Scott, and Barrett Johnston objected to their subpoenas, the Individual Securities Defendants changed the date of compliance to December 6 for Robbins Geller and Scott+Scott, and December 9 for Barrett Johnston.

30.    Attached hereto as **Exhibit 12** is a true and correct copy of the statement made by Andrew Fiorella at Scott+Scott's deposition, taken December 6, 2024.

31.    Attached hereto as **Exhibit 13** is a true and correct copy of the Trustee's Objections and Responses to Interested Parties' Document Production Requests.

32.    Since the filing of the Emergency Motion, counsel for the State Plaintiffs have agreed to a new case schedule and continued to pursue discovery

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 16th day of December, 2024.

/s/ *Michael B. Silverstein*
Michael B. Silverstein

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Declaration of Michael B. Silverstein, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 16, 2024.


Dated: December 16, 2024                                    */s/ Brandon S. McTigue*

# EXHIBIT 1

Page 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

In re:                         ) Chapter 7
                               )
SMILEDIRECTCLUB, INC.,         ) Case No. 23-90786 (CML)
et al.                         )
                               ) (Jointly Administered)
          Debtors.             )
-------------------------------------------------------------

ORAL DEPOSITION OF

ALLISON D. BYMAN

DECEMBER 6, 2024

(REPORTED REMOTELY)

-------------------------------------------------------------

ORAL DEPOSITION OF ALLISON D. BYMAN, via Zoom, produced as a witness at the instance of the Individual Securities Defendants David Katzman, Steven Katzman, Kyle Wailes, Richard Schnall, Susan Greenspon Rammelt, and Camelot Venture Group and duly sworn, was taken in the above-styled and numbered cause on Friday, December 6, 2024, from 9:03 a.m. to 9:48 a.m., before Kari Behan, CCR, CSR, a Texas certified machine shorthand reporter, with the witness participating remotely, pursuant to the Federal Rule of Bankruptcy 7030.

Job No. CS7061530

Page 2

APPEARANCES

FOR THE INDIVIDUAL SECURITIES DEFENDANTS DAVID KATZMAN, STEVEN KATZMAN, KYLE WAILES, RICHARD SCHNALL, SUSAN GREENSPON RAMMELT, AND CAMELOT VENTURE GROUP (REMOTELY):

DAVID A. RAMMELT, ESQ.
- and -
ANDREW G. FIORELLA, ESQ.
BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
(312) 212-4949
drammelt@beneschlaw.com
afiorella@beneschlaw.com

FOR ROBBINS GELLER RUDMAN & DOWD AND THE FEDERAL SECURITIES PLAINTIFFS (REMOTELY):

CHRISTOPHER WOOD, ESQ.
ROBBINS GELLER RUDMAN & DOWD LLP
200 31st Avenue North
Nashville, Tennessee 37203
(615) 244-2203
cwood@rgrdlaw.com

FOR SCOTT + SCOTT, ATTORNEYS AT LAW, LLP AND THE STATE SECURITIES PLAINTIFFS (REMOTELY):
MANDEEP S. MINHAS, ESQ.
SCOTT + SCOTT, ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Ave, 24th Floor
New York, New York 10169
(212) 223-6444
mminhas@scott-scott.com

FOR THE STATE SECURITIES PLAINTIFFS (REMOTELY):

JERRY MARTIN, ESQ.
BARRETT JOHNSTON MARTIN & GARRISON
200 31st Avenue North
Nashville, Tennessee 37203
(615) 982-8001
jmartin@barrettjohnston.com

Page 3

APPEARANCES (CONTINUED):
FOR CLUSTER HOLDCO (REMOTELY):
DALE CATHELL, ESQ.
- and -
ALEXA AIN, ESQ.
DLA PIPER LLP (US)
Harbor East 650
S. Exeter Street, Suite 1100
Baltimore, Maryland 21202
dale.cathell@dlapiper.com
alexa.ain@dlapiper.com

FOR THE SECURITIES PLAINTIFFS (REMOTELY):

MICHAEL S. ETKIN, ESQ.
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2312
metkin@lowenstein.com

FOR ALEXANDER FENKELL AND JORDAN KATZMAN (REMOTELY):

GILLIAN B. MILLER, ESQ.
GIBSON, DUNN & CRUTHCER LLP
One Embarcadero Center
Suite 2600
(415) 393-4623
gmiller@gibsondunn.com

FOR THE BANKRUPTCY TRUSTEE, ALLISON D. BYMAN (REMOTELY):

AARON J. POWER, ESQ.
PORTER HEDGES
100 Main Street
36th Floor
Houston, Texas 77002
(713) 226-6631
apower@porterhedges.com

Page 4

- - -
I N D E X
- - -
WITNESS:  ALLISON D. BYMAN                PAGE

BY MR. RAMMELT.............................. 5
BY MR. CATHELL.............................. 38
REPORTER'S CERTIFICATION.................... 40
* * *

E X H I B I T S
EXHIBITS          DESCRIPTION          PAGE
Exhibit 1   Notice of Deposition          6
Exhibit 2   Email, Subject:  RE: SDC,          16
          TRUSTEE-000118 through 124

Page 5

PROCEEDINGS:

(Friday, December 6, 2024, at 9:03 a.m.)

ALLISON D. BYMAN, after having been first duly sworn by the above-mentioned Certified Court Reporter, was examined and testified as follows:

EXAMINATION

BY MR. RAMMELT:

Q.  Good morning, Ms. Byman.  My name is David Rammelt, and I'm with the Benesch law firm, and I represent some of the individual defendants in the underlying Securities Litigation.  That's Steve Katzman, David Katzman, Susan Rammelt, Rich Schnall, Kyle Wailes, and Camelot Venture Group.

How would you prefer that I address you today?

A.  You can call me Allison.

Q.  All right.  I'll call you -- I'll call you Allison or Ms. Byman.  I didn't know if Madam Trustee or --

A.  No, not at all.

Q.  Okay.  Good.

I think I know the answer to this question: You've had your deposition taken before, right?

A.  Yes.

2 (Pages 2 - 5)

Page 6

Q. And you understand the ground rules, right?

A. Yes.

Q. And is there any reason that you can't tell the truth today?

A. No.

Q. I'm going to put up on the screen what we're going to mark as Deposition Exhibit No. 1. It's the notice of deposition for your deposition today.

We sent it to Aaron yesterday, I believe, once we firmed up the date for your deposition, and I should say, while Andrew is putting that up on the screen so you can see it, thank you very much for agreeing to sit today. I know this was last minute, and we really appreciate your efforts, as well as Aaron's efforts.

(Exhibit 1 was marked for identification.)

BY MR. RAMMELT:

Q. All right. You should be able to see in front of you what we marked as Deposition Exhibit Number 1.

Have you seen this document before? And we'll scroll through it for you, if you would like us to.

A. I saw it come through email yesterday.

Q. Okay.

MR. RAMMELT: Andrew, if you could move to

Page 7

the second-to-last page where there are some document requests listed.

MR. FIORELLA: (Complied.)

BY MR. RAMMELT:

Q. Ms. Byman, if I could direct your attention to that.

Did you have an opportunity to look at these document requests prior to your deposition today?

A. I did not look at the ones that were sent yesterday, so this was different.

I looked at -- I think you guys sent some over the weekend from the initial time. I looked at those.

Q. Yeah.

A. If there's nothing different, then I should have responded to everything.

Q. Perfect. Yeah. And you're exactly right.

This is identical to a prior notice that we sent with a different date. And then when we set this date, we sent this out yesterday just so that that was correct, but they're the exact same document requests.

My question is: Did you personally do anything to search for any of the documents that are requested in this?

A. Yes. I searched my email for responsive

Page 8

documents.

THE WITNESS: I'm going to mute my phone really quickly. I'm sorry. It keeps ringing.

Okay. Sorry about that.

MR. RAMMELT: Sure. Absolutely.

BY MR. RAMMELT:

Q. In looking through the emails that Aaron very kindly gathered for us and produced last night, I do not see any emails where you are the author communicating with either Consilio or the Securities Plaintiffs regarding the matters that we are discussing today.

Is that -- is that true?

A. Yes, that's correct.

Q. When did the Securities Plaintiffs approach you or first communicate with you about accessing documents that were held by the debtors or any of the individual defendants, if you recall?

MR. WOOD: I'm just going to interject.

I think, David, it's possible that some of your questions could implicate a common interest privilege, and so I'm going to ask that the witness not reveal any communications that would be subject to a common interest privilege between the Trustee and counsel for the Securities Plaintiffs regarding the debtors' books and records.

Page 9

MR. POWER: And, David, State Plaintiffs share that objection as well.

BY MR. RAMMELT:

Q. And it -- I'll repeat the question to you, Ms. Byman.

MR. RAMMELT: But for the purposes of the deposition, I think the ground rule has been, you know, one objection is sufficient for objections from everyone else.

BY MR. RAMMELT:

Q. So, Ms. Byman, I'll repeat my question.

When did the Securities Plaintiffs first approach you about the debtors or any of the individual defendants' documents?

A. I did not pay attention, really, to dates. I know it was in the spring. It was -- I -- but I don't have an exact date.

I got appointed in January. I spoke with them, of course, in connection with retention for the State's D&O claims, and then it was sometime after those discussions.

Q. I want to follow up on that question, but before I get there, is -- Mr. Wood or anyone associated with his firm or any of the plaintiffs' law firms in the underlying Securities Litigation, do any of those

3 (Pages 6 - 9)

Page 10

represent you, the Trustee?

A. No.

Q. Do you have a written common interest agreement with Mr. Wood or any of the lawyers that work for his firm or any of the other law firms that represent the plaintiffs in the underlying Securities Litigation?

A. I don't personally. I don't know if my lawyers have something in writing, but I don't have anything in writing other than our emails.

Q. To your knowledge, is there any written agreement of any kind between the Trustee and Mr. Wood, any member of his firm, or any of the law firms that represent the plaintiffs in the underlying Securities Litigation?

MR. WOOD: Objection to form.

MR. POWER: Objection.

THE WITNESS: I don't think so.

BY MR. RAMMELT:

Q. You mentioned that you, I think -- I want to make sure I understand. But I think you mentioned that shortly after you were appointed as the Trustee in connection with this bankruptcy that you had some discussions, either with Mr. Wood or others from his firm, regarding retention to analyze, I think you said, potential D&O claims; is that correct?

Page 11

A. Yes.

Q. You did not retain them, correct?

A. That's correct.

Q. Did they approach you, or did you reach out to them about possibly retaining them to pursue those claims?

A. They --

MR. POWER: Objection; form.

MR. WOOD: Join.

THE WITNESS: They reached out to me.

BY MR. RAMMELT:

Q. And what did they say to you?

MR. WOOD: I'm going to object again based on the common interest privilege.

I believe that Ms. Byman talked about this topic a little bit in the -- in the prior hearing in front of the Court, but I would ask her not to reveal any substantive communications, subject to a common interest privilege.

MR. MINHAS: State Plaintiffs --

MR. POWER: I also think we're -- sorry. Go ahead, Mandeep.

MR. MINHAS: State Plaintiffs share that objection as well.

David, can we have a stipulation that an

Page 12

objection by federal counsel preserves an objection for State counsel as well, just so we don't slow this down?

MR. RAMMELT: I thought I did that at the onset of the dep, Mandeep, but that's perfectly fine.

MR. MINHAS: Thank you.

MR. POWER: But, David, I also think we're going well outside of the topics related to the emergency motion.

MR. RAMMELT: Duly noted.

This has to go -- if -- if somebody is going to instruct Ms. Byman not to answer a question on the basis of some kind of privilege, I believe I am entitled to explore what that privilege is, particularly since she's made clear that she did not retain them, and they are not her counsel.

BY MR. RAMMELT:

Q. So I'll repeat that question, Ms. Byman. Why did they reach out to you, and what did they say?

A. We discussed Mr. Wood's firm, Mr. Etkin's firm potentially representing the estate in connection with the D&O claims the estate would have against former directors and officers.

Q. And based on those discussions, did you decide to retain Mr. Wood or his firm or any of the plaintiffs'

Page 13

firms?

A. I did not retain them.

Q. Why?

A. I went in another direction and attempted to retain Orrick.

(Reporter clarification.)

MR. RAMMELT: Kari, that's -- you may know -- it's O-R-R-I-C-K.

BY MR. RAMMELT:

Q. Is there anyone from the Orrick firm on this deposition today?

A. I don't think so.

Q. If there is anybody, will you just let me know?

MR. RAMMELT: I don't think we went through the usual, kind of, who's appeared on the record, but I just want to know if there's anyone from Orrick on this call?

With that silence, I will assume there were none.

BY MR. RAMMELT:

Q. When the Securities Plaintiffs approached you -- strike that.

How did they know -- if you have any understanding, how did Mr. Wood know that you were looking for, soliciting, or considering hiring outside

4 (Pages 10 - 13)

Page 14

counsel to investigate and pursue claims against any of the former officers and directors?

MR. WOOD: Objection to form.

THE WITNESS: I -- I don't know how they knew.

I'm -- it was -- it was an obvious assumption that the Chapter 7 Trustee would be pursuing those causes of action, and then the -- there are certain causes of action that they are asserting that are similar.

BY MR. RAMMELT:

Q. And when they approached you, did they ask you at that time to access any of the documents owned or that belonged to the debtors or the individual defendants in the Securities Litigation?

MR. WOOD: I'm going to object and, again, just ask the witness not to reveal any communications that would be subject to a common interest privilege.

MR. RAMMELT: Chris, you can't instruct her not to answer, so she can answer everything unless somebody instructs her not to answer, and then we'll take that up, as necessary.

But you can lodge an objection. I don't think the one that you're lodging is actually recognized under the federal rules of procedure.

Page 15

You have no privilege with her, so if you're going to instruct her, you instruct her; otherwise, we don't need to go through this.

MR. WOOD: Okay. David, I'm going to make my objections as I see fit. I asked her not to reveal any privileged information. She is the witness; she can do what she wants, but I'm going to lodge my objection.

BY MR. RAMMELT:

Q. Let me try it this way, Ms. Byman: Are you going to follow an instruction by Mr. Wood to refuse to answer any of my questions today?

MR. WOOD: David, it wasn't an instruction.

I was asking the witness not to reveal any communications that would be subject to a common interest privilege.

I think you've already established that I don't represent her, so she's going to do what she's going to do, but I'm going to make my -- make my objections known.

MR. RAMMELT: Kari, could you repeat my question, please?

(Requested material was read back.)

MR. WOOD: Objection to form.

THE WITNESS: No. As everyone has said, he is not my lawyer. Mr. Power is representing me in the

Page 16

deposition.

BY MR. RAMMELT:

Q. Thank you.

If we could, I'm going to ask Andrew to put up on the screen what we are going to mark as Deposition Exhibit Number 2.

MR. RAMMELT: And for everybody on this Zoom call, it's part of the production that Aaron kindly made to us last night. It is the document that's been Bates-labeled TRUSTEE-118 through 124.

And, Andrew, if you could scoot forward to the second-to-last page. It would be Page 6 of this email string.

MR. FIORELLA: (Complied.)

(Exhibit 2 was marked for identification.)

BY MR. RAMMELT:

Q. Ms. Byman, I'm putting this up on the screen for you because it might refresh your recollection or give us a sense of dates.

The email at the very bottom dated March 28th, 2024, from one of your counsel at Porter Hedges to one of the lawyers for the Securities Plaintiffs in this case at the Lowenstein firm is dated March 28th, 2024. That's the earliest date we see of a written communication.

Page 17

With that in mind, my question is, to you: Do you recall, was it close to March 28th, or how long before March 28th did the Securities Plaintiffs begin having discussions with you or your lawyers about the documents?

A. I think it was probably right around March 28th. I don't know of anything really before these emails came through about the redactions.

Q. At this time -- so we'll just use this date, March 28th, 2024 -- were you aware where the debtors and any of the individual defendants were located?

A. I may have misheard your question. Are you asking me if I knew where the people were or the --

Q. No, the documents. Did you know where the documents were?

A. Generally, I knew about Consilio before this, just in the initial talks with the debtor representatives, with Susan, the general counsel. We went through some of the litigation analysis early on, and so I knew there was a database -- an eDiscovery service that was housing all the documents.

Q. Have you ever worked with or used Consilio as a vendor in any of your cases?

A. I have not.

Q. Have you, yourself, ever had any direct

5 (Pages 14 - 17)

Page 18

communications with any representative of Consilio?

A. Not -- I have had a -- some emails related to prepetition billing from Consilio, so completely unrelated to any of this. So I mean, I have talked to a person via email about bills, that, like, they weren't going to get paid, but other than that, I have not spoken directly to Consilio.

Q. And that leads me to my next question: Have you, as the Trustee, or anyone on behalf of the estate paid any money to Consilio for housing, maintaining, accessing, copying, or in any way using any of the documents that belonged to the debtors or the individual defendants?

MR. WOOD: Objection to form.

THE WITNESS: I have not. The agreement with Consilio is actually that Orrick will pay for the service, and I do not believe that Orrick has made any payments to them yet based on the fact that there aren't final invoices -- final invoices haven't been presented to Orrick.

BY MR. RAMMELT:

Q. So the record is clear: To date, neither the estate nor the Trustee have paid Consilio anything for accessing, maintaining, housing the Consilio database; is that correct?

Page 19

A. That's correct.

Q. And you mentioned Orrick. I know there was a previous hearing and some briefing having to do with Orrick.

I guess my question is: Did you, as the Trustee, retain Orrick to represent it or the estate in any litigation?

A. I attempted to retain Orrick previously, and that was not approved by the Court. I have another application to retain Orrick that will be filed shortly.

Q. Do you have an engagement agreement with Orrick?

A. No.

Q. Do you have a retention or any kind of written agreement with Orrick concerning the services or the scope of the services that it's going to provide to you?

A. I'm -- I'm waiting to receive it. I do not have one currently.

Q. Have you paid Orrick anything?

A. No.

Q. Do you have any funds available to you as the Trustee to pay Orrick to represent you?

A. I have some funds, not nearly enough to pay Orrick to represent me. The anticipated representation will be a contingent-fee basis.

Page 20

Q. But you have not retained them yet, correct?

A. No.

Q. Just to be clear: You have not retained them, correct?

A. No.

Q. Sorry. So I'm not correct?

A. Okay. I have not retained them.

Q. Perfect.

A. Sorry.

Q. No worries. That's why I repeated it. Sometimes I feel like if I say question, right --

A. Right.

Q. -- I know that it's not clear. So I'm sorry. I'll repeat it if I'm not clear, and that's my mistake.

I think you made the record clear; you have not retained them.

Why are you in discussions to retain them?

MR. POWER: So that I'm going to object to on privilege basis. If she can answer it, that's fine, but otherwise, I'm going to instruct her not to answer.

BY MR. RAMMELT:

Q. Can you answer the question, Ms. Byman?

A. I'm seeking to retain them to represent the estate in connection with the D&O claims.

Q. Have you ever looked at a single document in

Page 21

the Consilio database?

A. No.

Q. To your knowledge, has Orrick looked at any documents in the Consilio database?

A. Yes.

Q. Do you know what documents they've looked at?

A. No.

MR. WOOD: I'm going to object. I believe that calls for information covered by the common interest privilege.

BY MR. RAMMELT:

Q. Do you know if Orrick has maintained an index or log or any kind of record of the documents that they have looked at in the Consilio database?

MR. POWER: Objection; form.

MR. WOOD: Objection; form.

THE WITNESS: I don't know.

BY MR. RAMMELT:

Q. How many documents in total are in the Consilio database?

A. I do not know.

Q. Are you aware that the Consilio database houses over 2.2 million documents? Were you aware of that?

MR. POWER: Objection; form.

THE WITNESS: No, I don't know.

6 (Pages 18 - 21)

Page 22

BY MR. RAMMELT:

Q. Of the 2.2 million documents that are in the Consilio database, do you know how many were previously produced by the debtors or any of the individual defendants in any litigation?

MR. POWER: Objection; form.

THE WITNESS: I do not know.

BY MR. RAMMELT:

Q. Of the 2.2 million documents, do you have any idea how many of those have never been reviewed by the debtors, the individual defendants, or their lawyers?

MR. POWER: Objection; form.

THE WITNESS: I do not know.

BY MR. RAMMELT:

Q. Of the 2.2 million documents in the Consilio database, do you know how many belong to the debtors as opposed to documents there that belong to the individual defendants or other third parties?

MR. POWER: Objection; form.

THE WITNESS: I -- I would assume that they are all debtor records, but I do not know.

BY MR. RAMMELT:

Q. Has anybody, to your knowledge, made any attempt whatsoever to review the 2.2 million documents in the Consilio database to determine which of those

Page 23

documents are owned by the debtors as opposed to which are owned by the individual defendants or any other party?

MR. POWER: Objection; form.

THE WITNESS: I've never been made aware that there was a claim that the documents in Consilio were not all the debtors' documents.

BY MR. RAMMELT:

Q. Do you know how many of the 2.2 million documents in that database are privileged?

A. No.

MR. POWER: Objection; form.

BY MR. RAMMELT:

Q. Do you know how many of the documents in the Consilio database contain personal information about SmileDirectClub patients that are protected by HIPAA?

MR. POWER: Objection; form.

THE WITNESS: No.

BY MR. RAMMELT:

Q. Do you know whether Orrick or anybody else has accessed documents in the 2.2 million that are in the database that are confidential patient records protected by HIPAA?

MR. POWER: Objection; form.

THE WITNESS: I do not know.

Page 24

BY MR. RAMMELT:

Q. Do you know how many of the 2.2 million documents in the Consilio database contain personal confidential information about either the individual defendants or others, third parties?

MR. POWER: Objection; form.

THE WITNESS: I do not know.

BY MR. RAMMELT:

Q. Do you know whether the Consilio database has any coding or comments from the individual lawyers in this case concerning privilege or any other descriptions or categorizations?

A. I don't know.

Q. And I think you answered this. But you don't know whether the Consilio database housed documents that are owned by the individual defendants or the third parties; is that correct?

MR. WOOD: Form.

THE WITNESS: Again, I -- the way I answered before is true. I've never been made aware that the database contained anything other than debtor records.

BY MR. RAMMELT:

Q. And the point is, you don't know one way or the other what's in there, right.

Page 25

A. ...at Consilio.

THE COURT REPORTER: I'm sorry. The beginning of your answer glitched out.

THE WITNESS: I have never looked at Consilio.

THE COURT REPORTER: Thank you.

BY MR. RAMMELT:

Q. Have you ever participated in conference calls with any of the lawyers representing the plaintiffs in the Securities Litigation?

A. Yes.

Q. How many?

A. Less than five.

Q. And during those calls, did you discuss the documents that were in the Consilio database and whether any of those were privileged or whether any belonged to the individual defendants?

MR. WOOD: Objection to the extent it calls for information covered by the common interest privilege.

THE WITNESS: I don't believe we ever discussed there being other -- other entity or other people's records in Consilio.

BY MR. RAMMELT:

Q. Other than reviewing all of the documents in

7 (Pages 22 - 25)

800-567-8658                                                                                    973-410-4098

Page 26

the 2.2 million in the database, how would we determine, in your opinion, which documents belong to the debtors as opposed to which documents belong to the individual defendants or others?

MR. POWER: Objection; form.

THE WITNESS: I don't -- I never used Consilio. I don't know how you would operate within Consilio. My position would be that all of the documents within Consilio are the debtors' records. It's the debtor --

BY MR. RAMMELT:

Q. Why?

A. It's the debtors' account and the debtors -- and now the estate will be responsible for paying for it.

Q. How do you know that it's the debtors' account?

A. That's what was represented to me by Susan Remmelt when I took over the case.

Q. Other than the Orrick law firm and Mr. Wood and any of the lawyers for the Securities Plaintiffs, have any other parties requested access to the Consilio database?

A. I don't -- no, I don't think so.

Q. Have you worked with Orrick prior to this case?

A. No.

Page 27

Q. In speaking with Aaron yesterday, he had mentioned -- and, Aaron, I'm not taking words out of your mouth; I'm just generalizing -- but basically that you're obviously very busy, and that you kind of turned it over to Orrick and delegated to Orrick, working with, having discussions with, negotiating with the plaintiffs' securities lawyers about accessing documents in the Consilio database.

Is that a -- is that a fair statement?

A. Yes.

Q. So if I want to figure out what was discussed and what limitations were placed on access or anything like that, I'd have to talk to the Orrick lawyers, right?

MR. WOOD: Objection to form.

THE WITNESS: Yes.

BY MR. REMMELT:

Q. Has Orrick been provided with a copy of the confidentiality protective order that's been entered in the underlying Securities Litigation?

MR. POWER: Objection; form.

THE WITNESS: I don't know if they've been provided with it, but I believe they have reviewed it.

BY MR. RAMMELT:

Q. Why do you think that?

Page 28

A. It was referenced in one of the emails that we produced to you.

Q. You agreed to waive privileges that are owned by or belong to the debtors, correct?

A. Correct.

Q. And that's part of your role as a Trustee in these circumstances; you are able to waive privilege on behalf of the debtors, correct?

A. Correct.

Q. You did not agree to waive privilege, however, for any privileges held by the individual defendants or anybody else, correct?

MR. WOOD: Objection to form.

THE WITNESS: Correct. I can only waive privilege for the debtors.

BY MR. RAMMELT:

Q. Several months ago Aaron and I were able to talk about this, and he very kindly sent me an email where he said, "We've waived privilege on behalf of the debtor. We have not waived privilege on behalf of any other party or the individual defendants."

Did he consult with you before sending that?

A. Yes.

Q. And that reflects your position, correct?

Page 29

A. Yes, that's correct.

Q. When the plaintiffs approached you, they specifically said that they wanted to look at documents that had been designated as privileged and redacted, correct?

MR. WOOD: Objection to form.

MR. POWER: Objection to form.

MR. WOOD: And common interest privilege.

THE WITNESS: Yes.

BY MR. RAMMELT:

Q. So right out of the gate, as you understand it, Plaintiffs knew that they were trying to access the database containing documents that had been previously designated as privileged in the litigation, correct?

MR. WOOD: Objection to form.

THE WITNESS: That is correct.

BY MR. RAMMELT:

Q. Do you know whether in the Consilio database the privileged documents are segregated in some way?

A. I do not know.

Q. Have you placed any limitations or restrictions of any kind on the documents that the Securities Plaintiffs can access in the Consilio database?

A. I -- I think they are only allowed to access the portion of the debtors' account at Consilio that

8 (Pages 26 - 29)

Page 30

relates to this litigation.

I probably don't have the terminology of that down correctly, but there are several different segregated databases. Their only access is to the database related to this litigation, and that is the restriction I'm aware of.

And then the waiver was subject, obviously, to clawback after review.

Q. So is it your understanding that, within the Consilio database, documents are segregated or grouped, whatever word you would want to use, by litigation; so there might be a group of documents, for example, in an arbitration between SmileDirectClub and Align.

There might be documents that were produced or at issue in the Ciccio class action litigation; is that your understanding?

A. Yes.

Q. And as far as you know, the only documents that you gave permission to the Securities Plaintiffs to access would be those documents that were produced in the Securities Litigation; is that correct?

MR. WOOD: Objection to form. That's not what she said.

THE WITNESS: My understanding is that they were given access to a limited -- to the -- the database

Page 31

or segregated portion of Consilio related to this litigation.

BY MR. RAMMELT:

Q. When you say "this litigation," you're referring to this -- the underlying Securities Litigation as opposed to the bankruptcy?

A. Yes.

Q. Just so that the record is clear, you authorized Plaintiffs only to access those documents that were in that portion of the Consilio database that housed the documents that were produced in the Securities Litigation, correct?

MR. WOOD: Objection to form. Misstates testimony.

THE WITNESS: Yeah, I don't know what was produced, so I -- I just believe that they were -- that the access is related to the documents that are related to this -- your Securities Litigation.

I don't know if it was limited. I don't think it was limited to what was only produced. It's whatever that database is.

BY MR. RAMMELT:

Q. Okay. Thank you.

MR. RAMMELT: And, Chris, just so the record is clear, my understanding is today we've been

Page 32

objecting to form, as permitted, but we haven't added, you know, extra coaching and colloquy and, you know, your thoughts to steer the witness's responses.

So haven't we been doing that, or are we going to start -- when we object now, started adding?

MR. WOOD: Yeah, I think, David, if you're going to intentionally try to mislead the witness and intentionally try to get misleading testimony when she has answered differently before, then I'm going to call that out because I think that's completely unprofessional and inappropriate.

MR. RAMMELT: Putting aside your opinion of what my questions are or not, are you going to start limiting your objections to the form of the question, as you intend -- as permitted here -- as permitted under the federal rules?

And be careful here because, you know what, we think that 60 to 70 percent of the questions that you and your colleagues have been asking in the underlying Securities Litigation have been misleading or made false representations of fact.

I don't think that we have done what you are doing now. I think we abided by the rules.

So my question to you is: Are you going to abide by the rules and keep your objections to form; yes

Page 33

or no?

MR. WOOD: Okay. Well, you're not deposing me, so I'm not here to answer your questions, David. But if you're going to try to mislead the witness, I'm going to make my opinion about that known.

MR. POWER: Okay. Could we get back to the deposition here to be respectful of Ms. Byman's time?

MR. RAMMELT: Yep.

BY MR. RAMMELT:

Q. Do you know, Ms. Byman, whether Orrick or anyone on your behalf made any attempt to limit or restrict the types of access that the Securities Plaintiffs had to the Consilio database?

MR. POWER: Objection; form.

THE WITNESS: Other than what I've already explained, that my understanding is they were only granted access to a certain portion of all of the debtors' records that are in Consilio, I do not know of any additional specific restrictions.

BY MR. RAMMELT:

Q. Okay. And what is the basis of your understanding?

A. From the emails that I reviewed and was copied on and produced regarding what the waiver of the privilege would be, again I don't know the specifics or

9 (Pages 30 - 33)

Page 34

technicalities of Consilio, so I don't know -- I wouldn't have been involved in setting restrictions or discussing them.

Q. Did you or anyone on your behalf insist that the Securities Plaintiffs or their lawyers paid to access the Consilio database in order to look at the documents in there?

A. I'm going to ask you to clarify the question. Are you asking did I insist that they pay for access?

Q. Did you -- do you know whether they did pay for access, is the first question?

A. I do not think they have paid anything yet. I believe there is an agreement to share costs, and that agreement is with Orrick. It's not an agreement with me.

Q. When the plaintiffs' lawyers in the securities case first approached you or the lawyers that represent you, did you tell them that the estate had not paid to access any of the documents in the database that Consilio was owed money?

A. I don't remember if we discussed that. I think it was common knowledge to most creditors at that point that there was no money in the estate to pay for anything, other than the bare minimum of professional fees.

Page 35

Q. Did you know that -- that I and other lawyers with my firm and other firms that are representing the individual defendants in various litigation, that we were denied access to the documents that were in the Consilio database until the past-due invoices were paid? Were you aware of that?

A. I know that I was notified that people, other than estate counsel, were trying to get access to Consilio, and that I attempted to restrict anyone from accessing it.

I did not know that you were restricted based on one payment. I just wanted to shut down access to preserve the debtors' records and understanding who was using them.

Q. So I will represent to you that the individual defendants have paid Consilio several hundred thousand dollars in order to access that database, which had been shut down, both in order to access it and use the documents.

Were you aware of that?

A. No, I -- I don't know why they would let you use the debtors' database without asking me to approve it.

Q. As far as you know, the only person that has paid Consilio for anyone to access the database is the

Page 36

individual defendants in the Securities Litigation; is that correct?

MR. POWER: Objection; form.

THE WITNESS: I did not know that until you just said it.

BY MR. RAMMELT:

Q. Okay. Fair enough.

Do you know -- I'm guessing I know the answer to this question, but I'm going to ask it anyway.

Do you know how many times the Securities Plaintiffs have accessed the Consilio database?

MR. WOOD: Objection; form.

THE WITNESS: I do not.

BY MR. RAMMELT:

Q. Do you know what documents they've looked at?

A. I do not.

Q. Do you know whether they've copied any documents?

A. I do not know.

Q. Did you or anyone, to your knowledge, place any restrictions or limitations on what the Securities Plaintiffs could copy from the Consilio database?

MR. WOOD: Objection; form.

THE WITNESS: I did not have any instructions on that.

Page 37

MR. RAMMELT: If we could take -- Aaron, I think I'm done, or if I'm not, I've got handful of questions. Can we take a quick, five-minute break for me to, kind of, caucus, go back through my notes and what you produced?

But I think I'm probably going to be done. We can come back on, and then if anybody else has questions...

MR. POWER: Yeah, I appreciate that. Just so you know, when we were talking about how long this was going to go, I have a hard stop at 10:00, in about 15 minutes. If we could be done by then, I'd greatly appreciate it, if possible.

MR. RAMMELT: Fair enough.

Let's -- Kari, could we go off the record for just two minutes?

THE COURT REPORTER: Yes.

MR. RAMMELT: Thank you.

(Brief recess taken.)

MR. RAMMELT: Ms. Byman, thank you. I'll pass the witness. At this time, I don't have anything further.

MR. WOOD: We don't have anything.

MR. CATHELL: Hey, Aaron, it's Dale Cathell on behalf of Cluster Holdco, the DIP agent. I just

10 (Pages 34 - 37)

Page 38

have, like, two questions. I know you guys need to leave.

