# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ADAM FRANCHI, Individually and on Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 3:19-cv-00962 (Consolidated) Judge Richardson/Frensley |
| SMILEDIRECTCLUB, INC., et al., ) ) | |
| Defendants. ) | |

## ORDER

## I.  INTRODUCTION

In these consolidated securities class actions, Plaintiffs allege that they purchased common stock of Defendant SmileDirectClub, Inc. ("SDC") during the relevant period around the time of SDC's Initial Public Offering ("IPO").  Docket No. 85 (Amended Complaint).  They allege that Defendants violated the Securities Act of 1933 and the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).  *Id.*  Defendants include SDC, individual SDC executives, and several financial institutions, termed "the Underwriter Defendants," who are alleged to have "acted as underwriters of the IPO and participated in the drafting and dissemination of the Registration Statement as well as the sale of more than $1.345 billion of SDC common stock to the Class."  *Id.* at 14.  Defendants have denied the substantive allegations and asserted affirmative defenses.  Docket Nos. 117, 118 (Answers).

The Parties jointly filed a "Request for a Discovery Conference" to discuss a discovery dispute, followed by a Motion to Ascertain Status related to that Request.  Docket Nos. 184, 186.

The Court granted the Motion and ordered the Parties to submit a Joint Discovery Dispute Statement and include certain information to aid in resolving the dispute. Docket No. 190. The Parties filed their Dispute Statement, along with several supporting documents. Docket Nos. 193, 194, 194-1 through 194-6, 195, 195-1 through 195-5. This matter is now before the Court for resolution of the Parties' discovery dispute as set forth in their "Request for a Discovery Conference" and their Dispute Statement. Docket Nos. 184, 193.

## II. BACKGROUND

This six-year-old case was already fraught with discovery disputes when SDC (and certain of its subsidiaries and affiliates) filed petitions for relief under Chapter 11 of the United States Code (11 U.S.C. § 101-1532, "the Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas. *See* Docket No. 157. That filing resulted in an automatic stay of the case as to SDC, but not as to the other Defendants, including David Katzman, Kyle Wailes, Steven Katzman, Jordan Katzman, Alexander Fenkell, Richard Schnall, and Susan Greenspon Rammelt ("the Individual Defendants") and Camelot Venture Group. Docket Nos. 158, 170.

In its bankruptcy case, SDC moved for a dismissal of its Chapter 11 petition and for a sale of its assets. *See* Docket Nos. 164, 164-1. The Bankruptcy Court denied these motions and held that SDC's Chapter 11 bankruptcy case would be converted to a Chapter 7 liquidation. Docket Nos. 166, 166-1. A Chapter 7 trustee ("the Trustee") was duly appointed, displacing SDC's board of directors and management. Docket No. 166, p. 2.

In this litigation, fact discovery with Defendants other than SDC resumed in the face of "certain logistical and other impediments" related to the bankruptcy matter. Docket No. 175, p. 1. Despite making some progress with discovery, the Parties reached an impasse regarding a

2

database of "certain SDC documents being hosted by Consilio, an e-discovery vendor which had previously been engaged by SDC to host e-discovery documents on behalf of [SDC]." Docket No. 184, p. 2.

Plaintiffs describe the sequence of events as follows:

> On August 14, 2024, counsel for the Trustee wrote to counsel for the Individual Defendants – but not to counsel for Defendants Alex Fenkell and Jordan Katzman, who did not receive this correspondence – informing them that the Trustee had provided Plaintiffs with access to SDC's document repositories. Counsel for the Trustee reminded counsel for the Individual Defendants (except counsel for Defendants Alex Fenkell and Jordan Katzman) that the Trustee had previously waived SDC's attorney-client privilege with respect to all pre-petition communications, and directed counsel for the Individual Defendants to discuss any "concerns about privilege, other than the SDC privilege that the trustee waived," with counsel for Plaintiffs.

