| | |
|---|---|
| ADAM FRANCHI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> SMILEDIRECTCLUB, INC., et al., <br><br> Defendants. | ) Civil Action No. 3:19-cv-00962 <br> ) **(Consolidated)** <br> ) <br> ) <u>CLASS ACTION</u> <br> ) <br> ) Judge Eli J. Richardson <br> ) Magistrate Judge Jeffery S. Frensley <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**INDIVIDUAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR REVIEW OF NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE**

Defendants David Katzman, Kyle Wailes, Steven Katzman, Susan Greenspon Rammelt, Richard Schnall, Alexander Fenkell, Jordan Katzman, and Camelot Venture Group ("Individual Defendants") ask that the Court review and vacate the Magistrate Judge's Order, [ECF #196, "Order")], permitting Plaintiffs to access the Individual Defendants' litigation database ("Database")

On July 31, 2024, Plaintiffs and their counterparts in the parallel state-court action[1] obtained access to the Individual Defendants' Database, containing millions of documents without the Individual Defendants' knowledge or consent. Plaintiffs got this access after months of secretly conferring with counsel for the Trustee overseeing SmileDirectClub's ("SDC") estate regarding a discovery dispute. Plaintiffs did not include the Individual Defendants in Plaintiffs' discussions with the Trustee's counsel despite the facts that (1) the Individual Defendants and SDC's joint

---

[1] *In re: SmileDirectClub, Inc. Secs. Litig.*, Case No. 19-1169-IV (Tenn. Ch. Ct.) (Consol.). The Individual Defendants will refer to the plaintiffs in this action as "State Plaintiffs."

counsel created the Database for their representation of their clients, (2) the Individual Defendants and SDC jointly produced documents and jointly asserted privileges, and (3) Plaintiffs knew that the Individual Defendants were the only parties paying for and maintaining the Database at the time they obtained access.

Plaintiffs obtained this access purportedly to resolve a "discovery dispute" with SDC. The Stipulated Protective Order in this case and the Local Rules both demand that the Plaintiffs confer with and resolve disputes with the parties that produced the discovery. To resolve any actual discovery dispute, then, Plaintiffs had to raise that dispute and meet and confer with *all* producing parties—*i.e.*, SDC *and* the Individual Defendants. But they did not. Their conduct and access to the Database accordingly violated this Court's rules and the Stipulated Protective Order. The proper remedy for this misconduct is preventing Plaintiffs from using any information in the Database, and them surrendering their access to it.

The Magistrate Judge ignored the underlying facts. His Order concluded that "it is irrelevant how Plaintiffs came to be in possession of the database." [ECF #196 at 8.] But that is the crucial gatekeeping question. If Plaintiffs improperly obtained access to the Database in violation of the Court's rules and the Stipulated Protective Order, then their access is *ipso facto* improper. What is more, this Court has the power to address and remedy violations of its local rules, the federal rules, and its own orders. *See* Fed. R. Civ. P. 16(f), 37(b)(2)(A). The Magistrate Judge's Order ignores this power.

This oversight renders the Magistrate Judge's Order clearly erroneous and contrary to law. Without the benefit of fulsome briefing, the Magistrate Judge erred in his recitation of the underlying facts (that the Individual Defendants agree that the Database belongs solely to SDC and the Trustee had unilateral authority to grant access to it) and the law (that Plaintiffs'

surreptitious conduct that flouted the Protective Order and Local Rules is irrelevant to whether Plaintiffs can access the Database).  This Court should correct the Magistrate Judge's errors.

Accordingly, the Individual Defendants respectfully request that the Court grant this Motion, vacate the Magistrate Judge's Order, and direct the Magistrate Judge to enter an Order preventing Plaintiffs from accessing the Database and using any information therein (or, in the alternative, order briefing on whether Plaintiffs' access to the Database was improper and violated this Court's rules and the Protective Order).

## I.      BACKGROUND

Multiple forums have now addressed the dispute over Plaintiffs' access to the Database. Despite voluminous prior briefing in those forums, this is the first time the Individual Defendants have been able to fully apprise *this* Court of the facts that led to Plaintiffs' backdoor access to the Database, and their efforts to hide their conduct.  Accordingly, the Individual Defendants apprise this Court of those facts here.

### A.      The Parties agreed to a specific process for resolving privilege disputes.

Plaintiffs filed this case on October 29, 2019 against SDC and the Individual Defendants, among others.  [*See* ECF #1.]  A month before, a similar case was filed in Tennessee state court. Plaintiffs and their state counterparts allege that SDC and the Individual Defendants—officers and directors of SDC, and an SDC investor—committed securities fraud in connection with SDC's Initial Public Offering.  SDC and the Individual Defendants retained the same counsel to jointly represent them:  Benesch, Friedlander, Coplan, & Aronoff LLP ("Benesch").

All parties negotiated a Stipulated Protective Order, which the Court entered on February 13, 2023.  [ECF #131.]  The Stipulated Protective Order establishes procedures for resolving disputes over confidentiality designations, including privilege designations.  [*Id.* at 1.]

