# EXHIBIT E

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

In re:                          ) Chapter 7
                                )
SMILEDIRECTCLUB, INC.,          ) Case No. 23-90786 (CML)
et al.                          )
                                ) (Jointly Administered)
            Debtors.            )
--------------------------------------------------------------

ORAL DEPOSITION OF

ALLISON D. BYMAN

DECEMBER 6, 2024

(REPORTED REMOTELY)

--------------------------------------------------------------

ORAL DEPOSITION OF ALLISON D. BYMAN, via Zoom, produced as a witness at the instance of the Individual Securities Defendants David Katzman, Steven Katzman, Kyle Wailes, Richard Schnall, Susan Greenspon Rammelt, and Camelot Venture Group and duly sworn, was taken in the above-styled and numbered cause on Friday, December 6, 2024, from 9:03 a.m. to 9:48 a.m., before Kari Behan, CCR, CSR, a Texas certified machine shorthand reporter, with the witness participating remotely, pursuant to the Federal Rule of Bankruptcy 7030.

Job No. CS7061530

A P P E A R A N C E S

FOR THE INDIVIDUAL SECURITIES DEFENDANTS DAVID KATZMAN, STEVEN KATZMAN, KYLE WAILES, RICHARD SCHNALL, SUSAN GREENSPON RAMMELT, AND CAMELOT VENTURE GROUP (REMOTELY):

DAVID A. RAMMELT, ESQ.
- and -
ANDREW G. FIORELLA, ESQ.
BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
(312) 212-4949
drammelt@beneschlaw.com
afiorella@beneschlaw.com

FOR ROBBINS GELLER RUDMAN & DOWD AND THE FEDERAL SECURITIES PLAINTIFFS (REMOTELY):

CHRISTOPHER WOOD, ESQ.
ROBBINS GELLER RUDMAN & DOWD LLP
200 31st Avenue North
Nashville, Tennessee 37203
(615) 244-2203
cwood@rgrdlaw.com

FOR SCOTT + SCOTT, ATTORNEYS AT LAW, LLP AND THE STATE SECURITIES PLAINTIFFS (REMOTELY):
MANDEEP S. MINHAS, ESQ.
SCOTT + SCOTT, ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Ave, 24th Floor
New York, New York 10169
(212) 223-6444
mminhas@scott-scott.com

FOR THE STATE SECURITIES PLAINTIFFS (REMOTELY):

JERRY MARTIN, ESQ.
BARRETT JOHNSTON MARTIN & GARRISON
200 31st Avenue North
Nashville, Tennessee 37203
(615) 982-8001
jmartin@barrettjohnston.com

APPEARANCES (CONTINUED):
FOR CLUSTER HOLDCO (REMOTELY):
DALE CATHELL, ESQ.
- and -
ALEXA AIN, ESQ.
DLA PIPER LLP (US)
Harbor East 650
S. Exeter Street, Suite 1100
Baltimore, Maryland 21202
dale.cathell@dlapiper.com
alexa.ain@dlapiper.com

FOR THE SECURITIES PLAINTIFFS (REMOTELY):

MICHAEL S. ETKIN, ESQ.
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2312
metkin@lowenstein.com

FOR ALEXANDER FENKELL AND JORDAN KATZMAN (REMOTELY):

GILLIAN B. MILLER, ESQ.
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
Suite 2600
(415) 393-4623
gmiller@gibsondunn.com

FOR THE BANKRUPTCY TRUSTEE, ALLISON D. BYMAN (REMOTELY):

AARON J. POWER, ESQ.
PORTER HEDGES
100 Main Street
36th Floor
Houston, Texas 77002
(713) 226-6631
apower@porterhedges.com

- - -
I N D E X
- - -

WITNESS: ALLISON D. BYMAN                 PAGE

BY MR. RAMMELT............................. 5
BY MR. CATHELL............................. 38
REPORTER'S CERTIFICATION.................... 40

* * *

E X H I B I T S

EXHIBITS          DESCRIPTION          PAGE
Exhibit 1   Notice of Deposition          6
Exhibit 2   Email, Subject: RE: SDC,          16
            TRUSTEE-000118 through 124

PROCEEDINGS:

(Friday, December 6, 2024, at 9:03 a.m.)

ALLISON D. BYMAN, after having been first duly sworn by the above-mentioned Certified Court Reporter, was examined and testified as follows:

EXAMINATION

BY MR. RAMMELT:

Q. Good morning, Ms. Byman. My name is David Rammelt, and I'm with the Benesch law firm, and I represent some of the individual defendants in the underlying Securities Litigation. That's Steve Katzman, David Katzman, Susan Rammelt, Rich Schnall, Kyle Wailes, and Camelot Venture Group.

How would you prefer that I address you today?

A. You can call me Allison.

Q. All right. I'll call you -- I'll call you Allison or Ms. Byman. I didn't know if Madam Trustee or --

A. No, not at all.

Q. Okay. Good.

I think I know the answer to this question: You've had your deposition taken before, right?

A. Yes.

2 (Pages 2 - 5)

Case 3:19-cv-00962   Document 201-5   Filed 04/21/25   Page 3 of 29 PageID #: 5285

Q. And you understand the ground rules, right?

A. Yes.

Q. And is there any reason that you can't tell the truth today?

A. No.

Q. I'm going to put up on the screen what we're going to mark as Deposition Exhibit No. 1. It's the notice of deposition for your deposition today.

We sent it to Aaron yesterday, I believe, once we firmed up the date for your deposition, and I should say, while Andrew is putting that up on the screen so you can see it, thank you very much for agreeing to sit today. I know this was last minute, and we really appreciate your efforts, as well as Aaron's efforts.

(Exhibit 1 was marked for identification.)

BY MR. RAMMELT:

Q. All right. You should be able to see in front of you what we marked as Deposition Exhibit Number 1.

Have you seen this document before? And we'll scroll through it for you, if you would like us to.

A. I saw it come through email yesterday.

Q. Okay.

MR. RAMMELT: Andrew, if you could move to

the second-to-last page where there are some document requests listed.

MR. FIORELLA: (Complied.)

BY MR. RAMMELT:

Q. Ms. Byman, if I could direct your attention to that.

Did you have an opportunity to look at these document requests prior to your deposition today?

A. I did not look at the ones that were sent yesterday, so this was different.

I looked at -- I think you guys sent some over the weekend from the initial time. I looked at those.

Q. Yeah.

A. If there's nothing different, then I should have responded to everything.

Q. Perfect. Yeah. And you're exactly right.

This is identical to a prior notice that we sent with a different date. And then when we set this date, we sent this out yesterday just so that that was correct, but they're the exact same document requests.

My question is: Did you personally do anything to search for any of the documents that are requested in this?

A. Yes. I searched my email for responsive

documents.

THE WITNESS: I'm going to mute my phone really quickly. I'm sorry. It keeps ringing.

Okay. Sorry about that.

MR. RAMMELT: Sure. Absolutely.

BY MR. RAMMELT:

Q. In looking through the emails that Aaron very kindly gathered for us and produced last night, I do not see any emails where you are the author communicating with either Consilio or the Securities Plaintiffs regarding the matters that we are discussing today.

Is that -- is that true?

A. Yes, that's correct.

Q. When did the Securities Plaintiffs approach you or first communicate with you about accessing documents that were held by the debtors or any of the individual defendants, if you recall?

MR. WOOD: I'm just going to interject.

I think, David, it's possible that some of your questions could implicate a common interest privilege, and so I'm going to ask that the witness not reveal any communications that would be subject to a common interest privilege between the Trustee and counsel for the Securities Plaintiffs regarding the debtors' books and records.

MR. POWER: And, David, State Plaintiffs share that objection as well.

BY MR. RAMMELT:

Q. And it -- I'll repeat the question to you, Ms. Byman.

MR. RAMMELT: But for the purposes of the deposition, I think the ground rule has been, you know, one objection is sufficient for objections from everyone else.

BY MR. RAMMELT:

Q. So, Ms. Byman, I'll repeat my question.

When did the Securities Plaintiffs first approach you about the debtors or any of the individual defendants' documents?

A. I did not pay attention, really, to dates. I know it was in the spring. It was -- I -- but I don't have an exact date.

I got appointed in January. I spoke with them, of course, in connection with retention for the State's D&O claims, and then it was sometime after those discussions.

Q. I want to follow up on that question, but before I get there, is -- Mr. Wood or anyone associated with his firm or any of the plaintiffs' law firms in the underlying Securities Litigation, do any of those

3 (Pages 6 - 9)

Case 3:19-cv-00962   Document 201-5   Filed 04/21/25   Page 4 of 29 PageID #: 5286

represent you, the Trustee?

A. No.

Q. Do you have a written common interest agreement with Mr. Wood or any of the lawyers that work for his firm or any of the other law firms that represent the plaintiffs in the underlying Securities Litigation?

A. I don't personally. I don't know if my lawyers have something in writing, but I don't have anything in writing other than our emails.

Q. To your knowledge, is there any written agreement of any kind between the Trustee and Mr. Wood, any member of his firm, or any of the law firms that represent the plaintiffs in the underlying Securities Litigation?

MR. WOOD: Objection to form.

MR. POWER: Objection.

THE WITNESS: I don't think so.

