IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 3:19-cv-00962 |
| v. | ) ) | JUDGE RICHARDSON |
| SMILEDIRECTCLUB, INC., ET AL., | ) ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court[1] is the "Motion For Review of Nondispositve Order of Magistrate Judge" (Doc. No. 197, "Motion") filed by Defendants David Katzman, Kyle Wailes, Steven Katzman, Susan Greenspon Rammelt, Richard Schnall, Alexander Fenkell, Jordan Katzman, and Camelot Venture Group ("Individual Defendants"). Individual Defendants filed a memorandum in support of the Motion (Doc. No. 198, "Memorandum"), to which Plaintiffs responded in opposition (Doc. No. 206, "Response"). Individual Defendants thereafter filed a reply (Doc. No. 209), to which Plaintiffs filed a sur-reply (Doc. No. 213) with leave of court. For the following reasons, the Motion is GRANTED.

## BACKGROUND

The following represents the Court's best effort to concisely summarize the lengthy background of the current dispute that is the subject of the order (Doc. No. 196, "Order") of the assigned magistrate judge ("Magistrate Judge") as to which review is sought.

---

[1] Herein, "the Court" refers to the undersigned district judge, as distinguished from the Magistrate Judge.

Plaintiffs filed suit against Individual Defendants and SmileDirectClub ("SDC") in 2019. (*See* Doc. No. 1). Individual Defendants and SDC all retained the same counsel, Benesch, Friedlander, Coplan, & Aranoff LLP ("Benesch"). (Doc. No. 198 at 3). SDC and Individual Defendants retained Consilio LLC to manage discovery-related document review and management services for SDC and, it seems, Individual Defendants.[2] To that end, Consilio created a document database ("Database") containing the documents of custodians that Benesch identified as responsive to Plaintiffs discovery requests. (*Id.* at 5). The Database housed these documents, and attorneys at Benesch were able to review them in in order to produce potentially relevant documents to Plaintiffs that were identified during the review. (*Id.* at 5). Benesch had access to the Database, as at that point Benesch was representing both SDC and the Individual Defendants. The parties also entered into a stipulated protective order ("SPO") whereby they agreed to a procedural mechanism to resolve disputes over confidentiality designations (as well as privilege designations).[3] (*See* Doc. No. 131). Counsel at Benesch then reviewed the documents in the Database using previously agreed-upon search terms to locate potentially responsive documents.

---

[2] The Court notes that the parties disagree on whether both SDC and Individual Defendants participated in the production process (as opposed to just SDC, who originally contracted with Consilio and paid for Consilio's services). (*See* Doc. No. 198 at 4, 7).

[3] The SPO sets forth the following procedure for confidentiality designations: A producing party identifies a document that is responsive to the discovery sought by the discovering party but in good faith designates it as confidential (meaning it should be protected from disclosure to third parties). According to the SPO, confidentiality designations should be limited to "[d]ocuments and information containing confidential client information or that is otherwise subject to attorney-client privilege; work product; or other privilege[.]" (Doc. No. 131 at 3). For privileged material (which is a subset of confidential information), the producing party may redact the privileged information within documents and maintain a privilege log of the documents that contain these redactions. (*Id.* at 5). The discovering party may then challenge a designation of confidentiality by identifying in writing the challenged document and setting forth specific reasons why it believes that the confidentiality designation is inappropriate. (Doc. No. 131 at 11). The SPO requires that in the event of a challenge, the parties must meet and confer within seven days of a challenge in order to limit the scope of any issues that would require resolution by the Court. If the issue is not resolved, then the parties provide the Court exemplar documents for the Court to review to determine if the confidential designation was indeed appropriate. (*Id.*).

(Doc. No. 198 at 5). Individual Defendants ultimately produced 120,916 of the 2.2 million documents that were in the Database. (*Id.*). They did not produce documents that were deemed not responsive, that were withheld for privilege, or those that did not hit upon the previously agreed-upon search terms. (*Id.*).

