| | | |
|---|---|---|
| ADAM FRANCHI, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 3:19-cv-00962 **(Consolidated)** |
| Plaintiff, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) | Judge Eli J. Richardson |
| SMILEDIRECTCLUB, INC., et al., | ) ) | Magistrate Judge Jeffery S. Frensley |
| Defendants. | ) ) ) ) ) | |

## <u>INDIVIDUAL DEFENDANTS' BRIEF REGARDING DATABASE DISPUTE</u>

# TABLE OF CONTENTS

I.      **INTRODUCTION**.................................................................................................... **1**

II.      **BACKGROUND** ..................................................................................................... **2**

      A.      **The Court entered a Stipulated Protective Order that required resolving privilege and document-production disputes with the producing parties.** ......................................................... **2**

      B.      **The Individual Defendants and SDC jointly produced documents and designated them as privileged.** ...................................... **4**

      C.      **With Plaintiffs' knowledge, the Individual Defendants began paying for access to and maintenance of the Database after SDC's bankruptcy.** ............................................. **6**

      D.      **Plaintiffs obtained unfettered access to the Database without the Individual Defendants' knowledge or consent.**....................................................................................................... **7**

      E.      **Plaintiffs forced the Individual Defendants into multiple courts to litigate this dispute.** ..................................................... **9**

III.      **LEGAL STANDARD**............................................................................................ **12**

IV.      **ARGUMENT**......................................................................................................... **12**

      A.      **Plaintiffs violated the Stipulated Protective Order and Local Rules when they gained access to the Database.**......................... **13**

      B.      **Plaintiffs should surrender access to the Database and pay Individual Defendants' attorneys' reasonable fees and costs.**................................................................................................... **16**

V.      **CONCLUSION** .................................................................................................... **19**

# TABLE OF AUTHORITIES

**CASES**

*Asahi Glass Co. v. Toledo Eng'g Co.*
411 F. Supp. 2d 750 (N.D. Ohio 2005) ................................................................. 18

*Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*
No. 1:21-CV-0662, 2023 WL 7323327 (N.D. Ohio Nov. 7, 2023).......................... 12, 17, 18

*Clapper v. Clark Dev., Inc.*
747 F. App'x 317 (6th Cir. 2018)......................................................................... 17

*Culver v. CCL Label, Inc.*
2722, No. 03-, 2010 WL 11519892 (W.D. Tenn. Jan. 14, 2010) .......................... 12

*DiOrio v. TMI Hosp.,*
No. 4:15CV1710, 2017 WL 2455798 (N.D. Ohio May 19, 2017) ......................... 12

*Gascho v. Glob. Fitness Holdings, LLC*
875 F.3d 795 (6th Cir. 2017)............................................................................... 12

*McMahan & Co. v. Po Folks, Inc.*
206 F.3d 627 (6th Cir. 2000)............................................................................... 17

**STATUTES**

11 U.S.C. § 362 ........................................................................................................ 6

**FEDERAL RULES**

Fed. R. Civ. P. 16................................................................................................... 12

Fed. R. Civ. P. 26................................................................................................... 14

Fed. R. Civ. P. 37................................................................................................... 17

**OTHER SOURCES**

Local R. 37.01........................................................................................................ 14

## I. **INTRODUCTION**

The Individual Defendants[1] respectfully request that the Court: (1) order Plaintiffs to surrender their access to the database housed by Consilio for this litigation (the "Database"); (2) forbid them from using or introducing any information/documents they received or otherwise learned from the Database that was not produced before SmileDirectClub, Inc.'s ("SDC") bankruptcy; and (3) reimburse the Individual Defendants for their reasonable attorneys' fees and costs arising from this dispute.

Over a year ago, Plaintiffs gained unfettered access to the Individual Defendants' litigation database without Individual Defendants' knowledge or consent. They did this after months of secret negotiations with the trustee overseeing SDC's estate and her purported counsel. Crucially, Plaintiffs obtained this access despite knowing:

1.  Plaintiffs negotiated, signed, and urged the Court to adopt a Stipulated Protective Order that set forth a specific procedure for resolving discovery and privilege disputes. That procedure requires resolving those disputes with the Producing Party.

2.  The Individual Defendants' counsel represented that it made productions and privilege designations on behalf of SDC *and* the Individual Defendants.

3.  The Individual Defendants were the only party who paid for the maintenance of and had access to the Database after SDC went bankrupt—not SDC or the Trustee.

4.  The Individual Defendants asserted that the Trustee's privilege waiver implicated privileges held by them and third parties.

---

[1] David Katzman, Steven Katzman, Susan Greenspon Rammelt, Kyle Wailes, Richard Schnall, Camelot Venture Group, Alexander Fenkell, and Jordan Katzman

Knowing these facts, Plaintiffs should have included the Individual Defendants in discussions to resolve an alleged discovery dispute regarding the document productions the Individual Defendants previously made and the Database they paid for. After all, that is what is plainly required by the Stipulated Protective Order and the Local Rules: resolve discovery disputes with the parties that produced the discovery.

But Plaintiffs did not do that. Instead, they secretly engineered access to the Database in violation of the Stipulated Protective Order, the Local Rules, and common sense. What's more, Plaintiffs have forced the Individual Defendants to expend significant resources in multiple jurisdictions to rectify Plaintiffs' violations. From motion practice in bankruptcy courts to discovery into Plaintiffs' misconduct, the Individual Defendants have devoted significant time and money to this issue.

