UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ADAM FRANCHI, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>vs.<br><br>SMILEDIRECTCLUB, INC., et al.,<br><br>          Defendants. | Civil Action No. 3:19-cv-00962<br>**(Consolidated)**<br><br><u>CLASS ACTION</u><br><br>Judge Eli J. Richardson<br>Magistrate Judge Jeffery S. Frensley<br><br>PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S JUNE 12, 2025 ORDER |

**TABLE OF CONTENTS**

                                                                                                                                            **Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND .....................................................................................................2

    A.     SDC Files for Bankruptcy Protection While Numerous Disputes Remain
        Unresolved Regarding Defendants' Improper and Incomplete Pre-Petition
        Document Productions.........................................................................................2

    B.     Plaintiffs Attempt to Resolve the Deficiencies in SDC's Document
        Production with the Chapter 7 Trustee; the Trustee Waives SDC's
        Privilege .............................................................................................................4

    C.     The Chapter 7 Trustee Provides Plaintiffs Access to SDC's Books and
        Records, While the Individual Defendants Seek to Delay Resolution of
        Any Dispute ........................................................................................................7

    D.     The Individual Defendants Serve Improper Discovery Demands on
        Robbins Geller and Others................................................................................10

    E.     The Emergency Motion Is Denied and Orrick Is Appointed Over the
        Individual Defendants' Objections ...................................................................11

    F.     This Court Orders the Individual Defendants to Produce Previously
        Withheld Documents .........................................................................................12

    G.     The Individual Defendants Object to This Court's Order, and the District
        Court Issues a Narrow Remand ........................................................................14

III.    ARGUMENT..........................................................................................................15

    A.     Plaintiffs Did Not Violate the Local Rules.......................................................15

    B.     Plaintiffs Did Not Violate the Stipulated Protective Order ..............................15

    C.     The Sanctions the Individual Defendants Seek Are Unwarranted.....................16

        1.     Legal Standard ......................................................................................16

        2.     No Sanctions Are Warranted Because Plaintiffs Did Not Violate
            the Local Rules or the Stipulated Protective Order ..............................17

        3.     The Draconian Sanction Sought by the Individual Defendants Is
            Not Justified Here ..................................................................................17

    D.     Plaintiffs' Conduct Does Not Change the Individual Defendants'
        Discovery Obligations ......................................................................................18

4929-0995-1323.v1

IV.    CONCLUSION................................................................................................................19

4929-0995-1323.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Chandler v. Brown*,
126 F.4th 1178 (6th Cir. 2025),
*vacated on other grounds*,
136 F.4th 689 (6th Cir. 2025) ...................................................................................17

*Ciccio v. SmileDirectClub, LLC*,
No. 3:19-CV-00845 (M.D. Tenn.) ...............................................................................4

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*,
307 F.3d 501 (6th Cir. 2002) ...................................................................................17

*In re Popple*,
532 B.R. 581 (Bankr. M.D. Pa. 2015) .......................................................................4

*In re Richard B. Vance and Co.*,
289 B.R. 692 (Bankr. C.D. Ill. 2003).........................................................................5

*In re Royce Homes, LP*,
449 B.R. 709 (Bankr. S.D. Tex. 2011) .......................................................................7

*In re Rsrv. Fund Sec. & Derivative Litig.*,
275 F.R.D. 154 (S.D.N.Y. 2011) ...............................................................................7

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980)..................................................................................................17

*United Nat'l Funding, LLC v. JetDirect Aviation, Inc.*,
2012 WL 2514929 (D. Nev. June 28, 2012)...............................................................5

*United States ex rel. Long v. GSD&M Idea City LLC*,
2012 WL 12925016 (N.D. Tex. May 15, 2012) .........................................................7

*United States v. Case*,
654 F. Supp. 2d 747 (E.D. Tenn. 2009).............................................................17, 18

*United States v. Maples*,
60 F.3d 244 (6th Cir. 1995) .....................................................................................17

*Youn v. Track, Inc.*,
324 F.3d 409 (6th Cir. 2003) ...................................................................................16

*Young v. Aramark Corr. Serv. LLC*,
2022 WL 20487073 (N.D. Ohio Nov. 2, 2022)........................................................17

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 11 ................................................................................................................................16
    Rule 26(b)(1)........................................................................................................................13
    Rule 30(b)(6)........................................................................................................................10
    Rule 37 ................................................................................................................................16

Local Rules
    Rule 7.01(c).........................................................................................................................12
    Rule 37.01...........................................................................................................................15
    Rule 37.01(a).......................................................................................................................15

4929-0995-1323.v1

In accordance with the Parties' July 31, 2025 Joint Stipulation (ECF 217), Plaintiffs respectfully submit this Supplemental Brief in Response to the Court's June 12, 2025 Order.

