# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| ADAM FRANCHI, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:19-cv-00962 (Consolidated) Judge Richardson/Frensley |
| SMILEDIRECTCLUB, INC., et al., | ) ) | |
| Defendants. | ) | |

## ORDER

## I. INTRODUCTION

In these consolidated securities class actions, Plaintiffs allege that they purchased common stock of Defendant SmileDirectClub, Inc. ("SDC") during the relevant period around the time of SDC's Initial Public Offering ("IPO"). Docket No. 85 (Amended Complaint). They allege that Defendants violated the Securities Act of 1933 and the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). *Id.* Defendants include SDC, individual SDC executives ("the Individual Defendants"), and several financial institutions, termed "the Underwriter Defendants," who are alleged to have "acted as underwriters of the IPO and participated in the drafting and dissemination of the Registration Statement as well as the sale of more than $1.345 billion of SDC common stock to the Class." *Id.* at 14. Defendants have denied the substantive allegations and asserted affirmative defenses. Docket Nos. 117, 118 (Answers). Upon receiving notice that SDC had filed for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the bankruptcy code),

the District Judge stayed the case as to SDC, pursuant to 11 U.S.C. § 352(a).  Docket Nos. 157, 158.

This matter is now before the Court upon a discovery dispute that this Court has previously addressed.[1]  Docket Nos. 184, 193, 196.  The facts of the dispute, which concern a database of documents provided to Plaintiffs on behalf of SDC by the Trustee for SDC's bankruptcy estate, have been set forth in detail in the previous filings.  *See* Docket Nos. 184, 193, 194, 194-1 through 194-6, 195, 195-1 through 195-5.  The Individual Defendants filed a Motion for Review of this Court's Order resolving the discovery dispute.  Docket No. 197.  Judge Richardson granted that Motion, vacated this Court's prior Order "insofar as Individual Defendants are no longer bound by that timeline," and remanded the discovery dispute back to this Court "to make a decision consistent with the instant order."  Docket No. 214, p. 14.

The Individual Defendants have filed a brief urging the Court to "order Plaintiffs to surrender their access to the database . . . [and] forbid them from using or introducing any information/documents they received or otherwise learned from the Database that was not produced before [SDC's] bankruptcy," as well as pay the Individual Defendants' attorneys' fees and costs.  Docket No. 219, p. 4.  Plaintiffs have filed a brief in opposition, along with supporting documents.  Docket Nos. 220, 220-1 through 220-6.  For the reasons set forth below, the Court finds that Plaintiffs have not violated the Parties' Stipulated Protective Order or the Local Rules, and declines to impose sanctions.

## II.  <u>LAW AND ANALYSIS</u>

Judge Richardson held that the undersigned erred in finding that: "[b]ecause Plaintiffs currently have the documents, the Court need not decide whether the Trustee had authority to

---

[1] In this Order, "the Court" and "this Court" refer to the undersigned Magistrate Judge.

2

produce them; it is irrelevant how Plaintiffs came to be in possession of the database." Docket No. 214, p. 10, quoting Docket No. 196, p. 8 (internal quotation marks omitted). Judge Richardson further stated:

> That is because *if* Plaintiffs violated either the [Stipulated Protective Order ("SPO")] or the Local Rules, then the Magistrate Judge had the authority to craft a remedy to ensure that Plaintiffs do not retain access to materials obtained from such violation(s). The Court leaves to the Magistrate Judge the job of determining whether such violation(s) took place, and if so, what if any remedy is appropriate and how all of this affects the outcome of the discovery dispute at issue. Ultimately, although the Court finds that the Magistrate Judge should have decided the question that he declined to answer, that does not mean that his ultimate resolution of the instant discovery dispute was erroneous. The Court means only to say that the Magistrate Judge should take a fresh look at the discovery dispute with an eye towards whether a violation of the SPO or the Local Rules took place and, if so, how that affects the resolution of the discovery dispute—issues on which the Court currently expresses no opinion.

*Id.* at 13 (citation modified).

Pursuant to Judge Richardson's Order, the undersigned will address: (a) whether Plaintiffs violated the Parties' Stipulated Protective Order ("SPO"); (b) whether Plaintiffs violated the Local Rules; (c) if so, the question of an appropriate remedy; and (d) how any of this affects, if at all, the outcome of the underlying discovery dispute over whether Plaintiffs can view or utilize documents from the database provided to them by the Trustee, who purported to have the authority to do so on behalf of SDC's bankruptcy estate. As will be discussed, while the Individual Defendants clearly believe that Plaintiffs were wrong to engage with SDC via its Trustee and receive access to a database of documents from SDC (along with a waiver of SDC's privilege), they do not demonstrate that these actions violated the SPO or the Local Rules.