EXAMINATION

BY MR. CATHELL:

Q. Good morning, Ms. Byman, good to see you again.

Real quick, with respect to the Consilio database, who actually controls the database currently?

A. It --

MR. POWER: Objection; form.

THE WITNESS: It should be me. That's the understanding with respect to Orrick reaching out. The client is me, but the services will be paid by Orrick.

BY MR. CATHELL:

Q. And my understanding, Ms. Byman, based on your testimony, is that you believe the documents being maintained in the database are the debtors' records?

A. Yes.

Q. And, Ms. Byman, do you agree with me that the debtors' records are part of the DIP agent's collateral in connection with the DIP loan?

MR. POWER: Objection; form.

THE WITNESS: Yes.

BY MR. CATHELL:

Q. And before you provided access to the Securities Plaintiffs, did you obtain the consent of the

Page 39

DIP agent with respect to providing access to the Securities Plaintiffs of these documents?

A. No.

MR. CATHELL: I don't have any more questions.

MR. RAMMELT: Nothing for me.

Again, Ms. Byman, thank you very much. Thanks for doing it at the last minute on a Friday. I appreciate it. We know you're busy.

Aaron, thanks for cooperating to get this scheduled. We really appreciate it everyone have a nice weekend. We're done.

(Deposition concluded at 9:48 a.m.)

Page 40

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION
In re:                ) Chapter 7
                      )
SMILEDIRECTCLUB, INC.,    ) Case No. 23-90786 (CML)
et al.                )
                      ) (Jointly Administered)
Debtors.          )
--------------------------------------------------------
REPORTER'S CERTIFICATION
DEPOSITION OF
ALLISON D. BYMAN
FRIDAY, DECEMBER 6, 2024
(REPORTED REMOTELY)

I, Kari J. Behan, CCR, CSR, and in and for the State of Texas, do hereby certify that the facts as stated by me in the caption hereto are true;

That there came before me the aforementioned named person, who was by me duly sworn to testify the truth concerning the matters in controversy in this cause;

And that the examination was reduced to writing by computer transcription under my supervision; that the deposition is a true record of the testimony given by the witness.

I further certify that I am neither attorney or counsel for, nor related to or employed by, any of the parties to the action in which this deposition is taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties hereto, or financially interested in the action.

Given under my hand and seal of office on this 6th day of December, 2024.

*Kari J. Behan*

KARI E_____, ___, ____
Texas CSR NO. 8564;
Expiration Date: 7-31-2026
VERITEXT LEGAL SOLUTIONS
Firm Registration No. 571
Telephone (800) 336-4000

11 (Pages 38 - 40)

**[& - aforementioned]**                                                   Page 1

| **&** | **21202** 3:6 | **615** 2:13,24 | **above** 1:16 5:4 |
|---|---|---|---|
| **&** 2:6,10,12,23 3:15 | **223-6444** 2:19 | **650** 3:5 | **absolutely** 8:5 |
| | **226-6631** 3:22 | **6th** 40:19 | **access** 14:13 |
| **0** | **23-90786** 1:4 40:4 | **7** | 26:21 27:12 29:12,23,24 |
| **000118** 4:12 | **230** 2:18 | **7** 1:3 14:7 40:3 | 30:4,20,25 |
| **07068** 3:11 | **244-2203** 2:13 | **7-31-2026** 40:24 | 31:9,17 33:12 33:17 34:6,9 |
| **1** | **24th** 2:18 | **70** 32:18 | 34:11,19 35:4 |
| **1** 4:11 6:7,16 6:19 | **2600** 3:16 | **7030** 1:20 | 35:8,12,17,18 35:25 38:24 |
| **100** 3:20 | **28th** 16:21,24 17:2,3,7,10 | **71** 2:6 | 39:1 |
| **10169** 2:19 | | **713** 3:22 | **accessed** 23:21 |
| **10:00** 37:11 | **3** | **77002** 3:21 | 36:11 |
| **1100** 3:5 | **312** 2:7 | **8** | **accessing** 8:15 |
| **118** 16:10 | **31st** 2:12,23 | **800** 40:25 | 18:11,24 27:7 35:10 |
| **124** 4:12 16:10 | **336-4000** 40:25 | **8564** 40:23 | **account** 26:13 |
| **15** 37:12 | **36th** 3:21 | **9** | 26:16 29:25 |
| **16** 4:12 | **37203** 2:13,24 | **973** 3:11 | **action** 14:8,9 |
| **1600** 2:6 | **38** 4:6 | **982-8001** 2:24 | 30:15 40:17,18 |
| **2** | **393-4623** 3:16 | **9:03** 1:17 5:2 | **actually** 14:24 |
| **2** 4:12 16:6,15 | **4** | **9:48** 1:17 39:13 | 18:16 38:7 |
| **2.2** 21:23 22:2 22:9,15,24 | **40** 4:7 | **a** | **added** 32:1 |
| 23:9,21 24:2 26:1 | **415** 3:16 | **a.m.** 1:17,17 5:2 39:13 | **adding** 32:5 |
| **200** 2:12,23 | **5** | **aaron** 3:19 6:9 | **additional** 33:19 |
| **2024** 1:8,17 5:2 16:21,24 17:10 40:8,19 | **5** 4:5 | 8:7 16:8 27:1,2 28:17 37:1,24 39:10 | **address** 5:15 |
| **20807** 40:22 | **571** 40:25 | **aaron's** 6:14 | **administered** 1:5 40:5 |
| **212** 2:19 | **597-2312** 3:11 | **abide** 32:25 | **afiorella** 2:8 |
| **212-4949** 2:7 | **6** | **abided** 32:23 | **aforemention...** 40:11 |
| | **6** 1:8,17 4:11 5:2 16:12 40:8 | **able** 6:18 28:7 28:17 | |
| | **60** 32:18 | | |
| | **60606** 2:7 | | |

**[agent - benesch]** Page 2

| | | | |
|---|---|---|---|
| **agent** 37:25 39:1 | **answered** 24:14,20 32:9 | **asserting** 14:9 | 10:22 31:6 40:1 |
| **agent's** 38:19 | **anticipated** 19:24 | **associated** 9:23 | **bare** 34:24 |
| **ago** 28:17 | **anybody** 13:13 | **assume** 13:18 22:20 | **barrett** 2:23 |
| **agree** 28:10 38:18 | 22:23 23:20 28:12 37:7 | **assumption** 14:7 | **barrettjohnst...** 2:25 |
| **agreed** 28:3 | **anyway** 36:9 | **attempt** 22:24 33:11 | **based** 11:13 12:24 18:18 |
| **agreeing** 6:13 | **apower** 3:22 | **attempted** 13:4 19:8 35:9 | 35:12 38:14 |
| **agreement** 10:3 10:11 18:15 19:11,15 34:13 34:14,14 | **appearances** 3:1 | **attention** 7:5 9:15 | **basically** 27:3 |
| **ahead** 11:22 | **appeared** 13:15 | **attorney** 40:16 40:18 | **basis** 12:12 19:25 20:19 33:21 |
| **ain** 3:4 | **application** 19:10 | **attorneys** 2:15 2:17 | **bates** 16:10 |
| **al** 1:4 40:4 | **appointed** 9:18 10:21 | **author** 8:9 | **beginning** 25:3 |
| **alexa** 3:4 | **appreciate** 6:14 37:9,13 39:9 39:11 | **authorized** 31:9 | **behalf** 18:9 28:8,19,20 33:11 34:4 37:25 |
| **alexa.ain** 3:7 | **approach** 8:14 9:13 11:4 | **available** 19:21 | **behan** 1:18 40:9,23 |
| **alexander** 3:13 | **approached** 13:21 14:12 29:2 34:17 | **ave** 2:18 | **believe** 6:9 11:15 12:12 18:17 21:8 25:21 27:23 31:16 34:13 38:15 |
| **align** 30:13 | | **avenue** 2:12,23 | |
| **allison** 1:7,11 3:18 4:3 5:3,17 5:19 40:7 | **approve** 35:22 | **aware** 17:10 21:22,23 23:5 24:20 30:6 35:6,20 | |
| **allowed** 29:24 | **approved** 19:9 | | |
| **analysis** 17:19 | **arbitration** 30:13 | **b** | |
| **analyze** 10:24 | **aronoff** 2:6 | **b** 3:14 4:9 | **belong** 22:16 22:17 26:2,3 28:4 |
| **andrew** 2:5 6:11,25 16:4 16:11 | **aside** 32:12 | **back** 15:22 33:6 37:4,7 | **belonged** 14:14 18:12 25:16 |
| **answer** 5:23 12:11 14:20,20 14:21 15:11 20:19,20,22 25:3 33:3 36:9 | **asked** 15:5 | **baltimore** 3:6 | **benesch** 2:6 5:10 |
| | **asking** 15:13 17:13 32:19 34:9 35:22 | **bankruptcy** 1:1 1:20 3:18 | |

| | | | |
|---|---|---|---|
| **beneschlaw.c...** 2:8,8 | **careful** 32:17 | **claim** 23:6 | **communicate** 8:15 |
| **billing** 18:3 | **case** 1:4 16:23 24:11 26:18,24 34:17 40:4 | **claims** 9:20 10:25 11:6 12:22 14:1 20:24 | **communicating** 8:9 |
| **bills** 18:5 | **cases** 17:23 | **clarification** 13:6 | **communication** 16:25 |
| **bit** 11:16 | **categorizations** 24:12 | **clarify** 34:8 | **communicati...** 8:22 11:18 14:17 15:14 18:1 |
| **books** 8:25 | **cathell** 3:3 4:6 37:24,24 38:4 38:13,23 39:4 | **class** 30:15 | |
| **bottom** 16:20 | **caucus** 37:4 | **clawback** 30:8 | **completely** 18:3 32:10 |
| **break** 37:3 | **cause** 1:16 40:12 | **clear** 12:14 18:22 20:3,13 20:14,15 31:8 31:25 | **complied** 7:3 16:14 |
| **brief** 37:19 | **causes** 14:8,9 | | **computer** 40:14 |
| **briefing** 19:3 | **ccr** 1:18 40:9 40:23 | **client** 38:12 | **concerning** 19:15 24:11 40:12 |
| **building** 2:18 | **center** 3:15 | **close** 17:2 | |
| **busy** 27:4 39:9 | **certain** 14:9 33:17 | **cluster** 3:2 37:25 | **concluded** 39:13 |
| **byman** 1:7,11 3:18 4:3 5:3,9 5:19 7:5 9:5,11 11:15 12:11,17 15:9 16:17 20:22 33:10 37:20 38:5,14 38:18 39:7 40:7 | **certification** 4:7 40:6 | **cml** 1:4 40:4 | **conference** 25:8 |
| | **certified** 1:18 5:5 | **coaching** 32:2 | **confidential** 23:22 24:4 |
| | **certify** 40:10,16 | **coding** 24:10 | **confidentiality** 27:19 |
| **byman's** 33:7 | **chapter** 1:3 14:7 40:3 | **collateral** 38:19 | **connection** 9:19 10:22 12:21 20:24 38:20 |
| **c** | **chicago** 2:7 | **colleagues** 32:19 | |
| **c** 2:1 13:8 | **chris** 14:19 31:24 | **colloquy** 32:2 | |
| **call** 5:17,18,18 13:17 16:8 32:9 | **christopher** 2:11 | **come** 6:23 37:7 | **consent** 38:25 |
| **calls** 21:9 25:8 25:14,18 | **ciccio** 30:15 | **comments** 24:10 | **considering** 13:25 |
| **camelot** 1:15 2:3 5:14 | **circumstances** 28:7 | **common** 8:20 8:23 10:3 11:14,18 14:18 15:14 21:9 25:19 29:8 34:22 | |
| **caption** 40:10 | | | |

**[consilio - deposing]**

**consilio** 8:10 17:16,22 18:1 18:3,7,10,16,23 18:24 21:1,4 21:14,19,22 22:3,15,25 23:6,15 24:3,9 24:15 25:1,5 25:15,23 26:7 26:8,9,21 27:8 29:18,23,25 30:10 31:1,10 33:13,18 34:1 34:6,20 35:5,9 35:16,25 36:11 36:22 38:6
**consult** 28:22
**contain** 23:15 24:3
**contained** 24:21
**containing** 29:13
**contingent** 19:25
**continued** 3:1
**controls** 38:7
**controversy** 40:12
**cooperating** 39:10
**copied** 33:23 36:17

**coplan** 2:6
**copy** 27:18 36:22
**copying** 18:11
**correct** 7:21 8:13 10:25 11:2,3 18:25 19:1 20:1,4,6 24:17 28:4,5,8 28:9,12,14,25 29:1,5,14,16 30:21 31:12 36:2
**correctly** 30:3
**costs** 34:13
**counsel** 8:24 12:1,2,15 14:1 16:21 17:18 35:8 40:16,18
**course** 9:19
**court** 1:1 5:5 11:17 19:9 25:2,6 37:17 40:1
**covered** 21:9 25:19
**creditors** 34:22
**cruthcer** 3:15
**cs7061530** 1:25
**csr** 1:18 40:9 40:23,23
**currently** 19:18 38:7

**cwood** 2:14

**d**

**d** 1:7,11 3:18 4:1,3 5:3 40:7
**d&o** 9:20 10:25 12:22 20:24
**dale** 3:3 37:24
**dale.cathell** 3:6
**database** 17:20 18:24 21:1,4 21:14,20,22 22:3,16,25 23:10,15,22 24:3,9,15,21 25:15 26:1,22 27:8 29:13,18 29:23 30:5,10 30:25 31:10,21 33:13 34:6,19 35:5,17,22,25 36:11,22 38:7 38:7,16
**databases** 30:4
**date** 6:10 7:19 7:20 9:17 16:24 17:9 18:22 40:24
**dated** 16:20,23
**dates** 9:15 16:19
**david** 1:13 2:2 2:4 5:10,13 8:19 9:1 11:25

12:6 15:4,12 32:6 33:3
**day** 40:19
**debtor** 17:17 22:21 24:21 26:10 28:20
**debtors** 1:5 8:16,25 9:13 14:14 17:10 18:12 22:4,11 22:16 23:1,7 26:2,9,13,13,16 28:4,8,15 29:25 33:18 35:13,22 38:16 38:19 40:5
**december** 1:8 1:17 5:2 40:8 40:19
**decide** 12:24
**defendants** 1:13 2:2 5:11 8:17 9:14 14:15 17:11 18:13 22:5,11 22:18 23:2 24:5,16 25:17 26:4 28:11,21 35:3,16 36:1
**delegated** 27:5
**denied** 35:4
**dep** 12:4
**deposing** 33:2

**[deposition - extra]**                                      Page 5

**deposition** 1:7 1:11 4:11 5:24 6:7,8,8,10,19 7:8 9:7 13:11 16:1,5 33:7 39:13 40:7,14 40:17
**description** 4:10
**descriptions** 24:11
**designated** 29:4,14
**determine** 22:25 26:1
**different** 7:10 7:15,19 30:3
**differently** 32:9
**dip** 37:25 38:19 38:20 39:1
**direct** 7:5 17:25
**direction** 13:4
**directly** 18:7
**directors** 12:23 14:2
**discuss** 25:14
**discussed** 12:20 25:22 27:11 34:21
**discussing** 8:11 34:3
**discussions** 9:21 10:23 12:24 17:4

20:17 27:6
**district** 1:1 40:1
**division** 1:2 40:2
**dla** 3:4
**dlapiper.com** 3:6,7
**document** 6:20 7:1,8,21 16:9 20:25
**documents** 7:23 8:1,15 9:14 14:13 17:5,14,15,21 18:12 21:4,6 21:13,19,23 22:2,9,15,17,24 23:1,6,7,10,14 23:21 24:3,15 25:15,25 26:2 26:3,9 27:7 29:3,13,19,22 30:10,12,14,18 30:20 31:9,11 31:17 34:7,19 35:4,19 36:15 36:18 38:15 39:2
**doing** 32:4,23 39:8
**dollars** 35:17
**dowd** 2:10,12

**drammelt** 2:8
**drive** 2:6 3:10
**due** 35:5
**duly** 1:15 5:4 12:9 40:12
**dunn** 3:15

**e**

**e** 2:1,1 4:1,9
**earliest** 16:24
**early** 17:19
**east** 3:5
**ediscovery** 17:20
**efforts** 6:14,15
**either** 8:10 10:23 24:4
**email** 4:12 6:23 7:25 16:13,20 18:5 28:18
**emails** 8:7,9 10:9 17:8 18:2 28:1 33:23
**embarcadero** 3:15
**emergency** 12:8
**employed** 40:16,18
**employee** 40:17
**engagement** 19:11
**entered** 27:19

**entitled** 12:13
**entity** 25:22
**esq** 2:4,5,11,17 2:22 3:3,4,9,14 3:19
**established** 15:16
**estate** 12:21,22 18:9,23 19:6 20:24 26:14 34:18,23 35:8
**et** 1:4 40:4
**etkin** 3:9
**etkin's** 12:20
**everybody** 16:7
**exact** 7:21 9:17
**exactly** 7:17
**examination** 5:7 38:3 40:13
**examined** 5:5
**example** 30:12
**exeter** 3:5
**exhibit** 4:11,12 6:7,16,19 16:6 16:15
**exhibits** 4:10
**expiration** 40:24
**explained** 33:16
**explore** 12:13
**extent** 25:18
**extra** 32:2

Veritext Legal Solutions

800-567-8658                                                         973-410-4098

**[fact - housed]**

Page 6

| f | first  5:4 8:15 | g | good  5:9,22 |
|---|---|---|---|

**f**

**fact**  18:18 32:21
**facts**  40:10
**fair**  27:9 36:7 37:14
**false**  32:20
**far**  30:18 35:24
**federal**  1:20 2:10 12:1 14:25 32:16
**fee**  19:25
**feel**  20:11
**fees**  34:25
**fenkell**  3:13
**figure**  27:11
**filed**  19:10
**final**  18:19,19
**financially** 40:18
**fine**  12:4 20:19
**fiorella**  2:5 7:3 16:14
**firm**  5:10 9:24 10:5,12,24 12:20,20,25 13:10 16:23 26:19 35:2 40:25
**firmed**  6:10
**firms**  9:24 10:5 10:12 13:1 35:2

**first**  5:4 8:15 9:12 34:11,17
**fit**  15:5
**five**  25:13 37:3
**floor**  2:18 3:21
**follow**  9:22 15:10
**follows**  5:6
**form**  10:15 11:8 14:3 15:23 18:14 21:15,16,24 22:6,12,19 23:4,12,17,24 24:6,18 26:5 27:15,21 28:13 29:6,7,15 30:22 31:13 32:1,14,25 33:14 36:3,12 36:23 38:9,21
**former**  12:22 14:2
**forward**  16:11
**friday**  1:16 5:2 39:8 40:8
**friedlander**  2:6
**front**  6:18 11:17
**funds**  19:21,23
**further**  37:22 40:16,17

**g**

**g**  2:5
**garrison**  2:23
**gate**  29:11
**gathered**  8:8
**geller**  2:10,12
**general**  17:18
**generalizing** 27:3
**generally**  17:16
**gibson**  3:15
**gibsondunn.c...** 3:17
**gillian**  3:14
**give**  16:19
**given**  30:25 40:14,19
**glitched**  25:3
**gmiller**  3:17
**go**  11:22 12:10 15:3 37:4,11 37:15
**going**  6:6,7 8:2 8:18,21 11:13 12:7,11 14:16 15:2,4,7,10,17 15:18,18 16:4 16:5 18:6 19:16 20:18,20 21:8 32:5,7,9 32:13,24 33:4 33:5 34:8 36:9 37:6,11

**good**  5:9,22 38:5,5
**granted**  33:17
**greatly**  37:12
**greenspon**  1:14 2:3
**ground**  6:1 9:7
**group**  1:15 2:3 5:14 30:12
**grouped**  30:10
**guess**  19:5
**guessing**  36:8
**guys**  7:11 38:1

**h**

**h**  4:9
**hand**  40:19
**handful**  37:2
**harbor**  3:5
**hard**  37:11
**hearing**  11:16 19:3
**hedges**  3:20 16:22
**held**  8:16 28:11
**helmsley**  2:18
**hereto**  40:10,18
**hey**  37:24
**hipaa**  23:16,23
**hiring**  13:25
**holdco**  3:2 37:25
**housed**  24:15 31:11

| | | | |
|---|---|---|---|
| **houses** 21:22 | **instance** 1:12 | **job** 1:25 | 22:13,16,21 |
| **housing** 17:21 | **instruct** 12:11 | **johnston** 2:23 | 23:9,14,20,25 |
| 18:10,24 | 14:19 15:2,2 | **join** 11:9 | 24:2,7,9,13,15 |
| **houston** 1:2 | 20:20 | **jointly** 1:5 40:5 | 24:24 26:7,16 |
| 3:21 40:2 | **instruction** | **jordan** 3:13 | 27:22 29:18,20 |
| **hundred** 35:16 | 15:10,12 | **k** | 30:18 31:15,19 |
| **i** | **instructions** | **k** 13:8 | 32:2,2,17 |
| **idea** 22:10 | 36:25 | **kari** 1:17 13:7 | 33:10,18,25 |
| **identical** 7:18 | **instructs** 14:21 | 15:20 37:15 | 34:1,10 35:1,7 |
| **identification** | **intend** 32:15 | 40:9,23 | 35:11,21,24 |
| 6:16 16:15 | **intentionally** | **katzman** 1:13 | 36:4,8,8,10,15 |
| **illinois** 2:7 | 32:7,8 | 1:13 2:2,3 3:13 | 36:17,19 37:10 |
| **implicate** 8:20 | **interest** 8:20,23 | 5:12,13 | 38:1 39:9 |
| **inappropriate** | 10:3 11:14,19 | **keep** 32:25 | **knowledge** |
| 32:11 | 14:18 15:15 | **keeps** 8:3 | 10:10 21:3 |
| **index** 21:12 | 21:10 25:19 | **kind** 10:11 | 22:23 34:22 |
| **individual** 1:12 | 29:8 | 12:12 13:15 | 36:20 |
| 2:2 5:11 8:16 | **interested** | 19:14 21:13 | **known** 15:19 |
| 9:13 14:14 | 40:18 | 27:4 29:22 | 33:5 |
| 17:11 18:12 | **interject** 8:18 | 37:4 | **kyle** 1:14 2:3 |
| 22:4,11,17 | **investigate** | **kindly** 8:8 16:8 | 5:13 |
| 23:2 24:4,10 | 14:1 | 28:18 | **l** |
| 24:16 25:17 | **invoices** 18:19 | **knew** 14:5 | **labeled** 16:10 |
| 26:3 28:11,21 | 18:19 35:5 | 17:13,16,20 | **law** 2:15,17 |
| 35:3,15 36:1 | **involved** 34:2 | 29:12 | 5:10 9:24 10:5 |
| **information** | **issue** 30:15 | **know** 5:19,23 | 10:12 26:19 |
| 15:6 21:9 | **j** | 6:13 9:7,16 | **lawyer** 15:25 |
| 23:15 24:4 | **j** 3:19 40:9 | 10:7 13:8,13 | **lawyers** 10:4,7 |
| 25:19 | **january** 9:18 | 13:16,23,24 | 16:22 17:4 |
| **initial** 7:12 | **jerry** 2:22 | 14:4 17:7,14 | 22:11 24:10 |
| 17:17 | **jersey** 3:11 | 19:2 20:13 | 25:9 26:20 |
| **insist** 34:4,9 | **jmartin** 2:25 | 21:6,12,17,21 | 27:7,13 34:5 |
| | | 21:25 22:3,7 | 34:16,17 35:1 |

| | | | |
|---|---|---|---|
| **leads** 18:8 | **looked** 7:11,12 | **martin** 2:22,23 | **mminhas** 2:20 |
| **leave** 38:2 | 20:25 21:3,6 | **maryland** 3:6 | **money** 18:10 |
| **legal** 40:24 | 21:14 25:4 | **material** 15:22 | 34:20,23 |
| **limit** 33:11 | 36:15 | **matters** 8:11 | **months** 28:17 |
| **limitations** | **looking** 8:7 | 40:12 | **morning** 5:9 |
| 27:12 29:21 | 13:25 | **mean** 18:4 | 38:5 |
| 36:21 | **lowenstein** 3:10 | **member** 10:12 | **motion** 12:8 |
| **limited** 30:25 | 3:10 16:23 | **mentioned** 5:4 | **mouth** 27:3 |
| 31:19,20 | **lowenstein.c...** | 10:19,20 19:2 | **move** 6:25 |
| **limiting** 32:14 | 3:12 | 27:2 | **mute** 8:2 |
| **listed** 7:2 | **m** | **metkin** 3:12 | **n** |
| **litigation** 5:12 | | **michael** 3:9 | |
| 9:25 10:6,14 | **machine** 1:18 | **miller** 3:14 | **n** 2:1 4:1 |
| 14:15 17:19 | **madam** 5:19 | **million** 21:23 | **name** 5:9 |
| 19:7 22:5 | **made** 12:14 | 22:2,9,15,24 | **named** 40:11 |
| 25:10 27:20 | 16:9 18:17 | 23:9,21 24:2 | **nashville** 2:13 |
| 29:14 30:1,5 | 20:15 22:23 | 26:1 | 2:24 |
| 30:11,15,21 | 23:5 24:20 | **mind** 17:1 | **nearly** 19:23 |
| 31:2,4,6,12,18 | 32:20 33:11 | **minhas** 2:17 | **necessary** |
| 32:20 35:3 | **main** 3:20 | 11:20,23 12:5 | 14:22 |
| 36:1 | **maintained** | **minimum** | **need** 15:3 38:1 |
| **little** 11:16 | 21:12 38:16 | 34:24 | **negotiating** |
| **llp** 2:6,12,15,17 | **maintaining** | **minute** 6:13 | 27:6 |
| 3:4,10,15 | 18:10,24 | 37:3 39:8 | **neither** 18:22 |
| **loan** 38:20 | **make** 10:20 | **minutes** 37:12 | 40:16 |
| **located** 17:11 | 15:4,18,18 | 37:16 | **never** 22:10 |
| **lodge** 14:23 | 33:5 | **misheard** 17:12 | 23:5 24:20 |
| 15:7 | **mandeep** 2:17 | **mislead** 32:7 | 25:4 26:6 |
| **lodging** 14:24 | 11:22 12:4 | 33:4 | **new** 2:19,19 |
| **log** 21:13 | **march** 16:21,24 | **misleading** | 3:11 |
| **long** 17:2 37:10 | 17:2,3,7,10 | 32:8,20 | **nice** 39:11 |
| **look** 7:7,9 29:3 | **mark** 6:7 16:5 | **misstates** 31:13 | **night** 8:8 16:9 |
| 34:6 | **marked** 6:16 | **mistake** 20:14 | **north** 2:12,23 |
| | 6:19 16:15 | | |

**[noted - plaintiffs]**  Page 9

| | | | |
|---|---|---|---|
| **noted**  12:9 | **obtain**  38:25 | **outside**  12:7 | **pay**  9:15 18:16 |
| **notes**  37:4 | **obvious**  14:6 | 13:25 | 19:22,23 34:9 |
| **notice**  4:11 6:8 | **obviously**  27:4 | **owed**  34:20 | 34:10,23 |
| 7:18 | 30:7 | **owned**  14:13 | **paying**  26:14 |
| **notified**  35:7 | **office**  40:19 | 23:1,2 24:16 | **payment**  35:12 |
| **number**  6:19 | **officers**  12:23 | 28:3 | **payments** |
| 16:6 | 14:2 | | 18:18 |
| **numbered**  1:16 | **okay**  5:22 6:24 | **p** | **people**  17:13 |
| **o** | 8:4 15:4 20:7 | **p**  2:1,1 | 35:7 |
| **o**  13:8 | 31:23 33:2,6 | **page**  4:3,10 7:1 | **people's**  25:23 |
| **object**  11:13 | 33:21 36:7 | 16:12,12 | **percent**  32:18 |
| 14:16 20:18 | **once**  6:10 | **paid**  18:6,10,23 | **perfect**  7:17 |
| 21:8 32:5 | **ones**  7:9 | 19:19 34:5,12 | 20:8 |
| **objecting**  32:1 | **onset**  12:4 | 34:18 35:5,16 | **perfectly**  12:4 |
| **objection**  9:2,8 | **operate**  26:7 | 35:25 38:12 | **permission** |
| 10:15,16 11:8 | **opinion**  26:2 | **park**  2:18 | 30:19 |
| 11:24 12:1,1 | 32:12 33:5 | **part**  16:8 28:6 | **permitted**  32:1 |
| 14:3,23 15:7 | **opportunity** | 38:19 | 32:15,15 |
| 15:23 18:14 | 7:7 | **participated** | **person**  18:5 |
| 21:15,16,24 | **opposed**  22:17 | 25:8 | 35:24 40:12 |
| 22:6,12,19 | 23:1 26:3 31:6 | **participating** | **personal**  23:15 |
| 23:4,12,17,24 | **oral**  1:7,11 | 1:19 | 24:3 |
| 24:6 25:18 | **order**  27:19 | **particularly** | **personally**  7:22 |
| 26:5 27:15,21 | 34:6 35:17,18 | 12:13 | 10:7 |
| 28:13 29:6,7 | **orrick**  13:5,10 | **parties**  22:18 | **phone**  8:2 |
| 29:15 30:22 | 13:16 18:16,17 | 24:5,17 26:21 | **piper**  3:4 |
| 31:13 33:14 | 18:20 19:2,4,6 | 40:17,18 | **place**  36:20 |
| 36:3,12,23 | 19:8,10,12,15 | **party**  23:3 | **placed**  27:12 |
| 38:9,21 | 19:19,22,24 | 28:21 | 29:21 |
| **objections**  9:8 | 21:3,12 23:20 | **pass**  37:21 | **plaintiffs**  2:10 |
| 15:5,19 32:14 | 26:19,24 27:5 | **past**  35:5 | 2:16,21 3:8 |
| 32:25 | 27:5,13,18 | **patient**  23:22 | 8:10,14,24 9:1 |
| | 33:10 34:14 | **patients**  23:16 | 9:12,24 10:6 |
| | 38:11,12 | | 10:13 11:20,23 |

**[plaintiffs - reach]**

12:25 13:21 16:23 17:3 25:9 26:20 27:7 29:2,12 29:23 30:19 31:9 33:13 34:5,16 36:11 36:22 38:25 39:2

**please**  15:21

**point**  24:24 34:22

**porter**  3:20 16:21

**porterhedges....** 3:22

**portion**  29:25 31:1,10 33:17

**position**  26:8 28:25

**possible**  8:19 37:13

**possibly**  11:5

**potential**  10:25

**potentially** 12:21

**power**  3:19 9:1 10:16 11:8,21 12:6 15:25 20:18 21:15,24 22:6,12,19 23:4,12,17,24 24:6 26:5 27:21 29:7

33:6,14 36:3 37:9 38:9,21

**prefer**  5:15

**prepetition** 18:3

**presented** 18:19

**preserve**  35:13

**preserves**  12:1

**previous**  19:3

**previously**  19:8 22:3 29:13

**prior**  7:8,18 11:16 26:24

**privilege**  8:21 8:23 11:14,19 12:12,13 14:18 15:1,15 20:19 21:10 24:11 25:20 28:7,10 28:15,19,20 29:8 33:25

**privileged**  15:6 23:10 25:16 29:4,14,19

**privileges**  28:3 28:11

**probably**  17:6 30:2 37:6

**procedure** 14:25

**proceedings** 5:1

**produced**  1:12 8:8 22:4 28:2 30:14,20 31:11 31:16,20 33:24 37:5

**production** 16:8

**professional** 34:24

**protected** 23:16,22

**protective** 27:19

**provide**  19:16

**provided**  27:18 27:23 38:24

**providing**  39:1

**purposes**  9:6

**pursuant**  1:20

**pursue**  11:5 14:1

**pursuing**  14:7

**put**  6:6 16:4

**putting**  6:11 16:17 32:12

**q**

**question**  5:23 7:22 9:4,11,22 12:11,17 15:21 17:1,12 18:8 19:5 20:11,22 32:14,24 34:8 34:11 36:9

**questions**  8:20 15:11 32:13,18 33:3 37:3,8 38:1 39:5

**quick**  37:3 38:6

**quickly**  8:3

**r**

**r**  2:1 13:8,8

**rammelt**  1:15 2:3,4 4:5 5:8 5:10,13 6:17 6:25 7:4 8:5,6 9:3,6,10 10:18 11:11 12:3,9 12:16 13:7,9 13:14,20 14:11 14:19 15:8,20 16:2,7,16 18:21 20:21 21:11,18 22:1 22:8,14,22 23:8,13,19 24:1,8,23 25:7 25:24 26:11 27:24 28:16 29:10,17 31:3 31:22,24 32:12 33:8,9,20 36:6 36:14 37:1,14 37:18,20 39:6