*Id.*

In corresponding with the Individuals Defendants, Plaintiffs proposed that they "would be willing to identify the documents [they] intended to use from the SDC Trustee's production, and that if the Individual Defendants had any privilege concerns as to specific documents, they could attempt to claw them back pursuant to the terms of the Stipulated Protective Order. *Id.* at 3, *citing* Docket No. 131, § XI.

In the Parties' Request for a Discovery Conference, the Individual Defendants stated that "the Trustee did not have the authority to grant Plaintiffs access to a database of documents containing not only non-responsive, trade secret, and personal information, but also documents for which the Individual Defendants asserted claims of privilege." *Id.* at 4 (footnote omitted). Additionally, the Individual Defendants argued that because "the Trustee abandoned the database at issue and the SDC estate is not paying (and cannot pay) for its maintenance . . . there is a

compelling argument that these documents are not within the assets of the Bankruptcy Estate, and the Trustee has no right to give Plaintiffs access to these documents." *Id.*

As to Plaintiffs' proposal, the Individual Defendants contended that "Plaintiffs' suggestion that claims of privilege or other concerns could be resolved ***after*** the content of those documents were already known to them would defeat the purpose of the privilege." *Id.* (emphasis in original).

Based on this filing, the Court ordered the Parties to address the following topics:

- The extent to which Plaintiffs have or had access to the disputed documents up to this point.

- The current status of the database hosting by Consilio, with specific attention to the mechanics by which the Parties could access the data and whether the data is in any danger of becoming unavailable.

- Any information or arguments the Parties have as to the existence and viability of privileges or other protections over the disputed documents.

Docket No. 190, p. 1-2.

## II.  <u>LAW AND ANALYSIS</u>

### A.  <u>Discovery in Federal Court</u>

Discovery in federal court is governed by the Federal Rules of Civil Procedure, which provide that a party may request production of documents or other tangible items as long as the information sought is within the scope of discovery.  Fed. R. Civ. P. 34(a); *see also* Fed. R. Civ. P. 26(b)(1).  In general, the scope of discovery extends to nonprivileged information that is relevant to any party's claim or defense, regardless of whether the information sought is admissible, that is "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Rules were amended, effective December 1, 2015, in part to address the alleged costs and abuses attendant to discovery.

4

Under Rule 26, "[t]here is now a specific duty for the court and the parties to consider discovery in the light of its 'proportional[ity] to the needs of the case . . . .'" *Turner v. Chrysler Grp. LLC*, No. 3:14-1747, 2016 U.S. Dist. LEXIS 11133, at *2, (M.D. Tenn. Jan. 27, 2016), *quoting* Fed. R. Civ. P. 26(b)(1). The following factors are relevant to a consideration of whether the scope of discovery is proportional:

> (1) the importance of the issues at stake in the action,
> (2) the amount in controversy,
> (3) the parties' relative access to relevant information,
> (4) the parties' resources,
> (5) the importance of the discovery in resolving the issues, and
> (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (numbering added). "Nevertheless, the scope of discovery is, of course, within the broad discretion of the trial court." *United States v. Carell*, No. 3:09-0445, 2011 U.S. Dist. LEXIS 57435 at *5 (M.D. Tenn. May 26, 2011), *quoting Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal quotation marks omitted).

The Court has the authority under Rule 26(b)(2)(C) to limit the frequency or the extent of discovery otherwise allowed by the rules. The Sixth Circuit has observed that "the desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Surles v. Greyhound Lines, Inc.*, 474 F. 3d 288, 305 (6th Cir. 2007), *quoting Scales v. J. C. Bradford*, 925 F. 2d 901, 906 (6th Cir. 1996). As to the judge's role in discovery disputes, "[t]he revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery." *Surles*, 474 F. 3d at 305. That sentiment has continued through subsequent revisions to Rule 26 including the most recent ones.