To that end, the Stipulated Protective Order allows a Producing Party to designate produced materials as Confidential.  [*Id.* § III.1(b).]  Producing Party "means the Party or third party that produced the Protected Material." [*Id.* § II.7.]  And Confidential information includes "Documents and information containing confidential client information *or that is otherwise subject to attorney-client privilege; work product; or other privilege*."  [*Id.* § II.3 (emphasis added).]  In other words, "Confidential" includes any information that a Producing Party claims is privileged.

Further, the Stipulated Protective Order outlines a specific procedure if a Receiving Party—a party who received materials designated as Confidential—disagrees with a designation. A party challenging the propriety of a Confidential designation—including over any privileged material—must first "identify in writing each challenged document by Bates number and set forth the specific reasons it does not believe the confidentiality designation is appropriate." [*Id.* § VI.3.] Then, that party has 28 days from that writing to "move the Court for relief unless the Parties agree otherwise."  [*Id.* § VI.4.]

## B.     The Individual Defendants and SDC created the Database and produced documents together.

As part of their defense in this case, SDC retained Consilio LLC[2] to provide document-review and management services for it and the Individual Defendants.  [ECF #195-1 ("M. Silverstein S.D.N.Y. Decl.") ¶¶ 5–6.]  Consilio agreed to (1) provide those services for any documents to be reviewed and/or produced in this case; and (2) host and store documents at counsel's direction.  [*Id.*]  Benesch, as counsel for both SDC and the Individual Defendants, directed Consilio's services.

---

[2] SDC originally retained Legility, LLC to provide these services, but Consilio purchased Legility in December 2021.  For ease of understanding, the Individual Defendants refer to both as Consilio.

At Benesch's direction, Consilio created the Database.  [*Id.* ¶ 8.]  To do so, Benesch worked to identify and copy potentially relevant documents from SDC's and Camelot Venture Group's servers.  [Ex. A (M. Silverstein Bankr. Decl.) ¶ 5.][3]  Benesch identified individuals who worked for SDC and Camelot Venture Group whose files Consilio should copy.  [*Id.*]  Benesch never asked Consilio to copy every single file on SDC's or Camelot Venture Group's servers.  [*Id.*]  To identify potentially relevant documents within these copied files, the parties negotiated search terms.  Benesch asked Consilio to apply those terms and then reviewed for responsiveness and privilege the documents upon which the search terms "hit."  [*Id.*]  The Individual Defendants ultimately produced 120,916 documents.  [4/21/2025 M. Silverstein Decl. ¶ 4.]  The unproduced documents—consisting of documents that hit on search terms but were deemed not responsive; responsive documents that were withheld for privilege; and documents that did not hit on search terms and thus are presumptively non-responsive—remain in the Database.  [*See id.* ¶ 5.]

The Database contains approximately 2.2 million documents, 1.8 million of which are unproduced.  [ECF #195 ("3/14/2025 M. Silverstein Decl.") ¶ 2.]  These unproduced documents are comprised of documents collected from SDC's and Camelot Venture Group's servers that Benesch identified as potentially relevant to this case.  [M. Silverstein S.D.N.Y. Decl. ¶¶ 7–8.]  Indeed, the Database contains 140,923 documents from Camelot Venture Group's servers.  [4/21/2025 M. Silverstein Decl. ¶ 4.]

Out of the 1.8 million unproduced documents, attorneys jointly representing Individual Defendants and SDC reviewed 1 million.  [*Id.* ¶ 3.]  The remaining approximately 770,000 documents were never reviewed because either they did not hit on targeted search terms the Parties

---

[3] All exhibits cited are attached to the Declaration of Michael Silverstein in Support of the Individual Defendants' Motion for Review of Nondispositive Order of Magistrate Judge and Emergency Motion to Stay Enforcement of Nondispositive Order of Magistrate Judge.

designed to isolate potentially responsive materials or they were deemed to have a low likelihood of being responsive. [*Id.* ¶ 5.] Out of the approximate 1 million reviewed documents, roughly 737,000 documents were not reviewed for privilege because they were marked unresponsive to any of the Plaintiffs' discovery requests. [3/14/2025 M. Silverstein Decl. ¶ 4.]

Benesch used the Database and Consilio's services to respond to and produce discovery on behalf of SDC and the Individual Defendants. In fact, at all relevant times, Benesch responded to and produced discovery on behalf of its clients jointly. When Benesch served objections to Plaintiffs' Requests for Production, it did so on behalf of its clients, not SDC alone. [Ex. B (1/17/2023 Resps. and Objs. To Pls. First Reqs for Prod. of Docs.).] When Benesch agreed to produce documents, it stated that such production would be made on behalf of its clients, not SDC alone. [*See, e.g., id.* at 15 ("[T]he SDC Defendants will produce documents . . . .").] When Benesch noted objections to requests based on privilege, the objection was made by its clients, not SDC alone. [*See, e.g., id.* at 16 ("The SDC Defendants also object because this Request seeks information protected by the attorney-client privilege and the attorney work-product doctrine.").]