BY MR. RAMMELT:

Q. You mentioned that you, I think -- I want to make sure I understand. But I think you mentioned that shortly after you were appointed as the Trustee in connection with this bankruptcy that you had some discussions, either with Mr. Wood or others from his firm, regarding retention to analyze, I think you said, potential D&O claims; is that correct?

A. Yes.

Q. You did not retain them, correct?

A. That's correct.

Q. Did they approach you, or did you reach out to them about possibly retaining them to pursue those claims?

A. They --

MR. POWER: Objection; form.

MR. WOOD: Join.

THE WITNESS: They reached out to me.

BY MR. RAMMELT:

Q. And what did they say to you?

MR. WOOD: I'm going to object again based on the common interest privilege.

I believe that Ms. Byman talked about this topic a little bit in the -- in the prior hearing in front of the Court, but I would ask her not to reveal any substantive communications, subject to a common interest privilege.

MR. MINHAS: State Plaintiffs --

MR. POWER: I also think we're -- sorry. Go ahead, Mandeep.

MR. MINHAS: State Plaintiffs share that objection as well.

David, can we have a stipulation that an

objection by federal counsel preserves an objection for State counsel as well, just so we don't slow this down?

MR. RAMMELT: I thought I did that at the onset of the dep, Mandeep, but that's perfectly fine.

MR. MINHAS: Thank you.

MR. POWER: But, David, I also think we're going well outside of the topics related to the emergency motion.

MR. RAMMELT: Duly noted.

This has to go -- if -- if somebody is going to instruct Ms. Byman not to answer a question on the basis of some kind of privilege, I believe I am entitled to explore what that privilege is, particularly since she's made clear that she did not retain them, and they are not her counsel.

BY MR. RAMMELT:

Q. So I'll repeat that question, Ms. Byman.

Why did they reach out to you, and what did they say?

A. We discussed Mr. Wood's firm, Mr. Etkin's firm potentially representing the estate in connection with the D&O claims the estate would have against former directors and officers.

Q. And based on those discussions, did you decide to retain Mr. Wood or his firm or any of the plaintiffs'

firms?

A. I did not retain them.

Q. Why?

A. I went in another direction and attempted to retain Orrick.

(Reporter clarification.)

MR. RAMMELT: Kari, that's -- you may know -- it's O-R-R-I-C-K.

BY MR. RAMMELT:

Q. Is there anyone from the Orrick firm on this deposition today?

A. I don't think so.

Q. If there is anybody, will you just let me know?

MR. RAMMELT: I don't think we went through the usual, kind of, who's appeared on the record, but I just want to know if there's anyone from Orrick on this call?

With that silence, I will assume there were none.

BY MR. RAMMELT:

Q. When the Securities Plaintiffs approached you -- strike that.

How did they know -- if you have any understanding, how did Mr. Wood know that you were looking for, soliciting, or considering hiring outside

4 (Pages 10 - 13)

Page 14

counsel to investigate and pursue claims against any of the former officers and directors?

MR. WOOD: Objection to form.

THE WITNESS: I -- I don't know how they knew.

I'm -- it was -- it was an obvious assumption that the Chapter 7 Trustee would be pursuing those causes of action, and then the -- there are certain causes of action that they are asserting that are similar.

BY MR. RAMMELT:

Q. And when they approached you, did they ask you at that time to access any of the documents owned or that belonged to the debtors or the individual defendants in the Securities Litigation?

MR. WOOD: I'm going to object and, again, just ask the witness not to reveal any communications that would be subject to a common interest privilege.

MR. RAMMELT: Chris, you can't instruct her not to answer, so she can answer everything unless somebody instructs her not to answer, and then we'll take that up, as necessary.

But you can lodge an objection. I don't think the one that you're lodging is actually recognized under the federal rules of procedure.

Page 15

You have no privilege with her, so if you're going to instruct her, you instruct her; otherwise, we don't need to go through this.

MR. WOOD: Okay. David, I'm going to make my objections as I see fit. I asked her not to reveal any privileged information. She is the witness; she can do what she wants, but I'm going to lodge my objection.

BY MR. RAMMELT:

Q. Let me try it this way, Ms. Byman: Are you going to follow an instruction by Mr. Wood to refuse to answer any of my questions today?

MR. WOOD: David, it wasn't an instruction.

I was asking the witness not to reveal any communications that would be subject to a common interest privilege.

I think you've already established that I don't represent her, so she's going to do what she's going to do, but I'm going to make my -- make my objections known.

MR. RAMMELT: Kari, could you repeat my question, please?

(Requested material was read back.)

MR. WOOD: Objection to form.

THE WITNESS: No. As everyone has said, he is not my lawyer. Mr. Power is representing me in the

Page 16

deposition.

BY MR. RAMMELT:

Q. Thank you.

If we could, I'm going to ask Andrew to put up on the screen what we are going to mark as Deposition Exhibit Number 2.

MR. RAMMELT: And for everybody on this Zoom call, it's part of the production that Aaron kindly made to us last night. It is the document that's been Bates-labeled TRUSTEE-118 through 124.

And, Andrew, if you could scoot forward to the second-to-last page. It would be Page 6 of this email string.

MR. FIORELLA: (Complied.)

(Exhibit 2 was marked for identification.)

BY MR. RAMMELT:

Q. Ms. Byman, I'm putting this up on the screen for you because it might refresh your recollection or give us a sense of dates.

The email at the very bottom dated March 28th, 2024, from one of your counsel at Porter Hedges to one of the lawyers for the Securities Plaintiffs in this case at the Lowenstein firm is dated March 28th, 2024. That's the earliest date we see of a written communication.

Page 17

With that in mind, my question is, to you: Do you recall, was it close to March 28th, or how long before March 28th did the Securities Plaintiffs begin having discussions with you or your lawyers about the documents?

A. I think it was probably right around March 28th. I don't know of anything really before these emails came through about the redactions.

Q. At this time -- so we'll just use this date, March 28th, 2024 -- were you aware where the debtors and any of the individual defendants were located?

A. I may have misheard your question. Are you asking me if I knew where the people were or the --

Q. No, the documents. Did you know where the documents were?

A. Generally, I knew about Consilio before this, just in the initial talks with the debtor representatives, with Susan, the general counsel. We went through some of the litigation analysis early on, and so I knew there was a database -- an eDiscovery service that was housing all the documents.

Q. Have you ever worked with or used Consilio as a vendor in any of your cases?

A. I have not.

Q. Have you, yourself, ever had any direct

5 (Pages 14 - 17)

Case 3:19-cv-00962   Document 201-5   Filed 04/21/25   Page 6 of 29 PageID #: 5288

communications with any representative of Consilio?

A. Not -- I have had a -- some emails related to prepetition billing from Consilio, so completely unrelated to any of this. So I mean, I have talked to a person via email about bills, that, like, they weren't going to get paid, but other than that, I have not spoken directly to Consilio.

Q. And that leads me to my next question: Have you, as the Trustee, or anyone on behalf of the estate paid any money to Consilio for housing, maintaining, accessing, copying, or in any way using any of the documents that belonged to the debtors or the individual defendants?

MR. WOOD: Objection to form.

THE WITNESS: I have not. The agreement with Consilio is actually that Orrick will pay for the service, and I do not believe that Orrick has made any payments to them yet based on the fact that there aren't final invoices -- final invoices haven't been presented to Orrick.

BY MR. RAMMELT:

Q. So the record is clear: To date, neither the estate nor the Trustee have paid Consilio anything for accessing, maintaining, housing the Consilio database; is that correct?

A. That's correct.

Q. And you mentioned Orrick. I know there was a previous hearing and some briefing having to do with Orrick.

I guess my question is: Did you, as the Trustee, retain Orrick to represent it or the estate in any litigation?

A. I attempted to retain Orrick previously, and that was not approved by the Court. I have another application to retain Orrick that will be filed shortly.

Q. Do you have an engagement agreement with Orrick?

A. No.

Q. Do you have a retention or any kind of written agreement with Orrick concerning the services or the scope of the services that it's going to provide to you?

A. I'm -- I'm waiting to receive it. I do not have one currently.

Q. Have you paid Orrick anything?

A. No.

Q. Do you have any funds available to you as the Trustee to pay Orrick to represent you?

A. I have some funds, not nearly enough to pay Orrick to represent me. The anticipated representation will be a contingent-fee basis.

Q. But you have not retained them yet, correct?

A. No.

Q. Just to be clear: You have not retained them, correct?

A. No.

Q. Sorry. So I'm not correct?

A. Okay. I have not retained them.

Q. Perfect.

A. Sorry.

Q. No worries. That's why I repeated it. Sometimes I feel like if I say question, right --

A. Right.

Q. -- I know that it's not clear. So I'm sorry. I'll repeat it if I'm not clear, and that's my mistake.

I think you made the record clear; you have not retained them.

Why are you in discussions to retain them?

MR. POWER: So that I'm going to object to on privilege basis. If she can answer it, that's fine, but otherwise, I'm going to instruct her not to answer.

BY MR. RAMMELT:

Q. Can you answer the question, Ms. Byman?

A. I'm seeking to retain them to represent the estate in connection with the D&O claims.

Q. Have you ever looked at a single document in

the Consilio database?

A. No.

Q. To your knowledge, has Orrick looked at any documents in the Consilio database?

A. Yes.

Q. Do you know what documents they've looked at?

A. No.

MR. WOOD: I'm going to object. I believe that calls for information covered by the common interest privilege.