Individual Defendants claim that Benesch used the Database and Consilio's services to produce discovery materials on behalf of SDC and the Individual Defendants (and not just SDC).[4] SDC thereafter filed for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of Texas on September 29, 2023, and all claims against SDC were stayed during bankruptcy proceedings. (*Id.* at 7). The bankruptcy court then converted the proceedings to a Chapter 7 liquidation and appointed Allison Byman as the trustee ("Trustee") of SDC's estate on January 26, 2024. (*Id.*). Benesch thereafter stopped representing SDC on January 26, 2024 but continued to represent (most of) the Individual Defendants.[5] Counsel at Benesch were locked out of the Database in December 2024, as SDC had ceased making payments to Consilio. (*Id.*). The Individual Defendants then began to pay for Consilio's services, and Benesch regained access to the Database in March 2024. (*Id.*).

Around March 2024, Plaintiffs contacted the Trustee and reported that there were issues with the manner in which SDC and Individual Defendants were withholding or redacting documents during the discovery process. (*Id.* at 8). Specifically, Plaintiffs took exception to SDC and Individual Defendants' privilege assertions, as the privilege log contained 77,000 entries. (Doc. No. 206 at 2). Plaintiffs allege that "SDC abused the privilege designation and redaction

---

[4] To this effect Individual Defendants assert that the production was made on behalf of "[Benesch's] clients, not SDC alone" and that "when Benesch noted objections to requests based on privilege, the objection was made by its clients, not SDC alone." (Doc. No. 198 at 6).

[5] Two of the Individual Defendants engaged separate counsel after the conversion to a Chapter 7 liquidation. (Doc. No. 198 at n.4).

process, and violated the Stipulated Protective Order in order to avoid disclosing" information that SDC and Individual Defendants thought would be harmful to them. (*Id.* at 2). In order to cure these perceived deficiencies, Plaintiffs sought clarification from the Trustee's counsel, who represented that she was "waiving SDC's privilege for any pre-petition communications." (*Id.* at 4). In June 2024, Individual Defendants assert that they "made clear to Plaintiffs and the Trustee that they did not waive any privileges belonging to them" and that the "Trustee's counsel twice confirmed that the Trustee did not intend to waive any privileges [including, presumably, any privileges belonging to Individual Defendants as distinguished from SDC] that she was not entitled to waive." (Doc. No. 198 at 9). Nevertheless, the Trustee went ahead and provided Plaintiffs access to the entire Database in August 2024. (*Id.* at 9).[6]

After the Trustee provided this access, counsel for the Trustee told Benesch that Plaintiff's counsel had gained access to the Database. (*Id.*). Benesch, acting on behalf of Individual Defendants, took issue with the fact that the Trustee had given Plaintiffs access to the Database (and has since sought discovery into the communication between the Trustee and Plaintiffs' counsel). (*Id.* at 10). Then, on September 9, 2024, the parties filed a joint request for a discovery conference. (*See* Doc. No. 184). Plaintiffs also filed, on November 1, 2024, an emergency motion to resolve the dispute in bankruptcy court. After briefing and a hearing, the bankruptcy court ultimately declined to rule on the dispute. (Doc. No. 206 at 7).

On February 26, 2025, the assigned Magistrate Judge asked the parties to provide a joint discovery-dispute statement. After receiving this statement on April 7, 2025, the Magistrate Judge issued his Order providing that the Individual Defendants either could accede and give Plaintiffs

---

[6] It appears that Plaintiffs also obtained their own "standalone" version of the Database from the Trustee in October 2024, which the Court is inferring contains the same contents as the original Database that they received access to around August 2024. (Doc. No. 198 at 10).

access to the Database or could review by (May 6, 2025) the potentially privileged documents located in the Database.[7] Individual Defendants filed the present Motion and immediately thereafter requested from the Court an emergency stay (Doc. No. 199) of the Order. On May 5, 2025, the Court ordered that the Order be stayed (but also that Individual Defendants review the relevant documents[8] in the Database within 45 days). (*See* Doc. No. 208). The parties then completed the briefing on the instant Motion.

LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 72(a), the Court may modify or set aside any part of a Magistrate Judge's Order on a non-dispositive matter that is clearly erroneous or is contrary to law. The "clearly erroneous" standard applies only to factual findings, while legal conclusions are reviewed under the "contrary to law" standard. *Norfolk Cnty Ret. Sys. v. Cmty. Health Sys., Inc.*, No. 3:11-cv-00433, 2019 WL 3003647, at *1 (M.D. Tenn. Apr. 19, 2019); *Equal Emp't Opportunity Comm'n v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009). This standard is deferential, and mere disagreement with the Magistrate Judge and/or an assertion that the Magistrate Judge should have ruled differently does not rise to a clear error of fact or a decision contrary to law. *See Shabazz v. Schofield*, No. 3:13-CV-00091, 2014 WL 6605504, at *1, 2014 U.S. Dist. LEXIS 163642 (M.D. Tenn. Nov. 19, 2014) ("The Court is not empowered to reverse the magistrate judge's finding simply because this Court would have decided the issue differently."). When examining legal conclusions under the contrary to law standard, a court may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in

---

[7] The Court will go into greater detail about the contents of the Order in its analysis below.

[8] The reference here to 'relevant documents" is a reference to the documents that Individual Defendants would have been obligated to produce during the normal process of discovery that would have existed absent this dispute (i.e. the documents that hit upon the agreed upon search terms that the parties had previously agreed to).

the Constitution, statutes, or case precedent. *Vanderbilt Univ. v. Scholastic, Inc.*, 321 F. Supp. 3d 830, 832-33 (M.D. Tenn. 2018).

<u>ANALYSIS</u>

In his Order the Magistrate Judge wrote in pertinent part:

> The Parties agree on two essential points. First, that Plaintiffs were given access to (and, it appears, a physical copy of) a database of documents that formerly belonged to SDC, by a person purporting to have the authority to produce the documents in this litigation on SDC's behalf. While the Individual Defendants clearly believe that this access was obtained through improper means, the fact remains that the database was delivered to Plaintiffs. The Parties further agree that some of the documents on the database have already been produced in discovery.

> As to the Individual Defendants' contention that some of the documents are privileged, both [sides] acknowledge that the Court cannot determine the privileged status of any particular document without seeing it. Plaintiffs note that "blanket" assertions of privilege are inadequate and the Individual Defendants suggest providing the Court with a sample of documents for in camera review. *Id*. at 8, 14.

> Given these facts, the Court finds that Plaintiffs have established the likelihood that at least some of the documents in the database should be produced in discovery (indeed, the Individual Defendants concede that some have already been produced). Because Plaintiffs currently have the documents, the Court need not decide whether the Trustee had authority to produce them; it is irrelevant how Plaintiffs came to be in possession of the database. The "full briefing and oral argument" requested by the Individual Defendants is unnecessary because the Parties agree as to the fundamental facts. No amount of information about the Trustee's authority can change the fact that Plaintiffs have the documents and the Individual Defendants assert that some of them are privileged. There is no way to resolve the situation without the Individual Defendants identifying the documents that they contend are protected. The party asserting the attorney-client privilege has the burden of demonstrating that the privilege applies. Fed. R. Civ. P. 26(b)(5); *In re Grand Jury Investigation* No. 83-2-35, 723 F.2d 447, 450 (6th Cir. 1983).

(Doc. No. 196 at 7-8). The Court will focus first on the Magistrate Judge's factual findings before turning to the Order's legal conclusions.

<u>Factual Findings</u>

Individual Defendants argue that the Magistrate Judge made two errant factual findings. First, they take issue with the Magistrate Judge's statement that "The Parties [meaning, apparently,

Individual Defendants and Plaintiffs] agree on two essential points. First, that Plaintiffs were given access to (and, it appears, a physical copy of) a database of documents that formerly belonged to SDC." (*Id.* at 7). Individual Defendants contend that this is incorrect because they do not agree that that the Database formerly belonged to SDC (as they argue that the Database instead belonged to both SDC and Individual Defendants). To that effect, Individual Defendants assert that they have continuously argued that the Database belonged to the Individual Defendants as well as SDC. (Doc. No. 198 at 15). In their Memorandum, they note that even though only SDC initially paid for Consilio's services, Individual Defendants began paying for the services once SDC ceased paying Consilio for the services. (*Id.* at 15). Essentially, they argue that the Database formerly belonged not just to SDC, but to SDC *and the Individual Defendants*, and that there is an unresolved, ongoing dispute between the parties as to this issue.