The Court should not let Plaintiffs benefit from their misconduct. And the Court should not let the Individual Defendants bear the financial burden of correcting their violations of the Stipulated Protected Order and the Local Rules. Instead, the Court should order Plaintiffs to surrender their copy of the Database, prevent them from using any information/documents from the Database, and require them to pay the Individual Defendants' reasonable attorneys' fees and costs.

## II.     BACKGROUND

### A.     The Court entered a Stipulated Protective Order that required resolving privilege and document-production disputes with the producing parties.

Plaintiffs filed this case on October 29, 2019 against SDC and the Individual Defendants, among others. [*See* ECF #1.] A month before, similarly situated plaintiffs filed a similar action in Tennessee state court. Plaintiffs and their state counterparts allege that SDC and the Individual Defendants—officers and directors of SDC, and an entity associated with some of those officers

and directors—committed securities fraud in connection with SDC's Initial Public Offering. SDC and the Individual Defendants retained counsel to jointly represent them: Benesch, Friedlander, Coplan, & Aronoff LLP ("Benesch").

The Parties in this action negotiated and urged the Court to enter a Stipulated Protective Order. [ECF #130 (Proposed Stipulated Protective Order); ECF #131 (Stipulated Protective Order).] The Parties negotiated the definitions contained in the Stipulated Protective Order and the procedures it establishes for resolving disputes. [*Id.* at 1.] To that end, the Stipulated Protective Order allows a Producing Party to designate produced materials as Confidential. [*Id.* § III.1(b).] Producing Party "means the Party or third party that produced the Protected Material." [*Id.* § II.7.] And Confidential includes "Documents and information containing confidential client information *or that is otherwise subject to attorney-client privilege; work product; or other privilege.*" [*Id.* § II.3 (emphasis added).] In other words, "Confidential" includes any information that a Producing Party claims is privileged. [*See* ECF #214 (6/12/2024 Order) at 2 n.3 ("For privileged material (*which is a subset of confidential information*)") (emphasis added).]

Further, the Stipulated Protective Order outlines a specific procedure if a Receiving Party—a party who received production materials—disagrees with a designation. A party challenging the propriety of a Confidential designation—including privilege challenges—must first "identify in writing each challenged document by Bates number and set forth the specific reasons it does not believe the confidentiality designation is appropriate." [*Id.* § VI.3.] Then, that party has 28 days from that writing to "move the Court for relief unless the Parties agree otherwise." [*Id.* § VI.4.; *see also* ECF #214 (6/12/2024 Order) at 2 n.3 (summarizing the Stipulated Protective Order's resolution procedure).]

As part of their defense in this case, SDC retained Consilio LLC[2] to provide document-review and management services for it and the Individual Defendants. [ECF #195-1 (M. Silverstein S.D.N.Y. Decl.) ¶¶ 5–6.] Consilio agreed to: (1) provide those services for any documents to be reviewed and/or produced in this case; and (2) host and store documents at counsel's direction. [*Id.*] Benesch, as counsel for both SDC and the Individual Defendants, directed Consilio's services.

Benesch used the Database and Consilio's services to respond to and produce discovery on behalf of SDC and the Individual Defendants. At Benesch's direction, Consilio created the Database. [*Id.* ¶ 8.] To do so, Benesch worked to identify and copy potentially relevant documents from SDC's and Camelot Venture Group's servers. [ECF #201-1 (M. Silverstein Bankr. Decl.) ¶ 5.] Benesch identified individuals who worked for SDC and Camelot Venture Group whose files Consilio should copy. [*Id.*] Benesch never asked Consilio to copy every single file on SDC's or Camelot Venture Group's servers. [*Id.*] To identify potentially relevant documents within these copied files, the parties negotiated search terms. Benesch asked Consilio to apply those terms and then reviewed for responsiveness and privilege the documents upon which the search terms "hit." [*Id.*] The Individual Defendants ultimately produced 120,916 documents. [ECF #201 (4/21/2025 M. Silverstein Decl.) ¶ 4.]

The unproduced documents—consisting of documents that hit on search terms but were deemed not responsive; responsive documents that were withheld for privilege; and documents that did not hit on search terms and thus are presumptively non-responsive—remain in the

---

[2] SDC originally retained Legility, LLC to provide these services, but Consilio purchased Legility in December 2021. For ease of understanding, the Individual Defendants refer to both as Consilio.

Database.  [*See id.* ¶ 5.]  The Database contains approximately 2.2 million documents, 1.8 million of which are unproduced.  [ECF #195 (3/14/2025 M. Silverstein Decl.) ¶ 2.] 140,923 of the documents in the Database came from Camelot Venture Group's servers.  [ECF #201 (4/21/2025 M. Silverstein Decl.) ¶ 4.]

Out of the 1.8 million unproduced documents, attorneys jointly representing the Individual Defendants and SDC reviewed 1 million.  [*Id.* ¶ 3.]  The remaining approximately 770,000 documents were never reviewed because either they did not hit on targeted search terms the Parties designed to isolate potentially responsive materials or they were deemed to have a low likelihood of being responsive.  [*Id.* ¶ 5.]  Out of the approximate 1 million reviewed documents, roughly 737,000 documents were not reviewed for privilege because they were marked unresponsive to any of the Plaintiffs' discovery requests.  [ECF #195 (3/14/2025 M. Silverstein Decl.) ¶ 4.]