## I.      INTRODUCTION

On June 12, 2025, Judge Richardson issued an order vacating this Court's April 7, 2025 order (ECF 196) solely "insofar as Individual Defendants are no longer bound," by the timeline this Court previously set in its May 5, 2025 order (ECF 208).  ECF 214 at 14.  Judge Richardson remanded this dispute solely for consideration of the following questions: (i) whether Plaintiffs violated the Local Rules or the Stipulated Protective Order; (ii) if so, what remedy, if any, is appropriate; and (iii) how, if at all, the resolution of the prior questions affects the resolution of the underlying dispute.  *Id.* at 13-14.[1]

Plaintiffs did not violate the Local Rules or the Stipulated Protective Order (ECF 131) in any way, shape, or form.  Indeed, it is hard to understand how the Individual Defendants can even credibly advance such contentions as the plain text of the rule and the portion of the Stipulated Protective Order they cite have no bearing whatsoever on the questions at issue.  Rather, the Individual Defendants' assertions appear to be designed, once again, solely to delay the resolution of this dispute and this case, and should be rejected out of hand.

Because Plaintiffs did not violate the Local Rules or the Stipulated Protective Order, there is no remedy the Individual Defendants could be entitled to that would be appropriate or necessary.  On the contrary, the record shows that Plaintiffs have diligently sought to rectify a woefully incomplete discovery record in this case that was caused in the first instance by SDC and the Individual Defendants' violations of the Stipulated Protective Order.  The Individual Defendants chose to

---

[1]   All capitalized terms not otherwise defined herein have the same meaning as set forth in Plaintiffs' Opposition to the Individual Defendants' Motion for Review of Nondispositive Order of Magistrate Judge (ECF 206).  Unless otherwise noted, citations are omitted and emphasis is added.

4929-0995-1323.v1

redact or withhold relevant and responsive documents and information, which they likely knew would be detrimental to their defenses, pursuant to baseless claims of privilege.

This Court should grant Plaintiffs the relief they previously sought – namely, that Plaintiffs "identify the documents they would like to use and give the Individual Defendants the opportunity to claw them back." ECF 196 at 9. As this Court previously held, "[t]his is reasonable, and shifts the expense of reviewing the documents to Plaintiffs, which seems appropriate under the circumstances." *Id.* While "the Individual Defendants do not want Plaintiffs or their attorneys to view potentially privileged documents," as this Court previously recognized, "the Individual Defendants cannot both insist that some of the documents are privileged *and* refuse to [identify] them and produce a privilege log." *Id.* (emphasis in original).

Moreover, it bears emphasizing again that in the over 13 months since the Individual Defendants became aware of this dispute, ***they have never once identified a single document that is actually subject to a privilege that has not been waived, nor have they sought to claw back a single document***. The Individual Defendants cannot be permitted to continue this charade. Their weaponization of baseless and unsubstantiated privilege claims in order to delay the resolution of this case must come to an end, and Plaintiffs should be permitted to review the SDC books and records appropriately provided to them by SDC, through its Trustee, immediately.

## II.    BACKGROUND

### A.    SDC Files for Bankruptcy Protection While Numerous Disputes Remain Unresolved Regarding Defendants' Improper and Incomplete Pre-Petition Document Productions

Before SDC filed for bankruptcy protection in September 2023, the Parties had not yet completed discovery, which at that time they agreed would be completed by November 15, 2023. ECF 152, ¶¶6, 10. With the case stayed as against SDC, discovery ground to a halt for several months while SDC moved forward with bankruptcy proceedings. *E.g.*, ECF 175.

4929-0995-1323.v1

One major unresolved discovery issue at the time of SDC's bankruptcy filing was the adequacy of SDC's privilege logs. The massive logs, which spanned over 77,000 entries, were patently deficient. Plaintiffs believed – and still maintain – that SDC abused the privilege designation and redaction process, and violated the Stipulated Protective Order in an attempt to avoid disclosing information that could support the allegations against them. *E.g.*, *In re Subpoena*, ECF 17-1 (Ex. 1).

For example, during the negotiation of the Stipulated Protective Order, Defendants sought an agreement that they could redact the names of SDC's Endorsed Local Providers ("ELPs") – the dentists or dental practices that were paid by SDC to prescribe its aligners. *See Id.*, ECF 17-2 (Ex. 2) at 9 n.2. Plaintiffs refused such an agreement because the inadequate treatment by ELPs was central to Plaintiffs' allegations,[2] and because there was no basis in the Federal Rules of Civil Procedure to redact such information. Accordingly, the final version of the Stipulated Protective Order did not include a provision allowing for such redactions. *Compare In re Subpoena*, ECF 17-2 (Ex. 2) at 9 n.2, *with* ECF 131 at 3. Nevertheless, SDC redacted ELP names and identifiers in at least ***2,189 documents***, blatantly violating the Stipulated Protective Order. ECF 194-5 (Ex. E) at 1; *In re Subpoena*, ECF 17-1 (Ex. 1).

SDC also redacted or withheld ***1,081*** documents on the basis that they contained "Protected Content," which is not a legitimate basis for withholding or redacting information. *See* ECF 194-5 (Ex. E) at 1-2. In many cases, Defendants appeared to use this catch-all designation to withhold information they simply did not want to disclose, such as criticism on social media or critical media articles. *See id.*

---

[2]   *E.g.*, ECF 85, ¶¶11, 57(c), 59 (c-d, h), 112.

Other instances of improper redactions included: (i) 231 documents where SDC failed to provide any basis for their redactions whatsoever; (ii) 3,041 documents where no attorneys appeared to be present; and (iii) 9,751 documents that included third parties, thereby waiving any privilege. *See id.* at 2-3.