## A. <u>Violation of the Parties' Stipulated Protective Order</u>

The Individual Defendants contend that Plaintiffs violated Section VI of the SPO:

3

The Stipulated Protective Order lays out a specific procedure for challenging a Producing Party's privilege designations. This procedure demands that a disputing party raise their challenges to the Producing Party in writing, and then ask for relief from the Court within 28 days [ECF #131 § VI.] Here, Plaintiffs challenged production decisions and privilege designations of documents produced/designated by both SDC and the Individual Defendants, meaning both SDC and the Individual Defendants were/are the Producing Party under the Stipulated Protective Order. According to the Stipulated Protective Order, Plaintiffs had to address their challenges to both SDC *and* the Individual Defendants. But they did not do that. Instead, they intentionally cut out the Individual Defendants and instead negotiated exclusively with a party in name only (because the case against SDC was stayed)—and via SDC's Trustee's purported counsel, who had no familiarity as to the prior productions or the Database at that. There are no circumstances under the Stipulated Protective Order that permit what Plaintiffs did here—cutting out the Producing Party when challenging the Producing Party's designations.

Docket No. 219, p. 16 (emphasis in original).

Section VI reads as follows:

### VI. DE-DESIGNATION AND CHALLENGING OF PROTECTED MATERIAL

1. Any Party may request a change in the designation of Protected Material. Any Protected Material shall be treated as designated until the change is completed.

2. **Any Party may challenge a designation of confidentiality at any time. A Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.**

3. The Party challenging a confidentiality designation shall identify in writing each challenged document by Bates number and set forth the specific reasons it does not believe the confidentiality designation is appropriate.

4. Within 28 days of a challenge to a designation, the Party challenging confidentiality must move the Court for relief unless the Parties agree otherwise or the matter has been

4

> resolved by the Parties.  Counsel for each Party shall meet and
> confer within seven days of a challenge to limit the scope of
> any issues requiring resolution by the Court.  To that end, if the
> matter is not resolved by the Parties, the Parties shall identify
> exemplar documents for the Court's review, a ruling on which
> will allow the Parties to resolve their disputes concerning any
> similar documents for which a confidentiality designation has
> been challenged.

Docket No. 131, p. 11-12 (emphasis added).

As to SDC, Plaintiffs did not need to raise a challenge under the SPO, because SDC (through the Trustee) waived its privilege.  Docket No. 195-2, p. 4.  There is no doubt that Plaintiffs were aware that the Individual Defendants claimed that some of the documents on the database were privileged as to them (either solely, or held jointly with SDC), and that they were not waiving that privilege.  Docket No. 201-4, p. 8.  But as can be seen, under the SPO, Plaintiffs were not required to raise a challenge to the Individual Defendants' designation at any specific time.  Docket No. 131, p. 11.  Indeed, the SPO specifically states that "a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed." *Id.*  The Individual Defendants actually seem to be making a different argument, which is that Plaintiffs violated the SPO by engaging with SDC as to its (SDC's) assertion of privilege without including the Individual Defendants.  But the SPO does not contain any provision preventing Plaintiffs' counsel from communicating with one Defendant as to that Defendant's designations and not including the others.  *See* Docket No. 131. Even taking as true everything that the Individual Defendants contend (Plaintiffs knew the Individual Defendants were asserting a privilege, they knew the Individual Defendants had not waived that privilege, and they understood that the Individual Defendants were also a "producing party"), the SPO did not require Plaintiffs to follow the procedure set out in Section VI until they decided to challenge the Individual Defendants' designation (as opposed to that of SDC), and

they were free to make that decision at any time. The Court notes that Plaintiffs might have struggled to follow the procedure even then, as it would require them to "identify in writing each challenged document by Bates number," even though they do not appear to have ever seen the documents, nor have the Individual Defendants pointed out any specific documents that they contend are privileged.

The Individual Defendants appear to have a quarrel, not with Plaintiffs, but with co-defendant SDC. It is SDC that provided Plaintiffs with access to the database and waived its privilege, all (apparently) without informing the Individual Defendants.