**reach**  11:4 12:18

**[reached - rule]**                                                      Page 11

| | | | |
|---|---|---|---|
| **reached** 11:10 | 33:24 | **representations** | 20:17,23 |
| **reaching** 38:11 | **registration** | 32:21 | **retained** 20:1,3 |
| **read** 15:22 | 40:25 | **representative** | 20:7,16 |
| **real** 38:6 | **related** 12:7 | 18:1 | **retaining** 11:5 |
| **really** 6:14 8:3 | 18:2 30:5 31:1 | **representatives** | **retention** 9:19 |
| 9:15 17:7 | 31:17,17 40:16 | 17:18 | 10:24 19:14 |
| 39:11 | **relates** 30:1 | **represented** | **reveal** 8:22 |
| **reason** 6:3 | **relative** 40:17 | 26:17 | 11:17 14:17 |
| **recall** 8:17 17:2 | **remember** | **representing** | 15:5,13 |
| **receive** 19:17 | 34:21 | 12:21 15:25 | **review** 22:24 |
| **recess** 37:19 | **remmelt** 26:18 | 25:9 35:2 | 30:8 |
| **recognized** | 27:17 | **requested** 7:24 | **reviewed** 22:10 |
| 14:24 | **remotely** 1:8,19 | 15:22 26:21 | 27:23 33:23 |
| **recollection** | 2:3,10,16,21 | **requests** 7:2,8 | **reviewing** |
| 16:18 | 3:2,8,13,18 | 7:21 | 25:25 |
| **record** 13:15 | 40:8 | **respect** 38:6,11 | **rgrdlaw.com** |
| 18:22 20:15 | **repeat** 9:4,11 | 39:1 | 2:14 |
| 21:13 31:8,25 | 12:17 15:20 | **respectful** 33:7 | **rich** 5:13 |
| 37:15 40:14 | 20:14 | **responded** 7:16 | **richard** 1:14 |
| **records** 8:25 | **repeated** 20:10 | **responses** 32:3 | 2:3 |
| 22:21 23:22 | **reported** 1:8 | **responsible** | **right** 5:18,24 |
| 24:22 25:23 | 40:8 | 26:14 | 6:1,18 7:17 |
| 26:9 33:18 | **reporter** 1:19 | **responsive** 7:25 | 17:6 20:11,12 |
| 35:13 38:16,19 | 5:5 13:6 25:2,6 | **restrict** 33:12 | 24:25 27:14 |
| **redacted** 29:4 | 37:17 | 35:9 | 29:11 |
| **redactions** 17:8 | **reporter's** 4:7 | **restricted** | **ringing** 8:3 |
| **reduced** 40:13 | 40:6 | 35:11 | **robbins** 2:10 |
| **referenced** 28:1 | **represent** 5:11 | **restriction** 30:6 | 2:12 |
| **referring** 31:5 | 10:1,5,13 | **restrictions** | **role** 28:6 |
| **reflects** 28:25 | 15:17 19:6,22 | 29:21 33:19 | **roseland** 3:11 |
| **refresh** 16:18 | 19:24 20:23 | 34:2 36:21 | **rudman** 2:10 |
| **refuse** 15:10 | 34:17 35:15 | **retain** 11:2 | 2:12 |
| **regarding** 8:11 | **representation** | 12:14,25 13:2 | **rule** 1:20 9:7 |
| 8:24 10:24 | 19:24 | 13:5 19:6,8,10 | |

**[rules - take]**                                                    Page 12

| | | | |
|---|---|---|---|
| **rules** 6:1 14:25 32:16,23,25 | 27:7,20 29:22 30:19,21 31:5 31:12,18 32:20 33:12 34:5,16 36:1,10,21 38:25 39:2 | **silence** 13:18 | **statement** 27:9 |
| **s** | **see** 6:12,18 8:9 15:5 16:24 38:5 | **similar** 14:10 | **states** 1:1 40:1 |
| **s** 2:1,17 3:5,9 4:9 | **seeking** 20:23 | **single** 20:25 | **steer** 32:3 |
| **sandler** 3:10 | **seen** 6:20 | **sit** 6:13 | **steve** 5:12 |
| **saw** 6:23 | **segregated** 29:19 30:4,10 31:1 | **slow** 12:2 | **steven** 1:13 2:3 |
| **scheduled** 39:11 | **sending** 28:22 | **smiledirectclub** 1:4 23:16 30:13 40:4 | **stipulation** 11:25 |
| **schnall** 1:14 2:3 5:13 | **sense** 16:19 | **soliciting** 13:25 | **stop** 37:11 |
| **scoot** 16:11 | **sent** 6:9 7:9,11 7:19,20 28:18 | **solutions** 40:24 | **street** 3:5,20 |
| **scope** 19:16 | **service** 17:21 18:17 | **somebody** 12:10 14:21 | **strike** 13:22 |
| **scott** 2:15,15,17 2:17,20 | **services** 19:15 19:16 38:12 | **sorry** 8:3,4 11:21 20:6,9 20:13 25:2 | **string** 16:13 |
| **scott.com** 2:20 | **set** 7:19 | **south** 2:6 | **styled** 1:16 |
| **screen** 6:6,12 16:5,17 | **setting** 34:2 | **southern** 1:1 40:1 | **subject** 4:12 8:22 11:18 14:18 15:14 30:7 |
| **scroll** 6:21 | **several** 28:17 30:3 35:16 | **speaking** 27:1 | **substantive** 11:18 |
| **sdc** 4:12 | **share** 9:2 11:23 34:13 | **specific** 33:19 | **sufficient** 9:8 |
| **seal** 40:19 | **shorthand** 1:18 | **specifically** 29:3 | **suite** 2:6 3:5,16 |
| **search** 7:23 | **shortly** 10:21 19:10 | **specifics** 33:25 | **supervision** 40:14 |
| **searched** 7:25 | **shut** 35:12,18 | **spoke** 9:18 | **sure** 8:5 10:20 |
| **second** 7:1 16:12 | **signature** 40:22 | **spoken** 18:7 | **susan** 1:14 2:3 5:13 17:18 26:17 |
| **securities** 1:13 2:2,10,16,21 3:8 5:12 8:10 8:14,24 9:12 9:25 10:6,13 13:21 14:15 16:22 17:3 25:10 26:20 | | **spring** 9:16 | **sworn** 1:15 5:4 40:12 |
| | | **start** 32:5,13 | **t** |
| | | **started** 32:5 | **t** 4:9 |
| | | **state** 2:15,21 9:1 11:20,23 12:2 40:10 | **take** 14:22 37:1 37:3 |
| | | **state's** 9:20 | |
| | | **stated** 40:10 | |

**[taken - went]**  Page 13

taken 1:16 5:24 37:19 40:17
talk 27:13 28:18
talked 11:15 18:4
talking 37:10
talks 17:17
technicalities 34:1
telephone 40:25
tell 6:3 34:18
tennessee 2:13 2:24
terminology 30:2
testified 5:5
testify 40:12
testimony 31:14 32:8 38:15 40:14
texas 1:1,18 3:21 40:1,10 40:23
thank 6:12 12:5 16:3 25:6 31:23 37:18,20 39:7
thanks 39:8,10
think 5:23 7:11 8:19 9:7 10:17 10:19,20,24 11:21 12:6

13:12,14 14:24 15:16 17:6 20:15 24:14 26:23 27:25 29:24 31:20 32:6,10,18,22 32:23 34:12,21 37:2,6
third 22:18 24:5,16
thought 12:3
thoughts 32:3
thousand 35:16
time 7:12 14:13 17:9 33:7 37:21
times 36:10
today 5:16 6:4 6:8,13 7:8 8:11 13:11 15:11 31:25
took 26:18
topic 11:16
topics 12:7
total 21:19
transcription 40:14
true 8:12 24:20 40:10,14
trustee 3:18 4:12 5:19 8:23 10:1,11,21 14:7 16:10 18:9,23 19:6

19:22 28:6
truth 6:4 40:12
try 15:9 32:7,8 33:4
trying 29:12 35:8
turned 27:4
two 37:16 38:1
types 33:12

**u**

under 14:25 32:15 40:14,19
underlying 5:12 9:25 10:6 10:13 27:20 31:5 32:19
understand 6:1 10:20 29:11
understanding 13:24 30:9,16 30:24 31:25 33:16,22 35:13 38:11,14
united 1:1 40:1
unprofessional 32:11
unrelated 18:4
use 17:9 30:11 35:18,22
used 17:22 26:6
using 18:11 35:14

usual 13:15

**v**

various 35:3
vendor 17:23
venture 1:15 2:3 5:14
veritext 40:24

**w**

wacker 2:6
wailes 1:14 2:3 5:13
waiting 19:17
waive 28:3,7,10 28:14
waived 28:19 28:20
waiver 30:7 33:24
want 9:22 10:19 13:16 27:11 30:11
wanted 29:3 35:12
wants 15:7
way 15:9 18:11 24:19,24 29:19
we've 28:19 31:25
weekend 7:12 39:12
went 13:4,14 17:19

**[whatsoever - zoom]**                                                          Page 14

| | |
|---|---|
| **whatsoever** 22:24 | **wood's** 12:20 |
| **witness** 1:12,19 4:3 8:2,21 10:17 11:10 14:4,17 15:6 15:13,24 18:15 21:17,25 22:7 22:13,20 23:5 23:18,25 24:7 24:19 25:4,21 26:6 27:16,22 28:14 29:9,16 30:24 31:15 32:7 33:4,15 36:4,13,24 37:21 38:10,22 40:15 | **word** 30:11 |
| | **words** 27:2 |
| | **work** 10:4 |
| | **worked** 17:22 26:24 |
| | **working** 27:5 |
| | **worries** 20:10 |
| | **writing** 10:8,9 40:13 |
| | **written** 10:3,10 16:25 19:14 |
| | **x** |
| | **x** 4:1,9 |
| | **y** |
| **witness's** 32:3 | **yeah** 7:14,17 31:15 32:6 37:9 |
| **wood** 2:11 8:18 9:23 10:4,11 10:15,23 11:9 11:13 12:25 13:24 14:3,16 15:4,10,12,23 18:14 21:8,16 24:18 25:18 26:19 27:15 28:13 29:6,8 29:15 30:22 31:13 32:6 33:2 36:12,23 37:23 | **yep** 33:8 |
| | **yesterday** 6:9 6:23 7:10,20 27:1 |
| | **york** 2:19,19 |
| | **z** |
| | **zoom** 1:11 16:8 |

Veritext Legal Solutions

800-567-8658                                                                    973-410-4098

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT 2

Subject: RE: SDC / Ackerman Deposition

Date:    6/11/2024 3:11 PM

From:    "Fiorella, Andrew G." <AFiorella@beneschlaw.com>

To:      "Chris Wood" <CWood@rgrdlaw.com>, "Wolfshohl, Joshua W."
         <JWolfshohl@porterhedges.com>, "Power, Aaron J." <APower@porterhedges.com>

Cc:      "Jeffrey Stein" <JStein@rgrdlaw.com>, "Jerry Martin" <jmartin@barrettjohnston.com>, "Max
         Schwartz" <mschwartz@scott-scott.com>, "Mickey Etkin"
         <metkin@lowenstein.com>, "Silverstein, Michael" <MSilverstein@beneschlaw.com>, "Cady,
         Allyson" <ACady@beneschlaw.com>

---

Aaron and Chris,

I am counsel for all the Individual Defendants in the Securities Cases, except for Alex Fenkell and Jordan Katzman, and for the witness Dr. Marc Ackerman. We also were Debtors' counsel before the filing. We withheld documents in Dr. Ackerman's possession that we think are privileged. We are less asserting the privilege (which we recognize likely belongs to the Trustee), than preventing its waiver.

*First*, I apologize for this issue popping up with such a quick turnaround.

*Second*, we object to any "assumption" that a lack of response by Thursday amounts to waiver. That does not leave any time for us to communicate with the Trustee regarding these documents, or the assertion of privilege in the Securities Cases generally. We need a chance to discuss with the Trustee. What's more, waiver requires intentional relinquishment. And we don't think that, while the automatic stay in in place, a passive waiver is even possible.

*Third*, we see no reason to decide this matter now. SDC is still a party to this case. Any efforts to compel production of documents necessarily implicates the stay, and prevents movement either way.

Thank you,

Andrew



Andrew G. Fiorella
Co-Chair, Financial Institutions and Securities Litigation
Chair, e-Discovery
Benesch Friedlander Coplan & Aronoff LLP

t: 216.363.4453 | m: 216.280.6449
AFiorella@beneschlaw.com | www.beneschlaw.com
127 Public Square, Suite 4900, Cleveland, OH 44114

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

---

**From:** Chris Wood <CWood@rgrdlaw.com>
**Sent:** Tuesday, June 11, 2024 2:36 PM
**To:** Wolfshohl, Joshua W. <JWolfshohl@porterhedges.com>; 'Power, Aaron J.' <APower@porterhedges.com>
**Cc:** Jeffrey Stein <JStein@rgrdlaw.com>; Jerry Martin <jmartin@barrettjohnston.com>; 'Max Schwartz' <mschwartz@scott-scott.com>; Mickey Etkin <metkin@lowenstein.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Cady, Allyson <ACady@beneschlaw.com>

about:blank

11/22/2024

**Subject:** SDC / Ackerman Deposition

Aaron,

On Saturday June 15, we are deposing Dr. Marc Ackerman, who was previously retained by SmileDirectClub as a consultant regarding teledentistry issues, as well as regarding certain litigation matters.  In advance of the deposition, counsel for Ackerman have withheld certain documents that we understand they contend are covered by SDC's attorney-client privilege.  In addition, I anticipate some of our questions could lead to potential objections by Ackerman's counsel on the grounds that answering them might disclose matters covered by SDC's attorney-client privilege.

As neither Dr. Ackerman nor his counsel can assert SDC's privilege on its behalf, Ackerman's privilege log, attached, and any privilege objection at his deposition, have no merit unless the Trustee asserts the privilege with respect to SDC.  Therefore, please let us know by Thursday at 5pm central whether the Trustee: (i) is asserting attorney-client privilege with respect to the documents on the attached log; or (ii) objects to any questions we might pose to Dr. Ackerman at his deposition which could implicate SDC's attorney-client privilege.

If we don't hear from you by then, we will assume that you do not intend to assert the privilege where relevant in connection with Dr. Ackerman's documents and deposition.

Best Regards,

Chris Wood
**Robbins Geller Rudman & Dowd LLP**
200 31st Avenue North
Nashville, TN 37203
Tel. (615) 244-2203

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

# EXHIBIT 3

| | |
|---|---|
| **From:** | Poli, Nicholas <npoli@orrick.com> |
| **Sent:** | Friday, June 14, 2024 4:18 PM |
| **To:** | Etkin, Michael S.; Litterine-Kaufman, David |
| **Cc:** | Franke, Mark; Allison Byman; Wolfshohl, Joshua W.; Power, Aaron J.; Christopher M. Wood (cwood@rgrdlaw.com) |
| **Subject:** | RE: SDC - Securities Litigation |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Mickey, Chris,

Thanks again for the call earlier this week regarding the deposition of Mr. Ackerman. I write to confirm that, in order to facilitate the orderly deposition of Dr. Ackerman, SmileDirectClub, acting through the Trustee, does not and will not instruct Dr. Ackerman to refrain from answering any question on the ground that it may call for the disclosure of communications protected by SmileDirectClub's attorney-client privilege, so long as such communications occurred before SmileDirectClub's bankruptcy petition. However, SmileDirectClub designates Dr. Ackerman's transcript as "Highly Confidential," pursuant to the Stipulated Protective Order (ECF 131), and reserves the right to review the transcript and claw-back any Privileged Material pursuant to §XI of the Stipulated Protective Order.

Have a nice weekend.

Nick

**From:** Etkin, Michael S. <metkin@lowenstein.com>
**Sent:** Wednesday, June 12, 2024 2:07 PM
**To:** Litterine-Kaufman, David <dlitterinekaufman@orrick.com>
**Cc:** Poli, Nicholas <npoli@orrick.com>; Franke, Mark <mfranke@orrick.com>; Allison D. Byman <adb@bymanlaw.com>; Wolfshohl, Joshua W. <JWolfshohl@porterhedges.com>; Power, Aaron J. <APower@porterhedges.com>; Christopher M. Wood (cwood@rgrdlaw.com) <cwood@rgrdlaw.com>
**Subject:** RE: SDC - Securities Litigation

**[EXTERNAL]**

Likewise David. Adding Chris Wood at Robbins Geller. 4 p.m. Eastern would work for us. I assume it will be the four of us but correct me if I'm wrong. I will send an invite shortly.

**Michael S. Etkin**
Partner
Lowenstein Sandler LLP

T: (973) 597-2312

1

TRUSTEE-000086

M: (973) 454-2283

  



---

**From:** Litterine-Kaufman, David <dlitterinekaufman@orrick.com>
**Sent:** Wednesday, June 12, 2024 12:33 PM
**To:** Etkin, Michael S. <metkin@lowenstein.com>
**Cc:** Poli, Nicholas <npoli@orrick.com>; Franke, Mark <mfranke@orrick.com>; Allison D. Byman <adb@bymanlaw.com>; Wolfshohl, Joshua W. <JWolfshohl@porterhedges.com>; Power, Aaron J. <APower@porterhedges.com>
**Subject:** RE: SDC - Securities Litigation

Mickey,

Nice to email meet you.  Would today between 3:30pm and 5:30pm Eastern or after 6pm Eastern work for a call?

Best,
David

**David Litterine-Kaufman**
Partner

Orrick
New York  ⓥ
T 212-506-3540
dlitterinekaufman@orrick.com



---

**From:** Wolfshohl, Joshua W. <JWolfshohl@porterhedges.com>
**Sent:** Wednesday, June 12, 2024 12:20 PM
**To:** Michael S. Etkin, Esq. (metkin@lowenstein.com) <metkin@lowenstein.com>
**Cc:** Litterine-Kaufman, David <dlitterinekaufman@orrick.com>; Poli, Nicholas <npoli@orrick.com>; Franke, Mark <mfranke@orrick.com>; Allison D. Byman <adb@bymanlaw.com>; Power, Aaron J. <APower@porterhedges.com>
**Subject:** SDC - Securities Litigation

[EXTERNAL]

Mickey,

As mentioned yesterday, the Trustee has hired Orrick to assist with pursuing the estates' D&O claims.  I've forwarded prior correspondence regarding the motion to dismiss, housing of documents and the redaction/privilege issues we have

2

TRUSTEE-000087

been discussing.  I believe they are generally up to speed.  I've copied David Litterine-Kaufman and Nick Poli who are running point on this.

Please coordinate a call with them to discuss further.

Josh

**Joshua W. Wolfshohl** | Partner
**Porter Hedges LLP**

1000 Main St, 36th Floor | Houston, TX 77002
**t** 713.226.6695   **e** JWolfshohl@porterhedges.com
**Bio** • **Web** • **V-Card**

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

This message contains confidential information, intended only for the person(s) named above, which may also be privileged. Any use, distribution, copying or disclosure by any other person is strictly prohibited. In such case, you should delete this message and kindly notify the sender via reply e-mail. Please advise immediately if you or your employer does not consent to Internet e-mail for messages of this kind.

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

TRUSTEE-000088

# EXHIBIT 4

Subject: Re: SDC - Securities Litigation

Date:    6/14/2024 5:44 PM

From:    "Chris Wood" <CWood@rgrdlaw.com>

To:      "Andrew G. Fiorella" <AFiorella@beneschlaw.com>

Cc:      "Mickey Etkin" <metkin@lowenstein.com>, "Litterine-Kaufman, David" <dlitterinekaufman@orrick.com>, "Franke, Mark" <mfranke@orrick.com>, "Allison D. Byman" <adb@bymanlaw.com>, "Wolfshohl, Joshua W." <JWolfshohl@porterhedges.com>, "Power, Aaron J." <APower@porterhedges.com>, "Poli, Nicholas" <npoli@orrick.com>

---

Andrew,

See below from the Trustee's counsel regarding Dr. Ackermans's deposition tomorrow.

Chris

> On Jun 14, 2024, at 4:18 PM, Poli, Nicholas <npoli@orrick.com> wrote:
>
> EXTERNAL SENDER
>
> Mickey, Chris,
>
> Thanks again for the call earlier this week regarding the deposition of Mr. Ackerman. I write to confirm that, in order to facilitate the orderly deposition of Dr. Ackerman, SmileDirectClub, acting through the Trustee, does not and will not instruct Dr. Ackerman to refrain from answering any question on the ground that it may call for the disclosure of communications protected by SmileDirectClub's attorney-client privilege, so long as such communications occurred before SmileDirectClub's bankruptcy petition. However, SmileDirectClub designates Dr. Ackerman's transcript as "Highly Confidential," pursuant to the Stipulated Protective Order (ECF 131), and reserves the right to review the transcript and claw-back any Privileged Material pursuant to §XI of the Stipulated Protective Order.
>
> Have a nice weekend.
>
> Nick

---

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

about:blank                                                                11/22/2024

# EXHIBIT 5

Videotaped Deposition of

# Dr. Marc Ackerman

June 15, 2024

Franchi

vs.

SmileDirectClub

**Highly Confidential**



www.aptusCR.com | 866.999.8310

**Dr. Marc Ackerman**                    **Highly Confidential**                    **Franchi vs. SmileDirectClub**

Page 165

that the senator wanted confirmation that you didn't work for anyone, right?

A. Yes.

Q. But you don't recall what you said in response to that?

A. Correct.

Q. Okay.

MR. WOOD: Let's take a look at tab 5.

(Exhibit 400, SDC_Franchi_0234902 - 234909, marked for identification.)

Q. Dr. Ackerman, we've put up what's been marked as Exhibit 400. This is some notes I believe from Dr. Sulitzer, and I'd like to draw your attention in particular to the third bullet point that starts "Dr. Ackerman and I," and if you want to read that.

You're welcome to read as much as you want of the whole exhibit, but I'm only going to ask you about that third bullet point. If you want to read that paragraph and let me know when you're done.

A. Okay. I've read it.

Q. And do you recall that you and Dr. Sulitzer presented in front of the Georgia

Page 166

dental board?

A. Yes.

Q. The Georgia dental board?

A. Yes.

Q. Okay. And does this summary, to the best of your recollection, reflect what happened in that meeting?

A. Just looking at what Dr. Sulitzer wrote.

Yes, that was the main thing that I talked about, how the iTero works and how safe it is.

Q. Okay. And he says, "Dr. Ackerman and I." It was -- was it just the two of you that were there from SmileDirectClub?

MR. MEUTI: Form.

A. I wasn't representing SmileDirectClub. I was an expert in clinical practice and the use of scanners.

Q. Okay. Dr. Sulitzer was there from SmileDirectClub; is that your understanding?

A. I believe so.

Q. Okay. And it says, "Dr. Ackerman and I presented in front of the Georgia dental board the talking point created by our legal team and

Page 167

outside counsel."

So did you have talking points that you presented from a legal team and outside counsel there?

MR. MEUTI: I'm going to object and instruct you not to answer or instruct you to answer only insofar as you can do so without revealing communications from counsel.

MR. WOOD: And you're instructing him not to answer the question based on the SmileDirectClub's privilege?

MR. MEUTI: It's not clear to me right now that the privilege we're talking about was SmileDirect's in the first place and/or --

MR. WOOD: Who else -- sorry. Go ahead.

MR. MEUTI: -- that that privilege has been waived. I understand we have a disagreement on that, but in order to prevent the proverbial cat from getting out of the bag, until we have a clear waiver from the lawyers representing the trustee.

MR. WOOD: But you agree you don't have standing to make that objection because you don't represent SmileDirectClub, right?

Page 168

MR. MEUTI: I don't agree with that.

MR. WOOD: You don't agree that you don't represent SmileDirectClub?

MR. MEUTI: I do agree that I do not represent SmileDirectClub.

MR. WOOD: You don't -- you think you can -- you have standing to object and instruct him not to answer on a privilege for someone you don't represent?

MR. MEUTI: I'm not going to be cross-examined here, Chris.

MR. WOOD: I'm just trying to make sure we're clear on the nature of your objection. Because I specifically sent an e-mail forwarded yesterday from the trustee's counsel to your colleague that had the trustee herself on it and all of the lawyers from the trustee who you guys know and you've had half a day if there were concerns about that to reach out and we're here at a deposition and now you're instructing the witness not to answer when SmileDirect said that they're not going to instruct him not to answer.

MR. MEUTI: You sent an e-mail at 5:45 p.m. yesterday, that is correct. It was

# EXHIBIT 6

| | |
|---|---|
| **From:** | Rammelt, David |
| **To:** | Aaron J. Power - Porter Hedges LLP (apower@porterhedges.com) |
| **Cc:** | Susan Jean Rammelt - SZO (srammelt@camelotvg.com); Winger, Benjamin |
| **Bcc:** | Meuti, Michael; Fiorella, Andrew G.; Cady, Allyson |
| **Subject:** | SDC - Securities Litigation: Privilege Waiver |
| **Date:** | Saturday, June 15, 2024 11:01:59 AM |
| **Attachments:** | image910710.png |

Aaron,

Last evening – the night before Dr. Ackerman's deposition in the shareholder litigation – we received this email from Orrick purporting to "waive" SDC's privilege concerning certain communications involving the doctor.  We know that Orrick does not represent the Trustee, and we did not see any confirmation from you or the Trustee confirming the accuracy of this representation.  Did the Trustee in fact agree to waive?

In the future, would it be possible to be notified and participate if any party requests a waiver of a privilege held by SDC?  The reason that I ask is that there are many layers of privilege.  For example, Dr. Ackerman's relationship with SDC and/or its independent treating doctors (variously called ELPs) falls into several buckets:

1. Communications with SDC concerning clinical aspects of lobbying – we believe a privilege held by SDC and, subject to further research, probably waivable;
2. Communications with SDC concerning SDC's relationship with the American Teledentistry Association (ATDA) – we believe a privilege held by SDC and, subject to further research, probably waivable;
3. Communications with SDC's in-house and/or outside counsel concerning the clinical aspects of certain pre-litigation claims asserted by unhappy patients of one of SDC's network of independent treating doctors – these communications concerned Ackerman's assistance to defend these doctors and were for the benefit of the doctors, and therefore work product and other privileges are held <u>by the doctors</u> and cannot be waived by SDC;
4. Communications with Benesch, Dykema and/or SDC's in-house lawyers concerning investigations and or complaints to or by state dental boards or regulatory bodies into SDC's network of independent treating doctors – these communications concerned Ackerman's assistance to defend these doctors and were for the benefit of the doctors, and therefore work product and other privileges are held <u>by the doctors</u> and cannot be waived by SDC;

Had we known about the shareholder plaintiffs' waiver request – and believe me, we know that this is the plaintiffs' (deliberate?) omission, not the Trustee's – we could have clarified this and saved what will end up being an expensive fight.  Happy to discuss in more detail, but because of the severity of privilege waivers, we request that the Trustee advise us in advance if any party requests a waiver in the future.  We have reason to believe that Align may try this tactic shortly, even though Align knows full well that former SDC officers and directors are defendants in a number of lawsuits and that they have privileges and confidentiality rights that cannot be waived by the Trustee.  For example, these defendants are signatories to the Operating Agreement with Align and have independent confidentiality rights for all matters relating to arbitrations between SDC and Align.

Many thanks, and enjoy the rest of your weekend.

David

 

vCard Bio

David A. Rammelt
(he/him/his)
Vice-Chair, Litigation Department
Benesch Friedlander Coplan & Aronoff LLP

t: 312.212.4958 | m: 312.404.2140
DRammelt@beneschlaw.com | www.beneschlaw.com
71 South Wacker Drive, Suite 1600, Chicago, IL 60606-4637

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

**From:** Chris Wood <CWood@rgrdlaw.com>
**Sent:** Friday, June 14, 2024 5:45 PM
**To:** Fiorella, Andrew G. <AFiorella@beneschlaw.com>
**Cc:** Mickey Etkin <metkin@lowenstein.com>; Litterine-Kaufman, David <dlitterinekaufman@orrick.com>; Franke, Mark <mfranke@orrick.com>; Allison D. Byman <adb@bymanlaw.com>; Wolfshohl, Joshua W. <JWolfshohl@porterhedges.com>; Power, Aaron J. <APower@porterhedges.com>; Poli, Nicholas <npoli@orrick.com>
**Subject:** Re: SDC - Securities Litigation

Andrew,

See below from the Trustee's counsel regarding Dr. Ackermans's deposition tomorrow.

Chris

> On Jun 14, 2024, at 4:18 PM, Poli, Nicholas <npoli@orrick.com> wrote:

> EXTERNAL SENDER

> Mickey, Chris,

Thanks again for the call earlier this week regarding the deposition of Mr. Ackerman. I write to confirm that, in order to facilitate the orderly deposition of Dr. Ackerman, SmileDirectClub, acting through the Trustee, does not and will not instruct Dr. Ackerman to refrain from answering any question on the ground that it may call for the disclosure of communications protected by SmileDirectClub's attorney-client privilege, so long as such communications occurred before SmileDirectClub's bankruptcy petition. However, SmileDirectClub designates Dr. Ackerman's transcript as "Highly Confidential," pursuant to the Stipulated Protective Order (ECF 131), and reserves the right to review the transcript and claw-back any Privileged Material pursuant to §XI of the Stipulated Protective Order.

Have a nice weekend.

Nick

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

# EXHIBIT 7

## Meuti, Michael

| | |
|---|---|
| **From:** | Power, Aaron J. <APower@porterhedges.com> |
| **Sent:** | Friday, July 12, 2024 3:26 PM |
| **To:** | Seferian, Laura |
| **Cc:** | Susan Jean Rammelt - SZQ (srammelt@camelotvg.com); Rammelt, David; Fiorella, Andrew G.; Meuti, Michael |
| **Subject:** | RE: SDC - Securities Litigation: Subpoena to Align |

Correct, we are not waiving any privilege claims held by individuals

| Partner

1000 Main St, 36th Floor | Houston, TX 77002
  713.226.6631     apower@porterhedges.com

Seferian, Laura <LSeferian@beneschlaw.com>
Thursday, July 11, 2024 6:47 PM
Power, Aaron J. <APower@porterhedges.com>
Susan Jean Rammelt - SZQ (srammelt@camelotvg.com) <srammelt@camelotvg.com>; Rammelt, David <DRammelt@beneschlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>
SDC - Securities Litigation: Subpoena to Align

Good evening, Aaron:

We would like to bring to your attention the June 11, 2024, subpoena issued by Plaintiffs to Align Technology, Inc. in the securities litigation (attached). We understand from prior discussions that the Trustee does not intend to waive any rights of the individual defendants. We would like to confirm that our understanding regarding the Trustee's intent to not waive any of the individual defendants' rights holds true in this circumstance. Additionally, should the Trustee take a position regarding Align's obligation to respond to the subpoena, we would very much appreciate being informed of that decision as a professional courtesy.

Thank you in advance.

Sincerely,

Laura



vCard

Laura A. Seferian
Senior Managing Associate | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 312.624.6423 | LSeferian@beneschlaw.com
www.beneschlaw.com
71 South Wacker Drive, Suite 1600, Chicago, IL 60606-4637

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

# EXHIBIT 8

Page 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

IN RE:                          )

SMILEDIRECTCLUB,                ) Chapter 7

INC., ET AL                     ) Case No.: 23-90786(CML)

    Debtors                     ) (Jointly Administered)

                                )

                -------------------

            Deposition of MICHAEL FLANAGAN, was taken

via Zoom on Monday, December 9, 2024, commencing at

10:31 a.m., at 1828 L Street, N.W., Washington,

D.C., before MICHELE D. LAMBIE, Notary Public.

                -------------------

Reported By:

            Michele D. Lambie, CSR-RPR

Job No. CS7064152

Page 2

APPEARANCES:

          ON BEHALF OF INTERESTED PARTIES DAVID

          KATZMAN, STEVEN KATZMAN, KYLE WAILES,

          RICHARD SCHNALL, SUSAN GREENSPON RAMMELT,

          AND CAMELOT VENTURE GROUP:

     Benesch, Friedlander, Coplan & Aronoff.

          ANDREW G. FIORELLA, ESQUIRE.

          afiorella@beneschlaw.com.

          127 Public Square.

          Suite 4900.

          Cleveland, Ohio  44114.

          (216) 363-4500


     Benesch, Friedlander, Coplan & Aronoff.

          MICHAEL SILVERSTEIN, ESQUIRE.

          msilverstein@beneschlaw.com.

          41 South High Street.

          Suite 2600.

          Columbus, Ohio  43215.

          (615) 223-9330

Page 3

APPEARANCES CONTINUED:

ON BEHALF OF SCOTT + SCOTT ATTORNEYS AT

LAW, LLP AND STATE SECURITIES PLAINTIFFS:

Scott + Scott, Attorneys at Law, LLP.

MANDEEP MINHAS, ESQUIRE.

mminhas@scott-scott.com.

230 Park Avenue.

17th Floor.

New York, New York  10169.

(212) 223-4478

ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD

AND THE FEDERAL SECURITIES PLAINTIFFS:

Robbins Geller Rudman & Dowd, LLP.

CHRISTOPHER M. WOOD, ESQUIRE.

cwood@rgrdlaw.com.

414 Union Street.

Suite 900.

Nashville, Tennessee  37219.

(615) 244-2203

Page 4

APPEARANCES CONTINUED:

ON BEHALF OF THE BANKRUPTCY TRUSTEE,

ALLISON D. BYMAN:

Porter Hedges LLP.

AARON J. POWER, ESQUIRE.

apower@porterhedges.com.

1000 Main Street.

36th Floor.

Houston, Texas   77002.

(713) 226-6000

ON BEHALF OF JORDAN KATZMAN AND ALEXANDER

FENKELL:

Gibson, Dunn & Crutcher, LLP.