The Court also possesses inherent authority to manage litigation.  As noted by the First Circuit, "[a]s lawyers became more adept in utilizing the liberalized rules . . . [t]he bench began to use its inherent powers to take a more active, hands on approach to the management of pending litigation."  *In re San Juan DuPont Plaza Hotel Fire Litigation*, 859 F. 2d 1007, 1011 (1st Cir. 1988).  "The judiciary is 'free, within reason to exercise this inherent judicial power in flexible pragmatic ways.'"  *Id*. at 1011, n.2, *quoting HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Ins.*, 847 F. 2d 908, 916 (1st Cir. 1988).

**B.  <u>The Parties' Discovery Dispute</u>**

Based on the Parties' Dispute Statement, it appears that the disputed documents are safe and could be accessed by Plaintiffs or the Individual Defendants at any time.  Docket No. 193, p. 4.  Plaintiffs have a copy of the database "on a physical media" that they received from the Trustee, but "have not accessed that physical media to date . . . ."  *Id.* at 4.  The database is "available to the Individual Defendants, who have paid Consilio for its services and access since March 2024."  *Id.* at 13.

Plaintiffs contend that "the Documents are books and records of SDC, ***not*** the Individual Defendants" and thus, "the Individual Defendants do not have any privilege claims to assert, and even if they once did, such claims have been waived."  *Id.* at 4-5 (emphasis in original).  Plaintiffs note that "in the almost nine months since they were informed of the Trustee's waiver, and despite their own access to the Documents, the Individual Defendants never ***identified or clawed back a single document subject to any privilege***."  *Id.* at 7 (emphasis in original).  Additionally, Plaintiffs argue that the Individual Defendants do not "suggest an alternative mechanism by which discovery should be completed."  *Id.* at 9.  Plaintiffs maintain that they should be allowed to "complete their review of the Documents," arguing that "the Stipulated

Protective Order (ECF 131) . . . provides more than adequate mechanisms to allow for the protection of confidential information, personally identifiable information, protected health information, trade secrets, as well as the claw back of privileged information if a privilege is ever substantiated with respect to a specific document." *Id.*

The Individual Defendants take the position that Plaintiffs obtained the database in a nefarious manner, "secretly obtaining a copy" and "surreptitiously ask[ing] the Trustee to waive privilege" in order to "seek an unjust tactical advantage in this case." Docket No. 193, p. 9-11. The Individual Defendants maintain that, in addition to documents that are privileged as to individuals, many of the documents are also covered by the joint representation privilege because SDC was their co-defendant for years. *Id.* at 10. They argue that while the Trustee had the power to waive SDC's attorney-client privilege, "she may not waive joint privileges, common-interest privileges, or privileges belonging to entities other than the debtors." *Id.* at 13. The Individual Defendants assert that privileges of non-parties are also at stake. *Id.* at 17.

The Parties agree on two essential points. First, that Plaintiffs were given access to (and, it appears, a physical copy of) a database of documents that formerly belonged to SDC, by a person purporting to have the authority to produce the documents in this litigation on SDC's behalf. While the Individual Defendants clearly believe that this access was obtained through improper means, the fact remains that the database was delivered to Plaintiffs.[1] The Parties further agree that some of the documents on the database have already been produced in discovery.[2]

---

[1] The Individual Defendants do not claim that the database was obtained through illegal means.
[2] 421,647 documents, according to the Individual Defendants. Docket No. 193, p. 18.

As to the Individual Defendants' contention that some of the documents are privileged, both Parties acknowledge that the Court cannot determine the privileged status of any particular document without seeing it. Plaintiffs note that "blanket" assertions of privilege are inadequate and the Individual Defendants suggest providing the Court with a sample of documents for in camera review. *Id.* at 8, 14.

Given these facts, the Court finds that Plaintiffs have established the likelihood that at least some of the documents in the database should be produced in discovery (indeed, the Individual Defendants concede that some have already been produced). Because Plaintiffs currently have the documents, the Court need not decide whether the Trustee had authority to produce them; it is irrelevant how Plaintiffs came to be in possession of the database.[3] The "full briefing and oral argument" requested by the Individual Defendants is unnecessary because the Parties agree as to the fundamental facts. No amount of information about the Trustee's authority can change the fact that Plaintiffs have the documents and the Individual Defendants assert that some of them are privileged. There is no way to resolve the situation without the Individual Defendants identifying the documents that they contend are protected. The party asserting the attorney-client privilege has the burden of demonstrating that the privilege applies. Fed. R. Civ. P. 26(b)(5); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983).