In line with these joint privilege objections and joint agreements to produce documents, Benesch produced documents to Plaintiffs and asserted privilege jointly on behalf of both SDC and the Individual Defendants. Benesch made plain to Plaintiffs the fact that the Individual Defendants and SDC produced documents jointly. [*See* Ex. C at 2 (3/20/23 A. Fiorella E-mail) ("With this production, the SDC Defendants have substantially completed their production in the state-court action."). Benesch also clearly stated that documents within these joint productions had been designated under the Stipulated Protective Order. [*Id.*] Further, Benesch withheld information from these productions that were protected by their clients' privileges. Accordingly, Benesch produced privilege logs jointly on behalf of all of its clients. [*See, e.g., id.* at 1 (3/21/2023

- 6 -

A. Fiorella E-mail attaching document titled "The SDC Defendants Privilege Log for Volume 15").]

### C. After SDC filed for bankruptcy, the Individual Defendants paid for Consilio's services, with Plaintiffs' knowledge.

On September 29, 2023, SDC filed for bankruptcy protection under Chapter 11. [*See* ECF #157.] Due to the bankruptcy, all claims against SDC were stayed pursuant to 11 U.S.C. § 362(a). [ECF #158.] This stay meant that as to SDC, there was "an automatic stay of judicial proceedings involving the debtor defendants while the bankruptcy proceedings are ongoing." [*Id.* at 1.]

SDC ceased making payments to Consilio for its services post-bankruptcy. [M. Silverstein S.D.N.Y. Decl. ¶ 10.] On December 12, 2023, Consilio informed Benesch that it could not continue to provide services for work completed after the start of the bankruptcy proceedings. [*Id.*] It then locked all attorneys out of the Database. [*Id.*]

At this time, the parties were in the middle of discovery, so Benesch promptly informed Plaintiffs' counsel that it no longer had access to the Database. [*See id.*] The parties agreed to pause discovery until Benesch regained access to the Database. [*Id.* ¶ 11.]

A month and a half after Benesch lost access to the Database, the bankruptcy court overseeing SDC's bankruptcy proceedings converted the proceedings to a Chapter 7 liquidation. *In re SmileDirectClub, Inc., et al.*, No. 23-90786 (Bankr. S.D. Tex. Jan. 26, 2024), ECF #617. The bankruptcy court appointed Allison Byman as the Trustee of SDC's estate that same day. *In re SmileDirectClub, Inc., et al.*, No. 23-90786 (Bankr. S.D. Tex. Jan. 26, 2024), minute entry. As a matter of law, Benesch ceased representing SDC on the date of conversion. But Benesch continued to represent the Individual Defendants, and now acted solely on their behalf.[4]

---

[4] After the bankruptcy, two of the Individual Defendants, Jordan Katzman and Alex Fenkell, engaged separate counsel.

In March 2024, the Individual Defendants began paying Consilio for its services. [M. Silverstein S.D.N.Y. Decl. ¶ 13.] Benesch regained access to the Database on March 18, 2024. [*Id.*] Again, Benesch promptly informed Plaintiffs' counsel that it now had access to the Database, and requested to confer regarding completing discovery. [*Id.*] With Benesch's Database access Database restored, the Parties scheduled the remaining depositions over the summer and into the fall of 2024.

**D.     Plaintiffs' counsel obtained access to the Database without the Individual Defendants' knowledge or permission.**

At around the same time that Benesch regained access to the Database and informed Plaintiffs of this access, Plaintiffs' counsel contacted the Trustee regarding alleged issues with prepetition discovery. [ECF #195-2 ("Trustee Decl.") ¶ 12; Ex. D (Pls' Em. Mot.) ¶ 21.] Plaintiffs' counsel raised concerns with documents that SDC and the Individual Defendants withheld or redacted for either privacy or privilege reasons. [ECF #194-5 (5/9/2024 C. Wood E-mail).] The Producing Party for all of the documents flagged by Plaintiffs were SDC *and* the Individual Defendants. But even though Plaintiffs' claims were active against the Individual Defendants and stayed as to SDC, Plaintiffs excluded the Individual Defendants' counsel from its "negotiations" over "resolving" the alleged "dispute."

Though the Trustee later conceded that she had not paid for nor even accessed the Database—indeed, she admits that she rejected the contract with Consilio as a matter of law—she decided to give Plaintiffs unfettered access to the Database to resolve the dispute. [Trustee Decl. ¶¶ 9, 12; Ex. E (Trustee Dep. Tr.) at 18:8-20, 20:25–21:2, 21:19–23:18.] She gave Plaintiffs this access supposedly to avoid "a costly discovery fight," even though this Court recognized that all judicial proceedings with SDC were stayed. [*See* Trustee Decl. ¶ 12; ECF #158.] The Trustee and

- 8 -

Plaintiffs agreed to this "resolution" in June 2024. [Ex. D (Pls' Em. Mot.) ¶ 23.] Again, the Individual Defendants were not privy to any of this.

Also in June 2024, the Individual Defendants made clear to Plaintiffs and the Trustee that they did not waive any privileges belonging to them. In connection with a deposition in June 2024, Plaintiffs forwarded the Individual Defendants' counsel an email from a lawyer purporting to represent the Trustee stating that the Trustee was waiving SDC's attorney/client privilege. [M. Silverstein S.D.N.Y. Decl., Ex. 4 (6/14/24 C. Wood Email).] At the deposition, Individual Defendants' counsel objected to questions that might encroach on privileges belonging to parties other than SDC, noting that the Trustee had no power to waive those privileges. [*Id.* ¶ 20.] After the deposition, Benesch informed the Trustee's counsel that the Database contained documents protected by privileges solely held by the Individual Defendants, as well as documents covered by a privilege that the Individual Defendants held jointly with SDC. [*Id.* ¶¶ 21–22.] Benesch stated that the Individual Defendants would not waive those privileges, and the Trustee's counsel twice confirmed that the Trustee did not intend to waive any privileges she was not entitled to waive. [*Id.* ¶¶ 21–23.]