BY MR. RAMMELT:

Q. Do you know if Orrick has maintained an index or log or any kind of record of the documents that they have looked at in the Consilio database?

MR. POWER: Objection; form.

MR. WOOD: Objection; form.

THE WITNESS: I don't know.

BY MR. RAMMELT:

Q. How many documents in total are in the Consilio database?

A. I do not know.

Q. Are you aware that the Consilio database houses over 2.2 million documents? Were you aware of that?

MR. POWER: Objection; form.

THE WITNESS: No, I don't know.

6 (Pages 18 - 21)

Case 3:19-cv-00962 Document 201-5 Filed 04/21/25 Page 7 of 29 PageID #: 5289

BY MR. RAMMELT:

Q. Of the 2.2 million documents that are in the Consilio database, do you know how many were previously produced by the debtors or any of the individual defendants in any litigation?

MR. POWER: Objection; form.

THE WITNESS: I do not know.

BY MR. RAMMELT:

Q. Of the 2.2 million documents, do you have any idea how many of those have never been reviewed by the debtors, the individual defendants, or their lawyers?

MR. POWER: Objection; form.

THE WITNESS: I do not know.

BY MR. RAMMELT:

Q. Of the 2.2 million documents in the Consilio database, do you know how many belong to the debtors as opposed to documents there that belong to the individual defendants or other third parties?

MR. POWER: Objection; form.

THE WITNESS: I -- I would assume that they are all debtor records, but I do not know.

BY MR. RAMMELT:

Q. Has anybody, to your knowledge, made any attempt whatsoever to review the 2.2 million documents in the Consilio database to determine which of those

documents are owned by the debtors as opposed to which are owned by the individual defendants or any other party?

MR. POWER: Objection; form.

THE WITNESS: I've never been made aware that there was a claim that the documents in Consilio were not all the debtors' documents.

BY MR. RAMMELT:

Q. Do you know how many of the 2.2 million documents in that database are privileged?

A. No.

MR. POWER: Objection; form.

BY MR. RAMMELT:

Q. Do you know how many of the documents in the Consilio database contain personal information about SmileDirectClub patients that are protected by HIPAA?

MR. POWER: Objection; form.

THE WITNESS: No.

BY MR. RAMMELT:

Q. Do you know whether Orrick or anybody else has accessed documents in the 2.2 million that are in the database that are confidential patient records protected by HIPAA?

MR. POWER: Objection; form.

THE WITNESS: I do not know.

BY MR. RAMMELT:

Q. Do you know how many of the 2.2 million documents in the Consilio database contain personal confidential information about either the individual defendants or others, third parties?

MR. POWER: Objection; form.

THE WITNESS: I do not know.

BY MR. RAMMELT:

Q. Do you know whether the Consilio database has any coding or comments from the individual lawyers in this case concerning privilege or any other descriptions or categorizations?

A. I don't know.

Q. And I think you answered this. But you don't know whether the Consilio database housed documents that are owned by the individual defendants or the third parties; is that correct?

MR. WOOD: Form.

THE WITNESS: Again, I -- the way I answered before is true. I've never been made aware that the database contained anything other than debtor records.

BY MR. RAMMELT:

Q. And the point is, you don't know one way or the other what's in there, right.

A. ...at Consilio.

THE COURT REPORTER: I'm sorry. The beginning of your answer glitched out.

THE WITNESS: I have never looked at Consilio.

THE COURT REPORTER: Thank you.

BY MR. RAMMELT:

Q. Have you ever participated in conference calls with any of the lawyers representing the plaintiffs in the Securities Litigation?

A. Yes.

Q. How many?

A. Less than five.

Q. And during those calls, did you discuss the documents that were in the Consilio database and whether any of those were privileged or whether any belonged to the individual defendants?

MR. WOOD: Objection to the extent it calls for information covered by the common interest privilege.

THE WITNESS: I don't believe we ever discussed there being other -- other entity or other people's records in Consilio.

BY MR. RAMMELT:

Q. Other than reviewing all of the documents in

7 (Pages 22 - 25)

Case 3:19-cv-00962    Document 201-5    Filed 04/21/25    Page 8 of 29 PageID #: 5290

Page 26

the 2.2 million in the database, how would we determine, in your opinion, which documents belong to the debtors as opposed to which documents belong to the individual defendants or others?

MR. POWER: Objection; form.

THE WITNESS: I don't -- I never used Consilio. I don't know how you would operate within Consilio. My position would be that all of the documents within Consilio are the debtors' records. It's the debtor --

BY MR. RAMMELT:

Q. Why?

A. It's the debtors' account and the debtors -- and now the estate will be responsible for paying for it.

Q. How do you know that it's the debtors' account?

A. That's what was represented to me by Susan Remmelt when I took over the case.

Q. Other than the Orrick law firm and Mr. Wood and any of the lawyers for the Securities Plaintiffs, have any other parties requested access to the Consilio database?

A. I don't -- no, I don't think so.

Q. Have you worked with Orrick prior to this case?

A. No.

Page 27

Q. In speaking with Aaron yesterday, he had mentioned -- and, Aaron, I'm not taking words out of your mouth; I'm just generalizing -- but basically that you're obviously very busy, and that you kind of turned it over to Orrick and delegated to Orrick, working with, having discussions with, negotiating with the plaintiffs' securities lawyers about accessing documents in the Consilio database.

Is that a -- is that a fair statement?

A. Yes.

Q. So if I want to figure out what was discussed and what limitations were placed on access or anything like that, I'd have to talk to the Orrick lawyers, right?

MR. WOOD: Objection to form.

THE WITNESS: Yes.

BY MR. REMMELT:

Q. Has Orrick been provided with a copy of the confidentiality protective order that's been entered in the underlying Securities Litigation?

MR. POWER: Objection; form.

THE WITNESS: I don't know if they've been provided with it, but I believe they have reviewed it.

BY MR. RAMMELT:

Q. Why do you think that?

Page 28

A. It was referenced in one of the emails that we produced to you.

Q. You agreed to waive privileges that are owned by or belong to the debtors, correct?

A. Correct.

Q. And that's part of your role as a Trustee in these circumstances; you are able to waive privilege on behalf of the debtors, correct?

A. Correct.

Q. You did not agree to waive privilege, however, for any privileges held by the individual defendants or anybody else, correct?

MR. WOOD: Objection to form.

THE WITNESS: Correct. I can only waive privilege for the debtors.

BY MR. RAMMELT:

Q. Several months ago Aaron and I were able to talk about this, and he very kindly sent me an email where he said, "We've waived privilege on behalf of the debtor. We have not waived privilege on behalf of any other party or the individual defendants."

Did he consult with you before sending that?

A. Yes.

Q. And that reflects your position, correct?

Page 29

A. Yes, that's correct.

Q. When the plaintiffs approached you, they specifically said that they wanted to look at documents that had been designated as privileged and redacted, correct?

MR. WOOD: Objection to form.

MR. POWER: Objection to form.

MR. WOOD: And common interest privilege.

THE WITNESS: Yes.

BY MR. RAMMELT:

Q. So right out of the gate, as you understand it, Plaintiffs knew that they were trying to access the database containing documents that had been previously designated as privileged in the litigation, correct?

MR. WOOD: Objection to form.

THE WITNESS: That is correct.

BY MR. RAMMELT:

Q. Do you know whether in the Consilio database the privileged documents are segregated in some way?

A. I do not know.

Q. Have you placed any limitations or restrictions of any kind on the documents that the Securities Plaintiffs can access in the Consilio database?

A. I -- I think they are only allowed to access the portion of the debtors' account at Consilio that

8 (Pages 26 - 29)

Veritext Legal Solutions
800-567-8658                                                                973-410-4098

relates to this litigation.

I probably don't have the terminology of that down correctly, but there are several different segregated databases. Their only access is to the database related to this litigation, and that is the restriction I'm aware of.

And then the waiver was subject, obviously, to clawback after review.

Q. So is it your understanding that, within the Consilio database, documents are segregated or grouped, whatever word you would want to use, by litigation; so there might be a group of documents, for example, in an arbitration between SmileDirectClub and Align.

There might be documents that were produced or at issue in the Ciccio class action litigation; is that your understanding?

A. Yes.

Q. And as far as you know, the only documents that you gave permission to the Securities Plaintiffs to access would be those documents that were produced in the Securities Litigation; is that correct?

MR. WOOD: Objection to form. That's not what she said.

THE WITNESS: My understanding is that they were given access to a limited -- to the -- the database

or segregated portion of Consilio related to this litigation.

BY MR. RAMMELT:

Q. When you say "this litigation," you're referring to this -- the underlying Securities Litigation as opposed to the bankruptcy?

A. Yes.

Q. Just so that the record is clear, you authorized Plaintiffs only to access those documents that were in that portion of the Consilio database that housed the documents that were produced in the Securities Litigation, correct?

MR. WOOD: Objection to form. Misstates testimony.

THE WITNESS: Yeah, I don't know what was produced, so I -- I just believe that they were -- that the access is related to the documents that are related to this -- your Securities Litigation.

I don't know if it was limited. I don't think it was limited to what was only produced. It's whatever that database is.

BY MR. RAMMELT:

Q. Okay. Thank you.

MR. RAMMELT: And, Chris, just so the record is clear, my understanding is today we've been

objecting to form, as permitted, but we haven't added, you know, extra coaching and colloquy and, you know, your thoughts to steer the witness's responses.

So haven't we been doing that, or are we going to start -- when we object now, started adding?