The problem for Individual Defendants is that even if they have *not* agreed that the Database belonged *exclusively to SDC* that would not make erroneous—let alone clearly erroneous—the Magistrate Judge's statement about which they complain here. For starters, that statement is not facially erroneous, let alone clearly erroneous. The statement by its terms does not state that the parties agreed that the Database belonged *exclusively* to SDC; it says that the parties agreed that the Database belonged to SDC—which can be facially true even if the parties agreed only that the Database belonged to SDC (i) only for *some period of time* in the past or (ii) only jointly (with Individual Defendants), for some or all of the period of time in which it did belong to SDC. In short, the parties could have agreed that the Database belonged to SDC (even if only at *some* point and even if only jointly with Individual Defendants), even if they disagree about whether the Database ever belonged to Individual Defendants (whether jointly with SDC or to the exclusion of SDC). Ask any person who has owned a house jointly with someone else (a spouse,

for example), and then sold it: it is accurate to say that in the past the house "belonged" to that person, even if it is also accurate to say that the house "belonged" also to the joint owner for the period of joint ownership and thereafter belonged to the purchaser of the house (to the exclusion of the person and the prior joint owner of the house). And Individual Defendants do not show that the Magistrate Judge erred, clearly or otherwise, in stating that the parties agreed that the Database belonged to SDC in this kind of limited sense.

Second, the Court does not see where the Magistrate Judge even *implied* in this statement that the Database never belonged (whether jointly or to the exclusion of SDC) to Individual Defendants. Nothing in the statement itself, or in the Magistrate Judge's analysis (or other statements) suggests that the Magistrate Judge was making (or felt the need to make) any statement about whether the Database—instead of always belonging exclusively to the SDC—at some point(s) belonged jointly or even exclusively to Individual Defendants. It is a dicey business to read into a judge's statement qualifiers (like "exclusively" or "only") that the judge did not include. Sometimes the judge has in mind a purpose (which often is rather general) for a statement, and the purpose is such that the judge has no occasion to consider whether the qualifier was appropriate; in such cases, it is folly to treat the statement as including the qualifier. Take, for example, a case in which a plaintiff is quite plainly seeking compensatory damages and punitive damages. The judge might state, "the plaintiff is seeking compensatory damages," where her purpose is merely to introduce a discussion about whether compensatory damages are awardable. It such a situation, it would be absurd to read the statement as conveying that the plaintiff is seeking *only* compensatory damages. Likewise, the Court sees no reason here to treat the Magistrate Judge's statement as conveying that the parties agreed that the Database belonged *only* to SDC, to the exclusion of it ever belonging in whole or in part to Individual Defendants.

Put differently, because Individual Defendants are claiming in essence that the Magistrate Judge stated that the Database belonged *exclusively* to SDC (and never to Individual Defendants, whether jointly or exclusively), the Court needs a reason to believe that the Magistrate Judge's statement at issue should be taken to imply the word "exclusively" (or "only"). Individual Defendants have supplied no such reason. They have not, for example, pointed to any part of the Magistrate Judge's analysis that is based on a finding that the Database always belonged exclusively to SDC. Nor have they pointed to any other language from the Order suggesting that the statement implied this qualifier. So the Court finds that this portion of the Order is not clearly erroneous.

Individual Defendants also take exception to the Magistrate Judge's statement that "[t]he Parties agree [that] Plaintiffs were given access to (and, it appears, a physical copy of) a database of documents . . . by a person purporting to have the authority to produce the documents in this litigation on SDC's behalf." (Doc. No. 196 at 7). Individual Defendants argue that Plaintiffs did not actually "believe that the Trustee had the unilateral authority to provide access to the Database.". (Doc. No. 198 at 16). But their argument seems based on a misunderstanding of the Magistrate Judge's actual statement, which was that the parties agreed that a person "*purporting to have the authority*"—which is not necessarily to say a person *actually* having the authority— produced the documents to Plaintiffs. (Doc. No. 196 at 7). Nothing in Individual Defendants' argument adequately goes to the correctness of *that* finding. Individual Defendants' argument instead goes to the correctness of a finding—which the Magistrate Judge did *not* make—that the parties agreed that a person *actually* having the authority to produce the documents was the one to produce them to Plaintiffs.