Benesch explicitly and repeatedly told Plaintiffs that it responded to discovery on behalf of the Individual Defendants and SDC.  When Benesch served objections to Plaintiffs' Requests for Production, it did so on behalf of all of its clients, not SDC alone.  [ECF #201-2 (1/17/2023 Resps. and Objs. To Pls. First Reqs for Prod. of Docs.).]  When Benesch agreed to produce documents, it stated that such production would be made on behalf of the SDC Defendants— a shorthand for the Individual Defendants and SDC—not SDC alone.  [*See, e.g.*, *id.* at 15 ("[T]he SDC Defendants will produce documents . . . .").]  When Benesch objected to requests based on privilege, Benesch objected for the SDC Defendants, not SDC alone.  [*See, e.g.*, *id.* at 16 ("The SDC Defendants also object because this Request seeks information protected by the attorney-client privilege and the attorney work-product doctrine.").]

Benesch also explicitly and repeatedly told Plaintiffs that it produced documents and privilege logs on behalf of the Individual Defendants and SDC. When Benesch made productions, it stated that the productions came from the SDC Defendants. [*See* ECF #201-3 at 2 (3/20/23 A. Fiorella E-mail) ("With this production, the SDC Defendants have substantially completed their production in the state-court action.").] And when Benesch withheld information from these productions as privileged, it stated that the privilege assertions were on behalf of the SDC Defendants. [*See, e.g.*, *id.* at 1 (3/21/2023 A. Fiorella E-mail attaching document titled "The SDC Defendants Privilege Log for Volume 15").]

### C. With Plaintiffs' knowledge, the Individual Defendants began paying for access to and maintenance of the Database after SDC's bankruptcy.

On September 29, 2023, in the midst of discovery here, SDC filed for bankruptcy protection under Chapter 11. [*See* ECF #157.] Due to the bankruptcy, all claims against SDC were stayed pursuant to 11 U.S.C. § 362(a). [ECF #158.] This stay meant that as to SDC, there was "an automatic stay of judicial proceedings involving the debtor defendants while the bankruptcy proceedings are ongoing." [*Id.* at 1.]

SDC ceased making payments to Consilio for its services post-bankruptcy. [ECF #195-1 (M. Silverstein S.D.N.Y. Decl.) ¶ 10.] On December 12, 2023, Consilio informed Benesch that it could not continue to provide services for work completed after the start of the bankruptcy proceedings. [*Id.*] It then locked all attorneys out of the Database. [*Id.*]

Benesch promptly informed Plaintiffs' counsel that it no longer had access to the Database. [*See id.*] The parties agreed to pause discovery until Benesch regained access to the Database. [*Id.* ¶ 11.]

A month and a half after Benesch lost access to the Database, the bankruptcy court overseeing SDC's bankruptcy proceedings converted the proceedings to a Chapter 7 liquidation

and appointed a Trustee. *In re SmileDirectClub, Inc., et al.*, No. 23-90786 (Bankr. S.D. Tex. Jan. 26, 2024), ECF #617. As a matter of law, Benesch ceased representing SDC on the date of conversion. But Benesch continued to represent the Individual Defendants, and now acted solely on their behalf.[3]

In March 2024, the Individual Defendants began paying Consilio for its services. [ECF #195-1 (M. Silverstein S.D.N.Y. Decl.) ¶ 13.] Benesch regained access to the Database on March 18, 2024. [*Id.*]

Benesch kept Plaintiffs and their state counterparts apprised of each step of the process of regaining access to the Database. And when the Individual Defendants began paying for the Database, Benesch told Plaintiffs' counsel and let them know access had been restored. [*Id.*] These facts stand in stark contrast to Plaintiffs' professed confusion over how the Individual Defendants gained access to the Database. [*See* ECF #193 at 4 n.7.]

With Benesch's Database access restored, the Parties scheduled the remaining depositions over the summer and into the fall of 2024.

**D.      Plaintiffs obtained unfettered access to the Database without the Individual Defendants' knowledge or consent.**

At around the same time that Benesch regained access to the Database and informed Plaintiffs of this access, Plaintiffs' counsel contacted the court-appointed Trustee regarding alleged issues with SDC and the Individual Defendants' discovery. [ECF #195-2 (Trustee Decl.) ¶ 12; ECF #201-4 (Pls' Em. Mot.) ¶ 21.] Plaintiffs' counsel raised supposed concerns with documents that SDC and the Individual Defendants withheld or redacted for either privacy or privilege

---

[3] After the bankruptcy, two of the Individual Defendants, Jordan Katzman and Alex Fenkell, engaged separate counsel.

reasons. [ECF #194-5 (5/9/2024 C. Wood E-mail).] The Producing Party for all of the documents flagged by Plaintiffs were SDC *and* the Individual Defendants.

Though the Trustee later conceded that she had not paid for nor even accessed the Database—indeed, she admits that she rejected the contract with Consilio as a matter of law—she waived her privilege and directed her counsel to effectuate it. Her counsel did so by providing Plaintiffs unfettered access to the Database. [ECF #195-2 (Trustee Decl.) ¶¶ 9, 12; ECF #201-5 (Trustee Dep. Tr.) at 18:8-20, 20:25–21:2, 21:19–23:18.] The Trustee and Plaintiffs agreed to this "resolution" in June 2024. [ECF #201-4 (Pls' Em. Mot.) ¶ 23.] Again, the Individual Defendants were not privy to any of this.