Moreover, SDC persisted with these improper redactions despite an order from a Special Master, which rejected similar or ***identical*** contentions almost ***two years prior to SDC's bankruptcy***. *See* Order on Joint Discovery Dispute Statement, *Ciccio v. SmileDirectClub, LLC*, No. 3:19-CV-00845, ECF 303 (M.D. Tenn.). There, amongst other things, the Special Master: (i) rejected SDC's attempts to redact so-called "'Protected Content'"; (ii) rejected SDC's invocation of the common interest privilege; (iii) rejected SDC's attempts to withhold third-party communications; and (iv) rejected SDC's attempts to withhold documents concerning regulatory advice or activities. *Id.*[3] In short, for at least the past three years, Defendants have improperly withheld or redacted thousands of documents without any defensible basis. To this day, Plaintiffs have been unable to review these documents.

**B.      Plaintiffs Attempt to Resolve the Deficiencies in SDC's Document Production with the Chapter 7 Trustee; the Trustee Waives SDC's Privilege**

After SDC's Chapter 11 case converted to Chapter 7 and the Trustee was appointed, Plaintiffs wrote to the Trustee identifying their privilege concerns and seeking to resolve them. ECF 194-5 (Ex. E).[4] Plaintiffs also sought the production of documents from certain additional

---

[3]      After giving defendants an opportunity to submit further evidence, the Special Master in *Ciccio* held that defendants had still failed to substantiate the vast majority of their claims. *See generally*, *Ciccio*, ECF 319. These rulings were upheld by both the Magistrate Judge and the District Judge. *Ciccio*, ECFs 355, 369.

[4]      While this case was stayed as to SDC at that time, the automatic stay ***does not*** prevent a debtor from participating in discovery aimed at uncovering wrongdoing against a non-debtor defendant. *See, e.g.*, *In re Popple*, 532 B.R. 581, 587 (Bankr. M.D. Pa. 2015) (recognizing the "distinction

- 4 -

custodians which, during the course of discovery, it became apparent should have been included in Defendants' document searches. *Id.*

Meanwhile, even after the Bankruptcy Case converted to Chapter 7 and SDC ceased operations, the Individual Defendants **still** attempted to withhold relevant documents using bogus claims of privilege. On June 15, 2024, Plaintiffs deposed Dr. Marc Ackerman, a former SDC ELP who Defendants secretly paid to lobby lawmakers for favorable legislation. Dr. Ackerman took meetings and wrote articles claiming to be the head of the "American Teledentistry Association," without disclosing that he and the organization were both secretly funded by SDC. *See In re Subpoena*, ECF 17-4 (Ex. 4). In advance of Dr. Ackerman's deposition, Benesch provided Plaintiffs with a privilege log listing nearly 100 documents that they withheld, purportedly because the documents included privileged information. *Id.*, ECF 17-5 (Ex. 5). As Plaintiffs pointed out, however, neither Benesch nor Ackerman had standing to assert SDC's privilege, which by now belonged to and was controlled by the Trustee. *Id.*, ECF 17-6 (Ex. 6) at 6. Despite meeting and conferring, and attempting to compromise, Benesch and/or Ackerman refused to produce any of the documents they had wrongfully withheld. *Id.*

In order to determine what SDC's position actually was with respect to Benesch and/or Ackerman's improper privilege assertions, Plaintiffs asked counsel for the Trustee whether the Trustee intended to assert SDC's privilege with respect to any questions that might be asked at Dr. Ackerman's deposition. *See id.*, ECF 17-7 (Ex. 7) at 3-4. Counsel to the Trustee responded that

---

between seeking information about a debtor versus seeking to recover a claim against a debtor" during an automatic stay to discovery due to a bankruptcy); *United Nat'l Funding, LLC v. JetDirect Aviation, Inc.*, 2012 WL 2514929, at *4 (D. Nev. June 28, 2012) (concluding that "the automatic stay does not protect [the debtor] from complying with discovery requests in a multi-defendant action where the debtor . . . is a Defendant"); *In re Richard B. Vance and Co.*, 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003) ("discovery pertaining to claims against the bankrupt's codefendants is not stayed, even if the discovery requires a response from the debtor").

4929-0995-1323.v1

"SmileDirectClub, acting through the Trustee, does not and will not instruct Dr. Ackerman to refrain from answering any question on the ground that it may call for the disclosure of communications protected by SmileDirectClub's attorney-client privilege, so long as such communications occurred before the filing of SmileDirectClub's bankruptcy petition." *Id.* Counsel for the Trustee confirmed the next day that it was, more broadly "waiv[ing] the privilege for *any* pre-petition communications." *Id.* at 1.[5]

This unequivocal waiver applied to all of SDC's documents, including the books and records at issue in this dispute, which were controlled by the Trustee and belonged to SDC's estate. While the Individual Defendants now claim that the Trustee did not have the ability to allow Plaintiffs access to these books and records, SDC's former General Counsel, Susan Rammelt, *who is a defendant in this case*, expressly told the Trustee that the Consilio books and records at issue belonged to SDC's estate. ECF 201-5 (Ex. E) at 26:8-18 ("A.: . . . [A]ll of the documents within Consilio are the debtors' records. . . . Q.: How do you know that it's the debtors' account? A.: *That's what was represented to me by Susan Rammelt when I took over the case*.").[6] Indeed, Rammelt even provided the Trustee with a spreadsheet that helpfully showed exactly which categories of books and records were being maintained by Consilio on behalf of SDC – conduct which is inexplicable if Rammelt did not intend for the Trustee to take possession of the documents. *Id.*, ECF 17-10 (Ex. 10).