Section XI of the SPO ("Clawback of Disclosure") also arguably applies, as it addresses situations where "a Producing Party . . . determines it made a disclosure of . . . Privileged Material." Docket No. 131, p. 14. While not an exact fit (because it was SDC, not the Individual Defendants, who disclosed the material), it speaks to the required process when a Producing Party believes privileged documents have been inadvertently produced.[2] It provides that the Receiving Party shall "immediately cease the review and use of the disclosed document or information, except to the extent necessary to determine and/or contest the privilege or protection," and must "sequester any discovery item claimed to be Privileged Material if the Receiving Party intends to challenge the designation or move the Court for a ruling that the document was never privileged or protected unless and until the Court determines the document is privileged or protected." *Id.* at 14-15.

---

[2] To facilitate use of this Section if the Individual Defendants wished to invoke it, the Court previously held that "[d]ue to the unusual circumstances by which the disputed documents were produced to Plaintiffs, should the Individual Defendants choose to accept Plaintiffs' proposal, any document that the Individual Defendants contend is privileged will be deemed inadvertently produced for the purpose of the Parties' claw back procedure," even though the documents were in fact deliberately produced by a co-defendant. Docket No. 196, p. 10, n.4.

6

Here too, Plaintiffs would be hampered in following the agreed protocol, because Section XI requires that "if a Receiving Party disputes the Producing Party's privilege claim over clawed-back material, the Receiving Party shall notify the Producing Party of the dispute and the basis therefor in writing within ten business days," but because the Individual Defendants have not identified any specific documents that they claim are privileged, Plaintiffs would not be able to determine the basis of the dispute. *Id.* at 15. Plaintiffs cannot determine anything about the documents in the database without viewing them, and that is exactly what the Individual Defendants are seeking to prevent. Nevertheless, as the Court previously suggested, the Individual Defendants could avail themselves of the remedy provided by the SPO by allowing Plaintiffs to identify the documents they wish to use, and then initiating the claw back procedure as set forth in the SPO.

In sum, the Court finds that Plaintiffs have not violated the SPO.

**B.  <u>Violation of the Local Rules</u>**

The Individual Defendants maintain that Plaintiffs have violated the Local Rules of this Court, specifically, Local Rule 37.01(a). Docket No. 219, p. 17. That Rule states that "[u]nless provided otherwise in a case management order or other order, before filing any motion to compel discovery, to quash a subpoena, or for a protective order, counsel for the parties must confer in good faith in an effort to resolve by agreement the issues raised." L.R. 37.01(a). The Individual Defendants stress that "the *parties* must confer" and "the Individual Defendants were among those parties." Docket No. 219, p. 17 (emphasis in original).

Local Rule 37.01 is titled "Discovery Motions" and, unsurprisingly, sets out the procedure to be followed before filing a "discovery motion," specifically, "any motion to compel discovery, to quash a subpoena or for a protective order." Plaintiffs did not file any such motion.

7

Nevertheless, the Individual Defendants argue that Plaintiffs should have requested and held a conference with the Individual Defendants because "Plaintiffs raised a purported dispute." Docket No. 219, p. 17.  Setting aside that Local Rule 37.01 does not set out a procedure to be followed before, during, or after "raising a dispute," it appears that it was the Individual Defendants, not Plaintiffs, who raised the dispute by contacting Plaintiffs after receiving notification that the Trustee had provided Plaintiffs with access to the database.  Docket No. 219, p. 12 ("Once the Individual Defendants learned that Plaintiffs had access to the Database, the Individual Defendants told Plaintiffs that they contested the propriety of the access").  At that point, Plaintiffs seem to have made extensive efforts to set a conference with the Individual Defendants.  *See In re Subpoena*, 3:24-mc-17, Docket No. 17-8.  Prior to that time, Plaintiffs appear to have been meeting and conferring appropriately with SDC regarding SDC's previously-asserted privileges and withholding of documents, resulting in SDC's producing the documents and waiving its privileges, thus resolving the dispute with SDC without need for a discovery motion.  *See* Docket No. 194-5; Docket No. 184, p. 2.