RAENA FERRER CALUBAQUIB, ESQUIRE.

rcalubaquib@gibsondunn.com.

310 University Avenue.

Pal Alto, California   94301.

(650) 849-5300

Page 5

APPEARANCES CONTINUED:

ON BEHALF OF CLUSTER HOLDCO:

DLA Piper LLP (US.)

ROBERT MOSKALEWICZ, ESQUIRE.

robert.moskalewicz@us.dlapiper.com.

444 West Lake Avenue.

Suite 900.

Chicago, Illinois  60606.

(312) 368-4000

Page 6

EXAMINATION INDEX

MICHAEL FLANAGAN

     BY MR. FIORELLA                                 7

     BY MR. WOOD                                       60

     BY MR. MOSKALEWICZ                  62

     R BY MR. WOOD                         65

EXHIBIT INDEX

(Attached to Transcript.)

                                              MAR

Exhibit 1 Email dated October 10, 2023      11

Exhibit 2 Interested Parties' Notice of      12
         Deposition

Exhibit 3 Email dated December 6, 2024      29

Exhibit 4 Email dated July 12, 2024      54

Veritext Legal Solutions

Page 7

P R O C E E D I N G S

THE COURT REPORTER:  The attorneys participating in this deposition acknowledge that I am not physically present in the deposition room, and that I will be reporting this deposition remotely.

They further acknowledge that in lieu of an oath administered in person, I will administer the oath remotely.

The parties further agree that if the witness is testifying from a state where I am not a Notary, that the witness may be sworn in by a Notary.

MICHAEL FLANAGAN, the Deponent, called for examination via Zoom by the Interested Parties, being first duly sworn to tell the truth, the whole truth, and nothing but the truth, testified as follows:

EXAMINATION

BY MR. FIORELLA:

Q.   Good morning, Mr. Flanagan.  How are you?

Page 8

A.    Very well.   Thank you.

Q.    Could you state your full name for the record, please?

A.    Michael Francis Flanagan.

Q.    I am Andrew Fiorella from the law firm of Benesch, Friedlander, Coplan & Aronoff.  I represent the Interested Parties David Katzman, Steven Katzman, Susan Rammelt, Kyle Wailes, Rick Schnall, and Camelot Venture Group.

MR. FIORELLA:  For purposes of the record, could all of the folks on the Zoom introduce themselves and identify the parties that they represent, please?

MR. SILVERSTEIN:  Michael Silverstein also from Benesch representing the same parties.

MS. CALUBAQUIB:  Raena Ferrer Calubaquib from Gibson Dunn & Crutcher representing Jordan Katzman and Alex Fenkell.

MR. WOOD:  Christopher Wood, Robbins Geller Rudman & Dowd, on behalf of the Federal Securities Plaintiffs.

Page 9

MR. MINHAS:  Mandeep Minhas on behalf of Scott + Scott Attorneys at Law and the State Securities Plaintiffs.

MR. POWER:  I'm Aaron Power.  I represent Allison Byman, the Chapter 7 Trustee.

MR. MOSKALEWICZ:  I'm Robert Moskalewicz, counsel for the Debt Agent and the Debt Lenders.

MR. FIORELLA:  Thank you, everyone.

BY MR. FIORELLA:

Q.   Mr. Flanagan, you're in the District of Columbia right now as we're taking your deposition?

A.   Yes, I am.

Q.   And your business email address is michael.flanagan@consilio.com, correct.

A.   Correct.

Q.   You're the general counsel for Consilio, correct?

A.   I am, yes.

Q.   And you're authorized by Consilio to answer questions on behalf of the company today?

A.   I am.

Page 10

Q.   How long have you been General Counsel of Consilio?

A.   Since January of 2012.

Q.   You're appearing here today pursuant to a Subpoena issued in the Bankruptcy Court, correct?

A.   That is correct.

Q.   And I'll represent to you that we're taking discovery today related to ECF No. -- Filing No. 920 in the bankruptcy action which is captioned Emergency Motion for Order Confirming Chapter 7 Trustee is Authorized and Empowered to Waive the Debtors' Attorney/Client Privileges.

I assume that you're familiar with the deposition process; is that correct?

A.   Yes, I am.

Q.   So I'll -- I'll dispense with the normal instructions, but have you given deposition testimony before?

A.   I -- I have.

Q.   In what types of matters?

A.   I was -- I was involved in a personal

Page 11

injury case in the 1970s.  I was the plaintiff, and I had my deposition taken, and then I testified at trial.  And I -- I guess that's the only deposition I've given.

Q.  None in your capacity, prior to this one, as General Counsel of Consilio?

A.  That's correct.

Q.  Is there anything that you're aware of that would prevent you from giving your complete and truthful testimony here today?

A.  No.

Q.  All right.  I'm going to make a valid attempt to introduce an exhibit.

A.  I'm going to make a valid attempt to find it.

Q.  Can you see what I have marked as Consilio Exhibit 1 -- oh, wait a second.

(Whereupon, Consilio Deposition Exhibit No. 1, Email dated October 10, 2023, marked for identification.)

MR. FIORELLA:  This is not the right one.

Page 12

Please hold.  We can keep that in as the exhibit number.  That's not the document I wanted to show you.

THE WITNESS:  Okay.

(Whereupon, Consilio Deposition Exhibit No. 2, Interested Parties' Notice of Deposition, marked for identification.)

BY MR. FIORELLA:

Q.    Here we go.  Can you see what I have marked as Consilio Exhibit 2?

A.    Yes.

MR. FIORELLA:  For the record, Consilio Exhibit 2 is a nine-page document titled Interested Parties' Notice of Deposition.

BY MR. FIORELLA:

Q.    Mr. Flanagan, if you could turn, please, to the -- let's see, to the last page, the ninth page of the document, please, and let me know when you're there.

A.    I -- I'm there.

Q.    And page 9 is entitled, Topics for

Page 13

Deposition, do you see that?

A.    I do.

Q.    And you are Consilio's designated representative for each of these topics?

A.    That's correct.

Q.    What did you do to prepare to testify on these topics today?

A.    I -- I reviewed various emails of mine. I actually read what you had identified as ECF 920, and then I spoke to three colleagues of mine, a woman named Tatiana Gipson, Gipson, G-I-P-S-O-N; a man named Brett Crist, C-R-I-S-T; and a man named Elliot, E-L-L-I-O-T, Payne, P-A-Y-N-E, all of whom are colleagues, and then I -- I spoke with -- I spoke with trustee's counsel who has engaged us, an attorney from the Orrick firm.  And I had a brief conversation with Mr. Power as well.

Q.    I should have asked you this before. You're not represented by counsel here today. You're just appearing by yourself, correct?

A.    I am.

Page 14

Q.    All right.  Let's speak about Ms. Gipson. Is she an attorney?

A.    She is not.  She's a project manager at Consilio.

Q.    What did you discuss with Ms. Gipson?

A.    She is the lead project manager on the project we were handling for the trustee, and I discussed the various topics of discussion in this notice and the document request to understand -- to prepare myself for this discussion -- for this deposition, I'm sorry.

Q.    Mr. Crist, you also said that you spoke with Mr. Crist, correct?

A.    Yes.

Q.    And is Mr. Crist an attorney?

A.    I don't know.  He's not practicing.  He's a salesperson for Consilio.

Q.    What did you discuss with Mr. Crist?

A.    The same topics; generally preparing for the deposition.

Q.    You also discussed -- you also testified

Page 15

that you discussed this or prepared with Mr. Payne.  Who is Mr. Payne?

A.   Mr. Payne is in the project manager management team as well; the same discussions.

Q.   Did you speak with anyone who has provided support to my law firm for the databases that we have with Consilio related to SmileDirect in --

A.   To prepare for this deposition?

Q.   Yes.

A.   I -- I -- I spoke to Mr. Stoneking just to let him know that you had sent me a -- a Subpoena.  That was the extent of the conversation.

Q.   No substance with Mr. Stoneking?

A.   No.

Q.   And no discussions with anyone else on the Consilio side supporting the -- my firm or the work we're doing with respect to SmileDirect?

A.   That's correct.

Q.   Now, you mentioned trustee's counsel, and you mentioned two lawyers.  One from the Orrick

Page 16

firm, do you know who that was?

A.    He's a lawyer named Nick Poli.  I think it's P-O-L-I.

Q.    Is it your understanding that Mr. Poli is counsel for the trustee?

A.    He is counsel for the trustee in connection with the work that we are doing for the trustee, is my understanding.

Q.    That's your understanding?

A.    Yes.

Q.    Have you done anything to verify that fact?

A.    That he is counsel for the trustee?

Q.    Yes.

A.    No, other than I negotiated a contract with him that the trustee signed and I believe Orrick signed.

Q.    Tell me about that contract, please.

A.    It's --

Q.    Generally like the date, that sort of thing.

Page 17

A.    I think -- I believe it was dated late July of 2024.

Q.    And it's between Consilio and Orrick; is that correct?

A.    I believe -- I believe it is signed -- I -- I know that the trustee's signature appears on it as well as the signature from Orrick.

Q.    That contract governs the relationship between Consilio and Orrick and/or the trustee; is that correct?

A.    That's -- that's my understanding, yes.

Q.    It also included a payment obligation for the services that Consilio is providing to the Orrick firm and/or the trustee?

A.    It does.

Q.    Has Consilio been paid any money pursuant to that contract since its execution in late July of 2024?

A.    I don't believe so.

Q.    To your knowledge, is the payment -- is the payment that's due under that contract

Page 18

contingent upon anything?

MR. POWER:  Objection, form.

BY MR. FIORELLA:

Q.  Well, let me ask it this way:  I'll withdraw that question.

Why haven't you been paid?  Why hasn't Consilio been paid pursuant to the contract between Consilio and the Orrick firm and/or the trustee?

A.  I believe that there have been three invoices that have been issued.  There were some corrections requested on the first one, and we just haven't been paid to date.

Q.  Have you inquired with the trustee, or trustee's counsel, as to why you haven't -- why Consilio hasn't been paid pursuant to that agreement?

A.  I don't -- I don't believe so.

Q.  Do you know if those invoices are waiting for approval, for example, from the Court?

A.  I don't know that.

Q.  Has Orrick -- the Orrick firm guaranteed

Page 19

payment on those invoices in the agreement between Consilio and the Orrick firm and/or the trustee?

A.    I'm not sure what you mean by guarantee. They're -- they are obligated to pay us under the agreement.

Q.    So Orrick is responsible for whatever charges have been assessed by Consilio for the work it's done pursuant to the agreement; is that correct?

A.    That's my understanding.

Q.    You mentioned three invoices.  What's the approximate total of those invoices?

A.    I -- I -- I -- I don't recall.  I don't -- I would think it's -- I think it's less than a hundred thousand dollars, but I'm not sure.

Q.    For all three?

MR. POWER:  Objection.

THE WITNESS:  I believe that's -- I believe that's the total amount.  I could be mistaken.

BY MR. FIORELLA:

Page 20

A.   Do you know if the contract between Orrick and Consilio includes -- well, actually, strike that.

The invoices, do you know if those three invoices include attorney time as well as hosting or just hosting?

A.   I -- I don't know.  It wouldn't surprise me if they include some PM time, project-manager time.  I guess I would be surprised if it included attorney time.

Q.   Are all of the PMs working at Consilio attorneys?

A.   I don't believe so.

Q.   Is the contract from late July 2024 the only agreement that you're aware of between Consilio and Orrick relating to access to data on Consilio?

A.   Concerning SmileDirect?

Q.   Well, that's a good qualification.  Let's start with any.

A.   We do -- we do a fair amount of work with

Page 21

Orrick.

Q.   Okay.  So there are other, potentially other agreements between Orrick and Consilio?

A.   Yes.

Q.   For other matters?

A.   Yeah, unrelated matters.

Q.   Right.

A.   As well as we do other work with your law firm.

Q.   Correct.

Do -- is this -- is the contract that you mentioned from late July of 2024 the only agreement related to the SmileDirect matter?

A.   It is.

Q.   No statements of work or other documents that you're aware of, or would that be part of the contract?

A.   I think -- I think there's a statement of work that is part of that contract, but only a single statement.

Q.   Is the time of the contract, which we're

Page 22

calling late July 2024, the time when Plaintiffs,

Securities Plaintiffs gained access to data on

Consilio related to SmileDirect?

MR. WOOD:  Objection to form.

MR. MINHAS:  Objection as well.

And, Andrew, can we have a stipulation

that an objection by federal counsel preserves the

objection for state counsel as well?

MR. FIORELLA:  Absolutely.  Happy to hear

your voice, but, yes, either one of you.

MR. MINHAS:  Thank you.

THE WITNESS:  I believe -- I believe the

Security Plaintiffs got access shortly after that

time.

BY MR. FIORELLA:

Q.  I should have asked the question --

that's probably a better question.  You answered a

better question than I asked.

Securities Plaintiffs gained access to

the data on Consilio sometime after late July of

2024; is that right?

Page 23

A.   That's correct.

Q.   Did the Orrick law firm have access to the data on Consilio before late July of 2024?

A.   I -- I -- I don't believe so.

Q.   Is there a separate agreement between Consilio and, say, the Robbins Geller law firm related to SmileDirect?

A.   There is not.

Q.   Is there a separate contract between Consilio and the law firm named Scott + Scott related to access to the SmileDirect material on Consilio?

A.   There is not.

Q.   The same question with respect to a law firm known as Barrett Johnson?

A.   There is not.

Q.   In the July 2024 agreement between Consilio and the Orrick firm and/or the trustee, is there a confidentiality provision in that agreement?

A.   I -- I believe there is.  I -- I think

Page 24

there's a standard provision in our agreements.

Q.   Generally speaking, the standard provision that Consilio includes, what -- the standard confidentiality agreement that Consilio includes in its contracts, what does that generally require of Consilio?

A.   That information that is provided to us is to be treated as confidential by us.

Q.   Do you know if the contract between SmileDirect, Inc. and Consilio contains a similar provision?

A.   Which contract are you referring to?

Q.   Well, that's a good question.

There was a contract, correct, between SmileDirectClub and Consilio I believe in 2019?  Is that correct?

A.   There was a contract with a predecessor entity known as Legility.

Q.   Now, Legility was acquired by -- by Consilio, correct?

A.   That's -- that's correct.

Page 25

Q. You were --

A. In effect. I mean, it may have been more complicated than that, but that was the practical effect.

Q. And Consilio acquired all of the contractual obligations of Legility at least as it -- at least as it relates to the SmileDirect databases?

MR. WOOD: Objection, form.

THE WITNESS: I -- I believe so, yes.

BY MR. FIORELLA:

Q. Well, you were general counsel at the time of the acquisition or the transaction with Legility, correct?

A. Yes.

Q. And you're generally familiar with the provisions of that acquisition?

A. I am.

Q. And as part of --

A. I think they remained in existence for some period of time after the acquisition,

Page 26

and -- but it was run as a combined business.

Q.   So before SDC's bankruptcy, Legility contracted with Consilio -- I'm sorry, Legility contracted with SmileDirectClub to host certain litigation databases with the company, correct?

A.   That's correct.

Q.   And after a transaction, or a series of transactions, where Consilio either acquired or however it was structured with Legility, Consilio began performing under those contracts?

A.   I -- I believe so, yes.

Q.   We were talking more about your preparation and we sort of got off of this contract language, which was very helpful, but let's go back to talking about your preparation for a second.

You said that you spoke with, in addition to -- well, what did you speak with the trustee's counsel at Orrick about or what you're purporting as trustee's counsel at Orrick?

MR. WOOD:   I'll just object, and, obviously, I don't represent the witness, Andrew,

Page 27

but I do want to lodge an objection to the

disclosure of privileged or work product

discussions.

MR. FIORELLA: I understand. We don't

have to -- we don't have to quabble -- quibble

about it. To the extent that you can, I

understand.

MR. WOOD: I'm just lodging it for the

record.

MR. FIORELLA: Yes, I understand.

THE WITNESS: Again, that was a

conversation that I believe is protected by some

applicable privilege.

BY MR. FIORELLA:

Q. So your communication -- you're taking

the position that your communication with attorneys

from Orrick would be covered by some sort of

privilege, correct?

A. That's correct.

Q. And you're not going to answer the

question related to that -- those discussions in

Page 28

preparation for your deposition because of that

privilege, correct?

    A.   That's correct.

    Q.   Now, you also said that you spoke to

Mr. Powers from Porter Hedges in advance of your

deposition.  What did you discuss with Mr. Powers?

        MR. POWER:  I'll lodge the same objection

as to the last question.

        MR. FIORELLA:  Understood.

        THE WITNESS:  I -- I understand that

Porter Hedges is also counsel for the trustee and

that -- that that discussion would be protected by

some privilege.

BY MR. FIORELLA:

    Q.   I understand.  And the same questions,

you're going to rely on that privilege and not

answer the question, correct?

    A.   That is correct.

    Q.   Understood.  Return to Exhibit 2 for a

moment and go to page 8 of the PDF, what's marked

as page 5.  Let me know when you're there.

Page 29

This page is entitled Document Production Request, do you see that?

A.    I do.

Q.    And no documents have been produced by Consilio in advance of this deposition, correct?

A.    That's correct.

Q.    And does Consilio intend to produce documents responsive to any of these requests?

A.    Not at this time.

Q.    Is it your position also that those documents are covered by some sort of applicable privilege?

A.    Yes, to the extent they exist.

(Whereupon, Consilio Deposition Exhibit No. 3, Email dated December 6, 2024, marked for identification.)

BY MR. FIORELLA:

Q.    So I'm introducing, hopefully, what I have marked as Consilio Exhibit 3.  Do you see that?

A.    I have to navigate to that.  I guess I

Page 30

have to refresh.  Yes.

Q.    Three is a two-page email exchange between Mr. Flanagan and myself, copying Mr. Silverstein, regarding document requests, and the second email on the first page is from me to you, correct, Mr. Flanagan?

A.    That's correct.

Q.    And I asked for documents, when we could expect the production, correct?

A.    That's correct.

Q.    And at the top, you write in response, "Andrew, As I mentioned in our earlier conversation, to the extent that responsive documents exist, I believe they are covered by an applicable privilege."  Did I read that correctly?

A.    You did.

Q.    And that's the position you are taking also today in this deposition, correct?

A.    That's correct.

Q.    Do you believe or are you asserting -- let me phrase it more correctly.

Page 31

Are you asserting that communications with the Securities Plaintiffs, if there are any, say, for example, Mr. Wood's firm, Robbins Geller, would also be covered by an applicable privilege?

A.   I don't -- I'm not sure about the answer to that question.

I'm interested if anyone -- anyone on the call has a view?  But, certainly, a course of action was to -- was to respond as I did.

Q.   Okay.

MR. WOOD:  I guess I'll just object that it calls for a legal conclusion, but that's it.

MR. FIORELLA:  Fair enough.  I'm just asking what his position is --

MR. WOOD:  I know.

MR. FIORELLA:  -- should he have any communications with you.  I understand.

BY MR. FIORELLA:

Q.   And that would apply to all the -- leaving Orrick and Porter Hedges aside, all Plaintiffs' law firms, you would have -- you would

Page 32

assert in a similar way at least for the purposes of this deposition?

A.    That's correct.  Although, I'll say I'm not aware of any discussions with anyone other than Robbins Geller.

Q.    So among the Plaintiffs' law firms with respect to accessing database on Consilio related to SmileDirectClub, the only communications that you had were with Orrick and Robbins Geller; is that correct?

A.    That's correct.

Q.    Were lawyers from Porter Hedges involved in the initial discussions to gain access?

A.    Not that I recall.

Q.    Aside from communications about this deposition, because you and I did speak for, I guess, setup reasons and things of that nature, do you consider communications between my firm and Consilio related to Consilio's work on the SDC databases to be privileged?

A.    I'm thinking about that for the first

Page 33

time.

MR. WOOD:  I'll just object to the extent it calls for a legal conclusion, but go ahead, obviously.

THE WITNESS:  I -- I think I probably -- I think I probably do.  I'd have to -- I mean, that's my preliminary sense. We -- we have a relationship where we are providing services to you and your clients as well.

BY MR. FIORELLA:

Q.  Leaving aside the question of privilege, you would consider those communications between my firm and Consilio related to the work that Consilio is doing on the SDC databases to be confidential, correct?

A.  Yes.

Q.  Does Consilio have an ethics policy?

A.  I think we do, yeah.

Q.  Does that policy include keeping client data confidential?

A.  I -- I don't know.  It wouldn't surprise

Page 34

me.

Q.    You're not sure one way or the other?

A.    I'm not.

Q.    All right.  Let's talk about the access by the Securities Plaintiffs and Orrick to the SDC litigation database.

At some point, I think we said it was at the end of July of 2024, Consilio granted Orrick and Securities Plaintiffs access to that litigation -- to a litigation database hosted by Consilio, correct?

A.    That's correct.

Q.    Were you involved in making the decision to grant that access?

A.    I was.

Q.    Was there anyone else involved, or was it just you?

A.    There were the people working on the team, but it was -- it was me and the people I have identified who were working on the project.

Q.    Was Mr. Stoneking involved in that

Page 35

decision?

A. I don't believe he was.

Q. So when you mean the people that you mentioned before, that would be Ms. Gipson, Mr. Crist, and Mr. Payne; is that correct?

A. Yes. There may have been others, but yes.

Q. Anyone else that comes to mind?

A. No.

Q. When did securities -- well, who first reached out to you? Was it Orrick, Robbins Geller or someone else about that -- about accessing data on Consilio related to SDC?

A. I believe the first contact we had was from Orrick in April of 2024.

Q. They reached out to you or did you reach out to Orrick?

A. They reached out to someone -- someone else at Consilio.

Q. Do you know who that was?

A. Mr. Crist.

Page 36

Q.    And this was -- April was after the conversion of the SDC bankruptcy from Chapter 11 to Chapter 7, correct?

A.    That's correct.

Q.    Was Orrick granted any access to data or documents hosted by Consilio related to SDC in April of 2024?

A.    I don't believe so.

Q.    I believe you testified that it was late July before they gained access, correct?

A.    Yes.

Q.    When did -- did you eventually speak with anyone at Orrick about accessing SDC's data on Consilio?

A.    I -- I did have a -- a number of conversations with people from Orrick.

Q.    Would that include Mr. Poli, P-O-L-I?

A.    Yes, it did.

Q.    Anyone else that you remember from Orrick?

A.    I recall there was a -- a person named

Page 37

Jeff McKenna or something Mc, Mc-something.  I think it's McKenna.

Q.   Anyone else you recall?

A.   Not that I recall.

Q.   At what point did your communications begin with Robbins Geller?

A.   I -- I had spoken with Robbins Geller.  I spoke to Mr. Wood at some point late last week.  That was the first time I spoke with anyone from Robbins Geller.

Q.   I'm sorry, did you say Mr. Wood?

A.   Yes.

Q.   Okay.  So from, I guess, the filing of SDC's bankruptcy until last week, you spoke -- you hadn't spoken with anyone at Robbins Geller about accessing data on the Consilio related to the SDC matter?

A.   I did not.

Q.   Going back to the initial contacts in April with the Orrick law firm, what did Orrick request from Consilio, if you recall?

Page 38

MR. WOOD:  I'll object on privilege and work product grounds.

THE WITNESS:  Yeah, I -- I -- I don't recall, but I think that would be covered by the applicable privilege.

BY MR. FIORELLA:

Q.  So you're not going to answer the question based on that privilege?

A.  Correct.

Q.  What data was eventually given -- what access -- access to what data was eventually given to Orrick related to the SDC matter?

MR. POWER:  Same objection.

MR. FIORELLA:  Well, I have had conversations, brief conversations with members of -- of employees of Consilio about how the database was created, so to the extent there's a privilege, I think it's been waived.

MR. WOOD:  Well, I don't think -- I don't know that anyone here knew that you had those conversations, and --

Page 39

MR. FIORELLA:  We didn't know -- we didn't know that they were talking to Orrick either, so ...

BY MR. FIORELLA:

Q.   Well, let's start again.  Let's try it -- let's try it a different way.

A.   Yes.

Q.   Eventually, Orrick was given access to a litigation database hosted by Consilio that contained information related to the SDC matter, correct?

A.   That's correct.

Q.   And there's a database or two or three or more that my law firm has access to relating to -- on Consilio related to the SDC matter, correct?

A.   That's correct.

Q.   Was any of the work product from, we'll call them -- just for convenience, we'll call them the Benesch databases transferred over to the Orrick databases?

Page 40

A.    No, it was not.

Q.    Can you describe the process of how -- well, and I guess that's what I'm getting to of what information.

Did you -- did someone from Consilio copy any database or content of database, we'll call them, again, the Benesch databases, to create the Orrick database?

MR. POWER:    Objection, form.

THE WITNESS:    We stripped out or removed or eliminated any Benesch work product from the database that Orrick was given access to.

BY MR. FIORELLA:

Q.    So there are a number of databases that over time have been created in this case.  One sort of the principal database I'll represent to you is titled SMDC, like Sam-Mary-David-Charlie, 0001-Consumer and Securities Class Action.  Are you familiar with a database with that title?

A.    I am.

Q.    Is that the database that was converted,

Page 41

for lack of a better word, into the database that Orrick was given access to?

A.    Yes.

Q.    At the time when you had contact with the Orrick law firm -- well, wait a minute.  Before we get to that, what -- that's -- that name is what we call this database.  Is there a different name that Orrick is using for that database?

A.    I don't know.  That's -- that's what -- that's how I identify the database.

Q.    Do you know if any material was removed from SMDC0001 other than the -- I'm sorry, let me ask a better question.

Other than the coding data and work product, do you know if any documents were removed from SMDC0001 before it was converted into an Orrick database?

A.    I don't know.

Q.    Who would know that?

A.    I would -- I would start with Ms. Gipson.

Q.    Did Ms. Gipson or members of her team do

Page 42

the work -- and I use that sort of in a colloquial sense -- do the work necessary to create the Orrick database?

A.   I believe so.

Q.   Did you require any sort of payment -- well, you didn't.

Did Consilio require any sort of payment from the Orrick law firm before giving them access to the SMDC0001 database?

A.   We did not.

Q.   And lawyers from the Orrick firm represented to you that they were counsel for the trustee, correct?

A.   Yes, that was my understanding throughout.

Q.   Prior to the req- -- the request to you or to Consilio for access to the SMDC0001 database, were lawyers from Orrick told about the contents of that database?

A.   I don't know.

Q.   In your conversations with the lawyers

Page 43

from the Orrick firm starting in April of 2024, did they describe to you any of the contents of that database?

A.    I don't recall.

MR. WOOD:  I'm just going to object again on privilege and work product grounds.

BY MR. FIORELLA:

Q.    And your answer is still, I don't know?

A.    I don't recall.

Q.    Okay.  Did you ever speak directly with the trustee prior to granting the Orrick firm access to SMDC0001?

A.    I -- I spoke with her at some point.  I don't recall when it was.

Q.    Sometime in 2024 you spoke with the trustee directly?

A.    I did.  I did.

Q.    But you don't recall if that was before or after Orrick was granted access to SMDC0001, correct?

A.    That's correct.

Page 44

Q.    Are there written communications that you're aware of between you and Orrick or anyone at Consilio and Orrick related to gaining access to SMDC0001?

A.    Yes, I believe there are email communications.

Q.    Do you still have those communications?

A.    Yeah.  They've been preserved.

Q.    Okay.  Do you recall ever having written communication prior -- I'm sorry.

Prior to your deposition here today, and in preparation for that, do you have any written communications with the Robbins Geller law firm related to access to the database?

A.    Are you asking me personally or Consilio?

Q.    Well, let's talk -- let's start with you personally.

A.    I don't believe so.  I mean, I mentioned that I -- I spoke to Mr. Wood late last week in a brief conversation.

Q.    Right.

Page 45

A.    I don't believe so.

Q.    Do you know whether anyone from Robbins Geller, the Robbins Geller firm has access to SMDC0001?

A.    I don't believe they do at this point, no.

Q.    Do you know if any of the Plaintiffs' law firms have access to SMDC0001?

A.    I don't believe they do.

Q.    Now, when I go on our database, our version of SMDC0001, there are logs of access and what documents were -- were accessed and that sort of thing.

Are you aware of logs existing for access to the Orrick version of SMDC0001?

A.    I don't know, but I assume that -- that such logs exist.

Q.    Who would know?

A.    I would start with, again, Ms. Gipson who was the lead project manager for the project.

Q.    I'd ask that those documents be preserved

Page 46

by Consilio.  I think it -- I don't think you can do anything to not preserve them.  I think it's in the database, but just for a formal request, I'd ask that you keep those.

A.    I completely understand.

Q.    Do you know if any other law firm, other than Orrick, has access to SMDC0001, the -- the Orrick version?

Pardon me?  I didn't hear the answer.

THE COURT REPORTER:  I didn't either.

THE WITNESS:  I posed a question back just to clarify if -- if the question was, does anyone else have access currently to that database?

BY MR. FIORELLA:

A.    We'll start with currently, sure.

As we sit here today on December 9th, 2024, do any other law firms, other than Orrick, have access to the Orrick version of SMDC0001?

A.    I don't know.

Q.    At any time in 2024, has -- has another law firm, other than Orrick, had access to the

Page 47

Orrick version of SMDC0001?

A.   I don't know.

Q.   Is that another question for Ms. Gipson?

A.   Yeah.

Q.   Normally, as a normal practice at Consilio if multiple law firms are going to have access to a database, do you seek an agreement with all of those law firms, you Consilio?

MR. WOOD:   Objection to form.

THE WITNESS:   I don't -- can you ask that again or could the Court Reporter read that back?

MR. FIORELLA:   Yeah.   Could the Court Reporter read that question back?   I don't know that I could form it again.

(Whereupon, the record was read as requested.)

MR. FIORELLA:   And I think someone objected.   We'll preserve the objection.

MR. WOOD:   Objection to form, yeah.

MR. FIORELLA:   Yeah.

THE WITNESS:   I -- this hasn't happened

Page 48

much, but I -- I think we typically would, yeah.

BY MR. FIORELLA:

Q.   Speaking specifically of the Orrick version of SMDC0001, if, for example, Robbins Geller wanted to have access to that database, assuming they don't, you would expect an agreement to be answered -- I'm sorry, an agreement to be entered with that firm?

MR. WOOD:   Objection to form.

THE WITNESS:   Yeah, I need that question back from the Court Reporter again, please.

(Whereupon, the record was read as requested.)

THE WITNESS:   That would typically be the process.

BY MR. FIORELLA:

Q.   As you sit here today, you're unaware of any agreement with Robbins Geller or any of the Plaintiffs' firms to access SM- -- the Orrick version of SMDC0001, correct?

A.   Yes, there is no agreement.

Page 49

Q.    Got it.  So speaking of the document, just to be clear, when the Orrick version of SMDC0001 was created, it has the same -- is it fair to say that it has the same content, leaving aside work product and coding, the same document content as the Benesch version of that database?

A.    I believe it does.

Q.    Did -- in your conversations with Orrick prior to granting them access, did Orrick ask whether the Consilio database contained documents that were not owned by the debtors?

MR. WOOD:  Objection to the extent it calls for privileged work product communications.

MR. POWER:  I'll lodge the same objection.

THE WITNESS:  I -- I -- I don't recall any conversations to that effect.

BY MR. FIORELLA:

Q.    With respect to any privileged material on SMDC0001, the Benesch version, did the trustee provide a written waiver of the debtors' privilege

Page 50

or of any privilege to Consilio?

A.   I don't recall.

Q.   In your conversations with either -- well, I'll start with Orrick.

In your conversations with Orrick, did Orrick make any representations to you about the scope of privilege with documents hosted --

THE COURT REPORTER:  Can you repeat that? You were a little muddled.  You were frozen, your bandwidth.

MR. FIORELLA:  Let me try it again.

BY MR. FIORELLA:

Q.   In your conversations with Orrick prior to their obtaining access to SMDC0001, did that law firm make any representations to you about the scope of the debtors' privilege waiver?

MR. POWER:  Objection, form and objection, privilege.

MR. WOOD:  Objection.

BY MR. FIORELLA:

Q.   Well, these are instructions, right?  I'm

Page 51

not asking for her legal thought or -- or legal opinions or legal advice. I'm asking what she said to Consilio -- I'm sorry, what -- what Orrick said to Consilio about the scope of the waiver.

A. I don't recall.

Q. And to the extent you had any direct email communications with the trustee, you would have retained those documents, correct?

A. Yes.

Q. Did Orrick or the trustee say anything to you about accessing -- accessing non-privileged documents in the SMDC0001 database?

MR. POWER: Objection, form.

THE WITNESS: Really, again, I -- I think conversations between Orrick and Consilio about this project would be covered by the applicable privilege.

BY MR. FIORELLA:

Q. And you're going to rely on that privilege?

A. I am.

Page 52

Q.   Other than removing Benesch work product, did anyone at Consilio review the documents in SMDC0001 before granting access to Orrick?

A.   I don't know.

Q.   That's a question for Ms. Gipson and her team?

A.   Correct.

Q.   Are you aware of whether anyone at Consilio reviewed the privilege logs prepared in the securities case -- cases prior to giving access to Orrick to the database?

A.   I don't know.

Q.   A similar question for Ms. Gipson or her team?

A.   Yes.

Q.   Is she the leader of that team, Ms. Gipson?

A.   I don't know if she's the leader of that team.  She's the lead PM on the project.

Q.   And PM is project manager, as you said before?

Page 53

A.    That's correct.

Q.    And as far as you're aware -- I think I have asked this before, but I want to be clear.

As far as you're aware, the Orrick version of SMDC0001 is identical to the Benesch version of SMDC0001 except for the work product created by counsel?