To the extent that Plaintiffs challenge the privileged status of any document claimed by the Individual Defendants, that question will have to be decided on a document-by-document basis as is required in the Sixth Circuit. *Auto-Owners Ins. Co. v. A.G.O. Contracting, Inc.*, No.

---

[3] Questions regarding the Trustee's authority or the propriety of her behavior are, in any event, more properly the purview of the Bankruptcy Court where she was appointed and where her duties are being carried out.

3:14-1353, 2015 WL 13845881, 2015 U.S. Dist. LEXIS 195361, at *4 (M.D. Tenn. Sept. 10, 2015) (While "[t]he party raising a privilege has the burden of establishing the existence of the privilege," privilege cannot be established as a "blanket" claim, but must be asserted, challenged, and examined on a document-by-document basis).

The Individual Defendants assert that they cannot undertake a privilege review of all the documents, because it would be unduly burdensome and expensive ("[t]he Individual Defendants estimate that this exercise would take 30,000 hours of attorney review time, and easily cost over $1.5 million." Docket No. 193, p. 18, *citing* Docket No. 195, p. 2-3. Plaintiffs have suggested an alternative, wherein they identify the documents they would like to use and give the Individual Defendants the opportunity to claw them back. This is reasonable, and shifts the expense of reviewing the documents to Plaintiffs, which seems appropriate under the circumstances. The Court understands that the Individual Defendants do not want Plaintiffs or their attorneys to view potentially privileged documents, but the Individual Defendants cannot both insist that some of the documents are privileged *and* refuse to idenitfy them and produce a privilege log. Additionally, the Parties' Protective Order provides for the treatment of confidential documents, including highly confidential documents designated Attorneys' Eyes Only. Docket No. 131.

The Court suggests another alternative. Because the Individual Defendants are paying Consilio and therefore have control of the database, they could run the Parties' search terms against the database. Since the search terms were, by definition, designed to elicit relevant and responsive documents, running them should allow the Individual Defendants to screen out irrelevant and nonresponsive documents, thereby decreasing the number that must be reviewed for privilege. Documents that hit on the search terms are presumptively relevant and responsive and should be

produced unless they are privileged or otherwise protected. *See* <u>The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery</u>, 8 Sedona Con. J. 189, 194-95, 201-02 (2008) ("Basic keyword searching techniques have been widely accepted by both courts and parties as sufficient to define the scope of their obligation to perform a search for responsive documents. . .").   To expedite the privilege review and decrease expense, the Individual Defendants could then run the names of their attorneys against the set of documents that hit on the search terms.  While imperfect, this process will provide an additional culling that should reduce the burden to a manageable and proportionate effort,

This strikes the Court as the best balance between the needs of the Parties, considering all of the proportionality factors set forth in Rule 26(b)(1).  Therefore, no later than May 6, 2025, the Individual Defendants must run the Parties' agreed search terms against the documents on the database and produce those that hit to Plaintiffs, apart from any that they contend are privileged, which must be logged appropriately.  Alternatively, the Individual Defendants may choose to accept Plaintiffs' proposal and review only the documents that Plaintiffs wish to use.[4]

**IT IS SO ORDERED.**

**Jeffery S. Frensley**
**United States Magistrate Judge**

---

[4] The Individual Defendants correctly note that generally, "parties can claw back only what they inadvertently produced."  Docket No. 193, p. 19, n.14.  Due to the unusual circumstances by which the disputed documents were produced to Plaintiffs, should the Individual Defendants choose to accept Plaintiffs' proposal, any document that the Individual Defendants contend is privileged will be deemed inadvertently produced for the purpose of the Parties' claw back procedure.  Docket No. 131, p. 14-15.