Even though the Trustee knew that the Database contained documents over which the Individual Defendants held individual privileges and other documents over which they held joint privileges, the Trustee gave Plaintiffs access to at least a portion of the documents in the Database on July 31, 2024. [ECF #195-4 ("J. McKenna Decl.") ¶ 6.] On August 7, 2024, the Trustee gave Plaintiffs direct access to the Database itself, and every document therein. [*Id.* ¶ 7.]

One week later—and two months after the Trustee agreed to give Plaintiffs this access— the Trustee's counsel told Benesch that Plaintiffs' counsel had access to the Database. [M. Silverstein S.D.N.Y. Decl. ¶ 25.] The Trustee's counsel stated that it gave Plaintiffs access "to

resolve a number of outstanding discovery issues." [*Id.*, Ex. 9 (8/14/2024 A. Power E-Mail).] Up until that time, the Individual Defendants had no idea that Plaintiffs' counsel had been communicating with the Trustee regarding the Database or supposed discovery disputes— especially not any disputes pertaining to documents jointly produced by both SDC and the Individual Defendants.

Despite knowing that the Individual Defendants contested the propriety of their possession of the Database, the Plaintiffs received from the Trustee their own standalone version of the Database on October 25, 2024. [J. McKenna Decl. ¶ 8.]

The Individual Defendants have sought discovery into (a) the discussions between the Trustee and Plaintiffs' counsel and (b) whether Plaintiffs have reviewed any of the Individual Defendants' privileged material. But Plaintiffs' counsel and the Trustee both stonewalled. Several of the Individual Defendants subpoenaed the Trustee in the bankruptcy case. During her deposition, Plaintiffs' counsel asserted a supposed common-interest privilege to obstruct questions about communications between the Trustee and Plaintiffs' counsel. [*See, e.g.,* M. Silverstein S.D.N.Y. Decl., Ex. 1 ("Trustee Dep. Tr.") at 8:19-25.]

Many of the Individual Defendants also served subpoenas on Plaintiffs' counsel and counsel for the state plaintiffs, but they did not appear for their duly noticed depositions. *See, e.g., In re SmileDirectClub, Inc.*, No. 3:24-mc-17 (M.D. Tenn. Jan. 13, 2025), ECF #12-2 (Robbins Geller Tr.). They each filed motions to quash after the noticed depositions. *See, e.g., In re SmileDirectClub, Inc.*, No. 3:24-mc-17 (M.D. Tenn. Dec. 6, 2024), ECF #1 (Mot. to Quash). Proceedings on the motions to quash the State Plaintiffs' counsel's subpoenas are currently stayed.[5]

_____

[5] Plaintiffs' counsel also agreed to stay briefing and transfer their motion to the bankruptcy court. After the bankruptcy court stated that this Court should decide the issues related to this dispute, the Individual Defendants sent Plaintiffs' counsel a new joint notice that still stayed briefing but

**E.** **The Magistrate Judge ignored the Plaintiffs' failure to adhere to the Stipulated Protective Order or the Local Rules.**

Once the Individual Defendants learned that the Plaintiffs had access to the Database, the Individual Defendants told Plaintiffs they contested the propriety of the access. On August 28, 2024, the Individual Defendants and Plaintiffs conferred on this issue, but could not reach a resolution. [ECF #184 at 3.] Accordingly, on September 9, 2024, the Parties filed a joint request for a discovery conference in this Court. [*See* ECF #184.]

Instead of waiting for this Court's further instructions, on November 1, 2024—a week after receiving their own copy of the Database—Plaintiffs filed an Emergency Motion in the bankruptcy court overseeing SDC's liquidation, asking it to retroactively condone its conduct. [Ex. D (Pls.' Em. Mot.).] On December 20, 2024, the bankruptcy court declined to do so, stating that the Emergency Motion raised issues that this Court should decide. [ECF #194-1 (Bcy. Hr'g Tr.) at 34:24–38:12.]

On February 26, 2025, the Magistrate Judge asked the parties to submit a Joint Discovery Dispute Statement, limited to 20 pages. [ECF #190.] The Magistrate Judge asked the parties to address three topics: (1) "The extent to which Plaintiffs have or had access to the disputed documents up to this point;" (2) "The current status of the database hosting by Consilio, with specific attention to the mechanics by which the Parties could access the data and whether the data is in any danger of becoming unavailable;" and, (3) "Any information or arguments the Parties

---

referred the motion to this Court. But Plaintiffs' counsel did not respond to a draft joint notice over the winter holidays. *See In re SmileDirectClub, Inc.*, Dkt. 12 (Mem. in Supp. of Mot. for Reconsideration), at 7–8, No. 3:24-mc-17 (M.D. Tenn. Jan. 13, 2025). The Court then understandably granted Plaintiffs' counsel's motion, mistakenly believing it was unopposed. *See In re SmileDirectClub, Inc.*, No. 3:24-mc-17 (M.D. Tenn. Dec. 30, 2024), ECF #8 (Order). The Individual Defendants moved Magistrate Judge Newbern to reconsider and vacate her order based on Plaintiffs' refusal to honor the agreed-to stay. *See In re SmileDirectClub, Inc.*, , No. 3:24-mc-17 (M.D. Tenn. Jan. 13, 2025), ECF #11 (Mot. for Reconsideration). That motion is still pending.