MR. WOOD: Yeah, I think, David, if you're going to intentionally try to mislead the witness and intentionally try to get misleading testimony when she has answered differently before, then I'm going to call that out because I think that's completely unprofessional and inappropriate.

MR. RAMMELT: Putting aside your opinion of what my questions are or not, are you going to start limiting your objections to the form of the question, as you intend -- as permitted here -- as permitted under the federal rules?

And be careful here because, you know what, we think that 60 to 70 percent of the questions that you and your colleagues have been asking in the underlying Securities Litigation have been misleading or made false representations of fact.

I don't think that we have done what you are doing now. I think we abided by the rules.

So my question to you is: Are you going to abide by the rules and keep your objections to form; yes

or no?

MR. WOOD: Okay. Well, you're not deposing me, so I'm not here to answer your questions, David. But if you're going to try to mislead the witness, I'm going to make my opinion about that known.

MR. POWER: Okay. Could we get back to the deposition here to be respectful of Ms. Byman's time?

MR. RAMMELT: Yep.

BY MR. RAMMELT:

Q. Do you know, Ms. Byman, whether Orrick or anyone on your behalf made any attempt to limit or restrict the types of access that the Securities Plaintiffs had to the Consilio database?

MR. POWER: Objection; form.

THE WITNESS: Other than what I've already explained, that my understanding is they were only granted access to a certain portion of all of the debtors' records that are in Consilio, I do not know of any additional specific restrictions.

BY MR. RAMMELT:

Q. Okay. And what is the basis of your understanding?

A. From the emails that I reviewed and was copied on and produced regarding what the waiver of the privilege would be, again I don't know the specifics or

9 (Pages 30 - 33)

technicalities of Consilio, so I don't know -- I wouldn't have been involved in setting restrictions or discussing them.

Q. Did you or anyone on your behalf insist that the Securities Plaintiffs or their lawyers paid to access the Consilio database in order to look at the documents in there?

A. I'm going to ask you to clarify the question. Are you asking did I insist that they pay for access?

Q. Did you -- do you know whether they did pay for access, is the first question?

A. I do not think they have paid anything yet. I believe there is an agreement to share costs, and that agreement is with Orrick. It's not an agreement with me.

Q. When the plaintiffs' lawyers in the securities case first approached you or the lawyers that represent you, did you tell them that the estate had not paid to access any of the documents in the database that Consilio was owed money?

A. I don't remember if we discussed that. I think it was common knowledge to most creditors at that point that there was no money in the estate to pay for anything, other than the bare minimum of professional fees.

Q. Did you know that -- that I and other lawyers with my firm and other firms that are representing the individual defendants in various litigation, that we were denied access to the documents that were in the Consilio database until the past-due invoices were paid? Were you aware of that?

A. I know that I was notified that people, other than estate counsel, were trying to get access to Consilio, and that I attempted to restrict anyone from accessing it.

I did not know that you were restricted based on one payment. I just wanted to shut down access to preserve the debtors' records and understanding who was using them.

Q. So I will represent to you that the individual defendants have paid Consilio several hundred thousand dollars in order to access that database, which had been shut down, both in order to access it and use the documents.

Were you aware of that?

A. No, I -- I don't know why they would let you use the debtors' database without asking me to approve it.

Q. As far as you know, the only person that has paid Consilio for anyone to access the database is the

individual defendants in the Securities Litigation; is that correct?

MR. POWER: Objection; form.

THE WITNESS: I did not know that until you just said it.

BY MR. RAMMELT:

Q. Okay. Fair enough.

Do you know -- I'm guessing I know the answer to this question, but I'm going to ask it anyway.

Do you know how many times the Securities Plaintiffs have accessed the Consilio database?

MR. WOOD: Objection; form.

THE WITNESS: I do not.

BY MR. RAMMELT:

Q. Do you know what documents they've looked at?

A. I do not.

Q. Do you know whether they've copied any documents?

A. I do not know.

Q. Did you or anyone, to your knowledge, place any restrictions or limitations on what the Securities Plaintiffs could copy from the Consilio database?

MR. WOOD: Objection; form.

THE WITNESS: I did not have any instructions on that.

MR. RAMMELT: If we could take -- Aaron, I think I'm done, or if I'm not, I've got handful of questions. Can we take a quick, five-minute break for me to, kind of, caucus, go back through my notes and what you produced?

But I think I'm probably going to be done. We can come back on, and then if anybody else has questions...

MR. POWER: Yeah, I appreciate that. Just so you know, when we were talking about how long this was going to go, I have a hard stop at 10:00, in about 15 minutes. If we could be done by then, I'd greatly appreciate it, if possible.

MR. RAMMELT: Fair enough.

Let's -- Kari, could we go off the record for just two minutes?

THE COURT REPORTER: Yes.

MR. RAMMELT: Thank you.

(Brief recess taken.)

MR. RAMMELT: Ms. Byman, thank you. I'll pass the witness. At this time, I don't have anything further.

MR. WOOD: We don't have anything.

MR. CATHELL: Hey, Aaron, it's Dale Cathell on behalf of Cluster Holdco, the DIP agent. I just

Veritext Legal Solutions
800-567-8658                                                                 973-410-4098

**Page 38**

Q. Good morning, Ms. Byman, good to see you again.

Real quick, with respect to the Consilio database, who actually controls the database currently?

A. It --

MR. POWER: Objection; form.

THE WITNESS: It should be me. That's the understanding with respect to Orrick reaching out. The client is me, but the services will be paid by Orrick.

BY MR. CATHELL:

Q. And my understanding, Ms. Byman, based on your testimony, is that you believe the documents being maintained in the database are the debtors' records?

A. Yes.

Q. And, Ms. Byman, do you agree with me that the debtors' records are part of the DIP agent's collateral in connection with the DIP loan?

MR. POWER: Objection; form.

THE WITNESS: Yes.

BY MR. CATHELL:

Q. And before you provided access to the Securities Plaintiffs, did you obtain the consent of the

**Page 39**

DIP agent with respect to providing access to the Securities Plaintiffs of these documents?

A. No.

MR. CATHELL: I don't have any more questions.

MR. RAMMELT: Nothing for me.

Again, Ms. Byman, thank you very much. Thanks for doing it at the last minute on a Friday. I appreciate it. We know you're busy.

Aaron, thanks for cooperating to get this scheduled. We really appreciate it everyone have a nice weekend. We're done.

(Deposition concluded at 9:48 a.m.)

**Page 40**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In re: ) Chapter 7
)
SMILEDIRECTCLUB, INC., ) Case No. 23-90786 (CML)
et al. )
) (Jointly Administered)
Debtors. )
-------------------------------------------------------

REPORTER'S CERTIFICATION
DEPOSITION OF
ALLISON D. BYMAN
FRIDAY, DECEMBER 6, 2024
(REPORTED REMOTELY)

I, Kari J. Behan, CCR, CSR, and in and for the State of Texas, do hereby certify that the facts as stated by me in the caption hereto are true;

That there came before me the aforementioned named person, who was by me duly sworn to testify the truth concerning the matters in controversy in this cause;

And that the examination was reduced to writing by computer transcription under my supervision; that the deposition is a true record of the testimony given by the witness.

I further certify that I am neither attorney or counsel for, nor related to or employed by, any of the parties to the action in which this deposition is taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties hereto, or financially interested in the action.

Given under my hand and seal of office on this 6th day of December, 2024.

*Kari J. Behan*

KARI E_____, _____
Texas CSR NO. 8564;
Expiration Date: 7-31-2026
VERITEXT LEGAL SOLUTIONS
Firm Registration No. 571
Telephone (800) 336-4000

11 (Pages 38 - 40)

Case 3:19-cv-00962    Document 201-5    Filed 04/21/25    Page 12 of 29 PageID #: 5294

**&**

**&** 2:6,10,12,23 3:15

**0**

**000118** 4:12
**07068** 3:11

**1**

**1** 4:11 6:7,16 6:19
**100** 3:20
**10169** 2:19
**10:00** 37:11
**1100** 3:5
**118** 16:10
**124** 4:12 16:10
**15** 37:12
**16** 4:12
**1600** 2:6

**2**

**2** 4:12 16:6,15
**2.2** 21:23 22:2 22:9,15,24 23:9,21 24:2 26:1
**200** 2:12,23
**2024** 1:8,17 5:2 16:21,24 17:10 40:8,19
**20807** 40:22
**212** 2:19
**212-4949** 2:7

**21202** 3:6
**223-6444** 2:19
**226-6631** 3:22
**23-90786** 1:4 40:4
**230** 2:18
**244-2203** 2:13
**24th** 2:18
**2600** 3:16
**28th** 16:21,24 17:2,3,7,10

**3**

**312** 2:7
**31st** 2:12,23
**336-4000** 40:25
**36th** 3:21
**37203** 2:13,24
**38** 4:6
**393-4623** 3:16

**4**

**40** 4:7
**415** 3:16

**5**

**5** 4:5
**571** 40:25
**597-2312** 3:11

**6**

**6** 1:8,17 4:11 5:2 16:12 40:8
**60** 32:18
**60606** 2:7

**615** 2:13,24
**650** 3:5
**6th** 40:19

**7**

**7** 1:3 14:7 40:3
**7-31-2026** 40:24
**70** 32:18
**7030** 1:20
**71** 2:6
**713** 3:22
**77002** 3:21

**8**

**800** 40:25
**8564** 40:23

**9**

**973** 3:11
**982-8001** 2:24
**9:03** 1:17 5:2
**9:48** 1:17 39:13

**a**

**a.m.** 1:17,17 5:2 39:13
**aaron** 3:19 6:9 8:7 16:8 27:1,2 28:17 37:1,24 39:10
**aaron's** 6:14
**abide** 32:25
**abided** 32:23
**able** 6:18 28:7 28:17