And when the Court independently assesses what the Magistrate Judge *actually* said—which was only about an agreement concerning *purported* authority, the Court finds no clear error. For starters, it is clear that the Trustee purported to have the authority to produce these documents; after all, the Trustee turned over the Database to Plaintiffs, and it would be difficult to understand that the Trustee did so without purporting to have the authority to do so. So the Magistrate Judge would not have erred in concluding that it was indisputable that the Trustee purported to have that authority. And in the absence of any dispute from Individual Defendants regarding what was indisputable, the Magistrate Judge naturally could have properly concluded that this point was undisputed. And when a point is undisputed, a judge does not clearly err by saying that the parties are "agreed" on that point, even if such terminology is imprecise when (as appears to be the case here), the point is not the subject of an express "agreement" between the parties and has not been specifically acknowledged in express terms by one of the parties. For this reason, the Court finds on its own that the Magistrate Judge did not clearly err in stating that the parties agreed that the Trustee purported to have the referenced authority. Accordingly, the Court finds that this portion of the Order is not clearly erroneous.

<u>Legal Conclusions</u>

Individual Defendants also contend that the Magistrate Judge made a ruling contrary to law. Specifically, they argue that the Magistrate Judge's statement that "Because Plaintiffs currently have the documents, the Court need not decide whether the Trustee had authority to produce them; it is irrelevant how Plaintiffs came to be in possession of the database" is contrary to law. (Doc. No. 196 at 8). The Court respectfully agrees that the Magistrate Judge erred in this instance, finding that actually the Magistrate Judge *did* need to decide the referenced question.

As Individual Defendants point out, how Plaintiffs came to be in possession of the Database is relevant to the outcome of the dispute before the Magistrate Judge.[9] This is because Individual Defendants claim that Plaintiffs violated the SPO and the Local Rules in their attempt to obtain unfettered access to the Database. And, in the event of a violation of a court rule or of a discovery order, the Court has the authority to remedy this violation (by, for example, preventing the transgressing party from accessing documents obtained in violation of the Local Rules or the protective order). *See Culver v. CCL Label, Inc.*, No. 03-2722, 2010 WL 11519892, at *3 (W.D. Tenn. Jan. 14, 2010) (stating that in the event of an abuse of the discovery process, "a broad spectrum of sanctions are available to the Court, which permits the Court to tailor the discipline imposed according to the culpability of the discovery abuse."), *order clarified on reconsideration*, No. 03-2722, 2010 WL 11519954 (W.D. Tenn. Jan. 20, 2010). It will leave to the assigned Magistrate Judge the determination of whether a violation of either the SPO or this Court's Local Rules occurred.

The SPO states that a party may challenge a producing party's confidential designations through a set procedure. (*See* Doc. No. 131 at 11). This procedure requires the challenging party to raise its challenge in writing to the producing party and also requires "[c]ounsel for each Party . . . to meet and confer within seven days of a challenge." (*Id.* at 11). Individual Defendants argue that Plaintiffs did not follow this procedure. They claim that because Individual Defendants were a party to the dispute, Plaintiffs had an obligation to Individual Defendants to inform them that

---

[9] There is some inconsistency in the case law as to whether (at least in the trial evidentiary context), the question of relevance (or lack thereof) is one of law. *Compare, e.g. Clark v. Martinez*, 295 F.3d 809, 814 (8th Cir. 2002) ("Questions of the relevance and admissibility of evidence are questions of federal law.") with *United States v. Tyson*, 462 F. App'x 402, 404 (4th Cir. 2012) (suggesting that because a determination of whether evidence is relevant to the crimes charged is reviewed *de novo*, it is a question of law). If one were to conclude that the question of relevance addressed by the Magistrate Judge was one of fact rather than law, the Court would find alternatively that it is clearly erroneous.

they (Plaintiffs) were challenging their privilege designations (but did not do so). Individual Defendants further assert that instead of following this agreed-upon procedure, Plaintiffs improperly went directly to the Trustee to try and gain access to the Database without meeting and conferring with counsel for Individual Defendants at all. It is worth noting that all claims against SDC were stayed due to the bankruptcy proceedings occurring at the time Plaintiffs challenged these designations. (Doc. No. 198 at 18). In response to this argument, Plaintiffs merely state that the meet-and-confer requirement applies only to confidentiality designations and not privilege designations. (Doc. No. 206 at 14). The Court will leave it to the Magistrate Judge to consider these arguments when deciding whether a violation of the SPO took place.