Also in June 2024, the Individual Defendants explicitly informed Plaintiffs and the Trustee (and her court approved counsel, Porter & Hedges) that they did not waive any privileges belonging to them and that the privilege waiver implicated privileges the Trustee could not waive. In connection with a deposition in June 2024, Plaintiffs forwarded the Individual Defendants' counsel an email from a lawyer outside of Porter & Hedges, purporting to represent the Trustee, stating that the Trustee was waiving SDC's attorney/client privilege. [ECF #195-1, Ex. 4 (6/14/24 C. Wood Email).] At the deposition, Individual Defendants' counsel objected to questions that might encroach on privileges belonging to parties other than SDC, noting that the Trustee had no power to waive those privileges. [ECF #195-1 (M. Silverstein S.D.N.Y. Decl.) ¶ 20.] After the deposition, Benesch informed the Trustee's counsel that the Database contained documents protected by privileges solely held by the Individual Defendants, as well as documents covered by a privilege that the Individual Defendants held jointly with SDC. [*Id.* ¶¶ 21–22.] Benesch stated that the Individual Defendants would not waive those privileges, and the Trustee's court-approved

Case 3:19-cv-00962    Document 219    Filed 08/08/25    Page 11 of 28 PageID #: 5478

counsel twice confirmed that the Trustee did not intend to waive any privileges she was not entitled to waive. [*Id.* ¶¶ 21–23.]

Even though Plaintiffs knew that the Individual Defendants asserted that the Trustee's privilege waiver implicated their privileges as well, they accepted access to at least a portion of the documents in the Database on July 31, 2024. [ECF #195-4 (J. McKenna Decl.) ¶ 6.] On August 7, 2024, they had access to the entire Database, and every document therein. [*Id.* ¶ 7.]

One week later—and two months after the Plaintiffs concluded their negotiations over the "discovery dispute"—the Trustee's counsel told Benesch that Plaintiffs' counsel had access to the Database. [ECF #195-1 (M. Silverstein S.D.N.Y. Decl.) ¶ 25.] The Trustee's counsel stated that it gave Plaintiffs access "to resolve a number of outstanding discovery issues." [*Id.*, Ex. 9 (8/14/2024 A. Power E-Mail).] Up until that time, the Individual Defendants had no idea that Plaintiffs' counsel had been communicating with the Trustee regarding the Database or supposed discovery disputes—especially not any disputes pertaining to documents jointly produced and designated privileged by SDC and the Individual Defendants.

Despite knowing that the Individual Defendants contested the propriety of their possession of the Database, the Plaintiffs received from the Trustee their own standalone version of the Database on October 25, 2024. [ECF #195-4 (J. McKenna Decl.) ¶ 8.]

**E.      Plaintiffs forced the Individual Defendants into multiple courts to litigate this dispute.**

Once the Individual Defendants learned that the Plaintiffs had access to the Database, the Individual Defendants told Plaintiffs that they contested the propriety of the access. On August 28, 2024, the Individual Defendants and Plaintiffs conferred on this issue, but could not reach a resolution. [ECF #184 at 3.] Accordingly, on September 9, 2024, the Parties filed a joint request for a discovery conference in this Court. [*See id.*]

Instead of waiting for this Court's further instructions, on November 1, 2024—a week after receiving their own copy of the Database—Plaintiffs filed an Emergency Motion in the bankruptcy court overseeing SDC's liquidation, asking it to retroactively condone their conduct. [ECF #201-4 (Pls' Em. Mot.).] On December 20, 2024, the bankruptcy court declined to do so, stating that the Emergency Motion raised issues that this Court should decide. [ECF #194-1 (Bcy. Hr'g Tr.) at 34:24–38:12.]

Before the bankruptcy court declined ruling on the Emergency Motion, the Individual Defendants sought discovery into (a) the discussions between the Trustee and Plaintiffs' counsel and (b) whether Plaintiffs have reviewed any of the Individual Defendants' privileged material. But Plaintiffs' counsel and the Trustee both stonewalled. Several of the Individual Defendants subpoenaed the Trustee in the bankruptcy case. During her deposition, Plaintiffs' counsel asserted a supposed common-interest privilege to obstruct questions about communications between the Trustee and Plaintiffs' counsel. [*See, e.g.,* ECF #195-1, Ex. 1 (Trustee Dep. Tr.) at 8:19-25.]

Many of the Individual Defendants also served subpoenas on Plaintiffs' counsel and counsel for the state plaintiffs, but they did not appear for their duly noticed depositions. *See, e.g.*, *In re SmileDirectClub, Inc.*, No. 3:24-mc-17 (M.D. Tenn. Jan. 13, 2025), ECF #12-2 (Robbins Geller Tr.). They each filed motions to quash after the noticed depositions. *See, e.g.*, *In re SmileDirectClub, Inc.*, No. 3:24-mc-17 (M.D. Tenn. Dec. 6, 2024), ECF #1 (Mot. to Quash). Proceedings on the motions to quash the State Plaintiffs' counsel's subpoenas are currently stayed. Plaintiffs' counsel agreed to stay briefing on their motion to quash, but did not respond to a draft joint notice sent over the winter holidays. *See In re SmileDirectClub, Inc.*, Dkt. 12 (Mem. in Supp. of Mot. for Reconsideration), at 7–8, No. 3:24-mc-17 (M.D. Tenn. Jan. 13, 2025). The Court then understandably granted Plaintiffs' counsel's motion, mistakenly believing

it was unopposed.  *See In re SmileDirectClub, Inc.*, No. 3:24-mc-17 (M.D. Tenn. Dec. 30, 2024), ECF #8 (Order).  The Individual Defendants moved Magistrate Judge Newbern to reconsider and vacate her order based on Plaintiffs' refusal to honor the agreed-to stay.  *See In re SmileDirectClub, Inc.*, No. 3:24-mc-17 (M.D. Tenn. Jan. 13, 2025), ECF #11 (Mot. for Reconsideration).  That motion has been referred to Magistrate Judge Frensley.  *In re SmileDirectClub, Inc.*, No. 3:24-mc-17 (M.D. Tenn. April 24, 2025), ECF #22.

On February 26, 2025, the Magistrate Judge asked the parties to submit a Joint Discovery Dispute Statement.  [ECF #190.]  The Magistrate Judge asked the parties to address three topics: (1) "The extent to which Plaintiffs have or had access to the disputed documents up to this point;" (2) "The current status of the database hosting by Consilio, with specific attention to the mechanics by which the Parties could access the data and whether the data is in any danger of becoming unavailable;" and (3) "Any information or arguments the Parties have as to the existence and viability of privileges or other protections over the disputed documents."  [*Id.* at 1–2.]

The Magistrate Judge then entered an order recognizing that the Individual Defendants had a privilege claim in the Database.  [*See* ECF #196 at 9–10.]  The Magistrate Judge ordered the Individual Defendants to either: (1) produce everything in the Database that is not privileged as to them, along with a privilege log; or (2) allow Plaintiffs to access the Database, identify the documents they wished to use, and then claw back anything that was privileged as to them.  [*Id.*]

The Individual Defendants asked the District Judge to vacate this order because the Magistrate Judge did not consider what effect Plaintiffs' violations of the Stipulated Protective Order and Local Rules should have.  [ECF #199.]  The District Judge, then, remanded to the Magistrate Judge to consider: (1) "whether such violation(s) took place" and (2) "if so, what if any remedy is appropriate."  [ECF #214 (6/12/2025 Order) at 13–14.]

## III. LEGAL STANDARD

If a party violates a protective order or local rules, the Court has discretion to craft an appropriate sanction/remedy. *See* Fed. R. Civ. P. 16(f) (court has discretion to award costs and fees for violations of its pretrial orders); *id.* 37(b)(2) (court may issue orders for violations of orders permitting or preventing discovery); *Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*, No. 1:21-CV-0662, 2023 WL 7323327, at *4 (N.D. Ohio Nov. 7, 2023) (civil contempt standard applicable to protective orders); *DiOrio v. TMI Hosp.*, No. 4:15CV1710, 2017 WL 2455798, at *3 (N.D. Ohio May 19, 2017) (sanctions for local rule violation). Courts have leeway to "tailor the discipline imposed according to the culpability of the discovery abuse." *Culver v. CCL Label, Inc.*, No. 03-2722, 2010 WL 11519892, at *3 (W.D. Tenn. Jan. 14, 2010), *order clarified on reconsideration*, No. 03-2722, 2010 WL 11519954 (W.D. Tenn. Jan. 20, 2010) (quotation omitted).[4]

## IV. ARGUMENT

The Court should sanction Plaintiffs' violations of the Stipulated Protective Order and Local Rules by: (1) forcing them to surrender access to the Database; (2) forbidding them from using any information or documents they took or learned from the Database; and (3) reimbursing the Individual Defendants' reasonable attorneys' fees and costs incurred in this dispute.

---

[4] The source of the Court's sanctions power can come from a few places: Rule 16(f), Rule 37(b)(2), or its inherent authority to hold a party in civil contempt. The biggest difference between the three is that whereas Rules 16(f) and 37(b)(2) simply give the Court discretion to sanction violations of orders, to reach the level of civil contempt, the party seeking contempt sanctions "must demonstrate by clear and convincing evidence that the opposing party knowingly violated a definite and specific order of the court." *See Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (internal quotations omitted).

**A.** **Plaintiffs violated the Stipulated Protective Order and Local Rules when they gained access to the Database.**

The Stipulated Protective Order and Local Rules require that a party attempt to resolve discovery disputes with the party who provided the discovery. Plaintiffs, however, did not do that. Instead, they intentionally excluded the Individual Defendants from a purported discovery dispute about productions made by the Individual Defendants and SDC, and negotiated solely with the Trustee for SDC—a non-party who represented the interests of a purely nominal party (SDC) against whom Plaintiffs had no live claims. Plaintiffs' knowing and intentional exclusion of the Individual Defendants from these discussions violated the Stipulated Protective Order and Local Rules.

The Stipulated Protective Order lays out a specific procedure for challenging a Producing Party's privilege designations. This procedure demands that a disputing party raise their challenges to the Producing Party in writing, and then ask for relief from the Court within 28 days. [ECF #131 § VI.] Here, Plaintiffs challenged production decisions and privilege designations of documents produced/designated by both SDC and the Individual Defendants, meaning both SDC and the Individual Defendants were/are the Producing Party under the Stipulated Protective Order. According to the Stipulated Protective Order, Plaintiffs had to address their challenges to both SDC *and* the Individual Defendants. But they did not do that. Instead, they intentionally cut out the Individual Defendants and instead negotiated exclusively with a party in name only (because the case against SDC was stayed)—and via SDC's Trustee's purported counsel, who had no familiarity as to the prior productions or the Database at that. There are no circumstances under the Stipulated Protective Order that permit what Plaintiffs did here—cutting out the Producing Party when challenging the Producing Party's designations.

The Local Rules, similarly, require a party to confer with all the parties who produced the discovery. Local Rule 37.01(a) requires that counsel for the *parties* must confer regarding discovery issues. And here, the Individual Defendants were among those parties. They were among the parties who jointly produced the documents in question. They were among the parties that jointly asserted the privileges in question and served the relevant privilege logs. And, at the time Plaintiffs endeavored to resolve a purported "discovery dispute," they were the only parties against whom Plaintiffs had live claims. Plaintiffs' failure to confer with the Individual Defendants, and secretly obtaining their privileged information behind their backs, violated the Local Rules.

Plaintiffs have previously made three arguments to recharacterize their conduct as somehow permissible. None are compelling.

***First***, Plaintiffs contended that the Stipulated Protective Order's procedures do not apply to privilege disputes. [ECF #206 at 14.] But, as the District Judge recognized, privilege designations are "a subset of confidential information." [ECF #214 (6/12/2024 Order) at 2 n.3.] The Stipulated Protective Order—which the Plaintiffs helped draft and urged the Court to adopt— includes privilege within the definition of Confidential. [ECF #131 § II.3.] So a privilege dispute and a Confidentiality challenge are the same thing under the Stipulated Protective Order.

***Second***, Plaintiffs asserted that the Local Rules require conferral only once a motion is certain. [ECF #206 at 14.] But the purpose of meeting and conferring is to try to *avoid* motion practice. *See* Fed. R. Civ. P. 26(c)(1) (directing that the meet-and-confer requirement is part of "an effort to resolve the dispute without court action."). Here, Plaintiffs raised a purported dispute regarding the Individual Defendants and SDC's productions, requiring Plaintiffs to meet and confer with the producing parties to try to resolve their dispute without court action. Under

- 14 -

Plaintiffs' contorted reading, the meet-and-confer requirement arose only when their filing a motion was a certainty. That interpretation makes no sense and defies the very purpose of meet and confers.

Indeed, their interpretation is at odds with their previous practice of extensive meet and confers before seeking court intervention. When Plaintiffs had a discovery dispute with the Underwriter Defendants, they met and conferred with them 4 times, and exchanged correspondence on 10 different days. [*See* ECF #138 at 2.] Plaintiffs and the Underwriters only began briefing once they reached an impasse. [*Id.*] Thus Plaintiffs' own conduct belies their assertion that they did not need to meet and confer with the Individual Defendants under the Local Rules.

***Third***, Plaintiffs seemed to argue that the Individual Defendants are not a Producing Party under the Stipulated Protective Order. [ECF #213.] However, a quick look at the substance of their argument reveals that is not actually what they argue. Instead, Plaintiffs argue that the documents belong to SDC, not the Individual Defendants. [*See id.* at 1 ("From the first papers filed surrounding this dispute, Plaintiffs have maintained that the documents at issue were SDC documents – not the Individual Defendants' documents – and, thus, the Individual Defendants had no basis to claim they were protected or privileged."]

Setting aside the point that ownership of the Database is both an open question between the Individual Defendants and the Trustee and not a question before the Court, it is irrelevant to the present dispute.[5] Instead, what is relevant is who actually produced the documents, making them a Producing Party under the Stipulated Protective Order. Plaintiffs do not and cannot dispute

---

[5] To be clear, the Individual Defendants maintain that the Database belongs to them and do not waive that argument. The Trustee admitted that she rejected the contract governing the Database as a matter of law. The Individual Defendants, then, assumed the contract. The Database is theirs.

that Benesch represented that it made productions and privilege designations on behalf of *all* of its clients, not just SDC. [*See* ECF #201-2 (1/17/2023 Resps. and Objs. To Pls. First Reqs for Prod. of Docs.); ECF #201-3 (production e-mail chain).] Benesch explicitly and repeatedly told Plaintiffs that its objections, productions, and privilege logs were on behalf of the SDC Defendants, meaning SDC and the Individual Defendants. Indeed, Plaintiffs recently acknowledged that production decisions were made on behalf of all the SDC Defendants. [*See* ECF #206 at 3 ("Defendants elected to exercise self-help and redacted ELP names"); *id.* at 5 ("in order to resolve the ongoing privilege and production issues caused by Defendants").]

Plaintiffs, then, appear to disagree about whether this repeated representation by Benesch accurately depicted who made the production. [ECF #213 at 1.] But Plaintiffs cannot simply disregard Benesch's representations because they disagree with them. Parties cannot take discovery matters into their own hands just because they disagree with the other side's explicit representations. If they could, there would be no point to discovery-dispute procedures or meet-and-confer requirements at all. Parties could simply disregard confidentiality because they think the designation is wrong. That result is untenable and contrary to the requirements of the Stipulated Protective Order, the Court's rules, and common sense.

**B.     Plaintiffs should surrender access to the Database and pay Individual Defendants' attorneys' reasonable fees and costs.**

Plaintiffs knew the following: (1) the Stipulated Protective Order they helped draft and urged the Court to approve outlined specific procedures for privilege and confidentiality disputes; (2) Benesch explicitly represented that it made productions and privilege designations on behalf of all of its clients, including the Individual Defendants; (3) after the bankruptcy, the Individual Defendants were the only parties paying for maintenance of and access to the Database; and, (4) the Individual Defendants asserted that the Trustee's privilege waiver implicated privileges

held by them and others.  Despite this knowledge, they violated the Stipulated Protective Order and Local Rules anyway.  This violation warrants a fitting sanction: surrendering access to the Database and paying attorneys' fees and costs.

While this Court has substantial discretion to frame its sanctions under several rules/sources of authority, the purpose of civil contempt sanctions is informative.  "Civil contempt sanctions are designed to enforce compliance with court orders and to compensate injured parties for losses sustained."  *Clapper v. Clark Dev., Inc.*, 747 F. App'x 317, 322 (6th Cir. 2018) (citation omitted).  With these purposes in mind, courts frame the sanction to fit the violation.  *See Best Process Sols. Inc.*, 2023 WL 7323327, at *5.

Here, at minimum, the Court should order Plaintiffs to surrender access to the Database and prevent them from using any information or documents they obtained or learned from it. This serves the purpose of enforcing compliance with a court's orders.  *See id.*  There would be no point to court orders if a party could violate them and keep the "fruits of its violation."  *See id.* This type of sanction is also consistent with other types of discovery sanctions specifically enumerated in the Federal Rules.  The Federal Rules state that sanctions can include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  *See* Fed. R. Civ. P. 37(b)(2)(A)(ii); *id.* 16(f) (specifically including Rule 37(b)(2)(A)(ii) as a possible remedy for violating a court's pretrial order); *see Best Process Sols. Inc.*, 2023 WL 7323327, at *6.

Further, the Court should order Plaintiffs to reimburse the Individual Defendants for the fees and costs incurred to rectify Plaintiffs' misconduct.  "[A]n award of attorney's fees is appropriate for civil contempt in situations where court orders have been violated."  *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000).  The award compensates the injured party

for the expense of bringing a disobedient party into compliance with court orders. *Best Process Sols. Inc.*, 2023 WL 7323327, at \*5–6. Such an award is appropriate because it reimburses a party for money spent due to the other side's misconduct, "money it otherwise would not have had to spend." *Asahi Glass Co. v. Toledo Eng'g Co.*, 411 F. Supp. 2d 750, 754 (N.D. Ohio 2005).

Reimbursing the Individual Defendants is an appropriate sanction. The Individual Defendants have spent significant time and resources to bring Plaintiffs into compliance with the Stipulated Protective Order and the Court's Rules. They have—at the very least—written 11 briefs before four different courts, taken two depositions, issued three deposition-subpoenas that the duly-subpoenaed party no-showed, and attended and prepared for a hearing before a bankruptcy court. And this does not even include the time spent meeting and conferring regarding discovery into Plaintiffs' conduct, costs and fees incurred complying with various court orders along the way, and the discovery, hearings, and briefing in the bankruptcy court regarding how Plaintiffs' misconduct affects the Trustee's ability to retain additional counsel. This is money that the Individual Defendants otherwise would not have had to spend.

Reimbursement is especially appropriate here because the Plaintiffs' violations were knowing. *See Best Process Sols. Inc.*, 2023 WL 7323327, at \*4 (civil contempt sanctions appropriate when disobedient party acted with knowledge). They knew the Stipulated Protective Order included privilege disputes in its procedures because they explicitly agreed to it and urged the Court to adopt it. They knew that the Individual Defendants were a Producing Party under the Stipulated Protective Order because Benesch explicitly and repeatedly stated they were at every phase of discovery. They knew that the Individual Defendants were the only party paying Consilio for maintenance of and access to the Database that they received a copy of. And, finally, before they received unfettered access to the Database, they knew that the Individual Defendants asserted

that the Trustee's privilege waiver implicated privileges she could not waive.  Despite knowing all of this, Plaintiffs charged ahead, obtained unfettered access to the Database, and accessed the Database.  The Individual Defendants should not bear the costs of Plaintiffs' knowing violations.

## V.      **CONCLUSION**

While the Individual Defendants maintain that giving its opposition unfettered access to its litigation database sets a dangerous precedent, and the Plaintiffs surely contend that the Individual Defendants have no say in the Trustee's privilege waiver, the Court can ignore both of those points to resolve this dispute.

Instead, all that really matters here is what Plaintiffs knew and what they did.  They knew the Individual Defendants had an interest in the Database—whether because the Individual Defendants produced the documents within it, helped create it, paid for it, or asserted privileges over documents within it.  Despite knowing about that asserted interest, Plaintiffs intentionally cut the Individual Defendants out of resolving a purported discovery dispute over these documents, and blatantly disregarded the Individual Defendants' interests when they received access to, and did access, the Database.

Such a knowing disregard of the Stipulated Protective Order, Local Rules, and Individual Defendants' explicit representations should not be blessed or rewarded.  The Court should: (1) order Plaintiffs to surrender access to the Database; (2) forbid Plaintiffs from using any documents or information they gleaned from the Database; and (3) compel Plaintiffs to reimburse the Individual Defendants for the fees and costs incurred in multiple fora to bring Plaintiffs into compliance with the Court's orders.

Dated:  August 8, 2025

Respectfully submitted,

*/s/ Michael B. Silverstein*
Steven A. Riley (BPR 6258)
Elizabeth O. Gonser (BPR 26329)
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee  37203
Telephone:  (615) 320-3700
Facsimile:  (615) 320-3737
sriley@rjfirm.com
egonser@rjfirm.com

David A. Rammelt (*pro hac vice*)
Laura Seferian (*pro hac vice*)
Benesch, Friedlander, Coplan & Aronoff, LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois  60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192
drammelt@beneschlaw.com

Michael D. Meuti (*pro hac vice*)
Andrew G. Fiorella (*pro hac vice*)
Allyson R. Cady (*pro hac vice*)
Benesch, Friedlander, Coplan & Aronoff, LLP
127 Public Square, Suite 4900
Cleveland, Ohio  44114
Telephone:  (216) 363-4500
Facsimile:  (216) 363-4588
mmeuti@beneschlaw.com
afiorella@beneschlaw.com
acady@beneschlaw.com

Michael B. Silverstein (*pro hac vice*)
Benesch, Friedlander, Coplan & Aronoff, LLP
41 South High Street, Suite 2600
Columbus, Ohio  43215
Telephone:  (614) 223-9300
Facsimile:  (614) 223-9330
msilverstein@beneschlaw.com

*Attorneys for Defendants David Katzman,
Steven Katzman, Susan Greenspon Rammelt,
Kyle Wailes, Richard Schnall, and
Camelot Venture Group*

- 20 -

/s/ Michael J. Kahn (with permission)
Steven A. Riley (BPR 6258)
Elizabeth O. Gonser (BPR 26329)
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee  37203
Telephone:  (615) 320-3700
Facsimile:  (615) 320-3737
sriley@rjfirm.com
egonser@rjfirm.com

Brian M. Lutz (*pro hac vice*)
Michael J. Kahn (*pro hac vice*)
Gibson, Dunn & Crutcher LLP
One Embarcadero Center, Suite 2600
San Francisco, California  94111-3715
blutz@gibsondunn.com
mjkahn@gibsondunn.com
Telephone:  (415) 393-8200
Facsimile:  (415) 393-8306

*Attorneys for Defendants Alexander Fenkell and Jordan Katzman*

## CERTIFICATE OF SERVICE

I certify that, on August 8, 2025 a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*/s/ Michael B. Silverstein*

# Mailing Information for a Case 3:19-cv-00962 Franchi v. SmileDirectClub, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Allyson R. Cady**
  acady@beneschlaw.com

- **Wade B. Cowan**
  wcowan@dhhrplc.com

- **James M. Ficaro**
  jmf@weiserlawfirm.com

- **Andrew J. Finn**
  finna@sullcrom.com

- **Andrew Fiorella**
  afiorella@beneschlaw.com

- **Elizabeth O. Gonser**
  egonser@rjfirm.com,dgibby@rjfirm.com,bmoore@rjfirm.com

- **Michael C. Griffin**
  michael.griffin@skadden.com

- **John S. Hicks**
  jhicks@bakerdonelson.com,trutledge@bakerdonelson.com,lkroll@bakerdonelson.com

- **James A. Holifield , Jr**
  aholifield@holifieldlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Stephen Johnson**
  SJohnson@rgrdlaw.com

- **Lewis S. Kahn**
  Lewis.Kahn@ksfcounsel.com

- **Michael J. Kahn**
  MJKahn@gibsondunn.com

- **Jay B. Kasner**
  jay.kasner@skadden.com

- **Ashley M Kelly**
  akelly@rgrdlaw.com

- **Phillip Kim**
  pkim@rosenlegal.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com

- **Ting H. Liu**
  tliu@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brian M. Lutz**
  blutz@gibsondunn.com

- **MICHAEL J MORSE**
  PKNASHLAW@AOL.COM

- **Richard A. Maniskas**
  rmaniskas@sbtklaw.com

- **Michael D. Meuti**
  mmeuti@beneschlaw.com,Docket2@Beneschlaw.com,emanzo@beneschlaw.com,rkrueger@beneschlaw.com

- **E. Powell Miller**
  epm@millerlawpc.com

- **Scott D. Musoff**
  scott.musoff@skadden.com

- **Danielle S. Myers**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Sharon L. Nelles**
  nelless@sullcrom.com

- **Christopher Nelson**
  cln@weiserlawfirm.com

- **Melinda A. Nicholson**
  Melinda.Nicholson@ksfcounsel.com

- **Michael J. Palestina**
  Michael.Palestina@ksfcounsel.com

- **Ira M. Press**
  ipress@kmllp.com

- **David Albert Rammelt**
  drammelt@beneschlaw.com,docket@beneschlaw.com,emanzo@beneschlaw.com

- **Steven Allen Riley**
  sriley@rjfirm.com,dgibby@rjfirm.com

- **Darren J. Robbins**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,ScottS@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com

- **Laura Seferian**
  lseferian@beneschlaw.com

- **Michael B. Silverstein**
  msilverstein@beneschlaw.com,Docket2@beneschlaw.com

- **John Tate Spragens**
  john@spragenslaw.com,spragenslaw@ecf.courtdrive.com,dave@spragenslaw.com

- **Jeffrey J. Stein**
  jstein@rgrdlaw.com,JStein@ecf.courtdrive.com,CSavedra@rgrdlaw.com

- **Tara L. Swafford**
  tara@swaffordlawfirm.com

- **Christopher E. Thorsen**
  cthorsen@bakerdonelson.com,pmontei@bakerdonelson.com

- **William H. Wagener**
  wagenerw@sullcrom.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,CWood@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)