Not only did the books and records belong to SDC, but SDC's former executives and employees – including the Individual Defendants – had no reasonable expectation of privacy, and

---

[5]   In spite of this, Benesch *still* improperly asserted SDC's privilege at Ackerman's deposition.

[6]   Plaintiffs were informed that prior to being given access to the books and records, any work-product that had been created by SDC's prior counsel had been removed from the databases. *See In re Subpoena*, ECF 17-11 (Ex. 11) at 4.

- 6 -

thus no privilege rights, as to the books and records of the SDC estate *even before the Trustee's waiver*. SDC's data policy explicitly stated that "[u]sers should be aware that the data they create on the corporate systems *remains the property of SmileDirectClub* and that they should have *no expectation of privacy* with respect to any activity on such system and all such activity is subject to monitoring." ECF 194-4 (Ex. D) at 38 of 41.[7]

While the Individual Defendants have asserted that "[t]he Database also contains documents over which the Individual Defendants hold a privilege that the Trustee cannot waive" (ECF 198 at 14), these claims are baseless and unsubstantiated. Indeed, to this day, they have done *nothing* to substantiate their claims of privilege for even a single document, nor have they attempted to claw back any documents.

**C.    The Chapter 7 Trustee Provides Plaintiffs Access to SDC's Books and Records, While the Individual Defendants Seek to Delay Resolution of Any Dispute**

In August 2024, after waiving SDC's privilege for pre-petition communications, and in order to resolve the rampant privilege and production issues identified by Plaintiffs, the Trustee provided Plaintiffs with access to certain of SDC's books and records, which Rammelt had previously

---

[7]    The 2019 version of SDC's Team Member Handbook produced in this action contains identical language. *See* Exhibit A attached to the concurrently filed Declaration of Christopher M. Wood in Support of Plaintiffs' Supplemental Brief in Response to the Court's June 12, 2025 Order (unless otherwise noted, all "Ex. _" citations are to the Wood Declaration filed herewith). The "particular language of a company's policy regarding the treatment of e-mail and other electronically stored information on company computers is 'critically important in determining whether an employee has a reasonable expectation of privacy in such materials.'" *United States ex rel. Long v. GSD&M Idea City LLC*, 2012 WL 12925016, at *4 (N.D. Tex. May 15, 2012) (quoting *In re Rsrv. Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 160 (S.D.N.Y. 2011)). When, as here, a company policy "'warns employees that their email communications will be automatically saved and are subject to review [by the company],'" it weighs heavily in favor of finding that employees waived privilege as to all materials on their employer's systems. *Id.* (alteration in original); *see also In re Royce Homes, LP*, 449 B.R. 709, 740 (Bankr. S.D. Tex. 2011) ("[T]hird parties undeniably had access to [an employee's] e-mails by virtue of their mere placement on [company's] server . . . [where the company] could monitor [the employee's] e-mails at any time.").

- 7 -

identified as being property of SDC's estate.  ECF 184 at 2.  On August 14, 2024, the Trustee, through her counsel, wrote to Benesch, counsel for most of the Individual Defendants, and informed them that "in order to resolve a number of outstanding discovery issues raised by the plaintiffs in the securities class action, the Trustee has recently provided them with access to certain SDC documents hosted [by Consilio]."  *In re Subpoena*, ECF 17-8 (Ex. 8) at 3.[8]

Hours later, after an inquiry from Benesch, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), counsel for Plaintiffs, offered to discuss the matter with Benesch the very next day.  *Id.* at 2.  But Benesch failed to respond.

On Tuesday, August 20, 2024, Robbins Geller again wrote to Benesch, stating: "David – I have not heard back from you.  I intend to reach out to the underwriters to facilitate their access to the documents this week.  I assume the individual defendants already have access."  *Id.*  Benesch responded asking, "[w]hat is your availability this week to discuss," to which Robbins Geller promptly responded: "Anytime Wednesday."  *Id.* at 1.  But Benesch failed to respond.

On Thursday, August 22, 2024, Benesch asked Robbins Geller, "are you free later today – after 4 pm CST," to which Robbins Geller promptly responded: "Sure.  Anytime 4-6 central."  *Id.*  But Benesch failed to respond.

On Friday, August 23, 2024, Robbins Geller wrote to Benesch and counsel for the Underwriter Defendants (Sullivan & Cromwell LLP), stating:

> The Trustee recently provided plaintiffs access to a database of SDC documents which has historically been hosted by Conselio [sic].

---

[8]   While Plaintiffs were negotiating with the Trustee in order to resolve their discovery disputes, the Individual Defendants and their counsel at Benesch **had somehow already secured access to SDC's books and records**, including presumably a vast quantity of documents that were subject to SDC's privilege claims, for which **such privilege had yet to be waived**, and which neither Benesch nor the Individual Defendants appear to have had any right to access.

- 8 -

> We'd like to discuss the extent to which defendants have had access to these documents historically, as well as the best way to make these documents available to all parties. Please let me know a good time for a call.

ECF 207-1 (Ex. A). But Benesch, Gibson Dunn, and Sullivan & Cromwell all failed to respond.

On August 27, 2024, Robbins Geller again wrote to Benesch, stating: "It's been almost two weeks since Aaron [Power]'s email, and I've offered multiple times to confer. I'm going to assume at this point you don't see any need to discuss this." *In re Subpoena*, ECF 17-8 (Ex. 8) at 1.

Finally, Benesch suggested meeting and conferring at a deposition that was scheduled to take place the following day in Nashville. At a break in the deposition, Robbins Geller discussed the scope of the books and records made available by the Trustee to Plaintiffs. Robbins Geller also proposed to resolve any potential disputes with respect to access to such books and records by way of the claw-back procedure outlined in the Stipulated Protective Order. Robbins Geller told Benesch that if the Parties could not reach an agreement with respect to the books and records, Robbins Geller would insist on filing a joint discovery dispute statement with the District Court no later than September 9, 2024 to resolve the matter. *See id.*, ECF 17-11 (Ex. 11) at 4.

On September 4, 2024, Robbins Geller again identified for Benesch the scope of SDC's books and records made available by the Trustee via email. *Id.* Robbins Geller also noted that "[a]s I mentioned last week, we need at the very least to file a joint discovery dispute statement with the [District] Court by Monday if we haven't reached an agreement on how to treat these documents." *Id.*

On September 6, 2024, Benesch suggested that they needed "additional information," before filing a discovery dispute statement. *Id.* But Robbins Geller insisted on filing the Joint Discovery Dispute Statement to request a discovery conference as the Parties had previously agreed to, and sent Robbins Geller's portion of the statement to Benesch that same day. *Id.* at 2.

- 9 -

On September 9, 2024, Benesch again tried to delay filing the Joint Discovery Dispute Statement: "Can we hold off for a few days?" *Id.* at 2. Robbins Geller insisted on apprising the District Court of the dispute, and the Parties' Joint Discovery Dispute Statement was filed that evening. ECF 184.

In the Joint Discovery Dispute Statement, the Individual Defendants took the position that the statement raised questions that should be resolved by the Bankruptcy Court: "The Individual Defendants request that the Court issue a briefing schedule so that these novel issues can be resolved on a more complete record and with the opinion of the Bankruptcy Court." *Id.* at 4. Therefore, and with deadlines looming, on November 1, 2024, Plaintiffs filed the Emergency Motion in the Bankruptcy Case seeking guidance on the Parties' dispute. ECF 201-4 (Ex. D).

### D. The Individual Defendants Serve Improper Discovery Demands on Robbins Geller and Others

Subsequently, Benesch and Robbins Geller met and conferred on numerous occasions regarding whether the Parties could agree to a proposed order to resolve the Emergency Motion. *In re Subpoena*, ECF 17-15 (Ex. 15) at 1; *id*, ECF 17-16 (Ex. 16) at 4. When the Parties were unable to reach an agreement, Benesch commenced an onslaught of discovery demands; between November 26, 2024 and December 9, 2024, Benesch *served 12 separate subpoenas duces tecum with subpoenas for depositions* on counsel for Plaintiffs in this action, plaintiffs' counsel in the state action, the Trustee, Consilio LLC, and Orrick, Herrington & Sutcliffe ("Orrick") (Orrick was retained by the Trustee to prosecute claims against the Individual Defendants, and potentially others, for SDC-related misconduct). *Id.*, ECF 3-2 (Ex. B), ECFs 3-4 – 3-5 (Exs. D-E), ECFs 17-20 – 17-28 (Exs. 20-28).[9] These discovery demands began two days before the Thanksgiving holiday and

---

[9] Many of these subpoenas were facially defective, including because they failed to provide a place of compliance and failed to comply with Federal Rule of Civil Procedure 30(b)(6).

- 10 -

commanded compliance with broad, irrelevant, and improper discovery requests in as little as ***one business day*** from the date of service. *See, e.g.*, *id.*, ECF 3-5 (Ex. E) (deposition and document subpoena to Robbins Geller dated December 3, 2024, demanding production by December 4, 2024).

Nevertheless, counsel for the Plaintiffs met and conferred with counsel for the Individual Defendants regarding the discovery. During that meet and confer, Benesch stated that if Plaintiffs would agree to drop its Emergency Motion, Benesch would drop their discovery demands. Plaintiffs refused, and told Benesch that their discovery demands were improper and in violation of the Federal Rules of Civil Procedure. On December 5, 2024, two days after the latest onslaught of subpoenas and the day before the noticed depositions, counsel for Plaintiffs informed counsel for the Individual Defendants that they did not intend to comply with the subpoenas, and would instead move to quash the subpoenas. *Id.*, ECF 17-30 (Ex. 30) at 1. The motion to quash was filed on December 6, 2024. *See id.*, ECFs 1 – 2.

### E. The Emergency Motion Is Denied and Orrick Is Appointed Over the Individual Defendants' Objections

On December 20, 2024, Judge Lopez held a status conference where he declined to resolve the Emergency Motion filed in the Bankruptcy Case, stating that he believed the issues raised should be resolved in this Court instead. *In re Subpoena*, ECF 17-31 (Ex. 31) at 35.

At the same time, the Trustee was seeking approval from the Bankruptcy Court for her retention of Orrick to prosecute claims against certain of the Individual Defendants. The Individual Defendants challenged the retention and took extensive discovery, much of which centered on the Trustee's decision to provide Plaintiffs here with access to SDC's books and records.

The Bankruptcy Court approved Orrick's retention over the Individual Defendants' objections, and noted that "extensive discovery" had been taken in connection with the dispute. Ex.

- 11 -

B, ¶8.[10]  The Bankruptcy Court subsequently denied the Individual Defendants' motion for reconsideration, noting that the Individual Defendants "'appear[] to want a second bite at the apple to avoid potential litigation'" from the Trustee and Orrick.  Ex. D at 2.

Indeed, after hundreds of pages of briefing, voluminous discovery, and multiple evidentiary and in-person hearings, the Bankruptcy Court never concluded that the Trustee improperly provided Plaintiffs with access to SDC's books and records, nor that the Trustee's counsel, Orrick, improperly facilitated Plaintiffs' access to the books and records at the Trustee's direction.[11]

### F.  This Court Orders the Individual Defendants to Produce Previously Withheld Documents

On January 14, 2025, Plaintiffs filed a motion, pursuant to Local Rule 7.01(c), to ascertain the status of the Parties' Joint Discovery Dispute Statement that had been pending since September 9, 2024.  ECF 186.  On February 26, 2025, the Court granted the motion to ascertain status.  ECF 190.  To assist the Court in the best resolution of the pending discovery dispute, the Court ordered further briefing on three topics: (1) the extent to which Plaintiffs have or had access to the disputed documents up to this point; (2) the current status of the database hosted by Consilio, with specific attention to the mechanics by which the Parties could access the data and whether the data is in any

---

[10]  This discovery included "more than a dozen objections, replies, and sur-replies, hundreds of pages of supporting affidavits, voluminous discovery and discovery disputes (including three depositions of [the Trustee] . . . ), multiple evidentiary hearings on the retention applications running a combined 13 hours, and nearly 200 documentary exhibits submitted by the Chapter 7 Trustee, the DIP Agent, and the Insider Defendants."  Ex. C at 3-4 (footnote omitted).

[11]  In approving Orrick's retention, the Bankruptcy Court specifically found that the Trustee's waiver was allowable: "Now I know about this database. I know everything that happened in the database, I know what was done.  And Orrick did certainly send the emails, but the evidence has shown me that it was all done at the request of the Trustee.  The Trustee holds the privilege for the Estate, the Trustee has the right to preside over the Estate, and that's what she did. . . .  Orrick doesn't have an adverse interest to the Estate. They were following what the Estate asked them to do . . . .  I'm comfortable, now that these issues got vetted out, that I'm aware of everything, . . . [and] what happened before, between June and November."  Ex. E at 209:23-212:17.

- 12 -

4929-0995-1323.v1

Case 3:19-cv-00962   Document 220   Filed 08/08/25   Page 17 of 26 PageID #: 5512

danger of becoming unavailable; and (3) any information or arguments the Parties have as to the existence and viability of privileges or other protections over disputed documents. *Id.* at 1-2. On March 14, 2025, per the Court's February 26, 2025 order (ECF 190), the Parties submitted their Supplemental Joint Discovery Dispute Statement. ECF 193.

Throughout varied and voluminous briefing leading up to this Court's decision, and in all the meet-and-confer calls and meetings between the Parties, the Individual Defendants ***only once*** suggested that Plaintiffs violated the Local Rules and/or the Stipulated Protective Order. In a single, off-hand remark in the Supplemental Joint Discovery Statement, they wrote "Plaintiffs did so without abiding by the Protective Order in this case [or] following the Local Rules for discovery disputes . . . ." ECF 193 at 10. They did not explain what rules or provisions Plaintiffs violated, or explain how Plaintiffs violated them.

On April 7, 2025, this Court issued a well-reasoned, ten-page opinion that "balance[d] the needs of the Parties, considering all of the proportionality factors set forth in Rule 26(b)(1)." ECF 196 at 10. The Court noted that it "understands that the Individual Defendants do not want Plaintiffs or their attorneys to view potentially privileged documents, but the Individual Defendants cannot both insist that some of the documents are privileged ***and*** refuse to [identify] them and produce a privilege log." *Id.* at 9 (emphasis in original). Accordingly, this Court observed that "[t]here is no way to resolve the situation without the Individual Defendants identifying the documents that they contend are protected." *Id.* at 8. The Court ordered the Individual Defendants by no later than May 6, 2025, to run the agreed search terms against the documents and produce those that hit on the terms, apart from any they contend are privileged, or in the alternative, accept Plaintiffs' proposal and review only the documents that Plaintiffs identified, after a review, as documents they intend to use. *Id.* at 10.

- 13 -

**G. The Individual Defendants Object to This Court's Order, and the District Court Issues a Narrow Remand**

On April 21, 2025, the Individual Defendants objected to this Court's April 7, 2025 order, including seeking an emergency stay of the order. ECF 197-201. Suddenly, the Individual Defendants' fleeting reference to violations of the Local Rules and the Stipulated Protective Order took center stage. According to the Individual Defendants, this Court "ignored the underlying facts" and committed "clear legal errors" because it failed to analyze these purported violations, which they previously failed to articulate with any specificity. ECF 198 at 2, 19.

The District Court rejected the vast majority of the Individual Defendants' arguments on reconsideration. Indeed, the District Court did not disagree with the Court's findings that: (1) this Court had the power to rule on the discovery dispute presented; (2) the documents at issue "formerly belonged to SDC"; and (3) the Individual Defendants are required to produce relevant, non-privileged documents. ECF 196 at 7; ECF 214 at 13-14 (affirming that the Individual Defendants still must "produce relevant, documents [in their possession] and compile [an] appropriate privilege log" here). Moreover, the District Court: (1) did not find that Plaintiffs violated any Local Rule or clause of the Stipulated Protective Order; (2) did not find – or even suggest – that Plaintiffs wrongfully obtained the documents at issue; and (3) declined to impose any sanctions at all, even while expressly acknowledging that it had the power to do so. *Id.* at 13 n.10.

Rather, the District Court took issue with only one clause of one sentence of this Court's order, remanding to consider: (i) whether Plaintiffs violated: (a) the Local Rules; or (b) the Stipulated Protective Order; (i) if so, what remedy, if any, is appropriate; and (ii) how, if at all, the resolution of the prior questions affects the resolution of the underlying dispute. *Id.* at 13-14.

- 14 -

## III. ARGUMENT

### A. Plaintiffs Did Not Violate the Local Rules

The Individual Defendants claim that Plaintiffs "flouted the Local Rules" by not meeting and conferring with them in advance of the Trustee's production, which they claim was required by Local Rule 37.01(a). ECF 198 at 18. The Individual Defendants are wrong.

Local Rule 37.01(a) provides as follows:

LR 37.01 – DISCOVERY MOTIONS

(a) Good Faith Attempt at Resolution. Unless provided otherwise in a case management order or other order, before filing any motion to compel discovery, to quash a subpoena, or for a protective order, counsel for the parties must confer in good faith in an effort to resolve by agreement the issues raised.

Plaintiffs did not file a motion to compel discovery, to quash a subpoena, or for a protective order. Rather, through meeting and conferring with the Trustee, who controlled SDC's documents and privilege, Plaintiffs successfully resolved a discovery dispute concerning SDC's documents without the need to file a motion. Thus, Local Rule 37.01(a) was plainly never implicated, much less violated. The Individual Defendants cannot credibly contend otherwise.

### B. Plaintiffs Did Not Violate the Stipulated Protective Order

The Individual Defendants claim Plaintiffs violated §VI of the Stipulated Protective Order by failing to meet and confer with them before they "challenged the privilege designations of documents." ECF 198 at 18 (citing ECF 131, §VI). The cited section of the Stipulated Protective Order refers to "Protected Materials," which is defined as material designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by the Parties pursuant to the Stipulated Protective Order. *See* ECF 131 at 4. Section VI reads in its entirety as follows:

VI. DE-DESIGNATION AND CHALLENGING OF PROTECTED MATERIAL

1. Any Party may request a change in the designation of Protected Material. Any Protected Material shall be treated as designated until the change is completed.

- 15 -

2. Any Party may challenge a designation of confidentiality at any time. A Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

3. The Party challenging a confidentiality designation shall identify in writing each challenged document by Bates number and set forth the specific reasons it does not believe the confidentiality designation is appropriate.

4. Within 28 days of a challenge to a designation, the Party challenging confidentiality must move the Court for relief unless the Parties agree otherwise or the matter has been resolved by the Parties. Counsel for each Party shall meet and confer within seven days of a challenge to limit the scope of any issues requiring resolution by the Court. To that end, if the matter is not resolved by the Parties, the Parties shall identify exemplar documents for the Court's review, a ruling on which will allow the Parties to resolve their disputes concerning any similar documents for which a confidentiality designation has been challenged.

*See* ECF 131, §VI.

As is plain from its text, §VI of the Stipulated Protective Order governs challenges to *confidentiality designations* – not challenges to privilege. Thus, when SDC waived its privilege over certain documents and produced those documents to Plaintiffs, §VI of the Stipulated Protective Order was never implicated.

The Individual Defendants have never suggested Plaintiffs violated any other section of the Stipulated Protective Order or that Plaintiffs violated the Stipulated Protective Order for any reason other than failing to meet and confer in advance of SDC waiving its privilege. Plaintiffs did not violate the Stipulated Protective Order.

**C.      The Sanctions the Individual Defendants Seek Are Unwarranted**

**1.      Legal Standard**

"A district court has the inherent power to sanction a party . . . ." *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003). Where sanctions are sought pursuant to a court's inherent power, rather than Rule 11 or Rule 37 of the Federal Rules of Civil Procedure, the "'imposition of inherent power sanctions requires a finding of bad faith,' or conduct 'tantamount to bad faith.'" *Id.* (quoting

- 16 -

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) and

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). The sanction of "excluding evidence in

response to a discovery violation is appropriate 'only [in] egregious violations involving, for

example, "willful misconduct" on the part of the [party] or [its] counsel.'" *Chandler v. Brown*, 126

F.4th 1178, 1192-93 (6th Cir. 2025), *vacated on other grounds*, 136 F.4th 689 (6th Cir. 2025)

Indeed, "'[s]uppression of evidence must be viewed as an undesirable remedy reserved for cases of

incurable prejudice or bad faith conduct demanding punishment by the court'" pursuant to the Sixth

Circuit's instruction that "'[d]istrict courts should embrace the "least severe sanction necessary"

doctrine.'" *United States v. Case*, 654 F. Supp. 2d 747, 756 (E.D. Tenn. 2009) (quoting *United

States v. Maples*, 60 F.3d 244, 247-48 (6th Cir. 1995)). "[T]he party seeking [such] sanctions 'bears

the burden of proof in establishing'" that the sanction is justified. *Young v. Aramark Corr. Serv.

LLC*, 2022 WL 20487073, at *2 (N.D. Ohio Nov. 2, 2022).

### 2. No Sanctions Are Warranted Because Plaintiffs Did Not Violate the Local Rules or the Stipulated Protective Order

The Individual Defendants have never argued – nor could they – that any imposition of

sanctions would be justified absent a finding of a discovery violation by Plaintiffs. As established

above (§§III.A.-B, *supra*), Plaintiffs did not violate either the Local Rules or the Stipulated

Protective Order.[12] Thus, no sanctions can possibly be warranted.

### 3. The Draconian Sanction Sought by the Individual Defendants Is Not Justified Here

The Individual Defendants ask this Court to relieve them of their obligation to produce

relevant and responsive documents that they have wrongfully withheld from Plaintiffs for the past

---

[12] The Individual Defendants have already taken voluminous discovery in the Bankruptcy Case regarding the subject of this dispute. §II.E., *supra*. They have failed to articulate how any additional discovery could be relevant to the narrow issues remaining to be resolved.

4929-0995-1323.v1

three years.  *See* ECF 198 at 2 (arguing that the "proper remedy for this misconduct is preventing Plaintiffs from using any information in the Database").

The Individual Defendants have failed to carry their burden to support imposing the "undesirable remedy" of withholding evidence, "'reserved for cases of incurable prejudice or bad faith conduct demanding punishment by the court.'"  *Case*, 654 F. Supp. 2d at 756.  Beyond failing to demonstrate any violation of the Local Rules or the Stipulated Protective Order whatsoever, the Individual Defendants have fallen far short of demonstrating that Plaintiffs engaged in any of the "egregious violations" for which such a remedy is reserved.  *Id.*  Indeed, the Individual Defendants have not made any argument to support their suggestion that withholding evidence that supports the claims against them is  ""'the least severe sanction necessary."'"  *Id.*

### D.    Plaintiffs' Conduct Does Not Change the Individual Defendants' Discovery Obligations

The resolution of the questions above – whether any violation of the Local Rules or Stipulated Protective Order occurred – should have no impact on this Court's resolution of the underlying discovery dispute.   Indeed, the District Court went out of its way to note that "[u]ltimately, although the Court finds that the Magistrate Judge should have decided the question that he declined to answer, that does not mean that his ultimate resolution of the instant discovery dispute was erroneous." ECF 214 at 13.  The District Court effectively vacated only the timeline by which the Individual Defendants would be required to comply with this Court's order.  *Id.* at 10.

The Individual Defendants have never attempted to explain why (non-existent) procedural infractions should relieve them of their discovery obligations.  The core dispute remains: the Individual Defendants are attempting to stop Plaintiffs from reviewing relevant documents without articulating any credible basis for doing so.  As this Court previously found, "the Individual Defendants cannot both insist that some of the documents are privileged ***and*** refuse to [identify]

- 18 -

them and produce a privilege log." ECF 196 at 9 (emphasis in original). Regardless of the Court's finding as to whether any violation of the Local Rules or the Stipulated Protective Order occurred, which it did not, the Individual Defendants' discovery obligations remain unchanged: Plaintiffs must have access to the documents at issue.

## IV. CONCLUSION

For the foregoing reasons, the Court should find that Plaintiffs did not violate the Local Rules or the Stipulated Protective Order, issue no sanctions, and permit Plaintiffs to review the books and records at issue, subject to allowing the Individual Defendants to claw back any documents they can actually establish are privileged, if any.

DATED: August 8, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

- 19 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
SCOTT H. SAHAM
JEFFREY J. STEIN
ASHLEY M. KELLY
TING H. LIU
STEPHEN JOHNSON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
scotts@rgrdlaw.com
jstein@rgrdlaw.com
akelly@rgrdlaw.com
tliu@rgrdlaw.com
sjohnson@rgrdlaw.com

Counsel for Plaintiffs

4929-0995-1323.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 8, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<div style="margin-left:40%">

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
  & DOWD LLP
200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2203
615/432-2398 (fax)

Email: cwood@rgrdlaw.com

</div>