Characterizing Plaintiffs' reading of Local Rule 37.01 as "contorted," the Individual Defendants argue that it would mean that "the meet-and-confer requirement arose only when their filing a motion was a certainty.  That interpretation makes no sense and defies the very purpose of meet and confers."  Docket No. 219, p. 18.  The Court agrees that Parties should meet and confer in an effort to avoid filing discovery motions, not only when such a filing is certain. But enforcement of the requirement to meet and confer makes no sense when applied to situations in which no motion was ever filed.  Feeling, thinking, or believing that there may be a discovery dispute may make meeting and conferring prudent.  But how is the Court to determine that such a meeting should have taken place, absent finding that a discovery motion was filed

8

without one?  And if a discovery motion is never filed, why does the absence of a meeting matter?  The Court declines to find that Plaintiffs violated Local Rule 37.01 – "Discovery Motions" by failing to meet and confer before **not** filing a discovery motion.

## C.  Remedy

Because the Court finds that Plaintiffs did not violate the SPO or Local Rule 37.01(a), there is no need to consider what remedy might be appropriate for such violations.  Additionally, sanctions in the area of discovery violations are generally discretionary, and even if the Court had found that Plaintiffs violated the SPO or Local Rule 37.01, the Court would not have imposed the sanction requested by the Individual Defendants.  To the extent there are any responsive documents on the database, the Individual Defendants should have already produced them, unless they are privileged, in which case they should have logged them.  If no responsive nonprivileged documents exist on the database, there is no problem, because nothing needs to be produced.  If there are, then the Individual Defendants have committed a discovery infraction of their own by failing to produce them.  Either way, had the Court found that Plaintiffs failed to appropriately meet and confer with the Individual Defendants on the subject (which is essentially what the claimed violations of the SPO and the Local Rules boil down to), it would not have found that the appropriate corrective action was to allow the Individual Defendants to withhold responsive nonprivileged documents.  Instead, the Court would have ordered the Parties to meet and confer as required.  At this point, it is undisputed that the Parties have met and conferred on this topic.  *See* Docket No. 184, p. 4; Docket No. 219, p. 12; Docket No. 220, p. 14.

## D.  Effect on Outcome of Discovery Dispute

The Court finds that Plaintiffs' non-violation of the SPO or Local Rule 37.01(a) has no effect on the outcome of the underlying discovery dispute.  There are documents that have been

produced in this case to Plaintiffs by one Defendant (SDC), which also waived its privilege as to these documents. While the Individual Defendants contend that the Trustee should not have taken these actions, this is what happened. The Individual Defendants assert their own privilege over at least some of the documents, and Plaintiffs are and were aware of that. But the Individual Defendants have not identified any particular documents that they contend are privileged (such as with a privilege log), making it impossible for Plaintiffs to challenge the assertion of privilege. The Court has previously noted that this is untenable, as indeed it is. A party can either produce responsive documents or withhold them as privileged and log them, but it cannot choose to do neither.[3] The party asserting the privilege has the burden of demonstrating that the privilege applies, and privilege determinations can only be made on a document-by-document basis. Fed. R. Civ. P. 26(b)(5); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983); *Auto-Owners Ins. Co. v. A.G.O. Contracting, Inc.*, No. 3:14-1353, 2015 WL 13845881, 2015 U.S. Dist. LEXIS 195361, at *4 (M.D. Tenn. Sept. 10, 2015).

In response to the Individual Defendants' argument that reviewing the disputed documents would be unduly burdensome because it would be time-consuming and expensive, the Court has identified alternatives. The Individual Defendants could (1) accept Plaintiffs' offer to view the documents and identify the ones they would like to use, after which the Parties would follow the claw back procedure set out in Section XI of the SPO; or (2) run the Parties' search terms against the database to weed out irrelevant documents, and then run the names of their

---

[3] Of course, a party can also assert that production would be unduly burdensome or that the documents or information is otherwise not required to be produced under the Federal Rules, in which case the Court would assess that claim and craft a solution using the proportionality factors set forth in Rule 26.

attorneys against the set of documents that hit on search terms, thereby yielding what would presumably be a much smaller set of documents to review for privilege.[4]

### III.  CONCLUSION

The Court still finds that either of these options would be a good solution.  Therefore, no later than January 5, 2026, the Individual Defendants must avail themselves of one of them, and either allow Plaintiffs to identify the documents they wish to use and then follow the claw back procedure, or figure out how to identify and log the documents they claim are privileged while producing the rest.

**IT IS SO ORDERED.**

**Jeffery S. Frensley**
**United States Magistrate Judge**

---

[4] Additionally, according to the Individual Defendants, they have already reviewed or deemed nonresponsive all but approximately 33,000 documents (out of 2.2 million on the database). Docket No. 219, p. 7-8.