A.    That's my understanding.

Q.    Did you know that the Consilio database SMDC0001 also contained documents from a third party, Camelot Venture Group?

MR. POWER:  Objection, form.

THE WITNESS:  I -- I -- I did not know that.

BY MR. FIORELLA:

Q.    So prior to granting access to Orrick to SM- -- a version of SMDC0001, you did not know that the database contained documents collected from Camelot Venture Group, correct?

A.    That's correct.

MR. WOOD:  Objection to form.

Page 54

BY MR. FIORELLA:

Q.   As far as you're aware, Consilio did not undertake any effort to separate documents possibly covered by other claims of privilege, meaning not belonging to the debtors, prior to granting Orrick access to SMDC0001, correct?

MR. POWER:   Objection, form.

THE WITNESS:   Not to my knowledge.

(Whereupon, Consilio Deposition Exhibit No. 4, Email dated July 12, 2024, marked for identification.)

BY MR. FIORELLA:

Q.   I'm introducing what I have marked as Consilio Exhibit 4.   Let me know when you have received that.

A.   I see it.

MR. FIORELLA:   For the record, Consilio Exhibit 4 is a one-page email exchange between Laura Seferian, with my law firm, with Mr. Power and Mr. Power's response.

BY MR. FIORELLA:

Page 55

Q.    I'll represent to you also that this is not -- you were not on this document.

A.    Okay.

Q.    Mr. Power informs us that the trustee is not waiving privilege claims held by any of the individuals.  Do you see that in the -- in the topmost email?

A.    I see that.

Q.    Did anyone from Orrick tell you that the trustee was not waiving privilege claims held by individuals prior to granting access to SMDC0001?

MR. POWER:  Objection, privilege and work product from before.

THE WITNESS:  I don't believe so.

BY MR. FIORELLA:

Q.    Do you know approximately how many documents are in SMDC0001?

A.    I do not.

Q.    Would it surprise you if I told you it was more than 2.2 million?

A.    It would not surprise me.

Case 3:19-cv-00962    Document 195-1    Filed 03/14/25    Page 112 of 197 PageID #: 4980

Page 56

Q.   Do you know if the -- if a -- an export of data was made on Orrick version SMDC0001 that there would be a record of it somewhere in the Consilio database?

A.   I believe there will be a record, yes.

Q.   Would that be similar to the access records we were discussing earlier?

A.   I -- yeah, I -- I believe we have records of what we do with data.  I don't know what you mean by similar though.

Q.   Well, that's a fair clarification.

Similar, I meant when you log in to Relativity, there's -- for each document, there's a record of the -- who accessed it and when.  I wondered if you know if there's a similar record for larger exports?

A.   I -- I think there would be.

Q.   And if so, we also ask that those be maintained or retained.

A.   I understand.

Q.   Thank you.

Page 57

So earlier you testified that Orrick has not paid currently -- well, at all, has not paid for access to the database yet, correct?

A.    That's correct.

Q.    The individual Defendants have made payments to Orrick -- I'm sorry, have made payments to Consilio for access to SMDC0001, correct?

A.    I don't know that, but I hope so.

Q.    Well, on behalf of -- that's a fair clarification.  Let me ask this again.

The directors and officers insurance policy has resulted in payments being made to Consilio for the Benesch version of SMDC0001, correct?

A.    I believe that's the case.

Q.    And those are the only payments that have been received by Consilio related to the -- to the SMDC0001 or other databases since the filing of the bankruptcy of SmileDirect, correct?

A.    It's been a sore subject, but, yes, that's correct.

Page 58

Q.    In fact, Consilio has filed a Proof of Claim in SDC's bankruptcy, correct?

A.    Yes, we did.

Q.    And it's about 2.4, $2.5 million?

A.    That's correct.

Q.    And the trustee has not paid any of -- well, either pre-petition or post-petition hasn't made any payments to Consilio, correct?

A.    I don't -- no payments were made with respect to the amount covered by the Proof of Claim either prior to the appointment of the trustee or since the appointment of the trustee.

Q.    That's a fair qualification.

And the post-petition, as I think we said before -- as you testified before, the post-petition obligations have only come from the payment for the post-petition work that Consilio has done.  It's only come from the individual Defendants' directors and officers policy, correct?

A.    To date, yes.

MR. FIORELLA:  All right.  I think I just

Page 59

need a minute or two, and I think I am done, and I can pass the witness if anyone else has any questions for you.  Just give me a moment.

Is that all right with everyone?

MR. WOOD:  Um-hum.

MR. FIORELLA:  Okay.

(Recess taken -- 11:35 a.m.)

(After recess -- 11:37 a.m.)

MR. FIORELLA:  We're back on the record.

BY MR. FIORELLA:

Q.   I have one more question.

Between the time the trustee was appointed in late July of 2024 and when Orrick was given access to a version of SMDC0001, no other counsel or parties had access to that database; is that correct?

A.   I don't believe so.

Q.   Great.

MR. FIORELLA:  Mr. Flanagan, thank you very much.  The next time I'm in D.C., we'll have a nice drink.

Page 60

I pass the witness on to anyone else who wants to ask questions.

MR. WOOD:  I have one or two questions.  I'm happy to wait if there's someone else who wants to go first.

MR. POWER:  I have no questions.

MR. MOSKALEWICZ:  I have a couple of questions, but I'll let Mr. Wood go first.

EXAMINATION

BY MR. WOOD:

Q.  Okay.  Mr. Flanagan, Hi.  I'm Chris Wood again.  I represent the Federal Securities Plaintiffs.  I just have like two or three questions for you.

You mentioned that some invoices had been sent to Orrick; is that correct?

A.  Yes.

Q.  Do you expect that those invoices will be paid?

A.  I -- I do.  I do.  Although I'll say that I -- when I read the brief, the motion, there was a

Page 61

footnote that talked about the Securities

Plaintiffs being responsible for or will take

responsibility for the payment or something.  I was

heartened a little bit to read that.

Q.    Do you know if those payments are late or

overdue in any way?

A.    The first payment required some

corrections on the invoice, which starts the date

again.  That's probably a process we need to

tighten up, but I don't know if the others are

overdue.

Q.    To your knowledge, there are none that

are overdue; is that fair?

A.    I just don't know.  They may be.

Q.    Okay.  The -- you testified earlier about

the original agreement for hosting these documents

being with Legalese; is that correct?

A.    Legility, L-E-G-I-L-I-T-Y.

Q.    I'm sorry.  I'm sorry.  Yes, Legility.

Was that an agreement between Legility

and SmileDirectClub?

Page 62

A.    That's correct.

Q.    And Consilio took over those obligations in one way or another after Consilio effectively acquired Legility, is that -- is that fair?

A.    That's correct.

Q.    And, obviously, we all know SmileDirectClub declared bankruptcy, right?

A.    Yes, they did.

Q.    And you understand that the Benesch firm no longer represents SmileDirectClub?

A.    That's my understanding.

Q.    And how did Consilio get comfortable with giving the Benesch folks access to the databases that were created in connection with that SmileDirectClub agreement?

A.    I don't -- I don't recall my thinking.

MR. WOOD:  Thank you.  Thank you for your time.

EXAMINATION

BY MR. MOSKALEWICZ:

Q.    Good morning, Mr. Flanagan.  My name is

Page 63

Robert Moskalewicz, DLA Piper, counsel to Cluster Holdco, Debt Agent in the SmileDirectClub bankruptcy cases.  Just a few questions.

Does Cluster Holdco have access to the Consilio database related to the SmileDirectClub matter?

A.    I have no idea.

Q.    Is that a question for Ms. Gipson?

A.    Yeah.  I would start with her, yes.

Q.    Okay.  Does my law firm, DLA Piper, have access to that database?

A.    Again, no idea.  I would start with Ms. Gipson.

Q.    Have you had any conversations with Cluster Holdco regarding that access?

A.    I -- I have not.

Q.    Any conversations with DLA Piper regarding that access?

A.    None.

MR. MOSKALEWICZ:  Thank you.  Nothing further.

Page 64

MR. FIORELLA: All right. Hearing none, given the assertions of privilege, the outstanding documents, and the references to Ms. Gipson, I think we're going to keep this deposition open pending whatever happens with the Bankruptcy Court.

And, for the record, I believe it was the -- yeah, Exhibit 1 was not used, but it's still been marked because of the way Exhibit Share works. I don't know if we can remove that from the transcript. Whatever has to happen with that is fine, but I want to make that clear.

Otherwise, thank you, Mr. Flanagan.

MR. WOOD: Hey, sorry, Andrew --

MR. FIORELLA: Oh, sure, Chris.

MR. WOOD: Just one second. Do you have an objection, Andrew, to marking Exhibit 1 just because at least we've all looked at it and I don't want it to just disappear?

MR. FIORELLA: Sure. Yeah, it's -- it's fine. Yes. Assuming there's no specific waiver of privilege with it, but, yeah, to the extent there's

Page 65

a privilege, I don't think there is, but whatever.

REEXAMINATION

BY MR. WOOD:

Q.   So can I just quickly ask, Mr. Flanagan, if you could pull up Exhibit 1?

A.   Let me navigate back to the screen.  Oh, yeah.

Q.   I would just ask you, do you recognize Exhibit 1 to be an exhibit that you sent to Ms. Rammelt in October of 2023?

A.   You know, I do.  I do.

Q.   Okay.

MR. WOOD:  Nothing further.

MR. FIORELLA:  I think unless anyone has anything else, I think that's it.

THE COURT REPORTER:  This is the Court Reporter.   Would anyone like a copy?

MR. WOOD:  We'd like an expedited copy, please.

THE COURT REPORTER:  Okay.

MR. MINHAS:  The same for State

Page 66

Securities.  Thank you.

MR. FIORELLA:  Obviously, for us.

(Whereupon, the deposition of Michael Flanagan was adjourned at 11:44 a.m., and the reading and signing of the transcript was waived.)

Page 67

State of Maryland

County of Baltimore, to wit:

I, Michele D. Lambie, a Notary Public of the State of Maryland, County of Baltimore, do hereby certify that the within-named witness personally appeared before me at the time and place herein set out, and after having been duly sworn by me, according to law, was examined by counsel.

I further certify that the examination was recorded stenographically by me and this transcript is a true record of the proceedings.

I further certify that I am not of counsel to any of the parties, nor related to any of the parties, nor in any way interested in the outcome of this action.

As witness my hand and notarial seal this 10th day of December 2024.

*Michele D Lambie*

Michele D. Lambie

**[& - accessing]** Page 1

**&**

**&** 2:6,14 3:12 3:14 4:14 8:6 8:17,20

**0**

**0001** 40:18

**1**

**1** 6:10 11:17,19 64:7,16 65:5,9
**10** 6:10 11:19
**1000** 4:7
**10169** 3:9
**10:31** 1:13
**10th** 67:17
**11** 6:10 36:2
**11:35** 59:7
**11:37** 59:8
**11:44** 66:4
**12** 6:11,14 54:10
**127** 2:9
**16532** 67:20
**17th** 3:8
**1828** 1:13
**1970s** 11:1

**2**

**2** 6:11 12:6,10 12:13 28:19
**2.2** 55:20
**2.4** 58:4
**2.5** 58:4

**2012** 10:3
**2019** 24:15
**2023** 6:10 11:19 65:10
**2024** 1:12 6:13 6:14 17:2,18 20:14 21:12 22:1,21 23:3 23:17 29:15 34:8 35:15 36:7 43:1,15 46:17,20 54:10 59:13 67:17
**212** 3:10
**216** 2:12
**223-4478** 3:10
**223-9330** 2:20
**226-6000** 4:10
**23-90786** 1:6
**230** 3:7
**244-2203** 3:20
**2600** 2:18
**29** 6:13

**3**

**3** 6:13 29:15,19
**310** 4:17
**312** 5:9
**363-4500** 2:12
**368-4000** 5:9
**36th** 4:8
**37219** 3:19

**4**

**4** 6:14 54:10,14 54:18
**41** 2:17
**414** 3:17
**43215** 2:19
**44114** 2:11
**444** 5:6
**4900** 2:10

**5**

**5** 28:21
**54** 6:14

**6**

**6** 6:13 29:15
**60** 6:4
**60606** 5:8
**615** 2:20 3:20
**62** 6:4
**65** 6:5
**650** 4:19

**7**

**7** 1:5 6:3 9:5 10:10 36:3
**713** 4:10
**77002** 4:9

**8**

**8** 28:20
**849-5300** 4:19

**9**

**9** 1:12 12:21

**900** 3:18 5:7
**920** 10:9 13:9
**94301** 4:18
**9th** 46:16

**a**

**a.m.** 1:13 59:7 59:8 66:4
**aaron** 4:5 9:4
**absolutely** 22:9
**access** 20:16 22:2,13,19 23:2,11 32:13 34:4,9,14 36:5 36:10 38:11,11 39:8,14 40:12 41:2 42:8,17 43:12,19 44:3 44:14 45:3,8 45:11,14 46:7 46:13,18,21 47:7 48:5,19 49:9 50:14 52:3,10 53:16 54:6 55:11 56:6 57:3,7 59:14,15 62:13 63:4,11,15,18
**accessed** 45:12 56:14
**accessing** 32:7 35:12 36:13 37:16 51:11,11

Veritext Legal Solutions

800-567-8658                973-410-4098

**[acknowledge - believe]** Page 2

**acknowledge** 7:3,7

**acquired** 24:19 25:5 26:8 62:4

**acquisition** 25:13,17,21

**action** 10:9 31:9 40:18 67:15

**actually** 13:9 20:2

**addition** 26:16

**address** 9:13

**adjourned** 66:4

**administer** 7:8

**administered** 1:7 7:8

**advance** 28:5 29:5

**advice** 51:2

**afiorella** 2:8

**agent** 9:7 63:2

**agree** 7:10

**agreement** 18:16 19:1,5,8 20:15 21:12 23:5,17,20 24:4 47:7 48:6 48:7,18,21 61:16,20 62:15

**agreements** 21:3 24:1

**ahead** 33:3

**al** 1:6

**alex** 8:18

**alexander** 4:12

**allison** 4:3 9:5

**alto** 4:18

**amount** 19:19 20:21 58:10

**andrew** 2:7 8:5 22:6 26:21 30:12 64:13,16

**answer** 9:20 27:20 28:17 31:5 38:7 43:8 46:9

**answered** 22:17 48:7

**apower** 4:6

**appearances** 2:1 3:1 4:1 5:1

**appeared** 67:6

**appearing** 10:4 13:20

**appears** 17:7

**applicable** 27:13 29:11 30:15 31:4 38:5 51:16

**apply** 31:19

**appointed** 59:13

**appointment** 58:11,12

**approval** 18:19

**approximate** 19:12

**approximately** 55:16

**april** 35:15 36:1,7 37:20 43:1

**aronoff** 2:6,14 8:6

**aside** 31:20 32:15 33:11 49:4

**asked** 13:18 22:16,18 30:8 53:3

**asking** 31:14 44:15 51:1,2

**assert** 32:1

**asserting** 30:21 31:1

**assertions** 64:2

**assessed** 19:7

**assume** 10:13 45:16

**assuming** 48:6 64:20

**attached** 6:9

**attempt** 11:13 11:14

**attorney** 10:12 13:16 14:2,15 20:5,10

**attorneys** 3:2,4 7:2 9:2 20:12

27:16

**authorized** 9:19 10:11

**avenue** 3:7 4:17 5:6

**aware** 11:8 20:15 21:16 32:4 44:2 45:14 52:8 53:2,4 54:2

**b**

**back** 26:14 37:19 46:11 47:11,13 48:11 59:9 65:6

**baltimore** 67:2 67:4

**bandwidth** 50:10

**bankruptcy** 1:1 4:2 10:5,9 26:2 36:2 37:14 57:19 58:2 62:7 63:3 64:5

**barrett** 23:15

**based** 38:8

**began** 26:10

**behalf** 2:2 3:2 3:12 4:2,12 5:2 8:20 9:1,20 57:9

**believe** 16:16 17:1,5,5,19

**[believe - consilio]**                                              Page 3

18:9,17 19:18 19:19 20:13 22:12,12 23:4 23:21 24:15 25:10 26:11 27:12 30:14,20 35:2,14 36:8,9 42:4 44:5,18 45:1,5,9 49:7 55:14 56:5,8 57:15 59:17 64:6

**belonging**  54:5

**benesch**  2:6,14 8:6,15 39:20 40:7,11 49:6 49:20 52:1 53:5 57:13 62:9,13

**beneschlaw.c...** 2:8,16

**better**  22:17,18 41:1,13

**bit**  61:4

**brett**  13:12

**brief**  13:16 38:15 44:20 60:21

**business**  9:13 26:1

**byman**  4:3 9:5

**c**

**c**  7:1 13:12

**california**  4:18

**call**  31:8 39:19 39:19 40:6 41:7

**called**  7:15

**calling**  22:1

**calls**  31:12 33:3 49:13

**calubaquib** 4:15 8:16,16

**camelot**  2:5 8:9 53:11,19

**capacity**  11:5

**captioned**  10:9

**case**  1:6 11:1 40:15 52:10 57:15

**cases**  52:10 63:3

**certain**  26:4

**certainly**  31:8

**certify**  67:5,9 67:12

**chapter**  1:5 9:5 10:10 36:2,3

**charges**  19:7

**charlie**  40:17

**chicago**  5:8

**chris**  60:11 64:14

**christopher** 3:15 8:19

**claim**  58:2,10

**claims**  54:4 55:5,10

**clarification** 56:11 57:10

**clarify**  46:12

**class**  40:18

**clear**  49:2 53:3 64:11

**cleveland**  2:11

**client**  10:12 33:19

**clients**  33:9

**cluster**  5:2 63:1 63:4,15

**cml**  1:6

**coding**  41:14 49:5

**colleagues** 13:10,14

**collected**  53:18

**colloquial**  42:1

**columbia**  9:11

**columbus**  2:19

**combined**  26:1

**come**  58:16,18

**comes**  35:8

**comfortable** 62:12

**commencing** 1:12

**communication** 27:15,16 44:10

**communicati...** 31:1,17 32:8 32:15,18 33:12 37:5 44:1,6,7 44:13 49:13 51:7

**company**  9:20 26:5

**complete**  11:9

**completely** 46:5

**complicated** 25:3

**concerning** 20:18

**conclusion** 31:12 33:3

**confidential** 24:8 33:14,20

**confidentiality** 23:19 24:4

**confirming** 10:10

**connection** 16:7 62:14

**consider**  32:18 33:12

**consilio**  9:16,19 10:2 11:6,17 11:18 12:5,10 12:12 14:4,17 15:7,17 17:3,9

**[consilio - created]**

| | | | |
|---|---|---|---|
| 17:13,16 18:7 18:8,15 19:2,7 20:2,11,16,17 21:3 22:3,20 23:3,6,10,12,18 24:3,4,6,10,15 24:20 25:5 26:3,8,9 29:5,7 29:14,19 32:7 32:19 33:13,13 33:17 34:8,11 35:13,19 36:6 36:14 37:16,21 38:16 39:9,15 40:5 42:7,17 44:3,15 46:1 47:6,8 49:10 50:1 51:3,4,15 52:2,9 53:9 54:2,9,14,17 56:4 57:7,13 57:17 58:1,8 58:17 62:2,3 62:12 63:5 **consilio's** 13:3 32:19 **consilio.com** 9:14 **consumer** 40:18 **contact** 35:14 41:4 **contacts** 37:19 | **contained** 39:10 49:10 53:10,18 **contains** 24:10 **content** 40:6 49:4,5 **contents** 42:18 43:2 **contingent** 18:1 **continued** 3:1 4:1 5:1 **contract** 16:15 16:18 17:8,17 17:21 18:7 20:1,14 21:11 21:17,19,21 23:9 24:9,12 24:14,17 26:13 **contracted** 26:3,4 **contracts** 24:5 26:10 **contractual** 25:6 **convenience** 39:19 **conversation** 13:17 15:13 27:12 30:13 44:20 **conversations** 36:16 38:15,15 38:21 42:21 49:8,17 50:3,5 | 50:13 51:15 63:14,17 **conversion** 36:2 **converted** 40:21 41:16 **coplan** 2:6,14 8:6 **copy** 40:5 65:17,18 **copying** 30:3 **correct** 9:14,15 9:17 10:5,6,14 11:7 13:5,20 14:13 15:19 17:4,10 19:9 21:10 23:1 24:14,16,20,21 25:14 26:5,6 27:18,19 28:2 28:3,17,18 29:5,6 30:6,7,9 30:10,18,19 32:3,10,11 33:15 34:11,12 35:5 36:3,4,10 38:9 39:11,12 39:16,17 42:13 43:20,21 48:20 51:8 52:7 53:1 53:19,20 54:6 57:3,4,7,14,19 57:21 58:2,5,8 58:19 59:16 | 60:16 61:17 62:1,5 **corrections** 18:11 61:8 **correctly** 30:15 30:21 **counsel** 9:7,16 10:1 11:6 13:15,19 15:20 16:5,6,13 18:14 22:7,8 25:12 26:18,19 28:11 42:12 53:7 59:15 63:1 67:8,13 **county** 67:2,4 **couple** 60:7 **course** 31:8 **court** 1:1 7:2 10:5 18:19 46:10 47:11,12 48:11 50:8 64:5 65:16,16 65:20 **covered** 27:17 29:11 30:14 31:4 38:4 51:16 54:4 58:10 **create** 40:7 42:2 **created** 38:17 40:15 49:3 53:7 62:14 |

**[crist - earlier]** Page 5

| | | | |
|---|---|---|---|
| **crist** 13:12 14:12,13,15,18 35:5,21 | 59:15 63:5,11 | 12:6,14 13:1 14:11,20 15:9 | **division** 1:3 |
| **crutcher** 4:14 8:17 | **databases** 15:6 25:8 26:5 32:20 33:14 | 28:1,6 29:5,14 30:18 32:2,16 44:11 54:9 | **dla** 5:3 63:1,10 63:17 |
| **cs7064152** 1:21 | 39:20,21 40:7 40:14 57:18 | 64:4 66:3 | **document** 12:2 12:13,18 14:9 |
| **csr** 1:20 | 62:13 | **describe** 40:2 43:2 | 29:1 30:4 49:1 49:5 55:2 |
| **currently** 46:13 46:15 57:2 | **date** 16:20 18:12 58:20 | **designated** 13:3 | 56:13 |
| **cwood** 3:16 | 61:8 | **different** 39:6 41:7 | **documents** 21:15 29:4,8 29:11 30:8,14 |

**d**

**d** 1:14,20 4:3 7:1 67:3,21
**d.c.** 1:14 59:20
**data** 20:16 22:2 22:20 23:3 33:20 35:12 36:5,13 37:16 38:10,11 41:14 56:2,9
**database** 32:7 34:6,10 38:17 39:9,13 40:6,6 40:8,12,16,19 40:21 41:1,7,8 41:10,17 42:3 42:9,17,19 43:3 44:14 45:10 46:3,13 47:7 48:5 49:6 49:10 51:12 52:11 53:9,18 56:4 57:3

**dated** 6:10,13 6:14 11:19 17:1 29:15 54:10
**david** 2:2 8:7 40:17
**day** 67:17
**debt** 9:7,7 63:2
**debtors** 1:7 10:12 49:11,21 50:16 54:5
**december** 1:12 6:13 29:15 46:16 67:17
**decision** 34:13 35:1
**declared** 62:7
**defendants** 57:5 58:19
**deponent** 7:15
**deposition** 1:11 6:12 7:3,4,5 9:11 10:14,17 11:2,3,18 12:5

**direct** 51:6
**directly** 43:10 43:16
**directors** 57:11 58:19
**disappear** 64:18
**disclosure** 27:2
**discovery** 10:8
**discuss** 14:5,18 28:6
**discussed** 14:8 14:21 15:1
**discussing** 56:7
**discussion** 14:8 14:10 28:12
**discussions** 15:4,16 27:3 27:21 32:4,13
**dispense** 10:16
**district** 1:2 9:10

36:6 41:15 45:12,21 49:10 50:7 51:8,12 52:2 53:10,18 54:3 55:17 61:16 64:3
**doing** 15:18 16:7 33:14
**dollars** 19:15
**dowd** 3:12,14 8:20
**drink** 59:21
**due** 17:21
**duly** 7:16 67:7
**dunn** 4:14 8:17

**e**

**e** 7:1,1 13:13,13 61:18
**earlier** 30:12 56:7 57:1 61:15

**[ecf - firms]** Page 6

ecf 10:8 13:9
effect 25:2,4
  49:17
effectively 62:3
effort 54:3
either 22:10
  26:8 39:3
  46:10 50:4
  58:7,11
eliminated
  40:11
elliot 13:13
email 6:10,13
  6:14 9:13
  11:19 29:15
  30:2,5 44:5
  51:7 54:10,18
  55:7
emails 13:8
emergency
  10:10
employees
  38:16
empowered
  10:11
engaged 13:15
entered 48:8
entitled 12:21
  29:1
entity 24:18
esquire 2:7,15
  3:5,15 4:5,15
  5:4

et 1:6
ethics 33:17
eventually
  36:12 38:10,11
  39:8
examination
  6:1 7:15,19
  60:9 62:19
  67:9
examined 67:8
example 18:19
  31:3 48:4
except 53:6
exchange 30:2
  54:18
execution
  17:17
exhibit 6:8,10
  6:11,13,14
  11:13,17,18
  12:1,5,10,13
  28:19 29:14,19
  54:9,14,18
  64:7,8,16 65:5
  65:9,9
exist 29:13
  30:14 45:17
existence 25:20
existing 45:14
expect 30:9
  48:6 60:18
expedited
  65:18

export 56:1
exports 56:16
extent 15:13
  27:6 29:13
  30:13 33:2
  38:17 49:12
  51:6 64:21

**f**

fact 16:12 58:1
fair 20:21
  31:13 49:3
  56:11 57:9
  58:13 61:13
  62:4
familiar 10:13
  25:16 40:19
far 53:2,4 54:2
federal 3:13
  8:20 22:7
  60:12
fenkell 4:13
  8:18
ferrer 4:15
  8:16
filed 58:1
filing 10:8
  37:13 57:18
find 11:14
fine 64:11,20
fiorella 2:7 6:3
  7:20 8:5,10 9:8
  9:9 11:21 12:8
  12:12,15 18:3

19:21 22:9,15
25:11 27:4,10
27:14 28:9,14
29:17 31:13,16
31:18 33:10
38:6,14 39:1,4
40:13 43:7
46:14 47:12,17
47:20 48:2,16
49:18 50:11,12
50:20 51:18
53:15 54:1,12
54:17,21 55:15
58:21 59:6,9
59:10,19 64:1
64:14,19 65:14
66:2
firm 8:5 13:16
  15:6,17 16:1
  17:14 18:8,21
  19:2 21:9 23:2
  23:6,10,15,18
  31:3 32:18
  33:13 37:20
  39:14 41:5
  42:8,11 43:1
  43:11 44:13
  45:3 46:6,21
  48:8 50:15
  54:19 62:9
  63:10
firms 31:21
  32:6 45:8
  46:17 47:6,8

**[firms - hosted]** Page 7

48:19

**first** 7:16 18:11 30:5 32:21 35:10,14 37:9 60:5,8 61:7

**flanagan** 1:11 6:3 7:14,21 8:4 9:10 12:16 30:3,6 59:19 60:11 62:21 64:12 65:4 66:4

**floor** 3:8 4:8

**folks** 8:11 62:13

**follows** 7:18

**footnote** 61:1

**form** 18:2 22:4 25:9 40:9 47:9 47:14,19 48:9 50:17 51:13 53:12,21 54:7

**formal** 46:3

**francis** 8:4

**friedlander** 2:6 2:14 8:6

**frozen** 50:9

**full** 8:2

**further** 7:7,10 63:21 65:13 67:9,12

**g**

**g** 2:7 7:1 13:11 61:18

**gain** 32:13

**gained** 22:2,19 36:10

**gaining** 44:3

**geller** 3:12,14 8:20 23:6 31:3 32:5,9 35:11 37:6,7,10,15 44:13 45:3,3 48:5,18

**general** 9:16 10:1 11:6 25:12

**generally** 14:19 16:20 24:2,5 25:16

**getting** 40:3

**gibson** 4:14 8:17

**gibsondunn.c...** 4:16

**gipson** 13:11 13:11 14:1,5 35:4 41:20,21 45:19 47:3 52:5,13,17 63:8,13 64:3

**give** 59:3

**given** 10:17 11:4 38:10,11

39:8 40:12 41:2 59:14 64:2

**giving** 11:9 42:8 52:10 62:13

**go** 12:9 26:14 28:20 33:3 45:10 60:5,8

**going** 11:12,14 27:20 28:16 37:19 38:7 43:5 47:6 51:19 64:4

**good** 7:21 20:19 24:13 62:21

**governs** 17:8

**grant** 34:14

**granted** 34:8 36:5 43:19

**granting** 43:11 49:9 52:3 53:16 54:5 55:11

**great** 59:18

**greenspon** 2:4

**grounds** 38:2 43:6

**group** 2:5 8:9 53:11,19

**guarantee** 19:3

**guaranteed** 18:21

**guess** 11:3 20:9 29:21 31:11 32:17 37:13 40:3

**h**

**hand** 67:16

**handling** 14:7

**happen** 64:10

**happened** 47:21

**happens** 64:5

**happy** 22:9 60:4

**hear** 22:9 46:9

**hearing** 64:1

**heartened** 61:4

**hedges** 4:4 28:5 28:11 31:20 32:12

**held** 55:5,10

**helpful** 26:14

**hey** 64:13

**hi** 60:11

**high** 2:17

**hold** 12:1

**holdco** 5:2 63:2 63:4,15

**hope** 57:8

**hopefully** 29:18

**host** 26:4

**hosted** 34:10 36:6 39:9 50:7

Veritext Legal Solutions

**hosting** 20:5,6 61:16
**houston** 1:3 4:9
**hum** 59:5
**hundred** 19:15

**i**

**idea** 63:7,12
**identical** 53:5
**identification** 11:20 12:7 29:16 54:11
**identified** 13:9 34:20
**identify** 8:12 41:10
**illinois** 5:8
**include** 20:5,8 33:19 36:17
**included** 17:12 20:9
**includes** 20:2 24:3,5
**index** 6:1,8
**individual** 57:5 58:18
**individuals** 55:6,11
**information** 24:7 39:10 40:4
**informs** 55:4
**initial** 32:13 37:19

**injury** 11:1
**inquired** 18:13
**instructions** 10:17 50:21
**insurance** 57:11
**intend** 29:7
**interested** 2:2 6:11 7:16 8:7 12:6,13 31:7 67:14
**introduce** 8:12 11:13
**introducing** 29:18 54:13
**invoice** 61:8
**invoices** 18:10 18:18 19:1,11 19:12 20:4,5 60:15,18
**involved** 10:21 32:12 34:13,16 34:21
**issued** 10:5 18:10

**j**

**j** 4:5
**january** 10:3
**jeff** 37:1
**job** 1:21
**johnson** 23:15
**jointly** 1:7

**jordan** 4:12 8:17
**july** 6:14 17:2 17:17 20:14 21:12 22:1,20 23:3,17 34:8 36:10 54:10 59:13

**k**

**katzman** 2:3,3 4:12 8:7,8,18
**keep** 12:1 46:4 64:4
**keeping** 33:19
**knew** 38:20
**know** 12:18 14:16 15:12 16:1 17:6 18:18,20 20:1 20:4,7 24:9 28:21 31:15 33:21 35:20 38:20 39:1,2 41:9,11,15,18 41:19 42:20 43:8 45:2,7,16 45:18 46:6,19 47:2,13 52:4 52:12,18 53:9 53:13,17 54:14 55:16 56:1,9 56:15 57:8 61:5,10,14

62:6 64:9 65:11
**knowledge** 17:20 54:8 61:12
**known** 23:15 24:18
**kyle** 2:3 8:8

**l**

**l** 1:13 13:13,13 16:3 36:17 61:18,18
**lack** 41:1
**lake** 5:6
**lambie** 1:14,20 67:3,21
**language** 26:14
**larger** 56:16
**late** 17:1,17 20:14 21:12 22:1,20 23:3 36:9 37:8 44:19 59:13 61:5
**laura** 54:19
**law** 3:3,4 8:5 9:2 15:6 21:8 23:2,6,10,14 31:21 32:6 37:20 39:14 41:5 42:8 44:13 45:7 46:6,17,21

47:6,8 50:14 54:19 63:10 67:8
**lawyer**  16:2
**lawyers**  15:21 32:12 42:11,18 42:21
**lead**  14:6 45:20 52:19
**leader**  52:16,18
**leaving**  31:20 33:11 49:4
**legal**  31:12 33:3 51:1,1,2
**legalese**  61:17
**legility**  24:18 24:19 25:6,14 26:2,3,9 61:18 61:19,20 62:4
**lenders**  9:7
**lieu**  7:7
**litigation**  26:5 34:6,10,10 39:9
**little**  50:9 61:4
**llp**  3:3,4,14 4:4 4:14 5:3
**lodge**  27:1 28:7 49:14
**lodging**  27:8
**log**  56:12
**logs**  45:11,14 45:17 52:9

**long**  10:1
**longer**  62:10
**looked**  64:17

**m**

**m**  3:15
**made**  56:2 57:5 57:6,12 58:8,9
**main**  4:7
**maintained** 56:19
**make**  11:12,14 50:6,15 64:11
**making**  34:13
**man**  13:12,12
**management** 15:4
**manager**  14:3,6 15:3 20:8 45:20 52:20
**mandeep**  3:5 9:1
**mar**  6:10
**marked**  11:16 11:19 12:7,10 28:20 29:15,19 54:10,13 64:8
**marking**  64:16
**mary**  40:17
**maryland**  67:1 67:4
**material**  23:11 41:11 49:19

**matter**  21:13 37:17 38:12 39:10,15 63:6
**matters**  10:20 21:5,6
**mc**  37:1,1
**mckenna**  37:1 37:2
**mean**  19:3 25:2 33:7 35:3 44:18 56:10
**meaning**  54:4
**meant**  56:12
**members**  38:15 41:21
**mentioned** 15:20,21 19:11 21:12 30:12 35:4 44:18 60:15
**michael**  1:11 2:15 6:3 7:14 8:4,14 66:3
**michael.flana...** 9:14
**michele**  1:14,20 67:3,21
**million**  55:20 58:4
**mind**  35:8
**mine**  13:8,10
**minhas**  3:5 9:1 9:1 22:5,11 65:21

**minute**  41:5 59:1
**mistaken**  19:20
**mminhas**  3:6
**moment**  28:20 59:3
**monday**  1:12
**money**  17:16
**morning**  7:21 62:21
**moskalewicz** 5:4 6:4 9:6,6 60:7 62:20 63:1,20
**motion**  10:10 60:21
**msilverstein** 2:16
**muddled**  50:9
**multiple**  47:6

**n**

**n**  7:1 13:11,13
**n.w.**  1:13
**name**  8:2 41:6 41:7 62:21
**named**  13:11 13:12,12 16:2 23:10 36:21 67:5
**nashville**  3:19
**nature**  32:17
**navigate**  29:21 65:6

**necessary**  42:2
**need**  48:10 59:1
  61:9
**negotiated**
  16:15
**new**  3:9,9
**nice**  59:21
**nick**  16:2
**nine**  12:13
**ninth**  12:17
**non**  51:11
**normal**  10:16
  47:5
**normally**  47:5
**notarial**  67:16
**notary**  1:14
  7:12,13 67:3
**notice**  6:11
  12:6,14 14:9
**number**  12:2
  36:15 40:14

**o**

**o**  7:1 13:11,13
  16:3 36:17
**oath**  7:8,9
**object**  26:20
  31:11 33:2
  38:1 43:5
**objected**  47:18
**objection**  18:2
  19:17 22:4,5,7
  22:8 25:9 27:1
  28:7 38:13

40:9 47:9,18
47:19 48:9
49:12,15 50:17
50:18,19 51:13
53:12,21 54:7
55:12 64:16
**obligated**  19:4
**obligation**
  17:12
**obligations**
  25:6 58:16
  62:2
**obtaining**
  50:14
**obviously**
  26:21 33:4
  62:6 66:2
**october**  6:10
  11:19 65:10
**officers**  57:11
  58:19
**oh**  11:17 64:14
  65:6
**ohio**  2:11,19
**okay**  12:4 21:2
  31:10 37:13
  43:10 44:9
  55:3 59:6
  60:11 61:15
  63:10 65:12,20
**open**  64:4
**opinions**  51:2
**order**  10:10

**original**  61:16
**orrick**  13:16
  15:21 16:17
  17:3,7,9,14
  18:8,21,21
  19:2,6 20:2,16
  21:1,3 23:2,18
  26:18,19 27:17
  31:20 32:9
  34:5,8 35:11
  35:15,17 36:5
  36:13,16,20
  37:20,20 38:12
  39:2,8,21 40:8
  40:12 41:2,5,8
  41:17 42:2,8
  42:11,18 43:1
  43:11,19 44:2
  44:3 45:15
  46:7,8,17,18,21
  47:1 48:3,19
  49:2,8,9 50:4,5
  50:6,13 51:3
  51:10,15 52:3
  52:11 53:4,16
  54:5 55:9 56:2
  57:1,6 59:13
  60:16
**outcome**  67:15
**outstanding**
  64:2
**overdue**  61:6
  61:11,13

**owned**  49:11

**p**

**p**  7:1 13:11,13
  16:3 36:17
**page**  12:13,17
  12:18,21 28:20
  28:21 29:1
  30:2,5 54:18
**paid**  17:16 18:6
  18:7,12,15
  57:2,2 58:6
  60:19
**pal**  4:18
**pardon**  46:9
**park**  3:7
**part**  21:16,19
  25:19
**participating**
  7:3
**parties**  2:2 6:11
  7:10,16 8:7,12
  8:15 12:6,14
  59:15 67:13,14
**party**  53:11
**pass**  59:2 60:1
**pay**  19:4
**payment**  17:12
  17:20,21 19:1
  42:6,7 58:17
  61:3,7
**payments**  57:6
  57:6,12,16
  58:8,9 61:5

**[payne - production]** Page 11

payne 13:13 15:2,2,3 35:5
pdf 28:20
pending 64:5
people 34:18,19 35:3 36:16
performing 26:10
period 25:21
person 7:8 36:21
personal 10:21
personally 44:15,17 67:6
petition 58:7,7 58:14,16,17
phrase 30:21
physically 7:4
piper 5:3 63:1 63:10,17
place 67:6
plaintiff 11:1
plaintiffs 3:3 3:13 8:21 9:3 22:1,2,13,19 31:2,21 32:6 34:5,9 45:7 48:19 60:13 61:2
please 8:3,13 12:1,16,18 16:18 48:11 65:19

pm 20:8 52:19 52:20
pms 20:11
point 34:7 37:5 37:8 43:13 45:5
poli 16:2,4 36:17
policy 33:17,19 57:12 58:19
porter 4:4 28:5 28:11 31:20 32:12
porterhedges.... 4:6
posed 46:11
position 27:16 29:10 30:17 31:14
possibly 54:3
post 58:7,14,16 58:17
potentially 21:2
power 4:5 9:4,4 13:17 18:2 19:17 28:7 38:13 40:9 49:14 50:17 51:13 53:12 54:7,19 55:4 55:12 60:6
power's 54:20

powers 28:5,6
practical 25:3
practice 47:5
practicing 14:16
pre 58:7
predecessor 24:17
preliminary 33:7
preparation 26:13,15 28:1 44:12
prepare 13:6 14:10 15:9
prepared 15:1 52:9
preparing 14:19
present 7:4
preserve 46:2 47:18
preserved 44:8 45:21
preserves 22:7
prevent 11:9
principal 40:16
prior 11:5 42:16 43:11 44:10,11 49:9 50:13 52:10 53:16 54:5 55:11 58:11

privilege 27:13 27:18 28:2,13 28:16 29:12 30:15 31:4 33:11 38:1,5,8 38:18 43:6 49:21 50:1,7 50:16,18 51:17 51:20 52:9 54:4 55:5,10 55:12 64:2,21 65:1
privileged 27:2 32:20 49:13,19 51:11
privileges 10:12
probably 22:17 33:6,6 61:9
proceedings 67:11
process 10:14 40:2 48:15 61:9
produce 29:7
produced 29:4
product 27:2 38:2 39:18 40:11 41:15 43:6 49:5,13 52:1 53:6 55:13
production 29:1 30:9

**[project - representing]** Page 12

project 14:3,6 14:7 15:3 20:8 34:20 45:20,20 51:16 52:19,20
proof 58:1,10
protected 27:12 28:12
provide 49:21
provided 15:6 24:7
providing 17:13 33:8
provision 23:19 24:1,3,11
provisions 25:17
public 1:14 2:9 67:3
pull 65:5
purporting 26:18
purposes 8:10 32:1
pursuant 10:4 17:16 18:7,15 19:8

**q**

quabble 27:5
qualification 20:19 58:13
question 18:5 22:16,17,18 23:14 24:13

27:21 28:8,17 31:6 33:11 38:8 41:13 46:11,12 47:3 47:13 48:10 52:5,13 59:11 63:8
questions 9:20 28:15 59:3 60:2,3,6,8,14 63:3
quibble 27:5
quickly 65:4

**r**

r 6:5 7:1 13:12
raena 4:15 8:16
rammelt 2:4 8:8 65:10
rcalubaquib 4:16
reach 35:16
reached 35:11 35:16,18
read 13:9 30:15 47:11,13,15 48:12 60:21 61:4
reading 66:5
really 51:14
reasons 32:17
recall 19:13 32:14 36:21 37:3,4,21 38:4

43:4,9,14,18 44:9 49:16 50:2 51:5 62:16
received 54:15 57:17
recess 59:7,8
recognize 65:8
record 8:3,11 12:12 27:9 47:15 48:12 54:17 56:3,5 56:14,15 59:9 64:6 67:11
recorded 67:10
records 56:7,8
reexamination 65:2
references 64:3
referring 24:12
refresh 30:1
regarding 30:4 63:15,18
related 10:8 15:7 21:13 22:3 23:7,11 27:21 32:7,19 33:13 35:13 36:6 37:16 38:12 39:10,15 44:3,14 57:17 63:5 67:13
relates 25:7

relating 20:16 39:14
relationship 17:8 33:8
relativity 56:13
rely 28:16 51:19
remained 25:20
remember 36:19
remotely 7:6,9
remove 64:9
removed 40:10 41:11,15
removing 52:1
repeat 50:8
reported 1:19
reporter 7:2 46:10 47:11,13 48:11 50:8 65:16,17,20
reporting 7:5
represent 8:7 8:13 9:4 10:7 26:21 40:16 55:1 60:12
representations 50:6,15
representative 13:4
represented 13:19 42:12
representing 8:15,17

**[represents - smdc0001]** Page 13

| | | | |
|---|---|---|---|
| **represents** 62:10 | **rgrdlaw.com.** 3:16 | **scott** 3:2,2,4,4,6 9:2,2 23:10,10 | **series** 26:7 |
| **req** 42:16 | **richard** 2:4 | **scott.com.** 3:6 | **services** 17:13 33:9 |
| **request** 14:9 29:2 37:21 42:16 46:3 | **rick** 8:8 | **screen** 65:6 | **set** 67:7 |
| **requested** 18:11 47:16 48:13 | **right** 9:11 11:12,21 14:1 21:7 22:21 34:4 44:21 50:21 58:21 59:4 62:7 64:1 | **sdc** 32:19 33:14 34:5 35:13 36:2,6 37:16 38:12 39:10,15 | **setup** 32:17 |
| **requests** 29:8 30:4 | **robbins** 3:12 3:14 8:19 23:6 31:3 32:5,9 35:11 37:6,7 37:10,15 44:13 45:2,3 48:4,18 | **sdc's** 26:2 36:13 37:14 58:2 | **share** 64:8 |
| **require** 24:6 42:5,7 | | **seal** 67:16 | **shortly** 22:13 |
| **required** 61:7 | | **second** 11:17 26:15 30:5 64:15 | **show** 12:2 |
| **respect** 15:18 23:14 32:7 49:19 58:10 | **robert** 5:4 9:6 63:1 | **securities** 3:3 3:13 8:21 9:3 22:2,19 31:2 34:5,9 35:10 40:18 52:10 60:12 61:1 66:1 | **side** 15:17 |
| **respond** 31:9 | **robert.moska...** 5:5 | | **signature** 17:6 17:7 67:20 |
| **response** 30:11 54:20 | **room** 7:4 | | **signed** 16:16,17 17:6 |
| **responsibility** 61:3 | **rpr** 1:20 | | **signing** 66:5 |
| **responsible** 19:6 61:2 | **rudman** 3:12 3:14 8:20 | **security** 22:13 | **silverstein** 2:15 8:14,14 30:4 |
| **responsive** 29:8 30:13 | **run** 26:1 | **see** 11:16 12:9 12:17 13:1 29:2,19 54:16 55:6,8 | **similar** 24:10 32:1 52:13 56:6,10,12,15 |
| **resulted** 57:12 | **s** | | **single** 21:20 |
| **retained** 51:8 56:19 | **s** 7:1 13:11,12 | **seek** 47:7 | **sit** 46:16 48:17 |
| **return** 28:19 | **salesperson** 14:17 | **seferian** 54:19 | **sm** 48:19 53:17 |
| **review** 52:2 | **sam** 40:17 | **sense** 33:7 42:2 | **smdc** 40:17 |
| **reviewed** 13:8 52:9 | **schnall** 2:4 8:9 | **sent** 15:12 60:16 65:9 | **smdc0001** 41:12,16 42:9 42:17 43:12,19 44:4 45:4,8,11 45:15 46:7,18 47:1 48:4,20 49:3,20 50:14 51:12 52:3 53:5,6,10,17 54:6 55:11,17 56:2 57:7,13 |
| | **scope** 50:7,16 51:4 | **separate** 23:5,9 54:3 | |

**[smdc0001 - thinking]**                                    Page 14

57:18 59:14

**smiledirect**
15:8,18 20:18
21:13 22:3
23:7,11 24:10
25:7 57:19

**smiledirectclub**
1:5 24:15 26:4
32:8 61:21
62:7,10,15
63:2,5

**sore** 57:20

**sorry** 14:11
26:3 37:11
41:12 44:10
48:7 51:3 57:6
61:19,19 64:13

**sort** 16:20
26:13 27:17
29:11 40:15
42:1,5,7 45:12

**south** 2:17

**southern** 1:2

**speak** 14:1 15:5
26:17 32:16
36:12 43:10

**speaking** 24:2
48:3 49:1

**specific** 64:20

**specifically**
48:3

**spoke** 13:10,14
13:15 14:12
15:11 26:16

28:4 37:8,9,14
43:13,15 44:19

**spoken** 37:7,15

**square** 2:9

**standard** 24:1
24:2,4

**start** 20:20
39:5 41:20
44:16 45:19
46:15 50:4
63:9,12

**starting** 43:1

**starts** 61:8

**state** 3:3 7:11
8:2 9:2 22:8
65:21 67:1,4

**statement**
21:18,20

**statements**
21:15

**states** 1:1

**stenographic...**
67:10

**steven** 2:3 8:8

**stipulation**
22:6

**stoneking**
15:11,14 34:21

**street** 1:13 2:17
3:17 4:7

**strike** 20:3

**stripped** 40:10

**structured** 26:9

**subject** 57:20

**subpoena** 10:5
15:13

**substance**
15:14

**suite** 2:10,18
3:18 5:7

**support** 15:6

**supporting**
15:17

**sure** 19:3,15
31:5 34:2
46:15 64:14,19

**surprise** 20:7
33:21 55:19,21

**surprised** 20:9

**susan** 2:4 8:8

**sworn** 7:12,16
67:7

---
**t**
---

**t** 13:12,13
61:18

**take** 61:2

**taken** 1:11 11:2
59:7

**talk** 34:4 44:16

**talked** 61:1

**talking** 26:12
26:15 39:2

**tatiana** 13:11

**team** 15:4
34:19 41:21
52:6,14,16,19

**tell** 7:17 16:18
55:9

**tennessee** 3:19

**testified** 7:18
11:2 14:21
36:9 57:1
58:15 61:15

**testify** 13:6

**testifying** 7:11

**testimony**
10:18 11:10

**texas** 1:2 4:9

**thank** 8:1 9:8
22:11 56:21
59:19 62:17,17
63:20 64:12
66:1

**thing** 16:21
45:13

**things** 32:17

**think** 16:2 17:1
19:14,14 21:18
21:18 23:21
25:20 33:5,6
33:18 34:7
37:2 38:4,18
38:19 46:1,1,2
47:17 48:1
51:14 53:2
56:17 58:14,21
59:1 64:4 65:1
65:14,15

**thinking** 32:21
62:16

**[third - way]**

**third** 53:10
**thought** 51:1
**thousand** 19:15
**three** 13:10
18:9 19:11,16
20:4 30:2
39:13 60:13
**tighten** 61:10
**time** 20:5,8,9
20:10 21:21
22:1,14 25:13
25:21 29:9
33:1 37:9
40:15 41:4
46:20 59:12,20
62:18 67:6
**title** 40:19
**titled** 12:13
40:17
**today** 9:20 10:4
10:8 11:10
13:7,19 30:18
44:11 46:16
48:17
**told** 42:18
55:19
**took** 62:2
**top** 30:11
**topics** 12:21
13:4,7 14:8,19
**topmost** 55:7
**total** 19:12,19
**transaction**
25:13 26:7

**transactions**
26:8
**transcript** 6:9
64:10 66:5
67:11
**transferred**
39:20
**treated** 24:8
**trial** 11:3
**true** 67:11
**trustee** 4:2 9:5
10:11 14:7
16:5,6,8,13,16
17:9,14 18:8
18:13 19:2
23:18 28:11
42:13 43:11,16
49:20 51:7,10
55:4,10 58:6
58:11,12 59:12
**trustee's** 13:15
15:20 17:6
18:14 26:17,19
**truth** 7:17,17
7:18
**truthful** 11:10
**try** 39:5,6
50:11
**turn** 12:16
**two** 15:21 30:2
39:13 59:1
60:3,13
**types** 10:20

**typically** 48:1
48:14

**u**

**um** 59:5
**unaware** 48:17
**under** 17:21
19:4 26:10
**understand**
14:9 27:4,7,10
28:10,15 31:17
46:5 56:20
62:9
**understanding**
16:4,8,9 17:11
19:10 42:14
53:8 62:11
**understood**
28:9,19
**undertake** 54:3
**union** 3:17
**united** 1:1
**university** 4:17
**unrelated** 21:6
**us.dlapiper.c...**
5:5
**use** 42:1
**used** 64:7
**using** 41:8

**v**

**valid** 11:12,14
**various** 13:8
14:8

**venture** 2:5 8:9
53:11,19
**verify** 16:11
**version** 45:11
45:15 46:8,18
47:1 48:4,20
49:2,6,20 53:5
53:6,17 56:2
57:13 59:14
**view** 31:8
**voice** 22:10

**w**

**wailes** 2:3 8:8
**wait** 11:17 41:5
60:4
**waiting** 18:18
**waive** 10:11
**waived** 38:18
66:5
**waiver** 49:21
50:16 51:4
64:20
**waiving** 55:5
55:10
**want** 27:1 53:3
64:11,18
**wanted** 12:2
48:5
**wants** 60:2,4
**washington**
1:13
**way** 18:4 32:1
34:2 39:6 61:6

Veritext Legal Solutions
800-567-8658                                    973-410-4098

**[way - zoom]**                                                      Page 16

| | | **z** |
|---|---|---|
| 62:3 64:8 67:14 | 60:11 62:17 64:13,15 65:3 65:13,18 | **zoom**  1:12 7:15 8:11 |
| **we've**  64:17 | **wood's**  31:3 | |
| **week**  37:8,14 44:19 | **word**  41:1 | |
| **west**  5:6 | **work**  15:18 16:7 19:7 20:21 21:8,15 21:19 27:2 32:19 33:13 38:2 39:18 40:11 41:14 42:1,2 43:6 49:5,13 52:1 53:6 55:12 58:17 | |
| **wit**  67:2 | | |
| **withdraw**  18:5 | | |
| **witness**  7:11,12 12:4 19:18 22:12 25:10 26:21 27:11 28:10 33:5 38:3 40:10 46:11 47:10,21 48:10,14 49:16 51:14 53:13 54:8 55:14 59:2 60:1 67:5 67:16 | | |
| **woman**  13:11 | | |
| **wondered** 56:15 | **working**  20:11 34:18,20 | |
| | **works**  64:8 | |
| | **write**  30:11 | |
| **wood**  3:15 6:4 6:5 8:19,19 22:4 25:9 26:20 27:8 31:11,15 33:2 37:8,11 38:1 38:19 43:5 44:19 47:9,19 48:9 49:12 50:19 53:21 59:5 60:3,8,10 | **written**  44:1,9 44:12 49:21 | |
| | **y** | |
| | **y**  13:13 61:18 | |
| | **yeah**  21:6 33:18 38:3 44:8 47:4,12 47:19,20 48:1 48:10 56:8 63:9 64:7,19 64:21 65:7 | |
| | **york**  3:9,9 | |

Veritext Legal Solutions

800-567-8658                                                     973-410-4098

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT 9

Subject: Re: SDC - Resolution of Discovery Dispute with Securities Plaintiffs

Date:    8/14/2024 1:52 PM

From:    "Rammelt, David" <DRammelt@beneschlaw.com>

To:      "Power, Aaron J." <APower@porterhedges.com>

Cc:      "Christopher M. Wood (cwood@rgrdlaw.com)" <CWood@rgrdlaw.com>, "Fiorella, Andrew G." <AFiorella@beneschlaw.com>

---

Thank you, Aaron.   Chris - do you have time to discuss with me and Andrew?

Sent From My Mobile Device (please excuse inadvertent typos and autocorrections)

> On Aug 14, 2024, at 11:47 AM, Power, Aaron J. <APower@porterhedges.com> wrote:

David:

I wanted to let you know that in order to resolve a number of outstanding discovery issues raised by the plaintiffs in the securities class action, the Trustee has recently provided them with access to certain SDC documents hosted in Conselio.

Chris is cc'ed here and to the extent you have any concerns about privilege, other than the SDC privilege that the trustee waived, please reach out and discuss with him directly.

**Aaron J. Power** | Partner
**Porter Hedges LLP**

---

1000 Main St, 36th Floor | Houston, TX 77002
**t** 713.226.6631    **e** apower@porterhedges.com
**Bio • Web • V-Card**

# EXHIBIT 10

| | |
|---|---|
| **From:** | Chris Wood |
| **To:** | Silverstein, Michael; _ahn, Michael J._; _Winger, Benjamin_; Meuti, Michael; _ngerman, Brett_; Cathell, Dale_._; |
| **Cc:** | Mic_ey_t_in; Rammelt, David; Aaron J. Power; Jerry Martin; Matthew McGraw; Henry Bator; Je_rey Stein; Fiorella, Andrew G.; Scott Cargill; Brian Lut_; Ma__Schwart__; Ferrer Calu_a_ui_, Raena; Miller, Gillian B.; Finn, Andrew J.; Wagener, William H.; Palmer, Shane M. |
| **Subject:** | R_: Proposed Agreed_rder to Avoid Contested Hearing_Brie_ing |
| **Date:** | Friday,_ovem_er 22, 2024_:10:04 PM |
| **Attachments:** | image002.png |

So to be clear, a 14-day extension on the briefing and hearing date on our motion in bankruptcy court, an approximately 45-day extension on each of the upcoming pre-trial deadlines in the state action, and we're keeping the Dec 8, 2025, trial date.

If anyone disagrees with this, let me know now, please. We'll notify the bankruptcy court of the agreement on Monday and prepare a filing for the state court action early next week.

Chris Wood
**Robbins Geller Rudman & Dowd LLP**
200 31st Avenue North
Nashville, TN 37203
Tel. (615) 244-2203

---

**From:** Silverstein, Michael <MSilverstein@beneschlaw.com>
**Sent:** Friday, November 22, 2024 4:40 PM
**To:** Chris Wood <CWood@rgrdlaw.com>; 'Kahn, Michael J.' <MJKahn@gibsondunn.com>; 'Winger, Benjamin' <Benjamin.Winger@us.dlapiper.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Ingerman, Brett <brett.ingerman@us.dlapiper.com>; Cathell, Dale K. <Dale.Cathell@us.dlapiper.com>
**Cc:** Mickey Etkin <metkin@lowenstein.com>; Rammelt, David <DRammelt@beneschlaw.com>; Aaron J. Power <APower@porterhedges.com>; Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Brian Lutz <blutz@gibsondunn.com>; 'Max Schwartz' <mschwartz@scott-scott.com>; Ferrer Calubaquib, Raena <RCalubaquib@gibsondunn.com>; Miller, Gillian B. <GMiller@gibsondunn.com>; Finn, Andrew J. <Finna@sullcrom.com>; Wagener, William H. <wagenerw@sullcrom.com>; Palmer, Shane M. <palmersh@sullcrom.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

EXTERNAL SENDER
Chris,

That is fine with us.

Can you please file a Notice with the bankruptcy court noting our agreement to extend the deadlines and delay the hearing, as you did before?

Thank you,
Michael



Michael B. Silverstein
(he/him/his)
Managing Associate | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 614.223.9362 | m: 215.837.2076
MSilverstein@beneschlaw.com | www.beneschlaw.com
41 South High Street, Suite 2600, Columbus, OH 43215-6164

vCard Bio

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

**From:** Chris Wood <CWood@rgrdlaw.com>
**Sent:** Friday, November 22, 2024 5:26 PM
**To:** 'Kahn, Michael J.' <MJKahn@gibsondunn.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; 'Winger, Benjamin' <Benjamin.Winger@us.dlapiper.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Ingerman, Brett <brett.ingerman@us.dlapiper.com>; Cathell, Dale K. <Dale.Cathell@us.dlapiper.com>
**Cc:** Mickey Etkin <metkin@lowenstein.com>; Rammelt, David <DRammelt@beneschlaw.com>; Aaron J. Power <APower@porterhedges.com>; Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Brian Lutz <blutz@gibsondunn.com>; 'Max Schwartz' <mschwartz@scott-scott.com>; Ferrer Calubaquib, Raena <RCalubaquib@gibsondunn.com>; Miller, Gillian B. <GMiller@gibsondunn.com>; Finn, Andrew J. <Finna@sullcrom.com>; Wagener, William H. <wagenerw@sullcrom.com>; Palmer, Shane M. <palmersh@sullcrom.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

Michael,

We agree on point 1, but we aren't going to agree to move the trial date.  If you want to discuss, we are available at 6:00pm ET tonight. A conference number is below.

(267) 930-4000
Passcode: 685 662 737

Chris Wood
**Robbins Geller Rudman & Dowd LLP**
200 31st Avenue North
Nashville, TN 37203
Tel. (615) 244-2203

**From:** Kahn, Michael J. <MJKahn@gibsondunn.com>
**Sent:** Friday, November 22, 2024 4:03 PM
**To:** Chris Wood <CWood@rgrdlaw.com>; 'Silverstein, Michael' <MSilverstein@beneschlaw.com>; 'Winger, Benjamin' <Benjamin.Winger@us.dlapiper.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Ingerman, Brett <brett.ingerman@us.dlapiper.com>; Cathell, Dale K. <Dale.Cathell@us.dlapiper.com>
**Cc:** Mickey Etkin <metkin@lowenstein.com>; Rammelt, David <DRammelt@beneschlaw.com>; Aaron J. Power <APower@porterhedges.com>; Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Brian Lutz <blutz@gibsondunn.com>; 'Max Schwartz' <mschwartz@scott-scott.com>; Ferrer Calubaquib, Raena <RCalubaquib@gibsondunn.com>; Miller, Gillian B. <GMiller@gibsondunn.com>; Finn, Andrew J. <Finna@sullcrom.com>; Wagener, William H. <wagenerw@sullcrom.com>; Palmer, Shane M. <palmersh@sullcrom.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

EXTERNAL SENDER
Chris,

We (Benesch and Gibson Dunn) are generally on board with your proposal to kick out by ~45 days the deadlines in the October 25, 2024, Agreed Amended Scheduling Order, with one

clarification and one change:

1. The October 25, 2024, Agreed Amended Scheduling Order includes deadlines that have already passed.  We understand that we are agreeing only to extend the deadlines that have not already passed.  Please confirm.
2. If we are agreeing to extend the pre-trial deadlines, we should extend the trial date by the same amount of time.  As discussed with the Court, we want to make sure that the Court has sufficient time to consider the parties' dispositive motions prior to the trial date.

Additionally, I'm looping S&C into this email chain, as the Underwriter Defendants' agreement is required as well.


**Michael J. Kahn**
Associate Attorney

T: +1 415.393.8316 | M: +1 650.279.6834
MJKahn@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
One Embarcadero Center Suite 2600, San Francisco, CA 94111-3715

---

**From:** Chris Wood <CWood@rgrdlaw.com>
**Sent:** Friday, November 22, 2024 12:41 PM
**To:** 'Silverstein, Michael' <MSilverstein@beneschlaw.com>; 'Winger, Benjamin' <Benjamin.Winger@us.dlapiper.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Ingerman, Brett <brett.ingerman@us.dlapiper.com>; Cathell, Dale K. <Dale.Cathell@us.dlapiper.com>
**Cc:** Mickey Etkin <metkin@lowenstein.com>; Rammelt, David <DRammelt@beneschlaw.com>; Aaron J. Power <APower@porterhedges.com>; Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Kahn, Michael J. <MJKahn@gibsondunn.com>; Lutz, Brian M. <BLutz@gibsondunn.com>; 'Max Schwartz' <mschwartz@scott-scott.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

Michael,

We already agreed to extend the hearing once, and we don't believe that any discovery is relevant to the issues raised in the motion.

That said, we would agree to extend the hearing date and the respective briefing dates by another 14 days, on the condition that we also agree to extend the current pre-trial deadlines in the state action to account for the delay in getting this issue resolved, as well as to better align with the Dec. 8, 2025, trial date.  We'd propose extending all the deadlines set forth in the October 25, 2024, Agreed Amended Scheduling Order, which Chancellor Perkins already held would need to "be updated to reflect the Court's determination on" an amended trial date, by roughly 45 days.

Please let us know if this is acceptable.

Chris Wood
**Robbins Geller Rudman & Dowd LLP**
200 31st Avenue North

Nashville, TN 37203
Tel. (615) 244-2203

---

**From:** Silverstein, Michael <MSilverstein@beneschlaw.com>
**Sent:** Friday, November 22, 2024 12:34 PM
**To:** Chris Wood <CWood@rgrdlaw.com>; 'Winger, Benjamin' <Benjamin.Winger@us.dlapiper.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Ingerman, Brett <brett.ingerman@us.dlapiper.com>; Cathell, Dale K. <Dale.Cathell@us.dlapiper.com>
**Cc:** Mickey Etkin <metkin@lowenstein.com>; Rammelt, David <DRammelt@beneschlaw.com>; Aaron J. Power <APower@porterhedges.com>; Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

EXTERNAL SENDER
Chris,

Chris,

Because we cannot come to an agreement here, we will need to take discovery on the issues you present in your Motion to support our Objection, and expect the anticipated dispute will necessitate an evidentiary hearing.

Given the upcoming holiday, we propose we extend the hearing date and our respective briefing dates by another 14 days in order to accommodate completing the needed discovery.

Please let us know whether you would agree to such an extension, and we are happy to discuss.

Thank you,
Michael





vCard Bio

| | Michael B. Silverstein |
| --- | --- |
| | (he/him/his) |
| | Managing Associate \| Litigation |
| | Benesch Friedlander Coplan & Aronoff LLP |
| | t: 614.223.9362 \| m: 215.837.2076 |
| | MSilverstein@beneschlaw.com \| www.beneschlaw.com |
| | 41 South High Street, Suite 2600, Columbus, OH 43215-6164 |
| | Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice |

---

**From:** Chris Wood <CWood@rgrdlaw.com>
**Sent:** Friday, November 22, 2024 12:31 PM
**To:** 'Winger, Benjamin' <Benjamin.Winger@us.dlapiper.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Ingerman, Brett <brett.ingerman@us.dlapiper.com>; Cathell, Dale K. <Dale.Cathell@us.dlapiper.com>
**Cc:** Mickey Etkin <metkin@lowenstein.com>; Rammelt, David <DRammelt@beneschlaw.com>; Aaron J. Power <APower@porterhedges.com>; Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella,

Andrew G. <AFiorella@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

Ben,

I provided this answer to the Benesch folks over two months ago.  See attached.  Also, to the extent you are suggesting that the Final DIP Order prohibiting the trustee from providing us with access or copies of these documents, we obviously disagree.

Chris Wood
**Robbins Geller Rudman & Dowd LLP**
200 31st Avenue North
Nashville, TN 37203
Tel. (615) 244-2203

---

**From:** Winger, Benjamin <Benjamin.Winger@us.dlapiper.com>
**Sent:** Friday, November 22, 2024 11:21 AM
**To:** Chris Wood <CWood@rgrdlaw.com>; 'Meuti, Michael' <MMeuti@beneschlaw.com>; Ingerman, Brett <brett.ingerman@us.dlapiper.com>; Cathell, Dale K. <Dale.Cathell@us.dlapiper.com>
**Cc:** Mickey Etkin <metkin@lowenstein.com>; Rammelt, David <DRammelt@beneschlaw.com>; Aaron J. Power <APower@porterhedges.com>; Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

EXTERNAL SENDER
We've asked this question (twice) to the Trustee and rec'd no response.  So we will also ask the movants.

> With respect to the attached motion, the movants indicate that the Trustee has provided the Securities Plaintiffs with access to "Documents" – defined as "certain documents maintained by the Debtors relevant to the Securities Litigations".  As you know, the Debtors' books and records comprise DIP Collateral under paragraph 8 of the Final DIP Order.
>
> Would you please identify what "Documents" the Trustee apparently has provided to the Securities Plaintiffs?

Thanks in advance for your timely response.

Regards,

Partner

T  +1 312 368 2172
F  +1 312 251 2172
M  +1 202 257 8986
benjamin.winger@us.dlapiper.com

**DLA Piper LLP (US)**
dlapiper.com

---

**From:** Chris Wood <CWood@rgrdlaw.com>
**Sent:** Friday, November 22, 2024 11:12 AM
**To:** 'Meuti, Michael' <MMeuti@beneschlaw.com>
**Cc:** Mickey Etkin <metkin@lowenstein.com>; Rammelt, David <DRammelt@beneschlaw.com>; Winger, Benjamin <Benjamin.Winger@us.dlapiper.com>; Aaron J. Power <APower@porterhedges.com>; Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

⚠ EXTERNAL MESSAGE

Michael,

Unfortunately this isn't acceptable as, in our view, it undermines the whole point of our motion. I appreciate everyone's efforts to reach an agreement here, but I believe we are at an impasse.

Best,

Chris Wood
**Robbins Geller Rudman & Dowd LLP**
200 31st Avenue North
Nashville, TN 37203
Tel. (615) 244-2203

---

**From:** Meuti, Michael <MMeuti@beneschlaw.com>
**Sent:** Friday, November 22, 2024 10:19 AM
**To:** Chris Wood <CWood@rgrdlaw.com>
**Cc:** Mickey Etkin <metkin@lowenstein.com>; Rammelt, David <DRammelt@beneschlaw.com>; Benjamin Winger <Benjamin.Winger@us.dlapiper.com>; Aaron J. Power <APower@porterhedges.com>; Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

EXTERNAL SENDER
Chris,

We cannot agree to your original language, but we propose these edits in place of the ones that we circulated previously.



Please let us know whether this is acceptable.

Stay well,

MDM



Michael D. Meuti
Partner, Appellate Practice Group Chair | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 216.363.6246 | m: 650.468.3160
MMeuti@beneschlaw.com | www.beneschlaw.com
127 Public Square, Suite 4900, Cleveland, OH 44114

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

**From:** Chris Wood <CWood@rgrdlaw.com>
**Sent:** Thursday, November 21, 2024 9:00 PM
**To:** Meuti, Michael <MMeuti@beneschlaw.com>
**Cc:** Mickey Etkin <metkin@lowenstein.com>; Rammelt, David <DRammelt@beneschlaw.com>; Benjamin Winger <Benjamin.Winger@us.dlapiper.com>; Aaron J. Power <APower@porterhedges.com>; Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** Re: Proposed Agreed Order to Avoid Contested Hearing & Briefing

Michael,

Your edits to paragraph 2 aren't going to work for us. Unless you're willing to agree to our language there, I don't think this will get done.  We're available Friday afternoon for a call if necessary.

Chris

On Nov 21, 2024, at 4:11 PM, Meuti, Michael <MMeuti@beneschlaw.com> wrote:

 EXTERNAL SENDER
Michael,

I've attached a draft with edits from the DLA, Gibson Dunn, and Benesch teams.  We'd like to avoid further motion practice if at all possible, so we hope that these edits will be acceptable to your side.  If they are not, please let us know as soon as possible so that we can schedule a call for tomorrow morning.

Stay well,

MDM

Michael D. Meuti
Partner, Appellate Practice Group Chair | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 216.363.6246 | m: 650.468.3160
MMeuti@beneschlaw.com | www.beneschlaw.com
127 Public Square, Suite 4900, Cleveland, OH 44114

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

---

**From:** Etkin, Michael S. <metkin@lowenstein.com>
**Sent:** Wednesday, November 20, 2024 10:00 PM
**To:** Rammelt, David <DRammelt@beneschlaw.com>; Chris Wood <CWood@rgrdlaw.com>; Winger, Benjamin <Benjamin.Winger@us.dlapiper.com>; Power, Aaron J. <APower@porterhedges.com>
**Cc:** Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Cargill, Scott <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

David –

Apologies for the delay and the hour.  Attached is a clean and redline of the proposed consent order reflecting our edits to the version you circulated last Friday.  We are available to discuss but are hopeful that this will work for all concerned.

Mickey Etkin

**Michael S. Etkin**
Partner
Lowenstein Sandler LLP

T: (973) 597-2312
M: (973) 454-2283

---

**From:** Rammelt, David <DRammelt@beneschlaw.com>
**Sent:** Tuesday, November 19, 2024 2:45 PM
**To:** Chris Wood <CWood@rgrdlaw.com>; Etkin, Michael S. <metkin@lowenstein.com>; Winger, Benjamin <Benjamin.Winger@us.dlapiper.com>; Power, Aaron J. <APower@porterhedges.com>
**Cc:** Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Cargill, Scott <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

Please let me know if this is acceptable to file.  Thank you.

David

David A. Rammelt
(he/him/his)
Vice-Chair, Litigation Department
Benesch Friedlander Coplan & Aronoff LLP

t: 312.212.4958 | m: 312.404.2140
DRammelt@beneschlaw.com | www.beneschlaw.com
71 South Wacker Drive, Suite 1600, Chicago, IL 60606-4637

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

vCard Bio

**From:** Rammelt, David <DRammelt@beneschlaw.com>
**Sent:** Friday, November 15, 2024 3:05 PM
**To:** Chris Wood <CWood@rgrdlaw.com>; Mickey Etkin <metkin@lowenstein.com>; Winger, Benjamin <Benjamin.Winger@us.dlapiper.com>; Power, Aaron J. <APower@porterhedges.com>
**Cc:** Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

Chris,

Attached please find a redline draft of the Agreed Order, with some added comments from counsel for the DIP Lenders and Gibson Dunn.  Aaron has not seen this draft, but I think it addresses an earlier comment he made. Of course, his comments are welcome.

Happy to talk through any of the changes or the underlying reasoning.

Thank you,

David

David A. Rammelt
(he/him/his)
Vice-Chair, Litigation Department
Benesch Friedlander Coplan & Aronoff LLP

t: 312.212.4958 | m: 312.404.2140
DRammelt@beneschlaw.com | www.beneschlaw.com
71 South Wacker Drive, Suite 1600, Chicago, IL 60606-4637

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

vCard Bio

**From:** Chris Wood <CWood@rgrdlaw.com>

**Sent:** Friday, November 15, 2024 12:23 PM
**To:** Mickey Etkin <metkin@lowenstein.com>; Winger, Benjamin <Benjamin.Winger@us.dlapiper.com>;
Power, Aaron J. <APower@porterhedges.com>; Rammelt, David <DRammelt@beneschlaw.com>
**Cc:** Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>;
Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G.
<AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael
<MSilverstein@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Michael J. Kahn
<MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

David / Ben,

Please send us any additional edits to the proposed agreed order as soon as possible so we can consider
them.

Best,

Chris Wood
**Robbins Geller Rudman & Dowd LLP**
200 31st Avenue North
Nashville, TN 37203
Tel. (615) 244-2203

---

**From:** Etkin, Michael S. <metkin@lowenstein.com>
**Sent:** Thursday, November 14, 2024 3:10 PM
**To:** Winger, Benjamin <Benjamin.Winger@us.dlapiper.com>; Power, Aaron J.
<APower@porterhedges.com>; Rammelt, David <DRammelt@beneschlaw.com>; Chris Wood
<CWood@rgrdlaw.com>
**Cc:** Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>;
Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G.
<AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael
<MSilverstein@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Michael J. Kahn
<MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

EXTERNAL SENDER
Of course.  Thanks.

**Michael S. Etkin**
Partner
Lowenstein Sandler LLP

T: (973) 597-2312
M: (973) 454-2283

---

**From:** Winger, Benjamin <Benjamin.Winger@us.dlapiper.com>
**Sent:** Thursday, November 14, 2024 4:06 PM
**To:** Etkin, Michael S. <metkin@lowenstein.com>; Power, Aaron J. <APower@porterhedges.com>; Rammelt,
David <DRammelt@beneschlaw.com>; Chris Wood <CWood@rgrdlaw.com>
**Cc:** Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>;
Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G.

<AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Cargill, Scott <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** Re: Proposed Agreed Order to Avoid Contested Hearing & Briefing

OK for DIP Parties, yes.

We'd ask that movants file a notice showing the revised response deadline and hrg date.

Get Outlook for iOS

**From:** Etkin, Michael S. <metkin@lowenstein.com>
**Sent:** Thursday, November 14, 2024 2:58 PM
**To:** Power, Aaron J. <APower@porterhedges.com>; Rammelt, David <DRammelt@beneschlaw.com>; Chris Wood <CWood@rgrdlaw.com>
**Cc:** Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Cargill, Scott <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>; Winger, Benjamin <Benjamin.Winger@us.dlapiper.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

⚠️ EXTERNAL MESSAGE

Although we will try, I don't believe the Court has the flexibility to move the time so my suggestion is that we cross that bridge when necessary.  Ben, I assume David's agreement works for you as well and I'd like to get back to the Court shortly.   Please let me know if otherwise.

Thanks.

**Michael S. Etkin**
Partner
Lowenstein Sandler LLP

T: (973) 597-2312
M: (973) 454-2283

**From:** Power, Aaron J. <APower@porterhedges.com>
**Sent:** Thursday, November 14, 2024 3:49 PM
**To:** Etkin, Michael S. <metkin@lowenstein.com>; Rammelt, David <DRammelt@beneschlaw.com>; Chris Wood <CWood@rgrdlaw.com>
**Cc:** Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Cargill, Scott <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>; Benjamin Winger <Benjamin.Winger@us.dlapiper.com>

**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

The trustee supports moving the hearing.  However, if any party intends on calling her on 12/5, that is one of her panel days which usually run into the mid-afternoon. So you may consider pushing it to later in the afternoon like 3 or 4

**Aaron J. Power** | Partner
**Porter Hedges LLP**

1000 Main St, 36th Floor | Houston, TX 77002
**t** 713.226.6631    **e** apower@porterhedges.com
**Bio** • **Web** • **V-Card**

**From:** Etkin, Michael S. <metkin@lowenstein.com>
**Sent:** Thursday, November 14, 2024 2:30 PM
**To:** Rammelt, David <DRammelt@beneschlaw.com>; Chris Wood <CWood@rgrdlaw.com>
**Cc:** Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Power, Aaron J. <APower@porterhedges.com>; Cargill, Scott <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>; Benjamin Winger <Benjamin.Winger@us.dlapiper.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

We heard back from Chambers and the Court is not  available until 12/5 at 1 p.m. Central.  We are prepared to adjourn the hearing until then as long as we agree that any opposition papers will be served and filed by 11/22 and we will file any reply by 12/3.  That will give us time next week to attempt to reach agreement on a form of order.  Please let us know if that is acceptable and then we will confirm the new date with Chambers.

Thanks.

**Michael S. Etkin**
Partner
Lowenstein Sandler LLP

T: (973) 597-2312
M: (973) 454-2283

**From:** Rammelt, David <DRammelt@beneschlaw.com>
**Sent:** Thursday, November 14, 2024 2:08 PM
**To:** Chris Wood <CWood@rgrdlaw.com>
**Cc:** Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Aaron J. Power <APower@porterhedges.com>; Etkin, Michael S. <metkin@lowenstein.com>; Cargill, Scott <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>; Benjamin Winger <Benjamin.Winger@us.dlapiper.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

Thank you, Chris.

David A. Rammelt
(he/him/his)
Vice-Chair, Litigation Department
Benesch Friedlander Coplan & Aronoff LLP

vCard Bio

t: 312.212.4958 | m: 312.404.2140
DRammelt@beneschlaw.com | www.beneschlaw.com
71 South Wacker Drive, Suite 1600, Chicago, IL 60606-4637

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

**From:** Chris Wood <CWood@rgrdlaw.com>
**Sent:** Thursday, November 14, 2024 1:46 PM
**To:** Rammelt, David <DRammelt@beneschlaw.com>
**Cc:** Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Aaron J. Power <APower@porterhedges.com>; Mickey Etkin <metkin@lowenstein.com>; Scott Cargill <SCargill@lowenstein.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>; Benjamin Winger <Benjamin.Winger@us.dlapiper.com>
**Subject:** Re: Proposed Agreed Order to Avoid Contested Hearing & Briefing

We are considering your request and will get back to you asap today.

On Nov 14, 2024, at 12:44 PM, Rammelt, David <DRammelt@beneschlaw.com> wrote:

EXTERNAL SENDER

Chris (or Jerry, Matt, etc.) – Ben Winger (BK counsel for the DIP Lenders) has asked if you are willing to agree to our request to kick the hearing for a week while we work through this.  Otherwise, they will file an objection on various grounds tonight or tomorrow (same position as us).  An Agreed Order, however, will moot the need to do so and we want adequate time to finalize the language of an Agreed Order that satisfies everyone.

Please let us know ASAP if you agree to move the hearing a week.

Thank you,

David

David A. Rammelt
(he/him/his)
Vice-Chair, Litigation Department
Benesch Friedlander Coplan & Aronoff LLP

vCard Bio

t: 312.212.4958 | m: 312.404.2140
DRammelt@beneschlaw.com | www.beneschlaw.com
71 South Wacker Drive, Suite 1600, Chicago, IL 60606-4637

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

**From:** Rammelt, David <DRammelt@beneschlaw.com>
**Sent:** Thursday, November 14, 2024 11:57 AM
**To:** Chris Wood <CWood@rgrdlaw.com>; Jerry Martin <jmartin@barrettjohnston.com>; 'Matthew McGraw' <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; 'Power, Aaron J.' <APower@porterhedges.com>; Mickey Etkin <metkin@lowenstein.com>; Scott Cargill <SCargill@lowenstein.com>; 'Kahn, Michael J.' <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

Chris,

I am reviewing this carefully now.  While we work through this – as an aside, I spoke with the DIP Lenders counsel at DLA and he would like a chance to review (though imagine we are closely aligned) – can we agree to ask the Court to kick the hearing for a week?  That should give us sufficient time to get this right for everyone.  I believe that the Trustee, DIP Lander and obviously we all agree.

Thank you

David A. Rammelt
(he/him/his)
Vice-Chair, Litigation Department
Benesch Friedlander Coplan & Aronoff LLP

vCard Bio

t: 312.212.4958 | m: 312.404.2140
DRammelt@beneschlaw.com | www.beneschlaw.com
71 South Wacker Drive, Suite 1600, Chicago, IL 60606-4637

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

**From:** Chris Wood <CWood@rgrdlaw.com>
**Sent:** Thursday, November 14, 2024 11:12 AM
**To:** Rammelt, David <DRammelt@beneschlaw.com>; Jerry Martin <jmartin@barrettjohnston.com>; 'Matthew McGraw' <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; 'Power, Aaron J.' <APower@porterhedges.com>; Mickey Etkin <metkin@lowenstein.com>; Scott Cargill <SCargill@lowenstein.com>; 'Kahn, Michael J.' <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>
**Subject:** RE: Proposed Agreed Order to Avoid Contested Hearing & Briefing

David,

Thanks for sending this draft.  Our proposed edits are attached.

Best,

Chris Wood
**Robbins Geller Rudman & Dowd LLP**
200 31st Avenue North

Nashville, TN 37203
Tel. (615) 244-2203

---

**From:** Rammelt, David <DRammelt@beneschlaw.com>
**Sent:** Wednesday, November 13, 2024 3:24 PM
**To:** Jerry Martin <jmartin@barrettjohnston.com>; mmcgraw@barrettjohnston.com; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>
**Cc:** Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>
**Subject:** Proposed Agreed Order to Avoid Contested Hearing & Briefing

EXTERNAL SENDER
Gentlemen,

We were provided with a copy of Securities Plaintiffs' Emergency Motion for Entry of an Order Confirming Chapter 7 Trustee is Authorized and Empowered to Waive the Debtors' Attorney/Client Privileges filed with the bankruptcy court last week.  We consulted with the DIP Lenders bankruptcy counsel and were advised that there are technical deficiencies with the motion (we understand having to do with the rules governing emergency motions, notice requirements, etc.).  That aside, in reviewing the motion it appears to us that the intent is to confirm that the Trustee has the authority to waive the Debtors' prepetition attorney/client privileges (only) so that there is no issue on this point when we present the issue as raised on our Request for Discovery Conference and expected motions to be filed with Judge Richardson.

As I believe you know, the Trustee's counsel has confirmed for us on multiple occasions (since April) that the Trustee is not and has not waived any privileges held by the Individual Defendants.

Inasmuch as we don't think we truly are in disagreement, we would propose presenting Judge Lopez with the attached Agreed Order rather than both sides spending the time and money fully briefing the underlying Emergency Motion.  We think that this Agreed Order clarifies the Trustee's position and reserves the decision on whether her waiver as to the Debtors (only) applies in whole or in part to the privileges being asserted by our individual clients for the appropriate court.

Please let us know if this makes sense to you and if you have any suggested edits to the Proposed Order.  Assuming you don't, we can have the same filed tomorrow with Judge Lopez to put the issue to bed.

Please let us know if at all possible by noon tomorrow so that we can prepare and file a response.

Many thanks,

Davud

> David A. Rammelt
> (he/him/his)

vCard Bio

Vice-Chair, Litigation Department
Benesch Friedlander Coplan & Aronoff LLP

t: 312.212.4958 | m: 312.404.2140
DRammelt@beneschlaw.com | www.beneschlaw.com
71 South Wacker Drive, Suite 1600, Chicago, IL 60606-4637

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

This message contains confidential information, intended only for the person(s) named above, which may also be privileged. Any use, distribution, copying or disclosure by any other person is strictly prohibited. In such case, you should delete this message and kindly notify the sender via reply e-mail. Please advise immediately if you or your employer does not consent to Internet e-mail for messages of this kind.

This message contains confidential information, intended only for the person(s) named above, which may also be privileged. Any use, distribution, copying or disclosure by any other person is strictly prohibited. In such case, you should delete this message and kindly notify the sender via reply e-mail. Please advise immediately if you or your employer does not consent to Internet e-mail for messages of this kind.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

This message contains confidential information, intended only for the person(s) named above, which may also be privileged. Any use, distribution, copying or disclosure by any other person is strictly prohibited. In such case, you should delete this message and kindly notify the sender via reply e-mail. Please advise immediately if you or your employer does not consent to Internet e-mail for messages of this kind.

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

This message contains confidential information, intended only for the person(s) named above, which may also be privileged. Any use, distribution, copying or disclosure by any other person is strictly prohibited. In such case, you should delete this message and kindly notify the sender via reply e-mail. Please advise immediately if you or your employer does not consent to Internet e-mail for messages of this kind.

<2024-11-21 Defts' Proposed Agreed Order re Privilege (Plaintiffs' 11.20.2024 Edits) (002).docx>

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as**

**attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

# EXHIBIT 11

**From:** Chris Wood
**To:** Silverstein, Michael; Jerry Martin; Ma_ Schwart_
**Cc:** Benjamin Winger; Brett _ngerman; Dale _. Cathell; Michael J._ahn; Brian Lut_; Rammelt, David; Fiorella, Andrew G.; Meuti, Michael; Scott Cargill; Mic_ey_t_in; Andrew Behlmann; Matthew McGraw; Henry Bator; Je_rey Stein; Mandeep Minhas; _milie B. _o_manian; Jonathan M. Zimmerman
**Subject:** R_: _n re SmileDirectClu_, _nc. et al, _o. 2_-907__ (CML) - Su_poenas Duces _ecum
**Date:** _hursday, Decem_er 5, 2024 7:52:49 PM
**Attachments:** image002.png
image00_.png

Michael,

We received the links.  As I mentioned last week in my email (below), and earlier this week in our meet and confer call, for the reasons I explained Robbins Geller will not be appearing at this deposition.  Neither Barrett Johnston nor Scott_ Scott will be appearing either.

If you decide to go ahead with these depositions in our absence, I would respectfully respect that you introduce this email into the record so that the transcript is clear that you elected to proceed with the depositions in spite of the fact that we told you in advance we would not be appearing.

We intend to file motions to quash your subpoenas and/or for protective motions no later than Monday.

Best,

Chris Wood

**Robbins Geller Rudman & Dowd LLP**

200 31st Avenue North

Nashville, TN 37203

Tel. (615) 244-2203

---

**From:** Silverstein, Michael <MSilverstein@beneschlaw.com>
**Sent:** Thursday, December 5, 2024 11:47 AM
**To:** Chris Wood <CWood@rgrdlaw.com>; Jerry Martin <jmartin@barrettjohnston.com>; Max Schwartz <mschwartz@scott-scott.com>
**Cc:** Benjamin Winger <Benjamin.Winger@us.dlapiper.com>; Brett Ingerman <brett.ingerman@us.dlapiper.com>; Dale K. Cathell <Dale.Cathell@us.dlapiper.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>; Rammelt, David <DRammelt@beneschlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Mickey Etkin <metkin@lowenstein.com>; Andrew Behlmann <ABehlmann@lowenstein.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Mandeep Minhas <mminhas@scott-scott.com>; Emilie B. Kokmanian <ekokmanian@scott-scott.com>; Jonathan M. _immerman <jzimmerman@scott-scott.com>
**Subject:** RE: In re SmileDirectClub, Inc. et al, No. 23-90786 (CML) - Subpoenas Duces Tecum

EXTE_NA_ SENDE_

Chris, Jerry, and Max,

Attached please find information to access the Robbins Geller, Scott+Scott, and Barrett Johnston depositions.

Thank you,
Michael



Michael B. Silverstein
(he/him/his)
Managing Associate | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 614.223.9362 | m: 215.837.2076
MSilverstein@beneschlaw.com | www.beneschlaw.com
41 South High Street, Suite 2600, Columbus, OH 43215-6164

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

vCard Bio

---

**From:** Silverstein, Michael <MSilverstein@beneschlaw.com>
**Sent:** Tuesday, December 3, 2024 3:25 PM
**To:** Chris Wood <CWood@rgrdlaw.com>; Jerry Martin <jmartin@barrettjohnston.com>; Max Schwartz <mschwartz@scott-scott.com>
**Cc:** Benjamin Winger <Benjamin.Winger@us.dlapiper.com>; Brett Ingerman <brett.ingerman@us.dlapiper.com>; Dale K. Cathell <Dale.Cathell@us.dlapiper.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>; Rammelt, David <DRammelt@beneschlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Mickey Etkin <metkin@lowenstein.com>; Andrew Behlmann <ABehlmann@lowenstein.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Mandeep Minhas <mminhas@scott-scott.com>; Emilie B. Kokmanian <ekokmanian@scott-scott.com>; Jonathan M. immerman <jzimmerman@scott-scott.com>
**Subject:** RE: In re SmileDirectClub, Inc. et al, No. 23-90786 (CML) - Subpoenas Duces Tecum

Chris, Jerry, and Max,

Thank you for meeting and conferring with us today.

Attached please find updated subpoenas. Please confirm that you will accept service of these subpoenas via this email, as you did before.

We will send links for the noticed depositions.

Thank you,
Michael



Michael B. Silverstein
(he/him/his)
Managing Associate | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 614.223.9362 | m: 215.837.2076
MSilverstein@beneschlaw.com | www.beneschlaw.com
41 South High Street, Suite 2600, Columbus, OH 43215-6164

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

vCard Bio

---

**From:** Silverstein, Michael <MSilverstein@beneschlaw.com>
**Sent:** Monday, December 2, 2024 7:43 PM

**To:** Chris Wood <CWood@rgrdlaw.com>; Jerry Martin <jmartin@barrettjohnston.com>; Max Schwartz <mschwartz@scott-scott.com>
**Cc:** Benjamin Winger <Benjamin.Winger@us.dlapiper.com>; Brett Ingerman <brett.ingerman@us.dlapiper.com>; Dale K. Cathell <Dale.Cathell@us.dlapiper.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>; Rammelt, David <DRammelt@beneschlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Mickey Etkin <metkin@lowenstein.com>; Andrew Behlmann <ABehlmann@lowenstein.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Mandeep Minhas <mminhas@scott-scott.com>; Emilie B. Kokmanian <ekokmanian@scott-scott.com>; Jonathan M.  immerman <jzimmerman@scott-scott.com>
**Subject:** Re: In re SmileDirectClub, Inc. et al, No. 23-90786 (CML) - Subpoenas Duces Tecum

Thank you, Chris. I'll send a meeting invite this evening

Get Outlook for iOS



Michael B. Silverstein
(he/him/his)
Managing Associate | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 614.223.9362 | m: 215.837.2076
MSilverstein@beneschlaw.com | www.beneschlaw.com
41 South High Street, Suite 2600, Columbus, OH 43215-6164

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

vCard Bio

---

**From:** Chris Wood <CWood@rgrdlaw.com>
**Sent:** Monday, December 2, 2024 6:59:50 PM
**To:** Silverstein, Michael <MSilverstein@beneschlaw.com>; Jerry Martin <jmartin@barrettjohnston.com>; Max Schwartz <mschwartz@scott-scott.com>
**Cc:** Benjamin Winger <Benjamin.Winger@us.dlapiper.com>; Brett Ingerman <brett.ingerman@us.dlapiper.com>; Dale K. Cathell <Dale.Cathell@us.dlapiper.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>; Rammelt, David <DRammelt@beneschlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Mickey Etkin <metkin@lowenstein.com>; Andrew Behlmann <ABehlmann@lowenstein.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Mandeep Minhas <mminhas@scott-scott.com>; Emilie B. Kokmanian <ekokmanian@scott-scott.com>; Jonathan M.  immerman <jzimmerman@scott-scott.com>
**Subject:** RE: In re SmileDirectClub, Inc. et al, No. 23-90786 (CML) - Subpoenas Duces Tecum

Michael,

I will accept service of this subpoena on behalf of Robbins Geller subject to the same objections I expressed on Wednesday, none of which have been remedied.

We are available at 2pm eastern on Tuesday to meet and confer.

Chris Wood
**Robbins Geller Rudman & Dowd LLP**

200 31st Avenue North
Nashville, TN 37203
Tel. (615) 244-2203

---

**From:** Silverstein, Michael <MSilverstein@beneschlaw.com>
**Sent:** Monday, December 2, 2024 1:50 PM
**To:** Jerry Martin <jmartin@barrettjohnston.com>; Max Schwartz <mschwartz@scott-scott.com>; Chris Wood <CWood@rgrdlaw.com>
**Cc:** Benjamin Winger <Benjamin.Winger@us.dlapiper.com>; Brett Ingerman <brett.ingerman@us.dlapiper.com>; Dale K. Cathell <Dale.Cathell@us.dlapiper.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>; Rammelt, David <DRammelt@beneschlaw.com>; Fiorella, Andrew G. <AFiorella@beneschlaw.com>; Meuti, Michael <MMeuti@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Mickey Etkin <metkin@lowenstein.com>; Andrew Behlmann <ABehlmann@lowenstein.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Mandeep Minhas <mminhas@scott-scott.com>; Emilie B. Kokmanian <ekokmanian@scott-scott.com>; Jonathan M.  immerman <jzimmerman@scott-scott.com>
**Subject:** RE: In re SmileDirectClub, Inc. et al, No. 23-90786 (CML) - Subpoenas Duces Tecum

EXTE NA  SENDE

Chris, Max, and Jerry,

Thank you for sending the objections to the subpoenas issued in the SDC bankruptcy action.  We ask that Plaintiffs' counsel reconsider the refusal to appear in response to those subpoenas.  Accordingly, we would like to meet and confer regarding the objections to see if we can resolve this without court intervention.  To facilitate the meet-and-confer, we are rescheduling the depositions to Friday and Monday.  Attached, please find updated subpoenas. As you accepted service via my last email, please confirm that you accept service of these revised subpoenas the same way.

We are available to meet and confer tomorrow between noon and 5 EST.

-Michael





vCard Bio

Michael B. Silverstein
(he/him/his)
Managing Associate | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 614.223.9362 | m: 215.837.2076
MSilverstein@beneschlaw.com | www.beneschlaw.com
41 South High Street, Suite 2600, Columbus, OH 43215-6164

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

---

**From:** Jerry Martin <jmartin@barrettjohnston.com>
**Sent:** Wednesday, November 27, 2024 8:30 PM
**To:** Max Schwartz <mschwartz@scott-scott.com>; Chris Wood <CWood@rgrdlaw.com>; Silverstein, Michael <MSilverstein@beneschlaw.com>; Scott Cargill <SCargill@lowenstein.com>; Mickey Etkin <metkin@lowenstein.com>; Andrew Behlmann <ABehlmann@lowenstein.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>;

Mandeep Minhas <[mminhas@scott-scott.com](mailto:mminhas@scott-scott.com)>; Emilie B. Kokmanian <[ekokmanian@scott-scott.com](mailto:ekokmanian@scott-scott.com)>; Jonathan M. immerman <[jzimmerman@scott-scott.com](mailto:jzimmerman@scott-scott.com)>
**Cc:** Benjamin Winger <[Benjamin.Winger@us.dlapiper.com](mailto:Benjamin.Winger@us.dlapiper.com)>; Brett Ingerman <[brett.ingerman@us.dlapiper.com](mailto:brett.ingerman@us.dlapiper.com)>; Dale K. Cathell <[Dale.Cathell@us.dlapiper.com](mailto:Dale.Cathell@us.dlapiper.com)>; Michael J. Kahn <[MJKahn@gibsondunn.com](mailto:MJKahn@gibsondunn.com)>; Brian Lutz <[blutz@gibsondunn.com](mailto:blutz@gibsondunn.com)>; Rammelt, David <[DRammelt@beneschlaw.com](mailto:DRammelt@beneschlaw.com)>; Fiorella, Andrew G. <[AFiorella@beneschlaw.com](mailto:AFiorella@beneschlaw.com)>; Meuti, Michael <[MMeuti@beneschlaw.com](mailto:MMeuti@beneschlaw.com)>
**Subject:** Re: In re SmileDirectClub, Inc. et al, No. 23-90786 (CML) - Subpoenas Duces Tecum

Barrett Johnston will likewise not appear at the noticed  deposition or produce documents for the same reasons articulated in Mr. Woods email. All other objections are reserved.

Get [Outlook for iOS](https://aka.ms/o0ukef)

---

**From:** Max Schwartz <[mschwartz@scott-scott.com](mailto:mschwartz@scott-scott.com)>
**Sent:** Wednesday, November 27, 2024 6:58:36 PM
**To:** Chris Wood <[CWood@rgrdlaw.com](mailto:CWood@rgrdlaw.com)>; Michael Silverstein <[MSilverstein@beneschlaw.com](mailto:MSilverstein@beneschlaw.com)>; Scott Cargill <[SCargill@lowenstein.com](mailto:SCargill@lowenstein.com)>; Mickey Etkin <[metkin@lowenstein.com](mailto:metkin@lowenstein.com)>; Andrew Behlmann <[ABehlmann@lowenstein.com](mailto:ABehlmann@lowenstein.com)>; Jerry Martin <[jmartin@barrettjohnston.com](mailto:jmartin@barrettjohnston.com)>; Matthew McGraw <[mmcgraw@barrettjohnston.com](mailto:mmcgraw@barrettjohnston.com)>; Henry Bator <[HBator@rgrdlaw.com](mailto:HBator@rgrdlaw.com)>; Jeffrey Stein <[JStein@rgrdlaw.com](mailto:JStein@rgrdlaw.com)>; Mandeep Minhas <[mminhas@scott-scott.com](mailto:mminhas@scott-scott.com)>; Emilie B. Kokmanian <[ekokmanian@scott-scott.com](mailto:ekokmanian@scott-scott.com)>; Jonathan M. immerman <[jzimmerman@scott-scott.com](mailto:jzimmerman@scott-scott.com)>
**Cc:** Benjamin Winger <[Benjamin.Winger@us.dlapiper.com](mailto:Benjamin.Winger@us.dlapiper.com)>; Brett Ingerman <[brett.ingerman@us.dlapiper.com](mailto:brett.ingerman@us.dlapiper.com)>; Dale K. Cathell <[Dale.Cathell@us.dlapiper.com](mailto:Dale.Cathell@us.dlapiper.com)>; Michael J. Kahn <[MJKahn@gibsondunn.com](mailto:MJKahn@gibsondunn.com)>; Brian Lutz <[blutz@gibsondunn.com](mailto:blutz@gibsondunn.com)>; David Rammelt <[DRammelt@beneschlaw.com](mailto:DRammelt@beneschlaw.com)>; Andrew G. Fiorella <[AFiorella@beneschlaw.com](mailto:AFiorella@beneschlaw.com)>; Michael Meuti <[MMeuti@beneschlaw.com](mailto:MMeuti@beneschlaw.com)>
**Subject:** Re: In re SmileDirectClub, Inc. et al, No. 23-90786 (CML) - Subpoenas Duces Tecum

While I accept service of the similar subpoena sent to Scott+Scott, for the reasons set forth below among others, Scott+Scott will not appear at the noticed deposition or produce documents as requested therein. We reserve all of our rights and objections in this regard.



**Ma  Schwartz,** Partner
212.519.0513
[mschwart_@scott-scott.com](mailto:mschwartz@scott-scott.com)
[www.scott-scott.com](http://www.scott-scott.com)
The Helmsley  uilding **+** 230 Park Avenue, 24th Fl
New  ork, N  10169

NE     ORK**+**LONDON**+**AMSTERDAM**+** ERLIN**+**CALIFORNIA**+**CONNECTIC  T**+** IRGINIA**+**OHIO**+**ARI ONA**+**TEXAS

This e-mail may contain confidential or privileged information. If you believe you have received it in error, please notify the sender immediately and delete this message without copying or disclosing it.

---

**From:** Chris Wood <[CWood@rgrdlaw.com](mailto:CWood@rgrdlaw.com)>
**Sent:** Wednesday, November 27, 2024 5:48 PM
**To:** Michael Silverstein <[MSilverstein@beneschlaw.com](mailto:MSilverstein@beneschlaw.com)>; Scott Cargill <[SCargill@lowenstein.com](mailto:SCargill@lowenstein.com)>; Mickey Etkin <[metkin@lowenstein.com](mailto:metkin@lowenstein.com)>; Andrew Behlmann <[ABehlmann@lowenstein.com](mailto:ABehlmann@lowenstein.com)>; Jerry Martin

<jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator <HBator@rgrdlaw.com>; Jeffrey Stein <JStein@rgrdlaw.com>; Max Schwartz <mschwartz@scott-scott.com>; Mandeep Minhas <mminhas@scott-scott.com>; Emilie B. Kokmanian <ekokmanian@scott-scott.com>; Jonathan M.  immerman <jzimmerman@scott-scott.com>

**Cc:** Benjamin Winger <Benjamin.Winger@us.dlapiper.com>; Brett Ingerman <brett.ingerman@us.dlapiper.com>; Dale K. Cathell <Dale.Cathell@us.dlapiper.com>; Michael J. Kahn <MJKahn@gibsondunn.com>; Brian Lutz <blutz@gibsondunn.com>; David Rammelt <DRammelt@beneschlaw.com>; Andrew G. Fiorella <AFiorella@beneschlaw.com>; Michael Meuti <MMeuti@beneschlaw.com>

**Subject:** RE: In re SmileDirectClub, Inc. et al, No. 23-90786 (CML) - Subpoenas Duces Tecum


Michael,

We are in receipt of your subpoena to Robbins Geller. While reserving all objections other than to adequacy of service, I will accept service on behalf of Robbins Geller.

Robbins Geller does not intend to appear for the deposition at the noticed time and date, nor produce any responsive documents on Monday, as the subpoena requests.

First, your subpoena does not comply with the mandatory provisions of Fed. R. Civ. P. 30(b)(6), and is therefore invalid.

Second, your subpoena violates Fed. R. Civ. P. 45, including because it fails to take reasonable steps to avoid imposing undue burden or expense, and seeks discovery which is not relevant to any party's claim or defense, nor proportional to the needs of the case.  Specifically, none of the discovery sought by your subpoena is relevant to the limited issues raised in our Motion. Also, the fact that you have served five separate subpoenas seeking essentially identical information makes them unduly cumulative, particularly as to a third party.

Third, your subpoena is untimely.  We filed our motion almost a month ago.  Serving multiple subpoenas with voluminous production demands two days before Thanksgiving, while providing mere days for compliance fails to allow a reasonable time to comply.

Finally, I told defendants last week when we agreed to the current briefing schedule that we did not believe discovery was necessary to resolve the Motion.  We will not agree to extend the deadline for objections to the Motion, nor will we agree to adjourn the hearing date.

This is not intended to be a comprehensive list of all possible defects with your subpoena, and we reserve all rights.

Happy Thanksgiving,

Chris Wood
**Robbins Geller Rudman & Dowd LLP**
200 31st Avenue North
Nashville, TN 37203
Tel. (615) 244-2203

---

**From:** Silverstein, Michael <MSilverstein@beneschlaw.com>
**Sent:** Tuesday, November 26, 2024 5:25 PM
**To:** Scott Cargill <SCargill@lowenstein.com>; Mickey Etkin <metkin@lowenstein.com>; Andrew Behlmann <ABehlmann@lowenstein.com>; Chris Wood <CWood@rgrdlaw.com>; Jerry Martin <jmartin@barrettjohnston.com>; Matthew McGraw <mmcgraw@barrettjohnston.com>; Henry Bator

<<u>HBator@rgrdlaw.com</u>>; Jeffrey Stein <<u>JStein@rgrdlaw.com</u>>; Max Schwartz <<u>mschwartz@scott-scott.com</u>>; Mandeep Minhas <<u>mminhas@scott-scott.com</u>>; Emilie B. Kokmanian <<u>ekokmanian@scott-scott.com</u>>; <u>jzimmerman@scott-scott.com</u>
**Cc:** Winger, Benjamin <<u>Benjamin.Winger@us.dlapiper.com</u>>; Ingerman, Brett <<u>brett.ingerman@us.dlapiper.com</u>>; Cathell, Dale K. <<u>Dale.Cathell@us.dlapiper.com</u>>; Kahn, Michael J. <<u>MJKahn@gibsondunn.com</u>>; Brian Lutz <<u>blutz@gibsondunn.com</u>>; Rammelt, David <<u>DRammelt@beneschlaw.com</u>>; Fiorella, Andrew G. <<u>AFiorella@beneschlaw.com</u>>; Meuti, Michael <<u>MMeuti@beneschlaw.com</u>>
**Subject:** In re SmileDirectClub, Inc. et al, No. 23-90786 (CML) - Subpoenas Duces Tecum

EXTE  NA   SENDE
Counsel,

Attached please find Interested Parties David Katzman, Steven Katzman, Kyle Wailes, Richard Schnall, Susan Greenspon Rammelt, and Camelot Venture Group's Subpoenas Duces Tecum to Robbins Geller Rudman & Dowd, LLP, Scott + Scott Attorneys at Law LLP, and Barrett Johnston Martin & Garrison, PLLC.

Please let me know if you accept service via this email.

We have noticed these subpoenas for next week because currently objections to Securities Plaintiffs' Emergency Motion are due December 9th. We recognize this is a short timeline, especially given the holiday.  Since the hearing is not until December 20th, we would be willing to push these depositions to the week of December 9th if you agree that the objections can be due December 13th.

Thank you,
Michael





vCard Bio

Michael B. Silverstein
(he/him/his)
Managing Associate | Litigation
Benesch Friedlander Coplan & Aronoff LLP

t: 614.223.9362 | m: 215.837.2076
MSilverstein@beneschlaw.com | www.beneschlaw.com
41 South High Street, Suite 2600, Columbus, OH 43215-6164

Confidentiality Notice to Incorrect Addressee: www.beneschlaw.com/confidentialitynotice

**NOTICE:** This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**NOTICE:** This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

# EXHIBIT 12

Page 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

---------------------------------x

In Re:                              Chapter 7

   SMILEDIRECTCLUB, INC., et al.,

                                Case No.:

                                23-90786 (CML)

             Debtors.

---------------------------------x

            December 6, 2024

            3:05 p.m.

      STATEMENT BY COUNSEL in regards

to the scheduled deposition of a Scott +

Scott Attorneys at Law LLP representative,

to have been taken by the Individual

Securities Defendants, pursuant to

Subpoena, held via Zoom Video

Conferencing, before Abner D. Berzon, a

Registered Professional Reporter,

Certified Realtime Reporter and Notary

Public of the State of New York.

   Job No. CS7061582

Page 2

A P P E A R A N C E S :

(Via Zoom video conferencing)
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF, LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
     Attorneys for the Individual
     Securities Defendants
     DAVID KATZMAN, STEVEN KATZMAN,
     KYLE WAILES, RICHARD SCHNALL,
     SUSAN GREENSPON RAMMELT, AND
     CAMELOT VENTURE GROUP
BY: ANDREW G. FIORELLA, ESQ.
     afiorella@beneschlaw.com
     (216)363-4453


          *     *     *

Page 3

MR. FIORELLA:  The time is now 3:05 on December 6th, 2024.  This is the deposition of Scott + Scott LLP. My name is Andrew Fiorella.  I represent the interested parties named David Katzman, Steven Katzman, Kyle Wails, Richard Schnall, Susan Greenspon Rammelt, and Camelot Venture Group.

We were told in advance of this deposition Scott + Scott will refuse to appear, so I'll make the following statements and introduce a few exhibits on the record to record their nonappearance:

On November 1st, 2024, plaintiffs in the securities class action captioned "In Re: SmileDirectClub, Inc. Securities Litigation", Case No. 19-1169-IV, pending in the Chancery Court for Davidson County Tennessee, and a case captioned "Adam Franchi, et al. vs. SmileDirectClub, Inc., et al, Case No. 3:19-CV-962, pending in the

Page 4

United States District Court for the Middle District of Tennessee, filed an emergency motion for an order confirming the Chapter 7 trustee is authorized and empowered to waive debtors' attorney-client privileges. I'll refer to those plaintiffs collectively as "securities plaintiffs in the motion as the emergency motion".

In the emergency motion, securities plaintiffs sought an order from the bankruptcy court stating:

1.  That the trustee had authority to grant securities plaintiffs access to a document database housed by Consilio, an e-discovery vendor; and

2.  That the trustee was empowered to waive debtors' privilege.

My clients, some of the defendants in the securities action, did not know of this apparent access to the database or waiver until long after the fact.  The database is

Page 5

currently paid for and used by my clients in the securities actions, and my clients have joint privileges in those documents that the trustee purportedly has waived privilege for.

When the emergency motion was filed, my firm began to confer with securities plaintiffs' counsel, including the deponent today, Scott + Scott, to attempt to enter an agreed order resolving the emergency motion.

All parties agreed that the trustee could waive privilege belonging to the debtors alone, but could not waive privileges not belonging to the debtors.

Parties, however, could not agree on language regarding the trustees' purported authority to grant access to the Consilio database.

When the impasse became clear on November 22nd, 2024, the date any objections to the emergency motions were due, we requested a two-week

Page 6

extension to obtain discovery regarding the circumstances of the purported privilege waiver and granting of access to the Consilio database.  Plaintiffs agreed.

(Exhibit 1, subpoena for document production and deposition dated November 26th, 2024 to Scott + Scott, marked for identification, this date.)

MR. FIORELLA:  I've provided to the court Exhibit 1, what I've marked as Exhibit 1, and request that it be marked at this deposition.  This exhibit is a subpoena for document production and deposition dated November 26th, 2024 to Scott + Scott. The firm accepted service via e-mail the next day, noting several objections.  No deposition was held pursuant to Exhibit 1.

(Exhibit 2, amended subpoena dated December 2nd, 2024, marked for identification, this date.)

MR. FIORELLA:  Also previously

Page 7

provided to the court reporter, a document marked as Exhibit 2, I request that it be marked as an exhibit to this deposition, is an amended subpoena dated December 2nd, 2024 delaying the deposition to today and requested a meet-and-confer with Scott + Scott regarding the objections they had raised.

A meet-and-confer call was held on December 3rd, 2024. In attendance were attorneys from my law firm and other parties in the securities case, attorneys from DLA Piper, who represents the debtor-in-possession lender; attorneys representing the securities plaintiffs, including representatives of the Robbins Geller law firm; the Barrett Johnson law firm; and the deponent today, the Scott + Scott law firm.

At the meet-and-confer, securities plaintiffs raised objections regarding some perceived technical deficiencies with the

Page 8

subpoena and substantive deficiencies with the with the topics and document requests.

One of plaintiffs counsel in the security case stated during the meet-and-confer that he would not sit for deposition until an appellate court had ordered him to do so.

(Exhibit 3, amended subpoena dated December 6th, 2024, marked for identification, this date.)

MR. FIORELLA:  Finally, I've provided the court reporter with what was identified as Exhibit 3.  I request that it be marked as such to this deposition.

After the meet-and-confer on December 3rd, 2024, our firm served the amended subpoena that appears in Exhibit 3.

Further, Scott + Scott were sent links to access this remote deposition yesterday on December 5th.  The same day, I spoke with partner Max Schwartz from Scott + Scott and he reiterated

Page 9

that none of his firm would appear for this deposition.

To my knowledge, as of this date, no motion to quash or motion for protective order has been filed by Scott + Scott.

Other than the court reporter and myself, no one else has appeared for this deposition.

And that concludes the statement for the record.

(Time noted:  3:14 p.m.)


\*      \*      \*

800-567-8658                                               973-410-4098

Page 10

E X H I B I T S


NO.      DESCRIPTION                    PAGE

EXHIBIT 1                              7

    Subpoena for document

    production and deposition,

    dated November 26th, 2024 to

    Scott + Scott

EXHIBIT 2                              8

    Amended subpoena dated

    December 2nd, 2024

EXHIBIT 3                              9

    Amended subpoena dated

    December 6th, 2024



    *    *    *

Page 11

C E R T I F I C A T I O N

I, ABNER D. BERZON, a Registered Professional Reporter, Certified Realtime Reporter and Notary Public, do hereby certify that the foregoing is a true and accurate transcription of my stenographic notes.

I further certify that I am not employed by nor related to any party to this action.

ABNER D. BERZON, RPR, CRR
Notary Public, State of New York
No. 01BE6303311
Qualified in New York County
Commission Expires 5/12/26

**[& - collectively]**    Page 1

**&**

**&** 2:5

**0**

**01be6303311** 11:17

**1**

**1** 4:14 6:6,12 6:13,21 10:4
**127** 2:5
**19-1169** 3:20
**1st** 3:16

**2**

**2** 4:19 6:22 7:2 10:9
**2024** 1:7 3:2,16 5:23 6:8,17,23 7:6,11 8:10,18 10:7,11,14
**216** 2:11
**22nd** 5:23
**23-90786** 1:6
**26th** 6:8,17 10:7
**2nd** 6:23 7:5 10:11

**3**

**3** 8:9,14,20 10:12
**363-4453** 2:11
**3869** 11:15
**3:05** 1:8 3:2

**3:14** 9:12
**3:19** 3:25
**3rd** 7:11 8:18

**4**

**44114** 2:6
**4900** 2:5

**5**

**5/12/26** 11:18
**5th** 8:23

**6**

**6** 1:7
**6th** 3:2 8:10 10:14

**7**

**7** 1:4 4:4 10:4

**8**

**8** 10:9

**9**

**9** 10:12
**962** 3:25

**a**

**abner** 1:16 11:5 11:16
**accepted** 6:18
**access** 4:16,23 5:21 6:4 8:22
**accurate** 11:9
**action** 3:18 4:22 11:13
**actions** 5:2

**adam** 3:23
**advance** 3:10
**afiorella** 2:10
**agree** 5:19
**agreed** 5:11,13 6:5
**al** 1:5 3:23,24
**amended** 6:22 7:5 8:9,19 10:10,13
**andrew** 2:10 3:4
**apparent** 4:23
**appear** 3:12 9:1
**appeared** 9:8
**appears** 8:19
**appellate** 8:7
**aronoff** 2:5
**attempt** 5:10
**attendance** 7:11
**attorney** 4:6
**attorneys** 1:12 2:6 7:12,14,16
**authority** 4:15 5:20
**authorized** 4:5

**b**

**b** 10:1
**bankruptcy** 1:1 4:13
**barrett** 7:19

**began** 5:7
**belonging** 5:15 5:17
**benesch** 2:4
**beneschlaw.c...** 2:10
**berzon** 1:16 11:5,16

**c**

**c** 2:1 11:1,1
**call** 7:10
**camelot** 2:9 3:8
**captioned** 3:18 3:23
**case** 1:5 3:20 3:22,25 7:13 8:5
**certified** 1:18 11:6
**certify** 11:8,11
**chancery** 3:21
**chapter** 1:4 4:4
**circumstances** 6:2
**class** 3:17
**clear** 5:22
**cleveland** 2:6
**client** 4:6
**clients** 4:21 5:2 5:3
**cml** 1:6
**collectively** 4:8

**[commission - introduce]** Page 2

| | | | |
|---|---|---|---|
| **commission** 11:18 | **david** 2:7 3:6 | **documents** 5:4 | **following** 3:12 |

**commission** 11:18
**concludes** 9:10
**confer** 5:7 7:7 7:10,22 8:6,17
**conferencing** 1:16 2:4
**confirming** 4:4
**consilio** 4:17 5:21 6:4
**coplan** 2:5
**counsel** 1:10 5:8 8:4
**county** 3:22 11:17
**court** 1:1 3:21 4:1,13 6:12 7:1 8:8,13 9:7
**crr** 11:16
**cs7061582** 1:25
**currently** 5:1
**cv** 3:25

**d**

**d** 1:16 11:5,16
**database** 4:17 4:24,25 5:21 6:5
**date** 5:23 6:10 6:24 8:11 9:4
**dated** 6:8,16,23 7:5 8:10 10:7 10:10,13

**david** 2:7 3:6
**davidson** 3:22
**day** 6:19 8:24
**debtor** 7:15
**debtors** 1:6 4:6 4:20 5:15,17
**december** 1:7 3:2 6:23 7:5,11 8:10,18,23 10:11,14
**defendants** 1:14 2:7 4:22
**deficiencies** 7:25 8:1
**delaying** 7:6
**deponent** 5:9 7:20
**deposition** 1:11 3:3,11 6:7,14 6:16,20 7:4,6 8:7,16,22 9:2,9 10:6
**description** 10:3
**discovery** 4:18 6:1
**district** 1:2 4:1 4:2
**division** 1:3
**dla** 7:14
**document** 4:16 6:7,15 7:2 8:2 10:5

**documents** 5:4
**due** 5:25

**e**

**e** 2:1,1 4:18 6:18 10:1 11:1
**emergency** 4:3 4:9,11 5:6,11 5:24
**employed** 11:12
**empowered** 4:5 4:20
**enter** 5:10
**esq** 2:10
**et** 1:5 3:23,24
**exhibit** 6:6,12 6:13,15,21,22 7:2,4 8:9,14,20 10:4,9,12
**exhibits** 3:14
**expires** 11:18
**extension** 6:1

**f**

**f** 11:1
**fact** 4:25
**filed** 4:2 5:7 9:5
**finally** 8:12
**fiorella** 2:10 3:1,4 6:11,25 8:12
**firm** 5:7 6:18 7:12,19,20,21 8:18 9:1

**following** 3:12
**foregoing** 11:8
**franchi** 3:23
**friedlander** 2:4
**further** 8:21 11:11

**g**

**g** 2:10
**geller** 7:18
**grant** 4:15 5:20
**granting** 6:4
**greenspon** 2:8 3:8
**group** 2:9 3:9

**h**

**h** 10:1
**held** 1:15 6:20 7:10
**housed** 4:17
**houston** 1:3

**i**

**identification** 6:10,24 8:11
**identified** 8:14
**impasse** 5:22
**including** 5:9 7:17
**individual** 1:13 2:6
**interested** 3:5
**introduce** 3:13

**[iv - representing]**                                                    Page 3

| | | | |
|---|---|---|---|
| **iv** 3:20 | 9:4 | **paid** 5:1 | **q** |
| **j** | **motions** 5:24 | **parties** 3:5 5:13 5:18 7:13 | **qualified** 11:17 |
| **job** 1:25 | **n** | **partner** 8:24 | **quash** 9:4 |
| **johnson** 7:19 | **n** 2:1 11:1 | **party** 11:12 | **r** |
| **joint** 5:3 | **name** 3:4 | **pending** 3:21 3:25 | **r** 2:1 11:1 |
| **k** | **named** 3:5 | **perceived** 7:24 | **raised** 7:9,23 |
| **katzman** 2:7,7 3:6,6 | **new** 1:19 11:16 11:17 | **piper** 7:14 | **rammelt** 2:8 3:8 |
| **know** 4:23 | **nonappearance** 3:15 | **plaintiffs** 3:17 4:7,8,12,16 5:8 6:5 7:17,23 8:4 | **realtime** 1:18 11:6 |
| **knowledge** 9:3 | **notary** 1:18 11:7,16 | **possession** 7:15 | **record** 3:14,14 9:11 |
| **kyle** 2:8 3:6 | **noted** 9:12 | **previously** 6:25 | **refer** 4:7 |
| **l** | **notes** 11:10 | **privilege** 4:20 5:5,14 6:3 | **refuse** 3:11 |
| **language** 5:19 | **noting** 6:19 | **privileges** 4:6 5:3,16 | **regarding** 5:19 6:2 7:8,24 |
| **law** 1:12 7:12 7:19,19,21 | **november** 3:16 5:23 6:8,17 10:7 | **production** 6:7 6:16 10:6 | **regards** 1:10 |
| **lender** 7:16 | **o** | **professional** 1:17 11:6 | **registered** 1:17 11:5 |
| **links** 8:22 | **o** 11:1 | **protective** 9:5 | **reiterated** 8:25 |
| **litigation** 3:20 | **objections** 5:24 6:20 7:8,24 | **provided** 6:11 7:1 8:13 | **related** 11:12 |
| **llp** 1:12 2:5 3:3 | **obtain** 6:1 | **public** 1:19 2:5 11:7,16 | **remote** 8:22 |
| **long** 4:24 | **ohio** 2:6 | **purported** 5:20 6:3 | **reporter** 1:17 1:18 7:1 8:13 9:7 11:6,7 |
| **m** | **order** 4:3,12 5:11 9:5 | **purportedly** 5:5 | **represent** 3:5 |
| **mail** 6:18 | **ordered** 8:8 | **pursuant** 1:14 6:21 | **representative** 1:12 |
| **make** 3:12 | **p** | | **representatives** 7:18 |
| **marked** 6:9,12 6:14,23 7:2,3 8:10,15 | **p** 2:1,1 | | **representing** 7:16 |
| **max** 8:24 | **p.m.** 1:8 9:12 | | |
| **meet** 7:7,10,22 8:6,17 | **page** 10:3 | | |
| **middle** 4:2 | | | |
| **motion** 4:3,9,10 4:11 5:6,12 9:4 | | | |

**[represents - zoom]**                                      Page 4

| | | | |
|---|---|---|---|
| **represents** 7:15 | **sit** 8:6 | **texas** 1:2 | **x** |
| **request** 6:13 7:3 8:15 | **smiledirectclub** 1:5 3:19,24 | **time** 3:1 9:12 | **x** 1:3,7 10:1 |
| **requested** 5:25 7:7 | **sought** 4:12 | **today** 5:9 7:6 7:20 | **y** |
| **requests** 8:3 | **southern** 1:2 | **told** 3:10 | **yesterday** 8:23 |
| **resolving** 5:11 | **spoke** 8:24 | **topics** 8:2 | **york** 1:19 11:16 11:17 |
| **richard** 2:8 3:7 | **square** 2:5 | **transcription** 11:9 | |
| **robbins** 7:18 | **state** 1:19 11:16 | **true** 11:8 | **z** |
| **rpr** 11:16 | **stated** 8:5 | **trustee** 4:4,14 4:19 5:4,14 | **zoom** 1:15 2:4 |
| **s** | **statement** 1:10 9:10 | **trustees** 5:20 | |
| **s** 2:1 10:1 | **statements** 3:13 | **two** 5:25 | |
| **scheduled** 1:11 | **states** 1:1 4:1 | **u** | |
| **schnall** 2:8 3:7 | **stating** 4:13 | **united** 1:1 4:1 | |
| **schwartz** 8:24 | **stenographic** 11:9 | **used** 5:1 | |
| **scott** 1:11,12 3:3,3,11,11 5:10,10 6:9,9 6:17,17 7:8,8 7:21,21 8:21 8:21,25,25 9:6 9:6 10:8,8 | **steven** 2:7 3:6 | **v** | |
| | **subpoena** 1:15 6:6,15,22 7:5 8:1,9,19 10:5 10:10,13 | **vendor** 4:18 | |
| | | **venture** 2:9 3:8 | |
| | | **video** 1:15 2:4 | |
| | | **vs** 3:23 | |
| **securities** 1:14 2:7 3:17,19 4:8 4:12,15,22 5:2 5:8 7:13,17,23 | **substantive** 8:1 | **w** | |
| | **suite** 2:5 | **wailes** 2:8 | |
| | **susan** 2:8 3:7 | **wails** 3:7 | |
| **security** 8:5 | **t** | **waive** 4:5,20 5:14,16 | |
| **sent** 8:21 | **t** 10:1 11:1,1 | **waived** 5:5 | |
| **served** 8:18 | **taken** 1:13 | **waiver** 4:24 6:3 | |
| **service** 6:18 | **technical** 7:25 | **week** 5:25 | |
| **several** 6:19 | **tennessee** 3:22 4:2 | | |
| **signature** 11:15 | | | |

Veritext Legal Solutions

800-567-8658                                              973-410-4098

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT 13

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **In re:** | § | **Chapter 7** |
|  | § | **(Previously Chapter 11)** |
| **SMILEDIRECTCLUB, INC.,** *et al.* | § | |
|  | § | **Case No. 23-90786 (CML)** |
| **Debtors.** | § | |
|  | § | **(Jointly Administered)** |
|  | § | |

**TRUSTEE'S OBJECTIONS AND RESPONSES TO INTERESTED PARTIES'**
**DOCUMENT PRODUCTION REQUESTS**

Allison D. Byman, Chapter 7 Trustee (the "Trustee") provides the following objections and responses to the Requests for Production served by David Katzman, Steven Katzman, Kyle Wailes, Richard Schnall, Susan Greenspon Rammelt, and Camelot Venture Group (the "Interested Parties").

Dated:  December 5, 2024.
          Houston, Texas

Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ Aaron J. Power*
Joshua W. Wolfshohl (TX Bar No. 24038592)
Aaron J. Power (TX Bar No. 24058058)
1000 Main Street, 36th Floor
Houston, TX 77002-2764
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
Email: jwolfshohl@porterhedges.com
Email: apower@porterhedges.com

*Counsel for the Chapter 7 Trustee*

1

15694824v2

## CERTIFICATE OF SERVICE

I certify that on December 5, 2024, I caused a copy of the foregoing document to be served by email on counsel for the Interested Parties, David Rammelt (drammelt@beneschlaw.com) and Michael Silverstein (msilverstein@beneschlaw.com).

/s/ Aaron J. Power
Aaron J. Power

2

15694824v2

## **GENERAL OBJECTIONS**

1.      The Trustee objects to the Requests for Production (collectively, the "Requests" and each, a "Request") and the instructions contained therein to the extent that they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure (the "Federal Rules"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules").

2.      In responding to the Requests, the Trustee does not thereby admit, adopt, acquiesce, or agree to any factual or legal conclusions underlying such requests. The Trustee objects to each request, definition, and instruction contained in the Requests to the extent that any request, definition, or instruction contains inaccurate, incomplete, or misleading descriptions of facts, persons, or events underlying this action.

3.      In responding to the Requests, the Trustee does not thereby admit, adopt, acquiesce, or agree that any of the information sought by any of the Requests or any response thereto is relevant or admissible. The Trustee's responses are subject to and without waiver of any objections as to relevance, materiality, privilege, or admissibility of any of the documents or information referred to or of the responses given here, of the subject matter thereof, in this or any other proceeding. The Trustee objects to all of the Requests to the extent they exceed the permissible scope of discovery.

4.      These responses are given without prejudice to the Trustee's right to rely on or use, at trial or other judicial proceedings, subsequently discovered facts, documents, or information, or facts, documents, and information omitted from these responses as a result of mistake, error, oversight, or inadvertence. The Trustee further reserves the right to produce additional facts, documents, and information as evidence at trial, or other judicial proceedings, and to object on appropriate grounds to the introduction of all or any portion of this response.

5.      Whenever, in response to a Request, the Trustee agrees to produce documents, this does not constitute a representation that such documents exist but only signifies that the documents will be produced if they exist, can be located with reasonable inquiry to locate such documents, and are not otherwise protected from disclosure. The Trustee objects to the Requests to the extent they seek documents beyond the present possession, custody, or control of the Trustee or otherwise seek information or documents that cannot practicably be ascertained or obtained by the Trustee. To the extent that the Trustee responds to the Requests, the Trustee will search for documents only in those locations and from those individuals that may reasonably be expected to have responsive documents in their possession.

6.      The Trustee objects to the Requests to the extent they are duplicative, cumulative, and/or redundant of other requests made in connection with these proceedings. The Trustee further

15694824v2

objects to the Requests to the extent they are vague, ambiguous, overly broad, unduly burdensome, oppressive, misleading, not susceptible to a reasonable interpretation, and/or seek information that could be obtained through other discovery methods, is in the public domain, or is accessible to all parties. Nevertheless, in the interest of transparency and swift resolution of this dispute, the Trustee will produce documents responsive to the requests that can be located through a reasonable, good-faith search of the Trustee's files. The Trustee's production of documents for each Request is made on behalf of the Debtor's estate, not on behalf of each party to whom the Request is made if the same Request is made to multiple parties.

7.    The Trustee objects to these Requests to the extent that they seek information that is protected from disclosure by the attorney-client privilege, the work product doctrine, the common interest privilege, or any other recognized privilege, immunity, rule of privacy or confidentiality, restriction, or protection provided by any applicable laws. The Trustee will not produce any documents or information subject to such privileges, doctrines, or immunities. To the extent any such information is produced inadvertently, such production does not constitute waiver of any privilege, immunity, or protection. The Trustee reserves the right to seek the return or destruction of any such information.

8.    The Trustee objects to the definition of "Communication" to the extent that it calls for the identification or disclosure of communications other than written communications.

9.    The Trustee objects to the definition of "Document" insofar as it attempts to impose burdens or obligations on Defendants different from or in addition to those imposed by the Federal Rules, the Bankruptcy Rules, or the Local Rules.

10.    The Trustee reserves the right to: (a) revise, correct, supplement, amend, modify, or clarify their responses as additional information is discovered in accordance with the Applicable Rules; (b) provide additional responsive information; (c) modify its objections on grounds including, but not limited to, relevance, undue burden, and/or proportionality; (d) object to further discovery in these chapter 7 proceedings; (e) rely upon any information provided in these chapter 7 proceedings, including, without limitation, in any hearing, proceeding, or trial in this case; and (f) challenge the authenticity or admissibility of any information in any hearing, proceeding, or trial.

11.    The foregoing General Objections shall be considered as made, to the extent applicable, in response to each of the Requests as if the General Objections were fully set forth in each specific response and objection, even if such response also sets forth specific objections.

12.    The Trustee reserves the right to supplement and/or amend these responses or to supply additional documents at any time if further information becomes available to the Trustee in the course of its diligent inquiries, through discovery, or otherwise.

4

15694824v2

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** All Documents that relate to any discussions or requests to access any of the Debtors' Documents.

**RESPONSE**: The Trustee objects to this request as overbroad and unduly burdensome and seeking information which is not relevant to the Emergency Motion, Consilio, or the Securities Plaintiffs. The Trustee further objects to this Request to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, the common interest privilege, or any other recognized privilege, immunity, rule of privacy or confidentiality, restriction, or protection provided by any applicable laws.

**REQUEST NO. 2:** To the extent not already produced in response to Request No. 1 above, All Documents and Communications that Relate to Securities Plaintiffs' request for access to any of the Debtors' Documents and/or Database and Your response(s), including but not limited to communications with Securities Plaintiffs and Consilio.

**RESPONSE**: The Trustee objects to this Request to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, the common interest privilege, or any other recognized privilege, immunity, rule of privacy or confidentiality, restriction, or protection provided by any applicable laws.. Responsive, non-privileged documents are being produced.

**REQUEST NO. 3:** To the extent not already produced in response to Request No. 1 above, All Documents and Communications that relate to any Communications, discussions or requests by Securities Plaintiffs' to waive any privilege held by the Debtors and Your response.

**RESPONSE**: The Trustee further objects to this Request to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, the common interest privilege, or any other recognized privilege, immunity, rule of privacy or confidentiality, restriction, or protection provided by any applicable laws.. Responsive, non-privileged documents are being produced.

**REQUEST NO. 4:** To the extent not already produced in response to Request No. 1 above, All Communications between You and the Individual Securities Defendants related to or arising from Securities Plaintiffs seeking access to any of the Debtors' Documents and/or Database or the waiver of any privilege held by Debtors, their estates, or the Trustee.

**RESPONSE**: The Trustee further objects to this Request to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, the common interest privilege, or any other recognized privilege, immunity, rule of privacy or confidentiality, restriction, or protection provided by any applicable laws. Responsive non-privileged documents are being produced.

**REQUEST NO. 5:** All Documents that relate to the Consilio Database housing the Debtors' Documents.

5

15694824v2

**RESPONSE**:  The Trustee objects to this request as overbroad and unduly burdensome and seeking information which is not relevant to the Emergency Motion. The Trustee further objects to this Request to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, the common interest privilege, or any other recognized privilege, immunity, rule of privacy or confidentiality, restriction, or protection provided by any applicable laws.  Any responsive, non-privileged documents are already being produced in response to other Requests.

**REQUEST NO. 6:** All contracts or agreements between You and Consilio Relating to the Database, including without limitation Your or Securities Plaintiffs' access to the Database.

**RESPONSE**:  The Trustee has a contract with Consilio pursuant to which Orrick Herrington Sutcliff LLP is responsible for the payment of fees.  The contract contains a confidentiality clause restricting the Trustee's ability to produce it and, therefore, it is being withheld from production.  Additionally, the Trustee objects that the specific terms of the contract with Consilio are not relevant to the Emergency Motion.

**REQUEST NO. 7:** All Documents and Communications sufficient to show Securities Plaintiffs' access to the Database, including but not limited to communications with Securities Plaintiffs' and Consilio.

**RESPONSE**: The Trustee objects to this Request to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, the common interest privilege, or any other recognized privilege, immunity, rule of privacy or confidentiality, restriction, or protection provided by any applicable laws. Any responsive, non-privileged documents are already being produced in response to other Requests.

**REQUEST NO. 8:** All Documents and Communications that relate to the reason or basis for any decision You made to grant Securities Plaintiffs access to the Debtors' Documents and/or Database.

**RESPONSE**:  The Trustee objects to this Request to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, the common interest privilege, or any other recognized privilege, immunity, rule of privacy or confidentiality, restriction, or protection provided by any applicable laws..  Any responsive, non-privileged documents are already being produced in response to other Requests.

15694824v2