- 11 -

have as to the existence and viability of privileges or other protections over the disputed documents." [*Id.* at 1–2.]

In the limited space permitted, the Individual Defendants asserted that Plaintiffs obtained access to the Database in violation of the Stipulated Protective Order and Local Rules. [ECF #193 at 9–10, 13–14.] The Individual Defendants specifically argued that the Trustee lacked authority to resolve, without the Individual Defendants, discovery disputes regarding documents that SDC and the Individual Defendants jointly produced. [*Id.* at 13–14.] The Individual Defendants also requested that if the Court did not order Plaintiffs to surrender access to the Database, that it should consider Plaintiffs' request only after full briefing. [*Id.* at 10.]

The Magistrate Judge declined the benefit of fulsome briefing, and instead ruled on April 7, 2025 that Plaintiffs could access the Database. [ECF #196.] The Magistrate Judge asserted that the Parties agreed on "two essential points." The first point of supposed agreement was "that Plaintiffs were given access to (and, it appears, a physical copy of) a database of documents that formerly belonged to SDC, by a person purporting to have the authority to produce the documents in this litigation on SDC's behalf." [*Id.* at 7.] The second point was that some documents in the Database have been produced. [*Id.*]

Based on these "essential points," the Magistrate Judge concluded that "Because Plaintiffs currently have the documents, the Court need not decide whether the Trustee had authority to produce them; it is irrelevant how Plaintiffs came to be in possession of the database." [*Id.* at 8.] The Magistrate Judge mistakenly understood the question here to be about the Trustee's authority and the propriety of her conduct under bankruptcy law. [*Id.* at 8 n.3.] However, as the bankruptcy court recognized and as the Individual Defendants noted in the joint statement, the relevant

question is not a question of bankruptcy law, but instead a question of whether Plaintiffs evaded this Court's orders and rules.

The Magistrate Judge then ruled that the Individual Defendants must either (1) run the previously agreed-to search terms across the Database and produce any non-privileged documents, or (2) allow the Plaintiffs to identify what documents from the Database they wish to use and then clawback any that the Individual Defendants believe are privileged. [*Id.* at 9–10.] As discussed in the contemporaneously filed Motion to Stay the Order, the former option would cost nearly a million dollars and is impossible to complete in the necessary time, and the latter is incompatible with the maintenance of privilege.

Further, and notably, Plaintiffs could a broad interpretation of the Order—an interpretation the Individual Defendants would disagree with—and assert that they do not need to disclose every single document they reviewed or learned information from, only the documents they intend to "use" by attaching to briefing or introducing at trial. Plaintiffs, then, could try to review the Individual Defendants' privileged documents pertaining to this case, benefit and use the information from those documents, but *never* disclose their review to the Individual Defendants.

## II.    LEGAL STANDARD

This Court can modify or set aside any part of a Magistrate Judge's order on a nondispositive matter that is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "The 'clearly erroneous' standard applies to the magistrate judge's factual findings and the 'contrary to law' standard applies to the legal conclusions." *Midwest Motor Supply Co. v. Nietsch*, No. 2:22-cv-4049, 2024 WL 4988338, *1 (S.D. Ohio July 2, 2024) (citation and quotation omitted). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535,

541 (6th Cir. 2007). "The Court's review under the 'contrary to law' standard requires the exercise of independent judgment in determining whether the magistrate judge's legal conclusions contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Roby v. Bloom Roofing Sys.*, 343 F.R.D. 487, 490 (E.D. Mich. 2023) (citation and quotation omitted).

## III.      ARGUMENT

The Magistrate Judge's Order is both clearly erroneous and contrary to law. The Magistrate Judge concluded that the Parties agreed on the fundamental facts and that it is irrelevant how Plaintiffs obtained access to the Database. Both conclusions are wrong. ***First***, the Parties do not agree on the fundamental facts. Namely, the Individual Defendants disagree that Plaintiffs obtained access to a Database belonging to SDC. The Database was created by and for SDC *and* the Individual Defendants. The Database also contains documents over which the Individual Defendants hold a privilege that the Trustee cannot waive. Further, the Individual Defendants were the only active litigants with an interest in the Database when Plaintiffs raised their "dispute." And, crucially, the Plaintiffs' "dispute" concerned documents that were produced and labeled privilege jointly by SDC and the Individual Defendants. These facts made the Individual Defendants a necessary party to any attempt at resolving a "discovery dispute" about documents in the Database.

***Second***, how Plaintiffs obtained access to the Database is not only relevant, it is paramount to resolving this dispute. The question for this Court is not whether the Trustee acted appropriately, but whether *Plaintiffs* violated an order of this Court and the Local Rules. That legal question is firmly within this Court's wheelhouse. And this Court can—and should—prevent Plaintiffs from utilizing any documents or information within the Database due to their violation of the Stipulated

- 14 -

Protective Order and Local Rules. It was, therefore, contrary to law for the Court to conclude it does not matter how Plaintiffs obtained access to the Individual Defendants' Database.

### A. The Magistrate Judge's findings of fact are clearly erroneous because the Parties disagree on the fundamental facts.

When a magistrate judge makes a mistake with the facts, his factual findings are clearly erroneous. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 990 F. Supp. 2d 675, 685–87 (N.D. Tex. 2013). And here, the Magistrate Judge made a mistake. The Magistrate Judge anchored his Order on the errant belief that the Parties agreed on the fundamental facts. [ECF #196 at 8.] They do not.

The Magistrate Judge believed that the Parties agreed that the Database "formerly belonged to SDC." [*Id.* at 7.] But the Parties disagree. Plaintiffs believe that the Database belonged solely to SDC, but the Individual Defendants have repeatedly stated that the Database originally belonged to them *jointly*. [*Compare* ECF #193 at 4–5 *with* M. Silverstein S.D.N.Y. Decl. ¶ 5.] Benesch created the Database for its joint representation of SDC *and* the Individual Defendants. SDC initially paid for it because of its indemnification obligations to the Individual Defendants (which indemnification ceased upon the conversion of SDC's bankruptcy to a Chapter 7 liquidation). Further, the Plaintiffs believe that everything in the Database "are books and records of SDC" and that they do not belong to the Individual Defendants. [ECF #193 at 4–5.] The Individual Defendants disagree on both points. For one thing, the Database indisputably contains documents from SDC's *and* Camelot Venture Group's servers. [*Id.* at 9–11.] For another thing, the Individual Defendants have underscored repeatedly that after (a) the Trustee rejected the contract with Consilio governing the Database and SDC stopped paying to maintain the Database and (b) the Individual Defendants began paying to maintain the Database, they were the only party to whom the Database could properly "belong." [*Id.*] Put differently, the Database is theirs and theirs only.

Further, the Parties disagree on whether the Database was provided by someone with authority to provide it.  [ECF #196 at 7.]  There are two disagreements here.  ***First***, while Plaintiffs assert that the Trustee produced the documents, the Individual Defendants disagree.  [*See* ECF #184 at 3.]  The Trustee did not "produce" documents.  She was in no position to "produce" documents, as this action was stayed against SDC at the time she purportedly "produced" documents on its behalf.  Under the Bankruptcy Code, she had no authority to act in this case.  Nonetheless, she gave Plaintiffs unfettered access to 1.8 million unproduced documents.  And her decision to do so bore no hallmarks of a litigation document production.  She did not have the documents Bates labeled to reflect that the Trustee was the producing party.  She did not provide a cover letter identifying the "production" or which requests it supposedly satisfied.  She did not provide notice to other litigants that she was "producing" documents.  This was not a document production.  It was a giveaway.

Further, Plaintiffs believe the Trustee had the unilateral authority to provide access to the Database.  For a variety of reasons, the Individual Defendants disagree. [*Compare* ECF #193 at 4–5 *with id.* at 11–12.]  One reason is that the Trustee had ceded any ownership interest she had in the Database when she rejected the contract governing it, and when the Individual Defendants took on the payment obligation for the Database.  Another is that the Database contains documents that were never SDC documents in the first place.  Another yet is that the Database contains documents over which Individual Defendants hold a privilege that the Trustee lacks the legal power to waive.

What's more, the Parties actually disagree on even more fundamental facts that the Magistrate Judge did not even consider.  For instance, the Parties disagree on whether the underlying documents were produced by SDC alone or SDC and the Individual Defendants.  [*Compare id.* at 7 n. 11 ("SDC produced privilege logs that spanned 77,000 entries . . . .") *with id.*

at 11 ("The privilege logs and document productions made by joint counsel from the common pool of documents were made on behalf of SDC and the Individual Defendants.").]  This fundamental fact is central to this dispute.  If only SDC produced the documents, then Plaintiffs would have had no obligation to include the Individual Defendants in resolving their discovery dispute.  But because the Producing Party for the prepetition discovery was both SDC and the Individual Defendants, Plaintiffs' failure to include the Individual Defendants' counsel invalidates their supposed "resolution" to the discovery dispute.  The Magistrate Judge ignored this disagreement.

Further, the Parties disagree on whether the Trustee was even an appropriate party to resolve their dispute with.  As this Court recognized, all proceedings against SDC were stayed at the time Plaintiffs raised their dispute.  But instead of raising their dispute with the only active litigants who were a Producing Party—*i.e.*, the Individual Defendants—Plaintiffs cut out those active litigants and instead chose to confer with a stayed party.  Again, the Magistrate Judge ignored these facts.

For all these reasons, the Order is clearly erroneous.

**B.     The Order is contrary to law because Plaintiffs' violations of the Stipulated Protective Order and Local Rules warrant them surrendering access to the Database.**

The Magistrate Judge also committed legal errors by concluding "it is irrelevant how Plaintiffs came to be in possession of the database"  and nothing "can change the fact that Plaintiffs have the documents."  [ECF #196 at 8.]  But how Plaintiffs obtained access to the Database is relevant and the Court can change whether Plaintiffs have the documents by ordering they surrender them.

How Plaintiffs obtained access matters because they obtained access by violating the Local Rules and the Stipulated Protective Order.  The Stipulated Protective Order lays out a specific procedure for challenging a Producing Party's privilege designations.  This procedure demands

that a disputing party raise their challenges to the Producing Party in writing, and then ask for relief from the Court within 28 days. [ECF #131 § VI.] Here, Plaintiffs challenged the privilege designations of documents produced/designated by both SDC and the Individual Defendants. So both SDC and the Individual Defendants are the Producing Party under the Stipulated Protective Order. According to the Stipulated Protective Order, Plaintiffs had to address their challenges to both SDC *and* the Individual Defendants. But they did not do that. Instead, they cut out the Individual Defendants and chose to work through a stayed party. There are no circumstances under the Stipulated Protective Order that permit what Plaintiffs did here—cutting out the Producing Party when challenging the Producing Party's designations.

Further, SDC's status in this case makes Plaintiffs' choice to ignore the Protective Order even more questionable. At the time Plaintiffs challenged SDC and the Individual Defendants' privilege assertions, the claims against SDC were stayed. Plaintiffs could not actively pursue claims against SDC. But, they could and have been actively pursuing claims against the Individual Defendants. Given the stay, Plaintiffs could not force SDC back into court to defend privilege assertions. But, Plaintiffs *could* litigate privilege assertions with the Individual Defendants. Given that the Individual Defendants were the only Producing Party that Plaintiffs could actively litigate against, going through a stayed party to resolve a discovery dispute makes no sense and is improper.

Plaintiffs' conduct did not flout only the Protective Order. It also flouted the Local Rules. Local Rule 37.01(a) requires that counsel for the *parties* must confer regarding discovery issues. And here, the Individual Defendants were one of those parties. They were one of the parties who had jointly produced the documents in question. They were one of the parties that had jointly asserted the privileges in question and served the relevant Privilege Logs. And at the time Plaintiffs

endeavored to resolve a "discovery dispute," they were the only parties against whom Plaintiffs had live claims.

Because Plaintiffs' conduct to obtain access to the Database violated both a Court order and the Local Rules, it is far from "irrelevant." Failing to comply with a local rule's meet-and-confer requirements can justify sanctions, and so can violating a Stipulated Protective Order. *See DiOrio v. TMI Hosp.*, No.: 4:15CV1710, 2017 WL 2455798, at *3 (N.D. Ohio May 19, 2017) (sanctions for local rule violation); *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 54–55 (2d Cir. 2018) (affirming sanctions for protective order violation); Fed. R. Civ. P. 16(f), 37(b)(2). And courts have leeway to "tailor the discipline imposed according to the culpability of the discovery abuse." *Culver v. CCL Label, Inc.*, No. 03-2722, 2010 WL 11519892, at *3 (W.D. Tenn. Jan. 14, 2010), *order clarified on reconsideration*, No. 03-2722, 2010 WL 11519954 (W.D. Tenn. Jan. 20, 2010) (quotation omitted). Thus, the Magistrate Judge was also incorrect in suggesting he was powerless to "change the fact that Plaintiffs have the documents." [ECF #196 at 8.]

These are clear legal errors. It appears the Magistrate Judge may have committed these errors because he wrongly believed he was being asked to consider the propriety of actions by the Trustee rather than Plaintiffs. [ECF #196 at 8.] (stating that questions regarding the Trustee's actions are "more properly the purview of the Bankruptcy Court."). But this dispute is about Plaintiffs and their conduct in this action. That is why the Bankruptcy Court told the parties to bring this dispute to this Court when Plaintiffs filed a motion about the Database in the bankruptcy court. [ECF #194-1 (Bcy Hr'g Tr.) at 35:11-12.] (Bankruptcy Court stating that Plaintiffs asked it to "decid[e] Tennessee litigation stuff."); *see* [*id.* at 37:14-15] ("I just think there's not a bankruptcy issue for me to really decide."). Regardless of the reasons why the Magistrate Judge committed legal errors, the point is that he erred. The Court should thus review and vacate the Order.

**CONCLUSION**

The Court should not forget the nature of what Plaintiffs seek here. They ask for retroactive permission to access their opponents' entire litigation database, including documents that are irrelevant and/or privileged. This extraordinary relief should not be given lightly, especially when Plaintiffs obtained this access in violation of the Stipulated Protective Order and Local Rules. The Magistrate Judge's Order fails to grasp the gravity of the facts here or that the core facts are indeed disputed, and accordingly concludes there are no factual disputes for it to resolve and no power of law it can use to rein Plaintiffs in. But factual disputes abound, and this Court has ample authority to keep Plaintiffs from accessing the Database.

Accordingly, the Individual Defendants respectfully request that the Court grant their Motion, vacate the Magistrate Judge's Order, and direct the Magistrate Judge to enter an Order preventing Plaintiffs from accessing the Database and using any information therein (or, in the alternative, order briefing on whether Plaintiffs' access to the Database was improper and violated this Court's rules and the Protective Order).

Respectfully submitted,

*/s/ Michael B. Silverstein*
Steven A. Riley (BPR 6258)
Elizabeth O. Gonser (BPR 26329)
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee  37203
Telephone:  (615) 320-3700
Facsimile:  (615) 320-3737
sriley@rjfirm.com
egonser@rjfirm.com

David A. Rammelt (*pro hac vice*)
Laura Seferian (*pro hac vice*)
Benesch, Friedlander, Coplan & Aronoff, LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois  60606
drammelt@beneschlaw.com
lseferian@beneschlaw.com

Michael D. Meuti (*pro hac vice*)
Andrew G. Fiorella (*pro hac vice*)
Allyson R. Cady (*pro hac vice*)
Benesch, Friedlander, Coplan & Aronoff, LLP
127 Public Square, Suite 4900
Cleveland, Ohio  44114
Telephone: (216) 363-4500
Facsimile: (216) 363-4588
mmeuti@beneschlaw.com
afiorella@beneschlaw.com
acady@beneschlaw.com

Michael B. Silverstein (*pro hac vice*)
Benesch, Friedlander, Coplan & Aronoff, LLP
41 South High Street, Suite 2600
Columbus, Ohio  43215
Telephone: (614) 223-9300
Facsimile: (614) 223-9330
msilverstein@beneschlaw.com

*Attorneys for Defendants David Katzman, Steven Katzman, Susan Greenspon Rammelt, Kyle Wailes, Richard Schnall, and Camelot Venture Group*

- 21 -

*/s/ Michael J. Kahn (with permission)*
Steven A. Riley (BPR 6258)
Elizabeth O. Gonser (BPR 26329)
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee  37203
Telephone:  (615) 320-3700
Facsimile:  (615) 320-3737
sriley@rjfirm.com
egonser@rjfirm.com

Brian M. Lutz (*pro hac vice*)
Michael J. Kahn (*pro hac vice*)
Gibson, Dunn & Crutcher LLP
One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
blutz@gibsondunn.com
mjkahn@gibsondunn.com
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendants Alexander Fenkell and
Jordan Katzman*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on April 21, 2025 a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Michael B. Silverstein*
Michael B. Silverstein (*pro hac vice*)
Benesch, Friedlander, Coplan & Aronoff LLP
41 South High Street, Suite 2600
Columbus, Ohio 43215
Telephone: 614/223.9300
614/223-9300 (fax)
msilverstein@beneschlaw.com

# Mailing Information for a Case 3:19-cv-00962 Franchi v. SmileDirectClub, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Allyson R. Cady**
  acady@beneschlaw.com

- **Wade B. Cowan**
  wcowan@dhhrplc.com

- **James M. Ficaro**
  jmf@weiserlawfirm.com

- **Andrew J. Finn**
  finna@sullcrom.com

- **Andrew Fiorella**
  afiorella@beneschlaw.com

- **Elizabeth O. Gonser**
  egonser@rjfirm.com,dgibby@rjfirm.com,bmoore@rjfirm.com

- **Michael C. Griffin**
  michael.griffin@skadden.com

- **John S. Hicks**
  jhicks@bakerdonelson.com,trutledge@bakerdonelson.com,lkroll@bakerdonelson.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Stephen Johnson**
  SJohnson@rgrdlaw.com

- **Lewis S. Kahn**
  Lewis.Kahn@ksfcounsel.com

- **Michael J. Kahn**
  MJKahn@gibsondunn.com

- **Jay B. Kasner**
  jay.kasner@skadden.com

- **Ashley M Kelly**
  akelly@rgrdlaw.com

- **Phillip Kim**
  pkim@rosenlegal.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com

- **Ting H. Liu**
  tliu@rgrdlaw.com

- **Brian M. Lutz**
  blutz@gibsondunn.com

- **MICHAEL J MORSE**
  PKNASHLAW@AOL.COM

- **Richard A. Maniskas**
  rmaniskas@sbtklaw.com

- **Michael D. Meuti**
  mmeuti@beneschlaw.com,Docket2@Beneschlaw.com,emanzo@beneschlaw.com,rkrueger@beneschlaw.com

- **E. Powell Miller**
  epm@millerlawpc.com

- **Scott D. Musoff**
  scott.musoff@skadden.com

- **Danielle S. Myers**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Sharon L. Nelles**
  nelless@sullcrom.com

- **Christopher Nelson**
  cln@weiserlawfirm.com

- **Melinda A. Nicholson**
  Melinda.Nicholson@ksfcounsel.com

- **Michael J. Palestina**
  Michael.Palestina@ksfcounsel.com

- **Ira M. Press**
  ipress@kmllp.com

- **David Albert Rammelt**
  drammelt@beneschlaw.com,docket@beneschlaw.com,emanzo@beneschlaw.com

- **Steven Allen Riley**
  sriley@rjfirm.com,dgibby@rjfirm.com

- **Darren J. Robbins**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,ScottS@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com

- **Laura Seferian**
  lseferian@beneschlaw.com

- **Michael B. Silverstein**
  msilverstein@beneschlaw.com,Docket2@beneschlaw.com

- **John Tate Spragens**
  john@spragenslaw.com,spragenslaw@ecf.courtdrive.com,dave@spragenslaw.com

- **Jeffrey J. Stein**
  jstein@rgrdlaw.com,JStein@ecf.courtdrive.com,CSavedra@rgrdlaw.com

- **Tara L. Swafford**
  tara@swaffordlawfirm.com

- **Christopher E. Thorsen**
  cthorsen@bakerdonelson.com,pmontei@bakerdonelson.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,CWood@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)