**above** 1:16 5:4
**absolutely** 8:5
**access** 14:13 26:21 27:12 29:12,23,24 30:4,20,25 31:9,17 33:12 33:17 34:6,9 34:11,19 35:4 35:8,12,17,18 35:25 38:24 39:1
**accessed** 23:21 36:11
**accessing** 8:15 18:11,24 27:7 35:10
**account** 26:13 26:16 29:25
**action** 14:8,9 30:15 40:17,18
**actually** 14:24 18:16 38:7
**added** 32:1
**adding** 32:5
**additional** 33:19
**address** 5:15
**administered** 1:5 40:5
**afiorella** 2:8
**aforemention...** 40:11

Case 3:19-cv-00962 Document 201-5 Filed 04/21/25 Page 13 of 29 PageID #: 5295

**agent** 37:25 39:1

**agent's** 38:19

**ago** 28:17

**agree** 28:10 38:18

**agreed** 28:3

**agreeing** 6:13

**agreement** 10:3 10:11 18:15 19:11,15 34:13 34:14,14

**ahead** 11:22

**ain** 3:4

**al** 1:4 40:4

**alexa** 3:4

**alexa.ain** 3:7

**alexander** 3:13

**align** 30:13

**allison** 1:7,11 3:18 4:3 5:3,17 5:19 40:7

**allowed** 29:24

**analysis** 17:19

**analyze** 10:24

**andrew** 2:5 6:11,25 16:4 16:11

**answer** 5:23 12:11 14:20,20 14:21 15:11 20:19,20,22 25:3 33:3 36:9

**answered** 24:14,20 32:9

**anticipated** 19:24

**anybody** 13:13 22:23 23:20 28:12 37:7

**anyway** 36:9

**apower** 3:22

**appearances** 3:1

**appeared** 13:15

**application** 19:10

**appointed** 9:18 10:21

**appreciate** 6:14 37:9,13 39:9 39:11

**approach** 8:14 9:13 11:4

**approached** 13:21 14:12 29:2 34:17

**approve** 35:22

**approved** 19:9

**arbitration** 30:13

**aronoff** 2:6

**aside** 32:12

**asked** 15:5

**asking** 15:13 17:13 32:19 34:9 35:22

**asserting** 14:9

**associated** 9:23

**assume** 13:18 22:20

**assumption** 14:7

**attempt** 22:24 33:11

**attempted** 13:4 19:8 35:9

**attention** 7:5 9:15

**attorney** 40:16 40:18

**attorneys** 2:15 2:17

**author** 8:9

**authorized** 31:9

**available** 19:21

**ave** 2:18

**avenue** 2:12,23

**aware** 17:10 21:22,23 23:5 24:20 30:6 35:6,20

**b**

**b** 3:14 4:9

**back** 15:22 33:6 37:4,7

**baltimore** 3:6

**bankruptcy** 1:1 1:20 3:18

10:22 31:6 40:1

**bare** 34:24

**barrett** 2:23

**barrettjohnst...** 2:25

**based** 11:13 12:24 18:18 35:12 38:14

**basically** 27:3

**basis** 12:12 19:25 20:19 33:21

**bates** 16:10

**beginning** 25:3

**behalf** 18:9 28:8,19,20 33:11 34:4 37:25

**behan** 1:18 40:9,23

**believe** 6:9 11:15 12:12 18:17 21:8 25:21 27:23 31:16 34:13 38:15

**belong** 22:16 22:17 26:2,3 28:4

**belonged** 14:14 18:12 25:16

**benesch** 2:6 5:10

Case 3:19-cv-00962 Document 201-5 Filed 04/21/25 Page 14 of 29 PageID #: 5296

beneschlaw.c... 2:8,8
billing 18:3
bills 18:5
bit 11:16
books 8:25
bottom 16:20
break 37:3
brief 37:19
briefing 19:3
building 2:18
busy 27:4 39:9
byman 1:7,11 3:18 4:3 5:3,9 5:19 7:5 9:5,11 11:15 12:11,17 15:9 16:17 20:22 33:10 37:20 38:5,14 38:18 39:7 40:7
byman's 33:7

**c**

c 2:1 13:8
call 5:17,18,18 13:17 16:8 32:9
calls 21:9 25:8 25:14,18
camelot 1:15 2:3 5:14
caption 40:10

careful 32:17
case 1:4 16:23 24:11 26:18,24 34:17 40:4
cases 17:23
categorizations 24:12
cathell 3:3 4:6 37:24,24 38:4 38:13,23 39:4
caucus 37:4
cause 1:16 40:12
causes 14:8,9
ccr 1:18 40:9 40:23
center 3:15
certain 14:9 33:17
certification 4:7 40:6
certified 1:18 5:5
certify 40:10,16
chapter 1:3 14:7 40:3
chicago 2:7
chris 14:19 31:24
christopher 2:11
ciccio 30:15
circumstances 28:7

claim 23:6
claims 9:20 10:25 11:6 12:22 14:1 20:24
clarification 13:6
clarify 34:8
class 30:15
clawback 30:8
clear 12:14 18:22 20:3,13 20:14,15 31:8 31:25
client 38:12
close 17:2
cluster 3:2 37:25
cml 1:4 40:4
coaching 32:2
coding 24:10
collateral 38:19
colleagues 32:19
colloquy 32:2
come 6:23 37:7
comments 24:10
common 8:20 8:23 10:3 11:14,18 14:18 15:14 21:9 25:19 29:8 34:22

communicate 8:15
communicating 8:9
communication 16:25
communicati... 8:22 11:18 14:17 15:14 18:1
completely 18:3 32:10
complied 7:3 16:14
computer 40:14
concerning 19:15 24:11 40:12
concluded 39:13
conference 25:8
confidential 23:22 24:4
confidentiality 27:19
connection 9:19 10:22 12:21 20:24 38:20
consent 38:25
considering 13:25

**consilio** 8:10 17:16,22 18:1 18:3,7,10,16,23 18:24 21:1,4 21:14,19,22 22:3,15,25 23:6,15 24:3,9 24:15 25:1,5 25:15,23 26:7 26:8,9,21 27:8 29:18,23,25 30:10 31:1,10 33:13,18 34:1 34:6,20 35:5,9 35:16,25 36:11 36:22 38:6

**consult** 28:22

**contain** 23:15 24:3

**contained** 24:21

**containing** 29:13

**contingent** 19:25

**continued** 3:1

**controls** 38:7

**controversy** 40:12

**cooperating** 39:10

**copied** 33:23 36:17

**coplan** 2:6

**copy** 27:18 36:22

**copying** 18:11

**correct** 7:21 8:13 10:25 11:2,3 18:25 19:1 20:1,4,6 24:17 28:4,5,8 28:9,12,14,25 29:1,5,14,16 30:21 31:12 36:2

**correctly** 30:3

**costs** 34:13

**counsel** 8:24 12:1,2,15 14:1 16:21 17:18 35:8 40:16,18

**course** 9:19

**court** 1:1 5:5 11:17 19:9 25:2,6 37:17 40:1

**covered** 21:9 25:19

**creditors** 34:22

**cruthcer** 3:15

**cs7061530** 1:25

**csr** 1:18 40:9 40:23,23

**currently** 19:18 38:7

**cwood** 2:14

**d**

**d** 1:7,11 3:18 4:1,3 5:3 40:7

**d&o** 9:20 10:25 12:22 20:24

**dale** 3:3 37:24

**dale.cathell** 3:6

**database** 17:20 18:24 21:1,4 21:14,20,22 22:3,16,25 23:10,15,22 24:3,9,15,21 25:15 26:1,22 27:8 29:13,18 29:23 30:5,10 30:25 31:10,21 33:13 34:6,19 35:5,17,22,25 36:11,22 38:7 38:7,16

**databases** 30:4

**date** 6:10 7:19 7:20 9:17 16:24 17:9 18:22 40:24

**dated** 16:20,23

**dates** 9:15 16:19

**david** 1:13 2:2 2:4 5:10,13 8:19 9:1 11:25

12:6 15:4,12 32:6 33:3

**day** 40:19

**debtor** 17:17 22:21 24:21 26:10 28:20

**debtors** 1:5 8:16,25 9:13 14:14 17:10 18:12 22:4,11 22:16 23:1,7 26:2,9,13,13,16 28:4,8,15 29:25 33:18 35:13,22 38:16 38:19 40:5

**december** 1:8 1:17 5:2 40:8 40:19

**decide** 12:24

**defendants** 1:13 2:2 5:11 8:17 9:14 14:15 17:11 18:13 22:5,11 22:18 23:2 24:5,16 25:17 26:4 28:11,21 35:3,16 36:1

**delegated** 27:5

**denied** 35:4

**dep** 12:4

**deposing** 33:2

| | | | |
|---|---|---|---|
| **deposition** 1:7 1:11 4:11 5:24 6:7,8,8,10,19 7:8 9:7 13:11 16:1,5 33:7 39:13 40:7,14 40:17 | 20:17 27:6 | **drammelt** 2:8 | **entitled** 12:13 |
| **description** 4:10 | **district** 1:1 40:1 | **drive** 2:6 3:10 | **entity** 25:22 |
| | **division** 1:2 40:2 | **due** 35:5 | **esq** 2:4,5,11,17 2:22 3:3,4,9,14 3:19 |
| **descriptions** 24:11 | **dla** 3:4 | **duly** 1:15 5:4 12:9 40:12 | **established** 15:16 |
| **designated** 29:4,14 | **dlapiper.com** 3:6,7 | **dunn** 3:15 | **estate** 12:21,22 18:9,23 19:6 20:24 26:14 34:18,23 35:8 |
| **determine** 22:25 26:1 | **document** 6:20 7:1,8,21 16:9 20:25 | **e** | **et** 1:4 40:4 |
| **different** 7:10 7:15,19 30:3 | **documents** 7:23 8:1,15 9:14 14:13 17:5,14,15,21 18:12 21:4,6 21:13,19,23 22:2,9,15,17,24 23:1,6,7,10,14 23:21 24:3,15 25:15,25 26:2 26:3,9 27:7 29:3,13,19,22 30:10,12,14,18 30:20 31:9,11 31:17 34:7,19 35:4,19 36:15 36:18 38:15 39:2 | **e** 2:1,1 4:1,9 | **etkin** 3:9 |
| **differently** 32:9 | | **earliest** 16:24 | **etkin's** 12:20 |
| **dip** 37:25 38:19 38:20 39:1 | | **early** 17:19 | **everybody** 16:7 |
| **direct** 7:5 17:25 | | **east** 3:5 | **exact** 7:21 9:17 |
| **direction** 13:4 | | **ediscovery** 17:20 | **exactly** 7:17 |
| **directly** 18:7 | | **efforts** 6:14,15 | **examination** 5:7 38:3 40:13 |
| **directors** 12:23 14:2 | | **either** 8:10 10:23 24:4 | **examined** 5:5 |
| **discuss** 25:14 | | **email** 4:12 6:23 7:25 16:13,20 18:5 28:18 | **example** 30:12 |
| **discussed** 12:20 25:22 27:11 34:21 | | **emails** 8:7,9 10:9 17:8 18:2 28:1 33:23 | **exeter** 3:5 |
| | | | **exhibit** 4:11,12 6:7,16,19 16:6 16:15 |
| **discussing** 8:11 34:3 | **doing** 32:4,23 39:8 | **embarcadero** 3:15 | **exhibits** 4:10 |
| | | **emergency** 12:8 | **expiration** 40:24 |
| **discussions** 9:21 10:23 12:24 17:4 | **dollars** 35:17 | **employed** 40:16,18 | **explained** 33:16 |
| | **dowd** 2:10,12 | **employee** 40:17 | **explore** 12:13 |
| | | **engagement** 19:11 | **extent** 25:18 |
| | | **entered** 27:19 | **extra** 32:2 |

Case 3:19-cv-00962 Document 201-5 Filed 04/21/25 Page 17 of 29 PageID #: 5299

| f | first 5:4 8:15 9:12 34:11,17 | g | good 5:9,22 38:5,5 |
|---|---|---|---|

**f**

**fact** 18:18 32:21
**facts** 40:10
**fair** 27:9 36:7 37:14
**false** 32:20
**far** 30:18 35:24
**federal** 1:20 2:10 12:1 14:25 32:16
**fee** 19:25
**feel** 20:11
**fees** 34:25
**fenkell** 3:13
**figure** 27:11
**filed** 19:10
**final** 18:19,19
**financially** 40:18
**fine** 12:4 20:19
**fiorella** 2:5 7:3 16:14
**firm** 5:10 9:24 10:5,12,24 12:20,20,25 13:10 16:23 26:19 35:2 40:25
**firmed** 6:10
**firms** 9:24 10:5 10:12 13:1 35:2

**first** 5:4 8:15 9:12 34:11,17
**fit** 15:5
**five** 25:13 37:3
**floor** 2:18 3:21
**follow** 9:22 15:10
**follows** 5:6
**form** 10:15 11:8 14:3 15:23 18:14 21:15,16,24 22:6,12,19 23:4,12,17,24 24:6,18 26:5 27:15,21 28:13 29:6,7,15 30:22 31:13 32:1,14,25 33:14 36:3,12 36:23 38:9,21
**former** 12:22 14:2
**forward** 16:11
**friday** 1:16 5:2 39:8 40:8
**friedlander** 2:6
**front** 6:18 11:17
**funds** 19:21,23
**further** 37:22 40:16,17

**g**

**g** 2:5
**garrison** 2:23
**gate** 29:11
**gathered** 8:8
**geller** 2:10,12
**general** 17:18
**generalizing** 27:3
**generally** 17:16
**gibson** 3:15
**gibsondunn.c...** 3:17
**gillian** 3:14
**give** 16:19
**given** 30:25 40:14,19
**glitched** 25:3
**gmiller** 3:17
**go** 11:22 12:10 15:3 37:4,11 37:15
**going** 6:6,7 8:2 8:18,21 11:13 12:7,11 14:16 15:2,4,7,10,17 15:18,18 16:4 16:5 18:6 19:16 20:18,20 21:8 32:5,7,9 32:13,24 33:4 33:5 34:8 36:9 37:6,11

**good** 5:9,22 38:5,5
**granted** 33:17
**greatly** 37:12
**greenspon** 1:14 2:3
**ground** 6:1 9:7
**group** 1:15 2:3 5:14 30:12
**grouped** 30:10
**guess** 19:5
**guessing** 36:8
**guys** 7:11 38:1

**h**

**h** 4:9
**hand** 40:19
**handful** 37:2
**harbor** 3:5
**hard** 37:11
**hearing** 11:16 19:3
**hedges** 3:20 16:22
**held** 8:16 28:11
**helmsley** 2:18
**hereto** 40:10,18
**hey** 37:24
**hipaa** 23:16,23
**hiring** 13:25
**holdco** 3:2 37:25
**housed** 24:15 31:11

**houses** 21:22
**housing** 17:21 18:10,24
**houston** 1:2 3:21 40:2
**hundred** 35:16

### i

**idea** 22:10
**identical** 7:18
**identification** 6:16 16:15
**illinois** 2:7
**implicate** 8:20
**inappropriate** 32:11
**index** 21:12
**individual** 1:12 2:2 5:11 8:16 9:13 14:14 17:11 18:12 22:4,11,17 23:2 24:4,10 24:16 25:17 26:3 28:11,21 35:3,15 36:1
**information** 15:6 21:9 23:15 24:4 25:19
**initial** 7:12 17:17
**insist** 34:4,9

**instance** 1:12
**instruct** 12:11 14:19 15:2,2 20:20
**instruction** 15:10,12
**instructions** 36:25
**instructs** 14:21
**intend** 32:15
**intentionally** 32:7,8
**interest** 8:20,23 10:3 11:14,19 14:18 15:15 21:10 25:19 29:8
**interested** 40:18
**interject** 8:18
**investigate** 14:1
**invoices** 18:19 18:19 35:5
**involved** 34:2
**issue** 30:15

### j

**j** 3:19 40:9
**january** 9:18
**jerry** 2:22
**jersey** 3:11
**jmartin** 2:25

**job** 1:25
**johnston** 2:23
**join** 11:9
**jointly** 1:5 40:5
**jordan** 3:13

### k

**k** 13:8
**kari** 1:17 13:7 15:20 37:15 40:9,23
**katzman** 1:13 1:13 2:2,3 3:13 5:12,13
**keep** 32:25
**keeps** 8:3
**kind** 10:11 12:12 13:15 19:14 21:13 27:4 29:22 37:4
**kindly** 8:8 16:8 28:18
**knew** 14:5 17:13,16,20 29:12
**know** 5:19,23 6:13 9:7,16 10:7 13:8,13 13:16,23,24 14:4 17:7,14 19:2 20:13 21:6,12,17,21 21:25 22:3,7

22:13,16,21 23:9,14,20,25 24:2,7,9,13,15 24:24 26:7,16 27:22 29:18,20 30:18 31:15,19 32:2,2,17 33:10,18,25 34:1,10 35:1,7 35:11,21,24 36:4,8,8,10,15 36:17,19 37:10 38:1 39:9
**knowledge** 10:10 21:3 22:23 34:22 36:20
**known** 15:19 33:5
**kyle** 1:14 2:3 5:13

### l

**labeled** 16:10
**law** 2:15,17 5:10 9:24 10:5 10:12 26:19
**lawyer** 15:25
**lawyers** 10:4,7 16:22 17:4 22:11 24:10 25:9 26:20 27:7,13 34:5 34:16,17 35:1

| | | | |
|---|---|---|---|
| **leads** 18:8 | **looked** 7:11,12 | **martin** 2:22,23 | **mminhas** 2:20 |
| **leave** 38:2 | 20:25 21:3,6 | **maryland** 3:6 | **money** 18:10 |
| **legal** 40:24 | 21:14 25:4 | **material** 15:22 | 34:20,23 |
| **limit** 33:11 | 36:15 | **matters** 8:11 | **months** 28:17 |
| **limitations** | **looking** 8:7 | 40:12 | **morning** 5:9 |
| 27:12 29:21 | 13:25 | **mean** 18:4 | 38:5 |
| 36:21 | **lowenstein** 3:10 | **member** 10:12 | **motion** 12:8 |
| **limited** 30:25 | 3:10 16:23 | **mentioned** 5:4 | **mouth** 27:3 |
| 31:19,20 | **lowenstein.c...** | 10:19,20 19:2 | **move** 6:25 |
| **limiting** 32:14 | 3:12 | 27:2 | **mute** 8:2 |

| | | | |
|---|---|---|---|
| **listed** 7:2 | **m** | **metkin** 3:12 | **n** |
| **litigation** 5:12 | | **michael** 3:9 | |
| 9:25 10:6,14 | **machine** 1:18 | **miller** 3:14 | **n** 2:1 4:1 |
| 14:15 17:19 | **madam** 5:19 | **million** 21:23 | **name** 5:9 |
| 19:7 22:5 | **made** 12:14 | 22:2,9,15,24 | **named** 40:11 |
| 25:10 27:20 | 16:9 18:17 | 23:9,21 24:2 | **nashville** 2:13 |
| 29:14 30:1,5 | 20:15 22:23 | 26:1 | 2:24 |
| 30:11,15,21 | 23:5 24:20 | **mind** 17:1 | **nearly** 19:23 |
| 31:2,4,6,12,18 | 32:20 33:11 | **minhas** 2:17 | **necessary** |
| 32:20 35:3 | **main** 3:20 | 11:20,23 12:5 | 14:22 |
| 36:1 | **maintained** | **minimum** | **need** 15:3 38:1 |
| **little** 11:16 | 21:12 38:16 | 34:24 | **negotiating** |
| **llp** 2:6,12,15,17 | **maintaining** | **minute** 6:13 | 27:6 |
| 3:4,10,15 | 18:10,24 | 37:3 39:8 | **neither** 18:22 |
| **loan** 38:20 | **make** 10:20 | **minutes** 37:12 | 40:16 |
| **located** 17:11 | 15:4,18,18 | 37:16 | **never** 22:10 |
| **lodge** 14:23 | 33:5 | **misheard** 17:12 | 23:5 24:20 |
| 15:7 | **mandeep** 2:17 | **mislead** 32:7 | 25:4 26:6 |
| **lodging** 14:24 | 11:22 12:4 | 33:4 | **new** 2:19,19 |
| **log** 21:13 | **march** 16:21,24 | **misleading** | 3:11 |
| **long** 17:2 37:10 | 17:2,3,7,10 | 32:8,20 | **nice** 39:11 |
| **look** 7:7,9 29:3 | **mark** 6:7 16:5 | **misstates** 31:13 | **night** 8:8 16:9 |
| 34:6 | **marked** 6:16 | **mistake** 20:14 | **north** 2:12,23 |
| | 6:19 16:15 | | |

Case 3:19-cv-00962 Document 201-5 Filed 04/21/25 Page 20 of 29 PageID #: 5302

**noted** 12:9
**notes** 37:4
**notice** 4:11 6:8
  7:18
**notified** 35:7
**number** 6:19
  16:6
**numbered** 1:16

**o**

**o** 13:8
**object** 11:13
  14:16 20:18
  21:8 32:5
**objecting** 32:1
**objection** 9:2,8
  10:15,16 11:8
  11:24 12:1,1
  14:3,23 15:7
  15:23 18:14
  21:15,16,24
  22:6,12,19
  23:4,12,17,24
  24:6 25:18
  26:5 27:15,21
  28:13 29:6,7
  29:15 30:22
  31:13 33:14
  36:3,12,23
  38:9,21
**objections** 9:8
  15:5,19 32:14
  32:25

**obtain** 38:25
**obvious** 14:6
**obviously** 27:4
  30:7
**office** 40:19
**officers** 12:23
  14:2
**okay** 5:22 6:24
  8:4 15:4 20:7
  31:23 33:2,6
  33:21 36:7
**once** 6:10
**ones** 7:9
**onset** 12:4
**operate** 26:7
**opinion** 26:2
  32:12 33:5
**opportunity**
  7:7
**opposed** 22:17
  23:1 26:3 31:6
**oral** 1:7,11
**order** 27:19
  34:6 35:17,18
**orrick** 13:5,10
  13:16 18:16,17
  18:20 19:2,4,6
  19:8,10,12,15
  19:19,22,24
  21:3,12 23:20
  26:19,24 27:5
  27:5,13,18
  33:10 34:14
  38:11,12

**outside** 12:7
  13:25
**owed** 34:20
**owned** 14:13
  23:1,2 24:16
  28:3

**p**

**p** 2:1,1
**page** 4:3,10 7:1
  16:12,12
**paid** 18:6,10,23
  19:19 34:5,12
  34:18 35:5,16
  35:25 38:12
**park** 2:18
**part** 16:8 28:6
  38:19
**participated**
  25:8
**participating**
  1:19
**particularly**
  12:13
**parties** 22:18
  24:5,17 26:21
  40:17,18
**party** 23:3
  28:21
**pass** 37:21
**past** 35:5
**patient** 23:22
**patients** 23:16

**pay** 9:15 18:16
  19:22,23 34:9
  34:10,23
**paying** 26:14
**payment** 35:12
**payments**
  18:18
**people** 17:13
  35:7
**people's** 25:23
**percent** 32:18
**perfect** 7:17
  20:8
**perfectly** 12:4
**permission**
  30:19
**permitted** 32:1
  32:15,15
**person** 18:5
  35:24 40:12
**personal** 23:15
  24:3
**personally** 7:22
  10:7
**phone** 8:2
**piper** 3:4
**place** 36:20
**placed** 27:12
  29:21
**plaintiffs** 2:10
  2:16,21 3:8
  8:10,14,24 9:1
  9:12,24 10:6
  10:13 11:20,23

Case 3:19-cv-00962   Document 201-5   Filed 04/21/25   Page 21 of 29 PageID #: 5303

12:25 13:21 16:23 17:3 25:9 26:20 27:7 29:2,12 29:23 30:19 31:9 33:13 34:5,16 36:11 36:22 38:25 39:2

**please** 15:21

**point** 24:24 34:22

**porter** 3:20 16:21

**porterhedges....** 3:22

**portion** 29:25 31:1,10 33:17

**position** 26:8 28:25

**possible** 8:19 37:13

**possibly** 11:5

**potential** 10:25

**potentially** 12:21

**power** 3:19 9:1 10:16 11:8,21 12:6 15:25 20:18 21:15,24 22:6,12,19 23:4,12,17,24 24:6 26:5 27:21 29:7

33:6,14 36:3 37:9 38:9,21

**prefer** 5:15

**prepetition** 18:3

**presented** 18:19

**preserve** 35:13

**preserves** 12:1

**previous** 19:3

**previously** 19:8 22:3 29:13

**prior** 7:8,18 11:16 26:24

**privilege** 8:21 8:23 11:14,19 12:12,13 14:18 15:1,15 20:19 21:10 24:11 25:20 28:7,10 28:15,19,20 29:8 33:25

**privileged** 15:6 23:10 25:16 29:4,14,19

**privileges** 28:3 28:11

**probably** 17:6 30:2 37:6

**procedure** 14:25

**proceedings** 5:1

**produced** 1:12 8:8 22:4 28:2 30:14,20 31:11 31:16,20 33:24 37:5

**production** 16:8

**professional** 34:24

**protected** 23:16,22

**protective** 27:19

**provide** 19:16

**provided** 27:18 27:23 38:24

**providing** 39:1

**purposes** 9:6

**pursuant** 1:20

**pursue** 11:5 14:1

**pursuing** 14:7

**put** 6:6 16:4

**putting** 6:11 16:17 32:12

**q**

**question** 5:23 7:22 9:4,11,22 12:11,17 15:21 17:1,12 18:8 19:5 20:11,22 32:14,24 34:8 34:11 36:9

**questions** 8:20 15:11 32:13,18 33:3 37:3,8 38:1 39:5

**quick** 37:3 38:6

**quickly** 8:3

**r**

**r** 2:1 13:8,8

**rammelt** 1:15 2:3,4 4:5 5:8 5:10,13 6:17 6:25 7:4 8:5,6 9:3,6,10 10:18 11:11 12:3,9 12:16 13:7,9 13:14,20 14:11 14:19 15:8,20 16:2,7,16 18:21 20:21 21:11,18 22:1 22:8,14,22 23:8,13,19 24:1,8,23 25:7 25:24 26:11 27:24 28:16 29:10,17 31:3 31:22,24 32:12 33:8,9,20 36:6 36:14 37:1,14 37:18,20 39:6

**reach** 11:4 12:18

Case 3:19-cv-00962 Document 201-5 Filed 04/21/25 Page 22 of 29 PageID #: 5304

reached 11:10

reaching 38:11

read 15:22

real 38:6

really 6:14 8:3 9:15 17:7 39:11

reason 6:3

recall 8:17 17:2

receive 19:17

recess 37:19

recognized 14:24

recollection 16:18

record 13:15 18:22 20:15 21:13 31:8,25 37:15 40:14

records 8:25 22:21 23:22 24:22 25:23 26:9 33:18 35:13 38:16,19

redacted 29:4

redactions 17:8

reduced 40:13

referenced 28:1

referring 31:5

reflects 28:25

refresh 16:18

refuse 15:10

regarding 8:11 8:24 10:24

33:24

registration 40:25

related 12:7 18:2 30:5 31:1 31:17,17 40:16

relates 30:1

relative 40:17

remember 34:21

remmelt 26:18 27:17

remotely 1:8,19 2:3,10,16,21 3:2,8,13,18 40:8

repeat 9:4,11 12:17 15:20 20:14

repeated 20:10

reported 1:8 40:8

reporter 1:19 5:5 13:6 25:2,6 37:17

reporter's 4:7 40:6

represent 5:11 10:1,5,13 15:17 19:6,22 19:24 20:23 34:17 35:15

representation 19:24

representations 32:21

representative 18:1

representatives 17:18

represented 26:17

representing 12:21 15:25 25:9 35:2

requested 7:24 15:22 26:21

requests 7:2,8 7:21

respect 38:6,11 39:1

respectful 33:7

responded 7:16

responses 32:3

responsible 26:14

responsive 7:25

restrict 33:12 35:9

restricted 35:11

restriction 30:6

restrictions 29:21 33:19 34:2 36:21

retain 11:2 12:14,25 13:2 13:5 19:6,8,10

20:17,23

retained 20:1,3 20:7,16

retaining 11:5

retention 9:19 10:24 19:14

reveal 8:22 11:17 14:17 15:5,13

review 22:24 30:8

reviewed 22:10 27:23 33:23

reviewing 25:25

rgrdlaw.com 2:14

rich 5:13

richard 1:14 2:3

right 5:18,24 6:1,18 7:17 17:6 20:11,12 24:25 27:14 29:11

ringing 8:3

robbins 2:10 2:12

role 28:6

roseland 3:11

rudman 2:10 2:12

rule 1:20 9:7

Case 3:19-cv-00962 Document 201-5 Filed 04/21/25 Page 23 of 29 PageID #: 5305

| | | | |
|---|---|---|---|
| **rules** 6:1 14:25 32:16,23,25 | 27:7,20 29:22 30:19,21 31:5 31:12,18 32:20 33:12 34:5,16 36:1,10,21 38:25 39:2 | **silence** 13:18 | **statement** 27:9 |
| **s** | **see** 6:12,18 8:9 15:5 16:24 38:5 | **similar** 14:10 | **states** 1:1 40:1 |
| **s** 2:1,17 3:5,9 4:9 | **seeking** 20:23 | **single** 20:25 | **steer** 32:3 |
| **sandler** 3:10 | **seen** 6:20 | **sit** 6:13 | **steve** 5:12 |
| **saw** 6:23 | **segregated** 29:19 30:4,10 31:1 | **slow** 12:2 | **steven** 1:13 2:3 |
| **scheduled** 39:11 | **sending** 28:22 | **smiledirectclub** 1:4 23:16 30:13 40:4 | **stipulation** 11:25 |
| **schnall** 1:14 2:3 5:13 | **sense** 16:19 | **soliciting** 13:25 | **stop** 37:11 |
| **scoot** 16:11 | **sent** 6:9 7:9,11 7:19,20 28:18 | **solutions** 40:24 | **street** 3:5,20 |
| **scope** 19:16 | **service** 17:21 18:17 | **somebody** 12:10 14:21 | **strike** 13:22 |
| **scott** 2:15,15,17 2:17,20 | **services** 19:15 19:16 38:12 | **sorry** 8:3,4 11:21 20:6,9 20:13 25:2 | **string** 16:13 |
| **scott.com** 2:20 | **set** 7:19 | **south** 2:6 | **styled** 1:16 |
| **screen** 6:6,12 16:5,17 | **setting** 34:2 | **southern** 1:1 40:1 | **subject** 4:12 8:22 11:18 14:18 15:14 30:7 |
| **scroll** 6:21 | **several** 28:17 30:3 35:16 | **speaking** 27:1 | **substantive** 11:18 |
| **sdc** 4:12 | **share** 9:2 11:23 34:13 | **specific** 33:19 | **sufficient** 9:8 |
| **seal** 40:19 | **shorthand** 1:18 | **specifically** 29:3 | **suite** 2:6 3:5,16 |
| **search** 7:23 | **shortly** 10:21 19:10 | **specifics** 33:25 | **supervision** 40:14 |
| **searched** 7:25 | **shut** 35:12,18 | **spoke** 9:18 | **sure** 8:5 10:20 |
| **second** 7:1 16:12 | **signature** 40:22 | **spoken** 18:7 | **susan** 1:14 2:3 5:13 17:18 26:17 |
| **securities** 1:13 2:2,10,16,21 3:8 5:12 8:10 8:14,24 9:12 9:25 10:6,13 13:21 14:15 16:22 17:3 25:10 26:20 | | **spring** 9:16 | **sworn** 1:15 5:4 40:12 |
| | | **start** 32:5,13 | **t** |
| | | **started** 32:5 | **t** 4:9 |
| | | **state** 2:15,21 9:1 11:20,23 12:2 40:10 | **take** 14:22 37:1 37:3 |
| | | **state's** 9:20 | |
| | | **stated** 40:10 | |

Case 3:19-cv-00962   Document 201-5   Filed 04/21/25   Page 24 of 29 PageID #: 5306

**taken** 1:16 5:24 37:19 40:17

**talk** 27:13 28:18

**talked** 11:15 18:4

**talking** 37:10

**talks** 17:17

**technicalities** 34:1

**telephone** 40:25

**tell** 6:3 34:18

**tennessee** 2:13 2:24

**terminology** 30:2

**testified** 5:5

**testify** 40:12

**testimony** 31:14 32:8 38:15 40:14

**texas** 1:1,18 3:21 40:1,10 40:23

**thank** 6:12 12:5 16:3 25:6 31:23 37:18,20 39:7

**thanks** 39:8,10

**think** 5:23 7:11 8:19 9:7 10:17 10:19,20,24 11:21 12:6

13:12,14 14:24 15:16 17:6 20:15 24:14 26:23 27:25 29:24 31:20 32:6,10,18,22 32:23 34:12,21 37:2,6

**third** 22:18 24:5,16

**thought** 12:3

**thoughts** 32:3

**thousand** 35:16

**time** 7:12 14:13 17:9 33:7 37:21

**times** 36:10

**today** 5:16 6:4 6:8,13 7:8 8:11 13:11 15:11 31:25

**took** 26:18

**topic** 11:16

**topics** 12:7

**total** 21:19

**transcription** 40:14

**true** 8:12 24:20 40:10,14

**trustee** 3:18 4:12 5:19 8:23 10:1,11,21 14:7 16:10 18:9,23 19:6

19:22 28:6

**truth** 6:4 40:12

**try** 15:9 32:7,8 33:4

**trying** 29:12 35:8

**turned** 27:4

**two** 37:16 38:1

**types** 33:12

**u**

**under** 14:25 32:15 40:14,19

**underlying** 5:12 9:25 10:6 10:13 27:20 31:5 32:19

**understand** 6:1 10:20 29:11

**understanding** 13:24 30:9,16 30:24 31:25 33:16,22 35:13 38:11,14

**united** 1:1 40:1

**unprofessional** 32:11

**unrelated** 18:4

**use** 17:9 30:11 35:18,22

**used** 17:22 26:6

**using** 18:11 35:14

**usual** 13:15

**v**

**various** 35:3

**vendor** 17:23

**venture** 1:15 2:3 5:14

**veritext** 40:24

**w**

**wacker** 2:6

**wailes** 1:14 2:3 5:13

**waiting** 19:17

**waive** 28:3,7,10 28:14

**waived** 28:19 28:20

**waiver** 30:7 33:24

**want** 9:22 10:19 13:16 27:11 30:11

**wanted** 29:3 35:12

**wants** 15:7

**way** 15:9 18:11 24:19,24 29:19

**we've** 28:19 31:25

**weekend** 7:12 39:12

**went** 13:4,14 17:19

Case 3:19-cv-00962 Document 201-5 Filed 04/21/25 Page 25 of 29 PageID #: 5307

**whatsoever** 22:24
**witness** 1:12,19 4:3 8:2,21 10:17 11:10 14:4,17 15:6 15:13,24 18:15 21:17,25 22:7 22:13,20 23:5 23:18,25 24:7 24:19 25:4,21 26:6 27:16,22 28:14 29:9,16 30:24 31:15 32:7 33:4,15 36:4,13,24 37:21 38:10,22 40:15
**witness's** 32:3
**wood** 2:11 8:18 9:23 10:4,11 10:15,23 11:9 11:13 12:25 13:24 14:3,16 15:4,10,12,23 18:14 21:8,16 24:18 25:18 26:19 27:15 28:13 29:6,8 29:15 30:22 31:13 32:6 33:2 36:12,23 37:23

**wood's** 12:20
**word** 30:11
**words** 27:2
**work** 10:4
**worked** 17:22 26:24
**working** 27:5
**worries** 20:10
**writing** 10:8,9 40:13
**written** 10:3,10 16:25 19:14

**x**

**x** 4:1,9

**y**

**yeah** 7:14,17 31:15 32:6 37:9
**yep** 33:8
**yesterday** 6:9 6:23 7:10,20 27:1
**york** 2:19,19

**z**

**zoom** 1:11 16:8

Case 3:19-cv-00962   Document 201-5   Filed 04/21/25   Page 26 of 29 PageID #: 5308

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

Case 3:19-cv-00962   Document 201-5   Filed 04/21/25   Page 28 of 29 PageID #: 5310

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.