Individual Defendants also argue that Plaintiffs violated this Court's Local Rules. (Doc. No. 198 at 18). Local Rule 37.01 requires that, before filing any motion to resolve a discovery dispute, "counsel for the parties must confer in good faith in an effort to resolve by agreement the issues raised." Local Rule 37.01(a). This rule is directed at discovery-related motions (such as for a protective order) in particular and clearly requires a pre-filing conference of counsel. Individual Defendants claim that this procedure was not followed, as Benesch was not notified in advance that the Trustee would give Plaintiffs access to the Database. (*Id.*). Further, Individual Defendants assert that it was clear that Individual Defendants were in fact a party and therefore entitled to notice about Plaintiffs' attempt to address an ongoing and contested discovery dispute. This is because they were paying for the maintenance of the Database and all claims were stayed against SDC at that point (meaning that Individual Defendants were the only active defendants in the action at that point in time). (*Id.*). Plaintiffs seemingly try to argue that they did not in fact have to confer with counsel for Individual Defendants, because Local Rule 37.01 requires only that

counsel confer "before filing any motion." (Doc. No. 206). The Court will leave it to the Magistrate Judge to assess these arguments when considering whether Plaintiffs violated Local Rule 37.01.

Ultimately, the Court finds that the Magistrate Judge made a ruling contrary to law when he declared that "it is irrelevant how Plaintiffs came to be in possession of the database." (Doc. No. 196 at 8). That is because *if* Plaintiffs violated either the SPO or the Local Rules, then the Magistrate Judge had the authority to craft a remedy to ensure that Plaintiffs do not retain access to materials obtained from such violation(s).[10] The Court leaves to the Magistrate Judge the job of determining whether such violation(s) took place, and if so, what if any remedy is appropriate and how all of this affects the outcome of the discovery dispute at issue. Ultimately, although the Court finds that the Magistrate Judge should have decided the question that he declined to answer, that does not mean that his ultimate resolution of the instant discovery dispute was erroneous. The Court means to say only that the Magistrate Judge should take a fresh look at the discovery dispute with an eye towards whether a violation of the SPO or the Local Rules took place and, if so, how that affects the resolution of the discovery dispute—issues on which the Court currently expressly no opinion.

CONCLUSION

The Court discerns no clear error of law in the Order. But it does discern a determination (a procedural one about what needs to be decided, rather than a substantive one about what any decision should be) that is contrary to law. This constitutes grounds for granting Individual Defendants' Motion, vacating the Order, and having the Magistrate Judge address the discovery

---

[10] The Court does not suggest that the Magistrate Judge erred by failing to craft a remedy in his Order (as the Magistrate Judge ultimately did not answer the question of whether a violation of either the SPO or Local Rules occurred and therefore did not reach what would have been the potential secondary step of crafting a remedy if such a violation was indeed found). However, the Court finds that it or the Magistrate Judge could craft a remedy for a violation of either the SPO or the Local Rules (if one indeed occurred), and leaves the potential task of crafting such a remedy to the Magistrate Judge.

dispute anew. *See Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, No. 3:11-cv-00433, 2019 WL 3003647 (M.D. Tenn. Apr. 19, 2019). In addressing the discovery dispute anew, the Magistrate Judge should make the determination(s) specified in the immediately preceding paragraph.

In summary, Individual Defendants' Motion (Doc. No. 197) is GRANTED. The Magistrate Judge's Order (Doc. No. 196) is VACATED, and the discovery dispute is remanded to the Magistrate Judge for him to make a decision thereon consistent with the instant order. The condition imposed in this Court's previous order (Doc. No. 208) that Individual Defendants produce relevant documents contained within the Database and compile an appropriate privilege log within 45 days (i.e., by June 19, 2025) is hereby VACATED, insofar as Individual Defendants are no longer bound by that timeline.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE